IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND | ) | **MOTION REGARDING CLEVELAND** |
| | ) | **DIVISION OF POLICE CRISIS** |
| Defendant. | ) | **INTERVENTION POLICY AND** |
| | ) | **PROCEDURES** |

Pursuant to Paragraphs 154 through 156 of the Consent Decree, a host of the Decree's other substantive requirements, and the Updated First-Year Monitoring Plan, the City of Cleveland (the "City") has submitted a revised Crisis Intervention Policy and Procedure (the "CIT Policy") to the Monitor.  The term crisis intervention refers to those law enforcement interactions involving individuals experiencing a behavioral health crisis, such as mental health, substance abuse, or other long-term behavioral health challenges.  The revised Cleveland Division of Police's ("CPD") policy for interacting with such individuals consists of three parts.  The first part defines the terms

in the crisis policy and is titled the Crisis Intervention Team Definitions (Exhibit A), the second part describes the overall crisis strategy and is titled the Crisis Intervention Team Program (Exhibit B), and the third part outlines officers' responsibilities during a crisis event and is titled Crisis Intervention Response (Exhibit C).

As required by the Consent Decree in Paragraphs 132 through 134, the City established a Mental Health Response Advisory Committee ("Advisory Committee") to address and coordinate crisis intervention issues with the Division.  The City in turn partnered with the Alcohol, Drug Addiction and Mental Health Service Board of Cuyahoga County ("ADAMHS Board") to develop the Advisory Committee.  The Advisory Committee consists of members of the community, including mental health professionals, advocates, individuals recovering from mental illness and addiction disorders, Cleveland's Municipal Court, the State of Ohio Criminal Justice Coordinating Center of Excellence ("CJCCOE"), and representatives from the City and CPD.  Representatives from the U.S. Department of Justice ("DOJ") and the Monitoring Team were invited to participate in the Advisory Committee as well.  The Advisory Committee has met regularly and has worked hard to "foster relationships and build support between the police, the community and mental health providers."  Dkt. 7-1 ¶ 132.

The Advisory Committee appointed a Policy Subcommittee to work with CPD and the City to develop a CIT Policy that met the requirements of the consent decree.  The CIT Policy document took many months of hard work.  The policy was reviewed and approved on an on-going basis by the Advisory Committee as a whole.  The Advisory Committee has gone to great length to secure wide-ranging community engagement and participation.  Community input guided the process from the very beginning and had a significant role in revisions to the final version before it was submitted to the Monitor.  The Advisory Committee, CPD, and the City have consulted and

solicited input from both the DOJ and the Monitoring Team throughout the process of completing the CIT Policy.

The Monitoring Team has closely reviewed the proposed crisis intervention policy.

The CIT Policy submitted to the Monitor makes it clear that a "crisis intervention response may be necessary even in situations where there has been an apparent law violation." *Id.* ¶ 154. It provides that specialized CIT officers will "have appropriate discretion to direct individuals with mental health and substance abuse issues to the health care system." *Id.* ¶ 155. Additionally, the policy makes it clear that specialized CIT officers, when available, must be dispatched to all calls or incidents that appear to involve an individual in crisis. *Id.* ¶ 156. Because the City has submitted a CIT Policy that has met the requirements and objectives of the Consent Decree, the Monitoring Team recommends approval of the policy subject to the conditions regarding the completion of certain attachments discussed below.

I.     **SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING CRISIS INTERVENTION RESPONSE**

The Department of Justice's 2014 investigation of CPD concluded that the Division's officers used excessive force against individuals who are in mental health crisis – in part because the Division's "crisis intervention policies and practices are underdeveloped." U.S DEP'T OF JUSTICE, CIVIL RIGHTS DIV. & U.S. ATT'Y OFFICE NOR. DIST. OF OHIO, FINDINGS LETTER ON INVESTIGATION OF THE CLEVELAND DIVISION OF POLICE (Dec. 4, 2014) [hereinafter 2014 FINDINGS LETTER] at 4, 52.

