# EXHIBIT C



# GENERAL POLICE ORDER
# CLEVELAND DIVISION OF POLICE

| ORIGINAL EFFECTIVE DATE : | REVISED DATE: 1/5/2017 | NO. PAGES: 1 of 11 | NUMBER: |
|---|---|---|---|// 
| SUBJECT: | CRISIS INTERVENTION TEAM RESPONSE | | |
| ASSOCIATED MANUAL: | | RELATED ORDERS: | |
| CHIEF OF POLICE: | FINAL DRAFT | | |

**PURPOSE:** To establish guidelines for the Cleveland Division of Police (CDP) to interact with individuals who are suffering from a crisis by: improving the safety of officers and the Cleveland community, promoting community solutions to assist individuals in crisis, and diverting those individuals away from the criminal justice system.

**POLICY:** The Division shall handle encounters with individuals in crisis in a manner that promotes the dignity of all people while reflecting the values of protection and safety. Individuals in crisis may require heightened sensitivity and additional special consideration. Officers should use reasonable precautions to avoid a violent encounter with individuals in crisis by de-escalating the situation and making every effort to preserve the safety of officers, the individual, and the general public with the goal of connecting the individual to the appropriate community resources for a sustainable recovery.

**DEFINITIONS:** See G.P.O. XX

**PROCEDURES:**

I. Communications Control Section (CCS) Responsibilities

   A. Communications Control Section (CCS) dispatchers shall, when available, dispatch a Specialized CIT officer to known, or possible, crisis incidents. When a Specialized CIT officer is not available, these assignments shall be dispatched to the first available 2-person zone car and a Specialized CIT officer shall be dispatched as soon as possible.

   B. Calls that appear to involve an individual in crisis shall be dispatched immediately.

   C. If a Specialized CIT officer is on a low priority call, he/she shall be re-assigned to the crisis incident.

   D. Upon request, Specialized CIT officers may be utilized in another district with permission from the officer's sector supervisor.

   E. Dispatchers shall advise officers if the subject is in crisis and/or a juvenile, if known.

II. Officer Responsibilities

   A. When responding to individuals in crisis, officers shall:

| PAGE: 2 of 11 | CRISIS INTERVENTION TEAM RESPONSE | GPO NUMBER: |
|---|---|---|

1. Assess risks to selves and others to determine course of action.

2. Assess the situation to determine whether the individual may be in crisis, and if so, request a Specialized CIT officer if one is not on scene.

3. Request Emergency Medical Service (EMS), if medical intervention is required.

4. Treat each crisis as unique.

5. Consider the possibility that the individual may be non-compliant due to:

   a) The influence of medication, street drugs and/or alcohol;

   b) Known or reasonably apparent mental illness, developmental disability, or behavioral crisis incident;

   c) Known or reasonably apparent physical disability or other medical or physical condition, including visual or hearing impairment;

   d) Limited English proficiency or other language or cultural barrier;

6. Determine if an on-scene family member/friend can provide information to assist in interacting with the individual in crisis.

7. Continue to assess the situation for escalating risk and de-escalate, when possible.

III. Specialized CIT Officer Responsibilities

   A. In addition to officer responsibilities when responding to an individual in crisis, Specialized CIT Officers shall:

   1. Be aware that individuals may recognize the CIT marker and respond positively to the Specialized CIT Officer;

   2. Introduce yourself as a Specialized CIT Officer;

   3. Take primary responsibility for handling a crisis incident when on scene or dispatched to a crisis incident;

   4. Continue de-escalation techniques and identify resolutions to the crisis;

   5. Once the incident is under control, inform the individual in crisis of the next steps;

   6. When feasible, refer individuals to a mental health and/or social service agency if the individual is not being conveyed to a facility (see Section XVI below for options);

   7. Use discretion to direct individuals in crisis to the health care system, rather than the criminal justice system, in those instances where it is appropriate to do so.

        a)     Individuals in crisis who are being charged with a felony or an escalating misdemeanor shall be arrested.

        b)     Individuals in crisis who are being charged with a misdemeanor or minor misdemeanor may be issued a summons or made a named suspect in lieu of arrest.

IV.     Responding to Juveniles in Crisis

    A.     Officers responding to a crisis intervention incident involving a juvenile shall:

        1.     Take all reasonable measures to de-escalate the situation in a manner that adheres to GPO ## on De-escalation and Section V below as well as age- and developmentally-appropriate approaches to juveniles in crisis. These approaches shall include but not be limited to communication and tactical techniques and strategies that reflect best practices for reducing or eliminating the need to use force against juveniles in crisis.

        2.     If a juvenile is in need of psychiatric care (whether or not under arrest), officers shall:

                a)     Contact Child Response Team of Mobile Crisis (CRT), 216-623-6888;

                b)     Present the CRT with a list of the juvenile's symptoms.

