IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 1:15-CV-01046 |
| Plaintiff, ) | |
| ) | JUDGE SOLOMON OLIVER, JR. |
| vs. ) | |
| ) | **MOTION TO APPROVE CLEVELAND** |
| CITY OF CLEVELAND ) | **DIVISION OF POLICE DISTRICT** |
| ) | **POLICING COMMITTEE PLAN** |
| Defendant. ) | |

Pursuant to Paragraphs 23 through 26 of the Consent Decree and the Revised Third-Year Monitoring Plan in the above-captioned matter, the City of Cleveland (the "City"), on behalf of the Cleveland Division of Police ("CDP" or "Division"), submitted a proposed District Policing Committee ("DPC") Plan, attached hereto as Exhibit A.

The Monitoring Team has carefully reviewed the DPC Plan. The Team has determined that it adequately lays out a strategy to enhance the effectiveness and reach of the CDP's District Policing Committees, particularly as the DPCs figure to be an important component of the Division's newly formalized commitment to community and problem-oriented policing ("CPOP"). The Monitoring Team therefore recommends that the Court approve CDP's District Policing Committee Plan.

I.     SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING DISTRICT POLICING COMMITTEES

Under the Consent Decree, the Division, Community Relations Board ("CRB"), and Cleveland Community Police Commission ("CPC" or "Commission") will work with the five DPCs (formerly called District Community Relations Committees) "to facilitate communication and cooperation between CDP and community leaders at the local level."  Dkt. 7-1 at ¶ 23.

Importantly, the Commission, CDP, and CRB will work jointly to "develop a mechanism to recruit and expand the membership of the District Policing Committees, each of which should include a representative cross-section of community members, including, for example, representatives of social services providers, faith leaders, local business owners, youth, etc., from that District."  *Id.* at ¶ 24.  Each District Policing Committee must include at least one CDP officer from that District, and CDP will work with the Commission to select officers for each District Policing Committee.  *Id.*

CDP is tasked with "work[ing] closely with the District Policing Committees to identify strategies to address crime and safety issues in their District[,]" considering and addressing "law enforcement priorities and community policing strategies in their District" as well as "any concerns or recommendations about specific CDP policing tactics and initiatives in their District."  *Id.* at ¶ 25.

Further, each DPC will present "identified strategies, concerns and recommendations to the Commission" at least annually, and a CDP officer who is a member of the DPC will present to the Commission the "CDP's assessment of ways to address, and barriers to, implementing the strategies, concerns and recommendations of the Committee."  *Id.* at ¶ 26.

II.    PROCEDURAL HISTORY

Because the DPCs are a critical component of the Division's ability to reach and communicate with members of the public, the development of the DPC Plan has generally proceeded in tandem with the drafting of the Division's Community and Problem-Oriented Policing Plan.  As such, the DPC Plan has been constructed over a roughly two-year period beginning in early 2017.

As with the CPOP Plan, the Parties, CPC, and Monitoring Team have solicited community input on the District Policing Committees.  In early 2017, the Division and Monitoring Team worked to solicit substantive community input on broad principles of community policing across at least 18 community meetings between March and June 2017.  The DPCs, as one obvious vehicle for the Division to listen to the concerns of community members, were a frequent point of discussion.  While some community members were satisfied by the role played by the DPCs, others reported that they "do not attend meetings because they are unaware of the existence of the groups, unaware of the meeting times, are too busy, or simply do not feel comfortable with them or understand the agenda."  Cleveland Police Monitoring Team, Community & Problem-Oriented Policing: Summary of Community Feedback & Recommendations, July 2017, at 16, available at https://docs.wixstatic.com/ugd/8a5c22_df0cbe2bc67d4e1a8ad3ac9c7098257b.pdf  (last  visited Jan. 28, 2019).

After continued development, a draft of the DPC Plan was released to the public for community input on May 15, 2018.  The City and CPC worked separately to introduce the Plan to community residents and gather their feedback through community meetings and a survey (available on paper and online).  The community input period concluded on September 28, 2018, when the Commission presented its findings and recommendations to the Parties and Monitoring Team.

On January 22, 2019, the Division submitted a proposed final draft of the DPC Plan.

3

**III.    STANDARD OF REVIEW**

The Monitoring Team's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented." Dkt. 7-1 at ¶ 351; *accord id.* ¶ at 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed and implemented under" the Decree). The task of the Monitoring Team here is to determine whether the DPC Plan complies with the Consent Decree's requirements.

**IV.    ANALYSIS OF THE DPC PLAN**

The DPC Plan broadly lays out four strategic goals for the DPCs: (1) regular communication and cooperation between CDP and community leaders; (2) increased participation in the DPC from a cross-section of community members; (3) identification of strategies to address crime and safety issues; and (4) reporting of identified strategies to the Community Police Commission. Ex. A at 3-4.

