IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 1:15-CV-01046 |
| Plaintiff, | ) |
| vs. | ) JUDGE SOLOMON OLIVER, JR. |
| CITY OF CLEVELAND | ) **MOTION TO APPROVE CLEVELAND** |
| | ) **DIVISION OF POLICE STAFFING PLAN** |
| Defendant. | ) |

Pursuant to Paragraphs 319 through 321 of the Consent Decree and the Revised Third-Year Monitoring Plan in the above-captioned matter, the City of Cleveland (the "City"), on behalf of the Cleveland Division of Police ("CDP" or "Division"), submitted a proposed Staffing Plan, attached hereto as Exhibit A.

The Monitoring Team has carefully reviewed the proposed Staffing Plan.  The Team has determined that the Staffing Plan identifies important changes to CDP's patrol operations—particularly in its deployment of patrol officers—that will allow the Division to more effectively meet its longstanding mission to promote public safety and its newly formalized mission to deliver community and problem-oriented policing.  The Monitoring Team therefore recommends that the Court approve CDP's Staffing Plan.

I.  **SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING STAFFING**

The Consent Decree required that the Division "complete a comprehensive staffing study to assess the appropriate number of sworn and civilian personnel to perform the functions necessary for CDP to fulfill its mission, and satisfy the requirements of this Agreement." Dkt. 7-1 at ¶ 319. Subsequently, CDP needed to "develop an effective, comprehensive Staffing Plan that is consistent with its mission, including community and problem-oriented policing, and that will allow CDP to meet the requirements of this Agreement." *Id.*

Specifically, the Staffing Plan must "address and provide for each of the following:

- "personnel deployment to ensure effective community and problem-oriented policing;
- "a sufficient number of well-trained staff and resources to conduct timely misconduct investigations;
- "to the extent feasible, Unity of Command; and
- "a sufficient number of supervisors." *Id.* at ¶ 320.

Along with those specific requirements, the Staffing Plan must also "allow CDP to meet the [other] requirements of this Agreement[,]" including, but not limited to, rigorous investigations and reviews of force incidents; specialized crisis intervention officers; supervisors that can competently supervise officers and review stops, searches, and arrests; the implementation of an Early Intervention System. *Id.* at ¶¶ 93-130, 151, 168, 322, 326-36. These various provisions necessarily require changes to the way that CDP deploys its existing personnel and to the overall number of sworn and civilian personnel.

II.  **PROCEDURAL HISTORY**

On June 17, 2016, CDP submitted to the Parties and Monitoring Team a Resource Study and Deployment Proposal that provided an estimate of staffing levels necessary to do all that the

Division must do to ensure safe, effective, and constitutional policing. While the document helped the Monitoring Team to understand the Division's current personnel and deployment methods, it was not yet the type of plan contemplated by Paragraph 320 of the Decree. Subsequently, the Parties agreed to postpone active work relating to the creation of a staffing plan in order for the Division to focus on the Republican National Convention in 2016, finalize the use of force policies, and implement other core processes and policies that might significantly impact necessary or desired staffing levels.

Following CDP's major accomplishments relating to use of force and crisis intervention, as well as the work to finalize the Division's CPOP Plan, the Parties renewed their focus on the Staffing Plan in late 2017, seeking to construct a plan around the appropriate number of personnel that would permit CDP to fulfill its mission and to satisfy the various requirements of the Decree outlined above.

After continued drafting, the Staffing Plan was released to the public for community comment and input on May 15, 2018. The community input period closed on September 28, 2018. During this time, the Cleveland Community Police Commission ("CPC" or "Commission"), led by its Staffing Work Group, held community meetings and distributed paper and online surveys to solicit residents' thoughts on the Staffing Plan. The City similarly held meetings and surveyed residents through the District Policing Committees and other community partnerships.

On February 17, 2019, CDP incorporated the final round of feedback from the Department of Justice and Monitoring Team and submitted the final draft of the Staffing Plan.

### III. STANDARD OF REVIEW

The Monitoring Team's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented." Dkt. 7-1 at ¶ 351; *accord id.* ¶ at 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed

3

and implemented under" the Decree). The task of the Monitoring Team here is to determine whether the submitted Staffing Plan complies with the Consent Decree's requirements.

## IV. ANALYSIS OF THE STAFFING PLAN

The proposed Staffing Plan largely, and understandably, focuses on CDP's Patrol Section, which is tasked with "crime reduction, coupled with community engagement and problem-solving with community members[,]" and hence is "considered the backbone of the Division[.]" Ex. A. at 17. The major change contemplated in the proposed Staffing Plan is the shift to a "workload-based model" for CDP's Patrol Section. A workload-based model derives staffing decisions from current calls for service. In short, it estimates future staffing needs and deployment strategies by modeling current police activity. This kind of analysis allows a department to determine where it needs additional resources or where it can reallocate existing resources (by location or by time).

