# EXHIBIT B

 

# CLEVELAND DIVISION OF POLICE
# GENERAL

| EFFECTIVE DATE: | CHAPTER: | | PAGE: | NUMBER: |
|---|---|---|---|---|
| | | 04-25-2019 | 1 of 9 | |
| SUBJECT: | | INVESTIGATORY STOPS | | |
| CHIEF: | | | | |

**PURPOSE:** To establish Cleveland Division of Police guidelines so that all investigatory stops are conducted in accordance with the rights secured or protected by the Constitution and federal and state law. The Division will conduct investigatory stops fairly and respectfully, consistent with the Division's commitment to procedural justice, community and problem-oriented policing, and community values.

**POLICY:** It is the policy of the Division of Police that all investigatory stops will be conducted in a manner that not only promotes the safety of police officers and the public but also conforms to the constitutions of the United States and the State of Ohio. Officers shall not use an individual's gender, race, ethnicity, national origin, or perceived sexual orientation as a factor, to any extent or degree, in establishing reasonable suspicion or probable cause, unless such information is part of an actual and credible description of a specific subject in an investigation that includes other identifying factors.

**DEFINITIONS:**

**Arrest:** The taking of a person into custody by an officer based upon a warrant or probable cause. To constitute an arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the officer arresting him/her. An arrest is a restraint of greater scope or duration than an investigatory stop or detention.

**Consensual Encounter:** A voluntary encounter between the police and an individual with the intent of engaging in casual, and/or non-investigative conversation. A reasonable person in the individual's position would feel free to leave and/or decline any of the officer's requests at any point.

**Investigatory Stop (Terry Stop):** A brief, minimally intrusive detention of an individual, including the occupants of a vehicle, during which a reasonable person in the individual's position would not feel free to leave, as defined in *Terry v. Ohio, 392 U.S. 1*. To justify a stop, the officer must have reasonable suspicion that the stopped individual has, is, or is about to engage in criminal conduct. The stop must be based on specific, objective, articulable facts that the officer knew before the stop. Information learned during a stop can lead to additional reasonable suspicion or probable cause that a crime has occurred, but it cannot provide the justification for the original stop.

**Juvenile:** An individual under the age of 18.

**Non-Custodial Interview:** A voluntary and consensual investigatory interview that an officer conducts with an individual during which the individual is free to leave and/or decline any of the officer's requests at any point.

**Pat Down/Frisk:** A limited search during an investigatory stop in which an officer conducts a pat down of the outer clothing of a person for weapons when the officer reasonably suspects that the particular

person is armed and dangerous. It is limited to what is necessary to detect weapons and must be based on reasonable articulable suspicion that the person is armed. An officer may not manipulate objects that are discovered under the clothing to determine whether they are contraband.

**Probable Cause:** The facts and circumstances known to the officer(s) that would lead a reasonable person to believe that an individual has more likely than not committed or is committing a crime.

**Reasonable Suspicion:** An objectively, justifiable suspicion that is based on specific and articulable facts or circumstances that justifies an officer stopping an individual that has committed, is committing, or is about to commit an offense. Reasonable suspicion is more than a hunch but less than probable cause. A police officer stopping an individual must be able to point to specific facts or articulable circumstances even though the level of suspicion need not arise to probable cause.

**Search:** A search is either a physical intrusion into a constitutionally protected area (a person, house, paper, or effect) for the purpose of gathering information or any conduct that violates a reasonable expectation of privacy by officer(s) or civilians acting as an agent of law enforcement.

**Seizure:** When an officer's words or actions would make a reasonable person believe that he/she is not free to leave or terminate the encounter.

**PROCEDURES:**

I. **Levels of / Civilian/ Police Encounters**

   A. There are three levels of civilian-police encounters. The following are the three types of encounters, listed in order from consensual to most intrusive: voluntary contacts, investigatory (Terry) stops, and arrests.

