EXHIBIT O

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Curriculum**
**Principles of Communication and De-escalation Lesson Plan**
**Version 2, revised April 01, 2019**

**Course Title:** Principles of Communication and De-escalation

**Assigned Course Number:** TBD

**Author:** Gregory Truhan, MS
 Senior Special Agent, United States Secret Service (retired)
 Ohio Peace Officer Training Commission, Instructor Number: BAS22425

**Date Written:** April 01, 2019

**Approving Authority:** PENDING

**Overview:**

The Principles of Communication and De-escalation module of the 40 Hour CIT Curriculum is a 60 or **90\*** minute presentation designed to provide participants with an overview and basic understanding of human biological and psychological factors impacting an officer's ability to gain compliance during a crisis intervention encounter.  The Communication and De-escalation Techniques presented in this module blend best practices from multiple resources to:

- Set the conditions whereby tense situations may be defused, calmed, and contained
- Set the conditions for future positive contacts with the same subjects (frequent flyers)
  - "Is officer…working?" versus "Don't send officer…"
- Increase the chances of a positive, non-violent response or outcome, and decrease the need to use force
- No 100% guarantee, but a "reasonable standard" starting point in conjunction with your agency's **Use of Force** continuum policies
- Improved police-community relations

**Course Goals:**

EVERY DAY, law enforcement officers encounter persons with a "diminished capacity" to cope and function.  The **safety** of officers, the public, and the persons they encounter can be compromised when officers are not adequately prepared to respond to such encounters.  **Nothing in this training is in any way telling officers to put their own safety in jeopardy.**  In fact, statistics show a **reduction** in injuries and deaths to everyone involved using the simple but powerful techniques in this presentation.

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Curriculum**
**Principles of Communication and De-escalation Lesson Plan**
**Version 2, revised April 01, 2019**

**Course Objectives:**

- Define "diminished capacity" special populations
- The Body's Response to Fear
- Rationale for Communication and De-escalation Techniques
- The Difference Between Traditional Encounters and Crisis Intervention Encounters
- The EAR Model's Three Phases of a Crisis Encounter
- Typical Dispositions for Resolving a Crisis Intervention Incident
- Tactics and Behaviors to Avoid While Engaging in De-escalation
- If You Make a Mistake (intent versus impact)
- Champion v. Outlook Nashville, Inc. (2004)
- Five Universal Truths of Verbal Judo

**Methodology:**

Participants will be taught via lecture by a retired Senior Special Agent with the United States Secret Service who investigated countless diminished capacity populations for threatening to kill the President of the United States, and who has been a certified Crisis Intervention Instructor for the Ohio Peace Officer Training Commission since 2007.  A power point presentation will serve as an instructional aide, along with video example(s) of effective communication and de-escalation techniques.  The instructor will also use class discussion to increase participant interest and involvement.

**Target Audience:**

Cleveland Division of Police Officers selected to serve as a Specialized CIT Officers

**Class Size:**
TBD

**Evaluation Process:**

This module is intentionally presented at the beginning of the last day of training to give officers the tools they will need to successfully complete the Role Play module that follows for the remainder of the day.  Therefore, evaluation of course objectives of this module will take place during the Role Play module utilizing a check list from the PowerPoint presentation and the Role Play scenarios.

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County
40 Hour CIT Curriculum
Principles of Communication and De-escalation Lesson Plan
Version 2, revised April 01, 2019**

**Logistical Information:**

Site:  TBD

Training Equipment:

       Computer, projectors, screen and speakers

       Power point presentation (electronic)

       Power point presentation (handout)

**Staffing Requirements:**

Instructor:  One Federal Law Enforcement Agent (retired)

**Training Summary:**

All assigned participants will arrive at the designated time and go to the designated facility. Participants will receive an overview of the training, performance and learning objectives, and an introduction to the material.

