IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 1:15-CV-01046 |
| Plaintiff, | ) |
| vs. | ) JUDGE SOLOMON OLIVER, JR. |
| CITY OF CLEVELAND | ) **NOTICE SUBMITTING INTERNAL AFFAIRS MANUAL AND RELATED POLICIES** |
| Defendant. | ) |

Pursuant to Paragraphs 177 through 193, 202, 205, and 221 of the Consent Decree and the Fourth Year Monitoring Plan in the above-captioned matter, the City of Cleveland (the "City"), on behalf of the Cleveland Division of Police ("CDP" or "Division"), submitted a proposed Internal Affairs ("IA") Manual, attached hereto as Exhibit A, along with three related policies addressing: (1) Retaliation; (2) Reporting Internal Misconduct; and 3) Public Complaints of Misconduct, attached hereto respectively as Exhibits B, C, and D (altogether, the "IA Manual and Related Policies").  The City has also submitted an "Accountability Structure Matrix Chart" that provides a visual picture of how and where all incidents involving potential misconduct by CDP employees are handled within the City structure, attached hereto as Exhibit E.

The Monitoring Team has carefully reviewed the IA Manual, IA Related Policies, and the Accountability Structure chart.  The Team has determined that they provide a strong foundation for the Division going forward to better ensure fair, thorough, objective, and timely investigations of officer misconduct – and to ensure that officers, upon witnessing acts of misconduct, appropriately notify IA or their supervisors without fear of retribution or retaliation.  Together, the Manual and policies provide appropriate guidance on the thorough and complete receipt, investigation, and processing of internal and external complaints against CDP personnel.  The IA Manual creates procedures for the review and handling of complaints by IA staff, under the supervision of a civilian Superintendent.  The IA Manual further outlines the responsibilities and relationships between Internal Affairs and other Units within CDP.  The Retaliation policy protects employees and complainants from retaliation for the making of complaints and the identification of police misconduct.  The Internal and Public Complaints policies set guidelines and expectations for the receipt and handling of complaints against CDP employees that the Division may receive, including how such complaints may be forwarded to the Office of Professional Standards ("OPS") for investigation and review.

The Monitoring Team therefore recommends that the Court approve CDP's Internal Affairs Manual and Related Policies.

### I. SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING INVESTIGATIONS OF INTERNALLY DISCOVERED MISCONDUCT

Paragraph 176 of the Consent Decree states that "[t]he City and CDP will ensure that all allegations of officer misconduct, whether internally discovered or alleged by a civilian, are fully, fairly, and efficiently investigated; that all investigative findings are supported by a preponderance of the evidence and documented in writing; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair, consistent, and provides due process[.]"

2

Paragraph 176 further requires that the CDP and the City implement certain practices regarding the investigation of "internally discovered conduct" (paragraphs 177 through 188), and "reporting misconduct and preventing retaliation" (paragraphs 189 through 192). Dkt. 7-1 at ¶ 176.

With respect to internally discovered misconduct, the Consent Decree requires that CDP's Internal Affairs will "conduct objective, comprehensive, and timely investigations of all internal allegations of officer misconduct." *Id.* at ¶ 177. Internal Affairs is further required to prepare a comprehensive report at the conclusion of each investigation. *Id.* at ¶ 186. Additionally, Paragraph 189 of the Consent Decree requires that "CDP will require any CDP employee who observes or becomes aware of any act of misconduct by another employee to report the incident to a supervisor or directly to Internal Affairs." Subsequent paragraphs require CDP to "develop a system that allows officers to confidentially and anonymously report potential misconduct by other officers"; "expressly prohibit all forms of retaliation, discouragement, intimidation, coercion, or adverse action against" reporting civilians or officers, and ensure that officers engaged in retaliatory actions are "subject to the disciplinary process and possible discipline[.]" *Id.* at ¶¶ 190-92.

Paragraph 193 of the Consent Decree requires the referral and investigation of public complaints of criminal conduct by Internal Affairs. *Id.* at ¶ 193.

