# Cleveland Division of Police

Internal Affairs Unit

Policies and Procedures Manual



**TABLE OF CONTENTS**

| Section | Title | Page |
|---|---|---|
| I. | Internal Affairs Policy | 4 |
| II. | Internal Affairs Unit Superintendent | 7 |
| III. | Internal Affairs Unit Officer-In-Charge | 10 |
| IV. | Investigators Assigned To Internal Affairs | 11 |
| V. | Procedures | 12 |
| VI. | Call-Ups | 12 |
| VII. | Receipt, Documentation, and Assignment of Complaints | 13 |
| VIII. | Internal Affairs Investigative Procedures | 17 |
| IX. | Interviews | 18 |
| X | Investigation of Members No Longer with CDP | 20 |
| XI. | Investigative Report | 20 |
| XII. | Administrative Review of Completed Investigations | 22 |
| XIII. | Prosecutorial Review | 24 |
| XIV | Parallel Investigations | 24 |
| XV. | Timeliness | 25 |
| XVI. | Professional Standards Software (PPS) | 26 |
| XVII. | Dispositions | 27 |
| XVIII. | Arrest/Summons | 28 |
| XIX. | Officer Assignment Status | 29 |
| XX. | Case File Disposition | 29 |
| XXI. | Notifications | 30 |
| XXII. | Training | 31 |

**CLEVELAND DIVISION OF POLICE MISSION STATEMENT**

The mission of the Cleveland Division of Police (hereinafter "CDP") is to serve as guardians of the Cleveland community.  Guided by the Constitution, we shall enforce the law, maintain order, and protect the lives, property, and rights of all people.  We shall carry out our duties with a reverence for human life and in partnership with members of the community through professionalism, respect, integrity, dedication, and excellence in policing.

**DIVISIONAL VALUES:**

**P**      **PROFESSIONALISM**

We take pride in ourselves, our profession and our community.  Working as a team, we will be role models for our community by enthusiastically excelling in quality performance.

**R**      **RESPECT**

We consistently treat all people with dignity, compassion, courtesy, and without prejudice. We will protect the constitutional and civil rights of everyone through impartial enforcement of the law.

**I**      **INTEGRITY**

We uphold the public trust by being honest, competent, and consistent in our beliefs and actions.  We hold ourselves accountable to the highest standards of moral and ethical conduct.

**D**      **DEDICATION**

We dedicate ourselves to improve the quality of life by developing a partnership with the community.  We are committed to protecting life and property, reducing fear, and providing a safe environment for all.

**E**      **EXCELLENCE**

We hold ourselves to the highest standards of law enforcement.  We will continuously improve the quality of our services through education, training and development.

## I.      INTERNAL AFFAIRS UNIT POLICY.

A.      Purpose.

1.      The purpose of this manual is to establish procedures for internal investigations and for resolving complaints against Division employees.  It is the practice of the Internal Affairs (hereinafter "IA") Unit to investigate criminal and non-criminal allegations of misconduct, including anonymous complaints, against the Division or its employees, and to ensure the Division is able to take appropriate remedial or disciplinary action as needed.  All complaints, whether initiated internally or externally to the Division, are to be timely, objectively, and fairly investigated, reviewed, and documented.

2.      The provisions of this manual and all associated General Police Orders (hereinafter "GPOs"), govern the investigatory and adjudication process for alleged or suspected violations of federal and state statutes, city ordinances, city administrative regulations, Division directives, and oral or written lawful orders.

3.      IA is responsible for the review and investigation of alleged violations of federal, state, and municipal law, and CDP rules, regulations, policies, and procedures to include those reported by the public, either orally, electronically, or in writing, by telephone or by correspondence to anyone employed by the Division.  Violations also include any incidents that are discovered, observed, or known by Division employees, and those reported by other governmental agencies or staff.  IA is not responsible for the review and investigation of alleged misconduct involving minor infractions such as uniform violations, motor vehicle accidents (not involving substantial property damage, personal injury or death), tardiness, or a similar minor allegation, unless part of an alleged more significant misconduct, or a pattern of misconduct.

B.  Goal of the Internal Affairs Unit.

1.      The goal of the IA Unit is to conduct objective, thorough, and timely investigations in such a manner as to bring all evidence to light, while simultaneously preserving the dignity of everyone involved, and maintaining the confidential nature of its investigations.

2.      IA, as a unit, is a fact-finding body, and as such is interested in establishing the truth through honest, full, fair, efficient, and thorough investigations.  It is essential to maintain an administrative process that protects the rights of

all involved, including the accused member and members of the public, as the reputation and effective functioning of the CDP rests upon competent IA investigations.

C.      Objectives of the Internal Affairs Unit.

    1.      The public and Division members have the right to expect efficient, fair, and impartial police services.  When the Division honestly and fairly investigates and adjudicates all allegations of misconduct against its members, trust and confidence in the Division should result.  Therefore, it is the objective of the IA Unit to ensure that any misconduct by Division members is brought to light, thoroughly investigated, and properly adjudicated.

    2.      The IA Unit is also committed to making recommendation so that the Division constantly improves its operational efficiency and the effectiveness of its members.  As such, when investigations disclose faulty policies, procedures or training or areas where the Division can improve the services it provides to the public and the environment it provides for its staff, the IA Unit will bring lessons learned from investigations to the attention of Command Staff and act as an agent for change when necessary and appropriate.

D.      Definitions.

    1.      Allegation – refers to a charge or claim made by a complainant that, if established by the preponderance of evidence was true, would constitute a violation of law, or a specific provision of Division or City policy, procedure, or training.

    2.      Garrity Warning Form – A form used in administrative investigations where there is potentially criminal conduct by the involved officer and the involved officer is compelled to give a statement under threat of adverse employment action, and the officer reasonably believes that the statement could be self-incriminating (Garrity v. New Jersey, 385 U.S. 493 (1967)).

