IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | **NOTICE SUBMITTING SUPERVISORY** |
| CITY OF CLEVELAND | ) | **REVIEW POLICY, FORCE** |
| | ) | **INVESTIGATION TEAM MANUAL &** |
| Defendant. | ) | **GPO, AND A RELATED** |
| | ) | **MEMORANDUM OF UNDERSTANDING** |
| | ) | **BETWEEN THE CLEVELAND** |
| | ) | **DIVISION OF POLICE AND THE** |
| | ) | **CUYAHOGA COUNTY SHERIFF'S** |
| | ) | **DEPARTMENT** |

Pursuant to Paragraphs 87 through 123 of the Consent Decree and the Fourth Year Monitoring Plan in the above-captioned matter, the City of Cleveland (the "City"), on behalf of the Cleveland Division of Police ("CDP" or "Division"), submitted four related documents: (1) a Use of Force Supervisory Reviews and Investigations Policy ("Supervisory Review Policy"); (2) a Force Investigation Team ("FIT") Manual; (3) a FIT General Police Order ("GPO"); and (4) a Memorandum of Understanding Between the Cleveland Division of Police and the Cuyahoga County Sheriff's Department to Conduct Independent Criminal Investigations of Uses of Force by Cleveland Police That Result in the Actual or Anticipated Death of a Person ("MOU"), attached hereto as Exhibits A, B, C, and D, respectively.

The Monitoring Team has carefully reviewed the submitted documents.  The Team has determined that, together, they provide appropriate guidance on the thorough and complete investigation of uses of force by CDP personnel.  The Supervisory Review Policy sets guidelines and expectations for supervisors' force reviewing, documenting, and processing uses of force through the Division's chain of command.  The FIT Manual and GPO create procedures for the review of the most serious (Level 3) uses of force by a dedicated Force Investigation Team that must be specially trained to conduct comprehensive and objective administrative reviews of force incidents.  For uses of force by CDP officers resulting in death, CDP has chosen to have an outside agency conduct independent criminal investigations of these incident.  The Memorandum of Understanding sets forth the agreement between CDP and the Cuyahoga County Sheriff governing these investigations. The Monitoring Team therefore recommends that the Court approve CDP's Supervisory Review Policy, FIT Manual, FIT GPO, and the Memorandum of Understanding.

## I. SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING INVESTIGATIONS OF FORCE INCIDENTS

The Consent Decree designates three levels of uses of force, ranging from Level 1 ("reasonably expected to cause only transient pain and/or disorientation") to Level 3 (the most serious uses of force that include lethal force, force resulting in death or serious physical injury, and uses of force resulting in hospital admission). Dkt. 7-1 at ¶ 87.

The Decree contains a number of requirements relating to CDP supervisors' review of uses of force below Level 3.  For Level 1 uses of force, the involved officer's direct supervisor must review and approve the use of force in writing, elevating the level of force or returning the report to the officer for revision as appropriate.  Pursuant to the Consent Decree, supervisors need not respond to the scene of a Level 1 use of force; however, CDP has chosen to have them do so.  If a

supervisor determines that the report suggests potential criminal conduct, he or she will immediately notify Internal Affairs. *Id.* at ¶ 94.

For investigations of Level 2 uses of force, direct supervisors, "upon notification of a Level 2 use of force incident or allegation of excessive force, will respond to the location of the occurrence." *Id.* at ¶ 95. When the force is reported as a Level 1 but the subject has alleged excessive force, the supervisor must respond to the scene to determine whether a Level 1 or Level 2 investigation should be conducted. At the scene, the supervisor must follow a specific protocol, including examining the subject for injury, interviewing the subject for complaints of pain, ensuring the subject receives medical attention where appropriate, obtaining an identifying number that allows the Division to track the use of force, collecting all evidence relevant to the use of force, interviewing all involved CDP officers and civilian witnesses, and providing a written synopsis to their immediate supervisor. *Id.* at ¶ 97.

