

# Cleveland Division of Police

### CLEVELAND DIVISION OF POLICE

### CLEVELAND, OHIO

### FORCE INVESTIGATION UNIT

### PROCEDURAL MANUAL

**Updated: November 6, 2018**

## Table of Contents

| | | |
|---|---|---|
| I. | SCOPE & OBJECTIVE OF THIS MANUAL …………………………… | 3 |
| II. | OPERATIONS- TERMS AND DEFINITIONS………………………….. | 3 |
| | A. DEFINITIONS | |
| III. | OPERATIONS- FIT SCREENING……………………………………… | 6 |
| | A. NOTIFICATIONS & SCREENING PROCEDURES | |
| IV. | OPERATIONS- INTEGRITY PROTOCOLS……………………………… | 7 |
| | A. INTEGRITY OVERVIEW | |
| | B. FIT RESPONSE | |
| | C. BASIC INTEGRITY PROTOCOLS………………………………… | 8 |
| V. | OPERATIONS- BIFURCATING AN INVESTIGATION………………… | 10 |
| | A. BIFURCATION OF INVESTIGATIONS | |
| VI. | OPERATIONS- FIT USE OF FORCE INVESTIGATIONS……………….. | 10 |
| | A. FORCE INVESTIGATION TEAM COMPOSITION | |
| | B. FIT INVESTIGATOR RESPONSIBILITIES………………………. | 11 |
| | C. FIT OIC RESPONSIBILITIES…………………………………… | 16 |
| | D. IA SUPERINTENDENT RESPONSIBILITIES……………………. | 18 |
| | E. TRAINING UNIT RESPONSIBILITIES……………………………. | 19 |
| VII. | OPERATIONS- SCENE AND EVIDENCE PROCESSING………………. | 19 |
| | A. SCENE AND EVIDENCE PROCESSING | |
| VIII. | OPERATIONS- INVESTIGATION REVIEW AND PRESENTATION…… | 20 |
| | A. CASE INVESTIGATION REVIEW | |
| | B. CASE INVESTIGATION PRESENTATIONS………………………. | 21 |
| IX. | ADMINISTRATION- PERSONNEL SELECTION…………………………. | 21 |
| | A. SELECTION AND TRAINING OF FORCE INVESTIGATION PERSONNEL | |
| X. | ADMINISTRATION- TRAINING AND COURSE OFFERING PLAN…… | 22 |
| | A. TRAINING OF FORCE INVESTIGATIONS PERSONNEL | |
| | B. MANDATORY TRAINING | |
| | C. ELECTIVE TRAINING……………………………………………. | 24 |
| XI. | ADMINISTRATION - FIT PERSONNEL ROTATION……………………. | 24 |
| | A. FIT PERSONNEL ROTATION | |

FORMS:

FIT SCREENING LOG…………………………………………………………… 25
PUBLIC SAFETY STATEMENT…………………………………………………… 27
FIT PRELIMINARY INTERVIEW FORM……………………………………… 28
IAU GARRITY FORM…………………………………………………………… 30

## I.      SCOPE & OBJECTIVE OF THIS MANUAL

This Manual governs the processes and procedures used by the Force Investigation Team ("FIT"). FIT conducts administrative investigations of: (1) all Level 3 uses of force; (2) uses of force involving potential criminal conduct by an officer; (3) all instances in which an individual died while in, or as an apparent result of being in, CDP custody; and (4) any uses of force reassigned to FIT by the Chief or his or her designee.  FIT shall also conduct criminal investigations of the above matters where appropriate and where not assigned to an outside agency.

FIT is designed to ensure that the classes of incidents outlined above are investigated fully and fairly by individuals with appropriate expertise, independence, training, and investigative skills to ensure that uses of force that are contrary to law or this Division's policy are identified; that training, tactical, and equipment deficiencies related to the use of force are identified; and that investigations are of sufficient quality.

This Manual carries the full weight of Division and City policy. Deviations from its provisions subject an officer to disciplinary action up to and including termination. Any changes to the Manual must be expressly approved by the Chief of Police.

## II.      OPERATIONS- TERMS AND DEFINITIONS

### A.      DEFINITIONS:

1. **Force Investigation Team (FIT):** A team within the Internal Affairs Unit comprised of personnel with specialized training and expertise from various units. FIT membership shall be tailored to the circumstances of each investigation, but will normally include one or more FIT detectives, a FIT Sergeant, one or more Office of Professional Standards investigators, one or more Internal Affairs investigators, and a Homicide Unit supervisory officer and an Internal Affairs supervisory officer, who will serve as the FIT Officers in Charge (OIC). OPS investigators will not participate in criminal investigations. At least one supervisory member of FIT will be available at all times to evaluate potential referrals from Division supervisors. The FIT Team will conduct investigations as specified in GPO 2.1.07, Force Investigation Team (FIT)

2. **FIT Officer in Charge:** Lieutenants, or designees, with sufficient experience and expertise to supervise and lead a complex investigation. The OIC of the criminal FIT investigations shall be the Homicide Unit Lieutenant, reporting to the Bureau of Special Investigations Commander. With respect to administrative FIT investigations, the FIT OIC shall be the Internal Affairs Unit Lieutenant reporting to the Internal Affairs Superintendent.

3

3. **FIT Investigation:** An investigation conducted by the Force Investigation Team involving all Level 3 uses of force; uses of force involving potential criminal conduct by an officer; all instances in which an individual died while in, or as an apparent result of being in, CDP custody; and any uses of force reassigned to FIT by the Chief or his or her designee.

4. **Garrity Warning Form:** A form used in an administrative investigation where there is potentially criminal conduct by the involved officer and the involved officer is compelled to give a statement under threat of adverse employment action, and the officer reasonably believes that the statement could be self-incriminating (Garrity v. New Jersey, 385 U.S. 493 (1967)).

5. **Holding Facility Video** Footage from any video system that is used to monitor a person who is in custody to include being held in an individual holding cell, common areas within a secured facility, sally ports or points of ingress into a secured facility or prisoner processing area.

6. **In Custody Death:** Any death that occurs while a subject is in, or as an apparent result of being in, CDP custody.

7. **Involved Officer:** A sworn officer of any rank or assignment who uses reportable force as defined by Division Policy either on-duty or off-duty.

8. **Level I Use of Force:** Force that is reasonably likely to cause only transient pain and/or disorientation during its application as a means of gaining compliance, including pressure point compliance and joint manipulation techniques, but that is not reasonably expected to cause injury, does not result in an actual injury, and does not result in a complaint of injury. It does not include escorting, touching, or handcuffing a subject with no or minimal resistance. Un-holstering a firearm and pointing it at a subject is reportable as a Level 1 use of force.

