IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| Plaintiff, | ) ) | |
| vs. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| CITY OF CLEVELAND | ) ) ) | **NOTICE SUBMITTING CLEVELAND DIVISION OF POLICE FORCE REVIEW BOARD POLICY, CHECKLIST, AND FORCE REVIEW BOARD TRAINING CURRICULUM AND POWER POINT** |
| Defendant. | ) ) ) ) | |

Pursuant to Paragraphs 124 through 130 of the Consent Decree and the Fourth Year Monitoring Plan in the above-captioned matter, the City of Cleveland (the "City"), on behalf of the Cleveland Division of Police ("CDP" or "Division"), submitted a proposed Force Review Board Policy ("Proposed FRB Policy" or "Proposed Policy") and FRB Checklist ("Proposed Checklist"), attached hereto as Exhibits A and B, respectively. Additionally, pursuant to Paragraph 125 of the Consent Decree, and in support of the FRB policy and force review process, the City created and submitted a FRB Training Curriculum and associated PowerPoint ("Proposed FRB Training Curriculum") and ("Proposed FRB Powerpoint")[1], attaches as Exhibits C and D, respectively.

The Monitoring Team has carefully reviewed the Proposed FRB Policy and determined that,

---

[1] The attached PowerPoint has been converted to .pdf format for filing purposes. The Monitoring Team will provide the Court with a fully interactive version of the PowerPoint in native format.

1

except where noted otherwise, the Proposed Policy provides sufficient guidance on the composition, duties, and protocols guiding the Board's review and adjudication of use of force investigations. The Monitoring Team recommends that the Court approve CDP's Proposed FRB Policy. Similarly, the Monitoring Team has reviewed the Proposed FRB Training Curriculum and PowerPoint and determined that the training should provide the new members of the FRB with the appropriate framing, scope, and guidance to properly analyze applications of force on behalf of the Division. As such, the Monitoring Team recommends the Court approve the training in its entirety.

During the first year of the FRB's operations[2], the Monitoring Team will closely track the implementation of the Board by actively monitoring and assessing its initial meetings. The Team will report to the Court during and at the end of that year as to whether the Board is sufficiently and comprehensively assessing officer uses of force as is required by the Consent Decree.

I.  SUMMARY OF CONSENT DECREE REQUIREMENTS REGARDING THE FORCE REVIEW BOARD

Under the Consent Decree, "CDP will develop and implement a Force Review Board ('FRB') to serve as a quality control mechanism for uses of force and force investigations, and to appraise use of force incidents from a tactics, training, policy, and agency improvement perspective." Dkt. 7-1 at ¶ 124. The Board is intended to be the place where the Division dynamically analyzes how it uses and investigates force, and makes systemic changes that will improve accountability and public trust.

The Decree outlines the Board's duties, which include "conduct[ing] comprehensive and reliable reviews of investigations within 90 days of submission to the FRB[;]" "assess[ing] the quality of the investigations it reviews, including whether investigations are objective and comprehensive and recommendations are supported by a preponderance of the evidence[;]" and "examin[ing] the data related

---

[2] It should be noted that the actual deployment of the FRB may be delayed because of COVID-19 restrictions and reassignement of CDP resources to other critical areas during this pandemic. As such, the Monitoring Team proposes that "year one" of the FRB be defined as one year after the first board meeting.

to use of force . . . to detect any patterns, trends, and training deficiencies and make recommendations for correction, as appropriate." *Id.* at ¶¶ 124, 128-29.

In particular, the Board's review of the investigation must "include the actions and inactions of all officers, supervisors, commanders, and dispatchers involved in the incident." *Id.* at ¶ 126. It will "order additional investigation when it appears that there is additional relevant evidence that may assist in resolving inconsistencies or improve the reliability or credibility of the force investigation." *Id.* at ¶ 127(c). It will ensure that a force investigation is objective and complete and that the "findings are supported by a preponderance of the evidence." *Id.* at ¶ 127(a). It will also "determine whether the incident raises concerns regarding policy, training, equipment, supervision, medical response by officers on the scene, communication, or tactics, and refer such incidents to the appropriate unit within CDP to ensure they are resolved." *Id.* at ¶ 127(e). The Board will further "recommend non-disciplinary corrective action to enable or encourage an officer to improve his [or] her performance." *Id.* at ¶ 127(f). "Where the [force investigation's] findings are not supported by a preponderance of the evidence, the FRB will document the reasons for this determination, including the specific evidence or analysis supporting its conclusions, and forward its determination to the Chief of Police." *Id*. at 127(a).

