# **MEMORANDUM**

DATE: JUNE 17, 2020

TO: KARRIE HOWARD, DIRECTOR OF PUBLIC SAFETY
CALVIN WILLIAMS, POLICE CHIEF
JOELLEN O'NEILL, DEPUTY POLICE CHIEF
GREG WHITE, OFFICE OF THE MAYOR
BARBARA LANGHENRY, DIRECTOR OF LAW
GARY SINGLETARY, CHIEF COUNSEL
JUSTIN HERDMAN, UNITED STATES ATTORNEY
TIMOTHY MYGATT, DEPUTY CHIEF – CRT
JONAS GEISSLER, CRT
NICOLE PORTER, CRT
MEHVEEN RIAZ, CRT
LYNN BUCK, AUSA
MICHELLE HEYER, AUSA
HEATHER TONSING VOLOSIN, AUSA

FROM: HASSAN ADEN, CLEVELAND MONITORING TEAM

SUBJECT: REVIEW OF CLEVELAND PROTESTS
_____

The purpose of this memorandum is to inform you that the Monitoring Team is undertaking a review of the Cleveland Division of Police's preparedness, response, and after-action activities related to the various planned and unplanned protests occurring after the killing of George Floyd by officers of the Minneapolis Police Department.

This review is being conducted as part of our ongoing monitoring of the CDP and amid reports alleging excessive/unnecessary force, lack of preparation, command and control, appropriate personal protection equipment for officers as well as other concerns about the response by the CDP.

Specifically, the scope of our review will be for protests that occurred between May 26 and June 12, 2020.  The findings will be detailed in the Monitoring Team's Ninth Semiannual Report, which will be filed in Court.

Whenever physical force is used, it directly implicates the core provisions of the Consent Decree that address the use of force.  (Dkt. 7-1 ¶¶ 45–130).  Whenever individuals may be stopped, detained, searched, or arrested, the Consent Decree provisions related to search and seizure are implicated.  (Dkt. 7-1 ¶¶ 160–75).  Whenever use of force or law enforcement actions are directed by supervisors, the Consent Decree's requirements relating to supervision apply.  (Dkt. 7-1 ¶¶ 322–35).

The Decree's provisions on body-worn cameras are also implicated.  (Dkt. 7-1 ¶¶ 337–40).

Separately, the Division of Police in 2015 and 2016 received substantial assistance from the various components of the federal government, and from the Consent Decree process, relating to safely managing crowds that assemble for the purpose of exercising their Constitutionally-protected rights of free speech and assembly.  Many of the policies, manuals, and training requirements that emerged from this process – because they relate to the Consent Decree provisions outlined above – are also implicated in this review.  Although the Monitoring Team retains many of these policies, procedures, and training materials, a specific document request is attached to this memorandum so that the Monitoring Team can determine what was, or should have been, operative during the time of the above-referenced protests.

The Monitoring Team anticipates that this review will focus on the following:

- Planning and preparation for the protests in Cleveland
- CPD's Incident Command, control, and communications to the field
- Mutual aid and associated field supervision of joint response
- Policy and Training
- Reporting Use of Force and subsequent documentation and investigation
- Mass arrests, individual arrests and compliance with GPO 3.3.03
- News Media Relations
- Community engagement prior to, during and post protests (CDP contacts, Community Police Commission, faith community, etc.)
- All complaints, internal and citizen generated, against CDP staff
- All associated After-action Reports
- Compliance implications with the Consent Decree
- Citizen feedback on their experience at the various protests

Please provide the documents in the attached "document request" by July 1, 2020.  Any document that cannot be provided by July 1, 2020 (reason and timeline) should be communicated to us in writing.  We appreciate your attention to this matter and look forward to keeping you updated on our progress.

Sincerely,

Hassan Aden, Monitor
Cleveland Consent Decree Monitoring Team

GPO – 3.3.02

Names and backgrounds of Incident Commanders - Definitions
Request for Field Force to Deputy Chief of Field Operations or to Communication Control Section (if this was considered an unplanned or unexpected large scale event). I.A.1; I.B.1
Known information: crowd size, estimated potential for crowd escalation, any related incidents of violence. – II.C.1-4.
Names and backgrounds of Field Force Commanders – Definitions
Written determinations of personnel needed. II.E.1
Documentation of training per III.A.1-5
Incident command documents/orders per IV.A.1-4; B-J

GPO – 3.3.03

IAPs and ICS structures.  I.B
Any agreements with mutual aid.  I.C
Incident command documentation per IV.B.1-11
Documentation of any attempts to coordinate with protest leaders. V.C.1.
Documentation/video of "verbal persuasion and warnings." V.C.1-8
Documentation of any dispersal orders. V.C.E.1.a-d
Documentation of any accommodations to media. VI.A-H
Documentation and video of any uses of force.  VIII.A-E
Documentation and video of any uses of force ordered by IC. VIII.F
Documentation of any mass arrests. IX-XII.

Other:

Any complaints made to IA/OPS relating to the protests.
Investigative status of any IA/OPS Complaints.
UOF Reports, including supervisory investigation and approval.
Assessment of the protest response by the IG.
Documents relating to any protest-related arrest, and not just mass arrests
After action reports, if any.
All memoranda, directives, and emails or other correspondence from and to command providing updates regarding the mass demonstrations and First Amendment assemblies within the timeframe outilined by this request.