# MEMORANDUM

DATE:     October 30, 2020

TO:       GREG WHITE, OFFICE OF THE MAYOR
          KARRIE HOWARD, DIRECTOR OF PUBLIC SAFETY
          RANIA ISSA, DATA COLLECTION & ANALYSIS COORDINATOR
          CALVIN WILLIAMS, POLICE CHIEF
          JOELLEN O'NEILL, DEPUTY POLICE CHIEF
          CHRIS VILAND, INSPECTOR GENERAL
          ROGER SMITH, ADMINISTRATOR, OPS
          RON BAKEMAN, SUPERINTENDENT OF INTERNAL AFFAIRS
          JUSTIN HERDMAN, UNITED STATES ATTORNEY
          TIMOTHY MYGATT, DEPUTY CHIEF, CRT
          JONAS GEISSLER, CRT
          STEPHEN RYALS, CRT
          MEHVEEN RIAZ, CRT
          LYNNE BUCK, AUSA
          MICHELLE HEYER, AUSA
          HEATHER TONSING VOLOSIN, AUSA

FROM:     HASSAN ADEN, MONITOR

RE:       UPCOMING AUDITS AND METHODOLOGIES

---

This memorandum outlines proposed areas of focus regarding compliance reviews and outcome assessments through approximately March 2021, which aligns closely with the conclusion of the Fifth-Year Monitoring Plan.  This is not a full accounting of the various assessments that the Monitoring Team intends to conduct beyond the spring of 2021.  It likewise is not a comprehensive accounting of all requirements of the Consent Decree.  Instead, it outlines proposed, overall methodologies and timelines for conducting a first phase of assessment in the coming months.

## I.   SUMMARY OF PRELIMINARY CONSIDERATIONS REGARDING ASSESSMENTS

The Monitoring Team has previously articulated some overriding considerations regarding the role of assessments.  First, the activities outlined in this memorandum are not the sole or exclusive ways that the Monitoring Team will be gauging CDP's progress.  The Team is continuing to provide real-time feedback and technical assistance.  As the Parties are also aware, the Monitoring

Team, within the context of the Ninth Semiannual Report, will be auditing and assessing the nature of CDP's response to protests and crowd management situations in May and June of 2020.

Second, for all of the assessments outlined below, where the Monitoring Team refers to taking samples; randomly selecting cases, incidents, records, or files; or performing qualitative reviews, the Monitoring Team will endeavor to work with the Parties to determine processes for sampling and mechanisms for conducting those reviews.

## II.     PROPOSED ASSESSMENTS

### A.     Use of Force

The purpose of this assessment is to evaluate CDP's compliance with Consent Decree requirements with respect to use of force, including its reporting and review – and, specifically, with Paragraphs 46 through 92 of the Decree.

#### 1.   Overview of Proposed Methodology

Pursuant to the responsibility to ensure that the intent of the reforms of the Consent Decree are met, the Monitoring Team has developed a tool and methodology for reviewing a sample of use of force cases and reviews.  In 2018, the Monitoring Team created a tool, tested it on a small number of cases, and refined it.  After the test period, members of the Monitoring Team met with representatives of the U.S. Attorney's Office, the CDP, Greg White, and members of the Data Collection Team from Case on methodology. The Monitoring Team reviewers used this methodology in the pilot review of cases during 2019.  The tool that the Monitoring Team will utilize has previously been tested and reviewed with the parties.  The Monitoring Team will continue to use the same, refined tool, with slight adjustments in the order of questions.  However, there was a reordering of questions toward the early part of the tool to permit an expeditious review of Level 1 cases.

While the Monitoring Team found that the tool and the process both work well, the review is slow.  We would like to be able to evaluate cases, provide feedback to and review the findings with the parties in a more timely manner.  Toward that end, we propose a monthly review of cases be completed by the parties, followed by a discussion on those cases where the parties identified as concerning the supervision or approval process.  In addition, rather than getting cases via hard drive or using the VPN, which were time consuming and onerous for the Division and the reviewers respectively, we will access cases through the Monitoring Team's Box account, a secure file transfer protocol system.  The DOJ and the USAO has agreed on a system for their use that will accommodate their needs.

