


# CLEVELAND DIVISION OF POLICE
### GENERAL POLICE ORDER

| EFFECTIVE DATE: | CHAPTER: Draft 11-12-2020 | PAGE: 1 of 9 | NUMBER: |
|---|---|---|---|
| SUBJECT: | INTERACTIONS WITH YOUTH | | |
| CHIEF: | | | |

**PURPOSE:** To provide officers with guidance and procedures for interactions with youth that are age-appropriate, promote compliance with the law, and build positive relationships. These procedures are intended to equip officers to respond to youth in a manner that promotes positive interaction and enhances the safety of the officers, youth, and public, while still holding youth accountable.

**POLICY:** It is the policy of the Division of Police that youth shall be afforded their constitutional and statutory rights when being questioned, searched, detained, or arrested. Youth shall be informed of their rights in an age-appropriate manner, and treated with courtesy, professionalism, dignity, respect, and equality.

## DEFINITIONS:

**Age-appropriate:** Term used to reflect a general understanding of the social, emotional, physical, neurological, behavioral, and moral aspects of development in an individual under 18 years of age.

**Bias-Free Policing:** Policing that is accomplished without the selective enforcement or non-enforcement of the law, including the selection or rejection of particular policing tactics or strategies, based on the youth's membership in a demographic category. Bias-free policing is free of discriminatory effect as well as discriminatory intent.

**Child Response Team (CRT):** Child Response Team of Mobile Crisis is available 24 hours a day/7 days a week for consultation and referral concerning child/youth in crisis/emergencies at (216) 623-6888.

**Cuyahoga County Division of Children and Family Service (CCDCFS):** The county agency responsible for the care and protection of children suspected of being abused or neglected, or in need of services for their safety, protection or well-being.

**Juvenile Detention Center (JDC):** The temporary care of individuals under the jurisdiction of the Court for whom secure custody is necessary, based on a public safety risk assessment as determined by the court. The location is the Cuyahoga Juvenile Justice Center.

**Rehabilitation:** The process of building skills through treatment and training, based upon an individualized assessment of a youth's needs.

**Responsible adult:** In the absence of a youth's parent or legal guardian, the individual who is responsible for the physical custody of the youth or who is an adult friend or family member of the youth's parents, foster parents or legal guardian who agrees and reasonably demonstrates the ability to provide supervision for the youth until a parent, legal guardian, or next of kin can assume that responsibility.

**Secure custody:**  When a youth is held in a locked room, a set of rooms, or a cell that is designated, set aside, or used for the specific purpose of securely detaining persons who are in law enforcement custody.

**Sight or sound contact:** Any physical, clear, visual, or verbal contact that is not brief or inadvertent.

**Unruly child**: Any child who does not submit to the reasonable control of the child's parents, teachers, guardian, or custodian, by reason of being wayward or habitually disobedient;  Any child who is a habitual truant from school and who previously has not been adjudicated an unruly child for being a habitual truant;  Any child who behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others;  Any child who violates a law, other than division (C) of section 2907.39, division (A) of section 2151.87 of the Revised Code, that is applicable only to a child. (ORC 2151.022)

**Youth/Juvenile:** An individual under the age of 18.

**PROCEDURES:**

I. **General Guidelines**

    A. Officers are encouraged to engage in positive interactions with youth while conducting non-enforcement activities.

    B. When interacting with youth, officers shall:

        1. Treat all youth with courtesy, professionalism, dignity, respect, and equality.

        2. Conduct law enforcement activities without discrimination on the basis of a youth's demographic category in accordance with General Police Order (GPO) 1.07.08, Bias-Free Policing. Examples of this type of interaction include, but are not limited to:

            a. Approaching youth in a calm and respectful manner

            b. Explaining the purpose of interaction in an age-appropriate manner

            c. Not cursing at or using derogatory language to refer to youth

            d. Not making fun of or engaging in demeaning or humiliation tactics

        3. Take into consideration the following factors, if known, including but not limited to the:

            a. Nature of the complaint or contact.

            b. Age, intelligence, mental capacity, disability status, and physical condition of the youth.

            c. Youth in crisis (e.g., emotional stability, under the influence or alcohol or drugs).

      d.    Youth's prior contacts/history with officers.

      e.    Youth's likelihood to comply with parental control.

      f.    Cooperation and attitude of all involved parties and the likelihood of the offense being repeated.

      g.    Likelihood that the youth can be successfully redirected.

