IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15CV1046 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | MOTION TO ENFORCE THE |
| | ) | CLEVELAND COMMUNITY POLICE |
| Defendant. | ) | COMMISSION'S RIGHT TO ACCESS |
| | ) | INFORMATION |

The United States respectfully requests that the Court order the City of Cleveland (the City) and the Cleveland Division of Police (CDP) to provide the Cleveland Community Police Commission (CPC) with information it requests to perform its duties under the Settlement Agreement. The Settlement Agreement recognizes the CPC's critical role in "the development of reforms, the establishment of police priorities, and mechanisms to promote community confidence in CDP [that] will strengthen CDP and the police-community relationship that is necessary to promote public safety." Settlement Agreement between the United States and the City of Cleveland (SA), Dkt #7-1, par. 14. The City and CDP have delayed significantly, or have refused entirely, to provide the CPC with information necessary to perform its mandate under the SA.

The United States requests an order to enforce the CPC's right to access information under Paragraph 19 of the SA and to facilitate the production of information to the CPC going forward. Specifically, the United States requests an order: (1) requiring the City and CDP to provide the CPC, within 14 days, the information CPC has requested previously, which is set forth in Attachment A; and (2) with respect to all future CPC information requests, setting forth a process to resolve these requests quickly and efficiently as described more fully below. A proposed order is attached hereto.

I. BACKGROUND

The Settlement Agreement established the CPC "[t]o leverage the experience and expertise of the people of Cleveland, and to ensure that CDP recognizes and operates in a manner consistent with cooperative community understanding and engagement . . .." *Id.* at par. 15. Indeed, the SA gives the CPC a broad mandate to serve as a voice for the community with respect to policing practices in Cleveland. Among the SA provisions related to this mandate, Paragraph 15 directs the CPC:

> to make recommendations to the Chief of Police and the City, including the Mayor and the City Council, on policies and practices related to community and problem-oriented policing, bias-free policing, and police transparency; to work with the many communities that make up Cleveland for the purpose of developing recommendations for police practices that reflect an understanding of the values and priorities of Cleveland residents; [and] to report to the City and community as a whole and to provide transparency on police department reforms.

*Id.* at pars. 15(a), (b), and (c). To be sure, the SA sets forth some specific tasks for the CPC as it accomplishes this mandate, such as "complet[ing] an assessment of CDP's bias-free policing policies, practices, and training," and "review[ing] and comment[ing] on CDP's policies and practices related to use of force, search and seizure, and data collection and retention . . .." *Id.* at pars. 17(a), 18(a). The SA also specifically charges the CPC with the obligation to review

CDP's civilian oversight to determine if there are changes the CPC recommends to CDP's accountability system.  *Id.* at par. 17(d).  The CPC's mandate is not limited to these specific tasks.

When entering into the SA, the Parties agreed that the CPC would have the ability to request information from the City to implement not only the specific tasks delegated to the CPC, but also the broader mandate given to the CPC in Paragraph 15.  In particular, the SA requires the City to "provide access to all information requested by the Commission related to its mandate, authority, and duties unless it is law enforcement sensitive, legally restricted, or would disclose a personnel action."  *Id.* at par. 19.  This provision entitles the CPC to a broad range of information to carry out its mandate.

In connection with its work, the CPC has made a number of information requests to the City and CDP.  At times, the City and CDP have provided information timely and without objection.  For a significant number of requests, however, the City and CDP have responded that the information is beyond the scope of the CPC's role in implementing the SA, or have delayed the production of the information for months, or in some cases, years.  Over the past year, the United States and the Monitoring Team have met repeatedly with the CPC and CDP in an effort to resolve disputes over the CPC's information requests.  These meetings resulted in the production of only some of the requested information.  The City's and CDP's refusal or delay in providing the requested information has impaired the CPC's ability to carry out its mandate under the SA.

II.     ARGUMENT

      **a. The City and CDP Will Not Directly Provide Information to which the CPC Is Entitled Under the SA.**

For over two years, the City and CDP have refused to provide the CPC with information that is necessary for the CPC to fulfill its mandate. In particular, the City and CDP have denied the CPC's request to provide letters sent to officers summarizing the result of disciplinary hearings. The CPC first made this request in January 2019, seeking letters from 2014 forward. CDP refused to comply, and over the course of many months of conversations on this topic, eventually offered three different arguments for refusing to produce them: (1) the letters are not within the CPC's scope under the SA; (2) the letters "disclose a personnel action," which the SA explicitly exempts from CPC access; and (3) production of the letters is too burdensome. The City's and CDP's grounds for denying this request are spurious, and the Court should order the City and CDP to produce the letters on an ongoing basis.

