UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:15 CV 1046 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is Plaintiff's Motion to
Enforce the Cleveland Community Police Commission's Right to Access Information (ECF No. 365)
and the City of Cleveland's Response (ECF No. 370) thereto. Additionally, before the court with
respect to said Motion is the Notice Submitting Monitor's Recommendation Regarding the United
States of America's Motion To Enforce (ECF No. 374), as requested by the court, the United States's
Reply in Support of Motion (ECF No. 373) and the City of Cleveland's Response to the Notice
Submitting Monitor's Recommendation. (ECF No. 375.) For the reasons stated below, Plaintiff's
Motion is granted on the terms and conditions explained herein.

The court notes that this is the first time in the history of the Consent Decree that it has been
called upon by either party to interpret its terms.  Here, the United States maintains that the City and
its Department of Police ("CDP") have significantly delayed providing or, in some cases,  refused
to provide information to the Cleveland Community Police Commission ("CPC") that it needs to
effectively perform its duties as established by the Consent Decree. (*See generally* Pl.'s Mot. at

PageID #7898, ECF No. 365.)  It requests that the court enter an order enforcing the right of the CPC to receive information under Paragraph 19 of the Consent Decree. Specifically, it seeks the following relief:

> an order: (1) requiring the City of Cleveland and the CDP to provide the CPC, within 14 days, the information the CPC has requested previously, which is set forth in Attachment A; and (2) with respect to all future CPC information requests, setting forth a process to resolve these requests quickly and efficiently. . .

(*Id*. at PageID #7899.)The City responded that some of the documents requested by the CPC are outside of their mandate. (Def.'s Opp'n to Pl.'s Mot. at PageID #7947, ECF No. 370.) However, in a spirit of cooperation, it has agreed to provide some of those documents. It also maintains that some of the requests have been extremely burdensome. (*Id*.)

The CPC was established under the Consent Decree as a way "[t]o leverage the experience and expertise of Cleveland, and to ensure that CDP recognizes and operates in a manner consistent with cooperative community engagement and understanding."  (Pl.'s Mot. at PageID #7899, ECF No. 365.) Its mandate was threefold: (1) to make recommendations to the City and Chief of Police regarding "policies and practices related to community and problem-oriented policing, bias-free policing, and police transparency"; (2) work with the various communities of Cleveland in order to make "recommendations for police practices that reflect an understanding of the values and priorities of Cleveland residents"; and (3) "to report to the City and community as a whole and to provide transparency on police department reforms." (*Id*.)  The Consent Decree also spells out certain activities that the CPC should engage in when carrying out its mandate. In addition, the Commission is given authority to:

> Review and comment on CDP's policies and practices related to the

> use of force, search and seizure, and data collection and retention;
>
> Review and comment on CDP's implementation of initiatives and programs, and activities that are intended to promote reform; and hold public meetings to discuss the Monitor's reports and receive community feedback concerning CDP's compliance with the Agreement.

(*Id*.) Paragraph 19 of the Consent Decree provides that the City shall "provide access to all information requested by the Commission related to its mandate, authority, and duties unless it is law enforcement sensitive, legally restricted, or would disclose a personnel action." (*Id*. at PageID #7900.)

The information sought by the Commission most at issue has to do with requests by the Commission of letters sent to officers summarizing the result of disciplinary hearings. (*Id*. at PageID #7901.) The City has provided letters of this type to the CPC for 2019 and 2020,  but has indicated it will not do so going forward. (*Id*.) The City indicates that providing the documents would be burdensome. (*Id*.) However, the United States indicates that these letters are routinely provided to the United States and the Monitoring Team and could be easily provided to the CPC at the same time. (*Id*.) Further, the City has already indicated its willingness to allow the Monitoring Team to provide the documents to the CPC. (*Id*.) The City also indicates that providing the letters "would disclose a personnel action" and thus are not required to be produced under Paragraph 19. (*Id*. at PageID #7900.)  Based on the information before the court, it does not find the production of these documents to be burdensome going forward. The court also does not find the City's argument  that providing the information to the CPC would "disclose a personnel action" within the meaning of Paragraph 19. The parties agree that these are public records. Therefore, the information contained in them would not be otherwise confidential.

-3-

The remaining issue is whether the requested information relates to the "mandate, authorities and duties" of the CPC. The United States maintains that the mandate of the CPC is broad, and the documents requested are within the areas of their authority and responsibilities. (*Id*. at PageID #7901.) On the other hand, the City maintains that the CPC's mandate is not broad enough to encompass a requirement that requested records be provided. In support of its argument that the CPC has a broad mandate, the United States argues that the CPC is given the authority under the Consent Decree to make "recommendations...on policies and practices...related to police transparency on police reforms." (*Id*.)

They maintain that the outcome of officer disciplinary hearings are directly related to police transparency. (*Id*.) Thus, the reporting of the results to the community will provide transparency on police reforms. (*Id*.) The United States argues that this is especially the case when discipline was imposed in an area that is specifically covered by the Consent Decree, such as in the area of use of force, bias-free policing, searches and seizures, or community and problem-oriented policing. (*Id*.) The City argues more broadly that one of the CPC's specific duties is to "review and comment on CDP's implementation of initiatives, programs, and activities that are intended to support reform." (*Id*. at PageID #7902.) Since key areas for reform under the Consent Decree are discipline and accountability, the CPC's receipt and assessment of information on discipline would be important to fulfilling that duty. The Monitor, in his submission, endorses the United States's position, maintaining that the CPC is given that role under the Consent Decree. (*Id*.) The City maintains that "[t]he CPC was created to provide a forum and voice for the many Cleveland communities," and to make recommendations regarding the specific areas of community and problem-oriented and bias-free policing. (Def.'s Opp'n to Pl.'s Mot. at PageID #7945, ECF No. 370.) However, it places

-4-

significant emphasis on the community interface of the CPC's work, and does not believe that the provisions of the Consent Decree may be properly read to require the City to provide the requested documents. (*Id*. at PageID #7947.)

