**Previous Sections 115 and 119 redlined to show changes made by November 2, 2021 Amendments.  Deletions appear as ~~strikeout~~, additions appear as <u>underline</u>**

§ 115~~-~~ General Provisions

~~—~~ The City shall maintain a Police Force and Fire Force, and the Mayor shall be executive head of both forces. If these Forces are or shall be placed in a department in accordance with the provisions of Section 77 of this Charter, the director of this department shall be their executive head under the direction of the Mayor.
(Effective November 9, 1931)

§ 115-1~~-~~ Office of Professional Standards

~~—~~ There ~~shall~~<u>will</u> be ~~in~~ <u>within and report to</u> the ~~office of the executive head of the police force~~ <u>Civilian Police Review Board</u> an Office of Professional Standards, consisting of ~~one or more~~ investigators appointed by the <u>Board. The Board may appoint the Office's Administrator, in conformity with the Charter's civil-service provisions. The Office's Administrator may not be a current or former Cleveland police officer or Division of Police employee.</u>
<u>The Office of Professional Standards will not be under the direction and control of the</u> executive head of the <u>police force and the Chief of Police, and will report to the Board. The Chief,</u> police force, ~~an administrator, and the Police Review Board. The~~ <u>and</u> executive head of the police force ~~may designate an officer of the police force to administer the Office of Professional Standards, or an employee appointed to the position~~<u>must provide all assistance that the Board and Office</u> of Professional Standards ~~Administrator in conformity with the civil service provisions of this Charter~~<u>request to enable the Board and Office to carry out their duties. This includes prompt production of all information and records requested, in no case in more than 30 days</u>.
(Effective November ~~4, 2008~~<u>2, 2021</u>)

§ 115-2~~-~~ Civilian Police Review Board

~~—~~ The Civilian Police Review Board shall consist of nine ~~(9)~~ members who ~~are representative of the~~<u>represent</u> Cleveland's diverse communities ~~within Cleveland. Five (5).~~ <u>The Mayor will appoint five</u> members ~~shall be appointed by the Mayor. Four (4) members shall be appointed by~~. Council~~. Each~~ <u>will appoint four members. The Mayor and Council must fill vacancies within 60 days of when they arise. No more than one Board member may be a resident</u> of the <u>same</u> police <u>district, unless the City establishes fewer than nine</u> districts ~~shall be represented by at least one (1) citizen who resides in that district.~~<u>. At least two members should be attorneys with experience representing victims of police misconduct or criminally prosecuting police misconduct.</u> At least one <u>Board</u> member ~~of the Board shall~~<u>should, where reasonably feasible,</u> be between the ages of 18 and 30 at the time of appointment ~~and may be among the members appointed by either the Mayor or the Council. No member of the Board shall~~<u>. No Board member may</u> be employed currently as a law-~~-~~enforcement officer and no member ~~shall~~<u>may</u> be a current or former employee of the Cleveland Division of Police. Vacancies during a term ~~shall~~<u>will</u> be filled in the same manner as original appointments for the unexpired term. Within 30 days of any <u>Board</u> vacancy ~~on~~

**Exhibit B**

the Board, including vacancies caused by the end of a term, the City shallmust post an announcement of any vacancy and a request for applications to fill any vacancy. Members shallmust be chosen from among the applicants.

 The  Board members of the Civilian Police Review Board holding the office as of thethis Section's effective date of this section may continue in office for the remainder of their terms recognizing that all of the police districts may not be represented until the service of those members is completed. The two additional members shall be appointed by Council and their terms shall commence on February 7, 2017. The next two vacancies following the effective date of this section, whether for a new term or an unexpired term, shall be filled by Council. Terms of office for members of the Board shall be for four , and those and previous terms will count toward term limits established in this section. Board members' terms of office will be four years. No member may serve for more than two four-year terms when the second term begins less than four years after the end of the first term. However,But a person may be eligible for appointment four years after the end date of the second term. Time spent fulfilling an unexpired term of two years or less shallwill not be considered as part of the two consecutive terms.

— The executive head of the police forceMayor may remove any Board member of the Board, upon notice and hearing, for malfeasance, misfeasance, nonfeasance, or gross neglect of duty or malfeasance in office.

