## MEMORANDUM

DATE:        MARCH 22, 2022

TO:          MARK GRIFFIN, LAW DIRECTOR
             KARRIE HOWARD, DIRECTOR OF PUBLIC SAFETY
             DORNAT DRUMMOND, INTERIM POLICE CHIEF
             JOELLEN O'NEILL, DEPUTY POLICE CHIEF
             DANIEL FAY, DEPUTY POLICE CHIEF
             TIMOTHY MYGATT, DEPUTY CHIEF, CRT
             JONAS GEISSLER, CRT
             ACRIVI COROMELAS, CRT
             STEVEN J. PAFFILAS, CIVIL DIVISION CHIEF, AUSA
             MICHELLE HEYER, AUSA
             SARA DECARO, AUSA
             MICHAEL EVANOVICH, AUSA

FROM:        HASSAN ADEN, MONITOR

RE:          MONITOR'S 2020-2021 USE OF FORCE REVIEW

Pursuant to the responsibility to ensure that the intent of the reforms detailed in Section VI of the Consent Decree are met by the Cleveland Division of Police (CDP), the Monitoring Team (MT) designed and performed a review of use of force incidents. The Consent Decree requires:

> The force policies, training, supervision, and accountability systems will be designed with the goal of ensuring that officers use techniques other than force to effect compliance with police orders whenever feasible; use force only when necessary, and in a manner that avoids unnecessary injury to officers and civilians; de-escalate the use of force at the earliest possible moment; and accurately and completely report all uses of force. (¶ 45)

This memo summarizes the process and the findings of the MT's review.  The review period commenced in October 2020 and ran through the spring of 2021.  The MT presented findings to the City during two meetings: one in February 2021 and one in May 2021.  Additional reviews will take place in 2022 to test for compliance.

## Methodology

To determine if CDP has been complying with the requirements of the Consent Decree and CDP approved policies, the MT assessed a sample of use of force cases and reviews.  The MT created, tested, and refined a tool that was endorsed by the City and the United States Department of Justice (DOJ).  While the MT found that the tool and the process worked well, the process was slow. Regrettably, the feedback to the City was delayed, and led the MT to redesign the process for future reviews.

<u>Selection of Cases</u>:  The MT drew a representative sample of use of force incidents that occurred between 2018 and 2019, were reviewed completely by the chain of command, and were closed by early June 2020.  Cases were broken out by the reported level of force used (Levels 1, 2, and 3) and cases were randomly selected from within the category. Level 1 refers to force that is reasonably likely to cause only transient pain and/or disorientation, but not expected to cause injury; un-holstering a weapon is also considered Level 1. Level 2 is force that causes an injury, could reasonably be expected to cause an injury, or results in a complaint of an injury. Level 3 is force that includes deadly force, and uses of force that result in death or serious physical harm. (See CDP Policy 2.01.01 for the full definitions of each level of force).

The sample included 130 cases, with an oversample of non-firearm Level 1 cases.  The MT's sampling frame reflected a 95% confidence interval, a 10% margin of error, and a response distribution of 80%. Sample cases were extracted based on the agreed upon methodology mentioned above.

Sample Composition

| Force Level | Population | Sample* | # of Reviews |
|---|---|---|---|
| Level 3 | 27 | 27 | 54 |
| Level 2 | 227 | 49 | 98 |
| Level 1 (all)^ | 421 | 54 | 54 |
| TOTAL | 675 | 130 | 206 |

*95% Confidence Interval, +/- 10% Margin of Error, 80% Response Distribution
^ Level 1 cases will be oversampled via random oversampling when the case numbers are sampled

<u>Assignment of Cases</u>: The cases were divided into six phases and assigned to MT members for review.  The MT believed initially that each phase would require one month to review and then those findings would be presented to the City.  In practice, the reviews took longer than expected and the MT facilitated discussions on a select number of cases in May of 2021 for three phases and November 2021 for the remaining cases.

To expedite the review and to allow for a larger sample, the MT's methodology used a process with a different number of reviewers based on the level of force of each case.

- Level 2s and 3s were reviewed by 2 reviewers
- Level 1s were reviewed by 1 reviewer

<u>Review of Cases</u>: CDP provided the reviewers access through laptops with VPN and IAPro (accountability management software) access.  Case files were deposited into the electronic file-sharing system used by the Monitoring Team and CDP.  This process protects personally identifiable information in transit and at rest.  CDP provided access to evidence.com to all reviewers to access the Wearable Camera System footage.  Reviewers used the approved tool in

2

Alchemer, allowing reviewers to assess each of the cases in an electronic format to facilitate analysis of the data.  The data collected using the tool was saved to the cloud and individual reviews may be downloaded as a PDF.  A subset of the MT sample was also reviewed by experts retained by the DOJ. The DOJ sub-sample was identified by its own experts, not by the MT.

