# MEMORANDUM

DATE: JUNE 14, 2022

TO: MARK GRIFFIN, LAW DIRECTOR
KARRIE HOWARD, DIRECTOR OF PUBLIC SAFETY
GARY SINGLETARY, CHIEF COUNSEL
DORNAT DRUMMOND, INTERIM POLICE CHIEF
JOELLEN O'NEILL, DEPUTY POLICE CHIEF
TIMOTHY MYGATT, DEPUTY CHIEF, CRT
JONAS GEISSLER, CRT
ACRIVI COROMELAS, CRT
MICHELLE HEYER, AUSA
SARA DECARO, AUSA
MICHAEL EVANOVICH, AUSA

FROM: HASSAN ADEN, MONITOR

RE: COMPLIANCE ASSESSMENT OF RECRUIT HIRING BACKGROUND CHECK PROCESS, 148TH RECRUIT CLASS

Pursuant to the 2022 Monitoring Plan, a Compliance Assessment of Paragraphs 308, 309, and 310 of the Consent Decree was conducted over the course of two days in April 2022. This assessment focused on Cleveland Division of Police's ("CDP") process of selecting and hiring its 148th recruit class.

This assessment followed the Monitoring Team's ("MT") January 2022 audit of the 149th recruit class of lateral hires. In that assessment, the MT found none of the candidates hired met an acceptable threshold for compliance outlined in Paragraphs 308 through 311. The goal of the current assessment was to determine if the candidates included in the 148th recruit class were vetted in a similar fashion, or conversely, if the candidate histories and background investigations complied with the requirements of the Consent Decree.

In the present review of the 148th recruit class's personnel files, we found that most requirements detailed in the Consent Decree were being met during the selection process. That said, there were two requirements missing from every personnel file reviewed, and some other findings that raised further questions. One very concerning item is the documented internet search for civil actions, which showed a date on the printed internet page of a day in April – the week the MT conducted the visit. This shows not only that the review was not completed before hiring, but also appears to have been completed only because of the scheduled assessment by the Monitoring Team. Compliance requires an enduring effort to do what is expected and to do so with integrity. In addition to making compliance determinations for each of the paragraphs assessed, the MT has provided recommendations to improve the quality of the applicant review process moving forward.

## I. Methodology

On April 14 and 15, 2022 three pairs of MT reviewers reviewed the full contents of the background check files produced by the CDP Personnel Division for the 148th recruit class's academy graduates. The reviewers included Shunta Boston, Christine Cole, Ronnie Dunn, Tammy Hooper, Megan McDonough, and Victor Ruiz. The files were reviewed in a classroom of the Police Training Academy in the Justice Center. Each day there were members of the CDP Personnel Department present to observe and ensure the integrity of the files. On April 14, Assistant US Attorney Sara DeCaro observed for a few hours and on April 15, Michelle Heyer, also an Assistant US Attorney, joined as the MT members were completing the reviews.

The review teams selected file folders at random from the boxes provided by CDP. Ultimately, every file was reviewed and scored. Each pair reviewed the files and assessed the contents against the requirements of Paragraphs 308 through 310 of the Consent Decree using a structured scoring instrument previously approved by the Parties. The requirements of Paragraph 311 were also assessed if the applicant indicated prior law enforcement experience. After reviewing about half of the files, the reviewers paired with new partners to help ensure consistency across teams. Additionally, in situations in which it was unclear how to score a finding using the instrument, MT members raised the issue for broader group discussion. By using a standardized instrument, assigning two reviewers per case, mixing up the pairs during the process, and working near other reviewers, we believe a sufficient level of interrater consistency was achieved.

