

# Division of Police Memorandum
Dornat A. Drummond, Chief of Police

**TO:** Jason Goodrick - Interim Executive Director, Cleveland Community Police Commission

**FROM:** Dornat A. Drummond, Chief, Cleveland Division of Police *DAD*

**SUBJECT:** Objection to Records Requests from CPC to CDP – 1. Request for Investigative Files and Use of Force Reports (2021-2023) 2. Most Comprehensive CDP Disciplinary Files on All Officers Charged With Discipline (2022-2023)

**DATE:** February 1, 2024

This memo is in response to the recent requests made by the City of Cleveland's (City) Community Police Commission (CPC) to the City Division of Police (CDP) for complete and unredacted investigative files and use of force reports spanning from 2021 to 2023. After a thorough review, the Cleveland Division of Police hereby issues its formal objection to these requests based on the following reasons.

Primarily, the files requested encompass Criminal Justice Information (CJI) transmitted by Law Enforcement Automated Data System (LEADS), National Crime Information Center (NCIC), Brazos (Stop Forms), Field Based Reporting (FBR), Law Enforcement Record Management System (LERMS), Ohio Law Enforcement Gateway (OHLEG) and evidence com. These CJI systems are restricted only for criminal justice purposes by authorized law enforcement and criminal justice agencies. CJI is used to refer all of the Federal Bureau of Investigation (FBI) Criminal Justice Information Systems (CJIS). It provides data necessary for law enforcement agencies to perform their mission and enforce the laws, including but not limited to: biometric, identity history, person, organization, property (when accompanied by any personally identifiable information (PII), and case/incident history data. LEADS is administered by the Ohio State Highway Patrol superintendent. LEADS does not include data and files separately collected and maintained by intrastate regional systems or other individual user systems. Ohio Administrative Code Rule 4501:2-10-06(C) states:

"Messages and/or throughput of any kind accessed through LEADS shall be restricted to the use of duly authorized law enforcement and/or criminal justice agencies for the administration of criminal justice. Access to and dissemination of LEADS throughput is governed by the LEADS security policy (11/1/2016), LEADS manual (10/1/2016) and NCIC operating manual (8/11/2015)." See R.C. 2913.04(C) and (H).

CDP has an obligation to limit access to LEADS data to law enforcement entities for the purpose of criminal justice administration and shall adhere to the LEADS/NCIC

EXHIBIT A



### Division of Police Memorandum
Dornat A. Drummond, Chief of Police

rules and regulations set forth in the Ohio Administrative Code Chapter 4501:2-10. Releasing this information not only risks compromising CDP operations, but also places CDP and the City at risk of receiving progressive sanctions that may result in criminal liability and restrictions of LEADS access, up to and including complete removal of LEADS access. The imposition of sanctions on CDP LEADS access would have catastrophic consequences, and would greatly impair the ability of CDP to carry out its duties of safe and Constitutional Policing to the City, and its citizens.

Moreover, the technical and logistical aspects present significant hurdles. The requested information is distributed across multiple databases, including the IAPro law enforcement database, Brazos software, LERMS and evidence.com, none of which are interconnected. This significantly complicates the process of data retrieval and comparison, especially considering the absence of mental health coding from the Communications Control Section. Such an endeavor would not only inundate CDP, but would certainly impair its ability to carry out important work.

Furthermore, clarity is needed regarding the scope of the request for "disposition letters." While CDP presumes this to refer to pre-disciplinary disposition letters – which have already been provided – it's imperative to ascertain if this also includes Mobile Computer Aided Dispatch (MCAD) dispositions, a matter that would necessitate additional consideration.

Additionally, CDP's access to files is limited. Specifically, CDP does not have access to Office of Professional Standards (OPS) files. The City (Office of Information Technology) is in the process of providing the CPC access to CDP files via SharePoint, which can provide a decade's worth of Divisional Notices, current General Police Orders, and rules and regulations.

Also, it is our understanding that "investigative summaries" likely refer to BlueTeam/IAPro summaries from Use of Force (UOF) investigations. These summaries should already be included in the overall "investigative files," potentially leading to an overlap in the information provided.

Lastly, it's crucial to note that while IAPro/BlueTeam routings include responses from CDP regarding use of force reports, they do not cover Civilian Police Review Board (CPRB) or OPS responses, which are maintained separately. OPS routings are created by OPS investigators through the IAPro database and routed internally through OPS. If an OPS investigation is sustained through the CPRB, OPS routes the investigation through the IAPro database temporarily to CDP until the pre-disciplinary hearing is concluded. CDP can no longer access the OPS file once the pre-disciplinary hearing disposition is issued and the case is routed back to OPS.



**Division of Police** Memorandum
Dornat A. Drummond, Chief of Police

In light of these complexities, which span multiple internal and external city entities, coupled with the legal and operational limitations, as well as the significant financial and resource implications, CDP respectfully declines and objects to the CPC requests from October 27, 2023 and January 18, 2024. CDP is open to find alternative solutions to provide the necessary information within the bounds of their legal, operational, and resource capabilities.

Your understanding in this matter is appreciated, and CDP looks forward to a collaborative approach to addressing these concerns.



### Division of Police Memorandum
Dornat A. Drummond, Chief of Police

cc:      Karrie D. Howard, Chief Director, Department of Public Safety

Jakimah Dye, Assistant Director, Department of Public Safety

Daniel Fay, Deputy Chief, Administrative Operations

Dorothy Todd, Deputy Chief, Chief of Staff

Sammy Morris, Deputy Chief, Field Operations

Ali Pillow, Deputy Chief, Homeland Special Operations

Brian Carney, Commander, Bureau of Compliance

Charles DePenti, Lieutenant, Case Preparation Unit

Christopher Viland, Internal Affairs Superintendent

Delante Thomas, Chief Ethics Officer, Assistant Director of Law

Marcus Perez, Administrator, Office of Professional Standards

Karl Racine, Monitor, Monitoring Team

Abby Wilhelm, Member, Monitoring Team

Dr. Leigh Anderson, Executive Director of the Police Accountability Team

Dr. John Adams, Co-Chair, Cleveland Community Police Commission

Sharena Zayed, Co-Chair, Cleveland Community Police Commission

Timothy Mygatt, Department of Justice

Patricia Fitzgerald, Department of Justice

Mark Griffin, Chief Director, Law Department

Timothy Puin, Assistant Director of Law, Law Department

Amy Hough, Assistant Director of Law, Law Department

Hannah Macias, Police Accountability Team

Carlos Johnson, Police Accountability Team, Assistant Director of Law