UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:15- cv- 1046 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | CITY'S RESPONSE TO MOTION TO |
| CITY OF CLEVELAND, | ) | ENFORCE THE UNITED STATES' AND |
| | ) | MONITORING TEAM'S ACCESS TO |
| Defendant. | ) | INFORMATION |

Defendant City of Cleveland hereby responds to Plaintiff's Motion to Enforce the United States' and Monitoring Team's Access to Information (Doc #: 509), filed March 1, 2024 ("Motion to Enforce").

The City is strongly in favor of a clarifying order from the Court affirming the United States Department of Justice ("DOJ")'s and Monitoring Team's access to City data without risk of violating Ohio law. While the City disagrees with the assertions and rationale provided by DOJ, it is in complete agreement that an order should issue and provides a proposed draft attached hereto.

The essential dilemma is this: The Ohio Revised Code §§2913.04(C) & (D) (making unauthorized access to LEADS and OHLEG[1] data a crime) and Settlement Agreement ¶¶ 390-91 (requiring direct access by the Monitoring Team and DOJ to Criminal Justice Information) create a conflict between state law and federal law.

---

[1] Law Enforcement Automated Database and Ohio Law Enforcement Gateway

Without a clarifying order, this conflict creates an ambiguity and a risk to the City – as well to the Monitoring Team and DOJ.  The City believes that the Monitoring Team and DOJ should have complete and unredacted access.  Thus, the City requests that this Court enter the order as attached.  Alternatively, the Monitoring Team and DOJ should obtain LEADS and BCI authorization as required by RC §2913.04.

## I. BACKGROUND

### A. An FBI Officer Affirms that DOJ Should Not Have Access to CDP Databases that Contain Criminal Justice Information Systems Data.

On Wednesday, August 2, 2023, Commander Mark Maguth, Captain Rob Simon, and Rick Stone, an Acting Lieutenant in the Records Section of the Cleveland Division of Police (CDP), met virtually with Kevin Locke  ("ISO Locke") and Casey Barrett from Ohio State Highway Patrol, who serve as the LEADS Security Supervisors and are the City's auditors for LEADS.  They inquired regarding the Federal Monitoring Team, members of the Department of Justice and the Office of Professional Standards access to CDP's confidential law enforcement records and attempted to develop an amenable solution for such access.  However, the LEADS officials determined that the access does not meet the requirements of having "a criminal justice purpose."

On August 2, 2023, Stone received an email from ISO Locke regarding the dissemination of criminal justice information (which would include information from LEADS, OHLEG and others, collectively referred to as "Criminal Justice Information" ("CJI")) to the DOJ.  ((LEADS Access Communications, Pg. 8. Ex. A.)  In his email, ISO Locke confirmed the State's conclusion and explained: "The following email was sent by the FBI….

2

> Kevin/Casey,
>
> They do not fall under the definition of the administration of criminal justice. ***This would also apply to the US DOJ.*** (emphasis added)
>
> Essentially what I stated on the call, just in different and more exact terms.
>
> So the escort option and document redaction would be ways to move forward.
>
> Hope this helps. Let me know if you guys have additional questions.
>
> Jeff
>
> Jeff Campbell, CISSP
> Deputy Information Security Officer
> FBI/CJIS Division/CIAU/ISO Program Office
> 1000 Custer Hollow Rd.
> Clarksburg, WV 26306
> 304.625.XXXX (office / fax) | 304.476.XXXX (mobile)
> https://le.fbi.gov/cjis-division-resources/cjis-security-policy-resource-center

*See* Ex. A.

Thus, in August 2023, Ohio state officials charged with auditing LEADS compliance as well as an officer of the FBI **both** opined that the DOJ and other civilian oversight entities should not have unrestricted access to CJI. By itself, and regardless of the FBI's inconsistent opinion, the opinion expressed by LEADS officials put the City at risk of violating Ohio law.

### B. The Separate FBI and LEADS Opinions Put CDP Officers At Potential Risk

Based on the FBI's email and conversations with LEADS officials, the City reasonably believed that it would be at risk of violating Ohio Administrative Code ("(OAC") Rule) 4501:10 *et seq.*, 109:2-18 *et seq.*,[2] R.C. 2913.04 and other applicable statutes and administrative rules, by continuing to grant DOJ access to any city database that includes unredacted CJI, or in supplying DOJ with any documents or data that contain unredacted CJI. Subsequent to this notice, the City

---

[2] OAC 4501:2 *et seq.* contains administrative rules regarding access to, dissemination, record keeping and other requirements applicable to LEADS information. OAC 109:2-18 contains rules and regulations pertaining to OHLEG data.

