UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:15 CV 1046 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | CITY'S STATUS CONFERENCE |
| Defendant | ) | STATEMENT |

Defendant, City of Cleveland, respectfully submits this Status Conference Statement regarding the Telephone Conference on March 20, 2024, at 2:00 p.m.

City of Cleveland objects to the Monitoring Team's request that the City pay for "billing for billing" or otherwise pay to correct errors made by the Monitoring Team on its invoices. Submitting and administering correct bills is a basic obligation that professionals should – and do – assume as included in their standard rates.

At a time when the Monitoring Team is seeking to more than double its annual budget, the City should not be penalized or charged for reviewing incorrect invoices or for the time required to address questionable bills.  Discouraging City oversight of the charges assessed under the Settlement Agreement will only undermine public confidence in this process.

## I.     Relevant procedural history

After a status conference held on March 7, 2024, the Court granted the Parties' Joint Motion to Amend the Settlement Agreement (Related Doc # 502) and the United States' Motion

to Enforce the United States' and Monitoring Team's Access to Information (Related Doc # 509).

Left unresolved were certain Monitoring Team billing issues.

On March 15, 2024, the Court scheduled a Telephone Conference for March 20, 2024,

directing the parties as follows:

> The parties should be prepared to discuss the billing disputes regarding the Monitoring Team's invoices, as well as an update regarding the CPC document request process per the court's discussion with the parties at the close of last Thursday's Status Conference.

The intent of this Status Conference Statement is to apprise the Court and the United States

of its position regarding one particular issue, "billing for billing."  The status of CPC document

production is addressed in a separate joint filing.

## II.     Relevant background

On April 12, 2023, Hogan Lovells, LLP, was approved as Independent Monitor (Doc #

474) pursuant to Paragraph 353 of the Settlement Agreement.  The first bill submitted by Hogan

Lovells was its April/ May invoice, submitted on August 9, 2023, (although dated July 21, 2023).

On August 22, 2023, Cleveland asked for clarification about certain entries in an email to the

Monitor which copied the United States. Issues raised included lack of detailed descriptions,

combination of different tasks in the same description, and what appeared to be excessive billing

for attending a hearing.  The Monitoring Team responded on September 12, 2023.  The parties

resolved their differences, and the April/ May invoice was approved by Cleveland on October 3,

2023. The pattern established by the handling of the April/May invoice has been consistent in

subsequent invoices.

### Late Invoices and Erroneous Charges

Invoices are submitted weeks, or even months, after the activities at issue.  (To date,

Cleveland has no record of receiving invoices for December, 2023, January, 2024, or February,

2024.)  Upon receipt, Cleveland then undertakes routine audits of both expenses and activities billed.  These audits are no different than those applied to outside counsel and other vendors billing the City.  Mathematical errors and obvious mistakes have been noted, along with more substantive issues.  Cleveland's audits usually result in revisions to the invoices. For instance, in the April/ May invoice, Hogan Lovells agreed to remove hours that were spent working with the parties on its acknowledgment letter.

An independent third-party auditor likely would raise even more issues than Cleveland has raised.  The process takes time, however.  The revised June invoice was not submitted by Hogan Lovells until December 15, 2023, in an email from the Monitor.  The same email noted that July was revised and sent to the City on November 6, 2023, and August was submitted on October 19, 2023.  Without revisiting previous disputes, Cleveland has pushed for improvements in billing such as more detailed descriptions and separating out separate tasks into separate entries, and fairness with regard to travel expenses.  Important to note, the Monitoring Team's more recent invoices have heeded these calls.  And there are no outstanding bills awaiting approval.

Cleveland would disagree that audits are somehow unnecessary or inappropriate, or that mark-downs based on the audits are *de minimis*.  Cleveland's discussions with the Monitoring Team have resulted in significant savings for taxpayers.  Cleveland owes a continuing duty to conscientiously review each line item.

The most important unresolved issue at this time is charging Cleveland for the process of invoicing, i.e., "billing for billing."  Meg Olsen is the Billing Consultant for the Monitoring Team. Her billing rate is $75 per hour.  Applying the 15% pro bono discount, since the June invoice, Cleveland has paid more than $4,200 for her time.  Her time includes multiple follow ups internally to make sure Monitoring Team members correctly document their time.  In this regard, it is fair to

3

say that the more mistakes or clerical difficulties she encounters interacting with fellow team members, the more Cleveland is billed.  Cleveland should not be billed to correct errors made by the Monitoring Team.

