# Exhibit C

# Wilhelm, Abby Jae

| | |
|---|---|
| **From:** | Fitzgerald, Patricia M. (USAOHN) |
| **Sent:** | Wednesday, August 30, 2023 4:11 PM |
| **To:** | Griffin, Mark; Racine, Karl; Wilhelm, Abby Jae; Mygatt, Timothy (CRT) |
| **Cc:** | Puin, Timothy; Anderson, Leigh Ph.D; Butler, Geraldine |
| **Subject:** | RE: Observations and Comments Regarding Hogan Lovells' Invoice |

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

[EXTERNAL]
Mark,

We have reviewed your recent email regarding the monitoring team's recent invoice. We write to respond about your observations and comments about billing codes and descriptions from the April - May invoice. The City is required to "bear all reasonable fees and costs of the Monitor." Settlement Agreement ¶ 356. The invoice at issue clearly provides sufficient detail and information for the City to confirm that the fees and costs are reasonable.

Billing Codes

We do not take issue with the billing codes. The Hogan monitoring team invoice provides narratives and billing codes. The billing codes therefore provide additional information. It is a far cry from the block billing "in the extreme" example you cited. *In re Cmty. Home Fin. Servs., Inc.*, No. 1201703EE, 2015 WL 6511183, at *25 (Bankr. S.D. Miss. Oct. 27, 2015) (referring to one 36.8-hour entry where the only information was L190 and "other case assessment/dev & adm").

In DOJ's opinion, a "policies" task code is not necessary. That Consent Decree policy section is simply about Cleveland's policy development and review process. The other sections of the Consent Decree set forth specific policy requirements. The activity code "policies" should be more than sufficient. It also allows the billing to be more specific. For example, the task and activity codes below indicate that Jay Jones reviewed a force policy with the description providing further detail about which policy.

| Date | Name | Hours | Amount | Description | Task | Activity |
|---|---|---|---|---|---|---|
| 05/17/23 | Jay Jones | 1.00 | 750.00 | Review BolaWrap policy | 04 | 04 |

We ask that Cleveland provide additional detail as to why a policies task code is necessary.

Likewise, task codes 11 and 12 explain that a meeting does not fall neatly into one of the Consent Decree sections. Task code 13 explains that a task was related to project management, a critical monitoring team function. The task codes are simply part of the description of the monitoring team's time; they are not the only descriptor. For instance, this entry provides more than sufficient detail for the work performed.

| Date | Name | Hours | Amount | Description | Task | Activity |
|---|---|---|---|---|---|---|
| 04/26/23 | Karl Racine | 1.00 | 750.00 | Conference with the Court regarding status of consent decree | 12 | 06 |

If Cleveland believes that there are additional or alternative codes that would be helpful for it to evaluate the monitoring team's bills, we ask that Cleveland make specific proposals.

Descriptions

The monitoring team's descriptions for the work performed on April 27 have sufficient detail for the City to confirm that its bill is reasonable. The monitoring team was in Cleveland on that day and met with DOJ and both parties to discuss an effective and efficient transition. And on April 19, 2023, the monitoring team sent an email explaining the purpose of the meetings. The "brief explanation[s] of the specific task[s]" are more than sufficient. *Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 705 (6th Cir. 2016).

Likewise, the descriptions for the April 27 activities are not block billing. *Northeast Ohio Coal.*, 831 F.3d at 705 n.7 ("This court has held block billing 'can be sufficient' if the description of the work performed is adequate." (citation omitted)).

You raised "the question of possible duplicative billing . . . ." This "question" is not supported by your example because the example is a one-hour meeting with the parties where both Karl Racine and Abby Wilhelm attended. Since both of them attended the meeting, there was no duplicative billing. *Northeast Ohio Coal.*, 831 F.3d at 706 (explaining that multiple attorneys can be at a meeting).

Finally, we do not understand the City's concern with a monitoring team member attending a Force Review Board. Furthermore, observing the FRB is necessary to assessing the City's compliance with the Settlement Agreement. Settlement Agreement ¶¶ 124-30 (FRB requirements), 360 ("The Monitor will conduct reviews or audits as necessary to determine whether the City and CDP have complied with the requirements of this Agreement."), 389 ("The Monitor will have timely, full, and direct access to all Agreement related . . . meetings . . . reviews . . . that the Monitor reasonably deems necessary to carry out the duties assigned to the Monitor by this Agreement), 440 ("'Monitor' means a team of people who will be jointly selected to monitor and report on the implementation of this Agreement.").

Conclusion

If there are concerns with specific time entries or specific additional codes that the City believes are necessary, you should raise them with the monitoring team. We note, however, that continuing to provide observations and comments on the monitoring team's invoices is not necessary for you to determine that the invoices are reasonable. We hope that the City will move forward with its obligation under paragraph 356 of the Settlement Agreement because the monitor team's invoices do not suffer from "block billing" and provide sufficient detail and information for the City to confirm that the costs and fees detailed on the invoices are reasonable.

