# EXHIBIT A



# OFFICE OF PROFESSIONAL STANDARDS

# CLEVELAND, OHIO

---

# OPERATING MANUAL AND PROCEDURES

**INTRODUCTORY MATTERS**

1.  Pursuant to the 2021 amendment to the City of Cleveland Charter, the Office of Professional Standards is now under the supervision of the Civilian Police Review Board (the "Board"). The Board has full authority over the Office of Professional Standards' operations and organization, including, but not limited to, employment, structure, budget, and disciplinary matters.

2.  MANUAL OBJECTIVE.  The purpose of this Operations Manual (the "Manual") is to provide the Office of Professional Standards ("OPS") Investigators and staff, Cleveland Division of Police ("CDP" or "Division") employees, and the general Cleveland community with the express standards, expectations, and processes for the receipt and investigation of public complaints about police performance or conduct regarding CDP employees.

3.  DEFINITIONS.

    "Allegation" refers to a charge or claim made by a complainant that, if established as true, could constitute a violation of a specific provision of CDP policy.

    "Relevant" means evidence having a tendency to make the existence of any fact that is of consequence to the investigation of a given complaint more probable or less probable than it would otherwise be without the evidence.

    "Timely" means within a reasonable span of time in light of the circumstances.

    "Members" refers to sworn officers and non-sworn employees employed by CDP.

**100.  MISSION, JURISDICTION, ETHICAL & EMPLOYMENT REQUIREMENTS**

101.  MISSION.  To ensure constitutional, lawful, accountable, effective, and respectful policing, and to have a safe community, there must be trust between police and those they serve. For that reason, the City of Cleveland (the "City") established the Office of Professional Standards ("OPS"), an agency within the City and independent of CDP, for the purpose of investigating non-criminal complaints filed by the public against sworn and non-sworn CDP employees ("Members") subject to OPS Manual Section 304. OPS is not a part of CDP. OPS is a separate agency, under the supervision of the Board, charged with providing civilian oversight of CDP.

The mission of OPS is to increase accountability and improve public confidence in the police by fairly, thoroughly, objectively, and timely investigating any complaints against CDP employees that it receives, and presenting investigations on these complaints to the Civilian Police Review Board.

As part of its mission, OPS is also empowered to make policy recommendations that will improve the citizen complaint process, increase understanding between the public and CDP employees, clarify CDP training and procedures, reduce the incidence of misconduct and reduce the risk of the use of force by CDP officers. OPS investigations are to be conducted in a fair, objective, impartial, timely, and comprehensive manner by the OPS investigative staff, which is composed entirely of civilian employees. OPS is committed to providing the community with an accessible and safe environment in which to file complaints.

3

102.  JURISDICTION.  Under the Charter of the City (§ 115-1, 115-4), OPS must cause, for the Board's benefit, a full and complete investigation to be made of each complaint. The investigation need not be confined to matters set forth in the complaint and may expand based upon facts and allegations uncovered in the investigation. The following provides a non- exhaustive list of the kind of complaints received by OPS for investigation:

    i.  Harassment complaints, to include those alleging biased policing, discrimination, profiling;

    ii.  Excessive and Deadly Force complaints;

    iii.  Unprofessional Behavior/Conduct complaints;

    iv.  Improper Procedure complaints, including improper arrest, improper citations, and improper search;

    v.  Improper Stop;

    vi.  Improper Tow;

    vii.  Service complaints, including insufficient CDP employee service, and no CDP service;

    viii.  Property complaints, including missing property and damage to property; and

    ix.  Misconduct related to the receipt of a Uniform Traffic Ticket or Parking Infraction Notice if the Parking Infraction Notice was issued by CDP personnel.

103.  ETHICAL REQUIREMENTS.

    a)  All OPS employees, staff, contractors, or other agents must acquit themselves of the duties outlined here in a manner that is consistent with the following statement of ethics (adopted from the National Association for Civilian Oversight of Law Enforcement ("NACOLE") Code of Ethics).  (*See* Attachment A.)

      i.  OPS employees and staff have a unique role as public servants overseeing the conduct of law enforcement officers. The community, government, and law enforcement agencies have entrusted OPS personnel to conduct their work in a professional, fair and impartial manner. This trust is earned through a firm commitment to the public good, the mission of the OPS, and to the ethical and professional standards described herein.

      ii.  These standards are intended to be of general application. The spirit of these ethical and professional standards should guide OPS employees and staff in adapting to individual circumstances, and in promoting public trust, integrity and transparency.

      iii.  **Personal Integrity**: OPS employees and staff will demonstrate the highest standards of personal integrity, commitment, truthfulness, and fortitude in order to inspire trust among OPS stakeholders, and to set an example for others.

      iv.  **Avoid Conflicts of Interest**: OPS employees and staff are expected to conduct themselves in a fair and impartial manner and recuse themselves when significant conflicts of interest arise. OPS personnel will not accept gifts, gratuities or favors that

4

could compromise their impartiality and independence or that have a substantial and improper influence upon the performance of his or her duties. As public officials, OPS employees are bound by City and State ethics laws.

v. **Independent and Thorough Oversight**: OPS employees and staff are expected to conduct all investigations and reviews with diligence, an open and questioning mind, integrity, objectivity, and fairness, in a timely manner. OPS employees and staff are expected to rigorously test the accuracy and reliability of information from all sources and consider and present facts and findings without regard to personal beliefs or concern for personal, professional or political consequences.

vi. **Transparency and Confidentiality**: OPS employees and staff are expected to conduct their activities openly and transparently (as permitted by applicable policy and law), to include providing explanation of OPS and Board procedures and practices to as wide an audience as possible. OPS employees and staff must maintain the confidentiality of information that cannot be disclosed by law and policy and protect the security of confidential records.

vii. **Respectful and Unbiased Treatment**: OPS employees and staff must treat all individuals with dignity and respect, and without preference or discrimination including but not limited to the following protected classes: age, ethnicity, culture, race, disability, gender, gender identity, religion, sexual orientation, socioeconomic status, or political beliefs.

viii. **Outreach and Relationships with Stakeholders**: OPS employees and staff are expected to disseminate information and conduct outreach activity in the community as permitted by law and policy. OPS employees and staff shall pursue open, candid, and non-defensive dialogue with all stakeholders and seek to educate and learn from the community.

ix. **Self-examination and Commitment to Policy Review**: OPS employees and staff should seek continuous improvement in the effectiveness of civilian oversight of law enforcement programs in Cleveland. OPS employees and staff gauge their effectiveness through evaluation and analysis of their work product and seek to emphasize policy review aimed at substantive organizational reforms that advance law enforcement accountability and performance.

x. **Professional Excellence**: OPS employees and staff should seek professional development to ensure competence. OPS employees and staff should seek to acquire the necessary knowledge and understanding of the policies, procedures and practices of the CDP and the Department of Public Safety and keep informed of current legal, professional and social issues that affect the community, CDP, OPS, and the Board.

xi. **Primary Obligation to the Community**: At all times, OPS employees and staff should place their obligation to the community and their duty to uphold the law, goals, and objectives of OPS, above personal self-interest.

b) All OPS employees, staff, contractors, or other agents have an affirmative duty to ensure that all OPS investigations are fair, thorough, unbiased, comprehensive, and timely. This includes taking all reasonable steps to ensure the following:

    i.   **Independence:** The integrity of the accountability process relies on the independence of OPS.  No CDP personnel will have any active role in OPS investigations.  OPS will not allow CDP personnel to participate in OPS functions for the purposes of influencing the outcome of OPS investigations or operations. With respect to any OPS investigation or other OPS matter, OPS employees take direction from the OPS Administrator and other OPS supervisors, not CDP command staff or supervisors.

    ii.   **Confidentiality:** OPS personnel must maintain the highest degree of confidentiality concerning matters related to OPS complaints and investigations. Only the OPS Administrator or his/her designee is authorized to disclose or confirm to anyone outside of OPS, other than authorized CDP personnel and the Board, whether a complaint has been made or an investigation is being conducted, including the identity of complainants and  names of witnesses and employees. Complaint and investigative information must not be left unattended in areas accessible by non-OPS personnel. OPS personnel will be required to sign an agreement regarding confidentiality. The OPS Administrator may authorize appropriate OPS personnel to make public announcements to locate potential witnesses to incidents under investigation by OPS. The OPS Administrator shall refer any request for a copy of an OPS investigation file(s) or any individual component of an OPS investigative file to the City's Public Records Portal so the requestor can make a public records request.

    iii.   **Avoid Conflicts of Interest:**  Any potential, actual, or apparent conflict of interest with the parties or subject matter in any investigation should immediately be brought to the attention of the OPS Administrator, Senior Investigator, or other such OPS supervisor. If any relationship or previous experience with anyone involved in a complaint might materially impact (or have the appearance of impacting) neutrality in handling OPS matters, the issue of whether a conflict exists should be reviewed and decided by OPS supervisors.  Final determination in such cases, to include re-assignment of the investigation where deemed appropriate, rests solely with the OPS Administrator.

c)  OPS will treat all individuals with dignity and respect, and without preference, bias,  or discrimination.

104.  EMPLOYMENT REQUIREMENTS.  No OPS personnel may be current or former Members of CDP.

All OPS employees are employees of the City and therefore subject to all City Human Resources policies and procedures including, but not limited to, those listed in the HR Policies and Workplace Policies manuals and the City Civil Service Commission Rules.

105.  BUDGET. The Board and OPS will have a budget separate from the Department of Public Safety's budget. The Board and OPS must receive a combined budget totaling at least 1.0% of the budget allocated to CDP pursuant to Charter Section 115-2[1].

The OPS Administrator shall prepare the Board's and OPS's budgets on behalf of, and with guidance from, the Board. The OPS Administrator shall present the budgets to the Board for approval by vote.

---

[1] For operational purposes, CPRB and OPS have two separate budgets, each of which is separate from the Department of Public Safety's budget. Those combined budgets are derived from the allocated 1% outlined in Charter Section 115-4.

Any employment positions described or outlined in Section 900 below are subject to change without having to be approved by the Court based upon the approved budget by City Council or the necessary organizational/operational needs of the office.

106. CDP PERSONNEL COOPERATION WITH OPS INVESTIGATIONS. Pursuant to Division policy, CDP personnel who have witnessed, participated, or otherwise have first hand knowledge of an incident subject to an OPS complaint are required to cooperate with the OPS investigation. CDP personnel may be asked to respond to OPS questions, either written, or asked in an interview. The failure to fully, fairly, truthfully, and timely cooperate with an OPS investigation may result in employment consequences, up to and including termination. As such, OPS employees must bring any false statements or material omissions on the part of a CDP employee to the attention of the OPS Administrator who will, in turn, bring such information to the attention of the Chief of Police and the Director of Public Safety.

107. NO RETALIATION. Retaliation in any form by CDP Members or other City employees against individuals for the filing of a complaint, or for participation in the complaint, investigation, or adjudicative process is strictly prohibited by both the City and CDP and may constitute grounds for discipline. Actions which would be considered retaliatory can take many forms, including, but not limited to, the malicious filing of a criminal or civil action, threats or harassment in any form, undertaking any adverse action against any person involved in the filing, investigation, or adjudication of a complaint, or decisions affecting an employee's hiring, promotion or assignment. Retaliation, in addition to violating City and CDP policy, may also be a crime warranting criminal investigation by an appropriate authority.

