# EXHIBIT B



**CIVILIAN  POLICE  REVIEW  BOARD**


**OPERATING  MANUAL  AND  PROCEDURES**

# CIVILIAN POLICE REVIEW BOARD

## OPERATING MANUAL AND PROCEDURES

### A. Purpose of the Police Review Board

1. The purpose of these procedures is to facilitate the operation of the Civilian Police Review Board (hereinafter "the CPRB" or "the Board"), including the review of public complaints filed against sworn police officers and non-sworn employees who are employed by the Cleveland Division of Police ("CDP") as authorized by the City of Cleveland Charter (§§ 115-2, 115-3, 115-4).

2. In order for this purpose to be achieved, the Board shall have the power to receive, cause investigation of, and recommend, and in some cases determine, the resolution of public complaints regarding misconduct allegedly committed by employees of CDP.

### B. Purpose, Scope, and Force of this Operating Manual

1. In addition to those set forth in the Cleveland Charter, this Operating Manual contains all of the rules, procedures, processes, and general operations of the Board. If rules, procedures, processes, or operations are codified or functionally operational elsewhere and potentially, apparently, and/or actually conflict with the provisions of this Manual, the provisions of this Manual control.

2. All provisions of this Operating Manual must be considered in a manner consistent with the Charter of the City.

3. All Board members and staff are employees of the City and therefore subject to all Human Resources ("HR") policies and procedures, including but not limited to those listed in the HR Policies and Workplace Policies manuals and the City Civil Service Commission Rules.

### C. Duties and Responsibilities of the Board, Its Members, and Staff

1. The Board, Board Members, and all Board staff must acquit themselves of the duties outlined here in a manner that is consistent with the following statement of ethics (adopted from the National Association for Civilian Oversight of Law Enforcement ("NACOLE") Code of Ethics). (See Attachment A.)

   a. Members of the Board have a unique role as public servants overseeing the conduct of law enforcement officers. The community, government, and law enforcement have entrusted members of the Board to conduct their work in a professional, fair and impartial manner. This trust is earned through a firm commitment to the public good, the mission of the Board, and to the ethical and professional standards described herein.

3

b. These standards are intended to be of general application. The spirit of these ethical and professional standards should guide Board members and staff in adapting to individual circumstances, and in promoting public trust, integrity and transparency.

c. Personal Integrity: Board members and staff will demonstrate the highest standards of personal integrity, commitment, truthfulness, and fortitude in order to inspire trust among Board stakeholders, and to set an example for others.

d. Avoid conflicts of interest: Board members and staff are expected to conduct themselves in a fair and impartial manner and recuse themselves when significant conflicts of interest arise. Board members and staff will not accept gifts, gratuities or favors that could compromise their impartiality and independence or that have a substantial and improper influence upon the performance of their duties. As public officials, Board members are bound by the City and State ethics laws.

e. Independent and Thorough Oversight: Board members and staff are expected to conduct all evaluations and reviews with diligence, an open and questioning mind, integrity, objectivity and fairness, and in a timely manner. Board members and staff are expected to rigorously test the accuracy and reliability of information from all sources and consider and present facts and findings without regard to personal beliefs or concern for personal, professional or political consequences.

f. Transparency and Confidentiality: Board members and staff are expected to conduct their activities openly and transparently (as permitted by applicable policy and law), to include providing explanation of CPRB and OPS procedures and practices to as wide an audience as possible. Board members and staff must maintain the confidentiality of information that cannot be disclosed by law and policy and protect the security of confidential records.

g. Respectful and Unbiased Treatment: Board members and staff must treat all individuals with dignity and respect, and without preference or discrimination including but not limited to the following protected classes: age, ethnicity, culture, race, disability, gender, gender identity, religion, sexual orientation, socioeconomic status or political beliefs.

h. Outreach and Relationships with Stakeholders: Board members and staff are expected to disseminate information and conduct outreach activity in the community as permitted by law and policy. Board members and staff pursue open, candid, and non-defensive dialogue with all stakeholders and seek to educate and learn from the community.

i. Self-examination and Commitment to Policy Review: Board members and staff seek continuous improvement in the effectiveness of civilian oversight of law enforcement programs in Cleveland. Board members and staff gauge their effectiveness through evaluation and analysis of their work product and seek to

emphasize policy review aimed at substantive organizational reforms that advance law enforcement accountability and performance.

j.  Professional Excellence: Board members and staff seek professional development to ensure competence. Board members and staff seek to acquire the necessary knowledge and understanding of the policies, procedures and practices of CDP and the Department of Public Safety and keep informed of current legal, professional and social issues that affect the community, the CDP, the Office of Professional Standards ("OPS") and the Board.

k.  Primary Obligation to the Community: At all times, Board members and staff place their obligation to the community, their duty to uphold the law and the goals and objectives of the Board, above personal self-interest.

**D. Organization and Meetings**

1.  Composition of the Board

    a.  The Board consists of nine members who are representative of the diverse communities within the City.

    b.  The Mayor appoints five members.

    c.  The City Council ("Council") appoints four members.

    d.  No more than one Board Member may be a resident of the same police district, unless the City establishes fewer than nine districts.

    e.  When reasonably feasible, at least one member of the Board should be between the ages of eighteen (18) and thirty (30) at the time of appointment and may be among the members appointed by either the Mayor or the Council. At least two members should be attorneys with either experience representing victims of police misconduct or criminally prosecuting police misconduct.

