UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:15 CV 1046 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | **RESPONSE OF DEFENDANT,** |
| CITY OF CLEVELAND, | ) | **CITY OF CLEVELAND, TO** |
| | ) | **MONITOR'S NOTICE REGARDING** |
| Defendant | ) | **BILLING DISPUTES** |

Defendant, City of Cleveland, hereby responds to the Monitor's Notice Regarding Outstanding Billing Disputes From 2024 (ECF No. 580) (hereinafter, "Notice").

## I. INTRODUCTION

The Notice is more than a simple notice of a billing dispute that requires the Court's assistance under Paragraph 356 of the Settlement Agreement (ECF No. 413-1, Page ID 8654). It is in fact a radical motion for extraordinary relief. It asks the Court to upend the parties' recent understandings and rewrite the Settlement Agreement itself. The Monitor has not provided a single invoice for work done in the last six months and has not even provided a draft 2025 budget. And yet, the Monitor has asked the Court to order the City to disburse over $2 million for future projected work that has not yet been done or even identified. Such relief cannot be conferred by way of a simple status conference, as suggested by the Notice. Indeed, Cleveland certainly would file briefs in opposition if the motions made in the Notice were ever properly before the Court.

First, the Notice asks the Court to veto the parties' recent agreement on handling future invoices. Cleveland has agreed to the timeline proposed by Mr. Geissler on behalf of the United States at the December 16, 2024, status conference (see Transcript at p. 51, ECF No. 577, Page ID 13494). The Monitor asks the Court to override that agreement and impose a much more

accelerated timeline. However, since the parties already agreed to a more efficient process than the current practice, the parties' agreed timeline should be adopted.

Even more dramatic, the Notice asks the Court to order Cleveland to prepay the full amount of the forthcoming and undisclosed Monitoring Team budget for 2025, which could exceed $2 million. This would require the Court to modify the Settlement Agreement to impose a new term, without either party having filed a motion to modify. The Court does not have the authority to rewrite a settlement agreement, especially not in response to this Notice. There is no support in case law or in other consent decree jurisdictions for the prepayment proposal, nor does the Notice cite any precedent. Even if Plaintiff DOJ agreed to such a modification, prepayment almost certainly would cause a budgetary crisis in the City and could financially weaken the very public safety initiatives the Consent Decree is supposed to promote. Thus, this unprecedented idea should be rejected.

The ostensible subject of the Notice, "outstanding billing disputes from 2024," is given short shrift. The Court asked the parties to submit "three pages or something like that; not long-winded" (Transcript at p. 45, ECF No. 577, Page ID 13488) explaining their positions on the billing dispute, in the event they could not resolve their differences following the December 16, 2024, status conference. However, the Notice makes no attempt to inform the parties or the Court "why they think things should be resolved a particular way." (*Id.*). Cleveland briefly explains its own position on the pending billing dispute, below.[1] Cleveland also respectfully refers the Court to the Declaration of Sterling Analytics (ECF No. 580-2, Page ID 13530) as proof that Cleveland's objections are reasonable and made in good faith.

---

[1] Consistent with the Court's directive, Cleveland's statement regarding the billing dispute is approximately three pages (see section III.B., below), but the additional important issues raised by the Monitor in the Notice require separate attention here.

## II. RELEVANT BACKGROUND

### A. The Monitor Has Not Provided Timely Invoices or a 2025 Budget

Since June 2024, the Monitor has provided:

- No July 2024 Invoice
- No August 2024 Invoice
- No September 2024 Invoice
- No October 2024 Invoice
- No November 2024 Invoice
- No December 2024 Invoice
- No 2025 Proposed Budget.

Even if all of these were submitted today, the lack of timely invoicing greatly impacts the City's ability to review and verify the claimed charges for work performed. Although the City hopes that the Monitor will finally submit these invoices before a status conference, the six-month delay works a hardship on the City's fiscal process. Further, the lack of a 2025 budget creates tremendous hardships for the City's proper financial budget. The City cannot plan for its disbursements if the Monitor does not provide a budget. The problem occurred in 2023 when the Monitor did not provide a 2024 budget until the last week of December 2023. The City strongly objected at the time, and yet, it has happened again.

