

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

**Via Electronic Mail**

Dr. Leigh Anderson
Executive Director
City of Cleveland Police Accountability Team
601 Lakeside Ave.
Cleveland, OH 44114

Re: Notice of Search and Seizure Compliance Assessment
*United States of America v. City of Cleveland*, 15-cv-01046-SO

Dear Dr. Anderson,

Pursuant to Consent Decree ¶¶ 360, 367, the Monitoring Team will conduct audits to determine whether the City of Cleveland ("City") and Cleveland Division of Police ("CDP") have complied with the requirements of the Consent Decree, as well as qualitative and quantitative assessments to measure whether implementation has resulted in constitutional policing. This letter constitutes official notice that on August 9th, 2024, the Monitoring Team will begin a formal assessment of the City and CDP's compliance with the Search and Seizure provisions of the Consent Decree, including assessment of the outcome measurements associated with Search and Seizure compliance (¶¶ 160-175; 367(b)). To complete its assessment, the Monitoring Team will utilize the Search and Seizure Methodology developed in consultation with both the City and the Department of Justice and attached hereto as **Exhibit A**.

The 2024 Search and Seizure Assessment will be conducted to ensure that CDP (a) conducts all investigatory stops, searches, and arrests with the goal of ensuring that they are conducted in accordance with the rights secured and protected by the Constitution and state and federal law (b) conducts investigatory stops, searches, and arrests fairly and respectfully as part of an effective overall crime prevention strategy that takes into account community values (¶ 160).

**Assessment Framework**

As part of this assessment, each Search and Seizure-related provision of the Consent Decree will be given a Compliance Grade from 0 to 6, with 0 indicating that the City/CDP has not yet begun working on the provision and 6 indicating that the City/CDP has achieved substantial and effective compliance with that provision.[1]

　　A. **Incorporation of Semi-Annual Reviews And Reports**

The Monitoring Team evaluates compliance with sections of the Consent Decree throughout the year and communicates its observations, assessments, and findings twice each year through its semi-annual reports

---

[1] In setting compliance grades the Monitoring Team will consider evidence from prior semi-annual reports as well as the information requested herein.

Hogan Lovells US LLP is a limited liability partnership registered in the state of Delaware. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Munich New York Northern Virginia Paris Perth Philadelphia Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington DC Associated offices: Budapest Jakarta Shanghai FTZ Ulaanbaatar Zagreb. Business Service Centers: Johannesburg Louisville. For more information see www.hoganlovells.com

(¶¶ 360, 375). These compliance reviews consider the totality of evidence presented and observed with respect to each provision of the Consent Decree, including review of policies and annual reports, interviews and meetings with the City and CDP as well as Cleveland community groups, and observation of trainings and internal meetings.

As the City and CDP progress through the implementation phase of the Consent Decree, the Monitoring Team will conduct Compliance Assessments that build upon reviews conducted in advance of each semi-annual report. These Compliance Assessments will apply a Compliance Grading system (detailed below) in evaluating each provision of the Consent Decree, with the goal of the City/CDP achieving substantial and effective compliance for each provision.

In order to incorporate and build upon prior semi-annual compliance reviews and reports, the Monitoring Team will review the two most recent semi-annual reports in advance of the Search and Seizure Compliance Assessment. Any Search and Seizure related provision that has been graded "general compliance" for more than one year (i.e., two consecutive reports) will be presumptively considered in substantial and effective compliance. For any such provision presumptively considered in substantial and effective compliance, the Monitoring Team will review the provision as part of its formal Compliance Assessment in order to validate its compliance grade. If the Compliance Assessment validates that provision as substantially and effectively compliant, the Monitoring Team will not re-assess that provision in future Compliance Assessments. The Monitoring Team will, however, continue to review and report on that provision in its semi-annual reports; if those reviews or reports suggest a downgraded change in status at any point, the provision will once again be incorporated into future Compliance Assessments.

### B. Compliance Grading

As part of the Compliance Assessment, Subject Matter Experts ("SMEs") on the Monitoring Team will review data, records, and documents pertaining to each Search and Seizure-related Consent Decree provision (¶¶ 160-175; 367(b)). Following this review and analysis, the SMEs will compare findings and collectively award Compliance Grades using the following framework:

| Grade | Definition |
|---|---|
| 0 | **Non-compliant, Not Started**: The City/CDP has not yet complied with the relevant provision of the Consent Decree. This includes instances in which the City/CDP's work or efforts have begun, but cannot yet be certified by the Monitoring Team as compliant with a material component of the requirement. |
| 1 | **Partial Compliance, Not Assessed:** The City/CDP has initiated the implementation phase for the requirement, but the Monitoring Team has not yet assessed the City/CDP's progress in implementation.[2] |
| 2 | **Partial Compliance, Planning/Policy Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key |

---

[2] If the Monitoring Team believes a provision cannot be assessed for a particular reason (e.g., lack of access to data/information required for evaluation, etc.), it will inform the City in advance of any planned Compliance Assessment. With respect to the Search and Seizure Compliance Assessment, the Monitoring Team anticipates assessing all S&S-related provisions (¶¶ 160-175; 367(b)) such that none are expected to be graded as "Partial Compliance, Not Assessed (1)."

