IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## THE MONITOR'S RESPONSE TO THE CITY'S MOTION TO ENFORCE

The Monitoring Team respectfully requests that the Court summarily reject the City's Motion to Enforce the Monitor's Obligation Necessary for Settlement Agreement Compliance with Supporting Memorandum (hereinafter "Motion to Enforce").[1] Not only is this Motion to Enforce entirely unfounded, but it is an attempt to distract from the City's obligations under the Consent Decree by shifting its burden of compliance on the Monitor.

### I.      BACKGROUND

#### A.  The Semiannual Report

Every year, twice a year, the Monitoring Team files a Semiannual Report (also referred to as a "Monitor Report"), pursuant to Paragraph 375 of the Consent Decree. Utilizing dozens of law enforcement, community engagement, and government experts with more than 100+ years of

---

[1] *See* Dkt. 596.

1

combined experience, the Semiannual Report seeks to give the Court and the general public visibility into the City's progress towards compliance. Both the City and the Department of Justice (hereinafter "the Parties") are provided a draft report for review, input, and feedback. This process has occurred throughout the entire lifecycle of the Consent Decree. Within the last year, the City began producing—ahead of receiving an initial draft copy of the Semiannual Report—what it calls a "compliance advocacy document" that outlines areas in which the City believes it deserves rating upgrades supplemented with underlying materials. It is worth noting that this document is not provided in a timely manner, but the City does expect that the Monitoring Team review it in full prior to submitting any draft report to the Parties.[2]

### B. Three Separate Terms: Compliance Reviews, Outcome Measures, and Semiannual (i.e. "Monitor") Reports

Understanding the City's Motion to Enforce, requires a brief background on various portions of the Consent Decree. Compliance Reviews (Paragraph 360), Outcome Measures (Paragraph 367), and Monitor Reports (Paragraph 375) are three different components; each of which is provided a separate section in the Consent Decree.[3]

### 1. Compliance Reviews and Audits

Paragraph 360 of the Consent Decree indicates that Compliance Reviews are conducted "as necessary to determine whether the City and CDP have complied with the requirements of [the Consent Decree]." It further indicates, "Compliance reviews and audits may be conducted using sampling and compilation data where appropriate."

---

[2] For the 15th Semiannual Report, the reporting period ended June 30, 2024 and the Monitoring Team received the City's compliance advocacy document on July 10, 2024. For the 16th Semiannual Report, the reporting period ended December 31, 2024 and the Monitoring Team received the City's compliance advocacy document on January 31, 2025.
[3] Consent Decree, Outcome Measures at 88-92; Consent Decree, Compliance Reviews at 87; Consent Decree, Monitor Reports at 94-95.

## 2.   Outcome Measure Assessments

Paragraph 367 of the Consent Decree indicates that Outcome Measures are "qualitative and quantitative assessments to measure whether implementing [the Consent Decree] has resulted in constitutional policing." It further states that "outcome assessments include collecting and analyzing [] data, trends, and patterns." Importantly, Paragraph 371 lays out—well before there is any reference to a Monitor Report—methodology requirements:

> At least 90 days prior to the initiation **of any <u>outcome measure assessment,</u> <u>compliance review,</u> or <u>audit,</u>** the Monitor will submit a proposed methodology **for the <u>assessment,</u> <u>review,</u> or <u>audit</u>** to the Parties. The Parties will submit any comments or concerns regarding the proposed methodology to the Monitor no later than 45 days prior to the proposed date of the **<u>assessment</u>**, **<u>review</u>**, or **<u>audit</u>**.[4]

Notably, these requirements only apply to Outcome Measure Assessments, Compliance Reviews, or Audits—there is no reference to Monitor Reports.

## 3.   Semiannual "Monitor" Reports

Paragraph 375 of the Consent Decree separately describes Monitor Reports (or "Semiannual Reports") to include a description of the work conducted during the reporting period and a list of every paragraph requirement, including its respective progress. Paragraph 375 also indicates that the Monitor Report will include: (1) "methodology and specific findings for each compliance review conducted"; and (2) "methodology and specific findings for each outcome assessment conducted." Paragraph 375 *does not* state that the Monitor Report is the equivalent of a Compliance Review. Likewise, Paragraph 375 *does not* state that the Monitor Report is the equivalent of an Outcome Assessment.

