IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## NOTICE REGARDING DEVELOPMENTS RELATIVE TO THE CITY'S MOTION TO ENFORCE

The Monitoring Team respectfully submits this Notice to the Court regarding the City of Cleveland's ("the City") Motion to Enforce the Monitor's Compliance with the Plain Text of Settlement Agreement Paragraph 371, with Supporting Memorandum (hereinafter "Motion to Enforce").[1] Following the April 22, 2025, status conference, the Monitoring Team understood that this Court strongly encouraged the Parties and the Monitor to seek to work through their disagreements without extensive motions practice. Notwithstanding the Court's remarks, on April 23, 2025, the City—through Mark Griffin—notified the Monitoring Team and the Department of Justice that it did not intend to withdraw its Motion to Enforce.[2] The Parties met on May 6, 2025 whereby the pending Motion to Enforce was discussed in greater detail. In that discussion, the Monitoring Team iterated its need to gather information related to misconduct in order to make recommendations to the City, and clarified that the review should not be viewed, at this time, as a formal Compliance Review. The Monitoring Team further acknowledged that while other City

---

[1] *See* Dkt #600.
[2] *See* Exhibit 1.

1

entities, such as the Public Safety Inspector General ("IG") or the Community Police Commission ("CPC"), may—on their own accord—seek to evaluate the issue related to internal misconduct, the Monitoring Team maintains that it is independent and its review is more limited to the Settlement Agreement ("SA" or "Consent Decree"). Finally, the Monitoring Team expressed that it was open to discussing ways in which similar reviews conducted by different bodies could be streamlined to lessen the burden on the City. While the Monitoring Team found the discussion to be productive, it did not receive verbal or written confirmation from the City that would indicate it is amenable to the proposal the Monitoring Team put forward. Importantly, the Department of Justice has sought an extension to respond to the City's pending Motion to Enforce. The Monitor's foregoing Notice sets forth its position on the issue, while disputes remain unresolved. It is the Monitor's sincere hope that the City will promptly agree to rescind its Motion to Enforce, to cooperate with the Monitor's intended review of internal misconduct, and to work efficiently with the Monitoring Team in streamlining the review process. While disagreements over process will undoubtedly arise, they should not become the focal point of Consent Decree implementation and further delay.

## I. BACKGROUND

### A. Role of the Independent Monitor

The Settlement Agreement established that in order for the Monitor to fulfill the role, "the Monitor will conduct the reviews specified in this Agreement, and will review CDP policies, procedures, practices, training curricula, and programs developed and implemented under this Agreement."3 The SA empowers the Monitor with a range of methods to fully exercise its authority in reviewing the City's efforts to achieve compliance with the SA and report its findings.

---

3 *See* SA, par. 352.

Among these provisions, Paragraph 360 addresses Compliance Reviews, defining them as reviews and audits conducted "as necessary to determine whether the City and CDP have complied with the requirements of this Agreement." Paragraph 367 outlines Outcome Measures Assessments as "qualitative and quantitative assessments to measure whether implementing the Agreement has resulted in constitutional policing." Importantly, Paragraph 371 explicitly limits the requirement for a proposed methodology to these specific types of reviews, audits and assessments. It states:

> At least 90 days prior to the initiation of any outcome measure assessment, compliance review, or audit, the Monitor will submit a proposed methodology for the assessment, review, or audit to the Parties. The Parties will submit any comments or concerns regarding the proposed methodology to the Monitor no later than 45 days prior to the proposed date of the assessment, review, or audit.

However, the SA also establishes distinct avenues for the Monitor's review and reporting that do not require the more extensive methodology requirements of a formal review, audit, or assessment. For example, Paragraph 372 grants the Monitor the authority to "make recommendations to the Parties regarding actions necessary to ensure timely Substantial and Effective compliance with this Agreement and its underlying objectives." The SA does not state that the Monitor's recommendations be solely based on a Compliance Review or Outcome Measure Assessment. Separately, Paragraph 388 allows the Monitor to conduct "on-site visits and assessments without prior notice to the City and [Cleveland Division of Police ("CDP")]" to facilitate its work. The SA does not state that on-site visits or assessments require a methodology. Indeed, this would cut against the plain text indicating that such work can be done "without prior notice."

### B. Monitor's Broad Access to Information

Upon entering into the SA, the Parties agreed that the Monitor would have "full and direct access" to all of the City's documents related to the SA "that the Monitor reasonably deems

necessary to carry out the duties assigned".4  Similarly, Paragraphs 389 and 393 of the SA further require that the Monitor "will have timely, full, and direct access to all Agreement related individuals" and that the City must "provide copies in a timely manner (electronic, where readily available) of the requested documents to the Monitor" after reasonable notice.  The SA does not grant the City the authority to determine the necessity of the Monitor's access nor does it state that the Monitor's access is limited to the purposes of a Compliance Review or Outcome Measure Assessment.

