**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15CV1046 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | |

---

**CITY OF CLEVELAND'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
TO ENFORCE
THE MONITOR'S COMPLIANCE WITH THE PLAIN TEXT
OF SETTLEMENT AGREEMENT PARAGRAPH 371**
---

The United States' brief is appropriately framed as a "Response" rather than a "Brief in Opposition" because it does not oppose the City's motion on the merits. In order to achieve compliance and to show improvements, the City needs to understand how it will be judged. Because the parties to a contract have the right to determine its meaning and because there is no case or controversy on the merits, the Court should grant the City's Motion.

It's the City's Motion to Enforce is not moot because relief can and should be granted. The Monitor and the DOJ's arguments that the review of the City's compliance is not a Compliance Review are unconvincing. Granting the City's Motion for the Monitor to provide a methodology is essential for advancing police reform and achieving compliance.

The City has the right to know how its compliance with the Consent Decree will be judged; and the Monitor has an obligation to provide this information. The Monitor continues to refuse to share a methodology for what is obviously a Compliance Review. Simply because the Monitor does not name its "Review of Internal Reports of Misconduct" ("the Review") a Compliance

1

Review does not make it so. The Monitoring Team has still not retracted or amended its March 7 Memorandum, which states that the authority for the Review is rooted in ¶ 360 (Compliance Review), and that "[t]he Monitor will include discussion of its [the Review's] findings in the next semiannual report and revisit the compliance status of any paragraph implicated in this review."[1]

If the Monitor can make findings, include those findings in a Semiannual Report, and "revisit" the "compliance" status of any paragraph implicated in the Review, then the Monitor's Review is a Compliance Review, plain and simple. The City respectfully reaffirms its request for the Court to order the Monitor to comply with ¶ 371 and establish clear goal posts. Otherwise, it will risk opening the door for the Monitor to complete this and other Compliance Reviews without articulated standards in violation of the terms negotiated in the Consent Decree.

## I. ARGUMENT

### A. Granting the City's Motion for the Monitor to Produce a Standard or Methodology is Essential for Advancing Police Reform

The Monitor's refusal to produce any standards or methodologies for the 16th Semiannual Report, and now the Review of Internal Reports of Misconduct, impedes compliance. Having clear methodologies allows the City to understand review procedures and what needs to be done to achieve compliance, fosters public transparency, and identifies the benchmarks the Monitoring Team will use to assess compliance. The City does not dispute that the Monitoring Team should have access to its documents and personnel to complete Compliance Reviews, but the purpose for the access, what will be measured, and how it will measure is what the Monitoring Team is missing. Without identifying these items first, through a methodology, the Monitoring Team runs the risk of performing work outside the Consent Decree's requirements.

---

[1] Defendant's Ex. No. 2 — March 7 Letter, pg. 4 (emphasis added).

The Monitoring Team demonstrates this misunderstanding in its Notice Regarding Developments Relative to the City's Motion to Enforce ("the Notice"), filed May 06, 2025. Not only do the Monitor's comments in the Notice practically amount to an inappropriate legal brief, but they are also off target on the intent of the DOJ Monitoring Toolkit. On page 9 of the Notice, the Monitor writes,

> Indeed, the DOJ Toolkit underscores the value of such comprehensive access, explaining that "[b]y virtue of a monitor's access to information and knowledge about how a law enforcement agency operates, they may very well identify areas not addressed in the decree that they believe need improvement or that could help the agency either comply with the decree or improve the quality of law enforcement in a jurisdiction."[2]

However, the Monitoring Team falls short of explaining that this quote is pulled from a Subheading in the Toolkit called "What a Monitor Does <u>Not</u> Do" and is followed by the statement, "[h]owever, even when a monitor thinks other things should be addressed, the monitor's responsibility is to ensure compliance with the expressly articulated terms of the consent decree."[3] Again, the City does not deny the Monitor should have direct access to its documents and personnel, but without methodologies, problems like the Toolkit describes can arise. The Monitoring Team's failure to follow ¶ 371 obstructs the City's ability to understand the Monitoring Team's goal posts, allows it to run afoul of its duties, and inhibits reform.

        **B.**    **The Monitor and the DOJ's Arguments that the Compliance Review is Not a "Compliance Review" Fails Because It is Reviewing the City's Compliance And Is Doing So By Unknown and Unarticulated Standards.**

The Monitor claims it is not performing a Compliance Review. The Monitor argues its new authority for the Review is rooted in ¶ 372, but ¶ 372 does not give the Monitor a new authority in

---

[2] Dkt #609 (quoting pg. 15 – 16 of the DOJ *Monitoring Law Enforcement Consent Decrees: An Introduction & Starter Toolkit*).
[3] *See Monitoring Law Enforcement Consent Decrees: An Introduction & Starter Toolkit*, at pgs. 14 – 16.

which to review the City. It is merely a paragraph that allows the Monitor to make recommendations on paths to compliance after it has first determined the City is out of compliance.

Like other paragraphs in the Consent Decree, ¶ 372 must be read in the context of the entire Consent Decree. ¶ 372 states, "[t]he Monitor may make recommendations to the Parties regarding actions necessary to ensure timely Substantial and Effective compliance with this Agreement and its underlying objectives."[4] Nowhere in ¶ 372 is there language that supports the Monitor's argument that the Monitor's recommendations for compliance may arise from work created outside of a Compliance Review, Audit or Outcome Measurement Assessment. It does not give the Monitor a new means in which to review the City's compliance, it simply states that it can make recommendations for compliance. Such recommendations can only be made after the Monitor has performed a Compliance Review, Audit or Outcome Measurement Assessment – which require a methodology.