Consequently, the Consent Decree includes a series of requirements aimed at building upon and improving the Division's crisis intervention programs.  In particular, the Consent Decree envisions that the Division's Crisis Intervention Program will provide a forum for effective

problem-solving regarding the interaction between the criminal justice system and the mental health care system as well as creating a context for sustainable change.  *Id.* ¶¶ 131–59.  The Consent Decree indicates that CPD should build upon and improve its Crisis Intervention Program, with the following goals: (1) assisting individuals in crisis, (2) improving the safety of officers, consumers, family members, and others within the community, (3) providing the foundation necessary to promote community and statewide solutions to assist individuals with mental illness, and (4) reducing the need for individuals with mental illness to have further involvement with the criminal justice system.  *Id.* ¶ 131.

To meet these four goals, the Consent Decree required the development of a Mental Health Response Advisory Committee "to foster relationships and build support between the police, the community, and mental health providers" and "identify problems and develop solutions designed to improve outcomes for individuals in crisis."  *Id.*  ¶ 131.  The Decree required that CPD then partner with the Advisory Committee to revise and enhance its crisis intervention policies.  The purpose of the new crisis policy was to make clear, among other things, that, among other things: (1) crisis intervention responses may be necessary even in situations where there has been an apparent law violation, (2) specialized CIT officers have appropriate discretion to direct individuals with mental health and substance abuse issues to the health care system, rather than the judicial system, in those incidents where it is appropriate to do so, and (3) specialized CIT officers, when available, must be dispatched to all calls or incidents that appear to involve an individual in crisis.  *Id.* ¶¶ 153–57.

## II.     PROCEDURAL HISTORY

Prior to the Monitoring Team being appointed by this Court, the City signed a Memorandum of Understanding with ADAMHS Board to assist the CPD in meeting a number of the crisis intervention related provisions of the Federal Consent Decree.  *See* Memorandum of Understanding between The City of Cleveland Department of Public Safety and The Alcohol, Drug Addiction and Mental Health Services Board of Cuyahoga County, 1–4 (Sept. 2015).

In addition to the Department of Justice's 2014 Findings Letter and the Consent Decree, the initial work of the Advisory Committee has been guided by two additional reviews of the CPD Crisis Intervention program.  The first is the ADAMHS Task Force Recommendations for the Consent Decree and the second report was the CJCCOE CIT Peer Review[1].  The ADAMHS Task Force Recommendations focused on elements of training, practice and oversight.  MENTAL HEALTH TASK FORCE RECOMMENDATIONS FOR THE CONSENT DECREE BETWEEN THE U.S. DEPARTMENT OF JUSTICE AND THE CITY OF CLEVELAND DIVISION OF POLICE, ADAMHS BOARD OF CUYAHOGA COUNTY MENTAL HEALTH TASK FORCE 1–5 (March 2015).  The CJCCOE recommendations focused on training, routing of calls, the use of involuntary commitment, and transportation. M. Woody, J. Futo, and P. Lilley, Criminal Justice Coordinating Center of Excellence, *CPD CIT Peer Review* 1–13 (Apr. 2015).

The Advisory Committee now has over 50 members representing the Cleveland community.  The committee views its goal as making Cleveland a city where everyone is treated safely with dignity and respect.  The Advisory Committee established six standing sub-committees (Executive, Policy, Data, Training, Community Engagement and Diversion).  Importantly, two *ad hoc* Task Forces were also formed in order to coordinate efforts to obtain community input.  The

---

[1] Some elements of this document are adapted or summarized from the Monitor's First and Second Semiannual reports.

first Task Force completed a community-based survey and conducted public meetings as part of a needs assessment to help guide policy development.  These public meetings were conducted from March 16 – 23, 2016.  The second Task Force conducted two public forums to obtain feedback on proposed changes in the CPD Crisis Intervention Team Policy.  These forums were conducted on December 13, 2016 at mid-day and the evening.  Generally, the meetings were well-attended. Important feedback was provided to each Task Force.