    B.     CRT is able to advise officers in finding the most appropriate level of care and if needed, an appropriate facility.

    C.     The CRT staff members may be able to respond to assist with the incident. However, CDP will retain control of the scene.

V.     Crisis Incident De-escalation (Refer to De-escalation GPO ##)

    A.     Officers shall attempt to use verbal de-escalation techniques throughout the encounter, including but not limited to the following:

        1.     Introduce yourself and seek to establish a rapport;

        2.     Only one officer should speak to minimize confusion;

        3.     Speak in a slow, calm, non-threatening voice and use non-intimidating body language;

        4.     Ask questions to elicit information rather than issue orders or advice;

        5.     Active listing - Paraphrase what the individual has expressed, e.g:

        a) What I hear you saying is…

        b) If I understand you right…

    6. Demonstrate empathy, concern, respect and a better understanding of the situation;

    7. Repeat instructions, keeping them simple and concrete;

    8. Keep the individual focused;

    9. Use engaged body language:

        a) Eye contact;

        b) Facing the individual;

        c) Avoid attending to distractions.

  B. Officers shall attempt to use tactical de-escalation techniques throughout the encounter, including but not limited to the following:

    1. Wait out the individual;

    2. Exhibit patience and non-confrontational body language;

    3. Move slowly, being careful not to excite the individual;

    4. Create distance between officers and possible threats;

    5. Request additional resources such as mental health providers or negotiators if needed;

    6. Remove distractions, upsetting influences and disruptive citizens from the scene;

    7. Prepare for a lengthy interaction;

    8. Do not rush the scene, take the time to contain and stabilize the scene;

    9. Avoid physical confrontation unless immediately necessary to protect someone or stop behavior that creates an imminent threat.

VI. Use of Force (Refer to Use of Force: General GPO###)

  A. Officers shall only use that force which is necessary, proportional to the level of resistance, and objectively reasonable based on the totality of the circumstances confronting the officer.

  B. Force is NOT to be used for expediency.

    C.    If the individual is lying in a horizontal position after a use of force and/or handcuffing, move the individual to a sitting or upright position to avoid positional asphyxiation;

    D.    Officers shall reinitiate de-escalation techniques after handcuffing and/or use of force if appropriate.

VII.    Handcuffing

    A.    Officers may, when it is objectively reasonable, use handcuffs on individuals, including juveniles, who are in custody, including custody solely for the purpose of psychiatric evaluation.

        1.    Officers shall consider the totality of the circumstances when determining whether to use handcuffs, as handcuffs may trigger a traumatic response. These factors include but are not limited to the following factors:

            a.    The severity of the crime(s) at issue

            b.    The age of the subject

            c.    The risk of harm to the subject or others

            d.    The subject's efforts to escape

        2.    Use of handcuffs shall be explained to the individual being handcuffed and to the parent/family member in a tactful manner, using age-appropriate language for juveniles.

    B.    Once the individual in crisis is calm, under control and/or handcuffed, officers shall keep the individual under constant observation while in custody.

VIII.    Diversion Options & Transportation

    A.    After an officer has control of the scene, the officer, with the input of the supervisor, if requested, and the family, if on-scene, shall assess and determine the next step to assist the individual in receiving the care needed. The officer shall consider the following:

        1.    Is there a legal obligation to arrest, or is diversion an option?

        2.    Does the individual need hospitalization or referral to a mental health or social service agency?

    (See Referral Options section XVI)

    B.    Officers may seek assistance from the Mobile Crisis Team (MCT), a 24-hour mental health hotline, to determine what type of response is needed for the individual in crisis.

        1.    The officer shall provide a list of the symptoms to the mental health care worker to help determine the assistance needed.

    2.    The contact number is the same for both MCT and CRT, 216-623-6888.

C.    Officers shall continuously inform the individual and their family, if on-scene, of the steps being taken in assisting the individual to a treatment facility, making referrals, and providing contact numbers, or if an arrest is necessary.

D.    Officers shall make the following determination:

    1.    If a non-violent individual has the ability to seek care voluntarily on their own then the officers shall:

        a)    Provide the individual, and family member if on scene, with a name of a referral agency and phone number or address to assist them;

        b)    Notify the referral agency and advise the agency of the referral; and,

        c)    Complete an incident report, including "Crisis Intervention" in the title, and complete a CIT stat sheet (see CIT Program GPO Attachment A).

    2.    If a non-violent individual has the ability to seek care voluntarily, but needs immediate care, the officers shall:

        a)    Determine options for emergency care and transport, including EMS as an option when the individual is unwilling to be transported in a zone car, or arrange other transportation of the individual in a safe manner to the appropriate facility; and

        b)    Complete an incident report, including "Crisis Intervention" in the title, and complete a CIT stat sheet.