As before (when they were the District Community Relations Committees), DPCs will hold monthly meetings that are open to all to "communicate about topics such as crime statistics, strategies to address problems, upcoming events and initiatives, CDP policy and practices, and any matter that may arise." *Id.* at 3. Consistent with the Division's shift to an organizational philosophy of community and problem-oriented policing, "District Commanders will use the DPC meetings as opportunities to identify, assess and collaboratively solve problems in their District." *Id.* at 4. Further, "[t]he DPCs will assess the Division's overall performance and its CPOP activities by surveying community members." *Id.*

Under the Plan, each District's DPC is to be co-chaired by the District Commander and a civilian resident. They will be supported by each District's three Community Engagement Officers ("CEOs"), who are grant-funded and tasked specifically to "aid with entrenching community policing tactics and philosophies throughout the entire Division." *Id.* at 6. The CEOs are not

responsible for patrol and do not respond to calls for service. Accordingly, the DPC Plan assigns them responsibilities such as participating in their respective DPC, seeking partnerships from a cross-section of the community, assisting with collaborative problem-solving initiatives, attend community meetings, and bridging officers with community members. *Id.* at 6-7.

To expand the DPCs' audience and membership, as called for by the Decree, the proposed DPC Plan contemplates a number of activities, including:

- Utilizing an "asset map" to identify community groups and associations that are currently not involved with DPCs;
- Conducting intentional outreach to communities such as youth, homeless, and LGBTQ;
- Participating in events hosted by communities;
- Partnering with organizations such as community development corporations; and
- Moving meetings to different locations and times. *Id.* at 9-10.

Further, the Plan acknowledges that "DPCs must also account for community members that may be unable or unwilling to participate in monthly meetings." *Id.* at 10. To do so, the DPCs regularly will, among other things:

- Provide community members with more information about the goals of the meetings;
- Add new discussion items to the agenda that are requested by community members;
- Move the meeting time and/or location to increase accessibility and focus on different areas' concerns; and
- Ask residents about other reasons for the lack of participation and modify meetings where possible to address those concerns. *Id*.

5

If community members still are unwilling or unable to attend the meetings, the "DPC co-chairs, CEOs, and CRB will continue to meet with them at least quarterly, and discuss the topics of the monthly DPC meeting and any other concerns that they may have." *Id.*  DPCs also will survey meeting attendees with a questionnaire to identify any gaps in representation, such as kinds of organizations or stakeholders that are missing from the meeting. *Id.* at 11.

The DPC Plan also contemplates that the District Commanders, CEOs, CRB District representatives DPC co-chairs, and the Bureau of Community Policing Commander will meet bi-annually to discuss strategies to increase participation at each DPC and their effectiveness. *Id.* at 13.

Each DPC must prepare an annual written report containing "identified strategies, concerns and recommendations to address crime, safety, and increased participation in the DPC." *Id.* at 14. Each report will also assess any barriers that challenge the DPC to implementing identified strategies and recommendations.  The reports will be presented to the CPC upon their completion.

The Monitoring Team reiterates here that the DPCs were not birthed by the Decree. Instead, the Decree proposes a refinement of the Division's prior District Community Relations Committees.  Essentially, the Decree envisions that all community members—even those who may be most critical or skeptical of law enforcement—must be able to attend, participate in, and feel welcome at DPC meetings.  The Monitoring Team looks forward to the Division working past organizational inertia (concomitant with any mandated effort to improve an existing initiative) and executing the DPC Plan to ensure that the five DPCs are all effective in their ability to reach Cleveland residents.  The Team also looks forward to the Division and CPC working together to select officers for the DPCs, as required by the Decree.  The Monitoring Team will be attending and observing upcoming DPC meetings, across all Districts, to see if the Division's subsequent strides in this area are working to get things to where they need to be.

## V. CONCLUSION

The task of the Monitoring Team is to duly consider whether the City's submitted District Policing Committee Plan satisfies the terms of the Consent Decree. The Monitoring Team concludes that the District Policing Committee Plan meets the terms of the Consent Decree. Accordingly, the Monitor approves the Plan in its entirety and requests that this Court order it effective immediately.

Respectfully submitted,

/s/ Matthew Barge

MATTHEW BARGE
Monitor
40 Washington Square South
New York, New York 10012
Tel: (202) 257-5111
Email: matthew.barge@21cpsolutions.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2019, I served the foregoing document entitled Motion to Approve Cleveland Division of Police District Policing Committee Plan via the court's ECF system to all counsel of record.


                                                            /s/ Matthew Barge
                                                            MATTHEW BARGE