In developing its Staffing Plan, CDP analyzed citizen-initiated calls for service in 2016, including analysis by location and across time (time of day, day of the week, month, and patrol shift). *Id.* at 20-23. Calls also were analyzed by the type of call, identifying the top 10 calls across Cleveland. *Id.* at 24. The Division estimated the amount of officer time spent on calls for service, broken down by priority codes (four categories of calls based on how immediate an officer response is required). The Staffing Plan then considers the shift relief factor, or the "relationship between the maximum numbers of days that an officer can work and actually works." *Id.* at 29. This number allows a better estimate of the appropriate number of officers that should be assigned to a shift. It considers scheduled days off, vacation time taken off, personal holidays, requested days off, and required time spent training in the Police Academy.

This method of analysis allowed the Division to develop a recommended staffing level. *Id.* at 32. These staffing levels were then adjusted based on practical estimates that 25% of all calls require a backup car and that 40% of officers' time is not dedicated strictly to answering calls for

service. Specifically, "CDP's model includes time for those other activities set at 20% community engagement and 20% for administrative duties (total of 40% of time). Officers' administrative time can include the completion of criminal and crash reports, completion of duty reports, lunch breaks and categorizing body cameras footage to name a few functions. The new staffing plan allocates 20% of officer's time on community engagement and problem-oriented policing, which can include bicycle patrols, community meetings, safety fairs and business and residential safety audits." *Id.* at 33.

Ultimately, Figure 15 in the Staffing Plan indicates the Division's recommended staffing levels for each CDP District. *Id.* at 35-37.

Although the Staffing Plan primarily focuses on the staffing of the Division's Patrol Section, the Plan also includes recommended staffing levels for CDP's investigative units, factoring in the average caseload, the average time it takes to investigate types of crime ordered by "solvability," and the number of investigators needed to conduct thorough investigators. *Id.* at 37-38 (Tables 7 and 8).

The Staffing Plan also addresses ways for CDP to manage demand for police services. A decrease in demand for services naturally results in CDP members who are less burdened and can focus their efforts in areas that are more productive for the individual officer and the Division altogether. One significant aspect explored by the Staffing Plan is calls for service that result from alarms. As part of the Plan, CDP analyzed the alarm calls it received in 2015. CDP officers responded to 23,659 residential and business alarms, of which 98% were false. *Id.* at 42. The frequency of false alarms wastes substantial time for officers who respond to those alarms, with a median response time of 40 minutes per call and an estimated total of "nearly 28,542 officer hours on alarm calls." *Id.* at 43. Under the Plan, CDP will look to "control and reduce the frequency of false alarms through legislation and increasing the capacity of the Web-based Crime Reporting [an

5

online reporting system CDP currently uses for certain no-suspect or minor crime reports for which officers need not physically respond to the scene][.]" *Id.* at 44.

Altogether, the Staffing Plan is a thorough examination of CDP's current resources that appropriately looks to various models, such as the workload-based model, as a way to better align CDP staffing with real-world demands. The Plan also considers alternative ways to free up time such that CDP officers are better positioned to meet the new Division-wide expectations, such as 20% of patrol officers' time spent engaging the community, as part of the Division's expressed commitment to community and problem-oriented policing. The Monitoring Team will be closely auditing and assessing whether the Staffing Plan's contemplated changes, and the overall shift to a workload-based model, in fact permits officers a sufficient amount of time to meet the Division's new expectations and its ability to best promote public and officer safety.

## VI. CONCLUSION

The Monitoring Team's recommendation that the Court approve the Staffing Plan is limited to the extent that the Plan was intended to primarily address the overall staffing of CDP's patrol and core investigative functions. It does not address, nor does it try to address, the levels of staffing that various specialty units – such as Internal Affairs or Training – may need as CDP goes forward with implementing various new policies, procedures, and required training initiatives. Thus, the Parties and Monitoring Team have agreed that additional discussions about long-term levels of staffing for various specialty units – especially those implicated by the Decree – will need to occur in the coming months. Nevertheless, the Plan's primary scope of patrol and core investigative functions is sufficiently covered for purposes of the Decree's core Staffing Plan requirements.

The task of the Monitoring Team is to duly consider whether the City's submitted Staffing Plan satisfies the terms of the Consent Decree. The Monitoring Team concludes that the Plan

meets the terms of the Consent Decree. Accordingly, the Monitor approves the Staffing Plan in its entirety and requests that this Court order it effective immediately.

                                                                     Respectfully submitted,

                                                                     /s/ Matthew Barge

                                                                     MATTHEW BARGE
                                                                     Monitor
                                                                     40 Washington Square South
                                                                     New York, New York 10012
                                                                     Tel: (202) 257-5111
                                                                     Email: matthew.barge@21cpsolutions.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, I served the foregoing document entitled Motion to Approve Cleveland Division of Police Staffing Plan via the court's ECF system to all counsel of record.

/s/ Matthew Barge
MATTHEW BARGE