      1. There are two categories of voluntary contacts that do not constitute a seizure:

         a. Consensual Encounters

         b. Non-custodial Interviews

      2. Investigatory (Terry) Stops – A seizure based on reasonable suspicion

      3. Arrests – A seizure based on probable cause. Separate guidelines govern searches in the context of an arrest. [Cross-reference to "Search & Seizure, "Arrests" policies.]

   B. Officers must distinguish between voluntary contacts and Terry stops:

      1. The inquiry into whether an individual would feel free to leave and/or decline any of the officer's requests at any point is an objective one, depending on all of the circumstances surrounding the contact between an officer and an individual, including but not limited to:

         a. Number of officers present

        b.      Blocking the individual's vehicle or freedom to move

        c.      Physical contact with the individual

        d.      Whether the officer's language or tone of voice indicates that compliance with the officer's requests is required

        e.      Display of a weapon

        f.      Display of official police vehicle indicators such as signals of flashing, oscillating, or rotating lights.

    2.    Officers shall be aware that a juvenile may not feel free to leave when adults in the same circumstances would feel free to leave.

## II. Basis for an Investigatory Stop

A. Law enforcement and investigatory decisions must be based upon observable behavior, facts, and/or specific intelligence, which form the basis for, among other things, determinations of reasonable suspicion and probable cause.

B. Officers shall not conduct investigatory stops unless they have developed the necessary reasonable suspicion or probable cause. An individual's unwillingness to engage or cooperate with the police, choosing not to answer questions, or ignore police is not a sole basis for reasonable suspicion.

    1.    A person exercising the right to openly carry a firearm, standing alone or in connection with a call to police that only reports the open carry itself (no other suspicious behavior), does not justify an investigatory stop and frisk.

C. An officer(s) may conduct an investigative stop of an individual after identifying themselves as a Cleveland Police Officer(s), if they have reasonable suspicion that the individual has committed, is committing, or is about to commit an offense.

D. A vehicle stop for a traffic code violation is not an investigative stop. An officer shall have probable cause to conduct a vehicle stop for a traffic code violation or completed misdemeanor.

E. Every officer conducting a stop must be prepared to articulate specific facts and circumstances in support of the officer's determination that reasonable suspicion or probable cause was present and identified.

F. Pedestrians, persons in vehicles, and persons on bicycles may be stopped.

G. Officers may take into account the race, ethnicity, age, gender or other demographic characteristics of an individual in establishing reasonable suspicion or probable cause only when the characteristics are part of an actual and credible description of a specific subject in an investigation that includes other identifying factors.

H. Officers shall not use or rely on information the officer knows or reasonably suspects to be materially false or incorrect in effectuating an investigatory stop or detention, or in establishing reasonable suspicion for a search.

I. Officers shall not rely <u>solely</u> upon an individual's geographic location, or presence in a high crime area without any other specific and articulable facts indicating that the individual has been, is, or is about to engage in criminal activity, as the basis for an investigatory stop.

### III. Articulating Reasonable Suspicion

A. The existence of reasonable suspicion is determined by the totality of the circumstances. The totality of the circumstances is based on all of the facts known to the officer and the circumstances that existed prior to the stop.

B. Officers shall not rely <u>solely</u> upon any single factor listed below without other specific and articulable facts indicating that the individual has been, is, or is about to engage in criminal activity, as the basis for an investigatory stop.

1. When formulating reasonable suspicion, officers may rely on activity they perceive through their own senses, through information obtained from other credible persons, or through a combination of both factors, including but not limited to the following:

    a. The Person's Appearance: Does this person fit the specific description of a subject in a particular unlawful incident?

    b. The Person's Actions: What suspicious activity has been observed? Is the person attempting to flee, making inexplicable movements, displaying signs of nervousness or involved in activity commonly known to the officer as criminal in nature?

    c. Prior Knowledge of the Person: Does the person have a criminal history? Has the person been arrested in the past for certain types of criminal behavior? What information has been received from other parties about the person?

    d. Area of Stop: Is the person in the area of or at the location of a recently committed crime? Is this area known for high levels of criminal activity like drug trafficking? Has this area been inundated with a certain type of crime?

    e. Time of Day: Is it unusual for people to be in this area at this time? Is it the time of day when a certain type of crime has been taking place according to reports or your knowledge?

    f. Law Enforcement Training and Experience: Is the person's appearance or demeanor consistent with specific criminal activity?

    g.    Law Enforcement Purpose: Are you investigating a specific crime, type of crime or pattern of criminal activity?

    h.    Source of Information: From whom did you receive your information? How credible is the person you are receiving information from? How did this person obtain their information? Can you corroborate the information?