**Training Schedule (60 minutes):** *I prefer 90 minutes*

| Time | Slide# | Activity |
|---|---|---|
| 0000-0002 | 1 | Welcome participants; introduction of course and instructor presentation |
| 0002-0004 | 2 | Course Objectives |
| 0004-0007 | 3 | Course Goals; Define "diminished capacity" special populations |
| 0007-0012 | 4-6 | The Body's Response to Fear |
| 0012-0013 | 7 | Rationale for Communication and De-escalation Techniques |
| 0013-0019 | 8-11 | The Difference Between Traditional Encounters and Crisis Intervention Encounters |
| 0019-0020 | 12 | The EAR Model's Three Phases of a Crisis Encounter (title slide) |
| 0020-0025 | 13-15 | EAR Model Engage Phase |
| 0025-0030 | 16-17 | EAR Model Assess Phase |
| 0030-0037 | 18-19 | EAR Model Resolve Phase |
| 0037-0040 | 20-21 | Tactics and Behaviors to Avoid While Engaging in De-escalation |
| 0040-0041 | 22 | If you make a mistake (intent versus impact) |
| 0041-0042 | 23 | Trust your instincts regarding Safety |
| 0042-0044 | 24 | Champion v. Outlook Nashville, Inc. (2004) U.S. Sixth Circuit Court of Appeals |
| 0044-0045 | 25 | Five Universal Truths of Verbal Judo |
| 0045-0060 | 26 | Closing Thoughts; Video: 5 minutes 11 seconds; Final Questions / Comments / Concerns; gregtruhan@yahoo.com Cell: 440-781-3043 |

**3**

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

## Slide 1 – Course Title

- Welcome the participants and introduce yourself;
- Questions / Comments / Concerns: please raise any time throughout the presentation

## Slide 2 – Course Objectives

- Define "diminished capacity" special populations
- The Body's Response to Fear
- Rationale for Communication and De-escalation Techniques
- The Difference Between Traditional Encounters and Crisis Intervention Encounters
- The EAR Model's Three Phases of a Crisis Encounter
- Typical Dispositions for Resolving a Crisis Intervention Incident
- Tactics and Behaviors to Avoid While Engaging in De-escalation
- If You Make a Mistake (intent versus impact)
- Champion v. Outlook Nashville, Inc. (2004)
- Five Universal Truths of Verbal Judo

## Slide 3 – Course Goals

- EVERY DAY, law enforcement officers and criminal justice employees encounter persons who under extreme stress; have been traumatized; are in crisis; have behavioral health issues; mental disorders; intellectual and/or developmental disabilities
- These conditions can collectively be referred to as **"diminished capacity"** to cope and function or as **"special populations"**
- The **safety** of officers, the public, and the persons they encounter can be compromised when officers and employees are not adequately prepared to respond to such encounters
- Note the order of 3rd bullet point:  Officer safety first; community safety second; persons encountered third
- **Nothing in this training is in any way telling officers to put their own safety in jeopardy.**  In fact, statistics show a **reduction** in injuries and deaths to everyone involved using the simple but powerful techniques in this presentation
- Provide an overview and basic understanding of human biological and psychological factors impacting an officer's ability to gain compliance during a crisis intervention encounter

Cleveland Division of Police / ADAMHS Board of Cuyahoga County
40 Hour CIT Course
Instructor Manual: Principles of Communication and De-escalation
Version 2, revised April 01, 2019

## Slide 4 – The Body's Response to Fear

- When our brain senses fear, a perceived threat or danger, the body's response is called: **Fight, Flight, Freeze**

- The body releases chemicals called cortisol and norepinephrine (adrenaline) in the bloodstream.  This increases our heart rate, sugar and fat levels for fuel, breathing rate, muscle tension, and blood pressure, all intended to provide the body with a burst of physical energy for survival
  o Ohio Peace Officer Training Commission, Trauma Informed Policing, 2017

## Slide 5 – The Body's Response to Fear

- The top section or the **thinking** part of the brain shuts down to make sure the focus is completely on survival.  That is why it is so hard to think / reason, and clearly communicate during the fear response
- Disorganized thinking from fear, when coupled with extreme stress, trauma, crisis, mental illness, non-compliance with medications, substance abuse, intellectual or developmental disabilities makes reasoning, communicating, and the ability to follow even simple requests much more difficult
  o Ohio Peace Officer Training Commission, Trauma Informed Policing, 2017