The Decree requires that "CDP and the City will work with the police unions, as necessary, to allow civilian complaints to be submitted . . . verbally or in writing; in person, by phone, or on line; by a complainant, someone acting on his or her behalf, or anonymously; and with or without a signature[.]" *Id.* at ¶ 202.

Paragraph 205 requires officers to carry complaint forms in their vehicles and to provide the forms, as well as their names and badge numbers upon request. In addition, "[i]f an individual indicates to an officer that he or she would like to make a complaint about that officer, the officer

will immediately inform his or her supervisor who will respond to the scene to assist the individual in filing a complaint. The supervisor will provide the individual a copy of the completed complaint form or a blank for to be completed later by the individual. *Id.* at ¶ 205.

Further, the Chief of Police must "order officers who witnessed or participated in an incident that is the subject of an OPS complaint to cooperate with the OPS investigation, including by responding to written questions submitted by OPS or in-person interviews, as requested by OPS." *Id.* at ¶ 221.

## II. PROCEDURAL HISTORY

The process of developing the aforementioned documents began in December 2016, at the same time as the development of the Force Investigation Team Manual and GPO. Representatives of CDP, the City, the Department of Justice, and the Monitoring Team met to review and discuss various IA-related policies and manuals used by other police departments and worked together to find policies, practices and procedures that would work for the CDP and the City of Cleveland. The Parties and Monitoring Team discussed the many issues relating to the investigation of allegations of misconduct by CDP officers and best practices in conducting criminal and administrative investigations of those allegations. The Parties and Monitoring Team eventually reached consensus on the content of the policies required to ensure consistently objective, timely and comprehensive internal and external complaint investigations.

On December 4, 2018, the CDP incorporated the final round of feedback from the Department of Justice and Monitoring Team by finalizing policies 1) prohibiting retaliation, 2) creating procedures for reporting internal misconduct and 3) creating procedures for receiving public complaints of misconduct. In July 2019, the Parties agreed on the content of a new Internal

Affairs Manual. On October 15, 2019, the Parties agreed on the content of the Accountability Structure Chart.

### III. STANDARD OF REVIEW

The Monitoring Team's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented."  Dkt. 7-1 at ¶ 351; *accord id.* ¶ at 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed and implemented under" the Decree).  The task of the Monitoring Team here is to determine whether the Internal Affairs Manual and Related Policies comply with the Consent Decree's requirements.

### IV. ANALYSIS OF THE IA MANUAL AND RELATED POLICIES

#### A. IA Manual

The stated purpose of the IA Manual is "to establish procedures for internal investigations and for resolving complaints against Division employees."  It is further noted that:

> It is the practice of the Internal Affairs (hereinafter "IA") Unit to investigate criminal and non-criminal allegations of misconduct, including anonymous complaints, against the Division or its employees, and to ensure the Division is able to take appropriate remedial or disciplinary action as needed.  All complaints, whether initiated internally or externally to the Division, are to be timely, objectively, and fairly investigated, reviewed, and documented. Ex. A, IA Manual, at Section I.A.1.

The IA Manual further specifies the jurisdiction of Internal Affairs and the nature of the incidents for which it is responsible:

> IA is responsible for the review and investigation of alleged violations of federal, state, and municipal law, and CDP rules, regulations, policies, and procedures to include those reported by the public, either orally, electronically, or in writing, by telephone or by correspondence to anyone employed by the Division.  Violations also include any incidents that are discovered, observed, or known by Division employees, and those reported by other governmental agencies or staff.  IA is not responsible for the review and investigation of alleged misconduct involving minor infractions such as uniform violations, motor vehicle accidents (not involving substantial property damage, personal injury or death),

tardiness, or a similar minor allegation, unless part of an alleged more significant misconduct, or a pattern of misconduct. *Id.* at Section I.A.3.