    3.      Misconduct – any improper conduct, other than minor infractions as defined in this policy, including an alleged violation of Division policy, procedure, regulation, order, federal or state law, or other standards of conduct required of Division members including the improper use of force.  Misconduct includes:

a.     Administrative Misconduct – an allegation of misconduct, which if true, would be a violation of a CDP rule, regulation, policy, or procedure.

b.     Criminal Misconduct – an allegation of misconduct, which if true, would be a violation of municipal laws and/or ordinances, the Ohio Revised Code, or a federal criminal statute.

c.     Serious Misconduct – an allegation of misconduct involving a breach of civil rights, biased policing or discrimination against a protected class, dishonesty, brutality, corruption, objectively unreasonable, unnecessary or disproportionate use of force, or a similar serious allegation.

4.     Misconduct does not include minor infractions:

a.     Minor Infractions include alleged violations of Division policy, procedure, regulations, orders, or other standards of conduct required of Division members that are immediately correctable through minimal intervention by a supervisor, with the goal of ensuring that the behavior does not become repetitive.  Minimal intervention includes redirection and/or non-disciplinary counseling to correct behavior.  Minor infractions include, uniform violations, minor rudeness (absent bias), failure to perform a system checks on WCS or in-car camera equipment that causes no failure to record officer actions, traffic and parking infractions, and motor vehicle accidents (not involving substantial property damage, personal injury or death). When a member repeatedly (i.e., more than two times within a 12-month period based on the date of the observed infraction) commits the same minor infraction, the supervisor shall not handle the minor infraction through a non-disciplinary response.

b.     Minor infractions are to be investigated by the Supervisor of the officer who allegedly committed the minor infraction and place said investigation into Blue Team to be submitted up the chain of command to ultimately be reviewed by the IA Superintendent and Chief of Police.

5.  Conduct Unbecoming a Police Officer – any conduct or omission, while on or off duty that impairs public confidence in the Division and the employee to effectively carry out their duties and responsibilities.

6.  Conclusion of criminal process – refers to the point at which the prosecution is declined by an appropriate prosecutor, criminal charges are dismissed, no-billed in the grand jury, or a guilty or not guilty verdict is received in the court (municipal court, Common Pleas Court, or federal court) with original jurisdiction.

7.  Preponderance of the Evidence – refers to a determination, based on the greater weight of the evidence, that it is more likely than not that the conduct is inconsistent with federal, state, or municipal law, CDP rules, regulations, policy, procedure, or training has occurred or has not occurred.

## II.  INTERNAL AFFAIRS (IA) UNIT SUPERINTENDENT.

A.  The IA Superintendent is the civilian head of IA and reports directly to the Chief of Police.

B.  The IA Superintendent is ultimately responsible for all criminal and administrative misconduct investigations assigned to or by IA, Level III use-of-force investigations, administrative reviews of use-of-force incidents, and directs the activities of the IA Unit.

C.  The IA Superintendent is also responsible for:

1.  The intake of cases, including receiving and assigning complaints and investigations to IA investigators for proper completion on a rotating basis taking into consideration previous experience or areas of expertise.

2.  Assigning and forwarding investigations to the appropriate CDP units and outside agencies for resolution.

3.  Managing the administration and supervision of all IA personnel, its office functions, and its technology.

4.  Monitoring and reviewing all investigative reports entered into Blue Team, IAPro, and/or Form-1s for allegations of officer misconduct assigned by the IA Superintendent to CDP Bureaus, Units, Districts.

    a.    This review is to ensure:

        i.    the investigation is timely completed;

        ii.    that the investigation was conducted with integrity, that it was bias-free and objective, and thorough and complete;

        iii.    that the investigative report, likewise, is thorough, objective, fair, bias-free;

        iv.    that the recommended findings are supported by the preponderance of the evidence and that the findings are consistent Division wide.

        v.    that the investigation regarding officer misconduct included a review for officers' adherence to policy.

        vi.    whether the incident raises equipment issues or suggests a revision of policies, tactics, or departmental training is needed.

    b.    The Superintendent has the authority to require further investigation as necessary and is the final and sole decision-making authority relating to recommendations made to the Chief of Police.  After review by the IA Superintendent the investigative file will be forwarded to the Chief.  The final authority for acceptance or rejection of the recommendations will rest with the Chief of Police.

5.    Assisting in the vetting of allegations, evaluating progress, and completeness of investigations and providing direction regarding interaction with prosecutors, civilians, police officers, and government officials and staff.

6.    Reviewing all allegations of minor infractions reported in Blue team:

    a.    Supervisors who have addressed minor infractions shall submit documentation through Blue team of the incident and the verbal counseling letter issued in response.  The matter shall be routed up the ascending chain of command for review, to the Commander, then to the Superintendent of Internal Affairs, and then to the Chief of Police.

b.  To ensure the identified conduct was appropriate for handling as or infractions.

c.  If it is determined that the documented behavior constitutes alleged misconduct requiring investigation, following consultation with the Chief of Police, the IA Superintendent and/or the Chief shall notify the commanding officer within fifteen (15) days and initiate an investigation through either Internal Affairs or the chain of command, whichever is appropriate.

d.  To ensure that the non-disciplinary response by the Supervisory was thorough, fair, and consistent.

7.  Apprising the Chief of Police of investigations and /or internal intelligence information.

8.  Supervising the FIT, in coordination with the Bureau of Special Investigations (hereinafter "BSI") Commander, the review of all trends of inappropriate applications of policy within the Division, and ensuring lessons learned from investigations are provide to the Training Unit to update and improve training on a continuing basis.

9.  Communicating with the Administrator of the Office of Professional Standards (hereinafter "OPS") and providing OPS with a report within fifteen (15) days of first receiving a referral from OPS and thereafter every thirty (30) days a report on the status of all OPS investigations referred to IA.

10.  Liaising with and maintaining strong communication channels with all prosecuting attorney offices that may have an interest in investigations conducted by the IA.

11.  Ensuring IA Unit staff provide timely notification of findings to external criminal complainants.

12.  Maintaining and ensuring practices in investigations and management consistent with research and nationally recognized best practices.

13.  Evaluating the performance of subordinates in conjunction with the IA Officer-in-Charge (hereinafter "OIC").

14.  Ensuring appropriate regular and annual training for all Unit members.

15.     Monitoring and reviewing the quality and status of investigations conducted by outside law enforcement agencies into allegations of CDP personnel misconduct for thoroughness, timeliness, fairness, and bias free.