The Consent Decree dictates separate protocols for the investigation of Level 3 incidents, or the most serious uses of force. Specifically, paragraph 111 of the Consent Decree requires the creation of a Force Investigation Team ("FIT") that is:

> comprised of personnel from various units and will not be a new unit to which officers are permanently assigned. The FIT will conduct administrative investigations in all of the following instances and, where appropriate and where not assigned to an outside agency as permitted above, will conduct criminal investigations of: (1) all Level 3 uses of force; (2) uses of force involving potential criminal conduct by an officer; (3) all instances in which an individual died while in, or as an apparent result of being in, CDP custody; and (4) any uses of force reassigned to FIT by the Chief or his or her designee. The FIT will be designed to ensure that these incidents are investigated fully and fairly by individuals with appropriate expertise, independence, and investigative skills to ensure that uses of force that are contrary to law or policy are identified; that training, tactical, and equipment deficiencies related to the use of force are identified; and that investigations are of sufficient quality.

To guide the operations of FIT, the Consent Decree specifically requires that "CDP will revise the FIT manual to ensure that it is consistent with the force principles outlined in this Agreement[.]" *Id.* at ¶ 123.  Further, the manual must provide, among other things, "guidance on an appropriate approach when providing *Garrity* warnings[;]" "clear procedures to ensure appropriate separation of criminal and administrative investigations in the event of compelled subject officer statements[;]" and procedures for report writing, objective fact-gathering and evaluation, evidence processing, and legal consultation to ensure that "administrative investigations are not unnecessarily delayed while a criminal investigation is pending." *Id.*

The Consent Decree permits CDP to "refer criminal investigations of uses of force to an independent and highly competent agency outside CDP where appropriate to ensure the fact and/or appearance of impartiality of investigations." Dkt. 7-1 at ¶ 110.  Further, "before using an outside agency to conduct criminal investigations," CDP is required to "develop a memorandum of understanding with the outside agency to ensure that, after an appropriate prosecutor review, completed criminal investigations are provided to FIT and the Monitor, and that information obtained from or as a result of any compelled interviews of officers is not provided to criminal investigators.  This memorandum of understanding must delineate responsibilities between the two agencies and establish investigative protocols to ensure, to the extent possible, thorough, objective and timely administrative and criminal investigations." *Id.* at ¶ 117.

Finally, the Consent Decree provides that "on at least an annual basis, the Monitor will determine whether the criminal investigations conducted by the outside agency are consistently objective, timely, and comprehensive . . . If a determination is made that the investigations are not consistently objective, timely, and comprehensive, the memorandum of understanding will be

terminated and the FIT will assume responsibility for conducting all criminal investigations of uses of force." *Id.* at ¶ 119.

## II. PROCEDURAL HISTORY

The process of creating the attached documents began in December 2016.  Representatives of CDP, the City's Law Department, the Department of Justice and the Monitoring Team met to review and discuss various FIT-related policies and manuals used by other police departments and worked together to find policies, practices, and procedures that would work for CDP and the City of Cleveland.  The Parties and representatives of the Monitoring Team discussed the many issues relating to the investigation of CDP officer uses of force and eventually reached consensus on the content of the policies required to ensure consistently objective, timely, and comprehensive use of force investigations.

CDP sent proposed final drafts of the documents on May 8, 2019.  The MOU was finalized by the signature of the City's Law Director on July 11, 2019.  The filing of these documents with the court was postponed by the Monitoring Team until the completion of all integrity-related investigation policies, which were ultimately finalized on October 15, 2019.

The recent pursuit resulting in the death of a teenager in December of 2019, highlighted the need for additional investigative focus to be applied to pursuits. The Monitoring Team inquired whether CDP would consider using FIT to investigate pursuits resulting in loss of life or serious injury. The parties and the Monitoring Team have discussed this issue over the last few months. Although pursuit investigations are not technically part of the Consent Decree, the use of force principles outlined in the Consent Decree require CDP to continue limiting vehicle pursuits to those in which the need to capture the suspect outweigh the danger to the public and to continue limiting the number of CDP vehicles that may be involved in a vehicle pursuit. To that end, CDP

has been willing to discuss solutions. Encouragingly, CDP is now working on creating a Pursuit Investigations Team and an associated policy. Initial discussions suggest this team will include criminal investigators, accident reconstruction team members, and Internal Affairs investigators, who will conduct the administrative investigations into pursuits that result in serious injury or death. However, as this new team will be separate from FIT, the time is now ripe to file the FIT Manual and related documents.