9. **Level 2 Use of Force:** Force that causes an injury, could reasonably be expected to cause an injury, or results in a complaint of an injury, but does not rise to the level of a Level 3 use of force. Level 2 includes the use of a CEW, including where a CEW is fired at a subject but misses; OC Spray application; weaponless defense techniques (e.g., elbow or closed-fist strikes, kicks, leg sweeps, and takedowns); use of an impact weapon or beanbag shotgun, except for a strike to the head, neck or face with an impact weapon; and any canine apprehension that involves contact.

10. **Level 3 Use of Force:** Force that includes uses of deadly force; uses of force resulting in death or serious physical harm; uses of force resulting in hospital admission/confinement due to a use of force injury; all neck holds; uses of force resulting in a loss of consciousness; canine bite; more than three applications of a CEW on an individual during a single interaction, regardless of the mode or duration of the application, and regardless of whether the applications are by the same or different officers; a CEW application for longer than 15 seconds, whether continuous or consecutive; and any Level 2 use of force against a handcuffed subject.

11. **Miranda Warning Form:**  A form used in a criminal investigation where there is potentially criminal conduct by an involved officer and when there is an indicia of detention.

12. **Preliminary Interview:** an administrative interview, subject to the protections of Garrity v. New Jersey, of the involved officer by a member of the administrative FIT conducted by the end of the involved officer's shift and consisting of non-leading questions attached to this manual. The involved officer will not be asked follow up questions at the time of the preliminary interview.

13. **Prosecuting Attorney:** An attorney assigned by the Cuyahoga County Prosecutor's office, a Special Prosecutor appointed by the Cuyahoga County Court or an attorney assigned by the Municipal Chief Prosecutor of the City of Cleveland. The FIT confers with the appropriate prosecuting attorney for purposes of legal advice and consult on investigative decisions that may impact a criminal prosecution and in determining when an officer should be given a Garrity order or a Miranda warning prior to the taking of a written statement, interview or walk-through.

14. **Public Safety Statement:**  A statement, subject to the protections of Garrity v. New Jersey, taken from an involved officer by a supervisor (typically the first responding non-involved supervisor) where inquiries are made to ensure that urgent police matters are handled. This includes the identity of involved officers, whether there are known outstanding suspects and the probable cause in support of believing criminal acts were committed by those suspects, the location of potentially dangerous weapons, whether there are injured persons who may need medical attention, any immediate dangers to the public and identifying the area needed to be secured in support of a thorough and complete investigation.

15. **Reportable Force:** Refers to force that officers must document and report in the manner outlined by the Use of Force Reporting Policy, 2.01.05. Cleveland Division of Police uses of force are divided into three levels of response. The three levels for the reporting and subsequent inquiry and review of uses of force correspond to the level of force used and/or the outcome of the force.

16. **Serious Physical Harm**: Any physical harm that carries a substantial risk of death; involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; any physical harm that involves acute pain of such duration as to result in substantial suffering or involves any degree of prolonged or intractable pain. (ORC 2901.01)

17. **Witness Officer:**  A sworn officer of any rank or assignment who witnesses an officer's use of force but who does not use reportable force himself or herself.

III.       **OPERATIONS- FIT SCREENING**

   A.     **NOTIFICATIONS & SCREENING PROCEDURES**

Supervisors notified of a Level 3 use of force are required to immediately notify the Communications Control Section (CCS) of the nature, location and time of the incident that may fall within the jurisdiction of the FIT. CCS shall immediately notify the Commander of the Bureau of Special Investigations (BSI) or his or her on-call designee and provide all available information.

The BSI Commander or designee must be available at all times to evaluate potential referrals from CDP supervisors or CCS. The BSI Commander will review all facts provided and take appropriate action, as outlined below. The Internal Affairs Superintendent is ultimately responsible for determining if an incident requires a FIT investigation.

   1.  **FIT Callout Necessary**
      a) The BSI Commander will give direction to the on-scene or responsible supervisor and then initiate a FIT response. The BSI Commander will ensure immediate notification is provided to the appropriate prosecuting attorneys. In cases where an outside agency will be used to conduct an independent criminal investigation, the BSI Commander will ensure a timely notification to the outside agency, confer with the IA Superintendent as necessary, and notify the IA Superintendent at the earliest opportunity.

   2.  **No FIT Response Necessary:**
      a) The BSI Commander will document the facts used to make this determination in the FIT Screening Log, and direction given to the on-scene supervisor. The BSI Commander will confer with the IA Superintendent as necessary. Documentation of this decision will be provided to the IA Superintendent for his or her review the next working day.

   3.  **Additional Information Needed:**
      a) If the BSI Commander cannot clearly determine whether or not a particular incident warrants a FIT response, the BSI Commander will have a minimum of one FIT detective (and at the Commander's discretion additional detectives and/or the FIT sergeant) respond to conduct a preliminary investigation to determine whether or not FIT should initiate a full callout. The steps necessary to make this determination will be different in each case, but may include interviewing the subject,

photographing the subject, speaking with medical personnel, reviewing medical evidence, viewing video, examining physical evidence and interviewing witnesses.

b) The FIT detective or sergeant will report their findings back to the BSI Commander who in consultation with the IA Superintendent will make a determination regarding FIT's response for the subsequent review by the IA Superintendent.

c) In the event a full FIT response is not initiated, the FIT detective(s) will document all of their investigative steps and place documents and digital evidence in the use of force tracking software within 72 hours, also ensuring these documents and evidence items are available to CDP personnel responsible for any additional review or investigation.

## IV.        OPERATIONS- INTEGRITY PROTOCOLS

### A.    INTEGRITY OVERVIEW

Many requirements are in place throughout this manual to ensure the integrity, transparency, and thoroughness of FIT investigations. This manual section details protocols and oversight steps to be taken by FIT personnel to achieve these goals. Nothing in this section should be read or interpreted to impede, taint, or prejudice (a) securing the scene of such an incident and ensuring public safety, (b) the right of the public to a full, fair, and transparent investigation, or (c) the conduct of the criminal investigation or prosecution of the suspect and, if appropriate, CDP members. Likewise, if CDP members are under criminal investigation, great care must be taken to avoid sharing the contents or the fruits of a compelled interview of any involved officers by administrative investigators with criminal investigators.