Under the Decree, the Board must "review all FIT [Force Investigation Team, which investigates the most serious uses of force] investigations, all Level 2 investigations where there was a determination of force misconduct, and a sample of Level 2 use of force investigations." *Id.* at ¶ 124. Annually, the FRB also must "examine . . . data related to use of force . . . to detect any patterns, trends, and training deficiencies[.]" *Id.* at ¶ 129.

The Decree expressly defines the composition of the FRB, which is to comprise, at a minimum, the Chief of Police (who will chair the FRB), a supervisor from the Division's training section, a representative from the Office of Professional Standards ("OPS"), and a representative from Internal Affairs. *Id.* at ¶ 124.

3

Other than requiring that FRB hear a case within 90 days of that case being submitted to the Board, the Consent Decree does not expressly prescribe *when* the Board must consider a force case – before a Chief or Public Safety Director's final review and adjudication of the case or, alternatively, after that determination has been made.

Finally, the Consent Decree requires that members of the FRB "receive training on legal updates, updates to CDP's policies, and CDP training curriculum related to the use of force." *Id.* at 125.

## II. PROCEDURAL HISTORY

In the Court-approved Second-Year Monitoring Plan, the Parties and Monitoring Team initially anticipated that the FRB Policy would be completed and approved around September 2017, with the Board beginning to hold regular force review meetings in October 2017. Dkt. 120. As with other CDP policies relating to the investigation and review of use of force, however, this policy necessarily involved a substantial amount of time to work through issues and to reach consensus on the Proposed Policy's final provisions. On May 8, 2019, the CDP incorporated the final round of feedback from the Department of Justice and Monitoring Team and submitted the Proposed Policy and Checklist. Since that time, the Parties have continued to develop related policies (*e.g.*, the Force Investigations Team Policy, which will be filed under a separate notice) and training, including the attached training curriculum for the Force Review Board.

## III. STANDARD OF REVIEW

The Monitoring Team's role is to "assess and report whether the requirements" of the Consent Decree "have been implemented." Dkt. 7-1 at ¶ 351; *accord id.* ¶ at 352 (requiring the Monitor to "review . . . policies, procedures, practices, training curricula, and programs developed and implemented under" the Decree). The task of the Monitoring Team here is to determine whether the Proposed FRB Policy complies with the Consent Decree's requirements.

IV.     ANALYSIS OF THE FORCE REVIEW BOARD POLICY

    A. The Monitoring Team Generally Approves the Submitted Policy

The Proposed Policy defines the procedures that will guide the operation of the Force Review Board. It sets the composition of the Force Review Board, which will be comprised of, at a minimum, the Chief of Police, the Division's newly-created Bureau of Compliance ("BOC"), Internal Affairs, a supervisor from the CDP's Training Section, the OPS Administrator, and a supervisor from each District "when any involved officer(s) are assigned to their District." Ex. A. at 1. Under the Proposed Policy, FRB members will receive annual training "directly relevant to their role and service on the FRB" including, but not limited to, legal updates around the use of force, revisions to Division policies, best practices around use of force investigations, and the training curriculum used to train CDP officers on the use of force. *Id.* at 2.

The Proposed FRB Policy also defines the universe of cases to be reviewed by the Board. Prior to every FRB meeting, the Data Analysis and Collection Coordinator ("DACC") will provide a list to the BOC Commander of all Force Investigation Team ("FIT") investigations; all Level 2 investigations with a finding of force-related misconduct; and a random sample of all Level 2 force where there was no finding of force-related misconduct. The sample will consist of 10 percent of all such Level 2 investigations or five such Level 2 investigations per meeting (whichever is greater). *Id.* at 3.

Additionally, the Proposed Policy lays out the specific procedures for the FRB's review and adjudication of force investigations. The Board, chaired by the Chief of Police, shall make its determinations by majority vote. Where the vote is evenly split, the FRB Chair will make the deciding vote. All findings of the Board must be supported a preponderance of the evidence. For each incident, the Board will hear a case presentation from the lead FIT investigator for FIT investigations and a representative from the District where the force occurred for investigations involving Level 2 uses of force. Additionally, the FRB shall "review any material written or recorded evidence from the incident

and discuss the case as necessary with the investigator or District representative to gain a full understanding of the facts of the incident." *Id.*