<u>Access to Cases:</u> The Monitoring Team will begin utilizing a new, and we believe more efficient and secure, method for accessing case files necessary for review.  The Monitoring Team began to use Box earlier in 2020, and we ask that the Cleveland Police Bureau upload identified specified cases by phase to the Monitoring Team's Box.  This upload can be done at any time, but for each phase, it will be necessary to upload the cases by the first of the month in which it will be reviewed.  Reviewers will then access case files from Box, thus eliminating the need to upload cases to external hard drives and put the data and confidentiality at risk in the process of delivery. We

appreciate the support and assistance of the City to make this change. The timeline for upload and review as agreed by the parties is as follows:
- CDP – upload cases to Box and share as agreed with USAO and DOJ by first of the month
- MT Reviewers complete assignment by 21st of month
- DOJ/USAO advise by 21st of any concerns in the sample reviewed
- MT reconcile internally any issues by the 28th of the month
- CDP apprised of any case, by number, with an identified issue
- Parties meet to discuss identified case(s) by 8th of month at regularly scheduled meeting

Selection of Cases: The MT plans to focus its preliminary review on completed incidents from 2018 and 2019, which were completed prior to early September 2020. The completed cases do not include those that are in Internal Affairs or otherwise suspended in IAPro.

| Force Level | Population | Sample* | # of Reviews |
|---|---|---|---|
| Level 3 | 25 | 25 | 50 |
| Level 2 | 227 | 44 | 88 |
| Level 1 (all)^ | 487 | 55 | 55 |
| TOTAL | 739 | 154 | 193 |

*95% Confidence Interval, +/- 10% Margin of Error, 80% Response Distribution
^ Level 1 cases will be oversampled via random oversampling when the case numbers are sampled

Review Process: To expedite the review and allow a larger sample, we propose a process with a different number of reviewers for each case level.

- Level 2s and 3s will be reviewed by 2 reviewers
- Level 1s will be reviewed by 1 reviewer
- The sampling frame for all is a 95% confidence interval, a Margin of Error of 10%, and a Response Distribution of 80%
- The Monitoring Team will randomly oversample the Level 1 (non-firearm) cases when the sample is pulled. For each firearm pointing case, we will sample two non-firearm cases.

The review of Level 1 cases (both types) will be limited to a reduced set of assessment questions on necessity, proportionality, reasonableness, and efforts to deescalate where appropriate, and overall quality of the report and supervisory review. This expedited review allows more cases to be examined and enhances the ability to determine if over/underreporting or misclassification of cases is occurring. Should patterns of concern arise, the MT will increase the number of reviews

of the Level 1 cases. The MT will also assign a second reviewer to each case of concern and alert the Parties of any concern in advance of the monthly review meeting.

After each review is complete, irrespective of the case level, the responses will be discussed between reviewers for agreement. In the event of disagreement between reviewers on significant questions such as whether the force was necessary, proportional, and reasonable, the reviewers will conference, and if necessary, a third reviewer will act as another level of review within the Monitoring Team. This will be completed within the MT review team.

Finally, this equates to 193 reviews, which is approximately 32 cases total reviews per person using six reviewers. The reviewers for this use of force review are anticipated to be Brian Maxey, Richard Myers, Chuck Ramsey, Richard Rosenthal, Scott Sargent, and Django Sibley.

In the final week of the month, any cases that cause concern will be identified and shared with CDP and discussed at a regular meeting held early the following month, first Tuesday for example.

### 2. Overview of Proposed Timeline

- Use of Force Reviews Conducted during the period of November 1, 2020 – March (anticipated)
- Rolling Debrief with Parties: final week of week of month, commencing early December 2020
- Draft Report to Parties: April 16, 2021, Parties respond by April 30, 2021
- Filing of Final Report with Court: May 7, 2021

### B. OPS/PRB

The purpose of this assessment is to evaluate the City's compliance with Consent Decree requirements with respect to civilian complaints, the Office of Professional Standards ("OPS") and the Police Review Board ("PRB") – and specifically Paragraphs 193 through 239 of the Consent Decree.

### 1. Outline of Proposed Methodology

Pursuant to the responsibility to ensure that the intent of the reforms of the Consent Decree are met, the Monitoring Team has developed a tool and methodology for reviewing citizen complaint investigations sustained by the PRB. The draft tool was reviewed by the DOJ and is currently being reviewed by the CDP Inspector General and the OPS Administrator. After conferral with the IG and the OPS Administrator, the tool will be finalized.