## II. Investigatory Stops

A. In addition to the provisions set in GPO 2.02.02, Investigatory Stops, officers shall be aware of the potential behavioral response youth may employ that can impact the direction of an investigative stop in unintended ways. These responses may include but are not limited to:

    1.    Fleeing

    2.    Verbal challenges

    3.    Freezing or unexpected non-responsiveness

    4.    Outright disregard for police directives

    5.    Presumption of mistreatments

B. Behavioral responses alone cannot provide the basis for probable cause.

## III. Interviews and Interrogations

A. Administering Juvenile Miranda Warning and Waiver

    1.    Officers shall administer Miranda warnings in an age-appropriate manner in accordance with the directives contained in GPO 2.02.01, Miranda Warnings and Waiver.

    2.    Officers shall consider the totality of the circumstances when determining whether a juvenile has knowingly and voluntarily waived Miranda in accordance with the directives contained in GPO 2.02.01, Miranda Warnings and Waiver.

B. When interviewing juveniles, officers shall:

    1.    Take special care to conduct the interview in a manner as to ensure voluntary, non-coercive, and non-traumatic results.

        a.    If questioning more than an hour, provide a break.

      b.      Keep total interrogation time of a juvenile to a minimum.

    2.      Be aware that behavioral cues of juveniles that may indicate deception may actually be due to the juvenile's maturity level or other developmental factors (e.g., avoiding eye contact, fidgeting, agitation, and emotional volatility).

## IV. Redirection and Referrals

    A.    Where probable cause exists that a youth has engaged in unruly behavior (e.g., truancy, running away from home, violating curfew, underage use of alcohol) or has committed a nonviolent misdemeanor offense officers may exercise reasonable discretion and choose alternatives to arrest. These alternatives include but are not limited to the following:

        1.    **Warn and Release -** Officers may warn and release the youth to his/her parent or other responsible adult.

        2.    **Referral for Rehabilitative Services -** Officers may make a referral to a community social service or mental health agency, particularly when problems related to mental illness, including suicidal gestures and behaviors, drug use or other substance abuse, and/or personal or family crises, appear to be involved or serve as an influence on the youth's behavior.

        3.    **Referral to Local Agencies –** Officers may make referrals to local agencies for positive youth development supports, including recreational, literacy, vocational, volunteer, mentoring, and/or other activities to positively engage youth and deter unruly and/or delinquent behaviors.

    B.    Officers shall not arrest a juvenile under the age of 13 for a non-violent offense (Refer to GPO 3.03.03, Juvenile Booking and Processing)

## V. Arrest and Temporary Custody

    A.    For juveniles taken into custody for violations of law, officers shall:

        1.    Follow the procedures described in GPO 3.03.03, Juvenile Booking and Processing.

        2.    Attempt to notify the juvenile's parent, legal guardian, or responsible adult regarding the circumstances of the arrest and document all notifications and attempts in the related incident report.

        3.    Ask the juvenile if they are a caregiver and, if so, the officer shall assist in ensuring care for siblings, children, and/or others.

    B.    Where further detention is warranted, officers shall:

        1.    Follow the procedures described in GPO 3.01.01, Arrestee Restraint, Transport, and Supervision, and GPO 3.03.03, Juvenile Booking and Processing.

    2. Hold the juvenile in temporary custody of the Division of Police <u>only</u> as long as reasonably necessary for processing and transfer to the Juvenile Detention Center following the procedures described in GPO 3.03.01, Arrestee Restraint, Transport, and Supervision.