First, the letters are within the scope of the CPC mandate under the SA. The CPC's mandate in the SA is broad, and it encompasses making "recommendations . . . on policies and practices related to . . . police transparency" and reporting "to the City and community as a whole and to provide transparency on police department reforms." *Id.* at pars. 15(a) and (c). The results of officer disciplinary hearing are directly related to police transparency and reporting on these results to the community will provide transparency on police department reforms, particularly when those results show that discipline was imposed in an area otherwise covered by the decree, such as use of force, bias-free policing, searches and seizures, or community and problem-oriented policing. The letters not only fall within the CPC's mandate, but they also fall within the CPC's specific duties under the decree. Discipline and accountability are key areas of reform under the SA, occupying nearly 20 pages of the

4

Agreement, and one of the CPC's specific duties is to "review and comment on CDP's implementation of initiatives, programs, and activities that are intended to support reform." *Id.* at par. 18(b). The City and CDP cannot credibly argue that the letters are not within CPC's scope under the SA.

Second, the letters do not "disclose a personnel action" within the meaning of that phrase in Paragraph 19 of the SA. The discipline letters are public records,[1] a fact which the City and CDP initially disputed, but no longer do, so providing these public records to the CPC does not "disclose" otherwise confidential personnel information.

Third, there is little to no burden on the City and CDP to produce these letters to the CPC, because they already routinely produce them to the United States and the Monitoring Team. Indeed, to partially resolve this matter, the United States offered to gather letters from its own email archive and return them to CDP for production to the CPC. CDP agreed to this proposal, thereby undercutting its scope argument, but shifting the City's burden to produce data to the CPC. While CDP has provided the CPC with the 2019 and 2020 letters compiled by the United States, it still refuses to provide the CPC with discipline letters going forward, although it is willing to allow the Monitoring Team to provide them to the CPC.[2] The CPC, the Monitoring Team, and the United States have asked CDP to simply add the CPC to the email distribution

---

[1] *Ohio ex rel. Multimedia, Inc.* v. *Snowden*, 72 Ohio St. 3d 141, 142 (1995) (police records reflecting discipline are not exempt from disclosure under Ohio public records law).

[2] The temporal scope of the CPC's request remains in dispute. CDP offered to provide the letters from 2019 forward if the CPC would agree to drop its request for earlier letters; the CPC agreed to accept 2019 and later letters in order to begin work on the project for which it will use them, but explicitly stated that it was not waiving its request for earlier letters. The CPC indicated that one of its interests was in how CDP was applying aggravating and mitigating circumstances when sanctioning officers. Upon learning that CDP had not begun doing so until 2019, the CPC agreed, for now, to limit its request to letters to the period from 2019 forward.

5

that it uses to provide the letters to the United States and the Monitoring Team, but CDP has refused. CDP's refusal to provide the CPC directly with information CDP agrees it can receive through other, less efficient channels, undercuts any argument that producing these letters is inappropriate or unduly burdensome. The Court should order the City and CDP to produce the disciplinary letters to CPC on an ongoing basis going forward.

### b. The City and CDP Have Unreasonably Delayed Providing Information to the CPC.

The City and CDP have failed to respond to numerous requests for information from the CPC within a reasonable period of time, undermining the CPC's ability to fulfill its role under the SA and effectively depriving the CPC of its right to access information that is guaranteed by Paragraph 19 of the SA. As discussed below, the City's and CDP's unreasonable delay in producing this information has become a pattern that warrants intervention from the Court.

Presently, there are two CPC information requests that have been outstanding since March 2021. First, on March 5, 2021 the CPC asked for information regarding CDP's memoranda of understanding with nine law enforcement agencies that operate within Cleveland, including the police departments from the major hospitals, school and university police, and Cuyahoga Metropolitan Housing Authority police. On April 16, 2021, the City stated that "CDP will provide appropriate responses" to those inquiries. On May 27, the CPC followed up on its request, asking when a response could be expected. To date, nearly four months later, CDP has not provided responses. Second, on March 18, 2021 the CPC requested data on the number of cases referred to Internal Affairs and how often those cases resulted in referral to prosecutors and in criminal charges against officers. On March 29, 2021 the City responded that this request was "being reviewed by the CDP for response." There has been no further communication from CDP on this request since then.