After considering the parties' arguments and considering the relevant language of the Consent Decree, the court finds the position of the United States to be well-taken.  The CPC is given a broad role under the Consent Decree which requires both interfacing with the community and evaluating and offering input to the City on the various areas of reform it is undertaking pursuant to the Consent Decree.  Thus, there is a wide range of data that might be potentially relevant to carrying out its role.  Further, the court finds that the disciplinary information requested is relevant to carrying out the CPC role under the Consent Decree for the reasons asserted by the United States. The court also finds that the two other requests which the United States asserts that the CPC has made and which have gone unfulfilled are relevant to the work of the CPC: (1) information regarding  the CDP's memoranda of understanding with nine law enforcement agencies that operate within the City of Cleveland and related information as set out in Attachment A of the City's Proposed Order; and (2) information regarding the number of cases referred to Internal Affairs and how often those cases resulted in referral to prosecutors and in criminal charges against officers and related information also as set out in Attachment A to the Proposed Order. The City does not seem to deny the relevance of much of this information,  but maintains that it has provided some of the information and that the requests of the CPC are burdensome. (*Id*.)

The court finds, after weighing the City's burden of producing the requested information against the relative importance of the information to CPC's mandate, duties and responsibilities, that the documents should be produced. Knowing what the City's agreements are through memoranda

of understanding with other police entities in the City could impact use of force and community policing within the City,  among other issues. The information regarding Internal Affairs cases and related issues clearly relate to issues of discipline, use of force and other issues under the Decree.

This does not mean that there are not practical limits to what must be produced to the CPC, even if the information sought might arguably relate to carrying out its mandate, duties and responsibilities. In this regard, the court urges the CPC to use sound discretion in determining: (1) those areas where it can best contribute to the City's compliance efforts; and (2) what is of importance to report to the community.  Likewise, it should use sound discretion, placing appropriate limits on itself when making requests for documents and other information. While the CPC is given an  important role under the Consent Decree, the City must not be so inundated by such requests  that they impede its ability to carry out its important work. Consequently, the court agrees with the United States that a process for handling requests should be instituted, as well as a process for resolving disagreements between the City and the CPC.  Therefore, the court hereby adopts the recommendation of the United States as to how these matters should be handled.

It is hereby ORDERED as follows:

The City of Cleveland and the CDP will produce to the CPC within 14 days all of the information identified in Attachment A hereto.

The City and the CDP shall provide all information within 21 days of receipt of a future request for information from the CPC, or such other deadline as agreed upon with the CPC, the United States, and the Monitoring Team.

If the City and CDP object to a future request for information from the CPC, they will submit their objections to the CPC, the United States, and the Monitoring Team within 7 days of receipt of

the request. If either the United States or the Monitoring Team disagrees with the City's and CDP's objections to the request within 7 days of the objection being made, the City will produce the information or it may petition the Court to relieve it of its obligation to produce the information within 7 days after receiving notice of the disagreement.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

September 3, 2021

ATTACHMENT A
TO ORDER REGARDING THE
CLEVELAND COMMUNITY POLICE COMMISSION

1.     From 2019 forward, all letters sent to Cleveland Division of Police (CDP) personnel following disciplinary hearings before the Chief of Police (or designee) or the Safety Director (or designee) setting forth the outcome of the hearing and any discipline or corrective action imposed;

2.     Regarding an amendment to the original Memoranda of Understanding between the nine private agencies/police departments (Cuyahoga Community College, Cleveland Clinic Foundation, Cleveland Metropolitan Housing Authority, Cleveland State University, Cleveland Metropolitan School District, University Hospitals, Case Western Reserve University, Metro Health Medical System, and University Circle Incorporated) on compliance with the Settlement Agreement entered into by the City of Cleveland and Department of Justice:

      a.     Communication from CDP to the nine agency/police departments regarding the nine police departments' implementation of use of force, crisis intervention, bias-free policing, investigatory stops, and searches and arrests policies for the years 2018, 2019, 2020, and 2021;

      b.     Communications from the nine agency/policy departments to CDP regarding their implementation of policies pertaining to use of force, crisis intervention, bias-free policing, investigatory stops, and searches and arrests policies for the years 2018, 2019, 2020, and 2021;

      c.     Communication from CDP to the nine agencies regarding applicable CDP training or comparable training that the nine agency/police departments are obligated to provide to their personnel for the years 2018, 2019, 2020, and 2021;

      d.     Queries from CDP to each of the nine agencies/police departments requesting reports of training provided to each of its personnel in the above listed subjects for the years 2018, 2019, 2020, and 2021;

      e.     Reports provided to CDP by each of the nine agency/police departments of training records pertaining to the above subjects for the years 2018, 2019, 2020, and 2021;

      f.     Reports provided to CDP by each of the nine agency/police departments of how many of their officers completed the required training in 2018, 2019, 2020, and 2021.

-8-

3.     For years 2017, 2018, 2019, & 2020:

      a.     The number of matters referred to Internal Affairs;

1.

      b.     The number of investigations opened by Internal Affairs;

      c.     The number of alleged officer criminal conduct cases referred to prosecutors, and the prosecutor referred to (County or City);

      d.     The number of cases accepted by prosecutors.