— All Board members of the Board shallmust participate in initial and annual training on topics relevant to theBoard duties of the Board.

 Members of the  Board shallmembers will receive compensation as may be established by the Council must establish.

— The Civilian Police Review Board shalland its Office of Professional Standards will have its own budget separate from the budget for the Department of Public Safety Administration.Safety's budget. The person in charge of administering the Board and its Office of Professional Standards shallmust receive a budget totaling at least 1.0% of the budget allocated to the police force. The Professional Standards Administrator will oversee the budget on behalf of, and with guidance from, the Board.

— The Board shallwill designate annually one member of the Boardits members to serve as its chair and one member to serve as its vice chair. No person shallwill serve more than two consecutive one-year terms in each position, but, except as further provided, may be eligible for appointment two years after the end date of the second term. A person may be eligible to serve in one of the positions for up to two consecutive one-year terms consecutive to service in the other position, but then may not serve in either position for two years after the end date of the term for the second position even if service in the first or second position was less than two years.

— The Board shall appoint personnel as its staff as it deems necessary.

(Effective November 8, 20162, 2021)

§ 115-3 . Board's Powers and Duties of Board

— The Civilian Police Review Board shallwill receive, cause investigation of, and recommend resolution of complaints filed with it, or on its own complaint based on information that comes to its attention, alleging misconduct by members of the Cleveland

police forceofficers or Division of Police employees, when such misconduct is directed toward any person who is not a member of that police force.officer or Division of Police employee. The misconduct complained ofalleged may include, but need not be limited to, the use of excessive or deadly force. The Board shallwill perform such other duties not inconsistent with thethis Charter's other provisions of this Charter, as may be required by the executive head of the police force. On its own complaint, may request.

  It is not a proper consideration for the Board and its Office of Professional Standards to choose not to investigate particular allegations of police officer or Division of Police employee misconduct based on the fact or belief that another investigative agency, including the Division of Police's Office of Internal Affairs, or that some other non-federal law-enforcement agency, is investigating, or has already investigated and concluded that no misconduct or something less serious than the misconduct a complainant alleged took place. The Board may cause investigation of incidents involving the use of deadly force by membersand its Office of Professional Standards must never defer to the police force and incidents resulting in the injury or deathDivision of persons in the custodyPolice or outside, non-federal law-enforcement authorities in investigating allegations of the police force.misconduct and must act independently, consistent with their mission of exercising civilian control and accountability over the police force.

 In order to  To carry out its functions, the Board or any person authorized by it may compel the attendance of witnesses and the production of books, papers, and other evidence, and for that purpose may issue subpoenas or attachments, to be signed by the chairman of the BoardBoard's chair, which shallwill be served and executed by any officer authorized to serve subpoenas and other processes. The Council shallwill provide by ordinance the penalty or penalties for contempt in refusing to obey any such subpoenasubpoenas or to produce such books, papers, and other evidence. If the Council does not do so, the Board may establish such penalties.

 Subject to the approval of the executive head of the police force, the Police Review  The Board shallwill make rules providing for theits procedure of the Board and for the review of complaints filed with it. Rules of the Commission and amendments thereto shall take effect fifteen (15) days after their publication in the City Record.

(Effective August 8, 1988November 2, 2021)

§ 115-4  Investigation and Disposition of Complaints

 Under  Without interference from the general directionChief of thePolice or executive head of the police force, and with the full cooperation of both, the officer or employee in charge of administering the Office of Professional Standards shallmust cause, for the Board's benefit, a full and complete investigation to be made of each complaint filed with the Board, except complaints which relate to matters or occurrences that are the subject of pending criminal proceedings.. The investigation shallneed not be confined to matters set forth in the complaint. Upon completion of an  and may expand based upon facts and allegations uncovered in the investigation. Upon an investigation's completion, the administrator shallwill prepare a report and submit the report to the Police Review Board for its review and disposition.

 Prior to  Before recommending action on a complaint or to determining that a complaint warrants no action, the Board may, in its sole discretion, hold a hearing, pursuant tounder

its rules. Any decision or deliberation about whether to act or not act on a complaint must take place in an open meeting.