The review of Level 1 cases (both non-firearms and pointing firearms cases) was limited to a reduced set of assessment questions, focusing on necessity of the force, proportionality of the force, reasonableness of the force, efforts to deescalate where appropriate, and overall quality of the report and review.  This expedited review allowed more cases to be reviewed and enhanced the ability of the MT to determine if over/underreporting or misclassification of cases occurred. The Monitoring Team planned, but did not find it necessary, to increase the number of reviews of the Level 2 cases based on its review of the Level 1 cases.

The data from Alchemer was reviewed and cases where the MT reviewer disagreed with the chain of command review on reasonableness, proportionality or necessity, as well as officers' attempts/or failure to deescalate were flagged.  The MT also flagged for further review any case where the MT reviewers were not aligned.  The MT held internal calls to reconcile any differences within the team and to discuss cases where other concerns, relating to tactics, supervision, or training issues were identified.

**Findings**

General Findings:  Overall, on force in particular, the MT found that officers' use of force is generally within policy, the chain of command reviews are identifying and dealing appropriately with problematic uses of force (by referring cases to Internal Affairs or Training), and supervisors on scene are engaged with officers.

The MT's review did highlight a few deficiencies by CDP officers in tactics and the ability to deescalate, both of which at times created the need for force.  Similarly concerning is the reality that use of force reviews by the chain of command continue to take months to complete, which is unfair to the officers involved and creates potential liability issues for the City.  Policy 2.01.06 dictates that "each level in the chain of command shall review the [use of force] report within three tours of duty"; conversely our reviews indicated that they could take as long as several months.  Understanding that Policy 2.01.06 went into effect in 2021 and the cases the monitoring team subject matter experts reviewed were from 2018 and 2019, the purpose for noting the delays in this document, serves to advise the City and the CDP that review timelines will be a focus of our upcoming compliance reviews and assessments of use of force cases.  Finally, the Division needs to create processes and structures for lessons from the street – such as inadequate de-escalation or problematic tactics – to be addressed in training.  In the sample of cases reviewed, there was no indication by the chain of command that the Training Section was advised of the issues described here.

Specific Findings:  In the May 2021 discussion, the MT identified only one case where there was a difference of opinion in the review by the chain of command and the MT's reviewers.  There were nine cases where the reviewers identified tactical issues that could have changed outcomes (i.e., the level of force used, or the need to use force altogether) and as such should be reviewed,

have lessons extracted from them, and be shared with training units.  In the November 2021 discussion, the MT presented to CDP two cases of concern.  One case with questionable force was also poorly handled by the chain of command review.  A second case involved an out of policy use of force that resulted in the officer leaving the Division before the case was fully adjudicated.  The reviewers raised significant concerns that need to be addressed to change the possibility of a similar fact pattern reoccurring.  This case produced a number of important lessons that should be extracted and shared with training and supervisory personnel.

Overall, the MT found that the cases in the sample were well reviewed, and street supervisors were engaged and responding within policy mandates to use of force incidents.  In the vast majority of the cases assessed by the MT, the officers appropriately exercised force consistent with policy.  MT reviewers found officers and chain of command reviews correct in their assessments of necessity, proportionality, objective reasonableness, and the officers' ability and efforts to de-escalate. For the most part, the chain of command review identified problem behavior and the majority of the time, dealt with the problem behavior appropriately with education or discipline.

In cases that the MT called out for discussion, the MT did so because officer tactics actually created the necessity for force.  In other cases, officers' lack of effort to deescalate, or inability to slow things down necessitated the use of force.  A continuing concern of the MT is that CDP seems to lack an effective monitoring system for tracking identified systemic issues.  Some MT members learned about a tracking system used at the Force Review Board (FRB) that tracks the quality improvement loop for FRB recommendations.  Perhaps this can be modified to include recommendations that come from the chain of command for other use of force reviews, as most use of force cases are not reviewed by the FRB.  A true learning organization better connects the observations and work to eliminate the problematic tactical decisions.  Additionally, Paragraph 274 of the Consent Decree requires that the CDP training plan be informed by "trends in misconduct complaints, problematic uses of force; analysis of officer safety issues…"; All training issues should inform the needs assessment, and in turn, training issues should be prioritized and inform the training plan.

Based on the MT's review of the random sample, the Division seems to be using force in accordance with its policy and expressed norms.  Street supervisors are observed to be engaged and appropriate.  The chain of command review is mostly working to identify and address problematic behavior.  Based on data from IAPro and the monthly COMPSTAT, the review of use of force cases continues to take longer than expected with some cases, even those not referred to Internal Affairs, taking over 180 days.  Finally, a number of problematic cases were difficult to review due to the lack of camera images.  This is often attributed to the fact that officers working secondary employment are not required to use the Wearable Camera System.

Presently, the MT is transitioning to a rolling review process that will involve assessing a representative sample of cases closed at the end of each quarter.  A methodology for this revised process is in development and has not yet been finalized. The MT will use the revised methodology to formally assess CDP's compliance with Section VI of the Consent Decree.