The approved instrument produced numerical scores for each of the files by assigning point values to the contents. These points were based on the specific requirements of each of the relevant paragraphs of the Consent Decree, and were assigned as follows:

**Scoring Protocol for Each Consent Decree Paragraph**

| Requirement | Scoring |
|---|---|
| **308**: CDP will continue to require all candidates for sworn personnel positions, including new recruits and lateral hires, to undergo a psychological and medical examination to determine their fitness for employment. CDP will continue to maintain a drug testing program that provides for reliable and valid pre-service testing for new officers and random testing for existing officers. The program will continue to be designed to detect the use of illegal substances, including steroids. | Psychological examination for fitness for duty (1 point)<br>Medical examination for fitness for duty (1 point)<br>Preservice drug screening (illegal substances and steroids) (1 point)<br>Total: 3 points |
| **309:** CDP will conduct thorough, objective, and timely background investigations of candidates for sworn positions in accordance with federal anti-discrimination laws. CDP's suitability determination will include assessing a candidate's criminal history, employment history, use of controlled substances, and ability to work with diverse communities. CDP also will determine, to the extent possible, whether the candidate has | Background check thoroughness (1 point)<br>Background check timeliness (1 point)<br>Criminal history (1 point)<br>Employment history (1 point)<br>Controlled substance use (1 point)<br>Ability to work with diverse communities (1 point) |

| | |
|---|---|
| been named in a civil action in either Cuyahoga County and/or in the County where the officer lives. | Named in civil action in Cuyahoga County or county of residence (1 point for "no")<br><br>Total: 7 points |
| **310:** As part of the hiring process, consistent with applicable law, CDP will request to review personnel files from candidates' previous employment and, where possible, will speak with the candidate's previous supervisor(s). This review, and any salient information obtained, will be documented in the candidate's file. | Information from prior employer (1 point)<br><br>Information from prior supervisors (1 point)<br><br>Total: 2 points |
| **311:** If a candidate has previous law enforcement experience, CDP will complete a thorough, objective, and timely pre-employment investigation that includes requesting a candidate's history of using lethal and less lethal force, use of force training records, and complaint history. This review, and any salient information obtained from this review, will be documented in the candidate's file. | (*only if relevant*)<br><br>Thorough review of prior law enforcement history (1 point)<br><br>Objective review of prior law enforcement history (1 point)<br><br>Timely review of prior law enforcement history (1 point)<br><br>Lethal and non-lethal UOF history (1 point)<br><br>UOF training history (1 point)<br><br>Request complaint history (1 point)<br><br>Total: 6 points |

## II. Findings

In total, 44 personnel files were reviewed and scored. Of the 12 total points possible for Paragraphs 308 through 310, the average score was 9.0. Files ranged from a low total score of 5, to the highest score (and mode) of 10.

**Total Points Per File, Frequency**



Of the 44 files scored, no file received the one point available for a demonstrated ability to work with diverse communities (¶ 309). There was no evidence in any file, either in application materials

or other records, of considering this requirement. Similarly, no file received a point for requesting records from prior employers (¶ 310). Despite documentation of speaking with prior supervisors in many of the files, there was no evidence in any file that prior employment records were requested or reviewed.

**Percent of Files Meeting Each Requirement Scored**

| ¶ | **Requirement** | **% of files that met requirement** |
|---|---|---|
| 308 | Psychological examination for fitness for duty | 97.7% |
| 308 | Medical examination for fitness for duty | 97.7% |
| 308 | Preservice drug screening (illegal substances and steroids) | 97.7% |
| 309 | Background check thoroughness | 77.3% |
| 309 | Background check timeliness | 97.7% |
| 309 | Criminal history | 86.4% |
| 309 | Employment history | 88.6% |
| 309 | Controlled substance use | 97.7% |
| 309 | Ability to work with diverse communities | 0.0% |
| 309 | Named in civil action in Cuyahoga County or county of residence | 86.4% |
| 310 | Information from prior employer | 0.0% |
| 310 | Information from prior supervisors | 72.7% |
| | **Total** | 75.0% |

Additionally, in many of the files, notwithstanding the requirement to request and review employee files from past employment; no file had evidence that any such request or review was completed. In most cases the file notes indicated that the CDP did not perform any form of check with prior employers due to the company's reliance on a "Work Number" service (i.e., a user-paid employment verification database), to which CDP does not subscribe. In some cases, this meant that no prior employers were spoken to for a candidate. One recruit in the 148th academy class had prior law enforcement experience with a sheriff's department. As this was not their last job before applying to CDP, it was not considered a lateral hire. The personnel file contained no law enforcement employment records or other information, beyond self-disclosing the employment, and a single counseling incident.