3

held internal discussions concerning DOJ and the Monitoring Team's access to CDP databases that include CJI. Simultaneously, CDP completed an internal review of IAPro Activity Reports and indicated that Monitoring Team members had likely accessed files tagged as medical records, CJI protected documents in IAPro, and may have copied restricted file information to another location, including files indicating that they included interviews, images, body camera footage, investigative reports, LERMS reports, OHLEG information, and medical reports.. (Carney Dec., Ex. B ¶ 8).

### C. In December 2023, The City Requested That the Monitoring Team And DOJ Work Collaboratively Together And Jointly Seek Assistance from This Court To Guarantee Access And To Protect The City From Risk.

On December 29, 2023, the City temporarily paused the DOJ's and Monitoring Team's unrestricted access to unredacted files in IAPro and Evidence.com, to eliminate any uncertainty regarding compliance with Ohio law, until the conflict was resolved. On December 29, 2023, The City wrote to the Monitor and DOJ:

> Karl and Tim,
>
> The City would like to jointly approach Judge Oliver to request an order or other guidance clarifying that the Monitoring Team and the Department of Justice shall have unredacted access to all City criminal records, including criminal records otherwise protected by federal or state law (e.g. CJIS/LEADS protected information).
>
> The City believes that the MT/DOJ should have access to unredacted law enforcement documents relevant to the Consent Decree. Much of this information is relevant to the City's compliance and progress under the Consent Decree.
>
> However, federal and state law limit access to many of these documents for only specifically-permitted purposes. Accessing protected documents without a criminal justice purpose can have serious consequences. See, e.g. R.C. 2913.04.
>
> Because of the ambiguity of these statutes, the City is pausing direct computer access to unredacted files in IA Pro and Evidence.com (and related files). As we have done with other files, the City will continue to provide redacted files as quickly

4

>as possible. It is my understanding that this has been an adequate – but not optimal – solution. But it is time-intensive and inserts unnecessary delays.
>
>The City would prefer to not be required to redact documents. It is more efficient and more collaborative for the MT and DOJ to be provided direct access with the approval of Judge Oliver or other appropriate authority.
>
>We would like to find a time to discuss these issues at your earliest convenience.

(*See* Corr. from Mark Griffin, dated December 29, 2023, Ex C.) Although the City asked for collaboration, DOJ declined to join the City in asking this Court for assistance. Nonetheless, the City reaffirmed its commitment to finding a solution.

### D. DOJ Declines To Sign The Letter to LEADS That It Drafted.

The City again asked the DOJ to jointly approach the Court for assistance. DOJ refused, indicating that it would not do so without a written opinion from LEADS. The DOJ drafted a letter to LEADS on behalf of the City arguing why the DOJ and the Monitoring Team should have access to protected CJI. The City largely agreed with the letter and asked the DOJ to collaborate by jointly signing and sending the letter to LEADS that DOJ itself had written. The DOJ declined to sign its own draft. Nonetheless, in the interests of clarifying access for DOJ, the City made minor edits and then signed DOJ's letter on the City's behalf and requested that LEADS grant access to the DOJ. (Corr. from Mark Griffin, dated February 15, 2024, Ex. D.)

### E. LEADS Initially Re-Affirms Its Opinion That Prohibited Access To Monitoring Team And DOJ.

In January and February 2024, the City reached out to LEADS officials multiple times asking that the State provide clarifying guidance that would permit direct unredacted access by both the Monitoring Team and the DOJ. City Police Chief (now-Safety Director) Dornat Drummond communicated with Major Matthew L. Them of the Ohio State Highway Patrol, regarding access provided to the Monitoring Team and the Department of Justice to CDP systems containing LEADS data. Major Them commands the Office of Finance and Logistics, which has

authority over Computer Operations/LEADS. Chief Drummond indicated to Major Them that the City of Cleveland was under the instant Consent Decree. Despite this context, Major Them informed Chief Drummond that the State of Ohio believed that neither the Monitoring Team nor the DOJ should have unrestricted and unredacted access to LEADS data. (Drummond Dec.,Ex. E, ¶¶ 4-6.)

In February, the City Law Director Mark Griffin met via Zoom with LEADS officials Major Them, Jeremy Hansford, David Wilson and counsel Jocelyn Lowe. Law Director Griffin, among other things, explained the context of the Consent Decree, that the City supported unredacted access for MT and DOJ to protected data, that the City had submitted a request for a status conference on this subject, and that the City had not received a response from the Court, MT or the DOJ regarding the status conference.