The Monitoring Team does not view these services as overhead.  In responding to Cleveland's audit of the August, 2023, invoice, the Monitoring Team stated, "Meg Olsen is a billing consultant for the Monitoring Team.  All of her time is spent on managing the billing process."  This time is basic overhead that should not separately charged.

**More Than Doubling The 2024 Monitor's Budget Requires More, Not Less, Oversight**

The City has an obligation to closely review the bills that are charged to its taxpayers. Since the inception of the Settlement Agreement, the City has paid, on average, annualized fees of $954,170.98.  *See* Ex. A. On December 28, 2023, Hogan Lovells submitted a proposed budget of more than $2.4 million. This request is more than twice the previous amounts paid by the City in immediately prior years.

On an itemized basis, the Monitoring Team is seeking $1,194,750 just for general monitoring oversight alone.  This is nearly a 25% increase over the average annualized budgets for previous years.

With regard to conducting five (5) assessments, the Monitoring Team requests $1,273,740. As a point of reference, the City of Baltimore has an FY 2024 monitor's budget of only $1,581,838, which comprehensively includes regular real time oversight, community engagement, fourteen (14) assessments and the costs of invoicing.

Further, the errors apparently continue.  In a review of the Monitor's recently proposed budget, the City identified over $233,000 in errors in the budget.  (Note: to date, a revised budget

4

has not been provided).  The City should not be billed for correcting the errors of the Monitoring Team.

## III.    Legal Authority

In the legal world, charging the client for the task of preparing invoices may be considered improper when the task is ministerial or clerical in nature and does not require any kind of legal expertise.  Courts generally disfavor billing by law firms for time spent preparing invoices.  *See*, *e.g.*, *Fuller v. Fiber Glass Systems, LP*, No. 4:07-CV-01120, 2009 WL 3067031, fn. 31 (E.D. Ark., Sept. 23, 2009) ("billing for billing – especially at $250 per hour – is inappropriate"); *D'Lil v. Best Western Encina Lodge & Suites*, No. CV 02-9506, 2010 WL 11655476, *9 (C.D. Calif. April 13, 2010) (not allowing billing for billing).

In a September 13, 2021, memo to the Attorney General, Associate Attorney General Gupta recommended adoption of certain principles for monitorships of state and local governmental entities.  She commented:

> Though the cost of a monitorship ultimately depends on how swiftly a jurisdiction comes into compliance, monitorships must nonetheless be designed and administered with awareness that every dollar spent on a monitorship is a dollar that cannot be spent on other policy priorities.

(Memorandum for Heads of Civil Litigating Components, United States Attorneys, Sept. 13, 2021, https://www.justice.gov/ag/file/1166091-0/dl?inline).

"Billing for billing" is paying for time that is spent for the financial best interests of the Monitor. It does not by itself provide value to the City or to the Settlement Agreement.   The City does not pay its other vendors for the costs of preparing invoices, or for correcting them, – and it

should not do so here.  Cleveland has not sought the Court's intervention but continues to believe it should be relieved from this expense.[1]

The City submits that it should not be "billed for billing" or otherwise required to pay for invoicing errors.

Respectfully submitted,

*/s/ Mark D. Griffin*

_____

MARK D. GRIFFIN (0064141)
Director of Law
City of Cleveland
601 Lakeside Ave. E
City Hall Room 106
Cleveland, OH 44114
(216) 664-2800
mgriffin@clevelandohio.gov


CERTIFICATE OF SERVICE

A copy of the foregoing Response was sent via operation of the Court's ECF system on this 18th day of March, 2024 to all parties of record.  A courtesy copy was emailed to counsel for the United States, Patricia M. Fitzgerald (patricia.fitzgerald2@usdoj.gov); the Monitor, Karl Racine (karl.racine@hoganlovells.com); and counsel for CPC, Martin Bielat (mbielat@clevelandohio.gov).

*/s/ Mark D. Griffin*

_____

MARK D. GRIFFIN (0064141)
Director of Law

---

[1]    Although singling some of the relevant billing issues here, the City maintains its positions regarding other billing issues that may be raised in the Telephone Conference.  Those positions have been previously articulated to the United States and the Monitoring Team in out-of-court discussions.