Thank you,

Tim Mygatt and Tricia Fitzgerald


Tricia Fitzgerald

---

**From:** Griffin, Mark
**Sent:** Tuesday, August 22, 2023 3:57 PM
**To:** Racine, Karl                              ; Wilhelm, Abby Jae                                           ; Mygatt, Timothy                              ; Fitzgerald, Patricia M.
**Cc:** Puin, Timothy                          ; Anderson, Leigh Ph.D                                      ; Butler, Geraldine
**Subject:** [EXTERNAL] Observations and Comments Regarding Hogan Lovells' Invoice


    Karl,

Thank you for your recent invoice. This generally looks good, although we have some observations and comments.

The invoice covers the period from April 14, 2023, through May 31, 2023. Timekeepers were Karl Racine, Stephanie Yonekura, Jay Jones, Courtney Caruso, and Abby Jae Wilhelm. All of them are approved timekeepers. Expenses were submitted for Karl Racine, Stephanie Yonekura, and Abby Jae Wilhelm.

The math added up for the total time and expenses. All expenses were documented. A twenty percent discount was applied to the time billed as a "pro bono discount," dropping the effective hourly rate from $750 to $600.

The main issue noted with Appendix I, Narratives, was the lack of detail. The main issue noted with Appendix II, Expenses, was the per diem.

## Expenses

Lodging at the Marriott booked by Lawyers Travel was very expensive, costing as much as $562.83 per night with taxes. However, Hogan Lovells applied more than a 50% discount to the Lodging category. The Westin bills for the May 31, 2023, visit, were less expensive than even the discounted Marriott rate.

Upgrades to economy plus on the flights were not billed to the City, nor were $40 service fees for Lawyers Travel.

The main issue noted was the per diem. A Per Diem Total of $966 was charged. Because there is no separate per diem accounting, it is unclear who is claiming a per diem and for how many days. Expenses included in the per diem may be inferred, however. Taxis and meals totaling $306.29 were documented but written off. Also written off were parking and in-flight wifi expenses totaling $208.83. There is also documentation of some tips that were not itemized in the report. The parking charge was discounted by the traveler (Airport Valet Elite of LAX parking charge and tip). It can be presumed that these are all expenses covered by the per diem. However, a separate accounting of per diem by timekeeper, with expenses included in the per diem, would be easier to understand.

## Fee Bill

A. **Billing Codes**

The invoice sets forth 13 Task Codes and seven Activity Codes. Each MT member's billing narratives include one Task Code and one Activity Code. There are Task Codes for each of the substantive areas set forth in sections in the Amended Consent Decree (e.g., Bias-Free Policing, Use of Force), except for one. There is no Task Code for Policies, Section XIII. Policies are included as one of the Activity Codes instead. It is unknown why Policies is not a Task Code.

The most-commonly used Task Codes and Activity Codes in the invoice are the catch-all codes:

- Task Code 11. External meetings with one or both parties covering multiple issue-areas

- Task Code 12. Internal monitoring team meetings covering multiple issue-areas.

- Task Code 13. Project Management
- Activity Code 06. Other

3

A brief review of the invoice shows that approximately 75% of the line items use one of the catch-all Task Codes 11, 12, or 13; and two out of three Activity Codes are 06. The combination of 12/06 and 13/06 are frequently used, i.e., meetings "covering multiple issue-areas/ other."

The Uniform Task-Based Management System (UTMBS) of billing codes was developed by the ABA, the Association of Corporate Counsel, PricewaterhouseCoopers, and others to standardize the categorization of legal services and expenses so that legal work and the associated costs could be easily identified and analyzed. See [Uniform Task-Based Management System (americanbar.org)](Uniform Task-Based Management System (americanbar.org)).

Hogan Lovells did not appear to base its codes on the UTMBS. However, the four catch-all codes are similar to UTMBS code L190–Other Case Assessment, Development and Administration. L190 has been described as "the infamous 'other' category that is supposed to be a limited catch-all for tasks that do not otherwise readily fit within the other more specific categories." SPARTNER § 14:4, *The Uniform Task-Based Management System*, Successful Partnering Between Inside and Outside Counsel (April 2023). One court noted that using L190 to identify multiple tasks in the same entry "represents *block billing* in the extreme….'This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task; particularly, when the generic labels are used and the [c]ourt cannot determine whether the tasks are related or which matters the "calls" or "correspondence" address.'" *In re Community Home Financial Services, Inc.*, S.D. Miss. No. 1201703EE, 2015 WL 6511183, *25 (Oct. 27, 2015) (citations omitted).

**B. Descriptions**

The Description field entries typically do not identify the subject of the tasks and activities identified by the catch-all codes. Nearly all of the Descriptions are around ten words or less. The lack of detail raises the possibility that some of the billed items overlap or duplicate. In addition, block billing is seen. Preparation and participation are identified in the same line item without breaking out each task; and multiple meetings are billed together.