If OPS personnel are made aware of facts indicating possible retaliation by CDP Members or other City employees against a complainant, witness, OPS employee, or Board member, the OPS personnel shall immediately bring such facts to the attention of the OPS Administrator who will immediately inform the Board Chair and the Director of Law.

## 200. GENERAL INTAKE PROCESS

201. OBJECTIVE OF THE INTAKE AND COMPLAINT DOCUMENTATION PROCESS. Regardless of the manner in which a complaint, inquiry, or concern is presented, OPS shall thoroughly document and track all complainant contacts regardless of whether a formal complaint investigation results. The purpose of this documentation is to ensure that thorough and accurate information is captured pertaining to contacts, the basis for such contacts, and the manner in which OPS responds to or otherwise resolves a person's complaint, inquiry, or concerns.

The process undertaken by OPS to properly address complaints brought by a citizen against a CDP employee for misconduct or, pursuant to Charter Section 115-3, by the Board on its own complaint typically has three distinct phases: (1) the intake phase, (2) the investigative phase, and (3) the adjudication phase. Subsequent sections of this Manual specifically address the second (Sections 400 - 700) and third (Section 800) phases of the OPS process.

The purpose of the initial intake stage is to capture relevant citizen and Board generated contact information and to conduct an initial assessment of the complaint solely to determine whether it falls within the purview of OPS's jurisdiction and investigative authority.

202. DOCUMENTATION OF ALL CITIZEN CONTACTS. All citizen, Board identified, and/or community contacts, regardless of whether the contact results in a complaint being made against

CDP employees or relates to a complaint that has been previously made against CDP employees, will be thoroughly, timely, and accurately documented using the Intake Reporting Form.  (*See* Appendix B).

Every effort will be made to ensure that the Intake Reporting Form is completed in its entirety. If a citizen refuses to provide information that is prompted by the various elements contained within the report, the OPS employee completing the report will enter "DECLINED TO PROVIDE" ("DTP") in the appropriate space.

203.  ASSIGNMENT OF CONTACT NUMBER.  Upon completion of the Intake Reporting Form, an OPS contact number will be assigned and the citizen's name, contact information, the name of the OPS representative completing the form, and the referral or disposition information shall be entered into OPS's IAPro database (the "IAPro database" or "database") for electronic tracking purposes.  The OPS Administrator or his/her designee will review the form to ensure that it is complete and accurate, and the matter falls within OPS's jurisdiction.  The Intake Reporting Form shall be scanned into the IAPro database and a hard copy shall be maintained at OPS in accordance with state records retention laws.

204.  CONTACTS CLASSIFIED AS COMPLAINTS.  In instances where the facts as alleged taken with all reasonable inferences would, if established as true, constitute misconduct, citizen contacts may be properly classified as a "complaint."

Where a contact articulates a complaint, the Intake Reporting Form shall be assigned an OPS complaint number and handled in accordance with the complaint procedures set out in this Manual.  The contact number shall be cross referenced with the complaint number in the database, and a copy of the Intake Reporting Form shall be maintained in the OPS investigative file.

OPS shall consider whether a claim, if true, would constitute a complaint of misconduct against CDP personnel. For purposes of any jurisdictional determination or inquiry, OPS shall not make any determinations about or otherwise consider the truthfulness, adequacy, plausibility, or credibility of any claims, allegations, or facts asserted. Instead, OPS shall consider only whether the claims, if true, would give rise to a complaint that OPS is authorized to investigate.

205.  CONTACTS NOT CONSTITUTING A COMPLAINT OR OUTSIDE THE JURISDICTION OF OPS.  Some contacts may involve claims or allegations that do not constitute a complaint of misconduct. In such instances, the claims may, upon the complainant's approval, be forwarded to the entity that is best suited to handle or otherwise address the nature of the complainant's concern, and/or the complainant shall be provided the information necessary to contact the appropriate entity. The forwarding of these claims to the appropriate entity shall be done with the complainant's approval within three (3) business days from a determination that the complaint falls outside the jurisdiction of OPS. Notwithstanding anything in this section, complainant approval shall not be required for forwarding of alleged criminal claims in an OPS complaint, pursuant to section 304.

Inquiries regarding police policy, procedure, or service delivery that are not within OPS's jurisdiction, shall, upon the citizen's approval, be forwarded to the appropriate element within CDP for resolution. Upon confirming such approval, the OPS Administrator or his/her designated representative shall provide the citizen the information necessary to contact the appropriate entity for information.  A copy of the Intake Reporting Form shall be forwarded to the Internal Affairs

Unit in a timely fashion. If the citizen does not approve forwarding of the inquiry to the appropriate element within CDP for resolution, the fact that the citizen declined the forwarding shall be logged into the IAPro database. In cases where the citizen declines to have information forwarded, the OPS Administrator may approve forwarding the inquiry to CDP for information only while protecting the identity of the citizen.

206.  DUTY TO UPDATE COMPLAINANTS.  A complainant may contact OPS at any time to determine the status of his or her complaint. OPS must provide a complainant inquiring about the status of his or her complaint with as much information as is feasible given the progress and/or status of the investigation.

207.  PREPARATION OF MONTHLY STATISTICAL REPORT REGARDING INTAKE PROCESS.  The OPS Administrator or his/her designee shall prepare a monthly statistical report regarding the Intake reporting process that delineates information in the following manner: contacts that result in a complaint investigation delineated by CDP district, unit, or bureau; inquiries regarding police policy, procedure, or service delivery that do not rise to the level of a complaint delineated by CDP district, unit, or bureau; and contacts that are outside OPS jurisdiction and are referred to agencies other than CDP for additional follow up. The OPS Administrator shall forward this report to the Board and the City's Director of Public Safety. The OPS Administrator shall assess the monthly statistical report for patterns and trends and make recommendations to CDP where warranted.

## 300.  COMPLAINT INTAKE

301.  COMPLAINTS.  Matters come to the attention of OPS in a variety of ways. Anyone, other than a CPD Member, may file a complaint with OPS, including but not limited to the subject of a police incident, recipient of police service, a witness to a police incident, a bystander of police service, a third party (such as a parent or spouse of the subject), a legal representative, an anonymous subject, the OPS Administrator, the Board or the Cleveland Community Police Commission ("CPC").

Every complaint shall be logged on a complaint form. The OPS complaint form shall not contain any language that could reasonably be construed as discouraging the filing of a complaint, including but not limited to warnings about the potential criminal consequences of filing false complaints. Nor shall OPS intake staff attempt to dissuade anyone from the filing of a complaint. Complaint forms, as well as all related informational materials, will be made available, at a minimum, in English and Spanish. OPS will provide a qualified interpreter for those individuals who have limited English proficiency and those who are deaf or hearing impaired or ensure that complainants who speak other languages (including sign language) and have limited English proficiency can file complaints in their preferred language. The fact that a complainant does not speak, read, or write English, or is deaf or hearing impaired, will not and cannot be grounds to decline to accept or investigate a complaint. Complaint forms will be made available at the OPS office and distributed by OPS on a regular basis to the following locations to ensure the accessibility of the complaint process to the community:

- The five (5) CDP District Stations, and

- The CDP Patrol Division (to make available to all CDP officers traveling in a Zone Car).

In addition, Complaint forms will be available for downloading from the OPS webpage. Complaint forms will also be made available, upon request by postal mail or facsimile, or electronically via email. OPS will make complaint forms available online, either in a fillable format that may be mailed to OPS or that may be electronically submitted. Completed complaint forms may be submitted to OPS in person, by phone, by postal mail, facsimile, or electronically. Complaints also may be submitted at any of the five (5) CDP District Stations. The citizen should be able to obtain assistance in completing the form at OPS or any other location where the complaint form may be obtained. Complaint forms filed at CDP District Stations are expected to be forwarded to OPS via electronic mail within twenty-four (24) hours of filing. Nothing within this provision removes OPS's obligation to take anonymous complaints, unsigned complaints, third party complaints, or complaints received by any electronic or written format regardless of how the complaint is received or otherwise transmitted. The current hard-copy OPS complaint form is in triplicate form. (*See* Appendix C). The white copy is the original and is maintained at OPS. The yellow copy is designated for the CDP District of the location where the incident occurred. When a complaint is filed at OPS, the complainant will receive the pink copy of his or her complaint. When a complaint form is filed at all other locations, a copy will be sent to the complainant once it is received by OPS.

302.   DUTIES OF OPS UPON RECEIVING A COMPLAINT.

   a)   EXPLANATION OF COMPLAINT PROCESS TO COMPLAINANT.  Any OPS employee or staff charged with interacting with individuals who come to the OPS office will fully explain the complaint process to those individuals who make contact and are interested in filing a complaint. OPS will provide a qualified interpreter for those individuals who have limited English proficiency and for those who are deaf or hearing impaired. OPS shall not request that friends or family members serve as translators or interpreters; however, OPS shall not object if a citizen requests that a friend or family member provide such assistance. OPS will ensure that all individuals with any sort of disability are reasonably accommodated.

   b)   WALK-IN COMPLAINTS.  For individuals who walk-in to make complaints in person at the OPS office, the OPS Intake Coordinator shall check the IAPro database to determine whether the individual has already filed a complaint about the allegation with OPS.  If no complaint has been filed, then an assigned Investigator shall offer to interview the complainant at that time. If the complainant agrees to be interviewed and an interview takes place, the interview shall be conducted in accordance with Section 400 of this Manual.

   OPS staff must provide a written statement form, (*see* Appendix D), a "Rights and Responsibilities" form, (*see* Appendix E), and a document that details OPS/Board investigation and adjudication processes to those persons who file or are interested in filing an OPS complaint. When a walk-in complainant alleges excessive force or injuries resulting from contact with a CDP employee, the Intake Coordinator or an assigned Investigator will take steps to properly photograph and document any and all injuries and request that a Release of Medical Information Form be signed. (*See* Appendix F). If the walk-in complainant has in his or her possession photographs, video, text messages or other evidence relating to his or her complaint, the Intake Coordinator or an assigned Investigator will make efforts to obtain from the complainant any such evidence or copies of the evidence.

   c)   ASSIGNMENT OF COMPLAINT NUMBER TO COMPLAINT.  The Intake Coordinator will assign the complaint form an OPS complaint number, scan the complaint form into IAPro

and enter all information pertaining to the allegation into the database as soon as practicable, but, in any event, no later than the close of the next business day. The Intake Coordinator shall also create an investigative file, which shall contain the complaint form and all other investigative documents related to the case.

d) ASSIGNMENT OF INITIAL CATEGORY TO TRACK. The Intake Coordinator, in consultation with the OPS Administrator or his/her designee, will determine whether the complaint should be classified as "Standard" or "Complex." Categorization may change based on information discovered through the course of the investigation, and as approved by the OPS Administrator or his/her designee.

A "Standard" investigation is one where the facts, circumstances, number of involved parties or witnesses, number of potential allegations, or other factors suggest that a full, fair, thorough, and unbiased investigation can be completed within forty-five (45) days.

A "Complex" investigation is one where the facts, circumstances, number of involved parties or witnesses, number of potential allegations, or other factors suggest that a full, fair, thorough, and unbiased investigation will take more than seventy-five (75) days to complete. The Intake Coordinator will assign a generalized complaint category to the complaint based solely on the content of the complaint. The initial categorization of the complaint may include one or more of the following:

  i.    Biased policing;

  ii.   Unlawful Investigatory stop,

  iii.  Unlawful search,

  iv.   Unlawful arrest;

  v.    Excessive and/or improper force;

  vi.   Harassment;

  vii.  Service Complaints;

  viii. Property Complaints; and

  ix.   Improper Procedure.