2.  No member of the Board may be currently employed as a law enforcement officer and no member may be a current or former employee of CDP.

    a.  The members of the Board holding the office as of November 2, 2021, may continue in office for the remainder of their terms recognizing that all of the police districts may not be represented until the service of those members is completed.

3.  Term of Membership

    a.  Terms of office for Board Members shall be four years.

    b.  No Board Member may serve more than two four-year terms when the second term begins less than four years after the end of the first term. However, a person

may be eligible for re-appointment four years after the end date of their second term.

    c.    Time spent fulfilling an unexpired term of two years or less shall not be considered as part of the two consecutive terms.

4.    Vacancies of the Board

    a.    Any of the following circumstances shall lead to a vacancy on the Board:

        1. Expiration of the member's term,
        2. Death,
        3. Removal, or
        4. Resignation of the member.

    b.    The Mayor may remove any Board Member, upon notice and hearing, for malfeasance, misfeasance, nonfeasance, or gross neglect of duty.

    c.    Vacancies during a term shall be filled in the same manner as original appointments for the unexpired term.

    d.    The Mayor and Council must fill vacancies within sixty (60) days of when they arise. Within thirty (30) days of any Board vacancy, including vacancies caused by the end of a term, the City must post an announcement of any vacancy and a request for applications to fill any vacancy. Members must be chosen from among the applicants.

    e.    A Board Member who desires to resign shall notify the Chair, the Mayor and the Clerk of Council of the resignation. If the Board becomes aware of a circumstance giving rise to a vacancy, other than expiration of a member's term or notice of resignation as outlined above, the Board Chair shall notify the Mayor and the Clerk of Council as soon as possible.

5.    Attendance & Participation

    a.    Board Members have a duty to use best efforts to attend all regularly-scheduled Board meetings.

    b.    Board Members have a duty to use all reasonable efforts to attend any special, emergency, or other similar meetings that are not regularly scheduled.

    c.    If a Board Member cannot attend a meeting or other function of the Board where official business will be conducted, the Board Member must provide notice to the Board Chair and/or the Board's Secretary as soon as possible. The Chair will have discretion to classify absences as excused or unexcused.

        1. An absence about which the Chair and/or Board Secretary have received advance notice of more than seventy-two (72) hours will be presumed to be excused; where advance notice of less than seventy-two (72) hours is

6

provided, the absence will be presumed to be unexcused unless the Chair identifies emergency or other extenuating circumstances that warrant the absence being classified as excused.

2. The CPRB Secretary will track all Board Member absences in an electronic database.

d. Board Members have a duty to be responsive to communications from the Board, other Board Members, and the Board's staff, including but not limited to telephone, electronic, and other communications.

6. Compensation

a. Members of the Board shall receive compensation as may be established by the Council through an ordinance.

7. Budget

a. The Board and OPS will have a budget separate from the Department of Public Safety's budget. The Board and OPS must receive a combined budget totaling at least 1.0% of the budget allocated to CDP pursuant to Charter Section 115-2[1].

b. The OPS Administrator shall prepare the Board's and OPS's budgets on behalf of, and with guidance from, the Board. The OPS Administrator shall present the budgets to the Board for approval by vote.

8. Officers

a. Board Chair

1. The Board shall select annually one Board member to serve a one-year term ("Term") as Chair. Selection shall be through a majority vote of the Board Members during a public meeting. To ensure that all Board Members can select a Chair who will enable the Board to best carry out its duties, the vote for filling the positions of Chair shall be conducted by a roll call vote of each Member with the Board's Secretary keeping a written record of each Member's vote and the written ballot process. After Board Members have verbally acknowledged their selections for the Chair, the Board's Secretary shall collect and tally the ballots and subsequently read the results. Any Board Member may request to inspect the written ballots after the results have been read.

---

[1] For operational purposes, CPRB and OPS have two separate budgets, each of which is separate from the Department of Public Safety's budget. Those combined budgets are derived from the allocated 1% outlined in Charter Section 115-4.

2. No person shall serve more than two consecutive Terms as the Board Chair, but, except as further provided, may be eligible for appointment two years after the end date of the second Term.

3. The Chair shall preside over all meetings of the Board and shall have the right to vote on all motions.

4. The Chair shall ensure that all municipal and state laws pertaining to the activities and rulings of the Board are faithfully executed.

5. The Chair shall act as the spokesperson in all matters pertaining to the Board.

6. The Chair shall sign all documents on behalf of the Board after approval by the Board.

7. The Chair shall perform such other duties and responsibilities imposed upon him or her by the Board.

8. In conjunction with Section 1l(c) below, the Chair shall appoint all subcommittees, and, ex-officio, be a member of all subcommittees.

b. Board Vice-Chair

1. The Board Vice-Chair shall be elected in the same manner as the Board Chair, as outlined in Section D.8.a.1 above. In the event that the Chair and Vice-Chair elections are to be held at the same meeting, the election for the Chair shall be held before the election for the Vice-Chair.

2. If at any time the Chair is absent from a meeting for any reason or is unable or unwilling to perform his/her duties, whether within a meeting or outside a meeting, the Vice-Chair shall perform all the duties of the Chair with the same force and effect as if performed by the Chair.