### B. Timeline for Handling Invoices

Before and during both the December 16, 2024, status conference and the January 8, 2025, meet-and-confer, the parties discussed the timeline for submitting and reviewing future invoices. The City agreed to the timeline that Mr. Geissler on behalf of the United States proposed at the December 16, 2024, status conference (see Transcript at p. 51, ECF No. 577, Page ID. 13494).

3

However, the Monitor is asking for a significantly more accelerated timeline. (See Proposed Order, ECF No. 580-6, Page ID 13573, noting that "DOJ has proposed and the City agrees" to a certain timeline, which the Monitor wants to speed up). The Court should adopt the parties' agreed timeline, i.e., (1) invoices are due 30 days after the end of the month; (2) the parties have 21 days to review and object; (3) the Monitor, City, and DOJ have 14 days to meet and confer; and (4) the parties then have seven days to seek the Court's assistance.[2]

### C. Newly Proposed Prepayment Obligation Of Millions Of Taxpayer Funds

The idea of requiring Cleveland to prepay the Monitor's 2025 invoices was never brought up before January 17, 2025. The Monitor dropped this idea on the parties at 10:06 a.m. on January 17, 2025, requesting a response by 3:00 p.m. the same day or else the Monitor would go to the Court directly to ask for this relief. Although Cleveland successfully obtained a five-day extension of time to respond, the shock of this proposal has still not worn off. The Monitor is seeking nothing less than modification of the Settlement Agreement to impose a potentially financially-ruinous term that would work against the very same public safety goals that the Consent Decree was designed to promote.

The City's permanent budget will not even be passed by City Council until April 1, 2025, meaning the funds to satisfy the prepayment obligation would not even be available before then. If this obligation were to be included in the budget on April 1, 2025, it is foreseeable that cuts would need to be made to Public Safety in order to meet the obligation. Moreover, the City would have to revise its internal policies and procedures in order to pay professionals up front for a whole year's worth of work based on the professional's own estimate. This kind of retainer on steroids

---

[2] Please see contemporaneously-filed Motion to Adopt Plaintiff DOJ's Proposed Timeline for Handling Invoices and the Proposed Order attached to it.

is not something that City government is equipped to handle—especially considering that the Monitor did not even submit his anticipated budget on a timely basis. This idea cannot reasonably be presented to the Court during a status conference.

### D. Billing Dispute—Cleveland Has Paid 91% Of Invoiced Amounts

On December 13, 2024, Cleveland paid $486,815.95, more than 90% of the invoiced amount for 2024.[3] (Non-docket entry, Remark by Finance entered 12/13/2024). Cleveland reserved certain objections, which it outlined in detail. (See Notice at Exhibit B.)

On December 16, 2024, the Court conducted a Zoom status conference. Following the conference, the Court ordered the parties to meet and confer about any disputed objections identified by the Monitor as repeatedly made by Cleveland. (Minute Order, ECF No. 575.)

### E. Cleveland Offered A Settlement Proposal To Resolve the Dispute; the Monitor Refused To Make a Counteroffer

On January 8, 2025, the parties met in the Law Department conference room at City Hall to discuss their positions as outlined in the exhibits to the Notice. Cleveland's position statements included a Declaration from Laura S. Johnson, Esq., CPCU, of Sterling Analytics, who has testified as a billing expert in state and federal court. (ECF No. 580-2, Page ID 13530.) The Declaration supports Cleveland's objections as being reasonable under "generally accepted standards of reasonableness and ethics." (*Id.* at ¶ 11.)

---

[3] The invoices for which payment was made go through June 2024. As noted above, at the time of this filing in January 2025, the Monitor still has not submitted invoices for any work after June 2024. The long delay in submitting invoices, which should end soon with the unprecedented delivery of at least six months of invoices at the same time, prejudices the City in its contractual right to assess the reasonableness of charges, under Paragraph 356. At the very least, Plaintiff DOJ and the Monitor should not be heard to complain about delays in payment for July through December 2024 given the time needed for the City to review the invoices and ask any legitimate questions about activities that took place many months ago. The Court has allowed the City 45 days to review these forthcoming invoices and possibly more time if needed. (Transcript at p. 52, ECF No. 577, Page ID 13495.)

5

Despite expert testimony that its objections were reasonable, at the January 8, 2025, meet-and-confer, Cleveland offered to save everyone time and just split the difference on the remaining sum in dispute. The Monitor rejected this and did not counteroffer. (See Notice at p. 3 and Notice at Exhibit C.) By way of explanation for not negotiating, the Monitor has previously asserted that "we are going to defend our prerogatives" and "not going to allow [the Monitor] to be a piñata." (Transcript at p. 58, ECF No. 577, Page ID 13501.)