| | |
|---|---|
| | components of the provision of the Consent Decree pertaining to drafting or creating policies, processes, protocols, trainings, systems, or the like that exist on paper but do not exist or function in day-to-day practice. |
| 3 | **Partial Compliance, Implementation Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key components of the provision of the Consent Decree pertaining to initiating training and implementing systems intended to affect day-to-day practice, but that the Monitoring Team has not yet observed in practice. It may capture a wide range of compliance states or performance, from the City or CDP having taken only very limited steps toward operational compliance to being nearly in operational compliance. |
| 4 | **Operational Compliance:** The City and/or CDP has made notable progress to technically comply with the requirement and/or policy, process, procedure, protocol, training, system, or other mechanism of the Consent Decree such that it is in existence or practice operationally—but has not yet demonstrated, or has not yet been able to demonstrate, meaningful adherence to or effective implementation, including across time, cases, and/or incidents. This includes instances where a given reform is functioning but has not yet been shown, or an insufficient span of time or volume of incidents have transpired, to be effectively implemented in a systemic manner.<br>Operational compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 5 | **General Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented such that the Monitoring Team will begin tolling according to ¶ 401. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.<br>General compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 6 | **Substantial and Effective Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented across time, cases, and/or incidents in accordance with ¶ 401 or ¶ 370. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically. Substantial and effective compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |

**Data, Document, and Record Requests**[3]

---

[3] The Monitoring Team's document review will not be limited to the materials requested. To the extent materials have been previously provided to the Monitoring Team, or are otherwise publicly available on the City/CDPs website or court docket, the Monitoring Team will access and review those materials as part of the assessment.

The Monitoring Team requests that the City provide the following data, documents, and records pertaining to information dated January 1st through December 31st 2023:

1. Data for all Stop Forms generated from stops, searches, and seizures conducted by the Cleveland Division of Police for January 1st through December 31st 2023. This should include a spreadsheet detailing all data from Stop Forms from 2023 involving all police-initiated, non-consensual stops. The spreadsheet should include columns containing the following associated data:

    a. The race, age, and gender of the individual(s) involved;
    b. The police district, shift and zone the incident occurred in;
    c. Notation of whether the supervisor approved the form or rejected the form, including the reason for the rejection;
    d. The probable cause reason for the stop;
    e. The reasonable suspicion reason for the stop;
    f. If the stop was based upon a match of a subject, notation of whether the subject did match the driver;
    g. Notation of whether a search was conducted and if any contraband was found;
    h. Notation of whether the stop was conducted for investigatory or any other reason;
    i. Notation of whether force was used; and
    j. The disposition or outcome of the stop (citation, traffic stop warning, arrest, emergency room, etc.).

2. All traffic citations for January 1st through December 31st 2023 which include the following data:
    a. The date and time of the stop;
    b. The race, ethnicity, age and gender of the person or persons involved;
    c. The vehicle's year, make, and model;
    d. The location of the stop, including the Police District, street and address; and
    e. The legal or articulable basis or reason for the stop.

3. Records demonstrating the CDP supervisor's documentation and reporting of:

    a. Investigatory stops and pat-down searches unsupported by reasonable suspicion or otherwise in violation of CDP policy; arrests unsupported by probable cause or in violation of CDP policy; or investigatory stops and arrests that comport with policy or law indicate need for corrective action or review of agency policy, strategies, tactics or training (¶ 170).

    b. Documentation recording and tracking the status of any review and revisions of CDP policies, strategies, tactics or trainings (¶170).

    c. Documentation tracking and reporting the status of corrective actions recommended for the involved officer(s), including any referred for non-disciplinary action, e.g. remedial training, or disciplinary actions referred for administrative or criminal investigation, and performance evaluations (¶ 171).

4. Records demonstrating the CDP commander's evaluation and documentation of:

    a. The supervisor's assessment of all stop, search and seizure incidents not supported by reasonable suspicion, probable cause, or otherwise in violation of CDP policy;

      b. The appropriateness of the recommended corrective actions;

      c. The referral of disciplinary cases to Internal Affairs where warranted;

      d. Corrective non-disciplinary actions taken or initiation of the disciplinary process as warranted, when supervisors fail to conduct complete, thorough, and accurate reviews of investigatory stops, searches and arrests (¶ 172).

5. Divisional notices of Search and Seizure training and classes (¶¶ 173-175).

6. Records demonstrating the dates, attendees, and length of all Search and Seizure trainings during the relevant periods, including the training materials provided during each training and the names of individual(s) who led/conducted each training (¶¶ 173-175).

      a. This includes all initial Search and Seizure trainings for new recruits in the Academy (¶ 173) along with the total number of new recruits trained in 2023.

      b. This includes all annual in-service Search and Seizure trainings for CDP officers (¶ 174) along with the total number of CDP officers that received in-service training in 2023.

We request that the City and CDP provide the requested information and spreadsheet data detailed in paragraphs 1-7 by August 9th, 2024. We request that the City and CDP provide the Monitoring Team Subject Matter Experts (SMEs) with another walkthrough of the relevant data systems prior to the scheduled assessment. During the initial Search and Seizure walkthrough in November 2023, the City was unable to provide the data sources necessary for the SMEs to assess the supervisor and command-level reviews of officer-initiated stops, as outlined in paragraphs 169 – 172. This walkthrough with Division experts will enable the Monitoring Team to ensure the efficacy of the survey methodology, reliability of the review process, and consistency across reviewers in advance of commencement of the comprehensive Search and Seizure Compliance Assessment.

Please do not hesitate to contact me with any questions or concerns regarding the assessment or these requests.

Very truly yours,

Karl Racine
Independent Monitor