---

[4] *Emphasis added.*

3

Indeed, the Monitoring Team's Semiannual Reports have, for the past seven years, indicated that the ratings reflected within its Semiannual Reports are "not the same thing" as Compliance Reviews or Outcome Measure Assessments.

> [The Semiannual Report] summary terms do not appear in the Consent Decree. The Monitoring Team employs them in order to synthesize and summarize the report's conclusions. Relatedly, compliance with individual paragraphs of the Consent Decree is necessary for the larger, overall "Substantial and Effective Compliance" with the whole of the Consent Decree, but it is **<u>not the same thing</u>**. Ultimately, "Substantial and Effective Compliance" with the Consent Decree will be reached when "the City either has complied with all material requirements of [the Consent Decree] or has achieved sustained and continuing improvement in constitutional policing, as demonstrated pursuant to [the Consent Decree's] outcome measures," "by a preponderance of the evidence."[5]

## II.    ARGUMENT

### A. Semiannual Reports Are Not Formal Compliance Reviews And Never Have Been

The Cleveland Consent Decree has had four different Monitors in a ten year period: Matthew Barge, Hassan Aden, Acting Monitor Ayesha Bell Hardaway, and now, Karl Racine. Each Monitor has published a Semiannual Report consistent with Paragraph 375. In every Semiannual Report, despite leadership changes, the disclaimer has remained the same. It reads:

> [T]he Monitoring Team bases its assessments on its current understandings, knowledge, and information gained through ongoing work and discussion with CDP, the Parties, and other stakeholders. **The [Monitor Report] assessments are informal to the extent that not all of them are necessarily informed by the type of exhaustive compliance and outcome measurements that are a critical component of the Consent Decree – and the summary determinations do not take the place of these more structured, systemic analyses**.[6]

---

[5] *See* <u>Third Semiannual Report at 11</u>; <u>Fourth Semiannual Report at 11</u>, <u>Fifth Semiannual Report at 12</u>; <u>Sixth Semiannual Report at 7</u>; <u>Seventh Semiannual Report at 9</u>; <u>Eighth Semiannual Report at 10</u>; <u>Ninth Semiannual Report at 71</u>; <u>Tenth Semiannual Report at 6</u>; <u>Eleventh Semiannual Report at 8</u>; <u>Twelfth Semiannual Report at 8</u>; <u>Thirteenth Semiannual Report at 7</u>; <u>Fourteenth Semiannual Report at 8</u>; <u>Fifteenth Semiannual Report at 8</u>; <u>Sixteenth Semiannual Report at 9</u>. *Emphasis added*.

[6] <u>Third Semiannual Report at 10</u>; <u>Fourth Semiannual Report at 12</u>; <u>Fifth Semiannual Report at 12</u>; <u>Sixth Semiannual Report at 7</u>; <u>Seventh Semiannual Report at 9</u>; <u>Eighth Semiannual Report at 10</u>; <u>Ninth Semiannual Report at 72</u>; <u>Tenth Semiannual Report at 6</u>; <u>Eleventh Semiannual Report at 8-</u>

4

Now, however, the City has decided that the standards against which it has been measured for the past ten years should suddenly and inexplicably change. In making this argument, the City not only wishes to deviate from a decades long standard practice, but a national standard consistent with Police Consent Decrees across the country.[7]

### B. After a Decade, the City Is Still Misreading the Plain-Text of The Consent Decree It Is Obligated to Follow

The City misreads the plain-language text of the Consent Decree not once, but twice. First, the City seeks to obfuscate accountability by imposing a new standard on the Monitoring Team, who is not a Party to this case. The Consent Decree is clear: at all times it is the City—*not* the Monitoring Team—that bears the burden of proof of compliance. Paragraph 397 explicitly states: "At all times**, *the City and CDP*** will bear the burden of demonstrating by a preponderance of the evidence its Substantial and Effective Compliance with this Agreement."[8]

Second, the City adds emphasis to Paragraph 375(c) of the Consent Decree in its Motion to Enforce, but noticeably omits emphasis to the portion of Paragraph 375(c) relevant to this issue that plainly puts to bed any argument that the Semiannual Report must be accompanied by a formal methodology. Paragraph 375(c) explicitly states that the Semiannual Report can include—*where appropriate*—methodologies for Compliance Reviews conducted.