### C. Monitoring Team's Request for Information Concerning Internal Reports of Misconduct

On March 7, 2025, the Monitoring Team requested information concerning the City's process for reporting, investigating, and adjudicating internal misconduct complaints.  This action followed the CPC's allegation that the City was routinely routing these complaints to the Human Resources Department, resulting in a failure to timely investigate them and without consistent oversight of the CDP's Internal Affairs Unit in accordance with Paragraphs 44, 177, 179, 328 of the SA.  On March 13, the Monitoring Team sent a memorandum to the City requesting relevant documents, interviews with key personnel, and a conference with the IG, to which the City acknowledged receipt.

On March 24, 2025, the Monitoring Team contacted the City to inquire about the progress of its document production.  The City stated that it was still compiling the requested materials and raised a new question regarding the expected timeline for the Monitoring Team's proposed methodology.  This question pointed to the Monitoring Team's mention of its authority under Paragraph 360 to conduct reviews and audits within the March 7 request.  The Monitoring Team

---

4 *See* SA, par. 390.

reiterated that the purpose of the review was to "more fully understand the policies and practices" of the City regarding internal complaints of misconduct and that this request did not require the Monitoring Team to provide a methodology pursuant to Paragraph 371.5  Further, the Monitoring Team highlighted that the request for information was within the purview of Paragraphs 390 and 393 of the SA.

In response, the City provided a limited number of documents, primarily workplace conduct policies compiled to that point. The City also restated its request for a draft methodology, ostensibly indicating that further document production was contingent upon its receipt from the Monitoring Team proving a methodology.6   To date, the Monitoring Team has not received further responsive documents.

**II.     MONITOR'S POSITION**

The City's Motion to Enforce misconstrues the Monitoring Team's request for information concerning the City's process for reporting, investigating, and adjudicating internal misconduct reports as a formal Compliance Review, incorrectly asserting that it triggers the methodology requirements of Paragraph 371. While the Monitoring Team referenced its authority under Paragraph 360 to conduct reviews and audits in its March 7 memorandum, the Monitoring Team's current inquiry into the City's process is a necessary preliminary effort to comprehend the City's established complaint-handling practices, especially considering that the available information on this issue is limited to the CPC's public disclosures of uninvestigated misconduct cases.

The City's attempt to impose the constraints of Paragraph 371 is an improper effort to restrict the Monitor's mandate under the SA.  The Monitoring Team's request for review is not a formal Compliance Review; the Monitoring Team is not solely restricted to Compliance Reviews

---

5 *See generally* Dkt # 600-5.
6 Id.

and Outcome Measure Assessments as methods for review and reporting; and document production and interviews are not predicated on the City first receiving a methodology under the plain reading of the SA.

### A. The Monitoring Team's Review is Not a Compliance Review

The City's assertion that the Monitoring Team's current information-gathering constitutes a formal Compliance Review demonstrates a feigned incomprehension by refusing to acknowledge the Monitoring Team's stated purpose for the review and relies on an unsupported reading of the SA. Specifically, the City's argument fails because the Monitoring Team has neither defined this undertaking as a formal Compliance Review nor does the substance of the request align with all of the defined characteristics of such a review.

The Monitoring Team's initial memorandum to the City clearly articulates the need to understand the City's policies and practices regarding internal misconduct complaints following the CPC's disclosure. Indeed, the memorandum begins with this clear intent:

> In the aftermath of the CPC's release of information from the City's Human Resources Department ("HR") on the pending misconduct cases, it is imperative that the Monitoring Team **more fully understand** the policies and practices of the Cleveland Division of Police ("the Division" or "CDP") and the City in accepting, investigating, and adjudicating these cases.[7]

This intent was directly communicated to the City again in subsequent inquiries from the City regarding the nature of the Monitoring Team's proposed review.[8]

This preliminary request for documents and interviews is crucial to understanding implementation of the Consent Decree and distinct from the formal reviews contemplated under Paragraph 360 that would necessitate the prior production of a detailed methodology. While the

---

[7] *See* Dkt #600-2 at 1. Emphasis added.
[8] *See* Dkt #600-5.

Monitoring Team did cite to Paragraph 360 as authority for conducting reviews of policies and procedures later in its memorandum, before determining whether a more formal and evaluative review is warranted, the Monitoring Team must first ascertain the scope, nature, and handling of these internal complaints. Insisting on a full methodology at this nascent stage, before the Monitoring Team can even grasp the fundamental processes and issues at play, would severely hinder the Monitoring Team's ability to effectively and timely determine the appropriate course of action, including whether a more formal review with a defined methodology is required.