Under ¶ 372 the Monitor must first determine if the City is out of compliance, and the standards by which this is determined, before it makes recommendations on how to come into compliance. Paragraphs 367, 369(c), and 370 state that the Monitor must annually complete a Compliance Review for *each* requirement in the Consent Decree if prior Outcome Measurement Assessments or reviews do not demonstrate compliance. Since its appointment in 2022, the Monitor has not completed Compliance Reviews or Audits for each Consent Decree requirement. Paragraphs 367 & 369(b) require the Monitor to complete Outcome Measurement Assessments annually if prior Outcome Measurement Assessments or reviews do not demonstrate compliance. Since its appointment in 2022, the Monitor has not completed a single Outcome Measurement Assessment. Paragraph 372 is impossible to apply when the Monitor has not first completed a

---

[4] Emphasis added.

Compliance Review or Outcome Measurement Assessment from which to derive its recommendations for compliance.

This requirement of Compliance Reviews, followed by later recommendations, is repeated in other paragraphs of the Consent Decree. For example, ¶ 375(d) reiterates this process for the Monitor's Semiannual Report requirements where it states, "for any requirements that were reviewed or audited and found not to have been implemented, the Monitor's recommendations regarding necessary steps to achieve compliance." Again, Compliance Reviews or Compliance Audits are conducted first and then used to inform recommendations.

Articulating these annual requirements for Compliance Reviews and Outcome Measurement Assessments, unless previously satisfied, also helps put other paragraph interpretations into context. Paragraph 375(c), the Semiannual requirement paragraph for Compliance Reviews, for example, makes more sense when reviewed with this context. ¶ 375(c) states the Monitor must produce "the methodology and specific findings for each compliance review conducted, where appropriate, and redacted as necessary for privacy concerns."[5] Like the language in ¶ 372, the "where appropriate" language in ¶ 375(c) fits perfectly because there may be instances where the Monitoring Team is permitted to not conduct a Compliance Review in a Semiannual Report either because: (1) a previous Compliance Review has deemed it compliant; or (2) an Outcome Measurement Assessment has deemed it compliant; or (3) it will conduct the Compliance Review in the second half of the year (before ¶ 369(c)'s annual review requirement expires). The Consent Decree has perfectly aligned requirements when read in its full context—now the Monitor just needs to follow them.

---

[5] Emphasis added.

5

### C. The City's Motion to Enforce the Monitor's Compliance with the Plain Text of Settlement Agreement Paragraph 371 Is Not Moot.

The DOJ's characterization that the City's Motion is moot is unfounded because the underlying controversy the Motion is premised on is still live, i.e. the Court may still grant the effectual relief sought by the City.[6] In accordance with the City's Proposed Draft Order, the Court can still order: (1) to have the Monitor provide the Parties with a draft methodology for its "Review of Internal Reports of Misconduct" within 14 calendar days; (2) require the methodology for the "Review of Internal Reports of Misconduct" before its initiation, pursuant to ¶ 371; and (3) disallow the Monitor from billing the City for "Review of Internal Reports of Misconduct" work completed outside the procedures described in Consent Decree.

For its arguments, the DOJ presented two Northern District of Ohio Cases. Arrowood Indemnity Co. v. U.S. Fire Ins. Co., 2016 WL 6634747 (N.D. Ohio Feb. 22, 2016); and Bandy v. Smith, 2010 WL 300704, (N.D. Ohio Jan. 19, 2010). Both are distinguishable. In Arrowood, Lubrizol agreed to not call the witnesses that were the subject of Arrowood's Motion to Exclude.[7] In Bandy, the Petitioner was given access to the legal library to which he sought access[8]. In both cases, the party filing the motions received what it requested—the City has not. The City is still seeking the methodology for the Monitor's Review. It is still seeking for the Review to be deemed a Compliance Review, pursuant to ¶ 360. It is still seeking the relief it identified in its Motion and Proposed Order. Additionally, in Arrowood, Arrowood did not dispute that it obtained the relief it sought. Here, the City does dispute it has obtained the relief it is seeking. The Court should not

---

[6] *See Robinson v. Pfizer, inc.*, 855 F.3d 893, 897 (8th Cir. 2017); *Kerr for Kerr v. Commissioner of Social Security*, 874 F.3d 926, 930-931 (6th Cir. 2017).
[7] *See Arrowood*, at *7.
[8] *See Brandy*, at 2.

view the DOJ's case law as persuasive on the matter before it.  Accordingly, the City's Motion is not moot.

## II.     CONCLUSION

The City respectfully requests that the Court grant its Monitor's Compliance with the Plain Text of Settlement Agreement Paragraph 371. As demonstrated, (1) its Motion is not moot; (2) the Monitor and the DOJ's arguments that the Review is not a Compliance Review are unconvincing; and (3) granting the City's Motion for the Monitor to provide a methodology is essential for advancing police reform and achieving compliance.

Respectfully submitted,

**FOR THE CITY OF CLEVELAND**

*/s/ Mark Griffin*
Mark Griffin (0064141)
Director of Law
Delante Spencer Thomas (0096349)
Chief Assistant Director of Law
Martin Bielat (0098052)
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2737
Fax:(216) 664-2663
mgriffin@clevelandohio.gov
dthomas3@clevelandohio.gov
Mbielat@clevelandohio.gov

**Certificate of Service**

    I certify that on May 27, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                                      */s/ Mark Griffin*
                                                                      Mark Griffin
                                                                      Director of Law
                                                                      City of Cleveland