Since the start of the Advisory Committee, high-ranking police leadership has regularly attended community meetings, and the CPD participation in the community partnership has been sustained and noteworthy.  The DOJ has also been a significant participant in the Advisory Meetings throughout the policy process.  Both CPD and the ADAMHS Board have been responsive to requests from the Monitoring Team and have attempted to include the members of the Monitoring Team in discussions where possible.  Together, CPD, the Advisory Committee and the ADAMHS Board worked hard as community partners in the policy process.

The Policy Subcommittee was assigned responsibility for the development of the policy document.  As part of approaching the task of revising the Crisis Intervention Policies, the Policy Subcommittee identified four guiding principles:  (1) advancing respect, dignity and safety in all interactions between CPD and citizens, (2) safely diverting people with mental illness, the vulnerable and/or those citizens in crisis from the criminal justice system where possible to appropriate mental health and substance abuse treatment, (3) reducing unnecessary use of force and injury and advancing best practice tactics, and (4) managing the stigma associated with mental illness and addiction in police-citizen encounters.  As part of the work, the Policy subcommittee then reviewed over 20 separate crisis intervention policies from programs throughout the country.

Crisis Intervention Team Policies, Mental Health Advisory Committee Policy Subcommittee, http://adamhscc.org/en-US/Crisis-Intervention-Policies.aspx (Apr. 2016).

The Policy Subcommittee felt it was important to define the terms that provide the basis of the CIT Policy.  A list of these terms that are most relevant to the Consent Decree includes:

> **Crisis:** A situation where an individual's safety and health are threatened by behavioral health challenges, to include mental illness, developmental disabilities, substance use, or overwhelming stressors.  A crisis can involve an individual's perception or experience of an event or situation as an intolerable difficulty that exceeds the individual's current resources and coping mechanisms and may include unusual stress in their life that renders them unable to function as they normally would, which may make them a danger to self or others.
>
> **Crisis Intervention:** The emergency and temporary care given to an individual in crisis with the purpose of returning the individual to their level of pre-crisis functioning.
>
> **Crisis Intervention Team Program (CIT Program):**  A partnership between police, mental and behavioral health agencies, advocates, and the community that seeks to achieve the common goals of safety, understanding, and service to individuals in crisis, those with behavioral health issues, and their families.
>
> **Crisis Intervention Team (CIT):** Specially trained officers in crisis intervention.
>
> **Specialized CIT Officer:** A voluntary, specially trained, basic patrol officer who has demonstrated a desire and ability to work with people in crisis situations and who has been selected to be a member of the Crisis Intervention Team.

Ex. A.

The Policy Subcommittee presented the first draft to the Advisory Committee on May 9, 2016.  After review by the Advisory Committee, the drafts were forwarded to the City, DOJ, and Monitoring Team.  A feedback process was created and the Policy Subcommittee worked on each subsequent draft.  An additional draft was reviewed in July 2016.  An initial final draft was presented to the Advisory Committee in November and released to the community on November 28, 2016.

The initial final draft and the current policy references three documents that are near completion.  These are the CIT Stat Sheet (CIT Program Attachment A), a written statement for the officers regarding emergency commitment under ORC 5122.10 (Crisis Intervention Response Attachment A), and a resource card for the officers (Crisis Intervention Response Attachment B). While there is general agreement on these three documents, the specific content is still being completed and will be presented to the parties, the Monitor, and the Court in the near future. Therefore, complete approval of the policies attached hereto by the Monitoring Team is conditioned upon receipt and approval of the attachments that the policies reference.