    3.    If the individual requires immediate treatment but is unwilling or unable to seek treatment voluntarily, and is possibly violent, officers shall:

        a)    Determine options for emergency care and provide or arrange safe transportation to the facility (See Emergency Admission section XX);

        b)    If the individual is violent, call EMS to transport the individual; and,

        c)    Complete an incident report, including "Crisis Intervention" in the title, and a complete CIT stat sheet.

E.    Transporting violent individuals

    1.    CDP officers are responsible for securing the individual onto the EMS cot with the supervision/assistance of EMS.

  2. When an individual is secured, a CDP officer (preferably a Specialized CIT officer) shall ride in the back of the EMS unit to the hospital. The other officer will follow EMS to the hospital in the zone car.

 F. If an officer determines that the individual in crisis must be arrested, the arrested individual shall be treated at a secure mental health facility and upon being released, handcuffed and conveyed to the Central Prison Unit (CPU) via the zone car. Prisoners shall remain the responsibility of CDP until booked at CPU.

 G. Where the subject of an arrest is a parent or guardian and the children are present, the officer should make every effort to attend to the child, explain what is happening in age-appropriate language and identify another adult or caretaker who can assist the child if the parent is detained.

 H. If the individual to be conveyed is a juvenile:

  1. Juveniles shall not be transported to adult psychiatric hospitals or adult mental health facilities;

  2. Juveniles under 14 may only be transported for voluntary treatment if a parent/guardian consents;

  3. If the juvenile's parent/guardian is not on scene, the officer shall take immediate steps to notify the parent/guardian of the incident and the next steps.

IX. Supervisor Responsibilities

 A. Indicate on the daily roster which cars have Specialized CIT officers when faxing the daily log to CCS following roll call.

 B. If a supervisor has assumed responsibility for the scene, and a Specialized CIT officer is on scene, the supervisor shall seek the input of the Specialized CIT officer regarding strategies for resolving the crisis, where it is reasonable for them to do so.

 C. Respond to CIT calls when requested by patrol personnel to assist in resolving crisis situations and conducting appropriate investigations such as use of force or injury to a police officer;

 D. Request additional resources as necessary. Having a Specialized CIT officer on scene does not negate the procedures for SWAT, Crisis Negotiation Team (CNT), or the Bomb Squad;

 E. Ensure the appropriate reports (e.g. Crisis Intervention, crime report) and the CIT Stat Sheet are completed and forwarded to the appropriate locations.

X. Law Enforcement Emergency Admissions

 A. Under Sec. 5122.10 of the Ohio Revised Code, Emergency Hospitalization, a police officer has authority to take a mentally ill person subject to court order, as defined by ORC 5122.01(B), and described below in Section X.B, into custody involuntarily and

    immediately transport the person to a facility for a mental health evaluation when the individual represents a substantial risk of physical harm to self or others if allowed to remain at liberty pending examination.

B. Conveying officers shall complete a written statement under ORC 5122.10 (pink slip: See Attachment A) explaining the circumstances under which the individual was taken into custody. The pink slip will also state the reasons for the emergency admission, including at least one of the following circumstances, which define "mentally ill person subject to a court order":

1. The individual represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicides or serious self-inflicted bodily harm;

2. The individual represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;

3. The individual represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;

4. The individual would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or the person.

C. Officers shall stabilize any dangerous or potentially dangerous situation, and take the individual in crisis into custody, using handcuffs if necessary, in accordance with Handcuffing, Section VII.A.

1. Pursuant to Section 5122.10 of the Ohio Revised Code, officers shall make "every reasonable and appropriate effort…" to take individuals into custody in the least conspicuous manner possible.

2. The officer taking an individual into custody pursuant to this section shall convey the following to the individual:

    a) The officer's name and rank

    b) The custody-taking is not a criminal arrest

    c) The individual is being taken for examination by mental health professionals at a specified mental health facility, identified by name.

3. If the individual is suffering from serious physical injury or illness, including drug overdose, officers shall, based on the circumstances surrounding the incident, call

        for EMS or convey the individual to the nearest hospital. The hospital is responsible for transporting individuals, not under arrest, for psychiatric evaluation after medical treatment.

    D.    Officers shall search individuals before bringing them to a mental health facility.

XI.    Health Authority Emergency Admission

    A.    Any authorizing professional (e.g. psychiatrist, licensed clinical psychologist, licensed physician, health officer, parole officer) may also take an individual into custody for emergency mental health evaluation.

    B.    The officer shall be given a completed pink slip by the authorizing professional stating the circumstances under which the individual was taken into custody and the reasons for the emergency admission.

    C.    The officer shall ensure that the authorizing professional has confirmed with the specified facility that the individual will be accepted and that the authorizing professional has provided the following information to the individual per ORC 5122.10:

        1.    The authorizing professional's name, professional designation and affiliation;

        2.    That the custody-taking is not a criminal arrest;

        3.    That the individual is being taken for an examination at a specified mental health facility.

    D.    An officer who is presented with a pink slip signed by an authorized professional shall transport the non-violent individual in crisis to the designated facility for further evaluation.