## IV. Police Conduct During Investigatory Stops

A. If during an investigatory stop, probable cause is developed resulting in a custodial arrest for obstructing official business, resisting arrest, or assaulting a police officer with no other substantive violation alleged, officers shall request a supervisor respond to the scene.

B. Officers shall limit the investigatory stop to a reasonable scope.

    1.    Actions that would indicate to a reasonable person that they are being arrested or indefinitely detained may convert an investigatory (*Terry*) stop into an arrest requiring probable cause or an arrest warrant.

    2.    Unless justified by the reasons articulated for the original stop, officers must have additional articulable justification for further limiting a person's freedom during an investigatory (*Terry*) stop. Actions that would further limit a person's freedom of movement may include actions such as:

        a.    Taking a person's identification/driver's license away from the immediate vicinity;

        b.    Ordering a motorist to exit a vehicle;

        c.    Placing a pedestrian up against a wall;

        d.    Directing a person to stand or remain standing, or to sit on a zone car bumper or any other place not of their choosing;

        e.    Directing a person to lie or sit on the ground;

        f.    Applying handcuffs;

        g.    Transporting any distance away from the scene of the initial stop, including for the purpose of witness identification;

        h.    Placing the individual into a police vehicle;

        i.    Pointing a firearm; and

        j.    Pat down/Frisking for weapons

C. Officers shall limit the investigatory stop to a reasonable amount of time.

    1. Individuals may be stopped for only that period of time necessary to affect the purpose of the stop. Any delays in completing the necessary actions must be objectively reasonable and supplemented by additional reasonable suspicion or probable cause and specifically articulated in any applicable reports documenting the investigatory stop.

    2. Officers shall not extend a detention solely to await the arrival of a supervisor.

D. Officers shall be courteous and professional during all investigatory stops.

    1. When feasible and as early in the contact as safety permits, officers shall inform the subject of the following:

        a. The officer's full name and badge number

        b. The fact that the officer is a Cleveland Police Officer

        c. The reason for the stop

        d. The fact that the stop is being recorded, if applicable [cross-reference to WCS Policy]

    2. During the stop officers may offer further explanation of the circumstances and reason for stop. Officers will not extend a detention unreasonably to explain the stop.

    3. Wherever time and circumstances permit, officers shall listen to the individual and answer any reasonable questions that the individual has relating to the interaction

## V. Rights of Person(s) Subject to Investigatory Stop(s)

A. No person who is in a public place shall refuse to disclose the person's legal name, address, or date of birth when requested by a law enforcement officer who reasonably suspects the following:

    1. The person is committing, has committed, or is about to commit a criminal offense;

    2. The person witnessed any of the following:

        a. An offense of violence that would constitute a felony under the laws of the state;

        b. A felony offense that causes or results in, or creates substantial risk of, serious physical harm to another person or to property.

B. A detained person must also, by statute, provide identification when:

1. The person is a driver stopped for a traffic violation

2. The person is attempting to purchase liquor

3. The person is a concealed carry permit holder

C. Officers may not transport a person to any police facility or jail merely for the purpose of identifying them unless they have probable cause for arrest.

D. During the investigatory stop, the detained person(s) need not be advised of their *Miranda* rights until probable cause to arrest develops or until the questioning becomes sustained and coercive rather than brief and casual.

VI. **Anonymous Tips**

A. Officers cannot search or seize a subject based on an anonymous tip alone.

B. Information from a person not known by police is not to be assumed trustworthy without additional details which point to criminal activity.