## Slide 6 – The Body's Response to Fear

- Police authority, uniform, equipment, and typical  command and control verbal and non-verbal demeanor can be frightening, intimidating, and / or threatening to persons with a diminished capacity, which can unintentionally **escalate** a situation to violence via the Fear response
- **Hallucinations**, where a subject is hearing or seeing things that are not there, can further inhibit the subject's ability to comply with even simple commands or requests
- **Paranoid** thoughts cause **mistrust** of others, including officers, and they may perceive you are there to harm them, triggering the body's fear response
  o Ohio Peace Officer Training Commission, Crisis Intervention, 2016

Cleveland Division of Police / ADAMHS Board of Cuyahoga County
40 Hour CIT Course
Instructor Manual: Principles of Communication and De-escalation
Version 2, revised April 01, 2019

## Slide 7 – Rationale for Communication and De-escalation Techniques

- Sets the conditions whereby tense situations may be defused, calmed, and contained
- Sets the conditions for future positive contacts with the same subjects (frequent flyers)
  - "Is officer…working?" versus "Don't send officer…"
- Simple techniques that can increase the chances of a positive, non-violent response or outcome and decrease the need to use force
- No 100% guarantee, but a "reasonable standard" starting point in conjunction with your agency's **Use of Force** continuum policies
- Improved police-community relations
  - o Techniques are recommend for all police encounters, not just diminished capacity populations i.e., arguments / fights / domestic violence

## Slide 8 - The Difference Between Traditional Encounters and Crisis Intervention Encounters

**…is the need to be non-confrontational**
- Such a requirement to, in effect, shift gears is completely opposed to the way officers are routinely expected to, and may instinctively try to control conflict
- "Slowing down the process" and / or "backing off", central elements of **de-escalation**, often are not natural instincts for police
- In the past, officers were expected to respond to calls for service and resolve / clear them as soon as possible
  - o Ohio Peace Officer Training Commission, Crisis Intervention, 2016

## Slide 9 - The Difference Between Traditional Encounters and Crisis Intervention Encounters

- Officers are forced to make split second decisions about their safety and the safety of others
- Those decisions are often based upon **command and control** tactics
- The same command and control tactics employed to take a typical criminal suspect into custody can unintentionally **escalate** a person with diminished capacity to violence via the fear response
- Taking a less physical, less authoritative, less controlling, less confrontational approach might provide the officer with **more** authority and control during such an encounter…
- …and it is a "reasonable standard" starting point
  - o Ohio Peace Officer Training Commission, Crisis Intervention, 2016

3

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

## Slide 10 – The Difference Between Traditional Encounters and Crisis Intervention Encounters

- Be **tactically** minded, but present as non-threatening
- A trained officer can conceal his / her combat ready stance while being empathetic and appearing non-threatening
- If we view an individual as **afraid** and **desperate**, then **responding** by **providing** a sense of **safety, hope, and optimism** may be the most valuable contribution you can make
- Assure / reassure them of their safety and that no harm is intended:
   - "We're not here to hurt you"
   - "You're safe with us"
   - "We're not taking you to jail" (if there is a better option)

## Slide 11 – The Difference Between Traditional Encounters and Crisis Intervention Encounters

- Allow pacing and venting if safe to do so:
   - ➢ Pacing could be a side effect of medications
   - ➢ Pacing and venting help release pent-up energy which helps diffuse the situation. Also helps use up their energy if you have to go hands on with them
- Continually communicate / forecast your intentions / actions throughout the interaction so they won't be misinterpreted

## Slide 12 – The EAR Model's Three Phases of a Crisis Encounter

1. Engage
2. Assess
3. Resolve

   - ➢ This is a fluid model and the phases may occur simultaneously
      - o Ohio Peace Officer Training Commission, Crisis Intervention, 2016

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

## Slide 13 – EAR Model        Engage

- **Purpose of Engage** – make a connection / establish and maintain **empathy** and **rapport** to gain their trust
- The first 10 seconds of a crisis encounter are critical in setting the tone for de-escalation
- If there is more than one officer present, have one take the lead in communicating and de-escalating the situation to avoid overwhelming, agitating, and / or confusing the person
- The other officer(s) provide cover, and may minimally participate if helpful
- You may need to switch roles if the first officer has difficulty establishing rapport
  - Sometimes only one officer is able to **connect** with one or more of the parties. Barriers to **rapport** include:  race, gender, attitude, or negative reminders triggered by the officers appearance, communications, demeanor, or some other unknown or unidentified factors could be a barrier and/or cause an officer to irritate, aggravate or alienate one or more of the parties

## Slide 14 – EAR Model        Engage

- Ask for permission when possible
   - "Can we come inside?"
   - "Can we talk?"
- Introduce yourself
- Ask for the person's first name…use it early and often

- ✓ Are you ok?
- ✓ Is something wrong?
- ✓ Can I / we help you?