Overall, the new IA Manual recognizes that IA is responsible not only for investigations of criminal conduct and serious policy violations alleged against CDP employees, but also acknowledges the responsibility of the Unit, and, in particular, the IA Superintendent ("a qualified civilian" pursuant to paragraph 178 of the Consent Decree), to ensure that "*all* allegations of misconduct . . . are fully fairly, and efficiently investigate[.]" Dkt. 7-1 at ¶ 176 (emphasis added); Ex. A., IA Manual at I.B.2 ("Goals of the Internal Affairs Unit"). The Manual further recognizes that one of IA's primary objectives is "to ensure that *any* misconduct by Division members is brought to light, thoroughly investigated, and properly adjudicated[.]" Ex. A, IA Manual, at I.C.1 (emphasis added).

The IA Manual helps to establish that all CDP supervisors are responsible for ensuring appropriate conduct by CDP personnel, requiring that supervisors be responsible for correcting behavior that is "correctable through minimal intervention by a supervisor[.]" Ex. A, IA Manual, at I.D.4. Such minor infractions are to be investigated by CDP supervisors, but investigations of these cases must be entered into a Division data base ("Blue Team) and "submitted up the chain of command to ultimately be reviewed by the IA Superintendent and Chief of Police" to ensure appropriate assignments and handling of such conduct. Ex. A, IA Manual, at I.D.4.b.

The Manual provides extensive guidance for CDP with respect to the role and responsibilities of the IA Superintendent who "is ultimately responsible for all criminal and administrative misconduct investigations assigned to or by IA, Level III use-of-force investigations, administrative reviews of use-of-force incidents, and directs the activities of the IA Unit[.]" Ex. A, IA Manual, at II, A., B. & C.1-15. Guidance is also provided for the IA "Officer

6

In Charge" (a CDP command officer) and Investigators Assigned to Internal Affairs. Ex. A, IA Manual, at III & IV.C.

In compliance with paragraph 179 of the Consent Decree, the IA Manual requires that investigators assigned to IA "will be supervisors who . . . possess excellent investigative skills, a reputation for integrity, the ability to write clear reports, and the ability to be fair and objective in determining whether an officer committed misconduct." In addition, the IA Manual also requires that "[s]upervisors with a history of sustained civilian complaints of, or who have been disciplined for excessive use of force, discrimination, or dishonesty [be] presumptively ineligible for assignment to the IA Unit." *Id.* at IV.A.-B.

The IA Manual outlines the processes and procedures required for the receipt, documentation and assignment of complaints. *Id.* at VII ("Receipt, Documentation, and Assignments of Complaints"). It requires the IA Superintendent to review and assign complaints for investigation "within three days of receiving misconduct allegations by a member of CDP[,]" identifies when "allegations of misconduct will be presumptively assigned to District, Bureaus, Units or other personnel or supervisors[,]" as well as when cases will be presumptively assigned for investigation by IA personnel. *Id.* at VII.C.1; VII.C.1.a; VII.C.1c-e.

The IA Manual also provides guidance to ensure the seamless transition of cases between IA and the Office of Professional Standards, which is responsible for the investigation and adjudication of external complaints from community members. *Id.* at VII.D.-E, XII.C.

The IA Manual makes it clear that in cases where officers "are arrested but not charged, or charged but not convicted, of a criminal offense[,]" a full and complete IA investigation will still take place. Further, the mere fact that criminal charges are declined or an officer is not convicted, "will not be considered in evaluating whether, by a preponderance of the evidence, the conduct

7

occurred and whether the conduct violated law, Division policy, procedure, regulations, orders, or other standard of conduct required of Division members[.]" *Id.* at VIII.C.

IA investigators are required to record and preserve interviews "absent exigent circumstances;" and interviews are required to "be conducted in a fair and impartial manner." In addition, IA investigators are required to ensure that the rights of complainants and officers are preserved and are provided guidance on the roles and responsibilities of union representatives. *Id.* at IX ("Interviews").