16.     The Internal Affairs Superintendent reserves the right to delegate authority to the Internal Affairs Officer in Charge (OIC) and/or his designee.

## III.    INTERNAL AFFAIRS (IA) UNIT OFFICER IN CHARGE (OIC).

A.     The IA OIC shall work under the direct supervision of the IA Superintendent and in consultation with the Superintendent, the IA OIC is responsible for:

1.     Receiving, classifying, recording, and assigning complaints to IA Investigators.

2.     Supervising all investigations and other activities of IA/FIT Investigators.

3.     Reviewing and approving investigative reports, administrative reports, and ensuring all IA Pro entries are up-to-date prior to submission to the Superintendent.

4.     Ensuring appropriate collaboration and cooperation between the IA and other units of the CDP or outside agencies in investigations pertinent to the IA Unit function.

5.     Evaluating the performance of subordinates in conjunction with the IA Superintendent.

6.     Preparing administrative reports necessary to the operation of the IA Unit as assigned by the Superintendent.

7.     Closing out investigations and ensuring hard copies of investigative files are stored per the ORC retention period; ensuring that all relevant information from the completed investigations are provided electronically to the member's supervisors, the training Review Committee, the Employee Assistance Unit (EAU), and the Data Coordinator while ensuring that sensitive information is adequately protected.

8.     Other duties and responsibilities delegated to the OIC by the Superintendent of IA.

## IV.    INVESTIGATORS ASSIGNED TO INTERNAL AFFAIRS.

A.    Investigators assigned to the IA Unit will be supervisors who must possess excellent investigative skills, a reputation for integrity, the ability to write clear reports, and the ability to be fair and objective in determining whether an officer committed misconduct.

B.    Supervisors with a history of sustained civilian complaints of, or who have been disciplined for excessive use of force, discrimination, or dishonesty are presumptively ineligible for assignment to the IA Unit.

C.    Investigators assigned to the IA Unit are responsible for:

1.    Investigating complaints and allegations with objectivity.

2.    Processing complete, concise, timely, and accurate reports of all investigations.

3.    Conducting properly preserved and digitally recorded interviews of complainants, witnesses, and Division members.

4.    Compiling and assessing all evidence related to the IA investigation.

5.    Analyzing all evidence collected during the investigation and making recommendations for action or closure.

6.    Ensuring that the complainant is kept up-to-date on the progress of the investigation.

7.    Appearing at criminal proceedings and disciplinary hearings to assist the prosecuting or Law Department attorney and Case Preparation Officer in the presentation of cases.

8.    Establishing and maintaining coordination and cooperation between other Units of the CDP and outside law enforcement agencies.

9.    Developing and maintaining a thorough knowledge of policy, procedures, rules, and regulations of the CDP as well as Civil Services Rules and applicable laws.

10.    Performing such other duties as assigned by the IA Superintendent and the OIC.

11.     Serving as a member of the FIT as assigned by the Superintendent and the OIC.

12.     Completing IA investigations within deadlines as required by this manual and as ordered by the Superintendent and the OIC.

13.     Making referrals to the EAU when appropriate and in consultation with the OIC and the Superintendent.

14.     Receiving complaints about members, which shall be forwarded to the IA Superintendent.


## V.     PROCEDURES.

The procedures set out in this Manual shall be strictly adhered to by each Supervisor assigned or detailed to the Unit.  This Manual is enforceable as Divisional policy. These procedures are binding on all personnel whether assigned or detailed to the IA Unit.  Any deviation from or in violation of the rules prescribed in this Manual may be deemed a basis for disciplinary action.


## VI.     CALL-UPS.

A.     A schedule will be made by the OIC of the IA Unit for call up situations designating on-call personnel monthly.  FIT call up situations will be handled by notification, via cellphone or telephone, to officers required to respond.  Some incidents may require an immediate and/or specific response, as dedicated by investigative expertise or specialization of IA investigators.

B.     The IA Superintendent or IA OIC must be available at all times to evaluate potential referrals from CDP supervisors or the Communication Control Section (hereinafter "CCS").  The IA Superintendent will review all facts provided and take appropriate action, which may include, but is not limited to, assigning investigators and the IA OIC to respond to on-scene events/incidents, to conduct and/or monitor the on-scene investigation, to assist the Homicide and/or Crime Scene and Records Units, and to conduct any follow-up investigation.

## VII.    RECEIPT, DOCUMENTATION, AND ASSIGNMENTS OF COMPLAINTS.

A.    Sources of Complaints.

1.    Complaints will be taken from any and all sources to include from Division supervisors, patrol officers, and civilian employees (internal complaints), civilians (external complaints), and referrals from the Office of Professional Standards (OPS).  All complaints, regardless of the source, including third-party and anonymous sources, shall be documented and investigated

2.    Complaints, including anonymous complaints, shall be accepted by telephone, email, fax, mail/written correspondence, and in-person

B.    Logging of Complaints.

1.    All complaints will be logged or entered into Blue team or IA Pro upon receipt, reviewed and assigned by the IA Superintendent or the IA OIC. Allegations that are criminal in nature or involve serious misconduct will be reviewed and immediately assigned.  All other allegations must be reviewed and assigned within three (3) business days.

2.    Complainants, including anonymous complainants where possible, will be given the number generated by the IA Pro system.

C.    Receipt, Assignment and Investigation of Misconduct Allegations.

1.    Pursuant to section VII (B) (1), within three days of receiving misconduct allegations by a member of CDP, the IA Superintendent shall review and assign the matter for investigation as follows.

a.    All allegations of misconduct involving Group I violations will be presumptively assigned to District, Bureaus, Units, or other personnel or supervisors, with the exception of the following:

i.    Failure to notify supervisor of a Group I Violation

ii.    Minor misdemeanor offenses (as defined by O.R.C. 2901.02) excluding minor traffic violations).

iii.    Failure to properly search arrested persons resulting in discovery of weapons or contraband.

   iv. Vehicular  pursuit/emergency  driving, unauthorized/improper

b. The IA Superintendent will review allegations of (1) AWOL; (2) social media policy violations; (3) tactics, violation of training; and (4) violation of a court orders to determine whether they should be investigated as Group I, II or III, and then assign them for investigation as appropriate.

c. The IA Superintendent will presumptively assign for investigation by Internal Affairs allegations of misconduct involving Group II violations.

d. Notwithstanding the presumptions regarding Groups I and II, the IA Superintendent has discretion to assign investigations of misconduct falling within these groups for investigation by either District, Bureau, and Unit through the chain of command or Internal Affairs.