### III. STANDARD OF REVIEW

The Monitoring Team's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented." Dkt. 7-1 at ¶ 351; *accord id.* ¶ at 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed and implemented under" the Decree). The task of the Monitoring Team here is to determine whether the Supervisory Review Policy, the FIT Manual, FIT Policy, and the MOU comply with the Consent Decree's requirements.

### IV. ANALYSIS OF THE SUPERVISORY REVIEW POLICY

The Supervisory Review Policy identifies CDP supervisors' responsibilities in responding to an officer use of force, including reviewing Level 1 and Level 2 uses of force, referring Level 3 to FIT, and the chain of command review of investigations.

Under the Supervisory Review Policy, CDP officers who use "any level of force while on duty, off duty or while working secondary employment" shall request a supervisor to respond to the scene. Ex. A. at 1. A supervisor who witnessed, participated in, or ordered a use of force in any Level 1 or 2 use of force shall not review the incident. *Id.*

Supervisors responding to an officer use of force shall inspect the subjects for pain and/or injury and determine the proper classification of the use of force (in the event of a Level 3

classification, notifying FIT). If a supervisor determines that an officer's use of force reveals evidence of potential criminal conduct, he or she shall immediately suspend any investigation and request FIT. Absent any need to refer the investigation to FIT, the supervisor will "[c]onduct a complete, thorough and impartial review/investigation of the use of force incident considering whether the force used was objectively reasonable, proportional to the level of resistance, and necessary, and whether the involved officer(s) took all reasonable measures to de-escalate the incident and reduce the likelihood or level of force." *Id.* at 2.

The policy also describes the protocol by which supervisors forward completed investigations through the chain of command to the appropriate District or Unit Commander. Under the policy, "[e]ach level in the chain of command will review the report within three tours of duty of receiving it to ensure that it is complete and that the findings are supported using the preponderance of the evidence standard." *Id.* at 6. At each level, reviewing supervisors will address any discrepancy and order additional investigation where it appears that additional relevant evidence may help resolve inconsistencies or improve the credibility of the findings. *Id.* When the commander finds that a Level 1 review or Level 2 investigation is complete and that the evidence supports the findings, the file will be "promptly forwarded via use of force tracking software" to either the Internal Affairs Unit (for a Level 1 review) or the Internal Affairs Superintendent (for Level 2 investigations). *Id.* at 7.

Because the proposed policy appears consistent with the Consent Decree's requirements regarding supervisory review of force, the Monitoring Team approves the policy.

V.      **ANALYSIS OF THE FORCE INVESTIGATION TEAM MANUAL AND POLICY**

To address the most serious uses of force, CDP has developed a lengthy and detailed Force Investigation Team Manual to guide operations of the Division's new FIT Team, which is

tasked with a critical function of accountability for incidents of force. Under the Manual, "FIT conducts administrative investigations of (1) all Level 3 uses of force; (2) uses of force involving potential criminal conduct by an officer; (3) all instances in which an individual died while in, or as an apparent result of being in, CDP custody; and (4) any uses of force reassigned to FIT by the Chief or his or her designee. FIT shall also conduct criminal investigations of the above matters where appropriate and where not assigned to an outside agency." Ex. B. at 3.

FIT is not a standalone unit. Rather, each FIT is specific to each investigation, and is "comprised of personnel from various units" and "designed to ensure that incidents under the jurisdiction of FIT are investigated fully and fairly by individuals with appropriate expertise, independence and investigative skills to ensure that uses of force that are contrary to law or policy are identified; that training, tactical, and equipment deficiencies related to the use of force are identified; and that investigations are of sufficient quality." *Id.* at 21-22. The IA Superintendent will work with the Bureau of Special Investigations ("BSI") Commander and FIT officer-in-charge to identify appropriate personnel from Homicide, IA, and other units to staff each FIT. *Id.* At 22. Applicants wishing to join FIT must submit specific information, including samples of their investigatory work, their current and previous supervisors, and their resume. *Id.* "Prior to performing FIT duties, FIT members will receive FIT-specific training that is adequate in quality, quantity, scope and type, including FIT procedures, including callout and investigative protocols; the differences between administrative and criminal investigations and how each should be conducted; investigations of officer-involved shootings; investigative equipment and techniques[,]" and the roles of other organizational entities, such as the prosecuting attorney and the Office of Professional Standards ("OPS"). *Id.* at 22-24.