A single use of force event potentially gives rise to four different investigations and perspectives: (1) an investigation of any criminal conduct by a suspect, (2) an administrative investigation of the Use of Force by CDP members, (3) an investigation of any administrative misconduct by a CDP member, and (4) an investigation of any criminal conduct by a CDP member. The FIT acts to ensure that internal CDP investigations are full, fair, complete, and unbiased.

### B.    FIT RESPONSE
1. FIT will respond to all of the following:
   a) All incidents involving Deadly Force.
   b) Use of force incidents that cause serious physical harm, as defined in this manual, or result in or are likely to result in a death; or uses of force resulting in hospital admission due to a use of force injury.

c) The death of any person in the physical custody of the Cleveland Division of Police, or at a Cleveland Division of Police facility, or as an apparent result of being in CDP custody.

d) Use of force incidents where the subject loses consciousness as a result of the force used.

e) Use of force incidents where a Neck hold is applied.

f) Use of force incidents where any hard object is used in a strike to the head or neck (whether intentionally or unintentionally)

g) Use of force referrals involving potential criminal conduct by an officer.

h) More than three applications of a CEW on an individual during a single interaction, regardless of the mode or duration of the application, and regardless of whether the applications are by the same or different officers;

i) A CEW application for longer than 15 seconds, whether continuous or consecutive;

j) Any Level 2 use of force against a handcuffed subject; and

k) Use of force investigations reassigned to FIT by the Chief or his or her designee.

2. Intentional discharges at an animal under controlled circumstances and falling within CDP policy will not fall within the jurisdiction of FIT.

## C.  **BASIC INTEGRITY PROTOCOLS:**

1. After an incident occurs within the scope of FIT, and after the scene is secured, the involved and witness officers will be separated by the first non-involved supervisors who respond to the scene and directed not to speak to each other about the incident. They shall not be permitted to review video or audio of the incident, including from any WCS (Wearable Camera System), or any data in the possession of the CCS or MDT data, prior to their initial FIT interview without the approval of either FIT OIC. This protocol is intended to ensure a preliminary interview untainted by the review of any external evidence.

2. The first non-involved responding supervisor must obtain, and involved officers shall provide, a public safety statement which shall include any information that is necessary for: public safety and obtaining medical care for injured persons, the securing and identification of evidence and in furtherance of criminal investigations involving the subject against whom force was used.

3. Once the first responding FIT supervisor has taken investigatory responsibility for a scene or a case, he or she will ascertain whether, prior to FIT assuming investigatory responsibility:

8

a) the first non-involved supervisor has completed a Public Safety Statement with the involved officers.
b) the involved or witness officer(s) reviewed any video or audio of the incident and if so, the circumstances under which that review occurred.

4. FIT has primary responsibility for the investigation of the use of force. The administrative investigation shall be conducted concurrently with the criminal investigation even if compelled interviews are delayed. No part of the administrative investigation will be held in abeyance unless specifically authorized by the Chief or designee in consultation with the agency conducting the criminal investigation and the responsible prosecuting attorney.

5. The FIT OICs will provide the BSI Commander/IA Superintendent with feedback as quickly as possible concerning any significant issues of concern as it relates to investigatory bias or failure to follow best practices in investigatory techniques. The FIT OICs will immediately address such concerns or confer with the BSI Commander/IA Superintendent for guidance.

6. If and when it is reasonably suspected that a member's use of force involved potential criminal conduct, the FIT OIC (criminal) will confer with the BSI Commander and the prosecuting attorney with jurisdiction over the incident to confirm their reasonable suspicion of criminal conduct.
   a) The BSI Commander, after consultation and approval of the Chief, is responsible for determining whether an outside agency should conduct a criminal investigation of a member. The BSI Commander must consider potential conflicts of interest and public perception of possible bias on the part of CDP investigators when making this determination. The FIT is required to comply with the requirements of the Memorandum of Understanding between the CDP and the outside agency used to conduct the independent criminal investigations.
   b) The FIT (criminal) is responsible for conducting the criminal investigation when not assigned to an outside agency. The FIT (administrative) is responsible for conducing the parallel administrative investigation.  The FIT OIC (administrative) in consultation with the IA Superintendent, shall conduct compelled interviews of involved officers within 48-72 hours unless the appropriate prosecuting attorney requests that the interview be delayed. The prosecutor's request will be memorialized in writing.

7. Following an officer-involved shooting or an In-Custody Death, the involved officers will be placed on administrative leave, in accordance with Employee Assistance Unit protocols, when the interview and other required FIT processing (Use of Force tracking

Software, walk through, photography) is concluded. The administrative leave status of an officer will be regularly monitored by the IA Superintendent who will make recommendations to the Chief as to whether an officer should be returned to active or limited duties.

## V.     <u>OPERATIONS- BIFURCATING AN INVESTIGATION</u>

### A.     BIFURCATION OF INVESTIGATIONS

1. Upon the arrival of FIT the investigation will be bifurcated into two separate investigations. For investigations, FIT will utilize a "criminal team" reporting to the BSI Commander and "administrative team" reporting to the IA Superintendent.

2. To bifurcate the investigation, the following steps will be taken by the BSI Commander and the IA Superintendent:
   a) The BSI Commander will be responsible for ensuring that the criminal investigation is conducted by a "criminal team" which shall be led by the Homicide Unit OIC or their designee or investigators from an outside agency. The FIT administrative team, led by the IA OIC will retain responsibility for the concurrent administrative investigation.
   b) The Division "Case Master" will be the IA Superintendent or their designee, who will continuously screen all information contained in the administrative investigation and ensure that no information that could compromise the criminal investigation is made available to the criminal investigation team. Before providing any information to the criminal investigation team or prosecuting attorney, the information must first be cleared for such use by the Case Master.
   c) The criminal investigation will have priority access to all witnesses and evidence, but this will not preclude access by the administrative investigation.
   d) The responsible prosecuting attorney shall be consulted as appropriate during the criminal investigation.

3. For all ongoing criminal investigations, the BSI Commander will, in consultation with the relevant prosecutors and prosecuting agencies, ensure the creation of a monthly status report of pending criminal investigations and their general status. This report will be provided to the IA Superintendent for distribution to FIT administrative investigators as necessary and to the CDP Inspector General once the office is established.

4. The IA Superintendent shall ensure cooperation with the Inspector General's review of CDP's process for conducting concurrent investigations.