To ensure thorough and consistent reviews of the cases, "[t]he Chair shall guide the Board through the completion of the FRB Checklist." *Id.* The Board will vote on the answers to all questions in the FRB Checklist and "administratively approve or disapprove each section, addressing and voting on each question in the order listed." *Id.* For each review, the Board shall "consider the actions and inactions of all officers, supervisors, commanders, and dispatchers involved in the incident[,]" including an officer's decision-making at the time the officer used force; including whether an officer's use of force was necessary, proportional, and objectively reasonable; the circumstances leading up to the use of force; tactical decisions; information sharing and communication; adequacy of supervision throughout the incident; equipment; training; the Division's medical response, when applicable; whether the incident raised any policy concerns; and any commendable actions taken by the officer. *Id.* at 3-4. Further, "[e]ach Board review shall include an assessment of the integrity, comprehensiveness, objectivity, thoroughness, and timeliness of all aspects of the use of force investigation. The Board must ensure that the force investigation is objective and complete, and that investigatory findings are supported by a preponderance of the evidence." *Id.* at 4. For each involved CDP employee in each incident, the Board shall make separate, formal findings of "administrative approval" or "administrative disapproval" regarding tactics and decision making; use of force; supervision; and the underlying force investigation. *Id.* The Board also will determine whether the officer's performance complied with CDP policy. The Board will not make any discipline determinations. *Id.*

Under the Proposed Policy, the FRB Chair shall "assign for follow-up any policy, equipment or training recommendations from the Board. The FRB shall use a tracking system to ensure that each of its recommendations, whether regarding individual employees, training, policy, equipment, communication, or other issues, has been forwarded to the appropriate Division personnel." *Id.* If the use of force indicates

6

"policy, training, tactical, or equipment concerns," the Chief of Police shall ensure that the "FRB's recommendations . . . are implemented, including any non-disciplinary corrective action, are implemented as appropriate, any necessary training is delivered and that policy, training, tactical, or equipment concerns are resolved." *Id.*

Further, "[a]t least annually, the FRB[,]" working on conjunction with the Division's DACC, "shall examine data related to use of force to detect any patterns, trends, and training deficiencies and make recommendations for correction, as appropriate." *Id.* at 5.

### B. Issues Relating to the Timing and Frequency of Review Board Meetings and Activity

The Monitoring Team hopes that the policy, as drafted and submitted, will be successful in institutionalizing the comprehensive, meaningful analysis of use of force incidents that the Consent Decree requires. However, we identify three potential issues here in order to put the parties and the Court on notice of areas that the Monitoring Team will be carefully watching during the implementation.

First, the Consent Decree is silent on the question of <u>when</u> the FRB must consider a use of force investigation. The only requirement is that the Board conduct "comprehensive and reliable reviews of [force] investigations within 90 days of submission to the FRB." Dkt. 7-1 ¶ 126. However, the Monitoring Team understands that the FRB will consider cases, including making formal findings on whether the use of force raises policy concerns, ordering new or additional investigation where necessary, and making findings about all of the circumstances that led to and were involved in the use of force—<u>after</u> the Chief of Police, or Public Safety Director, has made a final adjudication on the matter.

The Parties have explained to the Monitoring Team that the FRB, as contemplated by the Decree, was intended to be utilized as a systemic, after action review of uses of force and force

7

investigations, assessing the objectivity and comprehensiveness of force investigations, determining whether the investigative findings have evidentiary support, and identifying policy, training, equipment, supervision, or tactical concerns. They have stated that the Board was not meant to be part of the disciplinary process, but was instead intended to identify and correct systemic deficiencies related to the investigation of use of force. The parties note that Dkt. 7-1 ¶ 124, which discusses the general duties of the Board, and ¶ 127(f) do not give the Board the authority to impose discipline, but limit the Board to recommending "non-disciplinary corrective action." It is therefore not clear to the Monitoring Team what the FRB should do when it finds a use of force out of policy. While the Monitoring Team does not suggest that the FRB should make disciplinary decisions – that is a role reserved for the Chief or the Director of Public Safety– the present system divorces the FRB mechanism in the Division from instigating discplinary action. During its implementation, the FRB will need to demonstrate that its current, non-disciplinary role does not impact the Division's ability to comply with the specific requirements of the Consent Decree addressing officer discipline and accountability.

Encouragingly, however, the FRB Training Curriculum provides some guidance on this issue by offering an instructor note stating:

> Members who become aware of any misconduct shall immediately document and report the incident, via the tracking software, forwarding the entry to the Internal Affairs Superintendent for review and assignment in accordance with IA Procedures and the Internal Complaints of Misconduct GPO. The Bureau of Compliance Commander will ensure that any misconduct identified at FRB meetings, that had not been previously identified is forwarded to the Internal Affairs Superintendent.

Exhibit TK at 3. This is the process that the Monitoring Team would recommend for policy, and the Monitoring Team will be closely reviewing how this issue plays out in practice.