The Monitoring Team anticipates reviewing all cases sustained by the PRB in 2019 and through August 2020. This time period is determined to be reasonable and fair based on the tenure of the current OPS Administrator.  Cases initiated prior to his appointment will not reflect current practices.  The Monitoring Team anticipates accessing cases through the IA Pro and Evidence.com databases. The total number of cases that meet those criteria is 29.  (N=29)

Selection of Cases:  The MT plans to focus its preliminary review on cases heard and sustained by the PRB in 2019 and 2020 and closed by the Department of Safety on or before August 31, 2020. At the time of this writing, the sample includes cases not fully adjudicated – there are 14 pending decisions from a Chief's Hearing and one pending a Director's Hearing.  It is assumed that during this review period those cases will be heard.  Additionally, the purpose of this assessment to evaluate OPS and PRB decision-making.

The review coordinator, Richard Rosenthal, will confirm that the appropriate documents are available to reviewers including documentation normally uploaded to IA Pro, PRB decision notes and audio recordings of hearings. As has been the case in the past, the CDP and Department of Public Safety will provide transcripts for all Chief's Hearings and Director's hearings conducted with respect to the identified cases.

Review Process:  The principal reviewers, Richard Rosenthal and Professor Ayesha Hardaway, will first test the audit instrument on five cases, chosen at random from the universe of cases identified for review. The audit instrument will be edited as necessary after consultation with DOJ, the OPS Administrator, and the PRB Chair. A team of reviewers, including team members such as Django Sibley, Ayesha Hardaway, Brian Maxey, Richard Rosenthal, Matthew Barge and Scott Sergeant, will subsequently review the cases, assigned on a random basis. Each case will be assigned two reviewers who will independently review and confer on the assessment.  Should there be irreconcilable differences of opinion, the review team will present to the full team for discussion and assessment.

The review will consider all parts of the investigation and adjudication process, to include the underlying OPS investigation and OPS findings; Police Review Board hearings, findings and recommendations; and the adjudication of cases by the Chief and the Director of Public Safety, to include findings, imposition of discipline and rationale for findings and discipline. The review will specifically evaluate to what extent
- "OPS investigations of complaints are as thorough as necessary to reach reliable and complete findings that are supported by the preponderance of evidence" as required by paragraph 218 of the Consent Decree;
- "PRB's recommended dispositions [are] based on a preponderance of the evidence" with the "PRB set[ting] forth its conclusion and an explanation for its reasons and supporting

evidence in writing, including, when applicable, the justification for departing from OPS's recommended discipline," as required by paragraph 237 of the Consent Decree; and,
- The Chief and the Director of Public Safety are in compliance with the requirements of paragraphs 240 through 243 of the Consent Decree (relating to Disciplinary Hearings) and paragraphs 245 and 247 of the Consent Decree (relating to Discipline).

### 2. Overview of Proposed Timeline

- Identification of sustained cases for review: November 12, 2020
- Completion of final review instrument: November 15, 2020
- Review of OPS/PRB case investigations & adjudications: November 15, 2020 – February 28, 2021
- Draft Report to Parties: March 31, 2021
- Filing of Final Report with Court: April 30, 2021

## C. Force Review Board

The purpose of this assessment is to evaluate the Force Review Board and the Division's status of compliance with Paragraphs 124 through 130 of the Consent Decree.

### 1. Outline of Proposed Methodology

The assessment of the Force Review Board (FRB) will be done in real time, a contemporaneous monitoring. To achieve this, selected members of Monitoring Team will participate in the enumerated steps below; each of which will be followed by debrief and discussion.

- Review all of the training of, and policies and review rubric applied by, FRB members
- Attend CDP's FRB training;
- Review of all materials sent to FRB on an ongoing basis;
- Attend/monitor all FRB meetings;
- Engage in debrief with FRB Chair, routinely, within 24 hours of FRB.

### 2. Overview of Proposed Timeline

- Dependent on configuration of FRB.
- Monitoring Team to attend 100% of meetings over a one-year period (which will require virtual participation).