    3. Ensure that an officer has constant auditory access to and observes the juvenile every 30 minutes or less.

    4. Ensure arrested juveniles do not have sight or sound contact with arrested adults. If inadvertent contact does occur, reasonable efforts shall be taken to end the contact.

C. When the CCJDC will not accept a juvenile, the officers shall:

    1. Relinquish custody of the juvenile to an identified, responsible adult, parent, guardian, or relative.

        a. When a responsible adult, parent, guardian, or relative cannot be located, the officer shall contact CCDCFS (696-KIDS).

D. Arrests of Children with Disabilities

    1. Pursuant to the Federal Individuals with Disabilities Education Improvement Act of 2004, when a school or other agency reports a crime committed by a child with a disability, and the child is subsequently arrested, the reporting administrator is required to ensure that copies of the child's special education and disciplinary records are given to the arresting officer to be included in the arrest packet.

    2. When a school or other agency reports a crime committed by a child with a disability, and the child is subsequently arrested, the arresting officers shall:

        a. Request, if not provided, copies of the child's special education status and disciplinary records from the administrator at the school or agency, pursuant to O.A.C. 3301-51-04(R)(2).

        b. Ensure that the packet provided by the school or agency is forwarded to the detective assigned to the case for inclusion in the juvenile court paper work.

        c. Document any refusal made by the school or agency to provide the information in the related incident report.

## VI. Medical Attention

A. Officers shall seek medical attention for youth when a youth requests medical attention, or when any of the following conditions exist:

    1. Serious injury/Serious Illness

    2. After use of a Conducted Electrical Weapons (CEW) (see GPO 2.01.04(IV)(D) or Oleoresin Capsicum (OC) Spray (see GPO 2.01.04(III)(C)

    3. Unconsciousness

    4. Significant intoxication due to alcohol and/or drug use

    5. A suicide risk or mental health crisis

B. Officers coming into contact with a youth who exhibits any of the above conditions shall take reasonable steps to:

    1. Provide medical attention or crisis intervention.

    2. Request EMS to respond and transport, if necessary.

    3. Notify their supervisor.

    4. Notify the youth's parent, legal guardian, or responsible adult and document all notifications and attempts in the related incident report.

C. Officers taking custody of a youth, who exhibits any of the conditions listed in VI. A, shall take the above steps, prior to booking the juvenile at the JDC.

D. In the event of an emergency medical situation, EMS shall be called immediately for transportation and treatment. Officers shall permit the caretaker to accompany the youth to the hospital if the youth is not under arrest and where safe to do so.

VII. **Transportation**

A. Officers shall transport juveniles in CDP custody according to the procedures contained in GPO 3.01.01, Arrestee Restraint, Transport, and Supervision.

VIII. **Handcuffing**

A. Officers may, when it is objectively reasonable, use handcuffs on youth who are in custody, including custody solely for the purpose of psychiatric evaluation.

B. Officers shall consider the totality of the circumstances when determining whether to use handcuffs, as handcuffs may trigger a traumatic response.

C. When feasible, officers shall explain the use of restraints to youth in an age-appropriate manner and to the family/guardian in a tactful manner.

IX. **De-escalation/Use of Force**

A. When determining the age-appropriate response to youth and when safe and feasible, officers shall use de-escalation strategies.

B. Officers shall consider whether a subject's lack of compliance is a deliberate attempt to resist or an inability to comprehend and/or comply due to the perceived age of the individual. Officers shall follow the directives contained in GPO 2.01.02, De-Escalation.

C. Officers shall only use force when necessary, proportional, and objectively reasonable to do so. Officers shall follow the directives contained in GPO 2.01.03, Use of Force - General.

D. Before using intermediate weapons on youth, officers shall consider the following factors:

1. Body mass

2. Physical build

3. Perceived age

4. Emotional condition

Officers shall follow the directives in GPO 2.01.04, Use of Force - Intermediate Weapons.