6

These outstanding requests are not the first time the City and CDP have failed to respond to CPC information requests within a reasonable time, even when it does not object to them. In June 2020, the CPC requested three sets of documents. First, CPC requested a list of court settlements or judgments in cases of alleged CDP officer misconduct. The City and CDP provided this over five months later, and only after a November 2020 meeting between the CPC, the Monitoring Team and the Parties to discuss outstanding CPC requests. Second, the CPC requested reports prepared by the Police Inspector General to date. Similarly, the City and CDP produced these more than five months later, following the same November meeting.[3] Third, the CPC asked for incident records involving police pursuits from 2017 through 2019. CDP provided state-mandated accident reports connected to pursuits within several weeks, but made no further response to this request until the November 2020 meeting between the CPC, Monitoring Team and Parties, and only then raised questions about the details of the CPC's request. Although CDP finally agreed to determine what pursuit data it could gather and turn it over, its failure to seek to clarify the request or produce the information resulted in a more than seven-month delay. Such delays significantly and unreasonably impede the CPC's ability to accomplish its work.

When the City and CDP do object to the CPC's requests, even when those objections are later determined to be baseless, the delays in producing the information are even longer, underscoring the need for a specific order setting forth a process by which these requests and objections can be resolved quickly and efficiently. For example, on June 15, 2020, the CPC's Research and Community Interaction Workgroup requested the number of homicides, rapes,

---

[3] Although some of the Inspector General reports were not written until August 2020, after the CPC's request, the majority of them are dated April 2020.

sexual assaults, and offenses against children reported in 2019 and 2020, as well as 2019 clearance rates for these crimes.  In a July 2020 email, the City responded that "this information does not fall under the purview of the CPC's responsibilities."  This information relates to CPC's mandate; SA paragraph 15(b) charges the CPC "to work with the many communities that make up Cleveland for the purpose of developing recommendations for police practices that reflect an understanding of the values and priorities of Cleveland residents," and paragraph 17(c) directs the CPC to "make recommendations for . . . strategies for CDP to consider to increase . . . community confidence in CDP."  Dkt. #7-1.  The frequency of violent crimes and CDP's ability to solve them is surely a priority for Clevelanders, and speaks directly to community confidence in CDP.  After further requests from the CPC, CDP ultimately provided the data in January 2021 and March 2021, still maintaining that such information "is not part of the CPC's mandate," but that CDP was nonetheless turning over the data "in the interest of providing information and transparency . . .."  CDP's meritless assertion that the CPC was exceeding its scope and its delay of over seven months in producing basic crime data impeded the CPC's ability to complete the project for which it had requested the information.

      These delays warrant specific guidance from the Court to enforce the CPC's right to access information under Paragraph 19 of the SA.  Specifically, the Court should order the City and CDP to produce all information requested by the CPC within 21 days of the receipt of the request, or to submit its objections to the request to the CPC, the United States, and the Monitoring Team.  If either the United States or the Monitoring Team disagrees with the City's and CDP's objections to the request within 7 days of the objection being made, the City will produce the information or it may petition the Court to resolve the dispute within 7 days after receiving notice of the disagreement.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court issue an order: (1) requiring the City and CDP to provide the CPC with the information set forth in Attachment A within 14 days; and (2) with respect to all future CPC information requests, setting forth a process to resolve these requests quickly and efficiently as proposed above.

Respectfully submitted,

| | |
|---|---|
| BRIDGET M. BRENNAN<br>Acting United States Attorney<br>Northern District of Ohio<br><br>*/s/ Michelle L. Heyer*<br>Michelle L. Heyer (OH: 0065723)<br>Assistant U.S. Attorney<br>United States Court House<br>801 West Superior Avenue, Suite 400<br>Cleveland, OH 44113<br>(216) 622-3686<br>(216) 522-2404 (facsimile)<br>Michelle.Heyer@usdoj.gov | KRISTEN M. CLARKE<br>Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Special Litigation Section Chief<br><br>*/s/ Timothy D. Mygatt*<br>TIMOTHY D. MYGATT<br>Deputy Chief<br><br>*/s/ R. Jonas Geissler*<br>R. JONAS GEISSLER<br>Trial Attorney |