— If the Board decides that the complaint should be resolved by promulgation or amendment of rules and regulations established by facts found in an investigation suggest that the executive head of the police force pursuant to Section 116 of the Charter and Chief of Police should promulgate or amend policies, rules, and regulations, the Board shall should submit its recommendation and reasoning to the executive head of the police force and shall Chief, with a copy to the Community Police Commission, and must notify the complainant of its disposition of his complaint that it has done so.

— If the Board decides that disciplinary action discipline should be taken against any of imposed on the officers or employees under the Chief of Police's management and control of the Chief of Police, the Board shall will submit its fact findings and recommendation to the Chief of Police. Within ten days after receipt of the Board's. The Chief and executive head of the police force must presume to be correct and defer to the Board's fact findings and recommendations, absent affirmative proof by clear-and-convincing evidence that the findings and recommendations are clearly erroneous. Absent such proof, within ten days after receiving the Board's fact findings and recommendation, the Chief of Police shall - the Chief or executive head of the police must impose at least the minimum discipline that the Board has recommended.

If the Chief or executive head of the police force believes that clear-and-convincing evidence exists that would justify disregarding or modifying the Board's fact finding and disciplinary recommendations, within ten days after receiving the Board's fact findings and recommendation, the Chief or executive head of the police force must notify the Board in writing whether he has decided to suspend the officer or employee, pursuant to Section 119 of this Charter, and, if so, the period and the cause of the suspension. If the Chief decides to suspend the officer or employee and the Board concurs of any refusal or lesser, alternative discipline to be imposed, detailing the reasons and providing the Board with the Chief as to the period and cause of the suspension, the Chief shall proceed to suspend the officer or employee in accordance with Section 119 of this Charter. If the Chief decides not to suspend the officer or employee, or if the Chief decides to suspend the officer or employee but the Board does not concur with the period clear-and-convincing evidence justifying the decision. Precedents, patterns or cause of suspension decided upon by the Chief practices, and discipline predating this Section's effective date cannot constitute clear-and-convincing evidence justifying any decision by the Chief or executive head of the police force to impose lesser discipline than what the Board recommends, or no discipline.

If the Board then does not agree with the Chief's or executive head of the police force's refusal or alternative discipline, the Board, notwithstanding the any provisions of Section 119 of this Charter to the contrary, may suspend the officer or employee. Irrespective, in its discretion, overrule the Chief or executive head of the police force, and order either of them to discipline the officer or employee, up to and including termination. The Chief or executive head of the police force must then comply. Regardless of whether the Board suspends orders the officer or employee employee's suspension for ten working days or less, the board Board shall forthwith certify in writing the fact, together with the cause of the suspension discipline, to the executive head of the police force, who shall will proceed in

accordance with the provisions ofas may be required under Charter Section 119 of, but consistent with this Charter. Section.

The Board shallmust promptly notify complainants of the complainant of itsstatus, progress, and disposition of his complaint.

their complaints. If the Board determines that the complaint warrants no action, the Board shall so notify the complainant. The Board will ensure, through the Department of Law as appropriate, that complainants' viewpoints are heard in any arbitration process following discipline.

Termination will be the presumed discipline for racist, sexist, anti-LGBTQ+, anti-immigrant, national-origin-based, or otherwise bigoted conduct, slurs, or language used in the course and scope of employment, or, if the officer or Division of Police employee's language is on a matter of public concern, where that officer or Division of Police employee's interest in commenting on matters of public concern does not outweigh the City's interests, as an employer, in promoting the efficiency of the public services it performs through its employees. The pertinent considerations for weighing these interests include whether the language (1) impairs discipline by superiors or harmony among co-workers, (2) has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, (3) impedes the performance of the officer or employee's duties or interferes with the regular operation of the enterprise, or (4) undermines the City or Division of Police's mission.