MT reviewers were also concerned to find numerous examples of untruthfulness in the files of candidates who are now sworn CDP officers. For example, multiple candidates failed to disclose that they were terminated from or disciplined at a job on their application; this was then indicated by a correction form, or the investigator's own notes. One applicant stated that they had no prior military experience, but the file folder included discharge papers obtained by the investigator. Another applicant indicated that they received a high school diploma in a particular year, but their records indicated receipt of a GED two years later.

Several candidates had criminal history incidents that were not sufficiently explained in the file. For example, one candidate's background revealed that as a teen, they had a number of incidents with police involvement, some involving acts of violence. This candidate was hired without a considerable amount of time having passed or work experience to demonstrate that this was not a

persistent pattern of problem behavior; there was no evidence in the file to indicate that these incidents were discussed or researched further.

Some, but not all, of the files included a sheet that indicated how many application reviewers voted for or against hiring a candidate. In many cases there were some votes against a candidate, and yet no explanation for why the individual was hired. In the most egregious case, twelve reviewers voted "do not recommend" and only one voted "recommend". No additional information was provided with regard to why this vote was overridden, and the applicant was extended an offer.

Lastly, many recruits indicated having applied to numerous public agencies, sometimes all over the country. In many cases the recruit was not offered employment at these other agencies. Sometimes this was due to failing oral interviews, written exams, or other reasons that were not disclosed. While there is no requirement in the Consent Decree that states that recruits who are not offered employment elsewhere are ineligible to apply to CDP, this finding raised questions about the selection requirements and standards currently in place at the Division, relative to its peer agencies.

## III. Compliance Assessment

**Paragraph 308** of the Consent Decree requires all hires to undergo physical and medical examinations to determine fitness for employment, and to maintain a drug testing program. The personnel file reviews found that in all but one, documentation of passing the three tests was provided. This indicates initial compliance with Paragraph 308.[1]

**Paragraph 309** of the Consent Decree requires CDP to conduct thorough, objective, and timely background investigations. CDP must assess candidates' criminal history, employment history, use of controlled substances, ability to work with diverse communities, and whether the candidate has been named in a civil action.

There are numerous areas within this Paragraph that must be addressed for CDP to achieve compliance. Specifically:

- There is no evidence that CDP completed civil records checks at the time of hire. The internet searches included in each personnel folder were dated from the week of April 11, 2022 – the same week the MT was scheduled to conduct our review. This shows not only that the review was not completed before hiring, but also appears to have been completed only because of the scheduled assessment by the Monitoring Team. Compliance requires an enduring effort to do what is expected and to do so with integrity.

[1] This assessment is based only the data provided by the City, i.e., that the candidate files contained a check box if the City recorded a passed psychological examination. Our assessment does not include our consideration of the adequacy of the underlying psychological examinations to determine candidates' fitness for employment. *See* Settlement Par. 308. We anticipate assessing compliance with that requirement of the Settlement in an upcoming report.

- CDP must identify a process for systematically assessing and documenting a candidate's ability to work with diverse communities. If this assessment is part of some other examination, it must be referenced in the background check file.
- Criminal history documentation must be timely and accurate. Updated record check documentation should be provided for individuals who are extended offers but defer enrollment in the Academy to a subsequent class. The MT was advised by the detectives in the room during reviews that the recruit in the 148th class who had deferred did have an updated check, but there was no documentation of this in their personnel folder.
- CDP must document salient details when investigating recruits' criminal history. For example, if a recruit states that their criminal history was the result of recurring identity theft, there should be documentation that this explanation was investigated and corroborated.

**Paragraph 310** requires that CDP request to review personnel files from candidates' previous employment and, where possible, will speak with the candidate's previous supervisors. As previously stated, the records requests are not currently taking place at all, based on the contents of the personnel files. Additionally, in many cases supervisors were not contacted by investigators. For some recruits, this meant that there was no confirmed work history based on supervisor appraisals or records reviews. To be compliant in this area:

- CDP must provide robust documentation of candidates' employment histories, to include records.
- CDP must work to identify a process to complete comprehensive investigations, even when employment records are maintained by companies requiring subscriptions.