The LEADS officials in that February meeting indicated that they previously conferred with the FBI/CJIS and were told by FBI/CJIS that both Monitoring Team and DOJ should not have access to protected data because they lacked a criminal law enforcement purpose. The LEADS officials from the February meeting also relayed that the FBI/CJIS fully understood that there is a consent decree, and that the Monitoring Team is an agent of the Court. Further, the LEADS officials indicated that LEADS/OSP requested a formal legal opinion from the FBI to memorialize its stance. In light of the FBI's verbally-communicated opinion that neither the Monitoring Team nor DOJ should have access, LEADS officials indicated that the LEADS Steering Committee was unable to enter into an MOU to permit such access. Importantly, they further indicated that if Judge Solomon Oliver Jr. of this Court or the FBI issued a written opinion, then LEADS/OSP will be open to further discussion.

On February 28, 2024, LEADS reconsidered its position, following its correspondence with DOJ, and decided it would "not issue guidance that conflicts with a court order or agreements reached between the Department of Justice and the Federal Bureau of Investigation's Criminal Justice Information Services Division." *See* United States Exhibit 4. The ambiguity of this sentence is concerning. It does not provide the authorization to the DOJ as required by RC 2913.04. Nor does it provide a legal opinion or assurance that access is permitted. As a result, the City has asked the LEADS officials for reliable clarity that access by the Monitoring Team and DOJ is not prohibited, and that the City, nor its employees or officials, will be held liable for providing such access.

In other words, before and during the suspension, the City continued to seek clarity on proper access to CJI that does not put the City, its officials, or employees at risk of criminal liability under Ohio law.

## II. DISCUSSION

### F. Ohio Law Provides Criminal Penalties for Unauthorized Access or Dissemination of CJI

Ohio Revised Code section 2913.04(C)(requiring LEADS authorization) & (D)(requiring BCI authorization) prohibit unauthorized dissemination or access to information gained from CJI databases:

> "Except as permitted under section 5503.101 of the Revised Code, [Disclosure of LEADS information to defendant] no person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the law enforcement automated database system created pursuant to section 5503.10 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the chair of the law enforcement automated data system steering committee."
>
> No person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the Ohio law enforcement gateway established and operated pursuant to division (C)(1) of

7

section 109.57 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the superintendent of the bureau of criminal identification and investigation.

Whoever violates the above sections is guilty of a felony of the fifth degree." R.C 2913.04(H)&(I).

### G. Without A Clarifying Order – Or Authorization by LEADS and BCI – The City, DOJ and the Monitoring Team are at Risk.

Granting unrestricted access to unredacted databases, documents, and/or data to the Monitoring Team and the DOJ exposes CDP personnel to potential felony-level criminal sanctions. *See* R.C 2913.04(H)(I) (Stone Dec., Ex. F, ¶ 4.) State law requires that the City receive consent from the LEADS steering committee prior to disseminating or causing access to information gained from access to law enforcement database systems. Similar requirements apply to OHLEG data. DOJ's assertion that Ohio law permits it to have unrestricted access to Cleveland's databases, which include comingled CJI data, because it does not result in *direct* access to the CJI databases themselves (*e.g.* p. 5 of DOJ's brief) is contrary to the plain language of the statute. The statute explicitly prohibits the City from granting access to *information gained from the City's access to LERMS or OHLEG* without express or implied authorization from the appropriate authority. To date, such authorization has not been clearly communicated to the City. In fact, quite the opposite.

DOJ"s Motion inaccurately attacks the City's position regarding non-law enforcement access to CJI. In fact, both the Monitor and the Plaintiff were given copies of the August 2, 2023 email from FBI/CJI and the February 2, 2024, letter from Acting LEADS Administrator Victoria Dowdy, advising the City in no uncertain terms that civilians may not access CJI for non-law enforcement purposes. (Ex. A Pg. 64.)

This same prohibition had been clearly stated in the Fall of 2023, in emails from LEADS to CDP, based on LEADS' consultation with the FBI. The Monitor and the Plaintiff were given a

copy of all relevant emails. (*Id*. at Pg. 8.) They also were given a copy of the January 12, 2024, email from the general counsel of Ohio Bureau of Criminal Investigation (BCI), stating that the BCI Superintendent prohibited civilian access to OHLEG (*Id* at Pg. 20-22.)