As an example, below are several narratives from April 27, 2023. They all use the Task Code 11 (External meetings with one or both parties covering multiple issue-areas) and Activity Code 06 (Other):

| Date | Name | Hours | Description | Task | Activity | COMMENT |
|---|---|---|---|---|---|---|
| 04/27/23 | Stephanie Yonekura | 8.50 | Meetings with DOJ, Police Chief, DOJ and City, and monitoring team members | 11 | 06 | Block billing; lack of detail |
| 04/27/23 | Courtney Caruso | 4.10 | Prepare for and participate in strategy meetings with DOJ | 11 | 06 | Block billing, lack of detail |

4

| Date | Name | Hours | Description | Task | Activity | |
|---|---|---|---|---|---|---|
| | | | and the City; review monitoring assessment materials and plan | | | |
| 04/27/23 | Jay Jones | 1.20 | Conference with both City and DOJ | 11 | 06 | Lack of detail |
| 04/27/23 | Jay Jones | 2.30 | Conference with DOJ | 11 | 06 | Lack of detail |
| 04/27/23 | Abby Jae Wilhelm | 2.50 | Conference with DOJ | 11 | 06 | Lack of detail, billed .2 more than Jay Jones for same conference |
| 04/27/23 | Abby Jae Wilhelm | 1.30 | Conference with the City and DOJ | 11 | 06 | Lack of detail, billed .1 more than Jay Jones for same conference |

Similarly, on April 28, 2023, Abby Jae Wilhelm billed 6.00 for "Monitor Force Review Board," without additional detail. This is possibly a $3,600 bill for observing an FRB meeting, but it is unclear what is meant by "Monitor [FRB]." An example of a more detailed time sheet, from a Baltimore consent decree MT member, is attached (it can be found here: Monthly Statements — BPD Monitoring Team).

As an example of how the lack of detail raises the question of possible duplicative billing, the following entries were noted. In them, Karl Racine and Abby Jae Wilhelm have the same time and descriptions for two meetings. The lack of detail makes it appear as if the two meetings are actually the same activity:

| Date | Name | Hours | Description | Task | Activity |
|---|---|---|---|---|---|
| 05/23/23 | Karl Racine | 0.50 | Follow-up with Parties concerning multiple consent decree issue- areas | 11 | 06 |

5

| 05/23/23 | Karl Racine | 1.00 | Confer with the Parties regarding multiple consent decree issue- areas | 11 | 06 |
| 05/23/23 | Abby Jae Wilhelm | 0.50 | Follow-up with Parties concerning multiple consent decree issue- areas | 13 | 06 |
| 05/23/23 | Abby Jae Wilhelm | 1.00 | Confer with the parties regarding multiple consent decree issue- areas | 11 | 06 |

In the above, there is no way of knowing what the meetings are about, who attended, or how "follow-up with Parties" is any different from "confer with the parties."  The Task and Activity codes used are the catch-all codes.

Many other examples of insufficiently detailed entries could be copied here.

One notable charge was by Karl Racine on May 30, 2023.  He billed 1.0 for "Cleveland engagement letter review."  In general, a law firm client should not be billed for the attorney's preparing an engagement letter.  *Douglas County School District Re-1 v. Douglas County Health Department*, D. Colo. No. 21-cv-02818-JLK, 2022 WL 596275, *9 (Feb. 28, 2022)* ("the preparation of an engagement letter is a lawyer's professional responsibility and not a legal service for which he or she may bill a client").

Another charge that may bear scrutiny was by Karl Racine on May 31, 2023.  He billed 4.0 for "Present testimony before City Counsel [*sic*]."  Because four hours seems like a long time for this task, the video of the hearing was sought on YouTube.  Based on the length of the TV20 video, the testimony may have been closer to 2.0 hours.[1]  The biller may have intended that his preparation time and follow-up conversations be included in the compensable time, but the lack of detail gives the appearance of possible overbilling.

Also, with respect to the May 31, 2023, Public Safety Committee hearing, it was noted that Abby Jae Wilhelm traveled to Cleveland and sat next to Karl Racine at the hearing.  She billed her travel expenses to the City, but does not have any time entries for May 31, 2023.  The question is why airfare, hotel, and per diem

expenses should be reimbursed for a MT member if they did not actually do any task in the City other than being present at a hearing at which another member spoke. The TV20 video of the hearing could be watched without incurring significant travel expenses.

As with the April 28, 2023, bill by Abby Jae Wilhelm for 6.00 hours for "Monitor Force Review Board," the issue would be whether the City should pay either the expenses or the hourly rate of a MT member for pure observation time. It was noted that Abby Jae Wilhem is a "policy advisor" for Hogan Lovells. Her firm biography notes she was previously chief of staff at the D.C. AG's office, "where she was a thought partner and strategic advisor to then-Attorney General, Karl Racine."

---

[1] The whole video was not watched for purposes of this memo, but official records could be reviewed to confirm the length of the committee meeting if needed. The City Record (6/2/2023) indicates the meeting was less than four hours based on other meetings scheduled that day involving the same committee members.