Additionally, the Intake Coordinator will identify each specific allegation of misconduct made by the complainant which will ultimately require adjudication by the Board and CDP. The OPS Administrator or his/her designee is responsible for ensuring that all complaint categories and each allegation of misconduct correctly represents the full content of the complaint.

e) ACQUISTION OF BASIC MATERIALS. Upon review of the complaint, the Intake Coordinator, or a designee specifically assigned to this task, will initiate the process of acquiring divisional reports and related materials that may be of assistance during the investigative process (the "initial investigative materials").

11

Such materials may include, but may not be limited to, the following:

    i. Incident Reports;

    ii. Supervisory Investigations related to the incident, including completed Internal Affairs investigations and Force Review Board reports;

    iii. Arrest Reports;

    iv. Uniform Traffic Ticket;

    v. Parking Infraction Notice;

    vi. Daily Activity Reports;

    vii. Daily Duty Assignment Report;

    viii. All available footage from Wearable Camera System (WCS), dash cameras, and lobby cameras;

    ix. Dash Camera download;

    x. Dispatch Audio and 911 Call Information;

    xi. Computer Aided Dispatch (CAD) Report;

    xii. Accused Officer's Prior Complaint and Disposition history; and

    xiii. Complainant's prior contacts with OPS and the nature of those contacts.

f) COMPLETION OF INVESTIGATION COMPLAINT CHECKLIST. The Intake Coordinator will denote on the Investigation Complaint Checklist (*see* Appendix G) that is contained in the OPS investigative file the reports/materials requested, from whom those reports/materials were requested, and the date, time, and status (if known) of those requests.

303. NEW COMPLAINTS FORWARDED TO OPS ADMINISTRATOR. Upon completion of the intake process and within three (3) business days of receiving the complaint, the Intake Coordinator shall forward the investigative file to the OPS Administrator or his/her designee, containing all investigative materials received to date, for review and assignment.

It will be the responsibility of the OPS Administrator or his/her designee to ensure that:

a) Each complaint is within the jurisdiction of OPS;

b) Each complaint has been properly classified and each allegation identified; and that

c) All preliminary information requested from CDP is either contained in the file or there is documentation stating that the information has been requested and OPS is awaiting CDP's response.

304.    COMPLAINTS ALLEGING VIOLATION OF CRIMINAL LAW.  Complaints that contain allegations, claims, or factual assertions that, if true, may constitute a violation of criminal law will be referred to CDP's Internal Affairs Unit. The OPS Administrator or his/her designee will use best efforts to make this initial determination within twenty-four (24) hours of receipt of the complaint, or by the close of the next business day. The OPS Administrator or his/her designee will use best efforts to process initial determinations of complaints submitted on weekends and holidays within twenty-four (24) hours of the following business day. If the OPS Administrator or his/her designee is unable to make this initial determination within twenty-four (24)  hours of receipt of the complaint, the OPS Administrator or his/her designee will include a memorandum in the investigative file that outlines the circumstances that prevented such a determination within twenty-four (24) hours or receipt of the complaint.

If, after conferral with the CDP's Internal Affairs Unit and the City Attorney, the OPS Administrator or his/her designee determines that a complaint has no potential for criminal charges, the complaint shall be assigned in accordance with Sections 306 through 308 of this Manual. However, regardless of the initial determination, at any point during the investigation of a complaint the OPS Investigator must inform the OPS Administrator as soon as practicable upon the discovery of any facts, allegations, evidence, information, or other material that implicate potential criminal conduct. The OPS Investigator must prepare a memorandum for the investigative file that outlines the nature of the material that the Investigator believes to implicate potential criminal conduct.

After receiving a memorandum from the investigator, the OPS Administrator or his/her designee must then reassess the complaint and make a determination as to whether the complaint constitutes a potential violation of criminal law such that it should be forwarded to CDP's Internal Affairs Unit. This determination must be made within twenty-four (24) hours or by the close of the next business day of being informed by an OPS Investigator about the discovery of any facts, allegations, evidence, information, or other material that implicate potential criminal conduct. If the OPS Administrator or his/her designee is unable to make this initial determination within twenty-four (24) hours of receipt of the additional information, the OPS Administrator or his/her designee will include a Memorandum in the investigative file that outlines the circumstances that prevented such a determination within the required period of time.

If the OPS Administrator or his/her designee determines that a complaint requires a criminal investigation and <u>should</u>, therefore, be referred to the Internal Affairs Unit for a criminal investigation, a duplicate file will be made and forwarded to the respective unit for review and possible investigation. Thereafter, the OPS Administrator or his/her designee will update the IAPro database and make a notation in the original file. The complainant shall also be advised that the matter has been forwarded to the respective unit. When contact information is available a confirmation letter to the complainant should be sent by email or mail as soon as practicable, no later than the close of the next business day. A copy of the correspondence shall be time-stamped, saved in IAPro, and placed in the investigative file. The Investigation Complaint Checklist shall also denote the date the correspondence was sent.

Pursuant to CDP policy, the Superintendent of the Internal Affairs Unit is required to notify the OPS Administrator no later than fifteen (15) business days from receipt of the complaint and provide a status update. If the Superintendent of Internal Affairs fails to do so, the OPS Administrator shall promptly notify, in writing, the Chief of Police and the Director of Public Safety. Division policy also requires that the CDP Internal Affairs Superintendent provide the

OPS Administrator with a comprehensive report as to the status of all CDP investigations initiated pursuant to a public complaint at least once every thirty (30) calendar days. If the Superintendent of the Internal Affairs Unit fails to do so, the OPS Administrator shall promptly notify the Chief of Police and the Director of Public Safety, in writing.

If the Internal Affairs Unit determines that the matter will not be handled as a criminal investigation or if a criminal investigation results in no charges, the file – including any new Investigatory materials generated by Internal Affairs – will be returned to OPS. Once the file is received, the IAPro database will be updated and a notation entered on the Investigation Complaint Checklist to reflect the current posture of the investigation and the transfer of investigative responsibility. Thereafter, the matter will be assigned to an OPS Investigator for review of the CDP investigation and to establish the additional independent investigation necessary to be accomplished to ensure OPS control and accountability over investigations of CDP. Within five (5) business days of the file being returned to OPS, the complainant will be informed that the matter will not be handled as a criminal investigation (to include an explanation of that decision) and that the complaint has been returned to OPS for investigation. A confirmation letter shall be sent to the complainant via mail or email, when contact information is available, time-stamped, saved in IAPro, and placed in the investigative file. The Investigation Complaint Checklist shall also denote the date the letter was sent.

305. CONCURRENT COMPLAINT INVESTIGATIONS WITH CDP.

a) The OPS Administrator shall meet with the CDP Internal Affairs Superintendent on a regular basis to identify and discuss the status of cases referred between OPS and CDP to ensure a seamless transition between cases falling within the jurisdiction of both OPS and CDP. OPS shall share with CDP Internal Affairs a weekly status report identifying all open cases, which have been referred to Internal Affairs or involve investigations being conducted consecutive to, or concurrent with an Internal Affairs investigation.

b) Upon receipt of a complaint, OPS shall determine whether CDP has already initiated an investigation into the incident. If CDP has already initiated an investigation, then OPS will delay its investigation until the completion of the CDP investigation.

c) OPS retains jurisdiction even where CDP has already opened an investigation into the incident, unless disciplinary proceedings have already been initiated by CDP. In the event it appears that CDP will not complete its investigation according to the timelines set forth in the Internal Affairs Unit Manual, OPS will confer with Internal Affairs to determine appropriate next steps. Additionally, any information obtained by OPS from the complainant, including information provided by a citizen during any OPS interview, will be provided to CDP for inclusion in its investigation as provided in the Internal Affairs Unit Manual. Upon receipt of a completed CDP investigation, the investigative materials must be reviewed by OPS to determine if any additional investigation is necessary for OPS's administrative review. OPS is required to ensure independent review prior to submission of the investigation to the Board for appropriate findings.

d) While OPS must not defer to CDP or outside, non-federal law-enforcement authorities in completing its investigation, OPS is not required to duplicate investigative efforts if they determine that the material generated in the CDP investigation is HELPFUL OR INFORMATIVE AND OPS CONTINUES TO act independently, consistent with their

mission of exercising civilian control and accountability over CDP. OPS retains independent authority and responsibility to conduct additional investigation of any incident falling within its jurisdiction, whether or not CDP has or has not previously investigated the underlying incident, circumstances, or nucleus of underlying facts. In addition, in any case where a CDP criminal or critical incident investigation did not cover all possible policy, procedures, or training issues, additional administrative investigation may be necessary.

306.  ASSIGNMENT OF A NEW COMPLAINT TO AN OPS INVESTIGATOR.   In determining the assignment of a new complaint investigative file to an OPS Investigator, the OPS Administrator must consider the current caseload of Investigators, the complexity of the investigation balanced against the experience of the Investigator, and the next Investigator in the standard queue to be assigned an investigation.

307.  DEADLINE FOR ASSIGNMENT OF NEW COMPLAINT TO AN OPS INVESTIGATOR. The OPS Administrator, or his/her designee, will assign every investigative file within twenty-four (24) hours of receipt or no later than the close of the next business day. The name of the OPS Investigator assigned to the complaint and the date of such assignment shall be noted in the Investigation Complaint Checklist. If the investigative file is not assigned within the above prescribed time period, the OPS Administrator, or his/her designee, will document the reason for the delay in both the investigative file and the IAPro database.

308.  REQUIREMENT TO PROVIDE NOTICE TO COMPLAINANT OF COMPLAINT RECEIPT. Prior to transferring custody of the file to the OPS Investigator, the OPS Administrator or his/her designee shall direct the Intake Coordinator to prepare and mail or email a letter to the complainant acknowledging receipt of the complaint, identifying the complaint file number, and providing the contact information of the assigned OPS Investigator. The letter shall also state that the assigned OPS Investigator may contact the complainant to schedule an appointment in order to obtain a more detailed statement. The letter should  be sent by the Intake Coordinator as soon as practicable, and no later than the close of the next business day. A copy of the letter shall be time-stamped, saved in IAPro, and placed in the investigative file prior to being forwarded to the Investigator. The Intake Coordinator shall also denote on the Investigation Complaint Checklist the date the letter was sent. All complainant notification letters shall be sent to the complainant no later  than seven days after OPS's receipt of the complaint.

309.  REQUIREMENT TO PROVIDE NOTICE TO IMPLICATED CDP PERSONNEL.  The OPS Administrator will direct that a notification to the implicated, accused, or otherwise principally-involved CDP employee(s) be prepared which documents the following:

   a)  Date and time the complaint was received;

   b)  The nature of the complaint;

   c)  The date, time, and location of the alleged incident; and

   d)  The assigned Investigator's name and contact information.

The OPS Administrator shall further direct timely supplemental notice should the investigation be expanded, pursuant to the authority of Charter Section 115-4, beyond the matters set forth in the original complaint. The initial notification and any supplemental notifications shall be forwarded to the subject employee's supervisor or the CDP Member's commanding officer for

service. Upon receipt, the signed copy of the notification acknowledging receipt shall be saved in IAPro and retained in the investigative file. If the signed copy of the notification acknowledging receipt is not returned to OPS within ten (10) business days, the OPS Administrator or his/her designee should be advised in order to follow up with the subject employee's supervisor or commanding officer.