3. No person shall serve more than two consecutive Terms as the Board Vice-Chair, but, except as further provided, may be eligible for appointment two years after the end date of the second Term.

c. A Board Member who has served the maximum two consecutive Terms as Board Chair is eligible to hold the position of Vice-Chair. Likewise, a Board Member who has served the maximum two consecutive Terms as Vice-Chair is eligible to hold the position of Chair. Any Board Member who has served four consecutive Terms in either officer position shall not be eligible to hold an officer position for two years after the expiration of the fourth Term.

d. Chair Pro Tem

8

1. If both the Chair and Vice Chair (together, the "Chairs") are absent at any meeting of the Board, the Chairs may select a Chair Pro Tem who shall perform all the duties of the Chair for that specific meeting only.

2. If the Chairs have not selected a Chair Pro Tem, the Board shall select by a majority vote a Chair Pro Tem who shall perform all the duties of the Chair for that specific meeting only.

e. Vacancy of Chair and/or Vice-Chair Position

In the event that either or both the Chair or the Vice-Chair resign as an officer, resign from the Board or are unable to fulfill their term as an officer (i.e. death, illness or some other event that no longer allows them to fulfill the duties of the position of officer to the Board). The Board may hold an election to fill the vacancy at their next regularly scheduled meeting. The procedure for filling either or both officer positions will be the same as outlined in D.8.a.1 and D.8.b.1. Partial terms shall not be counted towards a Board member's officer term limit.

f. Duties of the Board Secretary

1. The Board Secretary shall be appointed by the Chair.

2. The Board Secretary shall keep a true and correct record of all proceedings of the Board.

3. The Board Secretary shall work with OPS staff to ensure that either Board staff or OPS staff maintains custody of all reports, books, papers, and records of the Board.

4. The role of Board Secretary can be designated to the Board staff by a majority vote of the Board.

5. Perform additional duties as assigned by the OPS Administrator.

9. Orientation and Training

a. The OPS Administrator in consultation with the Board Chair is responsible for the establishment of an orientation and training program for the Board Members.

b. The orientation and training program shall include familiarization with the following:

1. Constitutional and other relevant law on police-citizen encounters, including law on the use of force and stops, searches, and arrests;

2. Police tactics;

3. Investigations of police conduct;

4. Bias-free policing;

5. Policing individuals in crisis;

6. CDP policies, procedure, and disciplinary rules;

7. OPS policies, procedure, and rules; and

8. Community outreach.

c.  Training and orientation shall be provided by sources both inside and outside of the City (including but not limited to CDP and OPS).

d.  All Board Members must participate in initial and annual training on topics relevant to Board duties.

10.  Structure of Meetings

a.  Meetings

1. All Board meetings shall be open to the public.

2. The Board shall establish a regular meeting schedule and shall give public notice of the time and place of the meetings.

3. The meetings and business of the Board shall be conducted in accordance with the following:

1)  The agenda for each meeting will normally be provided to all members in time to be received at least one week prior to regularly scheduled meeting.

2)  The agenda for each meeting will be posted on the Board's website.

3)  The Board shall keep written minutes of all meetings and a copy shall be filed with OPS. The meeting minutes shall also be posted on the Board's website.

4)  Segments of Board meetings that are open to the public shall be recorded. These recordings and any transcription of the recordings shall be maintained by OPS.

b.  The order of business for Board meetings shall include the following topics in a format that is similar to what is outlined below:

1. Roll Call.

2. Approval of Minutes.

10

3. Special orders of business; announcements; communications.

4. New business.

5. Public comment

6. Report from OPS (including report of new complaints received by OPS on behalf of the Board).

7. General policy items

8. Subcommittee reports

9. Unfinished business

10. Discussion and consideration of complaints and report.

11. Recess to executive session (if necessary).

12. Public meeting shall resume at such time as the Board has concluded these matters authorized to be conducted in Executive Session.

13. Voting on adjudication of complaints

14. Adjourn

c.  Special meetings may be held at the call of the Chair or the Vice-Chair in the absence of the Chair. In addition, upon request of a majority of Board Members, the Chair shall call a special meeting of the Board as soon as reasonably possible.

1. Board Members will be given at least seventy-two (72) hours' notice prior to any special meeting.

2. Notice of a special meeting shall be posted on the Board's website.

3. No business other than that specified in the special meeting agenda shall be considered.

11.  Quorum and Voting

a.  A majority of members currently appointed to the Board shall constitute a quorum.

b.  The affirmative vote of a majority of members present shall be required to carry a motion, proposal, or recommendation, unless provided otherwise in this Manual.

c.  Subcommittees

1. The Board, as appropriate, may vote to establish subcommittees. The purpose of the subcommittee must be voted on by the Board.

2. No more than four members of the Board shall serve on any one subcommittee.

3. The Board shall vote to designate the subcommittee Chair and members of each subcommittee.

4. The subcommittee must report to the Board and recommendations from the subcommittee must be presented to the Board. The Board must vote to approve any recommendations from the subcommittee in the same manner as any other motion.

5. Examples of subcommittees may include, but are not limited to, the following:

    1) Policy review

    2) Continuing education

    3) Recruitment and training

    4) Outreach

    5) Rules

12. Board and OPS Staff

    a. The Board, or the OPS Administrator at the direction of the Board, shall hire and/or appoint support personnel for both OPS and the Board in accordance with the City's Civil Service laws and rules.

    b. The Board Chair shall recommend to the Board the filling of any OPS or Board staff position for approval by the Board; and shall supervise the administrative, clerical, investigative, and other personnel as necessary to discharge the functions of the Board and OPS. Board and OPS staff persons shall follow all laws, rules and regulations relevant to City employees. The Board may delegate supervisory responsibilities of Board and OPS staff to the OPS Administrator.