Cleveland disagrees that it failed to address the Monitor's "repetitive concerns" at the meet-and-confer, i.e., the alleged "four buckets" of recurring objections. Cleveland also disagrees that the billing dispute is at a "critical impasse." Both during and after the meet-and-confer, Cleveland made several offers to compromise the remaining sums in dispute. It remains willing to negotiate prior to any status conference. However, no counteroffer has been made by the Monitor.

### III. LAW AND ANALYSIS

#### A. The Motions Made in the Notice are not Properly Before the Court

The Notice, ostensibly filed to alert the Court to an ongoing billing dispute, in reality brings three motions: (1) a motion to impose a timeline for paying invoices inconsistent with the parties' agreement; (2) a motion for an order requiring Cleveland to prepay possibly $2 million in advance; and (3) a motion for a status conference at which the other two motions presumably will be decided. The requested relief is not available because the motions are not properly before the Court.

##### 1. *The Monitor's Authority Under the Settlement Agreement*

Paragraph 351 of the Settlement Agreement, as amended (ECF No. 413-1), provides, in pertinent part: "The Monitor will only have the duties, responsibilities, and authority conferred by this Agreement."

6

The Monitor's responsibilities are identified under the sections that follow Paragraph 351, e.g., Compliance Reviews, Biennial Community Survey, Outcome Measurements, etc.  Nowhere is the Monitor given the duty, responsibility, or authority to direct and control the timeline for submission, review, and payment of the Monitor's invoices.  Paragraph 356 simply directs the Monitor to attempt to cooperatively resolve disputes over the reasonableness of fees and costs with the DOJ and City prior to seeking the assistance of the Court.

Under the heading, Monitor Recommendations and Technical Assistance, in Paragraph 372, the Monitor is authorized to "make recommendations to the Parties" but only as to compliance issues and the "underlying objectives" of the Agreement.  Thus, invoicing timelines are not within the authority of the Monitor.  Nor is prepayment of invoices.  There certainly is no provision authorizing the Monitor to recommend a timeline inconsistent with the agreement of the parties, or to write in new terms over those set forth in the Settlement Agreement.  *See 100Reporters LLC v. United States Department of Justice*, 316 F.Supp.3d 124, 148 (D. D.C. 2018) (quoting with approval the conclusion that, in general, a monitor's "primary responsibility is to assess and monitor… compliance with the terms of the settlement agreement").

By way of example, on October 21, 2020, the Court entered an Order of Deposit setting forth certain requirements for submission of the Monitor's invoices. (ECF No. 332.)  The Order was explicitly made "[w]ith agreement from the Parties."  The Monitor at that time represented to the Court that he had "the consent of the Parties" as to submission of a budget.  Thus, the entire basis for the October 21, 2020, Order of Deposit was the parties' agreement.  In contrast, the current Monitor now is asking the Court to enter a new Order that contradicts the parties' agreements.

If the proposed timeline of the parties were unreasonable, arguably the Monitor would be entitled to complain. However, the timeline proposed by the Plaintiff and agreed to by the City is eminently reasonable and, in fact, much more accelerated than the practice under the current Monitor. Thus, the Court simply should enforce the parties' recent agreement (see Transcript at p. 51, ECF No. 577, Page ID. 13494), with the caveat that the Court has allowed Cleveland 45 days to review the outstanding 2024 invoices once they are presented (*id.* at p. 52).

Similarly, if Cleveland had not been paying 90% and more of the invoiced amounts and had not given reasonable explanations for its objections, the Monitor arguably might be justified in seeking reassurance about future payments. However, there is no basis for any allegation that Cleveland has not been paying its bills in good faith. (See Declaration of Sterling Analytics, ECF No. 580-2, Page ID 13530.)

### 2. *The Court's Authority to Modify a Settlement Agreement*

Paragraph 398 of the Settlement Agreement, as amended (ECF No. 413-1), provides, in pertinent part: "The City and DOJ may jointly agree to make changes, modifications, and amendments to this Agreement, which will be effective if approved by the Court." It is well-settled that a "district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties." *Harris v. Pennsylvania Department of Corrections*, No. 2:19-cv-00479, 2021 WL 5331457, *1 (W.D. Pa. Oct. 13, 2021).