> The Monitor will file with the Court, every six months, written, public reports that include the following: ...(c) the methodology and specific findings for each compliance review conducted, **where appropriate**, and redacted as necessary for privacy concerns. An unredacted version will be filed under seal with the Court and provided to the Parties. The underlying data for each compliance review will not be publicly available but will be retained by the Monitor and provided to either or

---

9; Twelfth Semiannual Report at 9; Thirteenth Semiannual Report at 7; Fourteenth Semiannual Report at 8; Fifteenth Semiannual Report at 8; Sixteenth Semiannual Report at 9. *Emphasis added*.

[7] Baltimore, Ferguson, and Chicago produce Semiannual Reports with ratings or implementation status scales similar to what is produced in Cleveland.

[8] *Emphasis added.*

both                    Parties                upon                request.[9]

### C.  The City's References Are Grossly Out of Context

The City cites to the Department of Justice's October 2024 Toolkit, titled "Monitoring Law Enforcement Consent Decrees," to justify its position that the Monitor must submit a methodology for its Semiannual Report (hereinafter "DOJ Toolkit"). This is blatant cherry-picking. The City assumes that 88-89 page of the DOJ Toolkit mentioning methodologies, relates to the Monitor's Semiannual Report requirements, without establishing evidence of such. What the City fails to acknowledge, is that two of Cleveland's former Monitors helped author the DOJ Toolkit. Further, the City fails to mention that the DOJ Toolkit explicitly (1) references the Cleveland Monitoring Team's Semiannual Report and their ratings or implementation status scales, and (2) indicates that the Cleveland Monitoring Team's Semiannual Report is one such method for capturing progress with the Consent Decree as a whole.[10] The DOJ Toolkit then goes on to explicitly state that Monitor Reports are "different" and "less formal" and that they should not take the place of "formal compliance review[s] or outcome assessment[s]."

> [F]ormal monitoring reports to the court and community on the progress of implementation, which [] most decrees require at least twice per year, still can and should summarize and characterize how things are progressing. Indeed, the "implementation status scales" discussed above often call on the monitor to characterize a department's phase of implementation with decree requirements. However, absent a formal compliance review or outcome assessment, and the qualitative and quantitative evaluations that they entail, a monitor cannot and should not certify compliance with a decree paragraph or set of paragraphs. **In this way, summarizing or characterizing a phase of implementation or progress** (i.e., that the department or jurisdiction appears to be a certain distance along toward meeting a requirement) **is different, and can be less formal, than a certification of compliance** (i.e., that the department or jurisdiction has fully implemented the requirement in practice consistent with the definition of compliance in the decree).[11]

---

[9] *Emphasis added.*
[10] DOJ's Toolkit at 86.
[11] DOJ's Toolkit at 112. *Emphasis added.*

6

### A. The City Was Not Diligent In Raising Its Concerns and Its Request Would Raise Inconsistencies With Past Reports

The City's Motion raises several issues. First, if the City really believed that the Semiannual Report required a methodology, why did it wait until after it received a draft of the Monitoring Team's Semiannual Report and saw the intended ratings to raise the issue? Consent Decree Paragraph 371 indicates that methodologies for Outcome Measure Assessments, Compliance Reviews, or Audits must be submitted to the Parties 90 days before they begin. Rather than sending the Monitoring Team an advocacy document on January 31, 2025 to try to sway the outcome of its ratings in the Semiannual Report, why did the City not instead send a request for a methodology?

And, even if this Court were to entertain the City's suggestion that the Semiannual Report must be accompanied by a methodology, this would raise several questions. What then would the Monitor do with the past 15 Semiannual Reports that did not have an accompanying methodology? Would all of the progress reflected in the Semiannual Reports to date be moot? Would the City have to restart its compliance efforts dating back to 2015?

The City's current request raises these and many other questions. However, one thing is clear: through its Motion, the City attempts to shift the focus to the Monitoring Team in order to draw attention away from its own performance. The Court should not allow the City to do so. Instead, the City should focus on achieving compliance – this is the Monitoring Team and the residents of Cleveland's most pressing goal.

## III.   CONCLUSION

The Monitoring Team respectfully requests that the Court summarily reject the City's April 8, 2025 Motion to Enforce the Monitor's Obligation Necessary for Settlement Agreement Compliance with Supporting Memorandum.

7

Respectfully submitted,


/s/ Karl A. Racine

KARL A. RACINE
Monitor
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5861
karl.racine@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I served the foregoing document entitled **The Monitor's Response to the City's Motion to Enforce** via the court's ECF system to all counsel of record.

/s/ Karl A. Racine_____
KARL A. RACINE