Furthermore, the City's attempt to equate the Monitor's request with a Compliance Review under Paragraph 360 is contradicted by the very definition provided within that paragraph:

> The Monitor will conduct reviews or audits as necessary to determine whether the City and CDP have complied with the requirements of this Agreement. Compliance requires that the City and CDP: (a) have incorporated the requirement into policy; (b) have trained all relevant personnel as necessary to fulfill their responsibilities pursuant to the requirement; and (c) are carrying out the requirement in actual practice.

Notably, the Monitoring Team's initial request, as outlined in both the March 7 and March 13 request to the City, did not seek information related to the training of personnel on these internal complaint policies. This distinguishes the current information-gathering from a formal Compliance Review. Further, the Monitoring Team did not state that its request was predicated on the belief that the City was carrying out the SA requirements in practice. To the contrary, the Monitoring Team expressed concern that the City's potential "failure to investigate complaints in a timely matter is not in compliance with the Consent Decree," again distinguishing this from a Compliance Review. 9

### B. The Monitoring Team is Not Constrained to Compliance Reviews and Outcome Measure Assessments

---

9 *See* Dkt #600-2 at 2.

The City's attempt to diminish the Monitor's mandate is evident in its failure to acknowledge the alternative provisions within the SA that authorize the Monitor to generate reports or issue recommendations independent of Compliance Reviews and Outcome Measure Assessments. As previously cited, these provisions include the authority to provide conduct unscheduled site visits and assessments or formulate recommendations—all without a prerequisite of submitting a methodology. Indeed, the Department of Justice's October 2024 Toolkit, titled "Monitoring Law Enforcement Consent Decrees," (hereinafter "DOJ Toolkit") also supports the idea that the Monitor's ability to assess and report on a city's progress is not solely restricted to formal processes and provided the following guidance:

> The formal process outlined in this section—grounded in social science methods and aimed at ensuring that compliance determinations are rigorous and transparent—does not preclude a monitor from making ongoing characterizations of progress in reports, court hearings, or discussions with community members. That is, simply because an area has not been the subject of a structured, systematic compliance review or outcome assessment does not mean that a monitoring team cannot give their overall impressions about how things are going.[10]

### C. The Monitoring Team is Entitled to Access to Documents and Settlement Agreement Related Individuals

The City's failure to fully respond to the Monitoring Team's document production request, coupled with its refusal to assure timely production without a methodology, undermines the Monitoring Team's ability to fulfill its role under the SA. This effectively deprives the Monitoring Team of its guaranteed right to access information under Paragraphs 390 and 393 of the SA. While the City argues for a strict construction of the SA, it simultaneously advances its own narrow interpretation that limits Paragraphs 390 and 393 to the processes for Compliance Reviews and Outcome Measure Assessments. The City cannot have it both ways. The SA could have explicitly limited the provision of documents and data to those formal reviews and assessments, but it did

---

[10] DOJ's Toolkit at 112.

not, recognizing that the Monitoring Team's information needs extend beyond them. Equally, under Paragraph 389, the Monitor is also entitled to access to all SA related individuals without mention of a Compliance Review or Outcome Measure Assessment.

Reinforcing the Monitoring Team's rightful access to information, the DOJ's Toolkit explicitly states that, "[s]ubject to some express limits, consent decrees generally allow a monitoring team to access any of a department's data, information, files, or materials."[11] This guidance, notably, is also not contingent on formal reviews or assessments. Indeed, the DOJ Toolkit underscores the value of such comprehensive access, explaining that "[b]y virtue of a monitor's access to information and knowledge about how a law enforcement agency operates, they may very well identify areas not addressed in the decree that they believe need improvement or that could help the agency either comply with the decree or improve the quality of law enforcement in a jurisdiction."[12] The City's resistance to providing the information reveals a fundamental misunderstanding of its obligations, despite the SA's plain language and DOJ Toolkit guidance.

### III. Conclusion

For the forgoing reasons, the Monitor hereby submits a Notice of its position on the issue, understanding that there may be developments in the coming weeks. As stated previously, it is the Monitor's sincere hope that the City agree to rescind its Motion to Enforce, to cooperate with the Monitor's intended review, and to work efficiently with the Monitoring Team in streamlining the review process.

---

[11] Id. at 79.
[12] Id. at 15-16.

        Respectfully submitted,

        __/s/ Karl A. Racine_____

        KARL A. RACINE
        Monitor
        Hogan Lovells US LLP
        555 Thirteenth Street, NW
        Washington, DC 20004-1109
        (202) 637-5861
        karl.racine@hoganlovells.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2025, I served the foregoing document entitled **Notice Regarding Developments Relative to the City's Motion to Enforce** via the court's ECF system to all counsel of record.

/s/ Karl A. Racine
KARL A. RACINE