The substantive and valuable feedback provided by the community at public forums led to additional substantive changes in the policy.   These revisions included a greater emphasis on the concept of respect and dignity, a focus on the importance of building relationships with community and local neighborhoods, specific suggestions related to understanding the role of culture, the need for a marker that would improve the community's recognition of CIT Officers, specific guidance around transportation of non-violent individuals in crisis, a juvenile-specific section in the Crisis Intervention Response Policy, and guidance for the officer for responding to children who are witnesses to an event when police respond to individuals in crisis.  A final draft was sent to the Monitor on January 9, 2017.

The Monitoring Team notes that the work of the Advisory Committee is particularly impressive in light of the volunteer nature of the various members' commitments.  The cooperative relationship established between advocates, healthcare professionals and the Cleveland Police Department worked well in developing a consensus policy to address the needs of the individual in crisis without compromising the safety of the officer or the Cleveland community.  As a result,

the policy presents a new, comprehensive strategy for responding to individuals in a behavioral crisis.

## III.    STANDARD OF REVIEW

The Monitor's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented." Dkt. 7-1 ¶ 351; *accord id.* ¶ 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed and implemented under" the Decree). The task of the Monitor here is to determine if the CPD Crisis Intervention Team Policy submitted to the Monitor on January 9, 2016 complies with the Consent Decree's requirements. The procedural history outlined in the previous section highlights the cooperative relationship that has developed between the CPD, the ADAMHS Board, the advocates, and individuals who are recovering from mental illness and addiction disorders. The Advisory Committee is becoming a problem-solving forum that was envisioned in Consent Decree.

The Monitoring Team includes a number of national CIT experts. These experts include members who have experience implementing CIT programs and developing policies and procedures that are currently effective in different municipalities. The team members bring experience as a police chief who has implemented a highly recognized CIT program and as psychologists who have worked in the mental health delivery system. Monitoring Team members have provided technical assistance to both CPD and the Advisory Committee. These same experts have also closely reviewed the CIT Policy to ensure adherence to the Consent Decree.

The Crisis Intervention Team model is now in place in over 3,000 municipalities nationally. The Policy Subcommittee sought out over 20 model crisis intervention policies throughout the nation to help establish a national standard for CPD. Additionally, leaders of CIT Programs

throughout the nation have established a set of CIT Core Elements.  CIT Center, *Core Elements*, http://www.cit.memphis.edu/information_files/CoreElements.pdf (Sept. 2007).  These standards have been adopted by groups such as CIT International.

These same standards have been used as a basis for program selection for a wide range of successful outcome research studies demonstrating success in reducing arrest, lowering use of force at higher levels, reducing injuries, improving learning, and changing attitudes.  *See*, *e.g.*, M.T. Compton, et al, *The Police-Based Crisis Intervention Team (CIT) Model: II. Effects on Level of Force and Resolution, Referral, and Arrest*, 65 PSYCHIATR. SERV. 523 (2014) (finding association between involved officer's CIT training and likelihood of referral or transport to mental health services rather than arrest during encounters with individuals experiencing a behavioral crisis).  While the CIT Model encourages local innovation, it is also important to meet national standards set by the model to assure the same positive outcomes.


IV.     ANALYSIS OF THE CRISIS INTERVENTION TEAM POLICY

Subject to review and approval of the policy's referenced attachments, the Monitoring Team finds that the CPD CIT satisfies the requirements of the Consent Decree.  First, the policy takes into account the recommendations of the CJCCOE CIT Peer Review and the ADAMHS Board Task Force.  As indicated in the Consent Decree and the CJCCOE review, the policy strengthens how CIT officers are being routed to calls.  The CIT Policy Crisis Response Part devotes Section IA-E to addressing the relationship between CPD Communications and the CIT Officer.  As a matter of policy, Communications will give priority to having a Specialized CIT Officer lead the intervention.