XII.    Probate Warrants

    A.    Officers shall execute Temporary Orders of Detention (Probate Warrant) as required by ORC 5122.11, Judicial Hospitalization. In this instance, the court has already adjudicated that probable cause exists to believe that the individual is a person with mental illness subject to court order and officers need not independently verify that the individual named in the warrant is a threat to themselves or others. Every reasonable effort will be made to execute the order in a timely manner.

    B.    Supervisors shall ensure that Specialized CIT officers serve the Probate Warrant.

    C.    Specialized CIT officers serving the probate warrant shall execute the warrant as if handling a crisis intervention assignment using de-escalation, active listening, and only the force necessary to place the individual in temporary CDP custody.

    D.    Specialized CIT officers shall search an individual taken into custody and transport the individual to the hospital named in the order for admission or, if needed, contact EMS to convey.

    E.    Specialized CIT officers shall sign the warrant and return it to the Officer-In-Charge.

    F.    Specialized CIT officers shall follow the same protocols regarding searches, as described in Section X.D, and handcuffing in Section VII.

XIII.  Absence Without Leave (AWOL)

    A.    In appropriate circumstances, officers shall return individuals who are AWOL from in-patient psychiatric facilities or individuals who are on a trial home visit.

    B.    Officers shall contact the hospital by telephone or CCS to confirm acceptance of the individual before returning the person. If the hospital will not accept the AWOL patient, officers shall determine if the individual needs psychiatric evaluation. Officers may contact MCT to assist with assessing the treatment needs of the individual.

    C.    If officers have an AWOL patient from a non-local hospital, officers may contact MCT to assist with assessing the treatment needs of the individual.

    D.    If a sponsor or family member of a patient on a trial visit requests return of the patient, officers shall contact the hospital from which the patient is released to determine the proper action. Officers shall transport the individual to the appropriate local facility.

XIV.  Requests for Assistance at Shelters or Mental Health Agencies

    A.    Officers shall respond and stabilize the situation by taking the necessary action to ensure the safety and security of all individuals. If officers need to consult with MCT, officers shall do so after the situation at the shelter has been stabilized.

    B.    Officers shall ask staff members to inform them of arrangements they have made to resolve the situation. If the arrangements include transport to another facility, the officers shall make the transport.

XV.  Incident Reports with "Crisis Intervention" in the title and CIT Stat Sheet

    A.    An incident report, including "Crisis Intervention" in the title, and a CIT Stat Sheet shall be completed whenever officers respond to an individual in crisis.

        1.    Even if an individual is not transported to a mental health facility or arrested, an incident report titled "Crisis Intervention" and a CIT Stat Sheet are required.

        2.    If a Specialized CIT Officer is on scene, that officer shall complete the incident report and CIT Stat Sheet.

        3.    If no Specialized CIT Officer is on scene, the incident report and CIT Stat Sheet shall be completed by another officer on scene.

    B.    These reports may assist officers in the future by providing:

      1.     Documentation about all previous contacts with this individual;

      2.     Previously successful and unsuccessful intervention tactics, including referrals or resources provided.

  C.     Incident Reports with "Crisis Intervention" in the title shall be completed in their entirety and include:

      1.     The individual in crisis as the victim;

      2.     The officer(s) as the reporting person(s);

      3.     The name and address of the person calling for service;

      4.     The reason for the interaction, i.e. crisis event, call for assistance, or suspected criminal conduct;

      5.     A description of successful and unsuccessful intervention tactics, techniques, or tools used;

      6.     A list of resources the individual is familiar with;

      7.     Specialized police units on scene, i.e. SWAT, Crisis Negotiation Team;

      8.     Results/disposition of intervention, i.e. arrest, hospitalization, citation;

      9.     Any injuries to officers, the individual in crisis or others involved on scene;

      10.     The hospital the individual was taken to and the name of the treating physician, if applicable.

  D.     CIT Stat Sheets shall be completed in their entirety, scanned and e-mailed to the CIT Coordinator at CIT@city.cleveland.oh.us . The original shall be sent via inter-office mail to the CIT Coordinator at the Justice Center Rm. 438.

XVI.   Referral Options

  A.     Referral options for behavioral health and social service agencies, veteran and homeless resources, child and adolescent services, and hospital systems are provided on the Resource Card (Attachment B).

  B.     If an officer learns of a new agency that can be used as a resource, the officer shall notify the CIT Coordinator via e-mail and advise of the agency name, the resources that can be provided, and the address and phone number of the agency. The CIT Coordinator shall add this information to the Resource Card and send to the Alcohol, Drug, & Mental Health Services.