C. Officers must carefully develop reasonable suspicion in cases involving anonymous tips by corroborating information received with what the officer observes on scene.

D. Officer's observations while on scene, securing more complete information from an anonymous person and/or other circumstances that would tend to support the information received are all ways that officers can use to articulate reasonable suspicion allowing a Terry stop.

VII. **Documentation and Reporting/Review of Investigatory Stops**

A. Documentation of Investigatory Stops

1. Officers conducting investigatory stops shall complete an entry into the data collection software program. Officers shall complete a person entry, a vehicle entry or both, recording the information of individuals involved, subject to the following guidelines:

    a. Officers shall complete a data collection entry in connection with a stop, whether or not an arrest, report, citation, or summons is completed.

    b. The primary unit initiating the stop shall be responsible for completion of the data collection entry.

2. All data collection entries shall be completed using the approved data collection software.

3. All data collection entry forms shall be completed prior to the end of the officer's assignment or tour of duty.

4. The documentation should contain all information requested in the data collection software, but at a minimum must contain at least the following elements:

    a. Location of the stop;

    b. Subject's race, ethnicity, age, and gender;

    c. If a vehicle stop, the presence and number of any passengers;

    d. If a vehicle stop, whether the driver or any passenger was required to exit the vehicle, and the reason for doing so;

    e. Reason for the stop, including brief description of the facts creating reasonable suspicion;

    f. Whether any individual was asked to consent to a search and whether such consent was given;

    g. Whether a pat down, frisk, or other non-consensual search was performed on any individual or vehicle, including a brief description of the facts justifying the action;

    h. A full description of any contraband or evidence seized from any individual or vehicle;

    i. Disposition of the investigatory stop, including whether a citation or summons was issued to, or an arrest made of any individual, including charges; and

    j. Disposition of any search conducted including if a search was conducted and nothing was found.

B. Reporting and Review of Investigatory Stops

    1. Officer Responsibilities

        a. Officers shall articulate the justification for an investigatory stop in a specific and clear manner in their reports. Officers must be able to clearly articulate the information they relied upon, that was not influenced by bias or prejudice, in determining reasonable suspicion.

      b.    Officers shall not use "canned" or conclusory language without supporting detail in reports documenting investigatory stops. Instead, officers will use specific and individualized descriptive language in reports.

  2.    Supervisor Responsibilities

      a.    Supervisors shall review all documentation of investigatory stops for completeness and adherence to law and Division policy.

      b.    Within seven days of the stop, supervisors shall document and report investigatory stops that appear unsupported by reasonable suspicion, or that are otherwise in violation of CDP policy and investigatory stops that, while adhering with law and policy, indicate a need for corrective action or review of policy, tactics, or training.

      c.    If a supervisor concludes that a stop appears to be inconsistent with Division policy, the supervisor, in consultation with the Commander, shall address the concern with the officer involved and either:

          1.    Provide non-disciplinary corrective action and document such action in the tracking software, or

          2.    Refer the matter to Internal Affairs for administrative or criminal investigation.

  3.    Commander Responsibilities

      a.    The officer's commander shall review, within seven days of their completion, all supervisory reports of investigatory stops not supported by reasonable suspicion, were otherwise in violation of CDP policy, or otherwise indicated a need for corrective action or review of agency policy, strategy, tactics, or training.

      b.    The commander shall evaluate the supervisor's assessment and recommendations and ensure that all appropriate action is taken, including referring the incident to Internal Affairs for investigation, if warranted.

      c.    The commander shall take appropriate non-disciplinary corrective action and/or will initiate the disciplinary process against supervisors who fail to conduct complete, thorough, and accurate reviews of officers' investigatory stops.

  4.    The Division shall take into account the quality and completeness of these supervisory and commander reviews of officers' investigatory stops in supervisory and commander performance evaluations.

## VIII. Training

A. The Division shall provide officers with annual search and seizure/investigatory stops in-service training that is adequate in quality, quantity, type, and scope.