## Slide 15 – EAR Model        Engage

- Take steps to calm the situation; your sense of calm can be transferred to others
- Be patient
- Move slowly
- Speak simply using a normal tone
- Limit the number of instructions / requests / orders you give at one time
   - Do we need to shout orders to gain compliance?
- You may need to repeat requests / orders
- Compliment or thank when the person responds as requested

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

## Slide 16 – EAR Model       Assess

- **Purpose of Assess** – gather the information you need about the situation and the person's condition to make the needed resolution
- Utilize Active Listening Skills:
    - ✓ **Restate**:  What I'm hearing is…
    - ✓ **Reflect**:  Sounds like you're angry because…
    - ✓ **Summarize**:  You're feeling…because of…

## Slide 17 – EAR Model       Assess

- **Identify:**
    - ✓ problems / grievances / issues / motivations
    - ✓ safety issues / suicidal / homicidal / violence ideations / weapons
    - ✓ **Loss Model Profile(s)**
    - ✓ medications and medical / mental health providers
    - ✓ substance abuse / addiction
    - ✓ auditory / visual hallucinations
    - ✓ housing or homeless
    - ✓ family / friends / co-workers (sources of information)

    - o Review **Loss Model Profiles** from earlier instruction.   In a crisis encounter – and particularly in a diminished capacity / special populations encounter – the individual may be experiencing pronounced emotions or feelings (e.g., anxiety, paranoia, despair, anger).  As an officer, you will not perform a clinical diagnosis; however, by applying the Loss Model to the situation, you should be able to determine a way to Engage, Assess, and Resolve the situation.  Four categories within the Loss Model: Loss of Reality; Loss of Hope; Loss of Control; Loss of Perspective.   This is also a fluid model; the person in crisis may experience different model profiles within a single encounter.

6

Cleveland Division of Police / ADAMHS Board of Cuyahoga County
40 Hour CIT Course
Instructor Manual: Principles of Communication and De-escalation
Version 2, revised April 01, 2019

## Slide 18 – EAR Model        Resolve

- **Purpose of Resolve** – bring the encounter to a safe resolution and to obtain the help the person needs
- The resolution usually depends on whether a serious crime was committed, if the person meets commitment criteria, and the availability of mental health and diversion resources
- If possible, provide options / choices and involve the person in decision making
  - increases chances of desired compliance
- Once you decide on a course of action, communicate / forecast your intentions / actions to the person by telling them what you are about to do; what will happen next; and / or what needs to be done; and why
  - So they won't be misinterpreted


## Slide 19 – Typical Dispositions for Resolving a Crisis Intervention Incident

- The below disposition options are listed in no particular order and will depend entirely on the presenting facts; your assessment; and in accordance with the law and your department's policies and procedures:
  - ✓ Arrest
  - o This should **not** always be your first option.  Significant efforts today to reduce the number of persons with mental illness in our jails and prisons.  Special Populations Court Dockets.  Appropriate when…there is a serious arrestable offense and you must make the arrest (violent felony; domestic violence); there is an arrestable offense and there are no resources readily available for treatment referral
  - ✓ De-escalate and refer
  - o Appropriate when no laws have been broken **or** the offense falls within the discretion allowed by your agency; there are no emergency medical needs; the person is sufficiently in control of his / her emotions and behavior and does not pose a danger of harm to self or others; there is a safety plan in place, with a family member or friend assuming responsibility for the person's well-being; you are able to make a referral to services with which the person can follow-up (COMMUNITY RESOURCES); Involuntary transport ("pink slip") criteria have not been met
  - ✓ **Voluntary** transport to hospital or crisis center for psychiatric assessment / commitment
  - ✓ **Involuntary** transport to hospital or crisis center for psychiatric assessment / commitment
    - ORC 5122.01 Emergency **Custody** / 4th Amendment "**seized**" / "Pink Slip" Criteria
    - Should we handcuff / restrain if de-escalation has been successful?  Department Policy and Procedure?  Officer discretion?