The IA Manual requires that IA investigative reports comply with paragraph 186 of the Decree with respect to the creation of narratives, the documentation of all evidence gathered and interviews conducted during the course of the investigation, the results of canvassing for evidence and witnesses, and documentation of all potential witnesses and injuries. In addition, the report must include "the IAU investigator's evaluation of the incident," whether Division members responded appropriately by reporting any misconduct, documentation of officer certification and training where weapons are used, any reports or documentation relating to scientific testing conducted as part of the investigation, copies of "all search warrants, subpoenas and court orders" and "documentation of all findings recommendations based upon the preponderance of the evidence standard[.]" *Id.* at at XI ("Investigative Report"). IA investigators are further required to maintain an investigative log and "collect and consider all relevant circumstantial, direct and physical evidence, including Wearable Camera System . . . video or other recording devices[.]" *Id.* at XI.C-D.

In conducting the administrative review of a completed IA investigation, the IA Officer in charge and the IA Superintendent are required to ensure that "all findings are based on the preponderance of the evidence standard" (as required by paragraph 176 of the Decree). Further,

8

as required under Paragraph 187, the IA investigator must consider "whether the police action was consistent with policy, training, and legal standards;" "whether appropriate attempts to de-escalate were made;" "whether different tactics should or could have been employed;" "whether a need for additional training, counseling, corrective actions has been identified for the subject officer or any witness officer;" and "whether the incident raises equipment issues or suggests a revision of policies, tactics, or departmental training is needed[.]" *Id.* at XII.A.

The IA Manual attempts to ensure timely administrative investigations by creating a presumption that IA will conduct "parallel investigations" in cases that are "not FIT criminal in nature as well as administrative . . . the mere existence of a criminal investigation and the possibility of subsequent prosecution shall not be a deterrent to a parallel administrative investigation[.]" *Id.* at XIV.A. Additionally, Section XV of the IA Manual addresses timeliness of investigations by requiring that IA "make all reasonable efforts . . . to complete non-FIT criminal investigations within 120 days of notification of the alleged misconduct," and that IA "make all reasonable efforts to complete the administrative investigation within thirty (30) days following the completion of the criminal process. . . . In the event there is no criminal component in the complaint, [IA] will make all reasonable efforts to complete the administrative investigations in thirty (30) days of notification of the alleged misconduct[.]" *Id.* at XV.

Importantly, the Manual requires IA to maintain "an IA history" that includes:

all complaints alleging misconduct against Division employees to include the case number, the date of the violation, the nature of the allegations, the ultimate findings made by the Chief or Director of Public Safety and any discipline thereby imposed. The IA history will include all allegations of misconduct investigated by IA, OPS, or any other CDP unit or outside agency. The IA Superintendent will ensure that OPS cases are updated into a member's IA history and bring forward any concerns in that regard to the Chief and the Director of Public Safety. *Id.* at XVI.C.

9

The IA Manual also requires that the assigned IA investigator "keep the complainant up-to-date on the progress" of an investigation "unless such updates would interfere with the conduct of the investigation," and notify a complainant upon the conclusion of an investigation to include the ultimate disposition of any complaint by the Department of Safety. *Id.* at XXI.

The IA Manual addresses the requirements of Paragraphs 180 and 181 of the Consent Decree by requiring that "[a]ll new personnel assigned to IA will receive formal training within six (6) months of conducting IA investigations, both criminal and administrative." The Manual requires that the "training will be adequate in quality, quantity, scope, and type and consistent with national standards and best practice." The Manual further requires that all IA investigators, "[i]n addition to the annual in-service training required for all officers, . . . receive annual training related to conducting misconduct investigations that is adequate in quality, quantity, type and scope and consistent with national standards and best practice." *Id.* at XXII.A-B.

Although the Monitoring Team and the DOJ recommend that the Court approve the Internal Affairs Manual as submitted, both the Monitoring Team and the DOJ have reservations about Paragraph X.A. of the Manual. In Paragraph X.A., the IA Manual provides that, "where a member resigns, retires, or is otherwise separated from CDP while a joint criminal and administrative investigation is pending, the criminal investigation shall nonetheless be completed, and submitted to the appropriate prosecuting authority; however, the administrative investigation will close at the time of separation." The Monitoring Team and DOJ understand that CDP believes that this is consistent with its obligations under Paragraph 176 of the Settlement Agreement to "ensure that all allegations of officer misconduct . . . are fully, fairly, and efficiently investigated" because the officer is no longer a Cleveland Division of Police officer or employee, and no internal discipline may be imposed. In the Monitoring Team and DOJ's view, if CDP does not complete the

administrative investigation, which we believe is the better practice, CDP must ensure that the officer is not rehired in any capacity by CDP, and it must advise any agency that seeks to hire that police officer that the officer separated from CDP while an administrative investigation was ongoing. The Monitoring Team and DOJ will continue to monitor the implementation of this paragraph to see whether further modification is warranted.