   1. In making this decision, the Superintendent shall consider the totality of the circumstances to evaluate (1) the seriousness of the allegations, (2) the complexity of the investigation (3) whether the violations may raise concerns of public trust, and (4) whether the violation is part of alleged more significant misconduct or a pattern of misconduct (repeated violations).

   2. These factors are often contingent upon the specific facts of an incident and the IA Superintendent reserves the right to request additional information before making his/her decision.

e. All Group III violations, with the exception of allegations of insubordination, and all allegations involving criminal misconduct or serious misconduct as defined in section I(D)(3)(c) shall be investigated by Internal Affairs.

   1. Regarding allegations of insubordination, if the insubordination is to such a degree that it threatens to or actually disrupts operations, the supervising officer shall relieve the offending officer from duty. The superior officer shall contact the IA

Superintendent, complete a Form-1 with the details of the incident, and forward the Form-1 and any other supporting documentation to Internal Affairs and through the chain of command.  A hearing before the Chief or Chief's Designee shall be held within three (3) working days from the date of relief.  See: GPO 1.3.07: Emergency Relief From Duty.

2.  Regarding allegations of insubordination, not requiring the offending officer to be immediately relieved from duty, the supervising officer shall prepare a Blue Team entry in accordance with VII.B.

3.  As to both of the foregoing situations, the IA Superintendent and the Chief shall discuss the incident and decide how to best proceed, including who will be responsible for conducting any necessary investigation.

f.  Investigations may be assigned to non-CDP units, where appropriate, including:

1.  Public Safety Investigation – may include allegations against an IA investigator.

2.  Department of Human Resources – all allegations of violence in the workplace by a member of CDP shall be reported to the Director of Public Safety and through the chain of command.  The complaint will be investigated by the Department of Human Resources.  See:  GPO 1.1.08.

g.  Assignment to an outside law enforcement agency.  If for any reason, the IA Superintendent determines that an outside law enforcement agency should conduct an investigation of a CDP employee, the Superintendent will make that request directly to the Chief of Police.  If the case which prompted the referral to an outside agency was referred by OPS, the OPS Administrator shall be informed that the matter has been referred to another agency for investigation and it shall be the responsibility of the IA Superintendent to keep the Chief of Police and the OPS Administrator reasonably informed as to the status of the investigation.

      h.     The Chief, in consultation with the IA Superintendent, reserves the right to assign allegations of misconduct by CDP members for investigation by other Districts, Bureaus, Units, and/or other personnel assigned to conduct an investigation to insure the adequacy, independence, and professionalism of the investigation and/or to maximize the efficiency and performance of IA investigations.

D.     Receipt and Assignment of External Complaints.

     1.     The IA Superintendent, upon receipt of an external complaint from community members alleging both criminal and administrative misconduct, shall assign the matter to an IA investigator.  Further, the IA Superintendent shall immediately notify the OPS Administrator of the decision to open an investigation received from a community member alleging both a criminal and administrative misconduct.  The IA Superintendent will advise OPS the name of the complainant and the date and nature of the complaint.  IA will complete both the criminal and administrative investigation.

     2.     The IA Superintendent will refer all external complaints from community members for solely non-criminal administrative misconduct to OPS for investigation.  These complaints will then be logged into IA Pro with a disposition of "Referred to OPS".  In those situations where the community member refuses to contact OPS and instead insists that CDP conducts the investigation, the IA Superintendent will notify OPS of the complaint and that IA will conduct the investigation.

E.     Receipt of complaints from OPS that have, as a component of the complaint, possible criminal misconduct.

     1.     IA will accept original complaints from OPS and/or new allegations discovered by OPS during their investigation when the original complaint or new allegation alleges conduct, claims, or factual assertions that, if true, would constitute a violation of criminal law.

     2.     The IA Superintendent and OIC will review the facts contained in any complaint received from OPS alleging possible violations of criminal law, and

          a.     if the IA Superintendent and OIC, following consultation with the appropriate prosecutor, conclude that the investigation will not proceed as a criminal investigation, the file will be returned, without delay, to OPS for an administrative investigation.

      b.      if the IA Superintendent and OIC believe that a criminal investigation into the allegations is appropriate, the IA OIC will promptly assign the matter to an IA Investigator. Once the criminal investigation is completed, the file will be returned, without delay, to OPS for an administrative investigation.

    3.    Allegations of false statements by CDP members to OPS during the course of any OPS investigation, or court or administrative proceeding, will be investigated by IA.

## VIII. INTERNAL AFFAIRS INVESTIGATIVE PROCEDURES.

A.    IA will conduct objective, comprehensive, and timely investigations of allegations of misconduct. In cases where allegations of misconduct are referred to the District Level or other Units, the IA Superintendent will ensure that such investigations are monitored and reviewed for quality of work, timeliness, and reasonableness of findings. In cases where allegations of misconduct are referred to outside agencies, the IA Superintendent will monitor such investigations to ensure timeliness and ensure that such investigations are reviewed for quality of work and sufficiency of evidence to support the findings.

B.    In cases where complainant anonymity or lack of corroborating evidence interferes with the Unit's ability to conduct a thorough and complete investigation, the IA Superintendent may authorize the IA Unit to take any and all appropriate investigative measures relevant to the underlying allegation.

C.    Irrespective of whether officers are arrested but not charged, or charged but not convicted, of a criminal offense (including when officers are convicted or plead guilty to some but not all allegations) the IA Unit will still investigate fully the conduct that gave rise to the initial criminal arrest and/or charge. Declination of criminal charges or non-conviction will not be considered in evaluating whether, by a preponderance of the evidence, the conduct occurred and whether the conduct violated law, Division policy, procedure, regulations, orders, or other standard of conduct required of Division members. Following criminal convictions, each wrongful act should be treated as a separate violation, regardless of how the acts are grouped in the charging document, plea or verdict.