The FIT Manual details the protocols surrounding the FIT's operations, including the "FIT Callout," that designates an incident as warranting a FIT response and sets forth the necessary notifications (to the IA Superintendent and prosecuting attorneys, as appropriate). *Id.* at 6. The Manual also includes protocols to ensure the integrity of a FIT investigation, including the steps by which the investigation is moved from the first responding supervisor ultimately to the FIT. *Id.* at 6-8.

The Manual also outlines the procedures "when it is reasonably suspected that a member's use of force involved potential criminal conduct" by which the BSI Commander will determine whether to refer the incident to an outside agency to conduct the independent criminal investigation and requires the FIT to comply with the requirements of the Memorandum of Understanding between CDP and the Cuyahoga County Sheriff used to conduct the independent criminal investigations. *Id.* at 9.

If the investigation is not assigned to the outside agency, it remains with CDP and is bifurcated within the FIT on parallel criminal and administrative tracks. The FIT "criminal team" reports to the BSI Commander and shall be led by the Homicide Unit officer-in-charge or their designee. Meanwhile, the FIT administrative team reports to the IA Superintendent and is led by the IA officer-in-charge. The IA Superintendent or their designee will act as the "case master" to "continuously screen all information contained in the administrative investigation and ensure that no information that could compromise the criminal investigation is made available to the criminal investigation team." *Id.* at 10. The FIT criminal team will have "priority access to all witnesses and evidence, but this will not preclude access by the administrative investigation." *Id.*

9

The officer-in-charge of the FIT administrative team shall work with the IA Superintendent to "conduct compelled interviews of involved officers within 48-72 hours unless the appropriate prosecuting attorney requests that the interview be delayed." *Id.* at 9.

Under the FIT Manual, a FIT response will "usually include the BSI Commander, the IA Superintendent, the FIT OIC (team leader) (who has sufficient experience as a Homicide Unit Supervisory Officer (for criminal investigations) and/or an Internal Affairs Unit Supervisory Officer (for administrative investigations) as determined by the BSI Commander), an appropriate number of Investigators or Detectives assigned to the FIT, and at least one Office of Professional Standards Investigator." *Id.* at 11.

FIT Investigators have a host of responsibilities detailed at length in the Manual, including ensuring that all on-scene involved members and witnesses "have been located and immediately segregated to prevent contamination or collusion[;]" examining the subjects for injury and ensuring that they receive medical attention; and collecting all relevant and material evidence, such as officer witness narrative statements, civilian witness written statements, and audio and video footage. *Id.* at 11-14.

The FIT Manual also includes detailed and precise protocols for interviews conducted by FIT investigators, including non-voluntary compelled statements by involved and witness officers. During an incident involving potentially criminal behavior, FIT investigators will ask all involved officers during the administrative investigation to provide a voluntary statement. If the officer declines to provide a voluntary statement, the FIT investigator will compel the officer to provide a statement. In doing so, the FIT Team will advise the individual of their rights under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and present them with a *Garrity* Warning Form, *Id.* at 29, to be signed by the involved officer. Similarly, if a witness officer refuses to provide a voluntary

10

statement, "the statement made by a witness officer shall be compelled under *Garrity v. New Jersey* and administrative investigators will use the same protocol used to compel statements from involved officers, as described in this manual." *Id.* at 15.

A separate General Police Order outlining the operations of the FIT is intended for distribution to all CDP supervisors and police officers to ensure general knowledge throughout the Division about the jurisdiction and responsibilities of patrol officers and supervisors vis-à-vis FIT operations and critical incident responses. The GPO highlights the type of cases FIT investigates (Ex. C. at 1); FIT Notification requirements (*Id.* at 2); responsibilities of non-involved street supervisors (*Id.*); FIT responsibilities at the scene (*Id.* at 2-4); and officer responsibilities regarding reporting for incidents falling within the jurisdiction of the FIT (*Id.* at 4).

The various policies and Manual addressing the functioning of FIT appears consistent with the requirements of the Consent Decree, and the Monitoring Team accordingly approves them.