## VI.     <u>OPERATIONS- FIT USE OF FORCE INVESTIGATIONS:</u>

## A.    FORCE INVESTIGATION TEAM COMPOSITION

A Force Investigation Team response will usually include the BSI Commander, the IA Superintendent, the FIT OIC (team leader) (who has sufficient experience as a Homicide Unit Supervisory Officer (for criminal investigations) and/or an Internal Affairs Unit Supervisory Officer (for administrative investigations) as determined by the BSI Commander), an appropriate number of Investigators or Detectives assigned to the FIT, and at least one Office of Professional Standards Investigator. The BSI Commander, in consultation with the IA Superintendent is responsible for ensuring adequate staffing of the FIT, both on-scene and on an ongoing basis, depending on the circumstances underlying the incident requiring investigation.

At least one investigator from the Office of Professional Standards (OPS) is a member of the FIT (administrative). The OPS investigator will be selected from a pool of investigators that have a minimum of five years of investigative experience and have been OPS employees for at least one year. OPS investigators will not participate in criminal investigations, but will be regularly briefed in relation to any on-scene investigation conducted by the FIT (criminal). The OPS investigator's duties and responsibilities for administrative investigations may include (amongst any other duties to be assigned by the FIT administrative OIC) the interviewing of civilian witnesses, and acting as second chair for officer interviews. The OPS Administrator or his or her designee shall be given a walk-through of the scene by the FIT OIC (criminal) or his or her designee and shall be entitled to receive a briefing about the incident and the nature of the FIT (criminal) investigation.

Training Unit representative(s) must be provided with sufficient access to information to accomplish his or her duty to identify policy and training issues. The FIT OIC (criminal) is responsible for providing an initial briefing to the training representative at the start of the investigation to ensure that any training issues that require immediate attention are identified, and continuing to consult as appropriate with the training representative.

## B.    FIT – INVESTIGATOR RESPONSIBILITIES

1.  In addition to any other necessary or appropriate investigative techniques, the FIT OICs are expected to require and FIT Investigators are expected to ensure the following actions (not necessarily in sequential order) are taken during the course of a FIT investigation:
    a)  Respond to the scene and ensure that it has been properly secured, appropriate perimeters have been established, all persons having access to the scene are properly logged, taking over the Crime Scene Entry Log, involved members and witnesses have been located and immediately segregated to prevent contamination or collusion.

b) Examine the subject for injury, and interview the subject for complaints of pain. Ensure that the subject receives medical attention from an appropriate medical provider.

c) As soon as practicable thereafter, witness officers may be transferred to an appropriate location for an interview or to provide a written statement to FIT administrative members as provided herein.

d) FIT administrative members shall ensure that all officers who witnessed the use of force by another officer complete a narrative statement. Use of Force Reporting GPO 2.1.05

e) FIT criminal members, accompanied by FIT administrative members, shall ensure a canvass is promptly completed for civilian witnesses and conduct recorded interviews when possible. Multiple canvassing efforts may be necessary. The results of the canvass (e.g. identity of investigators conducting the canvass, date, time, location, outcome, etc.) shall be well documented and reported to the investigator's supervisor.

f) FIT criminal members, accompanied by FIT administrative members, will either record civilian witness interviews or encourage civilian witnesses to provide and sign written statements in their own words, but will take information from civilian witnesses who have pertinent information even if they refuse to be recorded or refuse to complete or sign a formal statement. The preferred method will always be to preserve the statement through a video, digital or audio recording.

g) Ensure the download of any WCS or Holding Facility video (HFV).  In circumstances where information may have been captured by an audio or video system privately owned by the involved officer or witnessing officers, the prosecuting attorney shall be immediately notified as to how to best proceed with securing that information.

h) FIT criminal members shall ensure a timely canvass for any privately-owned video that may have captured the incident and obtain a copy through consent or other lawful methods. Privately-owned video may only be recovered pursuant to a warrant, voluntary consent of the owner or someone authorized to act on behalf of the owner, or when exceptional circumstances exist to preclude the immediate destruction or tampering with evidence that may be secured within the privately-owned video system. In circumstances where exceptional circumstances exist, a warrant will be sought before viewing the information contained within the subject video system. Multiple canvassing efforts may be necessary. The results of the video canvass shall be well documented and reported to the investigator's supervisor.

i) FIT criminal members shall ensure the collection of all 911 Audio, MDT and CDP Radio traffic related to the incident.

j) FIT criminal members shall secure all involved weapons and download involved officer's Taser data (if equipped). All weapons and equipment in the possession of

12

involved officers shall be treated as evidence and all protocols regarding evidence seizure and handling will apply. If a firearm is seized from an involved officer, a replacement firearm will be provided to the officer.

k) FIT criminal members shall ensure photographs of involved officers & witness officers who were in the immediate area and witnessed the use of force. (Photographs should include close up photos of the officer's injuries, if any, or lack of injury, all duty equipment on the officer at the time of the incident, and any torn clothing and damaged equipment).

l) FIT criminal members shall ensure a scene sketch is completed and arrange for photographing of the scene.

m) FIT criminal members shall ensure the collection and processing of all evidence consistent with Homicide investigation protocols, related to the use of force incident to include conducting round counts and accounting for all shots fired.

n) FIT criminal members shall locate the subject of the incident and seek a video or audio recorded interview, after advising the subject that the interview pertains only to the use of force and not to any underlying alleged crime and that the subject need not answer questions. Request a medical release. Attempt to photograph the subject's injuries, or lack of injury, and/or area the subject is complaining of injuries. Photos of the subject's features should be taken for identification purposes.

o) Unless exceptional circumstances, such as extreme fatigue, an injury requiring immediate hospital treatment, lack of consciousness by the officer, or immediate and prolonged medical treatment, require an extension, FIT Investigators (administrative) will conduct the preliminary interview with involved officers before the end of the involved officer's tour of duty and complete the initial use of force tracking software entry, which shall be maintained as part of the administrative investigation. The interview and any evidence derived from the interview shall not be shared with FIT investigators involved in the criminal investigation, unless the involved officer provides voluntary consent to do so. (Attachment # TBD)

p) FIT administrative members shall request and conduct voluntary follow up scene walkthroughs with involved officers as appropriate.

q) FIT administrative members shall complete a video and audio recorded interview of all witness officer(s) prior to them going off shift, unless exceptional circumstances require an extension.  Conduct follow up scene walkthroughs with witness officers as necessary.

r) FIT administrative members shall ensure the collection of all duty reports, training records, and any other relevant documentary evidence that may be in the possession of, or available to the CDP.

s) FIT criminal members shall, in appropriate circumstances, respond to the Medical Examiner's Office to witness the autopsy and ensure all necessary evidence is collected and investigative issues are considered.

t) FIT administrative members shall ensure the collection of news coverage and social media videos and images (YouTube, etc.).

u) FIT administrative members shall meet periodically with Crime Scene and Record Unit and any FIT criminal investigators conducting a concurrent investigation of the incident to ensure the appropriate flow of information as necessary to accomplish the Division's goals.

v) In cases involving the death of a subject where an outside agency is not conducting the criminal investigation and when directed by the FIT OIC (criminal), provide a copy of the criminal investigation to the Prosecuting Attorney's Office for review and potential Grand Jury determination. In cases involving the criminal prosecution of a subject, provide a copy of the case file to the Prosecuting Attorney's Office for identification of discoverable material.