Second, the Monitoring Team notes that the FRB, which is Chaired by the Chief of Police, will consider cases that have already been through the Chain of Command up to, and including, the Chief, and

may have already proceeded through the disciplinary processes, which likewise ends with a determination by either the Chief of Police or the Director of Public Safety. The Monitoring Team remains concerned that the Chief's direct involvement, which is set forth in the consent decree, risks having a chilling effect on the Board. Again, the obligation to show that it is able to thoughtfully analyze controversial issues without concern that it will "offend" the Chief's prior determinations rests with the FRB.

Third, the Monitoring Team remains concerned that quarterly meetings are inadequate to ensure a robust and complete review of every case that "consider[s] the actions and inactions of all officers, supervisors, commanders, and dispatchers involved in the incident" including policy, tactics, training, information sharing, supervision, equipment, medical response, and commendations. Ex. A, V.D.1-9. However, the policy as established does allow for scheduling meetings of the FRB more frequently "as necessitated by submitted investigations." Ex. A, II.B. As such, the Monitoring Team will be interested to see whether the frequency of FRB meetings allow for timely, comprehensive review of use of force.

As such, the Monitoring Team proposes that the Court approve the policy as submitted by the City for the duration of one year. That year will allow the Court and Monitoring Team to observe whether the FRB convening on a quarterly basis (as called for in the Proposed Policy) and only after the case has already been adjudicated allows the Board the capacity to substantially and effectively carry out all of the duties that the Consent Decree expressly prescribes. During the upcoming year, the Monitoring Team will report on the Division and FRB's progress. At the conclusion of the one-year period, the Monitoring Team will provide the Court with its good-faith assessment as to whether the Board's performance suggests that the policy should be re-approved for the long-term or if material changes need to be considered.

## V. ANALYSIS OF THE FORCE REVIEW BOARD TRAINING CURICULUUM

To fulfil its mandate to comprehensively review force from a tactics, training, and agency improvement process, the FRB needs to be effectively trained. As stated in the proposed FRB training curriculum, the "goal is to produce high quality investigations, identify gaps in policies, training,

9

supervision, equipment, communication, tactics, and establish community trust and respect." Exhibit TK, at 4.

The training curriculum is divided into three modules. Module One reviews the purpose, composition, scope and process of the FRB, and introduces the FRB checklist. The training clearly sets forth the expectation that all members of the board will come fully prepared to meetings, having reviewed the necessary files and videos as applicable before attending the board. Module One also explains that the FRB will review all FIT investigations, all Level 2 investigations with a finding of force-related misconduct, and a random sample of Level 2 investigations for quality control. The curriculum continues, laying out the procedure for review and adjudication of the cases by the FRB, including that the FRB will vote on each question on the checklist, and administratively approving or disapproving each section by a preponderance of the evidence.

Modules Two and Three use scenario-based training to simulate a mock board session. In Module Two, the FRB members are presented with case materials from an actual CDP case, including Blue Team investigation, associated reports and video. Module Three walks the members through the review process for the UOF case materials they received, by utilizing the FRB Checklist. The training appropriately provides instructors with the necessary responses – "acceptable answers" – to the checklist questions. The case at issue includes an out of policy use of force so that the FRB members can grapple with their role as critical reviewers, which can be initially uncomfortable for some new to this role.

As the training provides sufficient guidance on the FRB, including the procedural "nuts and bolts" as well as a practical, substantive mock review session that raises complicated issues, the Monitoring Team recommends that the Court approve the FRB curriculum.

## VI. CONCLUSION

The task of the Monitoring Team is to duly consider whether the City's submitted FRB Policy and associated FRB Training Curriculum satisfies the terms of the Consent Decree. The Monitoring Team

concludes that the FRB Policy, as drafted, appears to meet the terms of the Consent Decree. The Monitoring Team recommends that the Court approve the Proposed FRB Policy subject to the Team's ongoing evaluation of the implementation of the FRB Policy throughout the FRB's first year – in order to assess whether the Board is able to effectuate its "quality control" duties as laid out in the Consent Decree. Should the Monitoring Team identify any concerns or deficiencies, it will address such problems at that time with the Parties and with the Court. Similarly, the Monitoring Team recommends that the Court approve the Proposed FRB Training Curriculum.

Respectfully submitted,

/s/ Hassan Aden

HASSAN ADEN
Monitor
The Aden Group LLC
8022 Fairfax Road
Alexandria, VA 22308
Tel: (571) 274-7821
Email: aden@theadengroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2020, I served the foregoing document entitled Motion to Provisionally Approve Cleveland Division of Police Force Review Board Policy via the court's ECF system to all counsel of record.

/s/ Ayesha Hardaway
AYESHA HARDAWAY