X. **Special Circumstances**

A. School

1. When officers respond to issues involving youth at a school, they shall not engage in disciplinary matters or school code of conduct violations. Such conduct violations shall be handled exclusively by school personnel.

B. Officers' response to arrested parents.

1. To reduce a youth's exposure to trauma, where the arrested parent is calm and compliant, officers shall consider the following:

a. Avoiding handcuffing or arresting the parent in the presence of the youth.

b. Allowing arrested parents to comfort their children, explaining what will happen next, and describing how the child will be cared for in his/her absence.

c. Asking whether other children may return later to the home and arrange for their care in the absence of the parent.

2. Where possible, officers shall provide referrals to family and youth services to address the trauma of the experience and help mitigate its effects.

3. Officers shall help physically transfer the child to another location, if necessary.

    4. If an arrestee is the sole caregiver of one or more children and no other responsible adult is available, officers shall:

        a. Contact the Cuyahoga County Division of Children and Family Services (696-KIDS) regarding transferring custody of youth.

        b. Ensure the transfer of custody occurred as required.

        c. Provide contact information to caregiver to assist in locating parent(s).

C. Youth in Crisis

    1. When interacting with youth in crisis officers shall, when feasible, attempt to de-escalate in a manner that reflects an age-appropriate approach (Refer to GPO 5.11.03, Crisis Intervention Team Response).

    2. Officers shall use the least restrictive approaches possible when interacting with a youth that is in crisis, including but not limited to the following:

        a. **Ask Dispatch for Assistance:** Officers shall note any indication from dispatch that the situation involves youth in crisis and shall attempt to locate a responsible adult to assist at the scene and provide information regarding medications.

        b. **Assess and Consult with CRT:** Upon arrival on the scene, officers shall assess a youth's current risk to themselves and others, whether the child/youth is armed, and whether psychiatric care is needed, to determine the best course of action.

    3. CRT shall be contacted in the following situations:

        a. If the officer or parent has questions about service options.

        b. If the officer or parent is concerned about youth's behavior or statements.

        c. If the officer feels the youth may be a possible suicide risk.

        d. If the officer feels the parent may benefit from services being brought to the youth at home but parent is not sure how to access that service.

        e. If a parent is concerned his/her child is at risk of becoming involved in multi-systems (e.g., CCDCFS, Juvenile Court).

        f. If mental illness symptoms occur after the youth is arrested.

D. Suicide Risk/Attempt

1. Officers shall be aware of behaviors that may indicate a youth is a suicide risk. These may include refusal to communicate, verbally threatening to kill themselves, or any unusual behavior which may indicate the youth may harm him/herself.

2. If an officer believes a youth may be a suicide risk, the youth shall be kept under continuous direct supervision in a location free of suicide hazards until contact with the CRT and evaluation, release, or transfer is completed.

3. If a youth has attempted suicide, officers shall notify the youth's parent, legal guardian, or responsible adult.

E. Human Trafficking

1. Officers shall refer to the list of possible indicators of human trafficking activity as outlined in GPO 4.1.13, Investigation of Human Trafficking, to determine whether a youth may be a victim of human trafficking.

2. Officers responding to assignments that may involve human trafficking shall refer to the procedures outlined in GPO 4.1.13, Investigation of Human Trafficking.

F. Domestic Violence

1. Officers responding to assignments that involve Domestic Violence involving youth shall refer to the procedures outlined in GPO 3.4.16, Enforcement of Domestic Violence Statutes.

2. When officers respond to a disturbance involving a juvenile, determines that an incident of domestic violence has occurred, and deems it necessary that the juvenile be removed from the home, members shall determine the juvenile's eligibility to participate in the Coordinated Approach to Low-Risk Misdemeanors (CALM) Program.

XI. **Training**

A. Officers shall receive continued training that is adequate in quality, quantity, type, and scope on interactions with youth.