In assessing the first consideration, City officials must consider the possibility that inaction by the City could be seen as an endorsement of the speech and impair future discipline of similar derogatory statements. In assessing the second consideration, City officials must consider whether the language is reasonably likely to have a detrimental impact on close working relationships within the police force or undermine trust. In assessing the fourth consideration, City officials must consider the need for the City to preserve the appearance of impartiality, the role and responsibilities of the officer or employee, and, when the role is public facing, whether the danger to successful functioning of the Division of Police will increase. This includes making a reasonable prediction about whether the language, when known to the public, would harm the Division of Police's mission; or undermine the community's respect, trust, or perception that the police enforce the law fairly, even-handedly, and without bias.

Notwithstanding the above provisions, consistent with Charter Section 115-5, the Community Police Commission, at its discretion, has the authority to make the final decision for the City about whether to impose officer discipline where it was not imposed, or to increase discipline when the Commission deems it insufficient. The Chief, executive head of the police force, and the Board must notify complainants of their right to seek ultimate review by that Commission.

Nothing in this Section may be interpreted as depriving city employees of due process.

The Chief, the executive head of the police force, the Board, and Community Police Commission must timely and consistently notify complainants about, and afford complainants, the right to be heard in every step of the disciplinary process, without limitation, from investigation, and through hearings, reviews and internal appeals,

arbitrations, and court proceedings. Complainants cannot be excluded from being informed about or from being heard during these processes, and have a right to intervene.

  The Board, complainants, and any City taxpayer may take legal action to enforce all terms in all Charter sections related to the Board. The Board may opt, if it deems the Director of Law to have a conflict of interest, to engage outside counsel at the Department of Law's expense.

(Effective November 2, 2021)

§ 115-5  Community Police Commission

  Voter findings. The voters of the City of Cleveland find, based on continuing, serial instances of police misconduct, that there is a need to significantly strengthen civilian oversight of the police force, and to hold the police force more accountable; strengthen the police reform initiated by, but grossly insufficient in, the Consent Decree in United States of America v. City of Cleveland, U.S. District Court for the Northern District of Ohio Case No. 1:15-cv-2046; institutionalize cultural change within the Division of Police; and reform the arbitration process by which unelected arbitrators who do not reflect the values, concerns, or diversity of the community - and who themselves often do not live in the community and therefore do not personally bear the burden of any problematic police practices - routinely undermine police accountability by reducing or reversing disciplinary decisions.

  Commission. The Community Police Commission ("Commission") is permanently established as an independent municipal commission, with an executive director nominated by the Commission and appointed by the Mayor.

  Commission membership, eligibility, and appointment categories. The Commission will consist of 13 persons broadly representative of the racial, social, economic, and cultural interests of the community, including those of the racial-minority, immigrant/refugee, LGBTQ+, youth, faith, business, and other communities, to reflect the overall demographics of Cleveland residents. At least two Commission members must represent community organizations focused on civil-rights issues. At least one Commission member must be, represent, or be knowledgeable of, as applicable, the issues of those who are limited-English speakers, homeless, or who have mental-illness and substance-abuse disorders; those who have been directly impacted by police violence, or be a family member of a person who has been killed by police; those who have been incarcerated and exonerated where police were involved in the wrongful conviction or incarceration; gun-violence survivors or be a family member of a person killed by gun violence; an attorney with experience representing victims of police misconduct or criminally prosecuting police misconduct. A single Commission member may fulfill more than one of the above categories. Where feasible, the Mayor will seek to appoint at least one member between the age of 18 to 30 at the time of appointment.

  With the exception of no more than three police-association representatives, described below, no member may have served within the five years before appointment as a law-enforcement officer, have ever been an employee of the City's Division of Police or Department of Public Safety, or otherwise have been a City employee within the previous year. The Mayor may appoint no more than three representatives of police associations, including racial-or-ethnic-minority police-labor associations, or these associations' successors recognized by the City. These police-association representatives must have a

background relevant to police-community relations and demonstrated connection to their respective associations' membership, and no representative may have a record of police misconduct (whether adjudicated or not), or career records or personal history meriting designation or disclosure under Brady v. United States or Giglio v. United States and their caselaw progeny.

  Appointment process and vacancies. The Mayor will appoint 13 members, with the approval of Council by majority vote, for four-year terms, following an open and fair application process.