Lastly, **Paragraph 311** states that if a candidate has previous law enforcement experience, CDP will complete a thorough, objective, and timely pre-employment investigation that includes requesting a candidate's history of using lethal and less lethal force, use of force training records, and complaint history. There is no evidence that this requirement was met for the one recruit in the 148th class with prior law enforcement experience, and therefore is not in compliance.

## IV. Areas for Improvements in Background Check Processes

Notwithstanding the scores, and initial compliance assessment, the Monitoring Team has a number of recommendations to improve the quality of the background checks, the process and transparency of selection and decision making, and recommendations for follow up with recruits in ways that could help their on-the-job success.

**Quality of the file:** The files are best described as chaotic. There is little rational organization in the accordion folder with the exception of the inclusion of a manilla file and a colored file. The manilla file most often contained the application from the candidate and the investigator's summary packet. The colored file typically held the work product of the investigator. It would help if categories of data were collected together and separated by a tabbed page or at the very

least a colored piece of paper. All files should have a table of contents that can be substituted as a checklist for content and be identical in order of documents.

The reviewers also found the documentation of interviews with prior employers and personal references to be sparse. Digging more deeply to assess the candidates' fitness for the job would be beneficial. There is little to no data in these files about the candidate as a person. The investigation seemed superficial. In most files was a sheet with signatures and badge numbers in one of two columns – recommend and do not recommend. In all cases, it would be helpful to understand what factors were considered in the decision. This is particularly important in the one case where all but one CDP reviewer did *not* recommend hiring. In any case where there is not unanimous agreement, the dissent should be explained.

**Additional Sources of Data**: While this was not contemplated at the time of the Consent Decree negotiation, the Monitoring Team believes a more thorough background check should include a review of social media posts. In the last few years, in agencies across the country, we have seen evidence of police officers on social media that reveal a bias against certain groups or suggest an inability to work with diverse communities.

**Opportunities to create an environment of success**: The degree to which this recruit class has experienced financial problems is remarkable. We note that most have worked in low paying jobs, are very young, and have not had educational opportunities after high school. The CDP and its Wellness Unit can proactively offer financial planning assistance to this class and other members of the Division. Helping officers who have demonstrated a difficulty with financial management can forestall issues for them as individuals and employees. Police officers have the opportunity to earn significant income through extra jobs and as it well known by management and senior officers, that extra income cannot be guaranteed. Officers in financial distress can also be a liability for the Division and encourage risky behavior of officers.

## V. Conclusion

**Compliance status**: Paragraph 308 is deemed complaint. The three required examinations were conducted for each candidate and the file, in all but one instance, reported the findings as passing. We assume that should a request be made for evidence of the drug screening, the psychological evaluation, and the medical test those could be provided.

Paragraph 309 is not compliant. CDP must determine a method to assess a candidate's ability to work with a diverse community. Often this is a function of the psych eval in combination with the background check, perhaps a social media review, and an assessment of history of bias. The files show no evidence that the background investigator or any other professional assessed the candidate for their ability to work with diverse communities. Paragraph 310 is not compliant. The section above lays out what must occur to achieve compliance. Generally, the background checks with past employers must be more rigorous and follow the language of the Consent Decree.

The Monitoring Team will work with the Background Investigators to help achieve compliance and create more professional looking and easy to use files.

The Monitoring Team understands that background investigations have just begun for a new academy class slated to begin in August 2022. The Monitoring Team will work with the staff to ensure compliance with the Consent Decree on the three paragraphs that govern recruit backgrounds. This supportive activity could commence as soon as June 2022. During the process, the MT will provide TA on how to make the files more complete, compliant, and professional in appearance.

The Cleveland Division of Police should strive to be the top agency in the state of Ohio and accept only the most qualified people for its ranks. Becoming that kind of agency begins with excellent compensation and benefits packages, purposeful and intentional recruiting, followed by thoroughly vetting its candidate pool to glean only the most qualified people to serve Cleveland communities. The Monitoring Team understands the challenges in addressing staffing shortages across police departments in the country. We also understand the risks involved in rushing to fulfill staffing numbers with people not suited to serve our communities.