### E. The DOJ's Arguments Are Without Merit And Are Factually Inaccurate.

First, the Motion filed by DOJ asserts that it and the Monitoring Team are not seeking access to CJI data systems, but instead are seeking access to "individual user systems Maintained by the City." (p.5 of DOJ Motion.) These systems include, but are not limited to, IA Pro, Blue Team, LERMS, and Evidence.com. This argument is inapposite. The systems that the DOJ and Monitoring Team are seeking access to contain CJI gained from law enforcement databases, such as LEADS and OHLEG, and this data is so intimately commingled with CDP obtained data that it is virtually indistinguishable. Further, unrestricted access to these CDP data systems would be granting access to the restricted law enforcement data system themselves and the information derived from them.

Second, the DOJ and Monitoring Team claim that they are not seeking any LEADS data or CJI that the City receives through the LEADS system. This appears to be inconsistent with City logs. An internal review of IA PRO activity conducted by the City reports that in at least 38 instances there was likely access to information that is indicated as health or medically-related. In at least 13 instances, it appears that files listed as containing OHLEG information were accessed. Lastly, in 384 instances, the audit trail indicates that data was likely copied from the database and transferred to another location. *See* Exhibit B ¶ 8. These data points have raised significant and material concerns regarding the City's obligation to safeguard CJI. These concerns include the risk of losing access to the LEADS system and potential criminal sanctions.

Third, the Monitoring Team and DOJ incorrectly suggest that the City would not violate Ohio law by providing access to CJI to the Monitoring Team and the DOJ. Based on the information that the City has received from the State, this is highly disputable. The DOJ believes that the federal CJIS regulations are not implicated by the Settlement Agreement, but this assertion is unclear.

The Settlement Agreement is silent as to whether information derived from state protected and restricted databases are also subject to dissemination to the Monitoring Team and DOJ. The DOJ and Monitoring Team cite to the February 24, 2024 letter from the Chair of the LEADS Steering Committee stating that it will not issue guidance that conflicts with a court order, or agreements reached between the DOJ and the Federal Bureau of Investigation's Criminal Justice Information Services Division, to buttress their assertion that the City would not be out of compliance in supplying access to databases that include LEADS/CJI. This interpretation misstates the State's current position for a variety of unsupported reasons.

First, the letter speaks strictly to guidance given by the State LEADS Steering Committee, and does not mention a want of administrative or criminal sanctions due to improper dissemination by the City. Second, the Court has not issued an order directing the State to allow DOJ and Monitoring Team access to systems that contain state data. Third, neither the DOJ nor Monitoring Team have provided any written agreements between the DOJ and the FBI's Criminal Justice Information Services Division to the City. Lastly, the letter speaks only for the LEADS Steering Committee and <u>does not touch upon the identical data access issue raised by BCI</u>. To this point, the City has not received any clear written communication or agreement authorizing access to the DOJ and Monitoring Team access to OHLEG data. It is also unclear if any Order from this Court could protect against felony exposure under state law to those individuals disseminating OHLEG

data without permission. At minimum, the DOJ and Monitoring Team should supply the City with written authorization from BCI before the City is ordered to produce unredacted records.

## III. CONCLUSION

The City requests a clarifying order that would unambiguously protect the City, the Monitoring Team and DOJ from potential risk while assuring unredacted access to all relevant City data. A proposed draft is attached hereto. In the alternative, the City requests that the Monitoring Team and the DOJ receive authorization from LEADS and BCI to access CJI as set forth in R.C. §2913.04. Accordingly, the City welcomes the Court's intervention in this matter as we hope to find a quick resolution that allows for compliance with the Settlement Agreement as well as Ohio law.

Respectfully submitted,

*/s/ Mark Griffin*
MARK D. GRIFFIN (0064141)
Director of Law
Delanté Spencer Thomas (0096349)
Chief Assistant Director of Law
City of Cleveland
601 Lakeside Ave. E
City Hall Room 106
Cleveland, OH 44114
(216) 664-2800
mgriffin@clevelandohio.gov
dthomas3@clevelandoho.gov

## CERTIFICATE OF SERVICE

A copy of the foregoing Response was sent via operation of the Court's ECF system on the day of filing to all parties of record on this 6th day of March 2024. A courtesy copy was emailed to counsel for the United States, Patricia M. Fitzgerald (patricia.fitzgerald2@usdoj.gov); the Monitor, Karl Racine (karl.racine@hoganlovells.com); and counsel for CPC, Martin Bielat (mbielat@clevelandohio.gov).

*/s/ Mark Griffin*
MARK GRIFFIN (0064141)
Director of Law