In some extraordinary circumstances, and depending on the nature of the allegation, the OPS Administrator may determine that it would not be prudent to immediately notify the subject CDP Member. Under such circumstances, the OPS Administrator will confer with the City Law Director, thereafter make appropriate notifications to CDP command staff, and document in the investigative file the reason why the notification was not made as set out above.

## 400.    COMPLAINT INVESTIGATION PROCESS

401.    OVERVIEW.  The complaint investigative process must provide complainants with a thorough, impartial, objective, and timely avenue for review of their grievances against CDP employees, and at the same time protect Division employees from false allegations of misconduct or wrongdoing. In an effort to maintain the integrity of the investigative process, precise procedures have been established for the receipt, investigation, and adjudication of misconduct complaints. In addition to the receipt and processing of a complaint, the investigation will typically involve the gathering of physical and testimonial evidence. Testimonial evidence is gathered by taking statements or conducting recorded interviews from the complainant who filed the complaint and all witnesses who may have factual information pertaining to the complaint. Statements may also be taken from persons who have specialized knowledge regarding the complaint or the circumstances related to the complaint. In addition to the gathering of physical and testimonial evidence, Investigators may also seek to gather documentary evidence such as reports, activity sheets, 911 calls, dispatch reports, crime scene materials, as well as video or audio recordings that may be related to the complaint.

The initial review of a complaint is an important part of the investigative process as it will help the Investigator determine the nature and complexity of their investigation. Understanding the complexity of an investigation will help to determine if any additional investigative resources may be needed to conduct the investigation, and will also establish a reasonable time-line for completion of the investigation.

402.    ASSIGNING THE CASE TO AN INVESTIGATOR.  Once the intake process has been completed and the complaint has been reviewed by the OPS Administrator or his/her designee it is assigned to an Investigator. The investigative file will be placed in the assigned Investigator's inter-office mailbox. Once received, the Investigator will notify the OPS Administrator's Administrative Assistant as to the date and time of receipt and the administrative assistant will enter that information into the database that is used to track the investigation and assist the OPS Administrator in managing the investigative process.

403.    PROCEDURES FOR CONTACTING AND/OR INTERVIEWING THE COMPLAINANT WHO FILED THE COMPLAINT.  Within three (3) business days of receipt of the file, the assigned Investigator will make an attempt to contact the complainant by phone and/or by email and schedule an in-person interview if an in-person interview did not take place at the time of Intake.

a) In the event that phone contact is made with the complainant, the call will be digitally recorded and state the date and time of the call as well as its intended purpose. (Example: "The date is [date m/d/y]. The time is [time]. This is Investigator Jones and I am speaking with or attempting to contact Mr. Smith, the complainant in case number 2024-0000, in order to schedule an in-person interview.")

b) Upon making contact with the complainant, the Investigator will advise the complainant that the call is being recorded for quality assurance purposes and to ensure the information discussed is properly captured and preserved.  If the complainant requests that the call not be recorded, the Investigator will document this request in the investigative file and promptly discontinue the recording and continue with the call.

c) A copy of each and every recorded call and email made in an effort to contact a complainant or witness will be maintained and become a part of the investigative file. In addition, the call(s) and email(s) will be recorded in the investigative file and entered in the IAPro database.

d) After three unsuccessful attempts to contact the complainant, the Investigator should go to the complainant's last known address in an effort to make contact. If unable to do so or if visiting the last known address proves to be unsuccessful, a certified letter (return receipt requested) shall be forwarded to the complainant setting out the Investigator's efforts to make contact and the need to obtain additional information. A letter personally delivered to the last known address may substitute for a certified letter. The personal delivery shall be documented.

e) Each effort and step to make contact with the complainant, and the manner in which such contact was attempted, shall be properly recorded in the investigative file and in the IAPro database.

f) In the event the complainant agrees to provide an in-person interview, the Investigator will meet the complainant in the OPS lobby and briefly describe the process that will be undertaken, to include the fact that with the complainant's permission the statement may be audio and video recorded.

g) Statements taken without being preserved by video and audio recording should be provided in the complainant's own handwriting, if possible. If, for whatever reason, the complainant is unable to prepare a written statement, the statement will be transcribed by the Investigator and later read to or otherwise presented to the complainant. Once determined to be accurate the complainant will be asked to sign the statement. OPS must investigate the complaint regardless of whether the statement is signed.

404. THE IDENTIFICATION OF EVIDENCE.  The types of evidence gathered during the course of an OPS investigation will usually fall into four areas: statements/testimonial evidence, documentary evidence (reports, photographs, etc.), physical evidence, or forensic evidence. Physical evidence may include such things as objects, fingerprints, footprints, handprints, or marks left behind by tools or weapons.  Forensic evidence may include such things as bruises or bite marks. CDP and the Department of Public Safety are to provide all evidentiary information and records necessary for the OPS investigator to carry out his or her investigatory duties. Such records are to be promptly produced, and in no case more than thirty (30) days after the request is made. The OPS investigator is to contact the OPS Administrator or his/her designee to follow up with CDP or the Department of Public Safety if the production of requested evidentiary

information and records exceeds thirty (30) days.

Typically, physical and forensic evidence is gathered during the preliminary stages of a criminal or critical incident investigation.  However, it is not unusual for an OPS investigation to involve the documenting and photographing of objects, swelling, bruises, cuts, bite marks, or any other forms of evidence that support or contradict a  complainant's allegations. During the course of the initial (or preliminary) stages of the investigative process, the Investigator will ensure that the following information is collected with the permission and cooperation of the complainant; the complainant's full name, mailing address, telephone number(s), email address, race, gender, and date of birth.  The person making a complaint is under no obligation to provide this information. However, such information may assist the Investigator in conducting a thorough and comprehensive investigation  and will facilitate the process by which the complainant can be properly notified regarding the investigative status, the findings and conclusions reached by the Investigator, and notice of any action to be taken by the Board. In addition, this information can also be used in an aggregate manner to allow OPS to identify patterns in complaints and publicly report on patterns relating to police conduct and use of force. A complaint investigation has the ultimate  goal  of  determining  the  truth  and  facilitating  a  process   which   will   provide accountability  for  official  misconduct.  The  preliminary investigation endeavors to answer the following foundational questions about the incident; who, what, when, where, how, and why.

a) <u>Who:</u>  Who was involved? Does the complaint involve a CDP employee? Who established the employee's identity and how was that accomplished? Who was present at the time of the alleged misconduct, or who may have  first-hand knowledge of the incident?

b) <u>What:</u>  In the complainant's (or witness's) own words, what happened? What are the specific details prior, during, and after the incident which gave rise to the complaint? What specifically was the complainant's (or witness's) involvement? What, if any, relationship may exist between any of the  involved parties? What was the mechanism of injury? What outcome is the complainant seeking to achieve by contacting OPS and making a complaint?

c) <u>Where:</u>  Where did the incident occur? What specific details can the complainant or witness provide about the location where the incident occurred?

d) <u>When:</u>  When did the incident happen (date and time)? When did the complainant first become aware of the misconduct (was the complainant the involved party or are they reporting on behalf of someone else)?

e) <u>How:</u>  How did the complainant become aware of the incident (that is, in  cases where the complainant may be filing the complaint on behalf of  someone else)? How did the incident unfold or develop? How can OPS learn more about the incident?

f) <u>Why:</u>  Why does the complainant believe the misconduct may have taken place? Why did the complainant decide to file a complaint with OPS?

Typically, the preliminary process is completed within fifteen (15) days of the filing of the complaint but may be impeded by delays in acquiring information or data that is outside of the Investigator's control. Quickly completing the preliminary review process will help ensure that evidence related to an incident is not lost or destroyed, and witnesses' memories are not allowed to fade with time before an interview is conducted. If an on- site view or photographs may be of particular value, and the passage of time may diminish such evidence, OPS personnel should take

steps to secure the potential evidence during the preliminary review.

405. CREATING THE INVESTIGATION PLAN. After the Investigator has prioritized the contact of the complainant and the scheduling of an interview with the complainant, the Investigator must prepare and make available for OPS Administrator review an Investigation Plan to help focus and guide the investigation. The Investigation Plan provides an investigative strategy, identifies potential sources of information, sets out anticipated timelines for conducting the investigation, and helps the Investigator anticipate problems before they arise.

Properly planning the next steps of the investigative process requires that the OPS Investigator determine the most efficient and effective investigative strategy based on both the nature of the complaint and the evidence gathered thus far. The Investigator must also identify other potential sources of information that have not already been identified, establish anticipated timelines related to the various remaining stages of the investigation and completion, and attempt to identify any potential challenges or impediments that may impact the investigation and interfere with a thorough, objective, and timely resolution.

An important part of beginning an investigation of reported misconduct is understanding the nature of the allegations and the sources which will help in determining or disproving the existence of misconduct or wrongdoing on the part of the CDP employee. In addition to state and federal laws governing the conduct of law enforcement officers and other governmental employees, such as non-sworn CDP Members, the Division's General Police Orders ("GPOs") provide the Investigator with the means of determining whether the conduct or behavior proven during the course of an investigation violated established CDP policy or law. Referring to CDP GPO's will help the Investigator in identifying specific conduct alleged in the complaint in an effort to assess whether such conduct violates divisional policy.

With respect to better understanding and interpreting issues of law that may be present at the onset of an investigation, or may surface during the investigative process, OPS Investigators may seek the guidance of appropriate legal counsel representing OPS who does not have any actual or apparent conflicts of interest.

Key segments of the Investigation Plan include:

a) ALLEGATIONS & CLASSIFICATIONS. The assigned OPS Investigator must first create a witness list identifying the complainant, the named employee(s) and all potential witnesses, if any. The Investigator must then prepare a briefing document incorporating a brief factual summary of the underlying incident and factual claims or assertions made, and listing each and every specific allegation of misconduct. The document must also list the laws, CDP GPO's, police procedures, or training implicated such that, on the face of the complaint itself and the other preliminary information gathered through the procedures outlined above in Section 401(1) – (3), the law, CDP policies, procedures, or training would have been violated if the facts or actions alleged were later proven to be true.

OPS should consider as applicable "allegations" all those facts or officer actions described in the complaint that, if true, would violate the law, CDP GPO's, police procedures, or training. OPS, in making this determination, at this pre- investigation phase, shall draw all reasonable and favorable inferences to the person making the complaint.

If, upon review of the Investigation Plan, the OPS Administrator or his/her designee believes

19

that different, other, more or fewer misconduct allegations arising from the incident are warranted by the content of the investigative file to date, the OPS Administrator or his/her designee will outline such determinations in an Investigation Plan Review Memorandum and instruct that the appropriate allegations be addressed by the OPS investigation. The OPS Administrator will be the final decision-maker in that regard. The OPS Investigator shall add specific allegations, which must all correspond to specific CDP Manual section(s), throughout the investigation whenever new information is discovered that appears to implicate additional, different, or other CDP Manual section(s).

b) WITNESSES & OTHER KEY SOURCES OF EVIDENCE. The Investigator should identify and document the witnesses and other individuals who may have information relevant to the investigation. The Investigation Plan should consider the order in which witnesses are interviewed and any special considerations, such as whether any parties are anticipated to be unavailable for any period of time or whether there is a concern that a witness might be less willing to participate if too much time elapses. The Investigator should also outline the types of documentary evidence (some of which might have already been gathered during the initial Intake Phase), including but not limited to:

    i. CDP incident reports, CAD information, duty logs, and other similar performance databases and/or logs;

    ii. Property or evidence reports;

    iii. Booking reports and photos;

    iv. Documents establishing consent to search;

    v. Secondary employment permits;

    vi. Work assignments;

    vii. GPS records, if available;

    viii. Notes, email, text messages, correspondence, or memoranda;

    ix. Training protocols (including training curriculum, syllabuses or videos)

    x. Officer training records;

    xi. Operational or unit manuals;

    xii. Payroll or other personnel records;

    xiii. Cleveland Division of Fire or Emergency Medical Services records;

    xiv. Medical records as authorized by a patient; and

    xv. Other Departmental or City records of potential relevance.