        1. If the Board requires that new or additional investigative work be performed in any given matter, the Chair may coordinate the execution of such work with the OPS Administrator. Instructions regarding any additional investigative work to be performed at the Board's behest must be provided in writing, to the OPS Administrator.

    c. The OPS Administrator shall ensure that internal office procedures are promulgated and prepare necessary standardized forms for the Board's receipt,

review, and resolution of public complaints. The daily operations of the Board, including complaint review and resolution, shall be managed by the Board Chair or delegated to the OPS Administrator, who shall oversee the regular functioning of the OPS and Board staff assigned to help carry out the duties of the Board.

**E. Authority, Jurisdiction, Duties, and Responsibilities**

1. Jurisdiction

    a. The Board has the power to receive, cause investigation of, and recommend resolution of any and all non-criminal complaints filed with it, or on its own complaint based on information that comes to its attention alleging misconduct by officers and non-sworn employees of the CDP, regardless of their duty status, when such misconduct is directed toward any person who is not a CDP employee. The Board may direct the OPS Administrator to conduct an investigation of any alleged misconduct including but not limited to, excessive or deadly force by members of the police force.

    b. Under the Charter of the City, the Board has jurisdiction over complaints of misconduct that are made against personnel of CDP. The following provides a non-exhaustive list of the most common complaints received by the Board:

        1. Harassment complaints, to include those alleging biased policing, discrimination, and profiling;

        2. Excessive and Deadly Force complaints;

        3. Unprofessional Behavior/Conduct complaints;

        4. Improper Procedure complaints, including improper arrest, improper citations, and improper searches;

        5. Improper Stop;

        6. Improper Tow;

        7. Service complaints, including insufficient CDP employee service, and no CDP service;

        8. Property complaints, including missing property and damage to property; and

        9. Misconduct related to the receipt of a Uniform Traffic Ticket or Parking infraction Notice if the Parking Infraction Notice was issued by the personnel in CDP.

    c. In determining whether to investigate a complaint, it is improper for the Board or OPS to choose not to investigate particular allegations of police officer or CDP employee misconduct based on the fact or belief that another investigative

13

agency, including the CDP's Internal Affairs Unit, or that some other non-federal law enforcement agency, is investigating, or has already investigated and concluded that no misconduct or something less serious than the misconduct a complainant alleged took place.

2. Filing Complaints

   a. The Board shall notify OPS of the Board's receipt and acceptance of a complaint and direct the OPS Administrator to commence an investigation.

   b. The Board authorizes OPS to receive complaints on its behalf and to begin investigation of those complaints upon receipt.

   c. The Board, on its own complaint based upon an allegation of misconduct by CDP Members or other information that comes to its attention, may cause an investigation of the incidents.

   d. These investigations will be completed by OPS in accordance with its procedures.

   e. When the Board refers, on its initiative, a complaint to OPS for investigation, OPS will determine whether there is an open IA investigation. When there is an open IA investigation at the time of referral from the Board, OPS will proceed in accordance with paragraph 305 of the OPS Manual.

**F. Initial Procedures**

1. Transmittal of Cases

   a. OPS shall provide access to the full investigative files of cases that will be considered, discussed, and/or adjudicated by the Board not fewer than fifteen (15) calendar days before the Board convenes to address the case.

      1. OPS will ensure that all Board Members have full access to all investigatory materials related to the case while also ensuring that OPS files will remain secure from inappropriate dissemination or disclosure. The Chair and the OPS Administrator will collaborate in the creation of a protocol, which will ensure both appropriate board access and the ability to maintain the necessary security for OPS files. This protocol will be subject to review and comment by the Board and will require adoption by a majority vote of the Board.

   b. The Investigative File that OPS maintains and that must be made available for Board Members will include, and always in this order, the following:

      1. A cover letter indicating what documents are in the file.

      2. The complaint.

3. The allegations (or "charges") that were (1) suggested by the face of the original complaint alone, and (2) any additional allegations or charges that surfaced during the course of the investigation of the complaint.

4. OPS's recommendations and findings including relevant case law, statutes, and CDP General Police Orders and Procedures.

5. Reports, including but not limited to incident reports, duty reports, and field reports.

6. Audio, visual, or transcripts of interviews of witnesses or parties to the incident.

7. OPS investigator's notes.

8. Wearable Camera System ("WCS") or dashboard video and physical evidence in the investigation.

2. Notice to Complainants

a. Upon receipt of the Investigative File, the Board or its designee shall notify the complainant and each subject CDP employee. The notice shall advise in writing that the complaint will be considered by the Board; and contain an explanation of the process to be utilized by the Board.

b. The notice shall state the date, time and location of the scheduled public meeting.

c. Five days before the public meeting, the Board or its designee shall send another notification to the complainant and the subject CDP employees.

d. The Board or its designee shall use best efforts to contact the complainant and subject CDP employees, including:

1. Sending a letter via United States Postal Service to the last known address of the complainant.

2. Providing written notice to the subject employees through the subject officer's command staff or the subject employee's supervisor.

3. Electronic mail to the parties, when feasible.

e. The Board shall make record of notices sent.

**G. Review of Complaint, Investigation, and Investigatory Follow-Up**

1. Method of Investigation

    a. When reviewing a complaint, Board Members may use any of the methods in this Section.