Thus, the Court cannot unilaterally change a settlement agreement without the parties' consent. *E.g., Heath v. DeCourcy*, 992 F.2d 630, 634 (6th Cir. 1993) (in order to modify a consent decree, the court must first identify "a defect or deficiency in its original decree which impedes achieving its goal," and the modification "must further the purpose of the consent decree, without upsetting the basic agreement between the parties"); *Gilstrap v. Sushinati LLC*, 734 F.Supp.3d

710, 721-22 (S.D. Ohio 2024) (federal courts are courts of limited jurisdiction and only have judicial power over a real and substantial controversy between the parties); *U.S. v. Grand Rapids, Michigan*, 166 F.Supp.2d 1213, 1228 (W.D. Mich. 2000) ("The Court has no authority to modify the Consent Decree").

When the parties raise concerns about a Court-appointed Monitor exceeding their authority under governing agreements, potential issues arise regarding federalism and separation of powers concerns. *LaShawn A. ex rel. Moore v. Fenty*, 701 F.Supp.2d 84, 115 (D. D.C. 2010); see also *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-cv-5345, 2020 WL 2748280, *2 (S.D. N.Y. May 26, 2020) ("even assuming that the Monitor has the authority and standing to make this motion, his request is still improper…[w]hat the monitor seeks is in effect a modification of the" underlying order).

In making these motions, the Monitor is exceeding his authority and asking the Court to do the same. The Court should reject any attempts to undermine the agreements of the parties.

> **3. *The Monitor's Demand that the City Must Deposit Millions of Dollars for Work that the Monitor Has Not Yet Preformed Is Unreasonable***

In particular, the Monitor's request that Cleveland be ordered to deposit with the Court's registry the budgeted amount for 2025 within 30 days (Notice at Exhibit F) is unprecedented and would work a significant financial hardship to Cleveland, including the Department of Public Safety, which takes a large share of Cleveland's budget and has many pressing needs. It is undisputed that there is no support in the Settlement Agreement for this proposal, and the Monitor cites no other authority.

In consent decree cities where a deposit is made up front, from which to draw invoiced amounts, there is a provision in the settlement agreement to that effect. See, e.g., Baltimore (D. Md. No. 1:17-cv-99, ECF No. 2-2, ¶ 449, requiring that $150,000 be kept on deposit as an interim

9

payment); Newark (D. N.J. No. 2:16-cv-1731, ECF. No. 2-1, ¶ 208, requiring an initial deposit of $200,000 and an evergreen fund of $100,000); Seattle (W.D. Wash. No. 2:12-cv-1282, ECF No. 3-1, ¶ 209, requiring maintenance of $100,000 on deposit). Some cities are required to set aside funds for technical assistance if needed. See, e.g., New Orleans (E.D. La. No. 2:12-cv-1924, ECF No. 2-1, ¶ 483). Thus, the obligation to prepay invoices is rooted in the contractual agreement, which is absent here. It is notable that, even when these cities are required by their contractual agreements and consent decrees to set aside funds, none are required to set aside a whole year's worth of the Monitor's bills up front. And even those jurisdictions that require pre-payment of some amount still allow for disputes over reasonableness. E.g., Baltimore, supra, at ¶ 451; Newark, supra, at ¶ 209; Seattle, supra, at ¶ 210.

The Monitor's surprising request is inconsistent with City ordinances[4] and policies which require payments to be made for work performed based on invoices presented. It also places the Monitor in a special preferred position—above every community group and vendor in the City. Finally, it will have a significant impact on budgeting for the other needs of the City. The Monitor has not submitted invoices for work since June 2024. Nor has the Monitor provided a timely budget. And yet the Monitor seeks a preferred position.

---

[4] *E.g.,* Cleveland Codified Ordinances § 106, Contracts Certified ("No contract, agreement, or other obligation, involving the expenditure of money, shall be entered into, nor shall any ordinance, resolution, or order for the expenditure of money be passed by the Council, or be authorized by any officer of the City, unless the Director of Finance first certifies to the Council or to the proper officer, as the case may be, that the money required for such contract, agreement, obligation, or expenditure, is in the Treasury, to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certificate shall be filed and immediately recorded. The sum so certified shall not thereafter be considered unappropriated until the City is discharged from the contract, agreement or obligation"); § 108(a), Authorization of Contracts ("All contracts involving any expenditure in excess of fifty thousand dollars ($50,000.00) shall first be authorized and directed by ordinance of Council, provided that the Council may increase the expenditure limit contained in this section above fifty thousand dollars ($50,000) by passage of an ordinance receiving a two-thirds affirmative vote of the Council").