The CJCCOE also recommended addressing the officer's role in involuntary hospitalization and better coordination of transportation options for the officer.  In the new policy, officers will become involved in the involuntary hospitalization process when needed.  A new section, Ex. C § X(A)–(D), in the CIT Policy Crisis Response Part addresses the role officers should take if involuntary hospitalization is needed.  The Policy Subcommittee devoted significant time in several meetings to address transportation issues.  *Id.* § V(III)(A)–(H).  Officers will have a wide range of options for transporting individuals that have been reviewed and approved by the City of Cleveland Emergency Medical Services ("EMS").

Second, the additional, specific requirements of the Consent Decree have been addressed as well.  The new crisis policy was to make clear that crisis intervention responses may be necessary even in situations where there has been an apparent law violation.  The revised policy indicates that in all circumstances the officers shall attempt to use de-escalation techniques throughout the encounter.  *Id.* § V(A)–(B).

Specialized CIT officers now have appropriate discretion to direct individuals with mental health and substance abuse issues to the health care system.  Officers are given guidance as to diversion in a detailed policy section which addresses options depending on range of factors that could present themselves. *Id.* § V(III)(A)–(H); Ex. B § V(A)(3)(d).  Specialized CIT Officers, when available, are to be dispatched to all calls or incidents that appear to involve an individual in crisis.  The revised policy indicates that both Communications, Ex. C § I(A), and other patrol officers, *id.* § II(A)(2), should request a Specialized CIT Officer when an individual is involved in a crisis.

The new policy goes well beyond what is required by the Consent Decree in establishing a best practice for crisis intervention.  Advisory Committee/ADAMHS Board, *Crisis Intervention*

*Team Policy Comparison* 1-2 (Oct. 2016).  The policy covers a wide range of topics that are positive and far-reaching. For example, the community-based Advisory Committee is required by the Consent Decree but has been written into CPD policy as well.  The Advisory Committee is given defined roles and responsibilities in the CIT Program Part.  Ex. B §IV(A)–(C).

The policy coordinates with community resources to assist those in need.  Officers should contact community resources for both adults and youth.  Ex. C §§ IV(2)(A), VIII(B)(1)–(2).  The policy addresses the need of youth and provides special guidance for the officer.  *Id.* § IV(A)–(C). These are just a few of the issues that are addressed in the revised policy that in fact go beyond the specific requirements of the Consent Decree.


## VII.   CONCLUSION

The task of the Monitor was to consider whether the City's submitted CIT Policy satisfies the terms of the Consent Decree.  The Monitoring Team concludes that the policy meets the terms of the Consent Decree, so long as the attachments referenced in the policies are to the Monitor and can be approved by this Court.  It recommends that the Court approve the attached policies, ordering them fully effective upon the successful completion by all officers of basic training on the policies and crisis intervention issues.

The Monitoring Team also observes here that the attached crisis intervention policy was developed by a process that allowed for the community to partner closely and directly with CPD. Those discussions were productive, thoughtful, and respectful of all involved.  CPD was engaged and considered community suggestions seriously.  When some community requests were not able to be met or feedback not able to be addressed, CPD explained the rationale for the decision and attempted to reach a compromise that was acceptable to all those involved.  Consequently, it is fair

to conclude that not only were the specific substantive requirements of the Consent Decree but also that the City moved closer to upholding its commitments to "provide for civilian participation in and oversight of the police" and "increase transparency." Dkt. 7-1 at 1. Thus, both the crisis intervention policies themselves and the collaborative manner by which they were created represent critical milestones for the Division, the City, and the Cleveland community.

Respectfully submitted,

/s/ Matthew Barge

MATTHEW BARGE
Monitor
234 5th Avenue, Suite 314
New York, New York 10001
Tel: (202) 257-5111
Email: matthewbarge@parc.info

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2017, I served the foregoing document entitled Motion Regarding Cleveland Division of Police Crisis Intervention Team Policy via the court's ECF system to all counsel of record.


/s/  Matthew Barge
MATTHEW BARGE