7

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

## Slide 20 - Tactics and Behaviors to Avoid While Engaging in De-escalation

- Moving suddenly, giving rapid orders, or shouting
- Forcing a discussion
- Maintaining direct and continuous eye contact
- Touching the person without letting the person know you intend to do so, unless essential to safety
- Crowding, cornering, or moving into the person's comfort zone unless necessary for safety

## Slide 21 – Tactics and Behaviors to Avoid While Engaging in De-escalation

- Expressing anger, impatience, or irritation
- Assuming that a person who does not respond is ignoring you
- Using sarcasm, mocking, insulting, or inflammatory language
- Talking about the person as if they weren't present
- Flagrantly lying or misleading the person to calm them, unless justified circumstances exist
- Challenge, reinforce, or validate delusions / hallucinations

## Slide 22 - If you make a mistake…   (intent versus impact)

- Empathize that a person could have a different perspective than yours
- Recognize, acknowledge, and discuss your original intent versus the undesired impact
    "I see that I upset you"
- Apologize
    "I'm sorry for…"
    "I didn't mean to…"
- Try Again
    "I want to help you…"
- It is more important to be / convey **genuine** caring, compassion, and empathy than worry about saying "all the right things"

8

Cleveland Division of Police / ADAMHS Board of Cuyahoga County
40 Hour CIT Course
Instructor Manual: Principles of Communication and De-escalation
Version 2, revised April 01, 2019

## Slides 23 - Trust your instincts regarding safety…

- If de-escalation is not working after reasonable efforts, traditional command and control tactics may be necessary to manage / resolve the situation
- Ensure the person understands this is a last resort
- If you have to use force, you can expect many diminished capacity populations to have a high threshold for pain and greater than normal strength
- Allowing pacing and venting (if safe) may help lower use of force responses because it allows the person to use up or release pent-up anger / energy, which would otherwise be used against you during a hands on confrontation

## Slide 24 – Champion v. Outlook Nashville, Inc. (2004)  U.S. Sixth Circuit Court of Appeals

- It cannot be forgotten that the police were confronting an individual **whom they knew to be mentally ill or retarded**, even though the Officers may not have known the full extent of Champion's **autism** and his **unresponsiveness**
- **The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted.**   See Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir.2001) ("[W]here it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining the reasonableness of the force employed.")
- For example, in Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir.2003), officers handcuffed a mentally ill individual and leaned their body weight onto his upper torso. Id. at 1054.   The officers then applied a hobble device.   Drummond fell into respiratory distress and eventually a coma.  Id. at 1055.   The court held that the district court's grant of summary judgment on the basis of qualified immunity was not proper because the officers had violated Drummond's clearly established rights.  Id. at 1062.   It stated, **"Any reasonable officer should have known that such conduct constituted the use of excessive force."**  Id. at 1061
- Drummond postdated the events that led to Champion's death, but it relies on cases decided before April 30, 2000 (including the Swans case) and notes that **when officers receive training explaining the dangers of asphyxia, they are on notice that applying pressure to an arrestee's back is objectively unreasonable**
  - https://caselaw.findlaw.com/us-6th-circuit/1000864.html

9

**Cleveland Division of Police / ADAMHS Board of Cuyahoga County**
**40 Hour CIT Course**
**Instructor Manual: Principles of Communication and De-escalation**
**Version 2, revised April 01, 2019**

**Slide 25 – Five Universal Truths of Verbal Judo**

- ALL cultures want to be treated with Dignity and Respect
- ALL people would rather be asked than told what to do
- ALL people want to know why they are asked or told to do something
- ALL people would rather have options than threats
- ALL people want a second chance to make matters right
  - http://verbaljudo.com/

**Slide 26 – Closing Thoughts:**

"I argue that knowing how to talk to people and common sense are the two most important skills for a police officer to develop."

"These skills can help officers gain compliance from a potentially resistive subject, successfully negotiate a hostage situation, comfort someone who has lost a loved one, gain consent to search people and property, seek admissions, and even a confession from a suspect."