### B.     Retaliation Policy

The purpose of the Retaliation policy is "to maintain divisional integrity and prevent hostile treatment towards Division members and members of the public, by prohibiting retaliatory conduct or action against Division members and members of the public who make reports of misconduct." Ex. B. at 1. The policy "prohibits retaliatory conduct against or interference with Division members or members of the public who report, assist, or seek to report misconduct or breaches of departmental policy, procedures, or rules, or engage in activities protected by whistleblower statutes." *Id.*

Retaliatory conduct is defined in the policy in an expansive manner:

Conduct or adverse action against a Division member or member of the public who has reported or provided information, assisted with or participated in an investigation involving a member, filed a charge of discrimination or complaint, opposed a discriminatory practice, or otherwise exercised his or her rights or performed his or her work-related duties. Retaliation includes, but is not limited to, discouragement, threats, intimidation, coercion or other adverse actions. Examples of retaliatory acts include, but are not limited to: threats; unsupported negative evaluations; withholding work-related information; giving punitive work assignments; denial of job benefits; giving demeaning or unnecessary job assignments; blocking advancement (e.g., promotion). *Id.* at 2.

The policy further provides that "Members who retaliate against any person who reports or investigates alleged misconduct will be subject to the disciplinary process and possible discipline up to and including termination." *Id.* Finally, the Retaliation policy provides procedures

11

for reporting prohibited activities and also requires "members who observe or become aware of retaliatory conduct by another Division member against a member of the public" to "immediately notify a supervisor or the Internal Affairs Superintendent." *Id.* at 3. The policy encourages "members who have been subjected to retaliatory conduct…to seek assistance through personal counseling or other services, as available through the Division's Employee Assistance Unit." Supervisors are also required to "monitor their members and provide support to those who are directly affected by retaliatory conduct." *Id.* at 3.

### C. Reporting Internal Misconduct

The Reporting Internal Misconduct policy helps to ensure "that all allegations of member misconduct observed or that another member becomes aware of, are reported to a supervisor, Internal Affairs or anonymously." The policy further requires that "all allegations of misconduct shall be considered and fully, fairly, and efficiently investigated." Ex. C at 1.

The policy specifically requires that "[a]ll members who observe or become aware of any act(s) of misconduct by another member shall immediately verbally report the incident to a supervisor or Internal Affairs and shall follow-up with a Form-1 report of the incident as directed by the supervisor or Internal Affairs." *Id.* at 2. Further, the policy requires that, "[w]here an act of any misconduct is reported to a supervisor, the supervisor shall immediately document and report the incident, via the tracking software, forwarding the entry to the Internal Affairs Superintendent for review and assignment in accordance with IA procedures and copy the Platoon Commander." *Id.*

The policy satisfies the requirements of paragraph 190 of the Settlement Agreement, which requires the Division to allow officers to "confidentially and anonymously report potential misconduct by other officers." With respect to anonymous reporting of misconduct, the policy

12

allows Division employees to make an anonymous call to Internal Affairs. Upon making such a call, the reporting member "will be provided with a unique number generated through the tracking software" which will allow the member to establish, at a later time, compliance with the reporting requirements of the policy. Employees are also permitted to report misconduct anonymously or confidentially through "written correspondence to the Internal Affairs Unit" where "the reporting member retains a copy of the correspondence." Finally, the policy permits a member to contact the Employee Assistance Unit "who will then forward the allegation to the Internal Affairs Unit for review and [the member] will be provided with a unique number generated through the tracking software[.]" *Id.*

The policy makes it clear that "[f]ailure to report an act of misconduct is an egregious offense and will subject the member to the disciplinary process and, if sustained, will subject the member to discipline, up to and including termination." *Id.*

Immediate self-reporting is also required on the part of any officer who is "detained as the subject of a criminal investigation or who become the subject of a criminal investigation" or upon becoming the respondent of a protective or restraining order or if the officer's driver's license becomes expired, suspended or revoked. *Id.* at 4.