D.    Retaliation, discouragement, intimidation, coercion or adverse action against any member or civilian, who reports criminal activity, makes a misconduct complaint, or cooperates with an investigation of misconduct, is prohibited and is grounds for being subject to the disciplinary process and possible discipline, up to and including termination.

E.      IA Investigators are required to take all reasonable efforts possible to identify, contact and interview witnesses identified by the complainant and or involved as well as any independent witness to the incident under investigation.  Each step taken to contact a witness will be recorded in the investigative file.  Such attempts shall include telephone contacts, email, certified mail (return receipt requested), and visits to the last know home and business address of the witness.

F.      IA Investigators must ensure that an area canvass is promptly completed for witnesses. Any interviews conducted during the course of an area canvass shall be properly preserved by audio or video recording whenever possible.  In those cases where audio recordings are not possible, documentation of why audio recording was not possible will be prepared and signed statements from the witness shall be obtained.  The results of any area canvass (e.g. identity of investigators conducting the canvass, date, time, location, outcome, etc.) shall be documented, reported to the IA OIC, and included in the investigative file along with any written notes that may have been taken during the course of the area canvass.

G.      Area canvasses shall also include attempts to locate and obtain any audio or video recording of the event under investigation.  The results of such canvass shall be documented, reported to the IA OIC, and included in the investigative file along with any written notes or diagrams that may have been taken during the course of the area canvass.

## IX.    INTERVIEWS.

A.      IA Investigators shall maintain a professional, understanding attitude, and shall be firm and resolute in order to obtain the necessary information.  Investigators shall ensure the subject of the interview understands the IA Unit's function and responsibility.

B.      Absent exigent circumstances, all IA Investigators' interviews shall be properly recorded and preserved.  Video recording of interviews is the presumptive practice with respect to any witness in an investigation involving misconduct.   Any interviews conducted by IA Investigators that is not video or audio recorded, shall be preserved using a written statement by the subject of the interview.   The Investigator shall specifically articulate in their reports why the statement could not be video or audio recorded.

C.      All interviews shall be conducted in a fair and impartial manner.  During an internal investigation, members will be afforded all of their Divisional, collective bargaining, and Constitutional rights.  Complainants will not be required to sign

documents not to prosecute, nor will complainants or witnesses be required to sign forms indicating that they understand the penalties for false testimony.

D.   Garrity Warnings.  The United States Supreme Court in Garrity v. New Jersey, 385 U.S. 493 (1967), provides important and fundamental protections for public employees.  Garrity applies exclusively to situations where the employee is required to give a statement as a term and condition of their employment or face adverse employment action, and the employee reasonably believes that the statement provided could be self-incriminating in a subsequent criminal proceeding.  Garrity is personal to the individual employee.  When a Garrity warning is necessary (See: Section I, D, 2), the appropriate warning will be issued with the accused officer acknowledging waiver and understanding the rights in writing.  See: Appendix 1.

E.   Members who are interviewed about potentially criminal matters during the administrative investigation shall be first asked to provide a voluntary statement or subsequently required to provide a compelled statement.  If an involved officer is ordered to provide a compelled statement, he or she shall be advised of their rights under Garrity and presented with a Garrity Warning Form.  The Garrity Warning Form shall be signed by the involved officer and a copy of the signed form included in the case file.

F.   Where a member has the right to have union representation and/or an attorney present, such representatives may not testify or answer for the interviewee/member. Further, such representatives do not have the right to disrupt the investigative interview.  The representatives will be advised that this is not a court or an adjudication process, there is no right to cross-examine or otherwise ask questions of the IA Investigator, and they shall at all times conduct themselves in a professional and respectful manner.  In the event a representative raises objections or otherwise attempt to answer on behalf of the member, the IA Investigator will note their objections for the record and direct the member to answer the question. The IA Investigator will ensure that the record reflects that the interviewee/member's failure to answer the question could result in further disciplinary action.  At the end of the interview, the IA Investigator may, at his/her discretion, afford the representative the opportunity to ask the interviewee/member questions.

G.   Complainants and witnesses may bring counsel or a representative or support person to an IA interview.  Interpretation services by a professional qualified interpreter must be provided for persons who have limited proficiency in the English language and disabilities must be reasonably accommodated.

H.     In case dealing with allegations of sexual misconduct, a supervisor from Special Victims/Sex Crime Unit may be utilized for assistance.

I.     If necessary, IA Investigators may obtain the assistance of an outside agency (to include OPS) to locate witnesses or obtain their cooperation to complete specific interviews.

## X.    INVESTIGATION OF MEMBERS NO LONGER WITH CDP.

A.     Where a member resigns, retires, or is otherwise separated from CDP while a joint criminal and administrative investigation is pending, the criminal investigation shall nonetheless be completed, and submitted to the appropriate prosecuting authority; however, the administrative investigation will close at the time of separation.

B.     Where a member resigns, retires, or is otherwise separated from CDP while a strictly administrative investigation is pending, the investigation shall nonetheless be completed.

C.     Regardless of whether the investigation is a joint criminal and administrative, or solely an administrative investigation, issues of policy, police practices, and training will be identified and referred up the chain of command and resolved.

D.     The completion of a "final IA Investigative Report" will be at the discretion of the Superintendent of Internal Affairs, except when needed to address issues of policy, police practices, and training.  Absent a "final IA investigative Report", the closing IA Pro document will nevertheless include closing summaries by the assigned IA Sergeant, IA OIC, and the IA Superintendent.

E.     The completed investigation, and results of any referrals to the prosecuting authority shall be maintained in the Internal Affairs investigative file.

## XI.    INVESTIGATIVE REPORT.

A.     IA will conduct objective, comprehensive, and timely investigations of allegations of misconduct initiated by or referred to the Unit.