### VI. ANALYSIS OF THE MEMORANDUM OF UNDERSTANDING BETWEEN CDP AND THE CUYAHOGA COUNTY SHERIFF

To ensure the impartiality of investigations in the most serious use of force cases that result in the actual or anticipated death of a person, CDP has elected to use the Cuyahoga County Sheriff Department to independently conduct the criminal portion of those investigations.

"When there is a use of force by a CDP officer within the jurisdictional boundaries of the City of Cleveland that results in the actual or anticipated death of a person," the Sheriff agreed to "conduct [] thorough, objective, and timely, independent investigation[s] and submit his findings to the appropriate prosecutor." Ex. D. at 1. CDP, however, will continue to "investigate non-CDP officers using non-lethal or lethal force in the jurisdictional boundaries of the City of Cleveland except when CDP determines an investigation by an independent agency is necessary." *Id.* at 1-

11

2. The MOU further provides that the Sheriff "may agree to provide other independent use of non-lethal and lethal force investigations upon the request of the CDP." *Id.* at 2.

Although the Sheriff has its own protocols and procedures for conducting use of force investigations, the Sheriff agreed that "the CDP Force Investigation Team (FIT) Manual shall be used as guiding principles for all Sheriff Use of Force Investigations" of CDP personnel. *Id.* at 2. Ultimately, while the Sheriff's office will be performing these investigations, CDP remains accountable under the Consent Decree for timely, complete and accurate investigation of force incidents resulting in death.

The Sheriff acknowledged that the CDP's FIT is required to "conduct a concurrent and thorough administrative investigation in regard to the incident the Sheriff is investigating and may take disciplinary action as proper." *Id.* at 3. In order to facilitate that process, CDP and the sheriff agreed that "[n]o part of CDP FIT administrative investigation will be held in abeyance unless specifically authorized by the Chief or his designee in consultation with the Sheriff and the designated prosecutor. If the Chief or his designee authorizes any part of the investigation to be held in abeyance, the Sheriff and CDP will confer with the designated prosecutor to create a plan that will, to the extent possible, allow for a thorough, objective and timely administrative investigation in support of the need for CDP to take appropriate disciplinary action when warranted." *Id.*

The MOU also ensures that "[a]fter the appropriate review by the designated prosecutor, the Sheriff shall provide its completed investigation to CDP. The Sheriff shall also, on an ongoing basis, provide CDP Internal Affairs command staff with any investigative reports, interview recordings or other documentation relating to the Sheriff's investigation that will assist CDP Internal Affairs in conducting a timely, concurrent, administrative investigation." *Id.*

Also, the MOU notes the Consent Decree's requirement that the Monitor "will review the criminal investigations conducted by the Sheriff for CDP to determine whether the investigations are consistently objective, timely, and comprehensive" and notes that the CDP will provide "the Monitor with a copy of all documentation in support of completed Sheriff investigations, as soon as practicable, upon receipt of an investigation from the Sheriff." *Id.*

Finally, the MOU includes attached protocols, which lay out the scope of the cases covered by the MOU, initial responsibilities assumed by CDP and the Sheriff (to include the notification "without delay" of Sheriff investigators upon the reporting of a FIT callout), the investigatory responsibilities of CDP FIT and the Sheriff, the scope and conduct of investigations, and the process by which investigative reports will be submitted. *Id.*, Attachment A.

## VII. CONCLUSION

The task of the Monitoring Team is to duly consider whether the City's submitted Supervisory Review Policy, Force Investigation Team Manual, and the related Memorandum of Understanding satisfy the terms of the Consent Decree. The Monitoring Team concludes that the Supervisory Review Policy, FIT Manual, and MOU meet the terms of the Consent Decree. Accordingly, the Monitor approves them in their entirety and requests that this Court order them effective immediately.

Respectfully submitted,

/s/ Hassan Aden

HASSAN ADEN
Monitor
The Aden Group LLC
8022 Fairfax Road
Alexandria, VA 22308
Tel: (571) 274-7821
Email: aden@theadengroup.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 22, 2020 I served the foregoing document entitled Motion to Approve Supervisory Review Policy, Force Investigation Team Manual & GPO, and a Related Memorandum of Understanding Between the Cleveland Division of Police and the Cuyahoga County Sheriff's Department via the Court's ECF system to all counsel of record.

                                                          /s/ Ayesha Hardaway
                                                          AYESHA HARDAWAY