2. FIT Interviews:

a) Prior to conducting witness interviews, the FIT investigators shall confer with the FIT OICs concerning an interview plan, including what materials may be shown to the witness (to include involved and witness officers) and how such materials are to be introduced during the interview. FIT will ensure that the order and content of information presented during the interview is beneficial to the investigation and does not interfere with the objective collection of information from the interviewee (for instance by suggesting answers to questions).

b) FIT investigators (administrative) shall observe, monitor and record interviews conducted by the FIT criminal investigators

c) Unless it has been requested by the appropriate prosecuting attorney that a compelled administrative interview be delayed, involved officers will participate in a FIT (administrative) video recorded interview in the presence of one or more FIT investigators (administrative) within 48-72 hours of the use of force, after being afforded a reasonable opportunity to consult with a union representative or a lawyer if they choose to do so. FIT administrative investigators shall note interview delays and the reasons for them in the case file.

d) Involved officers who are interviewed about potentially criminal matters during the administrative investigation shall be first asked to provide a voluntary statement.

e) If an involved officer is ordered to provide a compelled statement during an administrative investigation, he or she shall be advised of their rights under Garrity v. New Jersey and presented with a Garrity Warning Form. The Garrity Warning Form shall be signed by the involved officer and a copy of the signed form included in the case file.

f) Witness officers shall provide a statement in connection with both the administrative and/or criminal investigations. If a witness officer refuses to provide a voluntary statement, then the statement made by a witness officer shall be compelled under Garrity v. New Jersey and administrative investigators will use the same protocol used to compel statements from involved officers, as described in this manual. In addition, witness officers shall complete a written narrative statement before the end of their shift in accordance with the Use of Force Reporting GPO 2.1.05

g) The interview of involved and witness officers will not contain leading questions or other coaching of the witness to give particular answers. Leading questions are questions that suggest the answer. Direct and specific follow up questions are expected as a normal interview practice.

h) There shall be no pre-interview discussing the substance of the investigation or any dialogue with an involved officer discussing the substance of the investigation other than a public safety statement, preliminary interview and scene walk-through. The FIT investigators may explain the process of the interview to an involved officer but shall not discuss the substance of the investigation or interview prior to the recorded interview. Investigators will leave the audio and video running during the entirety of the interview. If the recording must be stopped, the investigator will state the time that the recording is stopped, the reason, and any restart time.

i) FIT may call any officer subject to interview for a follow up interview(s) which shall be conducted in a manner similar to the initial interview as indicated above.

j) Differences between perception and "objective" sources such as video may be explicable due to the limits of human perception and memory (e.g., selective focus, influence of adrenaline, fight or flight response, tunnel vision) and expanded capacity of video sources (e.g., wider field of vision and consistent focal range). An officer may only be disciplined for a discrepancy between his or her perceptual statement and objective evidence if the division finds that the officer made intentional misrepresentations or where the officer fails to fully cooperate with a perceptual interview. If there are material differences between objective evidence and the perceptual statement, those differences should be explored at the time of the initial interview and may also be explored through follow-up interviews.

k) For purposes of this Manual, a shortage of FIT personnel to respond to the incident(s) under investigation is not reason to delay interviews. In such cases, the expected response is not to excuse the officer from an otherwise-required interview, but instead to summon additional investigative resources, such as other qualified FIT investigators who were not involved in the underlying incident(s) as available.

3. Upon obtaining all relevant evidence, the FIT OIC is expected to require and FIT Investigators are expected to take the following actions at the completion of the FIT administrative investigation:

   a) Upload all relevant case documentation and material into the use of force tracking software.

   b) Complete a Force Investigation Report that identifies all officers who were involved in the incident, witnessed the incident, or were on the scene when it occurred; present, in a neutral fashion, the investigation undertaken and the evidence collected; and recommend whether the preponderance of the evidence establishes that the involved officer(s) violated CDP policy, and whether any training or policy concerns are presented.

   c) With the exception of compelled interviews that have been delayed, complete the administrative investigation within 60 days unless the Chief of Police or designee approves an extension after any necessary conferral with the IA Superintendent. FIT Investigators or the FIT OIC will submit the reason for any extension to the IA Superintendent in writing, describing the reason for the request. The inability to complete the investigation because it is awaiting information from an outside agency, such as the medical examiner's office, will constitute sufficient basis for such an extension for that portion of the investigation.

   d) At the discretion of the Chief, in consultation with the IA Superintendent, and the responsible prosecutor, an administrative investigation may be completed prior to the completion of the criminal investigation or proceedings.

   e) Within seven days of the conclusion of an administrative investigation, including the completion of compelled interviews that have been delayed, an investigation report shall be completed.

   f) The completed investigation must have explored all relevant evidence and lines of investigative inquiry to perform a thorough, fair, and complete investigation that provides subsequent decision-makers with the information necessary to adjudicate the incident fairly, thoroughly, and objectively.

   g) Prepare a presentation for the Force Review Board (FRB) for each Use of Force Incident required to be presented to the FRB in time for the next available FRB Hearing.

## C.    FIT - OIC RESPONSIBILITIES

1. The FIT OICs are expected to take the following actions during the course of a FIT investigation:

   a) Ensure that any criminal investigation is not tainted by a compelled statement obtained in the administrative investigation or evidence derived from the compelled statement.