  Three of the members the Mayor appoints will be nominated by Council and, when vacancies arise, the Mayor may designate categories from Subsection (c) above for nomination by Council.

  Note: The reference to "Subsection (c) above" was set forth in the language adopted by the voters. As adopted, this section did not contain subsection markers, and the editor has no discretion to revise adopted Charter language.

  The Mayor must fill Commission vacancies within 60 days of when they occur. At least 30 days before the process begins, the City must solicit recommendations for membership from community organizations who have interest in police oversight, and post applications prominently on the City's website, City Council website, and through local print, television, radio, and digital media. For appointment of the first Commission after this Section's effective date, the Mayor will divide the appointees into two classes. The first class of seven will have four-year terms and, for the first term only, the second class of six will have a two-year term. After that, all classes will have four-year terms so that approximately half of Commission members are appointed every two years. No Commission member may serve more than four, full, four-year terms.

  Removal.

  Non-police-association-representative members. The Mayor may remove any Commission member for malfeasance, misfeasance, nonfeasance, or gross neglect of duty, but must afford any non-police-association-representative Commission member an opportunity for a public hearing before the Mayor, within 30 days after the Mayor has given such member written charges, with a copy filed with the Clerk of Council. An accused non-police-association-representative member will be permitted to respond to the charges in person or through counsel, and have the right to subpoena and present evidence, including documents and witnesses. Removal by the Mayor will be final unless not later than the third meeting of Council after the removal, Council disapproves the removal by an affirmative, two-thirds (2/3) vote of the members elected to Council. There will be no requirement that there be three readings of a resolution to reject the Mayor's removal of the member.

  Police-association-representative members. The Mayor may remove any police-association-representative member with or without cause. Likewise, by a simple majority vote of only non-police-association-representative members, the Commission may remove any police-association-representative member, with or without cause. Consistent opposition to police accountability and the Commission's mission and duties should cause such removal.

  Vacancies. Vacancies during a term will be filled in the same manner as the original agreed selection process for the unexpired term. Within 30 days of any vacancy on the Commission, including vacancies caused by the end of a term, the City will post an announcement of any vacancy and a request for applications, widely disseminating the information. The Mayor must choose from among the applicants without delay.

  Chair. The Commission will select its own chair from among its members by a majority vote, using, at its discretion, a run-off process or rank-order voting should there be more than two candidates for the position.

  Duties and Authority of the Commission. The Commission will respond to community needs and concerns regarding regulation of the City's police force and community-police relations through duties including, but not limited to, the following:

  Serving as the final City authority on whether the discipline of police officers imposed or not imposed by the Chief of Police, executive head of the police force, or Civilian Police Review Board is sufficient, with the discretionary authority, with due process afforded to a subject officer, to order that the Chief and executive head of the police force increase discipline; and to order that they impose discipline where none was imposed. The Commission may, at its discretion, and upon notice, hold evidentiary hearings to review individual officer discipline following any proceedings and decisions by the Chief of Police, executive head of the police force, and, as applicable, the Civilian Police Review Board. Any order by the Commission to increase or impose discipline will be final and the chief and executive head of the police force must follow it.

  Ordering the Chief of Police to decrease discipline of police officers only in circumstances in which the Commission determines that the officer is facing retaliation for protected activity or for whistleblowing about misconduct within the Division of Police. With this exception, nothing in this Section will be construed as conferring a right by any officer to appeal that officer's discipline to the Commission.

  Interviewing and recommending candidates for police commander and inspector general to the Mayor.

  Compelling, through administrative subpoenas signed by the Commission's chair or Executive Director, the attendance of witnesses and the production of evidence, including, but not limited to, from within the City, that the Commission deems necessary for the performance of its duties. The Council may provide by rule the penalty or penalties for contempt in refusing to obey such subpoenas, and the Commission must do so if the Council has not.

  Having final authority over establishing the policies, applications, and examinations by which new police recruits must be sought out and recruited and screened, including screening for bias.

  Establishing bias-screening and training for existing police officers.

  Having final authority over police policies, procedures, and training regimens.

  Auditing and verifying police-officer training.