The Investigator should further outline the types of physical evidence (some of which might have already been gathered during the initial Intake Phase), including but not limited to:

    i.     WCS and Dash Camera Video;

    ii.    Holding Cell video;

    iii.   CDP communications recordings;

    iv.   Video and/or audio from the scene (e.g., security systems from nearby businesses) or taken by witnesses (e.g., cell phone recordings);

    v.    Photographs, maps, and phone records; and

    vi.   Postings to social media sites.

c)   SECURING OF EVIDENCE. The OPS Administrator or his/her designee shall create and implement protocols which ensure the appropriate handling and documentation of the receipt of all physical and documentary evidence that may be collected during the course of an OPS investigation, including the prompt production of the WCS within fourteen (14) days and all other requested CDP information and records within thirty (30) days of the request. Such protocols will be submitted for the review and approval of the Board.

d)   MILESTONES & TIMELINES. The Investigator must set out an anticipated chronology and timeline for the investigation. That chronology and timeline should consider, respond to, and answer at least the following questions:

- Do all documents and physical evidence need to be collected and analyzed before witness interviews begin?

- In what order should the witnesses be interviewed and why?

- What is an objective estimate as to how long each step of the investigation will take? Could there be any problem in meeting these timelines or deadlines?

- Will holidays, training schedules, workload, or scheduled absences (whether for the Investigator, OPS staff or personnel, or witnesses) impact the investigation timeline?

- How long will it take to prepare the Investigative Summary Report and take other steps to organize the case file after the investigation is completed and before forwarding it to the OPS Administrator for review?

The Investigation Plan should include a schedule for the investigation that includes all steps to be taken before it can be forwarded to the OPS Administrator for review.

406.   EVALUATION OF RELEVANT EVIDENCE.  In every investigation, OPS will  consider all relevant evidence that tends to make the existence of any fact that is of consequence to the investigation of a given complaint more probable or less probable  than it would otherwise be without the evidence. In evaluating the credibility of any individual, there will be no automatic preference for a CDP Member's statement over that of the person filing the complaint or any independent witness or vice versa. OPS will not disregard a statement solely because the person who made the statement has some connection to either the complainant or the involved CDP employee. Nor will OPS reject a complaint because the complainant or a witness has a criminal

history. OPS will make all reasonable efforts to resolve material [2]inconsistencies between witness statements.

OPS will document in writing the investigation of each complaint, including all Investigatory steps taken, as well as findings and conclusions.

In addition to determining whether a CDP employee engaged in the conduct alleged in the complaint, and whether that conduct violated policy, procedure, or training, OPS may include recommendations on the following:

    1)  Is there a need for additional training, counseling, or other corrective measures?

    2)  Should CDP revise its policies, strategies, tactics, or training?

As evidence is obtained during the investigation, it will be carefully and thoroughly catalogued in the investigative file, including the source, date obtained, etc., examined and described in the case notes, and uploaded using the OPS exhibit-naming procedure. At the conclusion of the investigation, the value and importance of each piece of evidence must be weighed and described in the Investigative Summary Report.

407.   INTERVIEWS.

a)  PREPARING FOR INTERVIEWS.  Prior to any witness interview, and whether the witness is civilian or sworn, the OPS Investigator should review the Investigative Plan to determine the issues to be addressed with the individual to be interviewed, considering whether there is documentary or physical evidence that the Investigator wants to use. The Investigator shall prepare an outline of topics and subtopics to be covered with the interviewee.

b)  RECORDING INTERVIEWS.  Testimonial evidence is a critical part of the complaint investigative process. Such evidence consists of written or oral statements taken from the complainant, and any witnesses who may have factual information regarding the complaint. How such statements are preserved is especially important in ensuring that the testimony given accurately reflects the words provided by the person giving the statement. Therefore, an Investigator may ask that any written statement be signed by the person making such statement. Neither the person making the complaint, nor any of witness from whom a written statement is collected will be required to sign as a condition of the investigation proceeding.[3]

All interviews, whether in-person or by telephone, should be recorded in their entirety, as a safeguard to ensure that there is a record of exactly what was said during any interview. If any relevant discussion or review of a video or other evidence occurred prior to the recording, it should be noted on the record during the recorded interview. Again, the purpose of this practice is to properly preserve any statements that are provided during the course of an investigation. Video and audio recorded testimony provides the best assurance that any statements taken or testimony provided is true, accurate, voluntary, and not influenced by the

---

[2] Material is defined as "Facts or issues of a case or inquiry that can affect its conclusion or outcome." (Black's Law Dictionary, 2nd Edition Online)
[3] Employees of CDP may be required to affix their signature to any documents that they prepare in accordance with CDP policy or practice.

actions of the Investigator.

All CDP employees are obligated by Division policy to submit to recorded interviews. Witnesses who are not employed by CDP should be told the rationale for recording interviews and encouraged to consent.

If a civilian witness does not consent to a video or audio recorded statement, the refusal should be documented and the Investigator shall prepare a narrative summary of the interview immediately after, and not more than twenty-four (24) hours after, the interview has concluded.  If a person chooses not to provide a video or audio recorded statement, the OPS Investigator will take the statement in writing after which time the person making the statement will be asked to review the document to ensure that it accurately reflects the information that has been provided.

The OPS Investigator should advise any civilian witness who is concerned about providing consent for a video interview that video-recorded interviews of all witnesses (whether officer or civilian) are generally the best practice  as recorded interviews allow a reviewer to observe demeanor, appearance, and gestures in addition to documenting and recording the verbal statements of the witness. If interviewees bring their own recording devices to the interview, they will be permitted to create their own recording of the interview. Upon request, OPS will refer witnesses to the City's Public Records Portal to make a public records request for a copy of the interview.

c)  CONDUCTING INTERVIEWS.  Where there are significant facts in dispute, it is a best practice to conduct in-person interviews of witnesses who have material information to provide. The OPS Investigator must ensure that the Investigator's demeanor during all interviews is respectful, courteous, and professional.  Each person interviewed should be addressed by his or her surname (e.g., "Mr. Jones" or "Mrs. Smith" or "Officer Smith") in order to maintain formality and neutrality. Civilian witnesses may be accompanied to the interview by a representative of their choosing.

The Investigator should avoid forming any opinion regarding the person being interviewed and, instead, focus on obtaining as much information and evidence as possible. The Investigator must also avoid expressing an opinion regarding how the case will or should be decided. If the Investigator believes that it will be difficult to maintain such neutrality with any witness for any reason, he or she should consult with an OPS supervisor and action should be taken to ensure a fair and unbiased investigation.

Although the nature of the complaint may make the interview uncomfortable at times, the Investigator must not avoid asking the necessary questions of any witness. Specific and sometimes direct questions must be asked in order to address the elements present in each allegation. At times, it may be necessary for the OPS Investigator to challenge assertions or probe further when witnesses provide incomplete, vague, imprecise, or unreasonable responses.  Where there may be a discrepancy between the interviewee's testimony and other testimony or evidence, the OPS Investigator should question the interviewee about the discrepancy without expressing judgment.

Interview questions should address the elements present in the allegation(s) raised against the named employee.  Some witnesses may be able to speak to all elements of all allegations, while

other witnesses may offer more limited or targeted information.

Open-ended and probing follow-up questions must be asked in order to fully understand what the person being interviewed saw, heard, and otherwise knows about the matter under investigation. Leading questions (which are those that can typically be answered with a "yes" or "no" or where the answer is implied or strongly suggested in the question) should be avoided. Generally, interviews should move from broad to more specific questions, with relationships among any parties present at the incident, as well as any other witnesses, established.

Where feasible, OPS Investigators should use tools such as maps, diagrams, photos, or videos with the individual being interviewed to help explain what happened. If acronyms or special terminology are used during the interview, ask the interviewee to explain it for the record. When interviewing non-police personnel, OPS Investigators should attempt to avoid the use of police terminology or jargon, as the use of terms and concepts that are familiar to the public ensure that interviewees understand what they are being asked.

At the beginning of each interview, the Investigator should determine if any witness has been exposed to any evidence (to include other witnesses or video of the incident) which may impact their perception or recollection of the incident under investigation. Probing questions may be necessary to ensure that the information being provided is based on the witness' memory and perception of the event and not the memory or perception of another person or mechanism (such as a video recording).

At the conclusion of all interviews, the Investigator should ensure that he or she has all current contact information for the witness. Witnesses should be told that OPS may need to follow up with them if necessary. Interviewees who are not CDP employees should be encouraged not to talk about the interview or incident with anyone else out of fairness to all persons involved and to ensure an objective, fair, and unbiased investigation.

d) LOCATING AND INTERVIEWING INDEPENDENT WITNESSES (E.G. "CANVASSING" FOR WITNESSES). Every effort will be undertaken by the Investigator to inspect the location where the subject incident occurred. Steps will be undertaken to identify the existence of independent witnesses, and to locate possible video surveillance technology that may have captured the police-complainant interaction. This step in the investigative process may precede the Investigator's initial meeting with the complainant in those cases where an early response to the scene would increase the likelihood of gathering evidence.

Information obtained from witnesses located during a canvass of the area should be preserved by audio or video recording.

In the event use of audio or video technology is unavailable at the time, or the witness refuses to be audio or video recorded, the Investigator will provide the witness with a Witness Statement Form to complete and sign, if possible. The inability, impracticality, or refusal of a witness to complete the Witness Statement Form should be documented in the investigative file.

e) CONDUCTING AN INTERVIEW OF A CDP EMPLOYEE. The Investigator will send notice to the CDP employees' supervisor or Commanding Officer requesting an in- person interview with the CDP employee who is the subject of the complaint. Additionally,

correspondence will be forwarded to any relevant CDP employees who may have been witnesses requesting an in-person interview.

Prior to the interviews taking place, the Investigator will take steps to obtain any written reports previously prepared by the CDP employee or CDP witnesses, and any and all audio or video recordings that may be in existence and in the possession of CDP. Any outlines or questions prepared in advance, along with notes taken by the Investigator during the course of the interviews, will be made part of the investigative file.

Pursuant to CDP policy, the Chief of Police will order employees who witnessed or participated in an incident that is the subject of an OPS complaint to cooperate with the OPS investigation, including submitting to an in-person interview.

OPS Investigators should ensure that interviews of CDP employees are scheduled in a timely manner and that any failure to cooperate in the timely attendance at OPS interviews by CDP employees is reported immediately to the OPS Administrator for appropriate action with CDP command staff.

At the beginning of an employee interview, it shall be determined and stated on the record whether the employee is voluntarily making a statement or is doing so under compulsion.

CDP employees should be asked about their understanding of the policy or policies at issue or implicated by the allegations and their understanding of all related training.