2. Obtaining Documents and Other Evidence

    a. While reviewing the Investigative File, Board Members may make written inquiries of the OPS Administrator to obtain additional information, documents, or other evidence. Such written inquiries will become part of the OPS Investigative file.

    b. Board Members shall send any questions or requests to OPS as soon as possible but, in any event, at least seventy-two (72) hours before the designated meeting date.

    c. Board Members shall allow complainants or subject employees who are present to speak after the case is called by the Board and the allegations have been presented to the Board by OPS.

    d. Board Members may ask follow-up questions of any person who has addressed the Board.

3. Cooperation and Coordination

    a. In the discharge of its duties, the Board expects complete and prompt cooperation from all employees of the City or the CDP, to include prompt production of all information and records requested, in no case in more than thirty (30) days. The Chair may lodge a formal complaint with the hiring authority of any employee of the City who does not cooperate with the Board in the lawful execution of its duties.

    b. Without interference from the Chief of Police or executive head of the police force, and with the full cooperation of both, OPS must cause, for the Board's benefit, a full and complete investigation to be made of each complaint. The investigation need not be confined to matters set forth in a complaint and may be expanded based upon facts and allegations uncovered in the investigation.

4. Subpoenas

    a. Upon majority vote, and at the request of the OPS Administrator or his or her designee, the Board has the power to subpoena and require the attendance of witnesses, the production of documents, and/or the production of other papers pertinent to its adjudications; and shall have the power to administer oaths.

    b. Prior to issuing any subpoena the Board may notify the Executive Head of the Police Force ("Executive") and the Chief of Police.

**H. Hearing Procedures**

1.  Purpose/Scope of Hearing

    a.  The Board shall hear each case during a regularly scheduled meeting at which a quorum of members is present.

    b.  The purpose of this hearing is to review the case pursuant to the procedures set forth in this Manual, in order to reach a disposition and a recommendation on corrective action for each allegation identified by OPS or by Board Members during their review and discussion of the case.

    c.  The Board shall give weight to the OPS Administrator's recommended disposition, and shall justify in writing any departure from it. However, the Board is not bound by the OPS Administrator's categorization of allegations or recommendations, and shall reach its own conclusions regarding the allegations and appropriate disposition.

        1.  Should the Board depart from the OPS Administrator's categorization of allegations contained in the investigative report, the Board shall direct OPS to re-investigate under the new categorization by the Board allowing for due process for the subject CDP employee.

2.  Standard of Proof – Dispositions

    a.  No finding with respect to an allegation of a case shall be sustained unless it is proven by a preponderance of the evidence. "Preponderance of the evidence" means the greater weight of evidence; for example, based on all of the evidence it is more likely than not that conduct inconsistent with CDP policy, procedure or training has occurred or has not occurred.

    b.  For purposes of applying the "preponderance of the evidence" standard of proof, officer performance must be evaluated against the policy, procedure, or training that was in effect on the day that, or during the relevant time period during which, the alleged incident occurred.

3.  Standard for Recommendation Regarding Corrective Action

    a.  When considering a recommendation regarding corrective action, the Board shall apply a standard of "just cause." In determining whether there is just cause for the recommended corrective action, the Board shall consider all of the following:

        1.  Was CDP policy, procedure or training at issue documented and available to CDP officers or employees who were expected to follow it?

        2.  Was OPS's investigation of the complaint complete, fair and objective?

17

3. Was there sufficient evidence to establish by a preponderance of the evidence that the alleged conduct occurred and that it violated a CDP policy, procedure or training?

4. Is the recommended corrective action consistent with the CDP Corrective Action General Police Order in place at the time the conduct occurred?

4. Presentation of Investigations

   a. The Presentation of Investigations shall be open to the public.

   b. The Presentation of Investigations shall consist of the following, which shall be addressed in the following order:

      1. The OPS investigator who was assigned the case and completed the OPS investigator's summary shall provide a list of the allegations investigated by OPS, a summary of their investigation, and the OPS Administrator's recommendations and conclusions to the Board. This summary will not necessarily inventory all evidence and investigatory material but should, at minimum, outline the nature of the complaint, the nature of the allegations involved, and the material evidence and facts established by the investigation.

      2. Following the investigator's summary, Board Members shall pose any questions they may have for OPS relating to the investigation or the recommendations and conclusions.

5. Executive Session

   a. The Board shall enter Executive Session if required by law and may enter Executive Session upon the request of any Board Member if permissible by law. During discussions and deliberations that occur in Executive Session, no individuals or entities who are not either Board Members, Board staff, or Board Legal Counsel may be present in the room unless invited by the Board. The Board may invite the OPS Administrator or his or her designee to remain during executive session deliberations on cases in order to provide advice and consult. The Board shall move from an Executive Session back into a regular, public session only (1) upon completion of consideration of all issues listed in paragraph I.6.c for a case, and (2) upon motion by the Chair or another Board Member.

   b. Board Members have both an opportunity to provide the OPS investigator with questions about investigated cases prior to Board meetings and may also ask the investigator questions during the Presentation of Investigations that occurs before an Executive Session and/or before the Board makes a determination. If questions or issues nonetheless arise for the first time during an Executive Session, the Board may, on motion by the Chair or another Board Member, vote on tabling deliberation and/or adjudication of a case in order to pose the question(s) or issue(s) to OPS. The Board may return to public session to make additional

inquiries of OPS and then return to conclude its deliberations immediately thereafter.

    1. If deliberation or consideration of any case is tabled in order for the Board to follow up with an OPS investigator on a question or issue, the deliberation or consideration of that case will continue at the earliest opportunity, or in any event no later than at the start of the Board's next meeting, whether regularly-scheduled or otherwise.