In sum, the Monitor does not have the right to bring the motions included in the Notice about billing disputes. Given that these motions are not properly before the Court, they should not be heard, certainly not at a status conference. Even if the Monitor had the authority and standing to bring such motions, Cleveland would be entitled to fully brief these issues and hear from the Plaintiff DOJ about its position, on the record. Modification of a consent decree is no small matter, as the Court is aware. Accordingly, Cleveland asks that the Court reject these improper motions from the Monitor without further consideration or discussion.

B. **Cleveland's Objections to the Monitor's Invoices Are Reasonable**

Monitoring team invoices are held to the reasonableness standard, first and foremost under Paragraph 356 of the Settlement Agreement, but also under guidelines promulgated by the DOJ. See Barge, et al., *Monitoring Law Enforcement Consent Decrees: An Introduction & Starter Toolkit*, supported by Bureau of Justice Assistance, U.S. Department of Justice, pp. 74 ff; Gupta Memo (9/13/2021 Memorandum from the Attorney General regarding the use of monitors), pp. 4-5.[5]

The Declaration from Laura S. Johnson, Esq., CPCU, of Sterling Analytics, who has testified as a billing expert in state and federal court (ECF No. 580-2, Page ID 13530), is the only evidence in the record about the reasonableness of Cleveland's objections. The Declaration establishes that Cleveland's objections are indeed reasonable and in the normal course.

Moreover, the City has pointed out that Cleveland officials have a legal duty to make objections to the Monitor's invoices when they appear unreasonable. *Kleemann v. Carriage Trace,*

---

[5] *United Cent. Bank v. Kanan Fashions, Inc.,* No. 10 CV 331, 2012 WL 1409245, at *3 (N.D. Ill. Apr. 23, 2012 ("Billing judgment requires counsel to 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'") (citations omitted).

11

*Inc.*, 2007-Ohio-4209, ¶ 42 (2nd Dist.), *citing State v. McKelvey* (1967), 12 Ohio St.2d 92, 95, 232 N.E.2d 391 ("It is a well-worn, but no less true, statement of public policy that a public office is a public trust and a public official is a fiduciary") and *State v. Gaul* (1997), 117 Ohio App.3d 839, 850, 691 N.E .2d 760 ("a public officer, as a fiduciary with respect to public funds under such officer's control, is required to exercise the same degree of care, skill, and judgment with respect to" financial decisions as a private fiduciary).

Instead of responding with authority that Cleveland's recurring objections are unreasonable, the Monitor accuses Cleveland of disregarding the Court's order to meet and confer in good faith—even though the City has made several settlement offers without a counteroffer in response. The Monitor does not support his position by way of citation to any case law, secondary material such as ABA Opinions or law review articles, declarations, or any authority of any kind. A review of the Exhibits to the Notice will show that the Monitor relies wholly on argument and not at all on precedent, with respect to Cleveland's billing objections.

In brief, the Monitor's "four buckets" of recurring objections are: (1) vague or lacks detail; (2) duplicative; (3) not paralegal-level work; and (4) "billing for billing." Cleveland maintains its objections on these four bases, although there is room for compromise if only the Monitor would engage the City on the merits.

As to the first "bucket" of objections, it would be unreasonable for Cleveland to pay a vague or non-descriptive charge that cannot be confirmed as related to the Settlement Agreement.

Similarly, as to the second category, Cleveland cannot agree to pay charges that appear duplicative, especially when the Monitor previously has conceded erroneous submission of duplicative entries.

12

Regarding the third bucket, non-paralegal level work conducted by paralegals, Cleveland is concerned that administrative costs appear to be the lion's share of the monthly invoices, as opposed to work by the subject matter experts. While this concern is unresolved, Cleveland better understands the role of Ms. O'Brien as project manager following the meet-and-confer. Cleveland therefore agreed to pay Ms. O'Brien's time in the March through June 2024 invoices as part of a global settlement offer. This offer was rejected by the Monitor as a so-called "Swiss cheese" proposal.