- Michael Schlosser, Ph.D. – Director, University of Illinois Police Training Institute

- COPS Crisis Intervention episode video:  5 minutes 11 seconds
  - 12:04 to 17:15 on video

- Engage in positive interactions with diminished capacity special populations when there is no chaos / crisis, for example visiting Group Homes in your jurisdictions, to establish rapport and trust for future encounters

- Final Questions / Comments / Concerns

  gregtruhan@yahoo.com
  Cell: 440-781-3043

# Principles of Communication and De-escalation

Cleveland Division of Police / ADAMHS Board of Cuyahoga County

Gregory Truhan, MS

Senior Special Agent, United States Secret Service (retired)

Ohio Peace Officer Training Commission, Instructor Number: BAS22425

Version 2, revised April 01, 2019

1

## Course Objectives:

- Define "diminished capacity" special populations

- The Body's Response to Fear

- Rationale for Communication and De-escalation Techniques

- The Difference Between Traditional Encounters and Crisis Intervention Encounters

- The EAR Model's Three Phases of a Crisis Encounter

- Typical Dispositions for Resolving a Crisis Intervention Incident

- Tactics and Behaviors to Avoid While Engaging in De-escalation

- If You Make a Mistake (intent versus impact)

- Champion v. Outlook Nashville, Inc. (2004)

- Five Universal Truths of Verbal Judo

## Course Goals:

- EVERY DAY, law enforcement officers and criminal justice employees encounter persons who under extreme stress; have been traumatized; are in crisis; have behavioral health issues; mental disorders; intellectual and/or developmental disabilities

- These conditions can collectively be referred to as **"diminished capacity"** to cope and function or as **"special populations"**

- The **safety** of officers, the public, and the persons they encounter can be compromised when officers and employees are not adequately prepared to respond to such encounters

- **Nothing in this training is in any way telling officers to put their own safety in jeopardy.** In fact, statistics show a **reduction** in injuries and deaths to everyone involved using the simple but powerful techniques in this presentation

- Provide an overview and basic understanding of human biological and psychological factors impacting an officer's ability to gain compliance during a crisis intervention encounter

3

The Body's Response to Fear:



- When our brain senses fear, a perceived threat or danger, the body's response is called: **Fight, Flight, Freeze**

- The body releases chemicals called cortisol and norepinephrine (adrenaline) in the bloodstream.  This increases our heart rate, sugar and fat levels for fuel, breathing rate, muscle tension, and blood pressure, all intended to provide the body with a burst of physical energy for survival

4

The Body's Response to Fear:



- The top section or the **thinking** part of the brain shuts down to make sure the focus is completely on survival.  That is why it is so hard to think / reason, and clearly communicate during the fear response

- Disorganized thinking from fear, when coupled with extreme stress, trauma, crisis, mental illness, non-compliance with medications, substance abuse, intellectual or developmental disabilities makes reasoning, communicating, and the ability to follow even simple requests much more difficult

5

The Body's Response to Fear:

- Police authority, uniform, equipment, and typical  command and control verbal and non-verbal demeanor can be frightening, intimidating, and / or threatening to persons with a diminished capacity, which can unintentionally **escalate** a situation to violence via the Fear response

- **Hallucinations**, where a subject is hearing or seeing things that are not there, can further inhibit the subject's ability to comply with even simple commands or requests

- **Paranoid** thoughts cause **mistrust** of others, including officers, and they may perceive you are there to harm them, triggering the body's fear response

6

Rationale for Communication and De-escalation Techniques:

- Sets the conditions whereby tense situations may be defused, calmed, and contained

- Sets the conditions for future positive contacts with the same subjects (frequent flyers)
  - "Is officer…working?" versus "Don't send officer…"

- Simple techniques that can increase the chances of a positive, non-violent response or outcome and decrease the need to use force

- No 100% guarantee, but a "reasonable standard" starting point in conjunction with your agency's **Use of Force** continuum policies

- Improved police-community relations

The Difference Between Traditional Encounters and Crisis Intervention Encounters:

**…is the need to be non-confrontational**

- Such a requirement to, in effect, shift gears is completely opposed to the way officers are routinely expected to, and may instinctively try to control conflict

- "Slowing down the process" and / or "backing off", central elements of **de-escalation**, often are not natural instincts for police

- In the past, officers were expected to respond to calls for service and resolve / clear them as soon as possible