### D. Public Complaints of Misconduct

This Court has previously addressed the issue of public complaints in the context of OPS, which receives and investigates civilian complaints. However, the Division and its employees also may directly receive complaints about its conduct.

Consequently, the Public Complaints of Misconduct policy establishes guidelines for CDP personnel with respect to receiving, investigating, and responding to public complaints of misconduct involving members of the Cleveland Division of Police. Ex. D at 1. The policy

13

describes the circumstances under which the CDP will conduct investigations of public complaints and under which such complaints will be forwarded to OPS and the Police Review Board for investigation and adjudication.

Generally, the policy requires that CDP personnel accept, document, and investigate "all complaints regardless of the perceived severity" for handling by either the CDP or the OPS and, in compliance with Consent Decree paragraph 205, all Division members are required to have "available for distribution upon request . . . a Complaint Form and available translations." Division members also are required to provide their name, rank and badge number, in writing if requested, upon request by any member of the public. CDP employees are not permitted to "discourage, interfere with, hinder, or obstruct any person from making a complaint." Further, members are not permitted to "retaliate against members of the public who file a complaint or participate in the complaint process." *Id.* at 1-2.

The policy further provides that CDP employees are required to receive complaints from any person, to include witnesses, third parties and persons who wish to remain anonymous and through any means of communications or correspondence. *Id.* at 2. In compliance with paragraph 202 of the Decree, completion of a Complaint Form is not required and "complaints may be accepted with or without a signature." *Id.* at 2.

The policy also provides guidance to supervisors who are required to respond to the scene when an individual indicates a desire to make a complaint. Where the supervisor believes misconduct may have taken place, in addition to facilitating the taking of the complaint, the supervisor is also required to report internal complaint information to the Internal Affairs Unit in accordance with the Reporting Internal Misconduct GPO. *Id.* at 4.

In compliance with paragraph 221 of the Consent Decree, the policy also requires "members who witnessed or participated in an incident that is the subject of an OPS complaint [to] fully cooperate with the OPS investigation, including by responding to written questions submitted by OPS or appearing for in person interviews, when requested by OPS." Officers are also required to respond to OPS questions in writing, in a timely manner, upon receiving a request from OPS. *Id.* at 4-5.

## V. CONTINUING WORK AND POLICY IMPLEMENTATION

With the completion of these policies, the Division will now need to focus on implementation to ensure that the polices are actually put into practice. A significant part of this task will fall on the IA Superintendent to ensure IA investigators are adhering, on a systemic basis, to the new requirements for investigations and to ensure that appropriate investigations and documentation of personnel actions are being taken by other Units within CDP that have responsibilities to ensure officer accountability. In addition, the City will need to develop a plan to train CDP employees outside IA on their responsibilities relating to the newly adopted policies.

The Monitoring Team will work with the Parties to ensure that all policies that may refer to or interact with Internal Affairs and any other disciplinary processes are consistent with the new policies submitted herein.

## VI. CONCLUSION

The task of the Monitoring Team is to duly consider whether the City's submitted IA Manual and Related Policies satisfy the terms of the Consent Decree.  The Monitoring Team concludes that the IA Manual and Related Policies meet the terms of the Consent Decree.  Accordingly, the Monitor approves them in their entirety and requests that this Court order them effective immediately.

    Respectfully submitted,

    /s/  Hassan Aden

    HASSAN ADEN
    Monitor
    The Aden Group LLC
    8022 Fairfax Road
    Alexandria, VA 22308
    Tel: (571) 274-7821
    Email:  aden@theadengroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2019, I served the foregoing document entitled Motion to Approve Internal Affairs Manual and Related Policies via the court's ECF system to all counsel of record.

/s/ Brian G. Maxey
BRIAN G. MAXEY