B.     The investigative report shall contain, in chronological order, all events that related to the investigation and shall follow a template approved by the IA OIC and IA Superintendent.  It shall also contain summaries of all interviews, reports, etc. that are pertinent to the case to include, but not limited to:

1.      a narrative description of the incident, including a precise description of the evidence that either justifies or fails to justify the member's conduct based on IA's independent review of the facts and circumstances of the incident;

2.      documentation of all evidence that was gathered, including names, phone numbers, and addresses of witnesses to the incident.  In situations in which there are no witnesses, the report will specifically state this fact.   In situations in which witnesses were present but circumstances prevented the investigator from determining the identification, phone number, or address of those witnesses, the report will state the reasons why and all efforts made to contact these witnesses.   The report also will include all available identifying information for anyone who refuses to provide a statement;

3.      the results of any area canvass (e.g. identify of Investigators conducting the canvass, date, time location, outcome, etc.);

4.      documentation of all officers, witnesses, and members interviewed and attempted to be interviewed, a recording of those interviews, and transcripts of interviews as needed;

5.      the names and assignments of all other CDP members who witnessed the incident or have information pertaining to the incident that may be relevant to the investigation;

6.      documentation of any injuries, including officer injuries;

7.      the IA Investigator's evaluation of the incident, based on the review of the evidence gathered, including a determination of whether the officer's actions appear to be within policy, procedure, regulations, orders, or other standards of conduct required of members and an assessment of the incident for policy, training, tactical, or equipment concerns;

8.      whether other Division members responded appropriately by reporting the misconduct;

9.      if a weapon was used, documentation as to whether the officer's certification and training for the weapon were current,  as well as whether any ammunition or similar equipment used was in conformance with Divisional policy;

10.     any reports or documentation related to any testing that may have been conducted with regard to any weapon or instrumentality that may have been used or is otherwise connected to the investigation;

11. copies of all search warrants, subpoenas, and court orders shall be referred to in the report and maintained in the file.  In addition, all documents, reports, and recordings received in response to court orders will be addressed in the final investigative report; and

12. documentation of all findings and recommendations based upon the preponderance of evidence standard.

C. Every IA Investigator shall maintain an investigative log, which will contain the dates and time of all investigative acts taken during the course of the investigation and identify the person responsible for taking each investigative act.

D. In each investigation, investigators will collect and consider all relevant circumstantial, direct, and physical evidence, including Wearable Camera System (hereinafter referred to as "WCS) video or other recording devices.

E. IA Investigators will not automatically prefer a member's statement over a non-officer's statement.  IA Investigators will not disregard a witness's statement solely because the witness has some connection to either the complainant or the officer or because the witness or complainant has a criminal history.

F. In conducting the investigation, IA Investigators may take into account any information or evidence which may tend to impeach the credibility of a material witness, including the record of any witness, complainant, or officer who has been determined to have been deceptive or untruthful in any legal proceeding, misconduct investigation, or other investigation.  IA Investigators will make all reasonable efforts to resolve material inconsistencies between witness statements.

G. IA Investigators will evaluate all relevant police activity and any evidence of potential misconduct uncovered during the course of the investigation, to include any investigatory stops, searches, or seizures that occurred during the incident, tactics applied, and each use of force.  If the person involved in the encounter with the police pleads guilty or is convicted of any offense relating to the incident under investigation, IA will not consider that information alone to be determinative of whether a member engaged in misconduct, or will it justify discontinuing the investigation.

## XII.    ADMINISTRATIVE REVIEW OF COMPLETED IA INVESTIGATIONS.

A.    The IA OIC shall review each investigative file with the assigned Investigator for completeness, including a determination as to whether further inquiries should be made in support of the investigation.  This review will verify that the following items were considered by the IA Investigator:

1.    whether all findings are based on the preponderance of the evidence standard;

2.    whether the police action was consistent with policy, training, and legal standards;

3.    whether appropriate attempts to de-escalate were made;

4.    whether different tactics should or could have been employed;

5.    whether a need for additional training, counseling, corrective actions has been identified for the subject officer or any witness officer; and

6.    whether the incident raises equipment issues or suggests a revision of policies, tactics, or departmental training is needed.

The OIC, following this review of the investigation with the Investigator, will complete a summary of the investigation to include any additional recommendations and comments relevant to the case.

B.    The investigative file will then be forwarded to the Superintendent.  The Superintendent has the authority to require further investigation as necessary and is the final and sole decision-making authority relating to recommendations made to the Chief of Police.  After review by the IA Superintendent the investigative file will be forwarded to the Chief.  The final authority for acceptance or rejection of the recommendations will rest with the Chief of Police.

C.    Upon completion of an IA investigation into a criminal complaint referred to the Division by OPS, a copy of all materials available to non-sworn personnel from the IA file will be transferred without delay to the OPS Administrator to determine whether any further administrative investigation is warranted.  In the event OPS determines that additional investigation is warranted, they will be afforded the opportunity to conduct an investigation, to include Garrity interviews.  OPS further reserves the right to submit appropriate administrative findings to the Police Review Board.

D.  All investigative reports are confidential and the entire case file will be treated as such.  No copies of the case file reports shall be disseminated without the express authority of the Department of Law, the Chief of Police, or the IA Superintendent. Administrative investigative files shall be secured and maintained in the office of IA and the IA Superintendent shall serve as the custodian of those records. Retention of the administrative investigative files shall be in accordance with the records retention schedule set forth in the Ohio Revised Code.

## XIII.  PROSECUTORIAL REVIEW.

A.  Once criminal activity is suspected, the IA Superintendent or his designee will timely consult with an appropriate prosecutor and continue to consult with the prosecutor throughout the criminal investigation.  The investigator shall provide investigative material upon request of the appropriate prosecutor.

B.  In cases where criminal prosecution is likely, the administrative investigation should continue in consultation with the appropriate prosecutor to ensure that no aspect of the administrative investigation will impede or impair the subsequent criminal prosecution.  In a case where a decision is made by the IA Superintendent, in consultation with an appropriate prosecutor, to postpone any part of the administrative investigation until such time the criminal process is completed, the IA Investigator will then proceed with the administrative review as soon as practical and complete the investigation as hereinafter set forth in Section XV.  All decisions to delay any part of the administrative investigation will be documented by the IA Superintendent in the investigative file.

C.  To the extent an administrative investigation has not been completed by the time the criminal process concludes, IA will timely (see: Section XV) complete its administrative investigation into the facts and circumstances leading to the complaint to determine whether there is sufficient evidence to recommend discipline and/or assess if training or policy issues exists.