16

b) Meet with FIT investigators and supervisors to consult regarding investigative strategies and canvassing efforts.

c) Determine, with the assistance of Patrol supervisors and FIT investigators, which officers witnessed the use of force or other critical elements of an event under investigation so that they may be identified for an in-person interview. The FIT OIC, in consultation with the IA Superintendent, may also allow the substitution of a written statement where exceptional circumstances exist. The FIT OIC shall note the circumstances and the reason for the decision in any case where a witness officer did not submit to an in-person interview and will ensure the documentation for this decision is included in the case file. Any such decision does not preclude the FIT OIC or the IA Superintendent from ordering follow-up interviews if and when appropriate.

d) Confirm that the Employee Assistance Unit (EAU) has been notified and is arranging for a critical incident stress management response and/or referral for any involved officer or witness officer as appropriate.

e) Ensure that before the end of their shift, all witness officers have completed a narrative statement. See Use of Force Reporting GPO 2.1.05

f) Complete a preliminary report to be presented to the Chief of Police or designee, through the BSI Commander and IA Superintendent no later than 24 hours after being notified of the underlying incident, absent exceptional circumstances. Within ten days of the incident, complete a thorough review of statements and use of force reports to determine if any additional information or clarification is needed and if the use of force reports include all information required by CDP policy. If a statement is found to be deficient, order the investigator to obtain additional information to support a thorough investigation of the incident.

g) Ensure information developed during the criminal investigation is reviewed and forwarded to FIT administrative investigators as soon as practical.

h) Ensure investigators make reasonable efforts to resolve material inconsistencies in the evidence through objective fact-gathering and evaluation, to include inconsistencies between the officer, subject, and witness statements, as well as inconsistencies between the level of force claimed by the officer and the subject's injuries.

i) Ensure in cases involving the death of a subject where an outside agency is not conducting the criminal investigation, a copy of the case file is provided to the Prosecuting Attorney's Office for review and Grand Jury determination. In cases involving the criminal prosecution of a subject, provide a copy of the case file to the Prosecuting Attorney's Office for identification of discoverable material.

j) With the exception of compelled interviews that have been delayed, ensure completion of the administrative investigation within 60 days unless a request

and written justification for an extension of time has been approved by the Chief or the Chief's designee.

k) Review the completed administrative investigation, and document that review in a use of force tracking software entry to the IA Superintendent within seven days of the completion of the administrative investigation. The review shall clearly identify instances where accounts of pertinent facts or details appear to be in conflict with each other or appear to be in conflict with the physical evidence. The review must recommend whether the preponderance of the evidence establishes that the involved officer(s) violated CDP policy, and whether any training or policy concerns are presented. The review shall also note any deviations from FIT investigative protocols that occurred.

## D. IA SUPERINTENDENT RESPONSIBILITIES

1. The IA Superintendent shall ensure the following actions are taken during the course of a FIT investigation:

a) Ensure the overall responsiveness, professionalism and competency of the FIT and ensure investigations completed by the FIT are unbiased, fair and through.

b) Ensure that protocols are in place such that CDP patrol supervisors are aware of the requirement that witness and involved officers be separated from each other, remain separated until after statements have been given, are ordered not to discuss the incident and are individually interviewed and not interviewed in groups.

c) Ensure appropriate notifications are immediately made to the prosecuting attorney and the OPS Administrator. Ensure timely notification of any outside agency needed to conduct an independent criminal investigation.

d) Provide a copy of the preliminary report to the OPS Administrator on a confidential basis.

e) Ensure the timely completion of FIT investigations. Require that any request for an extension of time be supported by a written justification and approved in writing by the Chief or his/her designee. The Chief may approve a request for extension of time where exceptional circumstances dictate it, or where compelled interviews of involved officers are being held in abeyance due to the existence of a criminal investigation, or when investigators are awaiting information from a third-party expert (e.g., the Medical Examiner's Office).

f) Ensure that the completed investigation has complied with all training directives intended to ensure that investigators have explored all relevant evidence and lines of investigative inquiry to perform a thorough, fair, and complete investigation that provides subsequent decision-makers with the information necessary to adjudicate the incident fairly, thoroughly, and objectively.

g) If the failure to conduct a timely investigation is the result of investigative failures, the IA Superintendent will document the facts underlying any such failures and take appropriate personnel action to ensure timely future investigations.

h) Within three business days of receiving a FIT report from the FIT OIC (administrative), the IA Superintendent must approve or disapprove FIT's recommendations, or order that FIT conduct additional investigation. Upon approval of the investigative report, the IA Superintendent shall forward the investigative report to the Chief of Police for review.

i) Ensure that upon request of the Police Review Board (PRB), through the OPS Administrator, the completed IA investigative file (excluding any information that is prohibited from disclosure by State or Federal law) is provided to the OPS Administrator to facilitate any independent administrative review of the incident by the PRB.

## E. TRAINING UNIT RESPONSIBILITIES

1. The Training Unit shall be responsible for the following actions during the course of a FIT investigation:

   a) The FIT Training Unit representative will not have an investigative role during the Use of Force investigation, but will participate in briefings during the investigation and provide the Training Unit's perspective regarding training issues pertinent to the incident under investigation. The Training Unit representative shall be responsible for discussing their perspective on the incident at the Force Review Board.

   b) The Training unit representative may use information from the investigation to formulate new training, develop lessons learned, and devise tactical improvement opportunities for consideration by the Force Review Board and the Training Unit.

   c) The Training Unit representative will collect and submit to the FIT OIC any training records or other documentation required for the investigation.

   d) The Training Unit representative shall provide technical advice and consult to the Force Review Board as necessary.

## VII. OPERATIONS- SCENE AND EVIDENCE PROCESSING

## A. SCENE AND EVIDENCE PROCESSING

1. The FIT OIC (criminal) will ensure that all incident scenes are processed using the following techniques:

   a) Initial overall scene photos will be taken first, including photos of items of evidentiary value.

b) Evidence placarding: After the initial photos are taken, items of evidentiary value will be marked with numbered evidence placards or evidence markers and photographed with these markers.

c) Digital photography: The scene will be photographed using a digital camera, with all resulting images uploaded into the Digital Evidence Management System (DEMS).

d) Scene measurement and diagramming: Selected CS&R detectives will be responsible for a basic scene diagram that shows the location of significant items of evidence, as well as the basic details of the scene, including all relevant physical measurements.

e) Involved and witness officers may be compelled to submit to non-invasive forensic evidence collection such as collection of clothing and equipment, and swabbing for gunshot residue (GSR), blood, or other forensic evidence as applicable. Officers may also be requested to submit to blood alcohol and drug testing in accordance with department policy and law.

f) GSR, blood, DNA, and trace evidence collection and testing may be ordered where they may have probative value in evaluating the incident(s) under investigation.

2. Evidence Processing

a) All video evidence will be uploaded into the Digital Evidence Management System (DEMS). This includes all applicable HFV/WCS as well as any privately-owned video.

b) Taser downloads: CEW data will be downloaded for officers involved in the use of force that were carrying a CEW at the time of the incident, regardless of whether the Taser was applied.

c) Medical releases and resulting documentation of injuries will be requested from all injured parties and attached to the case file.