  Soliciting, gathering, compiling, organizing, maintaining, and generally updating information on individual police officers whose career records or personal history merit designation or disclosure even reasonably arguably advisable under Brady v. United States or Giglio v. United States and those cases' progeny; ensuring that the Division of Police and

municipal, county, state, and federal prosecutors disclose such information at the beginning of the discovery process in all criminal and civil cases in which such officers could be witnesses or are parties; making such information readily publicly accessible on the City's website; and publicizing and devising means of public accountability for failures in the Division of Police, by the Chief of Police, by the Department of Law, by the Cuyahoga County Prosecuting Attorney, or others to track, identify, maintain, organize, and disclose such information. The Commission must undertake this duty as to all current police officers, including information predating this Section's effective date.

  Directing the Civilian Police Review Board to independently investigate the conduct of every police officer against whom a lawsuit has been threatened or filed, or for whom the City has paid a settlement to obtain a liability release, or against whom there has been a court judgment for alleged misconduct.

  Proposing and advocating for legislation or regulations to Council, the State of Ohio, and other legislative and regulatory authorities, and offering views on the City's, Mayor's, Chief of Police, and Department of Public Safety's legislative agendas consistent with the purposes of this section.

  Engaging in community outreach to obtain the perspectives of community members, police organizations, and Division of Police employees on police-community relations, police policies and practices, the police-accountability system, and other matters consistent with the purposes of this section.

  Maintaining connection and collaboration with representatives of disenfranchised communities and with other community groups throughout the City, the Community Relations Board, police-district committees, and similarly arranged councils consistent with the purposes of this section.

  Providing Division of Police, Office of Professional Standards (OPS), Civilian Police Review Board (CPRB), Internal Affairs (IA), and other City law-enforcement and police-accountability entities with community feedback received through the Commission's public-outreach activities.

  Providing technical assistance to the Division of Police, OPS, IA, CPRB, and other City law-enforcement and police-accountability entities, consistent with the purposes of this section.

  Exercising independent judgment and offering critical analysis in the performance of their duties without interference or non-cooperation from any person, group, or organization including the Chief of Police, the Director of Public Safety, the Mayor, the executive head of the police force, other Division of Police employees, and other city officials. City employees who violate this provision may be subject discipline, or censure consistent with city and state laws.
to dismissal,

  Note: The paragraph above was set forth in the language adopted by the voters. The intended language was likely "... may be subject to dismissal, discipline, or....", but the editor has no discretion to revise adopted Charter language.

  Requesting and timely receiving, without the need for making a formal public-records request, from other City departments and offices including the Division of Police and

Director of Public Safety, information relevant to the Commission's duties that must be disclosed if requested under the Ohio Public Records Act.

  Reviewing policy, data, and records to advise the Mayor, the Director of Public Safety, the Chief, the Council, the Director of Law, OPS, the CPRB, and others on policing issues including, but not limited to, police-community relations, police accountability including OPS and CPRB operations, bias-free policing, search and seizure, officer training, police use-of-force policy, data collection and retention, and implementation of other initiatives, programs, and activities intended to support constitutional policing and continuous improvement of policing.

  Periodically publishing and distributing factual material, reports, recommendations, and notices as the Commission deems important within its purview as established above.

  Performing audits and broad investigations into investigative processes, including audits for quality assurance and adherence to policy and procedure of closed investigations and closed discipline cases of police officers and Division of Police employees.

  Identifying and proposing opportunities for systemic improvements in all aspects of police accountability, including, but not limited to, officer-complaint intakes; handling; investigations; use of alternate resolutions like supervisory coaching; mediation; or ordered training; timely notifications to complainants about investigative progress and results; timelines for investigation; discipline; disciplinary appeals; and Brady/Giglio-list protocols.

  Accessing un-redacted complaints against officers and unredacted files of all closed investigations, except for information required to be withheld from persons who are not members of criminal-justice agencies under the Ohio Public Records Act or the Ohio Personal Information Systems Act, as they may be amended.

  Consistent with federal and state law, protecting from disclosure confidential, non-public records to which the Commission has been provided access.

  Engaging outside legal services, at Department of Law expense, when the Commission determines, in its discretion, that there is a conflict of interest between the Commission's mission and representation from the city's Department of Law.