In nearly all instances, the OPS interview of a CDP employee should be conducted in person. During an in-person interview of a CDP employee, the CDP employee may elect to have a representative of the employee's union present. The primary role of a union representative during an interview is to protect the contract rights of the employee. Unless the purpose of a union representative's participation is reasonably connected to the protection of a contract right of the employee, the union representative must not be allowed to interrupt or otherwise disrupt an OPS interview. The OPS Investigator should invite the union representative to place any objections on the record at the end of the interview.

In general, the subject employees(s) is/are interviewed after all other evidence is compiled. There will be cases, however, when an initial interview of a subject employee may need to be conducted early in the investigation to ensure all investigative tasks can be identified in a timely manner. Re-interviews of the complainant, witnesses or subject employees may be necessary when new or different information or allegations have been developed during the course of an investigation.

CDP employees are to be given a specific order by the Chief of Police not to discuss the matter or their interview with any unauthorized persons, which will almost always be all individuals who are not their union or legal representative(s).

408.  DUTY TO REVIEW AND EVALUATE EVIDENCE. As evidence is obtained during the investigation, it should be carefully and thoroughly catalogued in the case file in IAPro (including the source of the evidence, date that the evidence was obtained, etc.), examined and described in the case file, and uploaded to IAPro. At the conclusion of the investigation, the value of each piece of evidence must be weighed and described in the Investigative Summary Report. Care

should be taken to mitigate the effects of bias (conscious or unconscious on the part of the Investigator).

OPS Investigators will make all reasonable efforts to resolve material inconsistencies between witness statements.

409. DUTY TO COMPLETE AN INITIATIED INVESTIGATION.  OPS will not terminate an investigation simply because the complainant seeks to withdraw the complaint or is unavailable, unwilling, or unable to cooperate with an investigation. OPS will continue the investigation and reach a finding, where possible, based on the evidence and investigatory procedures and techniques available.

410. ACCESS TO RELEVANT DISCIPLINARY INFORMATION.  In order to ensure a thorough investigation, OPS Investigators may need access to any and all relevant disciplinary information in the record of an officer who is the subject of a current investigation. Any impediment to obtaining such records should be promptly reported to the OPS Administrator for resolution with CDP.

411. PREPARING THE INVESTIGATIVE SUMMARY REPORT. After review of all relevant reports, materials, and interviews the Investigator will prepare a report outlining the investigation to include the following: a description of the complaint, applicable CDP policies, investigative steps taken, a synopsis of all witness statements and evidence, and a deliberative analysis.

In addition to providing the information necessary to ensure informed findings as to whether an officer committed the conduct alleged in the complaint and whether the conduct violated policy, training or legal standards, the Investigative Summary Report must consider whether:

 (1) The incident indicates a need for additional training, counseling, or other corrective measures; and

 (2) The incident suggests that CDP should revise its policies, strategies, tactics, or training.

 a) FORM AND FORMAT OF THE INVESTIGATIVE SUMMARY REPORT.  OPS Investigative Summary Reports begin with the allegations and elements within each allegation followed by the testimonial, documentary, or physical evidence that is relevant to each such allegation or element listed and discussed in association with it. While this approach means that some evidence may be repeated when it is relevant to more than one allegation or element, this will help subsequent decision-makers sort through the information and more easily, fairly, accurately, and timely arrive at the disposition.

 All persons who have been interviewed and listed in the Investigative Summary Report will be identified as either as the complainant, witness, persons with specialized knowledge, or CDP employee.

 b) IMPORTANT FEATURES OF THE INVESTIGATIVE SUMMARY REPORT. Investigators shall refrain from making credibility determinations related to the person who brought the complaint, witnesses, or the subject employees(s) unless there is credible and objective evidence to support such a determination. To the extent, the Investigator deems such a determination to be material to the conclusions, such a determination should be thoroughly documented.  There will be no automatic preference for an employee's statement

over the statement of a civilian or vice-versa.

412.   INVESTIGATOR FINDINGS & RECOMMENDATIONS. Once the OPS investigation has been completed, the OPS Investigator shall confer with the OPS Administrator or his/her designee in order to determine the appropriate disposition of each allegation in the complaint. The Investigative Summary Report shall contain the Investigator's recommended findings, conclusions, and/or other non-objective determinations about, regarding, or related to the investigation.

## 500.   TIMELINES & MILESTONES

501.   TIMELINESS OF INVESTIGATIONS.  The timeliness of an investigation is a measure of how efficient the Investigatory process functions.  It also helps to instill public confidence in the citizen complaint and investigation process.

It is the goal of OPS to resolve all complaints brought to their attention within forty-five (45) days of receipt for Standard complaints and within seventy-five (75) days for Complex complaints. Investigations which exceed these time periods will be brought to the attention of the  OPS Administrator. A written request for an extension will be filed by the Senior Investigator, forwarded to the OPS Administrator and made part of the investigative file. In addition, the complainant will be notified as to the specific reasons for the delay, and a projected timeline for completion.

A number of factors influence how swiftly an investigation may be completed. The case load of OPS investigative staff and the overall capacity of the office to manage the number of investigations pending resolution is a factor that has a realistic impact on how quickly complaint investigations are completed and scheduled for review and  adjudication by the Board. Both of these considerations are the responsibility of OPS to effectively manage and resolve to ensure that citizen complaints are not impeded, and swift and impartial accountability results.

However, there are also factors that influence the timeliness of an investigation that may be outside the immediate control of OPS staff, including the nature and complexity of an investigation, immediate access to certain documents or records that may be in the custody of CDP or other entities, the continued cooperation of the complainant, and access to relevant witnesses. Additionally, the duty status of the CDP employee who is the subject of the complaint may also impact the speed in which an investigation is accomplished. For example, if a CDP employee has been relieved from duty, is incapacitated, or on approved leave during the course an investigation an Investigator may be precluded from obtaining a statement and, thus, reaching an investigative conclusion may be delayed.

In any case where the unavailability of a witness (including a witness or subject employee) is the cause of a substantial delay in the completion of an OPS investigation, the Investigator will advise the OPS Administrator to determine if the investigation may proceed without a statement or whether the investigation must be held in abeyance until the witness becomes available for an interview.

## 600.   OPS ADMINISTRATOR'S REVIEW OF THE INVESTIGATIVE FILE

601.   REVIEW OF INVESTIGATION. Upon completion of the investigative report, the entire investigative file will be submitted to the OPS Administrator or his/her designee for review to

ensure that it is complete, thorough, and objective.

The criteria the OPS Administrator or his/her designee must consider includes, but will not limited to:

1)  Was all relevant evidence collected?

2)  Were all witnesses contacted and interviewed when possible?

3)  Were all interviews thorough?

4)  Were all applicable OPS procedures followed?

Testimonial evidence (statements made by involved parties and witnesses) must be carefully weighed and evaluated as to relevance and credibility. For example, the reviewer must avoid giving any greater or lesser weight or credence to an individual's testimony because of that person's position (including employment by CDP or another City entity), race, ethnicity, gender identity, economic status, sexual orientation, etc. Only objective criteria relating directly to the truthfulness or credibility of the person should be used in deciding what weight is to be given to his or her testimony.

602.  DEFICIENT, INCOMPLETE, OR UNSATISFACTORY  INVESTIGATIONS.
If an investigation is incomplete, unsatisfactory, or deficient in any way, the Administrator will direct the Investigator to take whatever additional investigative steps deemed necessary to thoroughly and satisfactorily complete the investigation.

Where the OPS Administrator has any concerns about the investigation, or determines that further investigation is necessary, the Investigator will complete the assigned steps as expeditiously as possible. The Investigative Summary Report will then be amended and re-submitted to the OPS Administrator for further review and, if appropriate, approval.

603.  DUTY TO UPDATE DATABASE UPON RECEIPT OF FILE.  Upon the Administrator's receipt of the investigative file, the OPS Secretary will update the IAPro database to reflect the status of the investigation and ensure that all relevant fields in the database have been updated and completed.

604.  OPS FINDINGS.  Upon concluding that the OPS Investigation is complete, the OPS Administrator or his/her designee must review the recommended findings contained in the Investigative Report in order to ensure they are appropriate and defensible. Any findings that are not appropriately made and based upon the evidence contained in the OPS file will be changed and updated as directed by the OPS Administrator or his/her designee. The OPS Administrator or his/her designee will ensure that written findings as to each allegation in the complaint will include appropriate reasoning for each finding.

a)  PREPONDERANCE OF THE EVIDENCE STANDARD.  The applicable standard governing any and all of the Administrator's findings, conclusions, and/or other non-objective determinations shall be by a preponderance of the evidence. The preponderance standard is defined as, based on all of the evidence it is more likely than not that conduct inconsistent with CDP policy, procedure or training has occurred or has not occurred. As further defined in Black's Law Dictionary, a preponderance of evidence is the recognition

that "the greater weight of evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other."

b) CATEGORIES OF FINDINGS.  The only findings that an OPS Investigator may recommend are as follows:

   i. **SUSTAINED:** If the preponderance of the evidence supports a finding that the alleged conduct occurred and the officer's actions were inconsistent with law or CDP GPOs, training, or procedures, the recommended finding will be "Sustained." A complaint may be "sustained in part" if the investigation revealed sufficient evidence to support a finding of a policy violation on one or more, but not all, of the complainant's allegations. A complaint may also be "sustained for a violation not based on original complaint" if the investigation reveals evidence of misconduct that was not included in the complainant's original allegation but arose out of the incident that is the subject of the complaint.

   ii. **EXONERATED:**  The preponderance of the evidence gathered throughout the investigation supports a finding that the alleged conduct occurred but the officer's actions were consistent with law, CDP GPOs, training, or procedures.

   iii. **UNFOUNDED:**  The preponderance of the evidence supports a finding that the alleged conduct did not occur.

   iv. **INSUFFICIENT EVIDENCE:** If the preponderance of the evidence fails to establish whether the alleged conduct did or did not occur, the Investigator will make a recommended finding of "Insufficient Evidence."

605. DISCIPLINARY RECOMMENDATIONS. OPS shall not make any recommendations as to potential discipline. Instead, OPS must make recommendations only as to the disposition of specific allegations of violations of the law or CDP policy, procedure or training.

606. NOTIFICATION AFTER OPS FINDING DETERMINATIONS. The OPS Secretary will prepare and mail a letter to the complainant and the subject CDP employee(s) advising that the investigation has been concluded and the date that the Board will convene to review the matter. The letter will also advise the complainant and the subject employee(s) of the opportunity to attend the Board meeting. Information regarding the hearing process and disciplinary recommendations can be found in the manual governing the Board.

607. FORWARDING OF INVESTIGATION AND WRITTEN CONCLUSIONS TO CIVILIAN POLICE REVIEW BOARD. OPS will forward all investigations and its written conclusion to the Board in sufficient time for Board to consider them no later than the second regularly scheduled Board meeting following the completion of the investigation.

## 700.  ADMINISTRATIVE DISMISSALS

701. GENERALLY. Administrative dismissal may be appropriate for those limited instances where: the individual complained of is not a CDP employee; the employee referenced in the complaint

cannot be identified despite the best efforts of the agency; the preliminary investigation reveals that the delay in police services was due to workload or otherwise unavoidable; the conduct alleged involves an off-duty conduct of a civil nature (unless the alleged conduct, or its effects, constitute misconduct or have a substantial nexus to the officer's City employment); or, the complaint is about receiving a uniform traffic ticket and/or parking infraction notice without any additional claims of racial profiling, illegal search, excessive force, or other allegations within OPS's jurisdiction.