6.    Board Discussions

    a.    The Chair or Vice Chair shall begin the discussion of the case. The objective of this discussion is to allow each Board Member to reach a conclusion, by a preponderance of evidence, regarding the appropriate case disposition.

    b.    Board discussions shall address the following:

        1. Investigations and evidence that tend to support OPS's recommendation;

        2. Investigations and evidence that tend to not support OPS's recommendation;

        3. The relevant case law, statutes, and CDP policies, procedures and training;

        4. Whether the OPS investigation tends to support the allegation by a preponderance of the evidence. The "preponderance of the evidence" means that, based on all of the evidence, it is more likely than not that a violation has occurred;

        5. Individual Board Member recommendations.

    c.    The Board shall conclude the deliberation of each case only (1) upon consideration of all issues listed above, and (2) upon motion by the Chair or another Board Member.

7.    Adjudication of Cases

    a.    After consideration of each case, the Board shall move into the voting process.

    b.    Categories of Dispositions

        1. The Board shall vote on a recommendation of one of the following findings for each allegation:

            1)  **Sustained**: Preponderance of the evidence supports a finding that the alleged conduct occurred and the officer's actions were inconsistent with law or CDP policy, procedure, or training. A complaint may be "sustained in part" if the investigation revealed sufficient evidence to support a finding of a policy violation on one or more, but not all of

the complainant's allegations. A complaint may also be "sustained for a violation not based on original complaint" if the investigation reveals evidence of misconduct that was not included in the complainant's original allegation but arose out of the incident that is the subject of the complaint.

2) **Exonerated**: Preponderance of the evidence supports a finding that the alleged conduct occurred but the officer's actions were consistent with law or CDP policy, procedure or training.

3) **Unfounded**: Preponderance of the evidence supports a finding that the alleged conduct did not occur.

4) **Insufficient Evidence**: Preponderance of the evidence fails to establish whether or not the conduct occurred.

c. Standard for Disposition

1. The Board shall apply the "preponderance of evidence" standard of proof, set forth in Section (I)(2), to each and all of the allegations identified in the investigative file.

d. Voting

1. Disposition votes shall be public.

2. Decisions of the Board shall be made by a majority vote.

3. If a majority vote cannot be achieved, the Board will recess the case until its next meeting and deliberate anew.

8. Recommendations Regarding Corrective Action

a. Where the Board reaches an adjudication of "Sustained" on one or more allegations, the Board will subsequently deliberate on a recommendation regarding appropriate corrective action.

b. Potential corrective action includes re-training, a non-disciplinary letter of re-instruction, counseling from a supervisor, suspension, demotion, termination, or other action that may be appropriate to address the violation.

c. To determine the recommended corrective action, the Board shall refer to the relevant Corrective Action General Police Order and/or other relevant General Police Orders addressing corrective action, re-training, supervisory intervention, or other remedial action for misconduct or deficient performance. The Board shall make recommendations consistent with and not materially deviating from,

20

the Corrective Action General Police Order and/or other relevant General Police Orders.

d.  If the Board finds a sustained allegation that is for racist, sexist, anti-LGBTQ+, anti-immigrant, national origin based, or otherwise bigoted conduct, slurs or language used in the course and scope of employment or, if the officer or CDP employee's language is on a matter of public concern, where that officer or CDP employee's interest in commenting on matters of public concern does not outweigh the City's interests, as an employer, in promoting the efficiency of public services it performs through its employees, termination will be the presumed corrective action. Factors to weigh when considering the language include whether it:

   1. Impairs corrective action by superiors or harmony among co-workers;

   2. Has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary;

   3. Impedes the performance of the officer or employee's duties or interferes with the regular operation of the enterprise, or

   4. Undermines the City or CDP's mission.

e.  Guidance for assessing these factors include:

   1. Whether inaction by the City could possibly be seen as an endorsement of the speech and impair future corrective action for similar derogatory statements;

   2. Whether the language is reasonably likely to have a detrimental impact on close working relationships within the police force or undermine trust;

   3. The need to preserve the appearance of impartiality, the role and responsibilities of the CDP officers and employees, and

   4. When the role is public facing whether the danger to successful function of CDP will increase. This includes making a reasonable prediction about whether the language, when known to the public, would harm CDP's mission; or undermine the community's respect, trust, or perception that the police enforce the law fairly, even-handedly, and without bias.

f.  In its deliberations on its disciplinary recommendations, the Board will determine the disciplinary group found in the disciplinary matrix to be recommended to the Chief of Police or the Executive. In unusual cases where the Board concludes that the corrective action imposed should be at the high or low end of the range of the disciplinary matrix group, the Board may recommend a specific corrective action such as a specific length of suspension to be served, termination or demotion, verbal counseling, letter of re-instruction or remedial training.

g.  The Board shall conclude the deliberation regarding corrective action only upon motion by the Chair or another Board Member.

h.  Voting

1. Disposition votes regarding corrective action shall be public.

2. Decisions of the Board regarding recommendations on corrective action shall be made by majority vote. In the event a majority of the Board cannot agree on a particular corrective action, the Board Secretary will prepare an explanation of the votes cast by each Board member for the Board's final summary.

9.  Regarding Training/Policy Changes

a.  In addition to recommending corrective action for CDP officers and employees, the Board shall consider, and include in the Final Summary described below in subsection 11, whether a complaint suggests that CDP should promulgate or revise its policies, rules, and regulations.

b.  A copy of the Board's recommendation to CDP regarding promulgating or revising its policies, rules, and regulations shall be sent to the Executive and Chief of Police who shall distribute to the relevant units  with a copy to the Community Police Commission ("CPC"), and must notify the complainant that it has done so. If the complainant is not known the copy will stay in the OPS file.