Finally, regarding the last category of objections, "billing for billing," Cleveland understands the role of Meg Olsen, the billing coordinator, but cannot agree under any circumstances that it is reasonable for the Monitor and Ms. Wilhelm to charge thousands of dollars for reviewing monthly invoices over and above any time billed by Ms. Olsen. This is a classic "billing for billing" charge that is inconsistent with the general standard applicable to all professional billing.[6]

The City objects to paying $750 per hour for the administrative work involved in billing. Clevelanders do not understand paying extremely high hourly rates for work that should be done by administrative staff at administrative rates. The individuals performing the work are not receiving the $750 per hour that is being charged to Cleveland's taxpayers. The excess is paid for

---

[6] See Declaration of Sterling Analytics, *supra*, at ¶ 11; also see, e.g., *E.g., Fuller v. Fiber Glass Systems, LP*, No. 4:07-CV-01120, 2009 WL 3067031, fn. 31 (E.D. Ark., Sept. 23, 2009) ("billing for billing – especially at $250 per hour – is inappropriate"); *D'Lil v. Best Western Encina Lodge & Suites*, No. CV 02-9506 DSF (VBKx), 2010 WL 11655476, *9 (C.D. Calif., April 13, 2010) ("no time should have been billed" for the recording of time); *Att'y Grievance Comm'n of Maryland v. Kreamer*, 946 A.2d 500, 534 (Md. Ct. App. 2008) ("Clients hire attorneys to represent them in legal matters and to solve their legal problems. Clients do not hire attorneys with the expectation that they will be charged for the attorney's time in preparing a bill for the services rendered. Administrative tasks, like accounting services, are best left to the general services the lawyer or his/her staff provides during the representation of the client").

13

overhead and should not billed separately from the underlying work. Ultimately, these high charges for administrative work undermine public confidence in the Consent Decree.

As stated in the Notice, the exhibits to the Notice set forth in detail Cleveland's positions on these four buckets of recurring objections.

Further, Cleveland maintains its objections to lodging charges in excess of the agreed-upon rate of $159 per night plus tax unless rooms at that rate are unavailable, as set forth in the Monitor's retention agreement and as stated on every monthly invoice; and its objections to expenses that are not adequately documented, such as excess airfare.

## IV. CONCLUSION

The Monitor's Notice Regarding Outstanding Billing Disputes From 2024 (ECF No. 580) brings motions that are not properly before the Court and should not be considered, especially not at a status conference ostensibly about billing disputes. These motions would significantly rework the agreements of the parties without any support in the case law, the Settlement Agreement, or other consent decree jurisdictions. They should be rejected without further discussion.

Regarding the billing disputes, Cleveland does not object to the Monitor's motion for a status conference but does not join in this motion. Cleveland would prefer to work cooperatively to resolve the disputes, but the Monitor has refused to negotiate, accusing the Law Department of bad faith.

Given there is no reasonable dispute that Cleveland's objections were brought in good faith, as stated in the Declaration of Sterling Analytics, Cleveland respectfully submits that the most appropriate action the Court could take at this juncture would be to disregard the Monitor's unfounded motions, instruct the parties to eschew personal invective of the type leveled at the Law

Department, and order the Monitor to make a good faith counteroffer in response to Cleveland's most recent offer.

                                                Respectfully submitted,

                                                MARK D. GRIFFIN (0064141)
                                                Director of Law

                                                */s/ Timothy J. Puin*
                                                _____
                                                Delante Spencer Thomas (0096349)
                                                Chief Assistant Director of Law
                                                Tiffany C. Fischbach (0083348)
                                                Chief Assistant Director of Law
                                                Carlos K. Johnson Jr. (0097062)
                                                Assistant Director of Law
                                                Timothy J. Puin (0065120)
                                                Assistant Director of Law
                                                601 Lakeside Ave. E
                                                City Hall Room 106
                                                Cleveland, OH 44114
                                                (216) 664-2800
                                                dthomas3@clevelandohio.gov
                                                tfischbach@clevelandohio.gov
                                                cjohnson2@clevelandohio.gov
                                                tpuin@clevelandohio.gov
                                                Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

     A copy of the foregoing response was sent via operation of the Court's ECF system on the date of filing to all parties of record, with a courtesy copy emailed to the Monitor, karl.racine@hoganlovells.com.

                                                */s/ Timothy J. Puin*

                                                _____
                                                Timothy J. Puin (0065120)
                                                Assistant Director of Law