The Difference Between Traditional Encounters and Crisis Intervention Encounters:

- Officers are forced to make split second decisions about their safety and the safety of others

- Those decisions are often based upon **command and control** tactics

- The same command and control tactics employed to take a typical criminal suspect into custody can unintentionally **escalate** a person with diminished capacity to violence via the fear response

- Taking a less physical, less authoritative, less controlling, less confrontational approach might provide the officer with **more** authority and control during such an encounter…

- …and it is a "reasonable standard" starting point

## The Difference Between Traditional Encounters and Crisis Intervention Encounters:

- Be **tactically** minded, but present as non-threatening

- A trained officer can conceal his / her combat ready stance while being empathetic and appearing non-threatening

- If we view an individual as **afraid** and **desperate**, then **responding** by **providing** a sense of **safety, hope, and optimism** may be the most valuable contribution you can make

- Assure / reassure them of their safety and that no harm is intended:

    - "We're not here to hurt you"

    - "You're safe with us"

    - "We're not taking you to jail" (if there is a better option)

## The Difference Between Traditional Encounters and Crisis Intervention Encounters:

- Allow pacing and venting if safe to do so:

  - ➢ Pacing could be a side effect of medications

  - ➢ Pacing and venting help release pent-up energy which helps diffuse the situation.   Also helps use up their energy if you have to go hands on with them

- Continually communicate / forecast your intentions / actions throughout the interaction so they won't be misinterpreted

11

# The EAR Model's Three Phases of a Crisis Encounter:

1. <u>E</u>ngage

2. <u>A</u>ssess

3. <u>R</u>esolve



➢ This is a fluid model and the phases may occur simultaneously

12

## EAR Model      Engage

- **Purpose of Engage** – make a connection / establish and maintain **empathy** and **rapport** to gain their trust

- The first 10 seconds of a crisis encounter are critical in setting the tone for de-escalation

- If there is more than one officer present, have one take the lead in communicating and de-escalating the situation to avoid overwhelming, agitating, and / or confusing the person

- The other officer(s) provide cover, and may minimally participate if helpful

- You may need to switch roles if the first officer has difficulty establishing rapport

## EAR Model        Engage

- Ask for permission when possible
  - "Can we come inside?"
  - "Can we talk?"

- Introduce yourself

- Ask for the person's first name…use it early and often

- ✓ Are you ok?

- ✓ Is something wrong?

- ✓ Can I / we help you?

## EAR Model        Engage

- Take steps to calm the situation; your sense of calm can be transferred to others

- Be patient

- Move slowly

- Speak simply using a normal tone

- Limit the number of instructions / requests / orders you give at one time
  - Do we need to shout orders to gain compliance?

-  You may need to repeat requests / orders

- Compliment or thank when the person responds as requested

15

## EAR Model        Assess

- **Purpose of Assess** – gather the information you need about the situation and the person's condition to make the needed resolution

- Utilize Active Listening Skills:

    ✓ **Restate**:  What I'm hearing is…

    ✓ **Reflect**:  Sounds like you're angry because…

    ✓ **Summarize**:  You're feeling…because of…

## EAR Model        Assess

- **Identify:**

  - ✓ problems / grievances / issues / motivations

  - ✓ safety issues / suicidal / homicidal / violence ideations / weapons

  - ✓ **Loss Model Profile(s)**

  - ✓ medications and medical / mental health providers

  - ✓ substance abuse / addiction

  - ✓ auditory / visual hallucinations

  - ✓ housing or homeless

  - ✓ family / friends / co-workers (sources of information)

## EAR Model        Resolve

- **Purpose of Resolve** – bring the encounter to a safe resolution and to obtain the help the person needs

- The resolution usually depends on whether a serious crime was committed, if the person meets commitment criteria, and the availability of mental health and diversion resources

- If possible, provide options / choices and involve the person in decision making

  - increases chances of desired compliance

- Once you decide on a course of action, communicate / forecast your intentions / actions to the person by telling them what you are about to do; what will happen next; and / or what needs to be done; and why

  - so they won't be misinterpreted

## Typical Dispositions for Resolving a Crisis Intervention Incident:

- The below disposition options are listed in no particular order and will depend entirely on the presenting facts; your assessment; and in accordance with the law and your department's policies and procedures:

  ✓ Arrest

  ✓ De-escalate and refer

  ✓ **Voluntary** transport to hospital or crisis center for psychiatric assessment / commitment

  ✓ **Involuntary** transport to hospital or crisis center for psychiatric assessment / commitment

     - ORC 5122.01  Emergency **Custody** / 4th Amendment "**seized**" / "Pink Slip"

19

Tactics and Behaviors to Avoid While Engaging in De-escalation:

- Moving suddenly, giving rapid orders, or shouting

- Forcing a discussion

- Maintaining direct and continuous eye contact

- Touching the person without letting the person know you intend to do so, unless essential to safety

- Crowding, cornering, or moving into the person's comfort zone unless necessary for safety

Tactics and Behaviors to Avoid While Engaging in De-escalation:

- Expressing anger, impatience, or irritation

- Assuming that a person who does not respond is ignoring you

- Using sarcasm, mocking, insulting, or inflammatory language

- Talking about the person as if they weren't present

- Flagrantly lying or misleading the person to calm them, unless justified circumstances exist

- Challenge, reinforce, or validate delusions / hallucinations

If you make a mistake…  (intent versus impact)

- Empathize that a person could have a different perspective than yours

- Recognize, acknowledge, and discuss your original intent versus the undesired impact

  "I see that I upset you"

- Apologize

  "I'm sorry for…"

  "I didn't mean to…"

- Try Again

  "I want to help you…"

- It is more important to be / convey **genuine** caring, compassion, and empathy than worry about saying "all the right things"

**Trust your instincts regarding safety…**

- If de-escalation is not working after reasonable efforts, traditional command and control tactics may be necessary to manage / resolve the situation

- Ensure the person understands this is a last resort

- If you have to use force, you can expect many diminished capacity populations to have a high threshold for pain and greater than normal strength

- Allowing pacing and venting (if safe) may help lower use of force responses because it allows the person to use up or release pent-up anger / energy, which would otherwise be used against you during a hands on confrontation

## Champion v. Outlook Nashville, Inc. (2004) U.S. Sixth Circuit Court of Appeals

- It cannot be forgotten that the police were confronting an individual **whom they knew to be mentally ill or retarded**, even though the Officers may not have known the full extent of Champion's **autism** and his **unresponsiveness**

- **The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted.**   See Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir.2001) ("[W]here it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining the reasonableness of the force employed.")

- For example, in Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir.2003), officers handcuffed a mentally ill individual and leaned their body weight onto his upper torso.  Id. at 1054.   The officers then applied a hobble device.   Drummond fell into respiratory distress and eventually a coma.  Id. at 1055.  The court held that the district court's grant of summary judgment on the basis of qualified immunity was not proper because the officers had violated Drummond's clearly established rights.  Id. at 1062.   It stated, **"Any reasonable officer should have known that such conduct constituted the use of excessive force."**  Id. at 1061

- Drummond postdated the events that led to Champion's death, but it relies on cases decided before April 30, 2000 (including the Swans case) and notes that **when officers receive training explaining the dangers of asphyxia, they are on notice that applying pressure to an arrestee's back is objectively unreasonable**

Five Universal Truths of Verbal Judo:

- ALL cultures want to be treated with Dignity and Respect

- ALL people would rather be asked than told what to do

- ALL people want to know why they are asked or told to do something

- ALL people would rather have options than threats

- ALL people want a second chance to make matters right

## Closing Thoughts:

"I argue that knowing how to talk to people and common sense are the two most important skills for a police officer to develop."

"These skills can help officers gain compliance from a potentially resistive subject, successfully negotiate a hostage situation, comfort someone who has lost a loved one, gain consent to search people and property, seek admissions, and even a confession from a suspect."

- Michael Schlosser, Ph.D. – Director, University of Illinois Police Training Institute

- COPS Crisis Intervention episode video:  5 minutes 11 seconds

  12:04 to 17:15 on video

- Engage in positive interactions with diminished capacity special populations when there is no chaos / crisis, for example visiting Group Homes in your jurisdictions, to establish rapport and trust for future encounters

- Final Questions / Comments / Concerns

gregtruhan@yahoo.com

Cell: 440-781-3043

26