## XIV.  PARALLEL INVESTIGATIONS

A.  When an investigation involves allegations that are both non-FIT criminal in nature as well as administrative, the presumption is that IA will conduct parallel investigations.  To override the presumption, the IA Superintendent, following consultation with the appropriate prosecuting attorney, must determine that the administrative action may impair, impede, or otherwise obstruct the criminal investigation process and any subsequent prosecution that may result.  However,

the mere existence of a criminal investigation and the possibility of subsequent prosecution shall not be a deterrent to a parallel administrative investigation.

B.     The decision as to when a Garrity interview shall take place within the context of a parallel non-FIT criminal and administrative investigation shall be made by the IA Superintendent following consultation with the appropriate prosecuting attorney's office.  Garrity interviews shall be accomplished in a timely fashion without any unnecessary delay.  Any delay in conducting a Garrity interview shall be done only for good cause and documented in the investigative file.  For good cause, the following, non-exhaustive list of factors shall be taken into account as to when to conduct the Garrity interview:

1.     when all the known relevant facts have been reasonably discovered in order that the investigator conducting the Garrity interview is able to conduct a full, complete, and meaningful Garrity interview;

2.     conducting the Garrity interview will not, in any fashion, impair, impede, or otherwise obstruct the criminal investigation process and any subsequent prosecution that may result; and

3.     in the event, consistent with federal and State of Ohio case law, a new investigator is required to conduct the Garrity interview, the reasonable time needed for that investigator to become fully aware of all relevant facts to conduct a full, complete, and meaningful Garrity interview.

C.     All Garrity interviews will be conducted consistent with those procedures and practices set out in applicable federal and State of Ohio case law.


XV.   **TIMELINESS.**

A.     The IA Unit will make all reasonable efforts, in collaboration with the appropriate prosecutor, to complete non-FIT criminal investigations within 120 days of notification of the alleged misconduct.

B.     During that same time period the assigned IA investigator will conduct a parallel administrative investigation into any and all non-criminal misconduct which may lead to internal discipline or other corrective action.

C.     The IA Unit will make all reasonable efforts to complete the administrative investigation within thirty (30) days following the completion of the criminal process.

D.    In the event there is no criminal component in the complaint, the IA Unit will make all reasonable efforts to complete the administrative investigation in thirty (30) days of notification of the alleged misconduct.

E.    For investigations assigned by IA to other Divisions, Bureaus, Units and Districts, IA will complete its review within fourteen (14) days after receiving completed investigations.

F.    When an investigation cannot be completed within the recommended time periods, the Chief of Police or designee may approve a written request for an extension after consultation with the IA Superintendent.  No investigation will be abandoned solely because these deadlines have not been met.  The investigation file must include documentation of, and the reasons for, any extension of time. IA investigators must be held accountable for any unreasonable delays in the investigation of cases.  The IA Superintendent is ultimately responsible to the Chief for ensuring the timely investigations.

## XVI.  PROFESSIONAL STANDARDS SOFTWARE (currently IAPro and Blue Team).

A.    The IA OIC will ensure that all assigned investigations are given a case number generated by IAPro.  All descriptive information available shall be entered in the system by the OIC when the investigation is assigned and opened. IA Investigators shall complete administrative investigations in IAPro and route them to the OIC. IA Investigators will complete criminal investigations on Form-1 and Form 10 reports, and scan copies of them into IAPro as attachments to the case.  IA Investigators will include the facts leading up to the investigation, an overview of the investigative steps taken along with a discussion as to how the final recommendation was reached in the IAPro summary folder for all criminal investigations.

B.    In all cases a disposition will be entered as the final step in closing out an investigation.

C.    An IA history will be maintained by IA within IAPro which includes all complaints alleging misconduct against Division employees to include the case number, the date of the violation, the nature of the allegations, the ultimate findings made by the Chief or Director of Public Safety and any discipline thereby imposed.  The IA history will include all allegations of misconduct investigated by IA, OPS, or any other CDP unit or outside agency.  The IA Superintendent will ensure that OPS cases are updated into a member's IA history and bring forward any concerns in that regard to the Chief and the Director of Public Safety.

## XVII.  DISPOSITIONS.

A.  In each case/investigation, each allegation, regardless of whether it was an original allegation or a subsequently discovered allegation, shall have a separate disposition. The following dispositions will be used in all cases:

1.  Sustained:  Investigation proves by a preponderance of the evidence that the alleged conduct occurred and the conduct was a violation of law, Division policy, procedure, or training.

2.  Not Sustained:  As a result of the investigation, there is not a preponderance of evidence to either prove or disprove the allegation and no other violations of law, procedures, policy, training or tactics have been identified.

3.  Unfounded:  Investigation proves by a preponderance of the evidence that the allegation against the member is false and/or did not occur.

4.  Within Policy:  Member's actions in the use of force were consistent with law, training, proper and justified.

5.  Referred to OPS:  An assigned IA case that is referred to OPS for its investigation.

6.  Closed-Retired/Resigned:  Member retired, resigned, or otherwise separated from CDP during the pendency of an investigation or prior to the imposition of discipline.

7.  Completed:  An IA case is opened due to the use of force by an officer employed by an outside agency and the use of force investigation is completed by CDP Homicide Unit.  Note:  If IA, while monitoring Homicide's investigation discovers any policy, regulations, rules, or training violations by a member of CDP, IA will open a separate file and investigate the relevant violations.

B.  Regardless of the disposition made, as to the conduct of an individual member, a case may also be identified with following additional dispositions:

1.  Policy Review Required – Policy or procedure needs to be modified with a suggested remedy provided to clarity the policy.

2.  Training issue – A deficiency in current training has been identified with a recommendation that offers a remedy.

      3.      Equipment issue – A deficiency in equipment has been identified with a recommendation that offers a remedy.

## XVIII. ARREST/SUMMONS.

A.      When an IA investigation is presented to the Prosecutor and the IA Investigator is notified that criminal charges will be filed against a CDP member, the IA Investigator will notify and provide a brief summary of the incident to:

      1.      The IA Superintendent and the IA OIC;

      2.      Bureau of Compliance; and

      3.      Personnel Unit (following the arrest of the CDP member).

B.      In addition, the IA Investigator shall:

      1.      Delineate the charge[s] by type including federal statute, Ohio Revised Code (ORC), or Codified Ordinance citation and all charged counts to include the designation of felony or misdemeanor for each count charged.