3. Within 14 business days of the incident, FIT and Crime Scene and Records (if applicable) representatives will together debrief each incident as a constructive critique of the interaction between and among them at the incident scene and during the initial hours of the investigation.

## VIII.     OPERATIONS- INVESTIGATION REVIEW AND PRESENTATION

### A.     CASE INVESTIGATION REVIEW

1. The FIT OICs shall ensure FIT investigations and the Force Investigation Reports cover the following topics, when applicable:

a) A complete description of the manner in which the team was notified, the information received, any notifications made, the deployment of resources, and any direction provided to team members at the time of deployment;

b) A detailed statement of the involved personnel, to include their current and past assignments, training, disciplinary, and use of force history;

c) A scene Description and diagram and photographs at the time of arrival;

d) Detailed witness and video canvass, to include how the canvass was conducted and by whom, and the identification of private and public video and the steps taken to secure that evidence;

e) A complete identification of the involved subject to include prior contacts with the CDP and criminal history information;

f) Witness Information that includes both the identification and contact information of the witness, and the steps taken to preserve their initial statements;

g) Injuries properly preserved by photographic or video evidence, and attempts to acquire the release of relevant medical/treatment records;

h) The recovery, documentation, and preservation of evidence related to the incident to include, but not limited to, biological and forensic evidence, physical evidence, testimonial evidence, circumstantial evidence, and any and all laboratory analysis related to such evidence, and the manner and process in which such evidence was recovered.

**B.    CASE INVESTIGATION PRESENTATIONS:**

1. Force Review Board Presentations

   a) All Force Investigation presentations will be the responsibility of the lead FIT investigator or FIT OIC.

   b) The lead FIT investigator will make a presentation covering the facts and circumstances surrounding the use of force incident to the Force Review Board. The presentation shall include reference to FIT recommendations as to whether the preponderance of the evidence establishes that the involved officer(s) violated CDP policy, and whether any training or policy concerns need to be considered.

**IX.    ADMINISTRATION- PERSONNEL SELECTION**

**A.    SELECTION AND TRAINING OF FORCE INVESTIGATION PERSONNEL**

The Internal Affairs Unit will include CDP's Force Investigation Team (FIT). Each FIT will be a team comprised of personnel from various units and will not be a stand-alone unit to which officers are permanently assigned. The FIT will be designed to ensure that incidents under the jurisdiction of FIT are investigated fully and fairly by individuals with appropriate

expertise, independence and investigative skills to ensure that uses of force that are contrary to law or policy are identified; that training, tactical, and equipment deficiencies related to the use of force are identified; and that investigations are of sufficient quality. Force Investigation personnel will be experienced investigators who have demonstrated integrity, accuracy, and thoroughness in their investigations. Force Investigation personnel must have completed all required training prior to serving in a position on the FIT.

1. Selection Process:
   a) The IA Superintendent, in consultation with the BSI Commander and the FIT OICs, will be responsible for identifying appropriate personnel to staff Division Force Investigation Teams from the Homicide, Internal Affairs, and other various units and is responsible for coordinating the selection and assignment of personnel.
   b) The IA Superintendent will ensure that each applicant submits information as required to assess their suitability for the position. That information may include the following:
      i. Samples of their case investigative work;
      ii. Their current and previous supervisors; and
      iii. A resume including training and assignment history.
   c) The FIT OICs, and the IA Superintendent, in consultation with the BSI Commander, will be responsible for reviewing each applicant's resume and information packet prior to the commencement of the candidate oral interviews. This may be done as a group or individually.
   d) The IA Superintendent, in consultation with the BSI Commander, and the FIT OICs will develop a list of standardized interview questions that are position related, but do not require specialized knowledge. The Commander will also develop interview score sheets to be completed during the oral interview process.
   e) The IA Superintendent, BSI Commander, and the FIT OICs, will be responsible for taking part in the candidate oral interview process. The FIT OICs will be responsible for providing the IA Superintendent and BSI Commander with completed interview score sheets and their assessment of each candidate at the conclusion of the interview process.
   f) In completing the evaluation of candidates, the IA Superintendent will review the applicant's performance history.
   g) The IA Superintendent has the ultimate authority to determine assignments to the FIT.

## X.  ADMINISTRATION- TRAINING AND COURSE OFFERING PLAN

### A.  TRAINING OF FORCE INVESTIGATIONS PERSONNEL

FIT investigations must be thorough, unbiased, and objective reviews of the Cleveland Division of Police's most serious use of force incidents. To accomplish this, FIT must be staffed with experienced investigators who are trained in the technical aspects of homicide investigations, the specifics of force applications, and the methods and practices necessary to conduct high-quality administrative investigations. FIT investigators must be trained to comprehensively analyze officer involved shootings and use of force incidents from the moment an officer is dispatched or on-views an incident until the conclusion of that incident. Force Investigations personnel will be trained to ensure that all uses of force that are contrary to law or policy are identified and appropriately resolved, and that their investigations allow the Force Review Board to identify trends or patterns of policy, deficiencies in strategy or tactics, training or equipment deficiencies, or positive lessons related to the use of force.

**B.    MANDATORY TRAINING**

1. In order to accomplish the intended result of ensuring that FIT personnel are prepared to investigate their assigned cases with the greatest skill and thoroughness possible, the following outline has been developed. Note that the specific courses used to fulfill the different aspects of the required training will likely change over time as better training is identified, and as some courses cease to be offered. Prior to performing FIT duties, FIT members will receive FIT-specific training that is adequate in quality, quantity, scope and type, including FIT procedures, including callout and investigative protocols; the differences between administrative and criminal investigations and how each should be conducted; investigations of officer-involved shootings; investigative equipment and techniques; and proper roles of the following:
   a) On-scene counterparts, such as crime scene investigators;
   b) The Monitor;
   c) Any outside investigating agency;
   d) The prosecuting attorney; and
   e) The Office of Professional Standards.

2. The training must also address techniques for objective fact-gathering and evaluation and the factors to consider when evaluating credibility. FIT investigators must receive annual in-service training to ensure continued competency.

3. The pool of OPS investigators will receive FIT-specific training from CDP and will undergo field training before participating in FIT investigations.

4. Prior to performing FIT duties, personnel will receive the following training:
   a) Basic Officer Involved Shooting course.