  Eliciting public comment on police policy issues.

  Making grants to community-based violence-prevention, restorative-justice, and mediation programs to reduce the need for police activity.

  Adopting and amending rules for the Commission's procedures, including selecting leadership and any additional articles sufficient for efficient and effective execution of its duties.

  Exercising, without limitation, other duties consistent with the Commission's broad purposes of exercising stronger civilian control and accountability over the Division of Police, that are consistent with the Charter.

  Full Cooperation by the Chief of Police, Division of Police, and Executive Head of the Police Force Required. The Chief of Police, all Division of Police employees, and the executive head of the police force must fully cooperate with the Commission in performing all of its duties. Failure to do so is a terminable offense and the Commission may seek injunctive relief for failures.

Compensation for Commissioners. The Council must establish annual compensation for Commissioners of no less than $7,200, adjusted annually by the Consumer Price Index, and reimburse reasonable Commission-related business expenses.

Executive Director and Staff. The Commission will nominate its Executive Director to be appointed by the Mayor. The Executive Director will be exempt within the Unclassified Civil Service and may not have ever been a Division of Police employee. The Mayor may only recommend the Executive Director's removal for just cause, subject to confirmation by a vote of 2/3 majority of the Commission. The Commission may also directly initiate removal with or without cause, with a 2/3 majority required for removal. The Executive Director will have at least one assistant and an additional minimum support staff of three classified, non-competitive positions. With support from the Department of Human Resources, the Executive Director will determine appropriate classifications and job descriptions based on operational needs. All such appointments, except one assistant, will be made in conformity with civil-service rules. No Commission employee may have ever been a Division of Police employee.

Duties of the Executive Director. Under the Commission's direction, the Executive Director will have the authority and responsibility to:

Oversee and manage the functions of the Office of the Commission to advance the Commission's mission and perform other public duties as the Commission may prescribe.

Hire, supervise, and discharge employees of the Office of the Commission. Employees of the Office of the Commission will collectively have the requisite credentials, skills, and abilities to help fulfill the Commission's duties set forth in this section.

Execute, administer, modify, and enforce such agreements and instruments as the Executive Director may deem necessary to implement programs and carry out the Commission's duties; apply for grants and donations for Commission programs; and solicit and use volunteer services.

Represent, together with Commissioners, the Commission in providing testimony and expertise to other city departments and offices, commissions, and other organizations regarding issues of constitutional policing.

Create an annual budget and advocate for operational resources. The City will provide additional staff and resources not outlined in this section that it deems sufficient to enable the Commission to perform its duties.

Manage the preparation of the Commission's proposed budget, and submit an annual budget request to the Mayor. The Mayor and Council will appropriate the Office of the Commission's budget in a budget-control level independent of any other City department. The Director of Finance may review the budget request for lawfulness and reasonableness and make recommendations for improvement to the draft budget. No person in the executive branch will exercise discretionary authority to make changes to the proposed budget to which the Commission does not agree. Commissioners and the Executive Director may advocate for resources directly to Council members or the Council during the budget process and throughout the year.

Authorize necessary expenditures, and enter into contracts for professional and other services in accordance with the adopted budget, develop and manage programs, and undertake authorized activities.

Serve as Secretary of the Commission and of any advisory committee or subcommittee the Commission may create.

Regarding regulation of the City's police force and community-police relations: maintain contacts with all community groups concerned with constitutional policing, social justice, and public safety, including police associations; report to the Commission regarding these groups' activities; and serve as a source of accurate and reliable data on issues in the field of community policing, law enforcement, social justice, and racial justice.

Implement the Commission's decisions and, on the Commission's direction, work in cooperation with other City departments, on improvement of law-enforcement services and police accountability; work to remove inequalities that may be related to minority-group or other status related to law enforcement and related matters; conduct educational activities, institutes, meetings, and prepare reading materials, that will lead to better community-police relations.

Exercise such other and further authority and duties as this Section prescribes.