On an interim basis, the OPS Administrator has been authorized to administratively dismiss cases without the prior review or approval of the Board. During the pendency of the Consent Decree between the United States and the City addressing the performance of the CDP and related organizations and systems, ongoing reviews and audits of the administrative dismissal process will be conducted by the Monitoring Team to ensure compliance with OPS policies and the Consent Decree.

The administrative dismissal of a complaint must be accompanied by a completed Administrative Dismissal Form. (*See* Appendix H). The form must detail all relevant facts and information in support of the decision and must be completed by the OPS Administrator or his/her designee and the assigned Investigator.

The Administrative Dismissal Form will be promptly completed when facts supporting administrative dismissal become apparent. Written notice of the administrative dismissal (with an explanation for the reason for the dismissal) shall be mailed to the Complainant promptly after the dismissal has been documented. The dismissal letter must also inform the complainant of his/her right to request a review of this decision by the Board or the CPC if such request is received by OPS within two weeks of the receipt of the dismissal letter, or if review is sought by the CPC, in accordance with Charter Section 115-5.

702.   STANDARD OF REVIEW. OPS will only administratively dismiss a complaint when the undisputed facts at issue clearly indicate that the complaint fits into one of the six (6) categories eligible for such disposition listed in Section 703 below.. The decision should be made only after all facts have been gathered and thoroughly reviewed.

703. CATEGORIES OF ADMINISTRATIVE DISMISSAL.  The ONLY categories of cases for which an administrative dismissal can be appropriately recommended are:

   a) <u>NON-CDP EMPLOYEE</u>.  Complaints made regarding the conduct of individuals not employed as a CDP Member are eligible for administrative dismissal. Should a citizen initiate a complaint about the conduct of an individual employed in another department within the City other than CDP, or another government or non-government entity, the Intake Coordinator or the assigned Investigator will promptly notify the complainant that OPS lacks the authority to investigate individuals not employed by CDP. The complainant should be referred to the authority with jurisdiction to resolve the complaint. Outside agencies should not be contacted directly by OPS without the express consent of the complainant.

   Proper documentation supporting a recommendation for administrative dismissal of a complaint on this basis should consist of a thorough explanation of the process by which the determination is made that the incident did not involve a CDP Member.

   b) <u>UNIDENTIFIABLE OFFICER</u>.  Instances where a diligent investigation fails to produce the identity (name, badge number, and/or zone car assignment) of a specific subject CDP Member

are eligible for administrative dismissal. The assigned Investigator will promptly notify the complainant of the inability to pursue charges against employees who cannot be identified.

The Investigator must document the process by which the determination was made that no name, badge number, or other identifying information exists. This documentation should detail the methods employed by the Investigator to confirm the lack of identification. The Intake Coordinator or assigned Investigator will notify the complainant with a fulsome explanation as to why the OPS investigation was unable to identify the involved employee(s).

c) <u>UNIFORM TRAFFIC TICKET (UTT) AND/OR PARKING INFRACTION</u> <u>NOTICE (PIN)</u>. Complaints regarding the issuance of moving traffic citations and parking violations are eligible for administrative dismissal when the issuance of the citations involved no alleged misconduct by a CDP Member. However, complaints alleging that the issuance of a citation by a CDP Member involved misconduct or other actions within OPS jurisdiction—including unprofessionalism, harassment, bias, discrimination, or profiling will be fully investigated and not subject to administrative dismissal. Where the complaint is administratively dismissed in total, the Intake Coordinator or assigned Investigator will notify the complainant with an explanation as to why the OPS investigation will not proceed.

d) <u>UNAVOIDABLE WORKLOAD DELAY</u>. In instances where a complaint alleges a delay in police services and the preliminary investigation reveals that the delay was due to unavoidable workload issues, those complaints will be subject to administrative dismissal. The assigned Investigator must document the process by which the determination was made that the delay in service was unavoidable. This documentation should detail the unavoidable workload issues that prevented the CDP Member from providing reasonably prompt service. The Intake Coordinator or assigned Investigator will notify the complainant with an explanation as to why the CPD Member was prevented from providing reasonably prompt service.

e) <u>OFF-DUTY CIVIL CONDUCT</u>. In instances where a complaint is made regarding the conduct of an officer while off-duty, that is of a civil nature, the complaint will be subject to administrative dismissal unless the alleged conduct – or its effects – constitute misconduct or have a substantial nexus to the officer's employment. The assigned Investigator must document the process by which it was determined that the alleged conduct occurred while the officer was off-duty and was not substantially connected to his/her employment. The Intake Coordinator or assigned Investigator will notify the complainant with an explanation as to why OPS has no jurisdiction to conduct an investigation.

All administrative dismissals for Off-Duty Civil Conduct will be promptly referred to the Internal Affairs Unit in order to allow CDP to independently evaluate whether any allegation of off duty misconduct constitutes a violation of CDP policy.

**800. FINALIZING CIVILIAN POLICE REVIEW BOARD ACTION**

801. Upon the Board's final disposition, the investigative file shall be returned to the OPS Administrator. The OPS Administrator shall direct the Board Secretary to notify the complainant and subject CDP employee(s) of any further disciplinary decisions by the Chief, executive head of CDP, or the Board as outlined in the CPRB Manual, Section L.

802. In those cases where the Board makes a "sustained" finding, the OPS Administrator will direct that a disposition letter be prepared and mailed to the complainant within fifteen (15) calendar

days of the Board's decision. The OPS Administrator will also promptly direct that a findings letter be delivered to the Chief of Police or executive head of CDP requesting that a charging document be issued and a final report of disciplinary action returned to OPS for inclusion in the case file. The Chief or executive head of CDP must  presume the fact findings and recommendation from the Board are correct and defer to the Board's fact fining and recommendation absent affirmative proof by clear and convincing evidence that the findings and recommendations are clearly erroneous.

803. Absent clear and convincing evidence that the Chief or executive head of CDP believes would justify disregarding or modifying the Board's fact finding and disciplinary recommendation the Chief or executive head of CDP will impose the minimum discipline that the Board has recommended. Upon receipt of the Chief of Police's or Director of Public Safety's final disciplinary outcome, imposing the minimum discipline recommended by the Board, OPS shall notify the complainant of the outcome and inform the complainant of his or her right to appeal the complaint outcome to the CPC. If the Chief or executive head of CDP believes that the clear and convincing evidence exists that would justify disregarding or modifying the Board's fact finding and disciplinary recommendations, the Chief or executive head of CDP will notify the Board in writing within ten (10) days of any refusal to impose or lesser, alternative discipline to be imposed.  Concurrent with such notification, the Chief or executive head of the CDP will detail the reasons for disregarding the Board's recommendation and will provide the Board with clear and convincing evidence justifying their decision.  If the Board agrees with the Chief or executive head of CDP's decision, OPS will utilize the written findings from CDP in order to provide a complete explanation for the decision to the complainant, along with an explanation of the process that was used to adjudicate the complaint.

804. If the Board does not agree with the clear-and-convincing evidence provided by the Chief or executive head of the CDP refusing to impose the Board recommended discipline, the Board may, in its discretion, overrule the Chief or the executive head of the CDP and order CDP or the executive head of CDP to discipline the officer or employee up to and including termination. Following the order of the Board and upon receipt of the confirmation that the Chief or Director of Public Safety has imposed the minimum discipline recommended by the Board, OPS shall notify the complainant of the outcome and inform the complainant of his or her right to appeal the final decision to the CPC.

805. In those cases where a Board finding is not "sustained," the OPS Administrator will direct that a final disposition letter be prepared and mailed to the complainant within fifteen (15) calendar days of the Board's decision. OPS shall obtain from the Board the basis for the "not sustained" finding and provide that explanation to the complainant prior to closing out the complaint.

806. Notwithstanding the disciplinary outcome of a complaint following consideration and finalization of the matter by the Board, the CPC, at its discretion, has the authority to make a final decision for the City about whether to impose officer discipline where it was not imposed, or to increase discipline should the CPC determine that the corrective action imposed by the Board is insufficient. OPS shall notify complainants on behalf of the Board of their right to seek ultimate review by the CPC on the discipline decision.

**900. DUTIES OF OPS AND OPS PERSONNEL**

901. DUTIES OF OPS ADMINISTRATOR.

a) ENSURE ADHERENCE OF ALL OPS PERSONNEL TO ALL PROVISIONS OF THIS MANUAL. The success or failure of OPS Investigators in effectuating full, fair, thorough, complete, unbiased, and timely investigations depends on strong, focused, and effective leadership by the OPS Administrator.

b) MEET WITH ALL OPS PERSONNEL INDIVIDUALLY, ONCE PER WEEK, TO DISCUSS CURRENT PROGRESS ON OUTSTANDING INVESTIGATIONS. The OPS Administrator must meet at least once per week with OPS personnel to discuss the status of all ongoing, pending, outstanding, or otherwise incomplete cases assigned to the Investigator.

c) DEVELOP OPS TRAINING. It shall be the responsibility of the Administrator, with the input of staff, to develop and implement a professional development training schedule. This will include the development and maintenance of a staff training curriculum for OPS staff to be presented at scheduled staff meetings. These brief training modules (15-20 minute blocks) shall pertain to topics related to civilian oversight, applicable law and best practices, and law enforcement practices pertaining to high risk critical tasks (i.e. arrest, search and seizure, use of force, bias-free policing, etc.). The training curriculum for each phase and records pertaining to receipt of the training shall be well documented and maintained within OPS staff personnel files and OPS indices.

d) ATTEND EXECUTIVE-LEVEL LEADERSHIP TRAINING. The OPS Administrator shall attend appropriate executive-level leadership training once annually. Such training should be identified at the beginning of the calendar year and reviewed by the Board for approval.

e) DEVELOP PERFORMANCE EVALUATION PLAN FOR ALL OPS PERSONNEL. It shall be the responsibility of the OPS Administrator to develop a performance evaluation plan for all OPS personnel. Such a plan shall reflect relevant performance measures and outcome goals, and define both current and future objectives for each OPS employee.

Measures:

Either on the anniversary of hire or at a specific calendar date (e.g., January 1st, July 1st, September 1st) each employee shall have an annual performance appraisal and individual development plan completed by his/her supervisor and reviewed and approved by the OPS Administrator. Nothing in this provision prevents the OPS Administrator from providing oral or written feedback on an occasional or continuing basis to employees who perform their work in an exemplary or otherwise commendable manner, or to thoroughly document and provide specific remedial direction to effectively address unsatisfactory performance, or performance that is in need of approval.

f) CONSIDER NECESSARY CHANGES, UPDATES, OR AMENDMENTS TO OPS MANUAL. As set forth in Section 1001 of this Manual, it shall be the responsibility of the OPS Administrator to review, update, or amend the OPS Operational Manual as needed by December 31st of each calendar year. The Administrator will follow the procedures outlined in Section 1001 to effectuate this duty.

g) ESTABLISH OUTCOME MEASURES AND REPORTS REGARDING INVESTIGATIONS THAT DO NOT MEET ESTABLISHED GOALS REGARDING QUALITY AND TIMELINESSS. It shall be the responsibility of the OPS Administrator to establish outcome measures and reports regarding the percentage of investigations that do not meet the established goals, specifically identifying the obstacles that prevented the investigation from being completed within the target time-frame. Such reporting shall be forwarded to the Board no later than December 31st of each calendar year.

h) ENSURE FULL AND EFFECTIVE IMPLEMENTATION OF OPS CASE IMPLEMENTATION SYSTEM. It shall be the responsibility of the OPS Administrator to ensure the full and effective implementation of a case management system to include transitioning to the IA Pro platform and regular supervisor review and oversight of cases.

i) DEVELOP PLAN FOR OPS-CDP RELATIONSHIP. Establish and implement a system and plan to improve or enhance OPS relationship with CDP in order to ensure accountability and officer cooperation, promote efficient and effective investigative procedures, and build trust in the complaint process. Establish and implement a plan to improve the relationship of OPS with CDP by standard, routine and regular communication with the Chief, Supervisors, and District Commanders.

j) DEVELOP PLAN FOR COMMUNITY TRUST. Establish and implement annual plan to build community trust and confidence in OPS. Establish new annual plan by December 31st of each calendar year.