10.  Commendations

a.  During review and consideration of investigations, Board Members may identify officer or employee performance that is commendable, superior, and noteworthy or otherwise deserving of special and positive recognition. In such circumstances, a Board Member may move that the Board issue a commendation.

b.  If a majority of the Board votes to approve the motion, the Board's Chair will provide a written commendation of the identified officer or employee's performance to the Chief of Police and Executive.

11.  Final Summary

a.  Board staff, under the direction of the Chair or designee, shall prepare a Final Summary with respect to each case or matter under consideration which shall include: (1) the names of Board or panel members who reviewed the case; (2) the final vote for each recommended disposition; (3) an explanation that outlines with sufficient detail the following:

1. The relevant case law, statutes, and CDP policies and procedures;

2. Evidence supporting the Board's recommendation; and

22

3. Justification for any departure from OPS's recommended allegation and disposition; if the Board "sustains" any allegation, it must include the Board's recommendation regarding corrective action. If there is a recommendation regarding corrective action, the following statement must be included: In reaching this recommendation, the Board has determined that it is consistent with CDP's disciplinary matrix.

b. The Final Summary shall include the Board's disposition and, where applicable, recommended corrective action, and a brief outline of the evidence that the Board concluded tended to support the disposition and/or recommendation. If the Board's recommended disposition departs from OPS's recommended disposition, the Final Summary shall also include a written justification for the departure. The Summary may also include a recommendation that the incident suggests that CDP should revise its policies, strategies, tactics, or training.

## I. Special Procedures for Administrative Dismissal

1. Assignment of Cases

   a. On an interim basis, cases in which OPS has initiated a disposition of "Administrative Dismissal" shall be reviewed by the Board upon a timely request for review ("appeal") by a complainant. In order to facilitate this process, OPS shall include in every disposition letter where a complaint has been administratively dismissed, notice to the complainant of their right to request a review by the Board within fifteen (15) days of the date of receipt of the OPS notice.

   b. During the pendency of the Consent Decree between the United States and City addressing the performance of CDP, ongoing reviews and audits of the Administrative Dismissal process will be conducted by the Monitoring Team to ensure compliance with OPS policies and the Consent Decree.

2. Eligibility for Administrative Dismissal

   a. Only the following types of complaints may be Administratively Dismissed:

      1. Complaints disputing traffic citations, except that allegations of misconduct contained in such complaints (e.g., racial profiling, illegal search, search, excessive force) will be classified and investigated according to their merits;

      2. Complaints alleging a delay in police services where the preliminary investigation demonstrates that the delay was due to workload, or was otherwise unavoidable;

      3. Complaints regarding off-duty conduct, unless the employee is working secondary employment, or the alleged conduct, or its effects, are inconsistent with law or CDP policy, procedure, or training or have a substantial nexus to the officer's City employment; and

4. Complaints in which the preliminary investigation demonstrates that the officer was not an employee of CDP at the time the conduct occurred, or where the identity of the employee cannot be determined despite the best efforts of OPS.

b. Complaints that allege other types of conduct cannot be disposed of via the Administrative Dismissal process.

## J. Board Post-Hearing Procedures

1. Notice Regarding a disposition of "Insufficient Evidence", "Unfounded", or "Exonerated"

   a. In cases adjudicated by the Board, where the Board determines that the complaint warrants no action the Board will direct OPS to provide a timely written explanation to the complainant and the subject employee(s), outlining the reasoning behind the Board's decision to issue findings of "insufficient evidence," "unfounded" or "exonerated.

2. Notice Regarding a disposition of "Sustained"

   a. Notice to Complainant and Subject CDP Employee

      1. In cases adjudicated by the Board, where the Board determines that the complaint is sustained in whole or in part, the notice shall contain written notice that the complaint was considered by the Board and the date of that hearing; and an explanation of the process utilized by the Board.

      2. The notice shall include:

         1) The date, time and location of the hearing.

         2) The nature of the Board's conclusions and recommendations

         3) An explanation of the evidence that both tended to support and tended not to support the conclusion.

         4) Information on whether there will be further proceedings related to the complaint, such as referral of the matter to the Chief of Police or Executive for a hearing and possible imposition of corrective action.

         5) In the event the matter is referred to the Chief of Police or Executive for a hearing, the notice shall inform the complainants of their right to submit a Personal Statement to be part of the Board's Final Summary in accordance with CPRB Manual Section K(2).

3. OPS shall use best effort to contact the complainant and subject employees, including:

    1) Sending a letter via United States Postal Service to the last known address of the complainant;

    2) Providing written notice to subject employees through the subject officers' command staff or the subject employees' supervisor; and

    3) Electronic mail to the parties, when feasible.

b.  Forwarding of Findings to the Chief of Police

    1. Upon completion of a hearing, the Board or its designee shall deliver its Final Summary prepared for each complaint adjudicated as "Sustained" to the Executive or Chief, as appropriate, within fourteen (14) calendar days.

    2. The Executive or Chief shall hold a due process hearing, as required by law, at which involved officers may present testimony or other evidence.

## K. Action Following Executive or Chief's Hearing

1.  Notice to the Board of Hearing Outcome

    a.  The Executive or Chief will notify the Board of the outcome of the hearing, including the disposition and any corrective action to be imposed within ten (10) days of receiving the Board's Final Summary.