      2.      Prepare the documents required to charge, obtain a warrant and file the same with the appropriate official.

C.      The IA Superintendent or IA OIC shall:

      1.      Notify the subject member's Commander and the Chief of Police or designee of the circumstances surrounding the issuance of the charges and serving of the warrants.

      2.      Contact the affected collective bargaining representative to deliver the officer unless exigent circumstances exist.  Certain cases may dictate an off-site arrest.  Under such circumstances, an operational plan for the arrest shall be completed.  The operational plan must be approved by the IA Superintendent or OIC before it is valid.

D.      Upon arrest or summons, and as necessary to ensure the safety of the public and reputation and integrity of the Division, the IA Investigator shall provide written notice, prepared by the Case Preparation Unit, that the member is relieved of duty or placed on modified status.  The Investigator shall ensure that all appropriate

property (to include an officer's city issued weapons, ammunition, badge, and ID) are collected and secured.

E.      When a member has been indicted by a Grand Jury and a secret indictment issued, the arrest procedures will remain the same.  However, the warrant will not need to be filed with the City Clerk of Court.  A copy of the indictment shall be obtained from the County Clerk of court and served on the officer.  Notification shall be made to the County Prosecutor that the affected officer has been served and is in custody.  Additionally, arrangements shall be made with the appropriate County Sheriff's Office for processing through the County jail.

## XIX.  OFFICER ASSIGNMENT STATUS.

A.      Upon the initiation of an investigation into a member's alleged misconduct, the IA Superintendent will confer with the Chief of Police in regarding the appropriate duty status for said member.  A member under investigation will be permitted to remain on regular duty only if it is reasonably believed that the member would not pose any risk to the safety of the community and other Division members; and, that said member's regular duty status would not impair public confidence in the Division or the member's ability to effectively carry out his or her duties and responsibilities.  The initial decision may be reviewed by the IA Superintendent and Chief of Police at any subsequent time, at the sole discretion of the IA Superintendent and Chief of Police.

B.      If a member is charged with a misdemeanor, that member will be placed on restricted duty with pay.

C.      If a member has been charged with a felony, the member will be relieved of duty, without pay.

## XX.    INVESTIGATIVE FILE DISPOSITION.

A.      A.  The IA OIC, upon receipt of a closed investigation, will verify that the correct entries have been made by Case Preparation Unit in IA Pro.  In addition, the OIC will complete any necessary updates in IA Pro before closing out the investigation and storing the hard copy of the file per ORC retention period.

B.      The IA OIC will, within fourteen (14) calendar days of an investigation being closed, ensure that all relevant information from the completed investigation is provided electronically to the member's Captain, the Training Review Committee, and the EAU, while ensuring that sensitive information is adequately protected.

## XXI.  NOTIFICATIONS.

A.  During any IA investigation involving a complainant, the assigned IA Investigator will keep the complainant up-to-date on the progress of the investigation, unless such updates would interfere with the conduct of the investigation.

B.  If an investigation results in no recommendation of administrative or criminal charges, within 14 days of that determination, the IA Superintendent shall notify all complainants of that outcome by written correspondence.

C.  If an administrative matter with no criminal element is referred to the Case Preparation Unit with a recommendation of charges, within fourteen (14) days after the Chief reaches a disposition, the IA Superintendent shall notify all complainants by written correspondence.  Any correspondence shall address the ultimate resolution, including decisions reached by the Chief, Safety Director or designee, and discipline rendered.

D.  If a criminal matter is referred to a prosecutor with a recommendation of charges, notice of the outcome will be made together with notice of the administrative outcome as follows:

    1.  Where IA completes its administrative investigation within 30 days following completion of the criminal process (see section XV(C)), notice regarding the outcome of criminal proceedings will be made in writing, together with notice of the administrative outcome.  This notice shall be made within fourteen (14) days after the Chief reaches a disposition. Any correspondence shall address the ultimate resolution of both matters, including declination decisions reached by the prosecutor, verdicts reached by the criminal trier of fact, and administrative decisions by the Chief, Safety Director or designee, as well as criminal sanctions imposed and administrative discipline rendered.

    2.  Where IA cannot complete its administrative investigation within 30 days following completion of the criminal process, at that point it shall advise complainants in writing of the outcome of criminal proceedings (as set forth in (D)(1) above) and inform the complainant that the administrative matter is ongoing.  Within fourteen (14) days after the Chief reaches a disposition in the administrative matter, the IA Superintendent shall notify all complainants by written correspondence.  Any correspondence shall

address the ultimate resolution, including decisions reached by the Chief, Safety Director or designee, and discipline rendered.

E.    Where a complaint is referred to IA through OPS, written notice will also be made to the OPS administrator, pursuant to the content and timelines set forth above.

F.    Notify in writing any officer within ten (10) days of an investigation being closed, either criminal or administrative.

## XXII.  TRAINING.

A.    All new personnel assigned to IA will receive formal training within six (6) months on conducting IA investigations, both criminal and administrative.  The training will be adequate in quality, quantity, scope, and type and consistent with national standards and best practice, including instructions in:

    1.    investigative skills, proper interrogation and interview techniques; gathering and objectively analyzing evidence; and data and case management;

    2.    the particular challenges of administrative police misconduct investigations, including identifying alleged misconduct that is not clearly stated in the complaint or that became apparent during the investigation;

    3.    assessing and weighing the credibility of civilian witnesses against officers;

    4.    the use of objective evidence to resolve inconsistent statements;

    5.    the proper application of the preponderance of the evidence standard; and

    6.    the application of law, CDP rules and policies and protocols related to administrative investigations of alleged officer misconduct.

B.    In addition to the annual in-service training required for all officers, IA Investigators also will receive annual training related to conducting misconduct investigations that is adequate in quality, quantity, type and scope and consistent with national standards and best practice.

C.    The IA OIC in consultation with the Superintendent will select outside vendors that may be considered for this training.

**RELATED ORDERS AND MANUALS:**

Reporting Misconduct GPO
GPO 1.3.16 Integrity Control Call Up Team
Anti-Retaliation GPO
OPS GPO
FIT Manual
1.07.06 Disciplinary Guidance

_____