23

b) Basic Scene and Evidence processing course.
c) Crisis Intervention training.  All FIT personnel will attend the 8-hour basic CIT training course, and annual training as provided by the department.
d) Administrative Investigation training. FIT personnel will attend at least 8 hours of training covering the conduct of administrative investigations. An important element of this training should include the analysis of each force incident in its totality, from the initial dispatch or on-view of the incident through the conclusion of that incident.
e) Bio-mechanics of force incidents. FIT personnel will attend rigorous training in the bio-mechanics of police use of force. Such training should be obtained from a qualified, unbiased source.
f) Cognitive and Other Interviewing techniques. At least 12 hours of training in cognitive and other recognized interviewing techniques is required.

## C.    ELECTIVE TRAINING

1. In order to accomplish the intended result of ensuring that FIT personnel are prepared to investigate their assigned cases with the greatest skill and thoroughness possible, detectives are encouraged to attend elective training that is pertinent to the unit's mission. Examples of elective training are listed below:
   a. Investigative skills training.
   b. Advanced interviewing.

## XI.    <u>ADMINISTRATION - FIT PERSONNEL ROTATION</u>

## A.    FIT PERSONNEL ROTATION

FIT personnel will be available at all times on a rotating basis. The FIT Commander shall ensure a rotation is established among investigators assigned to FIT duties to maintain the availability of an adequate number of investigators.

# FIT SCREENING LOG

<u>Original Notification Received</u>:

1) Time:  _____
2) Date: _____
3) From [Name/Unit]:_____
4) Incident Location: _____
5) Incident Number: _____
6) Incident Description: _____
   _____
   _____
7) Injuries/Hospital : _____
8) Involved officers: _____
   _____
   _____
   _____

Level of Force Used: #1_____; #2 _____; # 3_____

**FIT REQUIRED IF...**

**Force that includes uses of deadly force; uses of force resulting in death or serious physical harm; uses of force resulting in hospital admission due to a use of force injury; all neck holds; uses of force resulting in a loss of consciousness; canine bite; more than three applications of a CEW on an individual during a single interaction, regardless of the mode or duration of the application, and regardless of whether the applications are by the same or different officers; a CEW application for longer than 15 seconds, whether continuous or consecutive; and any Level 2 use of force against a handcuffed subject.**

**AND**

**Uses of force involving potential criminal conduct by an officer; All instances in which an individual died while in, or as an apparent result of being in, CDP custody; and Any uses of force reassigned to FIT by the Chief or his or her designee.  FIT may also conduct criminal investigations of the above matters where appropriate and where not assigned to an outside agency].**

**Notifications Made by BSI Commander:**

|  | Y | N |
|---|---|---|

FIT TEAM Call Out [full/partial]: _____  ☐ ☐

Method Used: _____

On Scene Sector Supervisor [name/time]: _____  ☐ ☐

Additional Resources required [e.g. SWAT/CSR]:_____

_____

Prosecutor's Office [name/time]: _____  ☐ ☐

Outside Agency: _____  ☐ ☐

Forward to IA Superintendent [date/time] : _____  ☐ ☐

**NO FIT REQUIRED**

Facts: _____

_____

_____

**Additional Information**

_____

_____

_____

**Respectfully,**

_____

Attachment:



# CLEVELAND DIVISION OF POLICE
## Public Safety Statement

Reference #  _____

The Cleveland Division of Police is conducting an investigation into the above mentioned Level 3 Use of Force. Officers shall provide the following information to the first responding non-involved supervisor to a use of force requiring a FIT response:

1.  A description of the scene that needs to be protected.
    - Location of unsecured weapons

2.  Identification and location of involved parties/witnesses.

3.  Description of suspects still at large
    - Direction of travel, how long ago
    - are the suspects armed

4.  Direction of shots fired, if applicable.

5. Whether officer or anyone else is injured and their location.

6.  The type of force used by the officer and threat presented by other involved
     parties.

7.  Any information that would help ensure officer and public safety and assist in
     the apprehension of suspects.

Supervisor_____ Date_____



# CLEVELAND DIVISION OF POLICE
# FORCE INVESTIGATION TEAM
## Preliminary Interview Form

Reference # _____

The Cleveland Division of Police, Force Investigation Team, is conducting an investigation into the above-mentioned Level 3 Use of Force. The preliminary interview, subject to the protections of Garrity v. New Jersey will be conducted as a video recorded interview with involved officers answering the following questions prior to completion of the involved officer's tour of duty:

1.  Was the incident an "on view" or a dispatched assignment?

2.  What were you doing prior to arriving at the "on view" or receiving the assignment?

3.  What information, if any, did you receive from radio or your MDT?

4.  What did you see when you arrived on scene?

5.  What other officer(s) were on scene when you arrived?

6.  What was the subject(s) doing when you encountered them?

7.  Were you able to assess whether the subject was impaired?  If so in what way?

8.  What, if any, directions did you give the subject(s)?

9.  Did the subject resist or pose a threat to you or others?   If so, in what way?

10.  What, if any, de-escalation techniques did you use?

11.  What specific type(s) of force did you use?

12.  How close were you to the subject when force was used?

13.  ** Only for incidents when a firearm was used:
    - How many rounds do you think you fired?
    - How close were you to the subject when you fired your weapon?
    - Do you believe you struck the subject with your rounds?

14.  Did the subject comply after the use of force?

15.  What did you do after you used force?

16.  With whom have you discussed this event?

17.  Was the incident recorded on your WCS/ICV?

Interviewer/Investigator_____

Date_____



# CLEVELAND DIVISION OF POLICE
# Internal Affairs Unit – Garrity Form

Reference # _____

The Cleveland Division of Police is conducting an investigation into the above-mentioned case. The allegations are as follows:

This questioning concerns matters relating to the official business of the Cleveland Division of Police. During the course of this questioning, if you disclose information which indicates that you may be guilty of criminal conduct, neither your self-incriminating statements nor the fruits of any self-incriminating statements you make will be used against you in any criminal legal proceedings. Since this is an administrative matter and any self-incriminating information you may disclose will not be used against you in a court of law, you are required to answer my questions fully and truthfully. This requirement is set forth in our Manual of Rules and Regulations. You are entitled to all rights and privileges guaranteed by the Laws of the State of Ohio and the Constitution of the United States, including the right to have legal counsel or union representation present with you during this interview. If you refuse to answer all my questions, this in itself is a violation of Division rules, and you will be subject to disciplinary action or termination.

Do you understand what I have just explained to you?  Yes_____ No _____

Do you have any questions concerning what I have just explained to you?  Yes _____ No _____

I, _____, by my signature, affirm that I have been advised of the "Garrity Warning" and have had its meaning explained to me.

Officer's
Signature_____Date_____

Interviewer/Investigator_____Date_____

Witness
Signature_____Date_____