Budget. The Commission's annual budget may not be less than $1,000,000, adjusted annually under the federally established Consumer Price Index (CPI), unless the Commission itself requests a lower budget. Council must increase the Commission's budget by the greater of the CPI or the percentage of increases in the Division of Police's budget. In addition to the amount above (as it may be adjusted), the Commission will receive a budget for its grantmaking to community-based violence-prevention, restorative-justice, and mediation programs that is at least 0.5% of the amount budgeted for the Division of Police.

Open Meetings and Public Comment. Commission meetings will be open to the public, consistent with the Open Meetings Act. The Commission will afford reasonable opportunity for public comment at its meetings.

This Section Controls. Where conflicts exist, this Charter Section supersedes and controls over any previously adopted provisions in the Charter, Cleveland Codified Ordinances, or collective-bargaining agreements.

Consent Decree modification. Upon the effective date of this Section and other police-reform-related Charter sections amended or adopted with it, the Director of Law will move the U.S. District Court to modify the federal Consent Decree in United States v. City of Cleveland to incorporate the amended and new sections and ensure that the voters' intentions are given full effect. If the Director of Law does not file such a motion within 30 days after this Section is adopted, then any City taxpayer is authorized and has standing to do so without making further demand upon the Director of Law as may otherwise be required by the Charter or Ohio law. Until the Decree is modified to incorporate the amended and new sections, the Commission will prioritize fulfilling duties required under the Decree over the additional duties this Section establishes.
(Effective November 2, 2021)

§ 119-1  Discipline of Police.
The Chief of Police will have the exclusive right to discipline, including suspend, demote, or terminate any of the officers or employees who are in the classified service and are under their respective management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the proper

authority, malfeasance, misfeasance, nonfeasance, or for any other just and reasonable cause. Prior, subject to suspendingthe higher authority of the Civilian Police Review Board and the Community Police Commission established in the Charter. Before disciplining any officer or employee of the police force, the Chief of Police shallmust ascertain whether a complaint on file with the Civilian Police Review Board relates to the conduct of the officer or employee in question. If so, the Chief of Police shallmust not suspenddiscipline the officer or employee unless the Civilian Police Review Board concurs with the Chief'sChief's decision, in accordance with Section 115-4 of thisthe Charter.

—_If the Chief of Police or the Chief of Fire suspends an officer or employee under his control for a period not to exceed ten (no more than 10) working days, the Chief'sChief's decision shall be final, subject to the higher authority of the Civilian Police Review Board and Community Police Commission as specified in the Charter.

—_If the Chief of Police demotes, terminates, or Chief of Fire suspends for more than 10 working days any officer or employee under his control for more than ten (10) working days, the Chief concerned shallmust forthwith in writing certify the fact, together with the cause for the suspension, to the director of the department to whom he may be responsible, or if there be no such director then to the Mayor, who within five days from the receipt of such certificate shall, either personally or through a hearing officer appointed by the Director or the Mayor, hold a hearing into the cause of the suspension in accordance with the requirements of due process of law and render judgment thereon, which. This judgment, if the charge beis sustained, may be suspension, reduction in rank, or dismissaltermination, and such judgment shallwill be final, except as otherwise hereinafter provided. in this Section and subject to the review and higher authority of the Civilian Police Review Board and Community Police Commission specified in the Charter. If a hearing officer is used, and the Mayor or the Director of the department to whom the Chief may be responsible shall promptly, upon receipt ofreceiving the hearing officer'sofficer's report and recommendations, must promptly review the report and recommendations of the hearing officer and render a decision. The Director or the Mayor shallwill cause to be filed with the Civil Service Commission a copy of the written certification of suspensiondiscipline by the Chief and the cause giving rise to such suspension, the hearing officer'sofficer's report and recommendations, and the decision of the Mayor or the Director to be filed with the Civil Service Commission. The Director or a hearing officer in any such hearing shall have the same power to administer oaths and secure the attendance of witnesses and the production of books and papers, as is conferredthis otherwise Charter confers upon the Mayor, or the Council, or a Council committee thereof by this Charter.

  The provisions of this section also apply to the Chief of Police's power to suspend employees and officers of the police force under Section 119 of this Charter.

(Effective August 8, 1988November 2, 2021)