902.    DUTIES OF OPS INVESTIGATORS. OPS Investigators are primarily responsible for assisting with intake and conducting investigations of OPS cases assigned to them.

a) Generally, Investigator duties include:

   i. Assisting with intake of misconduct complaints;

   ii. Preparing investigative plans for complaints assigned for an OPS investigation;

   iii. Conducting investigations of complaints assigned for an OPS investigation;

   iv. Drafting Investigative Summary Reports and administrative dismissals;

   v. Providing case update reports to OPS supervisors on a weekly basis; and

   vi. Initiating and updating complaint-related information in the case management system.

b) Investigators are expected to:

   i. Conduct thorough, objective, and timely investigations of complaints, reach sound neutral conclusions based on investigation results and maintain confidentiality regarding process and outcomes in accordance with all legal requirements.

   ii. Prioritize and manage multiple investigations to ensure evidence is quickly gathered and contractual timelines are met.

   iii. Communicate in a fair and impartial manner with both complainants from a broad

spectrum of diverse communities and CDP officers and employees, and to exercise tact and diplomacy in dealing with sensitive, complex and confidential issues and situations.

iv. Understand and act consistently with the independent function of OPS, and with an understanding of the importance of public trust, so that all intakes and investigations are above reproach and all those involved in the OPS process are treated fairly.

v. Be well versed in the operations of CDP, including policies and procedures, supervisory responsibilities, and training and tactics.

vi. Be knowledgeable about accepted principles and practices of law enforcement, including use of force issues, search and seizure issues, constitutional law, state law, and investigative procedures.

vii. Seek professional development opportunities that enhance and strengthen their investigative skills and knowledge of civilian oversight "best practices."

c) Highly qualified Investigators will possess the following knowledge, skills and abilities:

i. <u>Ability to Maintain Confidentiality.</u>  Investigators have a moral and a legal obligation to maintain confidentiality out of respect for citizens, complainants, our employees, our policies, and the law.

ii. <u>Documentation.</u>  Documentation must be accurate, concise and thorough and not exhibit bias.

iii. <u>Fairness.</u>  Investigators must treat everyone involved in the investigation fairly, respecting their rights and explaining their responsibilities through each step of the investigative process.

iv. <u>Knowledge.</u>  Investigators must know the law, CDP policy and their role when assigned to an internal investigation. They must not hesitate to ask questions if they come across something which with they are not familiar.

v. <u>Responsibility.</u>  Investigators must recognize that when conducting an internal investigation, they have an obligation to employees, to CDP and to the community – but first and foremost to discover the truth.

vi. <u>Patience.</u>  Investigators need to be patient. They need patience to locate, collect and review large amounts of evidence and they need patience to deal with the inevitable obstacles and challenges they will encounter during an investigation.

vii. <u>Follow the evidence.</u>  Investigators must begin every investigation with an open mind. Good Investigators do not assume anything. They are prepared for anything to emerge as they begin to investigate. They do not accept or reject any possible explanation until they have the evidence to do so.

viii. <u>Skepticism.</u>  Good Investigators do not necessarily accept evidence from anyone at face value. They look for corroboration wherever possible.

ix. <u>Adaptability.</u>  Investigators have to be flexible in their approach. No two investigations

35

are the same and all present unique challenges and opportunities. Investigators should be good at identifying both and developing strategies to deal with them.

x. <u>Empathy and understanding.</u>  A degree of empathy will assist an Investigator to better engage with and understand the perspectives of the people with whom they are interacting.

xi. <u>Courage.</u>  It can take a great deal of personal courage to conduct misconduct investigations.

xii. <u>Judgment and common sense.</u>  Good judgment and common sense are much underrated qualities. Investigators sometimes have to make difficult decisions, including what issues to investigate, what investigative avenues to pursue and to what extent. They have to be able to justify why they chose to – or choose not to – interview someone. That takes sound judgment, based on common sense.

xiii. <u>Strategic thinking.</u>  Investigators need to be able to think ahead and think strategically. They need to be able to answer a range of challenging questions to ensure an effective investigation:

- What approach will work best?

- What are the possible obstacles?

- How should a failure to cooperate be dealt with?

- Is it possible to resolve or avoid a potential problem, before it arises?

- How should responsibility for a lack of cooperation and delays be dealt with in order to address the difficulties encountered?

905.  DUTIES OF OPS COMMUNITY ENGAGEMENT OFFICER.

a) Develop, manage and implement the OPS community engagement activities and services that are aligned with the OPS strategic plan, and work closely with other OPS Investigators, staff and volunteers to ensure integration and coordination of efforts.

b) Manage and track OPS Administrator's outreach briefing requirements and ensure proper briefings are ready for each event.

c) Support efforts to inform, educate, and build partnerships within the community per the guidance and direction of the General Manager and approval of the OPS Administrator.

d) Represent the OPS Administrator at community meetings and events as required.

e) Routinely attend CDP and CPC meetings and events, and provide a summary of outcomes for the OPS leadership.

f) Develop a Quarterly Newsletter, an Annual Community Plan, an Event Calendar, and community engagement activities for approval by the OPS Administrator quarterly.

g) Track all relevant community engagement metrics on the OPS website, social media, etc.

h) Perform other duties as assigned by the OPS Administrator.

906.   DUTIES OF OPS DATA ANALYST.

a) Manage all OPS data including creation, updates, and deletion. Provide quality assurance of imported data, commissioning and decommissioning of data sets, and processing confidential data and information according to guidelines.

b) Collect data to analyze trends and assess the effectiveness of investigation metrics.

c) Review, analyze, and provide statistical data for periodic reports to the OPS Administrator. Assist in the development of OPS annual, semi-annual, quarterly, and bi-weekly reports.

d) Support initiatives for data integrity and normalization including but not limited to:

   i.   Manage and design the reporting environment, including data sources, security, and metadata.

   ii.  Assess tests, implementing new or upgraded software, and assisting with strategic decisions on new systems.

   iii. Support the data warehouse in identifying and revising reporting requirements.

   iv.  Troubleshoot the reporting database environment and reports.

   v.   Evaluate changes and updates to source production systems.

e) Perform other duties as assigned by the OPS Administrator.

907.   DUTIES OF OPS INTAKE COORDINATOR.

a) Greet and assist citizens when they arrive for information, to file a complaint, or for procedural questions regarding a complaint. Ensure all information, questions, or concerns are answered as required. The OPS Intake Coordinator is responsible for handling all complaints from citizens.

b) Verify allegations of CDP officers and employees regarding complaints. Open all cases in IAPro and update information as required during preliminary analysis, notification letters, and dismissal letters.

c) Manage daily and weekly interview calendar and de-conflict all investigator activities regarding scheduling interviews.

d) Assist with requesting evidence on behalf of OPS Investigators. Maintain a spreadsheet of investigator requests and OPS complaints.

e) Under the supervision of the OPS Secretary, perform standard clerical work (i.e. notification letters and dismissal letters) and other duties as may be assigned.

910. ANNUAL REPORT. OPS must prepare a detailed, analytical, and comprehensive annual report that addresses the operations of OPS and the Board, the number and nature of OPS complaints received, OPS investigations conducted, and the reviews and adjudication of community initiated complaints. In this annual report, OPS must summarize at least the following:

a) A chart describing the process by which citizen complaints are accepted, investigated, reviewed and resolved;

b) The number and types of complaints administratively dismissed and the grounds for the closures;

c) An assessment of the types of complaints being received (based on their initial classification at intake) and an analysis of potential problematic patterns and trends;

d) An accounting of the disposition of complaints by complaint type (based on their initial classification at intake), the number and types of complaints investigated, and the average length of complaint investigations;

e) An accounting of the disposition of complaints by the Board and the ultimate decisions on such complaints, to include recommendations on findings and discipline and the ultimate resolution of such complaints;

f) Discussion of issues identified during the course of OPS' ongoing work regarding police practices, processes, training or policies; and

g) Performance measures developed and implemented by the OPS Administrator and the extent to which OPS has met those performance measures.

The report is to be completed and submitted to the Mayor, Director of Public Safety, Chief of Police, and the CPC by March 31st of each year. OPS must post the report on its website not later than five (5) business days after submitting the report to the Mayor, Director of Public Safety, Chief of Police, and CPC.

The OPS Administrator should, on an ongoing basis, provide to CDP and the Director of Public Safety, any available data or information which would inform CDP and the Director of Public Safety about patterns relating to police practices, processes, training or policies which may need attention from CDP or the Director of Public Safety.

911. INVESTIGATOR TRAINING. OPS Investigators will receive training, at least once per calendar year, that is adequate in quality, quantity, scope, and type and will include instruction relating to:

a) investigative skills, including proper interrogation and interview techniques; gathering and objectively analyzing evidence; and data and case management;

b) the particular challenges of administrative investigations of police conduct, including identifying conduct warranting investigation that is not clearly stated in the complaint or that becomes apparent during the investigation;

    c) properly weighing the credibility of civilian witnesses against officers;

    d) using objective evidence to resolve inconsistent statements;

    e) the proper application of the preponderance of the evidence standard; and

    f) CDP rules and policies, including the requirements of the Settlement Agreement between the United States and the City (Case: 1:15-cv-01046, Dkt. No. 413) and protocols related to administrative investigations of officer conduct alleged to be improper.

Such training should be provided by sources both inside and outside CDP, in order to ensure the highest quality training on investigative techniques and CDP policies, procedures, and disciplinary rules.

## 1000.  AMENDMENT TO OPERATING MANUAL, PROCEDURES, AND RULES

1001. PROCEDURE FOR AMENDING OPERATING MANUAL, INTERNAL RULES, AND

OPERATING PROCEDURES.  The rules contained within this Operating Manual, and the procedures and rules outlined here, may only be modified, revised, amended, replaced, or otherwise changed via the following process:

    a) The OPS Administrator must provide, in writing, any and all proposed changes to the Operating Manual to the Chair of the Board. The OPS Administrator must publicly announce any proposed changes, post such changes on the OPS website and take into consideration any public comment received.

    b) The Chair of the Board will be asked to respond, in writing, as to the Board's position as to whether the proposed change should be adopted.  The Chair of the Board shall put the measure up to a vote before the full Board prior to responding to the request and the Chair will provide a written response to the OPS Administrator.

    c) Only those changes approved by the Board may become effective as part of this Manual.

    d) The rules in the Manual take effect fifteen (15) days after their publication in the City Record.

    e) During the pendency of the Consent Decree between the United States and the City addressing the performance of CDP and related organizations and systems, any and all modifications, revisions, amendments, replacements, or other changes to this Manual must be approved by the Court overseeing implementation of the Decree.