      1. The Executive or Chief must presume the Board's Final Summary is correct and defer to the Board's Final Summary.

        1) If the Executive or Chief agrees with the Board's Final Summary, the Executive or Chief will notify the Board in writing and impose at least the minimum corrective action that the Board has recommended; or

        2) If the Executive or Chief believes that there is clear and convincing evidence that exists that would justify disregarding or modifying the Board's Final Summary, the Executive or Chief must notify the Board in writing, detailing the reasons and providing the Board with the clear and convincing evidence justifying the decision; or

        3) If the Executive or Chief agrees in part with the Board's Final Summary, the Executive or Chief will notify the Board in writing of the disposition and impose at least the minimum corrective action for those sections of the Final Summary the Executive or Chief agrees with; and for the portions of the Final Summary that the Executive or

Chief believes there is clear and convincing evidence that exists that would justify disregarding or modifying a portion of the Board's Final Summary, the Executive or Chief must notify the Board in writing, detailing the reasons and provide the Board with the clear and convincing evidence justifying the decision.

b. The Executive or Chief cannot use precedents, patterns or practices, and corrective action predating the November 21, 2021 amendments to the City's Charter to constitute clear and convincing evidence justifying any decision to impose lesser or no corrective action than what the Board recommends.

2. Overriding Departure by the Executive or Chief

a. The Chair of the Board or his/her designee will present to the Board the Executive's or Chief's disposition of the cases heard at the first Board meeting following receipt of the Executive's or Chief's disposition.

b. Where the Executive or Chief departs from the Board's Final Summary, whether in whole or in part, the Board may, in its discretion, overrule the Executive or Chief and order either of them to impose the corrective action on the subject CDP employee as recommended, up to and including termination pursuant to Charter Section 115-4 and in accordance with Charter Section 119.

1. If any member of the Board believes that the Executive's or Chief's written explanation fails to support the departure with clear and convincing evidence, and that there is just cause for the Board's original recommendation regarding corrective action, including suspension, demotion or termination, then the Board Member shall move for the Board to vote to overrule the Executive's or Chief's disposition and to impose the corrective action outlined in the Board's Final Summary pursuant to Charter Section 115-4 and in accordance with Charter Section 119.

1) Board Members must closely review and consider the disciplinary letter, OPS investigative file, and the content of any clear and convincing evidence provided by the Executive or Chief that was presented at the Executive's or Chief's hearing of the subject CDP employee.

• The Board Members must determine (i) whether the submitted evidence and explanation for the departure satisfies the burden of proof, which is clear and convincing evidence, and (ii) whether there is still just cause to make a finding and/or impose corrective action in light of the explanation for the departure.

2) If the Board determines (i) the Chief's or Executive's departure does not satisfy the "clear and convincing" burden of proof and (ii) there is just cause to impose its original determination regarding corrective action, the Board shall prepare an Amended Final Summary

explaining its rationale. The Board's Secretary will send the Amended Final Summary to the Executive with a copy to the Chief. The Amended Final Summary will constitute a formal certification in writing of the Board's determination, to the Executive or Chief.

c. If the Board agrees with the clear and convincing evidence provided by the Executive or Chief, the Board shall vote to accept the Executive's or Chief's disposition and close the case.

d. The Executive or Chief must then comply with the Board's determination.

3. Notice to Complainant and Subject CDP Employee

a. The Board shall cause OPS to notify the complainant and subject CDP employee(s) regarding the Executive or Chief's determination. The complainant and subject CDP employee(s) shall be notified no later than ten (10) days following the Board's next regular meeting.

1. For cases where the Executive or Chief agreed with the Board's determination, the notice shall include the Board's Final Summary.

2. For cases where the Board overrules, in whole or in part, the Executive's or Chief's departure, the notice shall include the Board's Amended Final Summary.

4. Complainant's Rights

a. The Board must timely and consistently notify complainants of the status progress and disposition of their complaints, and afford complainants the right to be heard in every step of the disciplinary process. This notification will come through OPS.

b. The Board is only responsible for those notifications that are related to OPS investigations, Board proceedings, and hearings over which the Chief presides.

c. The Board will inform the Complainant that upon the Board's final determination (closing of the file/case) the Complainant may seek review by the CPC in accordance with the rules and procedures established by the CPC.

5. Board's Additional Authority

a. The Board may take legal action to enforce all terms in all Charter sections relating to the Board.

b. The Board may opt, if it deems the Director of Law to have a conflict of interest, to engage outside counsel at the Department of Law's expense.

## L. Amendment to Operating Manual, Procedure and Rules

1. The rules contained within this Operating Manual, and the procedures and rules outlined here, may only be modified, revised, amended, replaced, or otherwise changed via the following process:

    a. A Board Member must place an amendment of the Operating Manual on the Board agenda.

    b. The Manual amendment must be read and discussed as part of the agenda of a regular Board Meeting at least one regular meeting prior to the amendment being the subject of a vote.

2. For a proposed amendment to the Manual to become effective, two-thirds of the members of the Board (i.e., 6 out of 9 members) must vote in favor.

**M.** The rules in the Manual take effect fifteen (15) days after their publication in the City Record.

**N.** During the pendency of the Consent Decree between the United States and the City addressing the performance of CDP and related organizations and systems, any and all modifications, revisions, amendments, replacements, or other changes to this Manual must be approved by the Court overseeing implementation of the Decree.