

# 17th Semiannual Report

Written by:
The Independent Monitoring Team

SEPTEMBER 2025

**Hogan Lovells**

# The Independent Monitoring Team


**Karl Racine**
Monitor


**Stephanie Yonekura**
Deputy Monitor


**Sabrina Apple**


**Assistant Chief Shunta Boston (ret.)**


**Chief Dan Brennan (ret.)**


**Courtney Caruso**


**Christine Cole**


**Dr. Randolph Dupont**


**Dr. Ronnie Dunn**


**Chief Terrence Gordon (ret.)**


**Chief Tammy Hooper (ret.)**


**Chief Kelly McMahill (ret.)**


**Chief Rick Myers (ret.)**


**Katie O'Brien**


**Rory Pulvino**


**Captain Scott Sargeant (ret.)**


**Charles R. See**

**Hogan Lovells**

# Table of Contents

I.   Letter from the Monitor ................................................................. 1

II.  Understanding this Report ............................................................. 3

III. Executive Summary ...................................................................... 6

IV. Complete Findings ....................................................................... 14

    1.    Community Engagement and Building Trust .............................. 14

           Areas of Progress ........................................................... 14

           Challenges Ahead ........................................................... 15

    2.    Community and Problem-Oriented Policing .............................. 15

           Areas of Progress ........................................................... 15

           Challenges Ahead ........................................................... 16

    3.    Bias-Free Policing ................................................................. 16

           Areas of Progress ........................................................... 16

           Challenges Ahead ........................................................... 16

    4.    Use of Force ......................................................................... 17

           Areas of Progress ........................................................... 17

           Challenges Ahead ........................................................... 18

    5.    Crisis Intervention ................................................................. 19

           Areas of Progress ........................................................... 19

           Challenges Ahead ........................................................... 20

    6.    Search and Seizure ............................................................... 20

           Areas of Progress ........................................................... 20

           Challenges Ahead ........................................................... 21

    7.    Accountability ....................................................................... 22

           Areas of Progress ........................................................... 22

           Challenges Ahead ........................................................... 23

    8.    Transparency and Oversight .................................................. 24

           Areas of Progress ........................................................... 25

           Challenges Ahead ........................................................... 25

    9.    Officer Assistance and Support .............................................. 26

           Areas of Progress ........................................................... 26

Hogan Lovells

Challenges Ahead.................................................................................. 27

10. Supervision................................................................................................. 28

      Areas of Progress ............................................................................... 27

      Challenges Ahead.................................................................................. 28

11. Outcome Measurements........................................................................... 29

V. Appendix ........................................................................................................ 33

1. Community Engagement and Building Trust ............................................ 32

2. Community and Problem-Oriented Policing ............................................. 34

3. Bias-Free Policing..................................................................................... 35

4. Use of Force ............................................................................................. 36

5. Crisis Intervention..................................................................................... 42

6. Search and Seizure ................................................................................. 46

7. Accountability ............................................................................................ 47

8. Transparency and Oversight.................................................................... 55

9. Officer Assistance and Support................................................................ 58

10. Supervision................................................................................................ 65

Hogan Lovells

# I.    Letter from the Monitors

The time period covered by this 17th Semiannual Report is January 1, 2025, through June 30, 2025. Monitor Karl Racine was the Monitor during this time period. As the Parties and the public are aware, Monitor Racine resigned as Monitor last month. The Court has since named Christine Cole Interim Monitor. In light of the consistency of their views regarding the City's work over the last review period and the goal of continuity in the work of the Monitoring Team going forward, Mr. Racine and Ms. Cole jointly submit this Monitors' Letter.

The City deserves recognition for achieving twenty (20) upgrades this reporting period across multiple areas of the Consent Decree, including Community Engagement, Use of Force, Accountability, Transparency, Officer Assistance and Support, and Supervision. These gains reflect meaningful efforts to strengthen community partnerships, improve use of force policies and training, and establish more effective accountability structures. Such progress demonstrates that when the City invests focus and resources, it makes measurable strides toward compliance.

In preparing this report, the Monitoring Team carefully considered City feedback on various ratings. In the interest of collaboration and staying focused on true objectives, the Monitors granted several additional upgrades and deferred on downgrades in response to the City's concerns.  While the Monitoring Team's view of progress may, at times, differ from how the City sees it, we have and will continue to take the City's perspective and feedback into account.

Still, significant work remains. The Monitoring Team is encouraged by notable behavioral shifts among police officers and supervisors, as well as the continued commitment to constitutional policing exhibited by Chief Todd and her leadership team. Leadership at CDP is having positive impact.

However, persistent hurdles to compliance remain at various administrative levels. For example, several distinct groups within City government report lacking the staff and resources necessary to fulfill the duties required of them by the Consent Decree. It is imperative that the City  invest adequate resources to support the independent work of the CPC and OPS. We also note the need for continued support of CDP officers, as well as maintaining upgrades to equipment and improving, to the extent possible, the physical spaces in which the officers work.

Unfortunately, City Law continues to challenge elements of the monitoring process, including access to information, assessment methodologies, and billing. As noted in prior Semiannual Reports, these disputes distract all Parties from the central objective at issue: achieving substantial compliance. Both the community and Division members deserve and require the City's focus to remain on meaningful reform, not process disputes. We thank the Honorable Judge Solomon Oliver, Jr. for his active engagement, rulings on matters in dispute, and exhortations to focus on the substance of Consent Decree progress.

**Hogan Lovells**

The Monitoring Team's launch of several comprehensive assessments in collaboration with the Parties is the light at the end of the tunnel for which all have been waiting. To this end, the Monitoring Team has shifted the bulk of its work to assessing whether City reforms are meaningfully embedded into the Division's daily operations and producing their designed purpose of achieving constitutional policing for the Cleveland community. The Monitoring Team will continue to prioritize in-depth reviews of case files, training delivery, body-worn camera footage, officer conduct, and other data essential to assessing compliance.

Assessments are nearing completion in three key areas: Use of Force, Crisis Intervention, and Search & Seizure. Preparatory work is well underway for several other subject areas, with further comprehensive compliance assessments scheduled in the months ahead. Assessment timelines, developed collaboratively with the Parties, reflect the rigorous and transparent methodologies that will guide the Monitoring Team's ratings in the next reporting period.

Looking forward, under Interim Monitor Cole's leadership, the Monitoring Team will continue to build on this sound foundation and ensure that assessments remain the centerpiece of its work. These assessments will provide the Court, Parties, and—most importantly—the community with a clear and candid evaluation of whether the City has truly internalized the reforms necessary for constitutional policing.

Cleveland residents have long demanded accountability, transparency, and fairness in policing. Meeting that demand requires the City to embrace independent oversight and focus squarely on compliance rather than resistance. The Monitoring Team remains committed to carrying out its responsibilities with these principles at the forefront.

Sincerely,

Karl Racine

*CMCole*

Christine Cole

*Court-Appointed Monitors*

Hogan Lovells

# II.   Understanding this Report

Since the 3rd Semiannual Report, the Monitoring Team has used its Semiannual Reports to present a summary of the status of the City's compliance with each of the 340 paragraphs of the Consent Decree. Although providing "a paragraph-by-paragraph accounting of the general state of the City's compliance runs the risk of being an over-simplification," these summary representations remain useful indicators for viewing progress over time.[1]

Therefore, each section of the 17th Semiannual Report summarizes the Monitoring Team's general conclusions about compliance status by describing the state of each paragraph listed as one of the following:

- **Non-Compliance:** The City and/or Cleveland Division of Police ("CDP") has not yet complied with the relevant provision of the Consent Decree. This includes instances in which the City or CDP's work or efforts have begun but cannot yet be certified by the Monitoring Team as compliant with a material component of the requirement.

- **Partial Compliance:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward a material number of key components of the provision of the Consent Decree—but has not achieved "Operational Compliance." This includes instances where policies, processes, protocols, trainings, systems, or the like exist on paper but do not exist or function in day-to-day practice. It may capture a wide range of compliance states or performance, from the City or CDP having taken only very limited steps toward Operational Compliance to being nearly in Operational Compliance.

- **Operational Compliance:** The City and/or CDP has made notable progress to technically comply with the requirement and/or policy, process, procedure, protocol, training, system, or other mechanism of the Consent Decree such that it is in existence or practice operationally—but has not yet demonstrated, or has not yet been able to demonstrate, meaningful adherence to or effective implementation, including across time, cases, and/or incidents. This includes instances where a given reform is functioning but has not yet been shown, or an insufficient span of time or volume of incidents have transpired, to be effectively implemented in a systemic manner.

- **General Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented across time, cases, and/or incidents. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.

---

[1] 3rd Semiannual Report at 9.

Hogan Lovells

The same caveats that have previously applied to these summary categories remain applicable and are thus repeated here verbatim. First, "Non-Compliance" or "Partial Compliance" does not automatically mean that the City or CDP has not made good-faith efforts or commendable strides toward compliance. It might, instead, signify that initial work has either not yet begun or reached a sufficiently critical point where progress can be considered to have been made.

Second, "Partial Compliance" requires more than taking some limited, initial steps toward compliance with a requirement. It instead requires that the City or CDP have made "sufficient, material progress toward compliance" that "has graduated from the stages of initial work to more well-developed and advanced refinement of various reforms."[2]

Third, these summary terms do not appear in the Consent Decree. The Monitoring Team employs them in order to synthesize and summarize the report's conclusions. Relatedly, compliance with individual paragraphs of the Consent Decree is necessary for the larger, overall "Substantial and Effective Compliance" with the whole of the Consent Decree, but it is not the same thing. Ultimately, "Substantial and Effective Compliance" with the Consent Decree will be reached when "the City either has complied with *all* material requirements of this Agreement or has achieved sustained and continuing improvement in constitutional policing, as demonstrated pursuant to this Agreement's outcome measures,"[3] "by a preponderance of the evidence."[4]

Fourth, the charts within the appendix that summarize progress in each area also condense the requirements of each paragraph rather than reprinting the entire Consent Decree in the context of this report. Any imprecision or confusion created by these condensed or summarized requirements is unintended and, in any event, can be cured with reference to the original language of the Consent Decree itself.[5] Furthermore, the appendix charts primarily cover paragraphs 14 through 340 of the Consent Decree, but other paragraphs also contain requirements that the City must meet.[6]

Overall "compliance status" conclusions displayed in tables within the executive summary and the appendix herein do not replace the more rigorous and comprehensive quantitative and qualitative assessments of how CDP performs over time:

> [T]he Monitoring Team bases its assessments on its current understandings, knowledge, and information gained through ongoing work and discussion with CDP, the Parties, and other stakeholders. The assessments are informal to the extent that not all of them are necessarily informed by the type of exhaustive compliance and outcome measurements that are a critical component of the Consent Decree—and the summary determinations do not take the place of these more structured, systemic analyses. The intent is to provide a bottom-line sense of where CDP is on the road to compliance. Ongoing, rigorous quantitative and

---

[2] 3rd Semiannual Report at 10.
[3] Dkt. 413-1 ¶ 456 (emphasis added).
[4] *Id.* at ¶ 397.
[5] *See Id.*
[6] *See* 3rd Semiannual Report at 10.

Hogan Lovells

*qualitative assessments will provide a more comprehensive picture as work under the Consent Decree proceeds*.[7]

The descriptions of progress contained below should be considered as a synthesis or bottom-line reporting of substantive discussions from each major Consent Decree area contained within this report.

An additional method for capturing progress is the creation, utilization, and accountability to the Monitoring Plan, described in paragraph 369, which outlines the work to be done by the Parties within the year.

As is evidenced by the extensive and broad-reaching Consent Decree itself, the City of Cleveland's implementation of the Consent Decree and the many action items and projects it encompasses is a substantial task. Many areas of the Consent Decree require multiple reporting periods for the City to achieve—and for the Monitoring Team to confirm and consequently report on—these major milestones. Therefore, at times this Semiannual Report, as with previous Semiannual Reports, reprints content from prior Semiannual Reports in instances where there has not been enough material progress to warrant an update. In such cases, the Monitoring Team is not citing to prior Semiannual Reports in the interest of readability.

---

[7] *Id.* at 11.

**Hogan Lovells**

# III.  Executive Summary

## Community Engagement and Building Trust

Visual Representation of
Compliance for:



Community Engagement and
Building Trust

The Cleveland Division of Police (the "Division" or "CDP") continues to enhance its efforts to build trusting relationships with the community. CDP Outreach Officers regularly attend community-sponsored meetings and, in some cases, participate in the planning and facilitation of such events. With the recent swearing-in of its final Commissioner, the Community Police Commission ("CPC") now operates with a full roster, enabling it to fully engage in its critical work. The City is also actively working to strengthen connections between District Policing Committees ("DPCs") and residents of their respective districts.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 17a, ¶ 17c, ¶ 18b, ¶ 21, ¶ 24 | ¶ 14, ¶ 16, ¶ 17b, ¶ 18a, ¶ 17d, ¶ 19, ¶ 20, ¶ 23, ¶ 25 | ¶ 18c, ¶ 26 | ¶ 15, ¶ 22 |

*** *Paragraphs 18c, 20, and 26 have been upgraded since the 16th Semiannual Report.*

## Community and Problem-Oriented Policing

Visual Representation of
Compliance for:



Community and
Problem-Oriented Policing

Each District now has a designated Community and Problem-Oriented Policing ("CPOP") Coordinator, marking a significant step forward.

Recently, the Monitoring Team issued its proposed CPOP assessment methodology for Party feedback. The contemplated assessment, once completed, will afford concrete insights into CPOP progress.

**Hogan Lovells**

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 34 | ¶ 27, ¶ 28, ¶ 29, ¶ 30, ¶ 31, ¶ 32, ¶ 33 | | |

*** *No changes recommended since the 16th Semiannual Report.*

## Bias-Free Policing

Visual Representation of Compliance for:



Bias-Free Policing

During this reporting period, CDP continued to make incremental progress in the area of Bias-Free Policing. Key initiatives include conducting a policy review of the Division's Bias-Free Policing General Police Order ("GPO") and successfully graduating a new class of officer recruits from the In-House Basic Police Academy Training.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 43 | ¶ 35, ¶ 36, ¶ 37, ¶ 41, ¶ 42, ¶ 44 | ¶ 38, ¶ 39, ¶ 40 | |

*** *No changes recommended since the 16th Semiannual Report.*

## Use of Force

Visual Representation of Compliance for:



Use of Force

During the first half of 2025, Monitoring Team Subject Matter Experts ("SMEs") completed their review of the 2024 Level 1 and Level 2 Use of Force cases. The full assessment of all related paragraphs will be completed in the second half of the year and will include a thorough review of Force Investigation Team ("FIT") cases from 2023 and 2024, as well as the work of the Force Review Board ("FRB"). There were two upgrades based on progress observed during this reporting period.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| | ¶ 46, ¶ 47, ¶ 111, ¶ 118, ¶ 120, ¶ 122, ¶ 125, ¶ 126, ¶ 129 | ¶ 45, ¶ 48, ¶ 49, ¶ 50, ¶ 51, ¶ 52, ¶ 53, ¶ 54, ¶ 55, ¶ 56, ¶ 57, ¶ 58, ¶ 59, ¶ 60, ¶ 61, ¶ 62, ¶ 63, ¶ 64, ¶ 65, ¶ 66, ¶ 67, ¶ 68, ¶ 69, ¶ 70, ¶ 71, ¶ 72, ¶ 73, ¶ 74, ¶ 75, ¶ 76, ¶ 77, ¶ 78, ¶ 79, ¶ 80, ¶ 81, ¶ 82, ¶ 83, ¶ 84, ¶ 85, ¶ 86, ¶ 88, ¶ 89, ¶ 90, ¶ 91, ¶ 92, ¶ 93, ¶ 94, ¶ 95, ¶ 96, ¶ 97, ¶ 98, ¶ 99, ¶ 100, ¶ 101, ¶ 102, ¶ 103, ¶ 104, ¶ 105, ¶ 106, ¶ 107, ¶ 108, ¶ 109, ¶ 110, ¶ 112, ¶ 113, ¶ 114, ¶ 115, ¶ 116, ¶ 117, ¶ 121, ¶ 123, ¶ 124, ¶ 127, ¶ 128, ¶ 130 | ¶ 87 |

*** Paragraphs 116 and 121 have been upgraded since the 16th Semiannual Report.*

## Crisis Intervention



**Visual Representation of Compliance for:**

**Crisis Intervention**

The 16th Semiannual Report highlighted the spirit of cooperation among the Parties and the Cleveland community in developing initial phases of the compliance assessment process as well as ongoing efforts to improve CDP's behavioral health intervention strategies. This cooperative work has continued through the 17th Semiannual reporting period. At the time of writing this Report, the Monitoring Team works to finalize a comprehensive Crisis Intervention compliance assessment. The Team expects upward shifts in compliance ratings following this assessment's completion.

**Hogan Lovells**

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| | ¶ 141, ¶ 151, ¶ 156 | ¶ 131, ¶ 135, ¶ 140, ¶ 142, ¶ 145, ¶ 147, ¶ 148, ¶ 149, ¶ 150, ¶ 152, ¶ 157, ¶ 158, ¶ 159 | ¶ 132, ¶ 133, ¶ 134, ¶ 136, ¶137, ¶ 138, ¶ 139, ¶ 143, ¶ 144, ¶ 146, ¶ 153, ¶ 154, ¶ 155 |

*** *No changes recommended since the 16th Semiannual Report.*

## Search and Seizure

**Visual Representation of Compliance for:**



**Search and Seizure**

The Monitoring Team initiated the Search and Seizure compliance assessment during this reporting period. By late June, seven (7) SMEs completed review of the previously identified 631 sample cases. The Monitoring Team continues to review and analyze the resulting data to produce a full draft report for the Parties' review.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| | ¶ 160, ¶ 161, ¶ 162, ¶ 163, ¶ 164, ¶ 165, ¶ 166, ¶ 167, ¶ 168, ¶ 169, ¶ 170, ¶ 171, ¶ 172 | ¶ 173, ¶ 174, ¶ 175 | |

*** *No changes recommended since the 16th Semiannual Report.*

**Hogan Lovells**

## Accountability

**Visual Representation of Compliance for:**



Accountability

During the first half of 2025, the Monitoring Team and the Internal Affairs Superintendent met monthly to discuss items to be achieved during this reporting period. Consistent with these discussions, the Monitoring Team completed a document review of submitted items. This collaboration resulted in the development of achievable steps and processes for obtaining data that may demonstrate future Consent Decree compliance. Internal Affairs received one upgrade for paragraph 179 based on the progress observed during this reporting period for the Candidate Selection Process.

For four (4) out of the six (6) months of this reporting period, an Interim Administrator oversaw several improvements in overall Office of Professional Standards ("OPS") operations. Productivity among the investigators increased significantly, accompanied by a reduction in the case backlog. The Complete Findings section of this Report outlines each of the seven (7) upgrades related to OPS operations.

The Monitoring Team looks forward to working closely with the City and DOJ to review, provide feedback on, and support the implementation of feedback on training programs to set OPS on a path for long-term success.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
|  | ¶ 176, ¶ 177, ¶ 180, ¶ 181, ¶ 182, ¶ 183, ¶ 184, ¶ 185, ¶ 186, ¶ 187, ¶ 188, ¶ 192, ¶ 194, ¶ 198  ¶ 199, ¶ 201, ¶ 204, ¶ 215, ¶ 223, ¶ 226, ¶ 227, ¶ 232, ¶ 233, ¶ 234, ¶ 239, ¶ 241, ¶ 245, ¶ 249 | ¶ 178, ¶ 179, ¶ 189, ¶ 190, ¶ 191, ¶ 193, ¶ 195, ¶ 196, ¶ 200, ¶ 203, ¶ 205, ¶ 208, ¶ 209, ¶ 210, ¶ 211, ¶ 212, ¶ 213, ¶ 214, ¶ 216, ¶ 217, ¶ 218, ¶ 219, ¶ 220, ¶ 222, ¶ 224, ¶ 228, ¶ 229, ¶ 237, ¶ 238, ¶ 242, ¶ 243, ¶ 246, ¶ 248, ¶ 250 | ¶ 197, ¶ 202, ¶ 206, ¶ 207, ¶ 221, ¶ 225, ¶ 230, ¶ 231, ¶ 235, ¶ 236, ¶ 240, ¶ 247 |

*\*\*\* Paragraphs 179, 198, 200, 206, 214, 218, 219, 222 have been upgraded since the 16th Semiannual Report.*

Hogan Lovells

## Transparency and Oversight



**Visual Representation of Compliance for:**

Transparency and Oversight

Shayleen Agarwal was hired to the position of Inspector General ("IG") during the previous reporting period. IG Agarwal reports to the Director of Public Safety. The Monitoring Team has had the opportunity to meet with her several times and looks forward to following her progress in this position.

During this reporting period, IG Agarwal was provided the necessary resources and support to begin her work, resulting in an upgrade of paragraph 256 to Partial Compliance. More time is needed to assess whether Operational Compliance has been reached.

The Open Data Portal on the City's website continues to be an impressive source of information in real time, including Use of Force data. However, locating information on both the City and Division websites remains a challenge.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 265 | ¶ 255, ¶ 256, ¶ 261, ¶ 264, ¶ 266, ¶ 267, ¶ 268 | ¶ 250, ¶ 251, ¶ 252, ¶ 253, ¶ 254, ¶ 257, ¶ 258, ¶ 260, ¶ 262, ¶ 263 | ¶ 259 |

*** *Paragraph 256 has been upgraded since the 16th Semiannual Report.*

## Officer Assistance and Support



**Visual Representation of Compliance for:**

Officer Assistance and Support

The City produced a revised draft policy on Promotions that has been reviewed by the Monitoring Team and the U.S. Department of Justice ("DOJ"). There has been no reported progress in the area of Performance Evaluations.

Each of the topical areas within Officer Assistance and Support, including Training, Equipment and Resources, Recruitment and Hiring, Performance Evaluations and Promotions, and Employee Assistance, are poised and prepared for an assessment by the Monitoring Team over this calendar year. We hope that the process will allow for collaborative engagement to advance practices and achieve compliance.

**Hogan Lovells**

The Parties are currently reviewing a methodology sent in March 2025 for a comprehensive assessment of Equipment and Resources, which is anticipated to be completed in January 2026.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 312, ¶ 313, 314, ¶ 315, ¶ 316, ¶ 317, ¶ 318 | ¶ 269, ¶ 275, ¶ 276, ¶ 277, ¶ 279, ¶ 280, ¶ 281, ¶ 282, ¶ 283, ¶ 284, ¶ 285, ¶ 286, ¶ 287, ¶ 288, ¶ 290, ¶ 291, ¶ 294, ¶ 299, ¶ 304, ¶ 305, ¶ 306, ¶ 309, ¶ 311, ¶ 320, ¶ 321 | ¶ 270, ¶ 271, ¶ 272, ¶ 273, ¶ 274, ¶ 289, ¶ 293, ¶ 295, ¶ 296, ¶ 297, ¶ 298, ¶ 300, ¶ 302, ¶ 303, ¶ 307, ¶ 310, ¶ 319 | ¶ 292, ¶ 301, ¶ 308 |

*\*\*\*Paragraphs 282, 283, 285, 286, and 287 have been upgraded since the 16th Semiannual Report.*

## Supervision

**Visual Representation of Compliance for:**



Supervision

On-scene Supervision continues to improve, particularly in Use of Force incidents. However, written supervisor documentation often lacks in substance, particularly in occasions of investigatory stops resulting in searches and seizures. The City continues its progress in the development of the Officer Intervention Plan ("OIP") by working closely with their vendor, Benchmark Analytics, to develop a computerized relational database that will be used to collect, maintain, integrate, and retrieve data—both department-wide and for each individual CDP officer. This progress resulted in an upgrade for paragraph 328. Though CPC has not yet approved the policy that requires random supervisory review of Wearable Camera System ("WCS") images, CDP supervisors are actively reviewing and reporting on WCS reviews to the Inspections Unit.

| Non-Compliance | Partial Compliance | Operational Compliance | General Compliance |
|---|---|---|---|
| ¶ 327, ¶ 329, ¶ 330, ¶ 331, ¶ 332, ¶ 333, ¶ 334, ¶ 335, ¶ 336 | ¶ 322, ¶ 323, ¶ 324, ¶ 325, ¶ 326, ¶ 328 | ¶ 337, ¶ 338, ¶ 339, ¶ 340 | |

*\*\*\* Paragraph 328 has been upgraded since the 16th Semiannual Report.*

Hogan Lovells

## Outcome Measurements

CDP's key accomplishments during this reporting period with respect to outcome measurements include completing the annual Crisis Intervention analysis, maintaining public transparency dashboards, and improving data quality through new auditing processes and planned technology upgrades. CDP faces challenges in fully implementing data-driven decision making, with leadership needing to develop systematic processes for addressing data quality issues and expanding analytics beyond Crisis Intervention to areas like Bias-Free Policing. The Monitoring Team has begun formal assessments of multiple consent decree areas, including Search and Seizure, Crisis Intervention, and Use of Force, while simultaneously preparing evaluation frameworks for Training, Recruitment, and Equipment assessments. CDP shows strong progress in data infrastructure and transparency but must now focus on translating improved analytics into actionable policy and performance improvements across all operational areas.

**Hogan Lovells**

# IV.  Complete Findings

## 1.  Community Engagement and Building Trust

### Areas of Progress

<u>Community Engagement</u>: CDP Outreach Officers regularly attend community-sponsored meetings and, in some cases, participate in the planning and facilitation of such meetings. CDP Officers also participate in a number of community events including Coffee with a Cop, CDP meetings, and block club meetings. Where time permits, Officers occasionally engage with community residents in non-law enforcement settings, such as walking through playground areas to engage gatherings of youth and stopping by residents' homes for brief "porch chats." Though often limited due staffing constraints, extended working hours, and extensive priority assignments, these activities increase trust and strengthen relationships between CDP and many in the community.

<u>Community Police Commission</u>: Shortly after the close of this reporting period, all CPC vacancies were filled. Once all new members are sworn in and trained, this development will mark an important step toward ensuring CPC can fulfill their vast spectrum of duties. Per the Consent Decree, CPC is actively building cooperative relationships with OPS, the Civilian Police Review Board ("CPRB"), and the Community Relations Board ("CRB"). These relationships will enhance the workings of each group and ultimately advance the Consent Decree's successful implementation.

Exercising its authority to hold public meetings to discuss the Monitor's reports and receive community feedback under paragraph 18c, CPC hosted the Monitoring Team at a community meeting to discuss findings from the 16th Semiannual Report. Also during this period, CPC published a "double" annual report for 2023 and 2024, in view of its obligations under paragraph 20 to issue such reports at least annually.

<u>District Policing Committees</u>: DPCs continue to meet monthly and maintain relationships with businesses and social service agencies operating in their districts. Various City and County departments—including Building & Housing, Prosecutor's Office, Crime Stoppers, Fire, and Emergency Medical Services ("EMS")—regularly present at these monthly meetings. The City is working to improve the connection between DPCs and residents of their respective districts to enhance attendance and participation. The Monitoring Team has offered technical assistance to help further engage residents, diversify attendance (age, gender, and race), and establish more uniform operational procedures upon request from the City.

During this reporting period, DPCs made their second annual presentation to CPC on strategies to address crime and safety issues within their respective districts, thus warranting an upgrade of paragraph 26 to Operational Compliance. This year, CDP worked closely with the Monitoring Team and the Community Relations district liaisons to prepare for these presentations.

Hogan Lovells

## Challenges Ahead

Community Engagement: While CDP is working earnestly to overcome its historical reputation of negative conflict within many segments of the community, challenges associated with overcoming this past of fear, mistrust, and hostility remain. These challenges will be best addressed by CDP's continued commitment to creating trusting, mutually beneficial relationships.

The Community Survey required by paragraphs 361–366 and discussed in the previous Semiannual Report will be a critical milestone for Community Engagement requirements of the Consent Decree. Moving forward with this effort will require significant time investments from both the Parties and the Monitoring Team. The Monitoring Team looks forward to working with the Parties on this.

Community Police Commission: As the Monitoring Team has previously noted, creating an independent, community-driven CPC that reflects the voices of Cleveland residents is a complex task. Achieving success will require time, resources, and a collaborative effort from all involved, including the Commissioners, the community, and City leaders. Now that a full Commission has been seated, a number of challenges remain, including:

•       Forming a cohesive group who can work together and solve problems

•       Establishing the trust and cooperation of the community

•       Building a positive and respectful relationship with CDP

•       Selecting a permanent Executive Director to lead the organization

•       Building a working relationship with the City and City Council (Safety Committee)

•       Completing and implementing the Evidentiary Hearing Manual to govern hearing cases of police misconduct and appeals of discipline brought by CDP Officers

District Policing Committees: As stated in the last Semiannual Report, the Monitoring Team has received community feedback and has firsthand observed mixed progress from DPCs. While DPCs recognize the need to reach a broader audience, some community groups report that their requests for DPC meetings to occur at alternative dates, times, or locations have been met with inflexibility. The Monitoring Team remains committed to working with the City and providing technical assistance to address these issues upon request.

## 2. Community and Problem-Oriented Policing

### Areas of Progress

Key areas of progress noted in the 16th Semiannual Report stemmed from having a single command structure in place to grow and develop CPOP. During this reporting period, the District Commander, who is also responsible for overseeing the implementation of CPOP,

Hogan Lovells

continued to strengthen this centralized structure through consistent and frequent meetings with CPOP Coordinators from each District. These meetings are essential for ensuring alignment and coordination across Districts, as CPOP Coordinators play a critical role in facilitating community involvement, ascertaining local issues, and collaborating with community members to develop problem-solving strategies. Each District now has a CPOP Coordinator.

## Challenges Ahead

Despite continued structural improvements, significant challenges remain in advancing the implementation of CPOP citywide. CDP did not provide documentation during this reporting period to demonstrate that programming or tactics have evolved as a result of community participation or collaborative problem-solving.

Another critical challenge is the absence of a full-time command officer dedicated to advancing CPOP. This lack of dedicated leadership has contributed to the slow and uneven growth of CPOP implementation across the city.

The provision and approval of the revised CPOP training curriculum marked a promising development during the last reporting period. With delivery scheduled for Session III of 2025, the Monitoring Team looks forward to observing its implementation during the next reporting period.

Work throughout this reporting period culminated in the Monitoring Team's recent issuance of its proposed CPOP assessment methodology to the Parties for feedback. The Monitoring Team anticipates that the comprehensive CPOP assessment, once completed, will provide a better understanding of progress and highlight opportunities for meaningful growth.

## 3. Bias-Free Policing

### Areas of Progress

During this reporting period, a total of three hundred twenty-seven (327) CDP officers across the Division completed a policy review training on CDP's 01.07.08 Bias-Free Policing GPO. Additionally, forty-eight (48) new officer recruits from Class #158 completed the CDP In-House Basic Police Academy Training. This training incorporates Bias-Free Policing curriculum and utilizes scenario-based exercises to enhance critical thinking and decision-making skills.

### Challenges Ahead

After reviewing CDP's four (4) hour, in-person Bias-Free Policing Supervisor Training curriculum during the 16th reporting period, the Monitoring Team reported its anticipation of receiving further evidence of progress in this area throughout 2025. The Monitoring Team and DOJ are awaiting receipt of the Supervisor's Bias Free Policing Training

**Hogan Lovells**

curriculum. This curriculum, for which the Monitoring Team and DOJ previously provided feedback, received full CPC approval in November 2024.

Moreover, as noted in previous Semiannual Reports, the Monitoring Team continues to await the production and publication of a comprehensive annual report from CDP. Pursuant to paragraphs 43 and 265 of the Consent Decree, this report must analyze data to assess whether CDP is conducting all aspects of its operations—both internally and externally—in a fair and unbiased manner. It must also identify corrective actions taken and opportunities to build on successes. To date, CDP has not produced such a report. Beyond meeting the Consent Decree's explicit requirements, the Monitoring Team encourages CDP to engage with this opportunity for self-assessment as a necessary step toward achieving meaningful and sustained reform.

## 4. Use of Force

### Areas of Progress

Throughout the 2024 Level 1 and Level 2 Use of Force case review process, SMEs regularly met with the Chief and other Division personnel to share observations and findings. Observations from the reviewers were provided to the City in advance of the monthly meetings, allowing the Division to review the identified cases for discussion. Most reviewer comments focused on tactical recommendations or flags for training. The Chief's active engagement and genuine interest in learning from this process resulted in thorough conversations with the reviewers and increased communication among CDP commanders and their personnel. The Monitoring Team applauds the Division's ability to identify problematic uses of force when they occur and address them appropriately, which will be explored in further detail in the forthcoming Use of Force assessment.

The Monitoring Team has also had several valuable and positive meetings with the Internal Affairs Superintendent and looks forward to the upcoming FIT review. During prior reporting periods, changes were made to address shortfalls identified in the assessment. Based on interim reports, the Monitoring Team now possesses sufficient evidence to warrant an upgrade in compliance with paragraph 116 due to shifted practices. Specifically, the completion and approval of the FIT Manual in 2018, along with general adherence to its provisions, support a finding of Operational Compliance. The full assessment, commencing in the Summer of 2025, will reveal a more detailed evaluation of compliance with all aspects of the Consent Decree and FIT Manual requirements. Similarly, materials submitted during the reporting period, specifically those related to paragraph 121 and the submission of a preliminary report to the Chief within twenty-four (24) hours of a FIT call-out, also demonstrate that the Division adhered to expectations outlined in that paragraph during this period.

Members of the Monitoring Team have had the opportunity to routinely observe FRB meetings during this reporting period. Ongoing refinements to the discussions and data collection processes have improved the quality and scope of the conversations, as well as the utility of worksheets used during these meetings.



Further adjustments to compliance levels across the Use of Force paragraphs will occur following the completion of the full assessment.

## Challenges Ahead

Efforts to update and refine the training for the FRB are ongoing within CDP's Training Section. The Monitoring Team recently provided suggestions to strengthen the new training module, which remains a work in progress. A robust and comprehensive training program must include several components: an explanation of FRB's purpose, the roles of Board members, a review of all Use of Force policies, instruction on the use of the tracking tool, clear requirements for Board members' preparation for meetings, and a detailed guide to discussion points. These discussion points should include an assessment of de-escalation efforts and pre-event tactics.

Although online instruction may be preferred by participants, in-person engagement on this topic is likely to yield superior results by fostering a more profound understanding among the core group of regular participants. While each FRB member brings valuable expertise—ranging from training and command-level management to civilian oversight— a shared understanding of the FRB's role as a quality control mechanism is critical. This understanding must encompass the entire process, from the initial dispatch call-out to the final investigation reviewer.

Given routine personnel changes within the Division, the Monitoring Team strongly emphasizes the need for rigorous, standardized training and substantial orientation requirements for all Board members—including District representatives who are not consistent participants in the FRB process.

In 2023, the Monitoring Team reviewed the policy requiring Division supervisors to audit randomly selected samples of WCS image data for compliance. Though this policy is not yet in effect, the City provided the Monitoring Team with access to and findings from supervisor reviews conducted during the first quarter of 2025. The Division also adopted a new method to capture supervisory reviews during this reporting period, which includes Inspections Unit analysis of the reviews. As the City reports, this new process increases visibility into compliance and helps them identify areas for improvement.

While the Monitoring Team is confident that all reported uses of force are reviewed, CDP must also ensure that all incidents of force are properly reported in the first instance under various provisions of the Consent Decree, including paragraphs 46 and 47. Accordingly, the Monitoring Team encourages the Division to consider using this new process to identify any unreported uses of force and other trends that may influence division-wide training.



## 5. Crisis Intervention

### Areas of Progress

The 16th Semiannual Report highlighted the spirit of collaboration among the Parties to the Consent Decree and the Cleveland community through key initiatives, including initial phases of the assessment process, the ongoing development of quality behavioral health training for CDP, and the process of obtaining community input from the Mental Health Response Advisory Committee ("MHRAC") and CPC.[8] This cooperative work has continued through the 17th Semiannual reporting period. At the close of this reporting period, the Monitoring Team is finalizing a comprehensive assessment of compliance in this area.

As discussed in the 16th Semiannual Report, several accomplishments have laid a strong foundation for continued progress in Crisis Intervention. These include maintaining a low arrest rate and low Use of Force for individuals in behavioral crises, achieving a low rate of injury for both citizens and officers, fostering a strong relationship with EMS, and improving transportation options for individuals in crisis.

Consistent with previous reporting periods, CDP continues to benefit from the important assistance of MHRAC. Notably, MHRAC's role dates back to the inception of the Cleveland Consent Decree. Established in 2015, MHRAC was created to provide feedback, technical assistance, and support to CDP in the area of Crisis Intervention. Throughout its tenure with the City of Cleveland Health Department and the Alcohol, Drug Addiction and Mental Health Services Board ("ADAMHS"), this volunteer citizen group has worked with CDP to develop policies and training programs that have had national impact.[9]

The MHRAC Subcommittees of Youth, Community Engagement, Training, Data and Growth have worked closely with CDP and its Crisis Intervention Team ("CIT") leadership to address major issues including domestic violence, building trust among youth, public education, assisting individuals experiencing homelessness, and providing high-quality training activities for officers, communications specialists, and other CDP staff. These training efforts include in-service behavioral health training for all officers and communications specialists, academy-based training for new recruits, and specialized training for Specialized Crisis Intervention Trained Officers ("SCIT").

CDP, through its CIT leadership, has also leveraged data to improve its response to individuals experiencing a behavioral health crisis. For example, training provided to several community agencies has resulted in a reduction of crisis intervention calls from those agencies. CDP has also provided technical assistance to initiatives such as the Cuyahoga County Community Needs Assessment Summit, contributing to the development of programs for behavioral health agencies. Additionally, CDP has taken

---

[8] *See* The Independent Monitoring Team, 16th Semiannual Report available at
http://www.clevelandpolicemonitor.net/s/DKT-597-1_16th-Seminannual-Report.pdf
[9] *See* Mental Health Response Advisory Annual Report 2024 available at
https://clevelandhealth.org/assets/documents/health/MHRAC/MHRAC_2024_Annual_Report.pdf

**Hogan Lovells**

steps to recognize the work of patrol officers in this area through commendations such as the annual Captain Purcell Crisis Intervention Award and nominations for the National Alliance on Mental Illness ("NAMI") Officer of the Year.

## Challenges Ahead

The Monitoring Team expects to complete the City and CPD crisis intervention assessment prior to the publication of this report. While the first evaluation can be a learning process, the initial results are encouraging. The team expects upward shifts in compliance status in this area following completion of this formal assessment. As discussed in the 16th Semiannual Report, the Monitoring Team is confident that impressive work on the part of the Community, the City, and CDP will lead to full compliance with the terms of the Consent Decree and will continue to improve the lives of those in the Cleveland community.

CDP has much to be proud of through its Crisis Intervention Programs over the past several years. The Division has an impressive public dashboard that provides important outcomes on this behavioral health work.[10] Yet these accomplishments have not always reached the Cleveland community. It is important for CDP to take advantage of additional opportunities to communicate the success of its efforts to the community.

Understandably, public expectations in the area of behavioral health crisis intervention continue to grow. The City of Cleveland and CDP are developing new strategies for intervention and cooperation with existing community-based behavioral health programs, such as those provided through the ADAMHS Board. Such initiatives have the potential to enhance the scope of community mental health interventions. By expanding this approach, responsibility for Crisis Intervention could extend beyond the CDP and be distributed among various available resources, thereby fostering a comprehensive community behavioral health strategy.

The extent to which the public is aware of efforts to expand the range of behavioral health interventions remains unclear. Nor is it clear that a comprehensive plan exists to merge existing programs into a seamless system coordinated across a range of agencies that include criminal justice, health care and social services. The challenge for Cleveland will be providing a seamless system of behavioral care that works well across public safety, emergency medical systems and community mental health efforts. It is likely that the best hope for expanding public trust in CDP lies with efforts to create such a seamless system.

## 6.  Search and Seizure

### Areas of Progress

In preparation for the commencement of the Search and Seizure assessment, the Police Accountability Team ("PAT") and Division personnel were very helpful in organizing briefing sessions to ensure the Monitoring Team reviewers possessed a comprehensive

---

[10] *See* Crisis Intervention Team (CIT) CIT Data Collection Form Totals (2021-2024) available at https://data.clevelandohio.gov/apps/106d60acfdbc4ba18d13d99d3b8c6c41/explore

Hogan Lovells

understanding of the various data systems and access to those systems. The Monitoring Team particularly appreciated Chief Todd's responsiveness to questions raised by the reviewers throughout the reporting period. Where reviewers raised questions such as the completeness of a report or the way in which a case was handled, Chief Todd would personally provide timely responses or delegate responses to key personnel. During this process of demonstrations, the Division also seemed to learn more about its processes and data system complexities, thereby inspiring their plan for internal procedure auditing.

Recently, the City requested the establishment of regular meetings for a Search and Seizure working group. The Monitoring Team will determine the best structure for these meetings during the next reporting period. In the short term, Monitoring Team SMEs expect to provide anecdotal impressions from the Search and Seizure reviews to the Division, including personnel from the Training Section. This will create an opportunity to address any emerging issues through training as soon as possible. At the City's request, the Monitoring Team will explore methods for ongoing review of Search and Seizure cases at future working group meetings with the City.

During the last reporting period, CDP initiated a secondary review of Search and Seizure incidents. Drawing from a randomly selected sample, an additional review is conducted by supervisory personnel of the entire report. Using a survey tool for data collection and Power BI for presentation, CDP is able to demonstrate their assessment of the process. The Monitoring Team looks forward to a demonstration and explanation of this process and the findings to date in the coming weeks.

## Challenges Ahead

Setting up the process for the Search and Seizure assessment revealed issues with retrospective access to the full notes within supervisory documents. Pulling from its data warehouse, the City was able to provide evidence of the initial supervisory review of Stop Forms. The workaround for the Monitoring Team review was not optimal, and it remains unclear what other relevant documentation may exist outside of the field-based reporting system. Using what was provided, the Monitoring Team had limited access to supervisor notes and, as such, cannot report confidently on the full scope of corrections that were made. Full analysis of the data will reveal more details on the quality of the officers' articulation of reasonable suspicion and the quality of the supervisory review. Initial comments from the reviewers indicate there is room for improvement in both the articulation and the thoroughness of the supervisory review. For example, at times there were inconsistencies in the supervisory reviews or the comments from supervisors lacked substantive information. Because reports were occasionally insufficient on their own, the Monitoring Team relied on the WCS to better understand the reasonable suspicion.

For purposes of the Search and Seizure assessment, CDP had to provide the Monitoring Team with screenshots of the Field Based Reporting System's history for incidents involving a warrantless arrest. This information is not currently available for the incidents involving a warrant arrest. In order to address this data limitation, the Division will need to implement changes that allow for the collection of supervisory approval data for all stops with an arrest. As of this report, this issue has not been resolved.

Hogan Lovells

## 7. Accountability

### Areas of Progress

<u>Internal Affairs</u>: During this reporting period, an Internal Affairs Unit Candidate Selection Process guiding document was created to ensure adherence to and consistency with paragraph 179. The Monitoring Team reviewed this guiding document and other supporting documents, including completed Internal Affairs cases, and verified consistent implementation of the procedure. As a result of its review, the Monitoring Team finds sufficient evidence to support an upgrade related to paragraph 179. Internal Affairs is onboarding investigators who possess excellent investigative skills, have a reputation for integrity, can write clear and comprehensive reports, are fair and objective in determining whether a member committed misconduct, do not have a sustained history of civilian complaints, and have not been disciplined for excessive Use of Force, discrimination, or dishonesty.

During this reporting period, Internal Affairs assigned a temporary investigator to the team. The Monitoring Team looks forward to assessing the new team member's onboarding process for continued consistency with paragraph 179 during the next reporting period.

As a result of the monthly collaboration, Internal Affairs developed a central location to track the completion of the ongoing training that it requires its investigators to undergo annually. With this central location, Internal Affairs can now provide proper documentation that will enable future compliance upgrades related to paragraph 181. This achievement is attributed to the hiring of an Administrative Assistant to support the Internal Affairs Unit. The Monitoring Team looks forward to reviewing documentation in the next reporting period.

Pursuant to paragraph 180, initial supervisor training was also created, approved, and scheduled for implementation starting in the fall of 2025. The Monitoring Team looks forward to observing this initial training for Internal Affairs investigators.

Internal Affairs continues to provide monthly reports of unit activity to support compliance with paragraphs 176–177 and 182–188. Based on the monthly self-reports, Internal Affairs appears to be fulfilling requirements of those paragraphs. Further adjustments to compliance levels across the Internal Affairs paragraphs will be made after a comprehensive assessment is completed. The Monitoring Team and Internal Affairs will continue to collaborate on developing a methodology to assess those paragraphs in the next reporting period.

<u>Office of Professional Standards</u>: The City informed OPS that they may hire outside counsel when OPS believes there is a conflict of interest with City Law. Though this process remains untested, paragraph 198 has been upgraded to Partial Compliance and will be revisited in the next period to assess its effectiveness.

**Hogan Lovells**

OPS also reports that their ability to expend budgeted funds has improved significantly following training and improved collaboration with City Finance. OPS will begin sending budgetary materials to the Monitoring Team in anticipation of future upgrades.

OPS and CPRB Operations Manuals were developed and made publicly available on the website, resulting in a paragraph 200 upgrade to Operational Compliance. Further, because the Monitoring Team has now been able to verify the public availability of complaint forms, other materials outlining the complaint process, and OPS's contact information over several reporting periods, paragraph 206 has been upgraded to General Compliance. Pursuant to paragraph 214, OPS modified its monthly report to now include analytics for identifying patterns and trends in the types of complaints received, therefore warranting an upgrade to Operational Compliance.

With respect to civilian complaint investigations, evidence shows that reports receive three independent reviews within OPS, and OPS investigators have consistently supported their findings by a preponderance of the evidence. Accordingly, paragraph 218 has been upgraded to Operational Compliance. In addition, paragraph 219 was upgraded to Operational Compliance in light of evidence that OPS can now physically access needed information at CDP headquarters, 911 reports are now obtained by OPS within twenty-four (24) hours of an incident, and Internal Affairs now only provides completed investigation reports. Likewise, OPS now has access to all disciplinary records held by CDP, thus supporting paragraph 222's upgrade to Operational Compliance.

The Monitoring Team also notes an increase in marketing and community awareness. Due to the sudden departure of the Community Engagement Coordinator, the Monitoring Team will carefully monitor sustainability during the next reporting period. Paragraph 226 documentation will be provided for the next reporting period to verify what is reported to assess compliance. OPS will also provide documentation for Paragraph 227, which appears to be consistently met by OPS but negated by an increasing backlog for CPRB.

Discipline: After reviewing discipline imposed during this reporting period, the Monitoring Team concludes that the Chief of Police's decision making in discipline cases appears consistent and aligned with CDP policy. The Monitoring Team hopes to work with the City and the DOJ on a comprehensive assessment methodology in the second half of 2025 to formally assess compliance with paragraphs 241, 245–299.

## Challenges Ahead

Internal Affairs: Efforts to obtain annual and monthly training approval, which is currently being sourced through an outside vendor, are ongoing. The Monitoring Team looks forward to seeing the approved vendor training. In addition to the annual and monthly training, an initial investigator training is set to be provided by in-house trainers in the fall of 2025. The Monitoring Team provided suggestions on improving the initial training, which were well received as updates were implemented.

Internal Affairs will be challenged in the next few months to gather all the necessary members and approvals for a fall training session.

<u>Office of Professional Standards</u>: Paragraph 201 requires CDP to consult with OPS and CPC to develop a program for awareness of the civilian complaint process; OPS has shown expansive work in this area, but no documentation of CDP or CPC involvement. Providing documentation of involvement of CDP and CPC and continuation of the community promotional efforts are needed to upgrade paragraph 201. All the hard work by the OPS staff to reduce their backlog of unresolved cases may be negated if the backlog simply shifts to the CPRB level in the process. The uncertainty of the length of time to fill the vacant Administrator position, along with the unknown capacity or "fit" of a new Administrator, poses challenges. Though paragraph 194 is nearing an upgrade, the Monitoring Team must continue to carefully monitor the appointment process, as well as the continuity and sustainability of current organizational progress.

OPS staff provided documentation showing that new investigators receive approximately six (6) weeks of onboarding training, which covers Intake Procedures, Evidence Acquisition, Report Writing, and Case Presentation. While this training aligns with the requirements of paragraphs 195 and 196, OPS did not provide the Monitoring Team with this curriculum in advance or seek prior approval, as required under the Consent Decree. In this instance, the Monitoring Team will retrospectively assess the curriculum for compliance and has requested documentation identifying individuals who attended both the initial and in-service trainings.

Going forward, the Monitoring Team expects all training materials to be provided in advance. The Team looks forward to working closely with the City and DOJ to review, provide feedback on, and support the implementation of feedback on training programs to set OPS on a path for long-term success.

## 8.  Transparency and Oversight

### Areas of Progress

As previously stated, IG Agarwal's background as reported in the press release meets all enumerated qualifications in paragraphs 250–252. The duties and responsibilities listed in paragraphs 253–254 are also included on the City's website as specific to the IG position. Pursuant to paragraph 255, the 2024-2025 published budget document also includes a separate line item for the IG position. Because IG Agarwal was provided with the necessary resources and support to begin her work, paragraph 256 has been upgraded to Partial Compliance.

As discussed in prior Semiannual Reports, CDP maintains various public datasets and dashboards. This includes dashboards and data related to Use of Force and crisis intervention. CDP continues to maintain these dashboards, including daily updates to the Use of Force data. Furthermore, CDP created and began internal data auditing of traffic and investigatory stops, pulling randomized samples of stop incidents for monthly review by CDP sergeants. These regular audits allow CDP to quickly identify issues in data entry, areas of need for training or policy changes, and problematic policing practices. Finally, the transition to a new Records Management System ("RMS")

**Hogan Lovells**

continues to progress. To monitor progress and ensure that all internal stakeholders are consulted, the Monitoring Team regularly meets with CDP, the Office of Information Technology ("OIT"), and Urban AI as part of this transition.

## Challenges Ahead

Although the requirement that the IG report to the Public Safety Director is fully met, the secondary requirement of paragraph 251—that the position "work in the Office of the Mayor"—is not clearly defined. Also, though the duties of the IG are delineated by the Consent Decree and are listed in the position description pursuant to paragraph 253, there has not yet been any policy or procedural guidance produced by the City that defines the authority of the IG, how audits and investigations will be conducted, or how those audits and investigations may integrate or differ from those of other oversight or investigative entities, such as Internal Affairs or the Office of Professional Standards. The issuance of policy and procedure by the City is necessary to ensure that staff understand the specific authority of the IG and the of the types of audits and investigations the office may launch.

Concerning the IG's budget, the current organizational chart issued by the City lists a total of three (3) positions to fully staff the office, but the current funding does not support any additional full-time staff positions beyond that required for the IG. The Monitoring Team will watch this item closely when the next City budget is approved to determine if sufficient funding is allotted and complies with the independence and resources required by paragraph 255.

Because the hiring of IG Agarwal is very recent, more time is needed to assess whether the requirements of paragraph 256 have achieved Operational Compliance. The Monitoring Team looks forward to working with the new IG to bring all of the related paragraphs into full compliance with the Consent Decree.

As previously stated, increased compliance can be achieved for paragraph 261 with demonstration of job requirements or a standard operating procedure for the Data Analysis and Collection Coordinator to report relevant data to the Chief of Police, FRB, Training Review Committee, OPS, CPC, and the Police Inspector General. The current publicized job description contains only a partial list of the required duties and entities. Further, although Power BI Reports have been generated for the FRB and Training Section, no documentation has been provided to demonstrate that all of the required entities have received reports or relevant data.

CDP is on track to deploy the new RMS in November. Such large technological transitions are challenging, and there are likely unforeseen hurdles that will affect CDP's ability to maintain up-to-date analytics. The Monitoring Team remains available to assist with this process as appropriate. Additionally, while CDP has made major strides by instituting a monthly stop audit and developing data quality assurance dashboards, there is still work to do for leadership to fully leverage these assets to improve CDP performance.

**Hogan Lovells**

Paragraphs 264–268 require specific data to be shared with the public and expects CPC be engaged in that process. It remains a challenge for even those familiar with the City's website to locate specific policies and reports as required by those paragraphs. In addition to requirements to post policies and procedures, the paragraphs also require posting and publication of an annual report (as required in paragraph 265), training plans, community policing initiatives, community meeting schedules, and internal audit reports on its website. If these items are posted, the search tool does not locate them directly and the navigation bars do not include language to assists the user's search. Budgets, audits, and CPD information across all headings in the "Links & Publications" section are not current. There is no evidence of training plans, community policing initiatives, or community meetings on the City's website, as required by paragraph 268.

## 9. Officer Assistance and Support

### Areas of Progress

Training: While there were leadership changes in the Division's Training Section during the last reporting period, the transition has been smooth. A forthcoming compliance assessment of all training-related paragraphs in the Consent Decree will be conducted during the next reporting period. This will focus specifically on paragraphs 269–290, which outline training requirements. The Monitoring Team plans to leverage insights gained from this assessment, including the reporting and storage capabilities of the Learning Management System ("LMS"), as well as data accessed in training areas required by other sections.

To increase efficiency, the CPC and Training section leadership have developed a timeline for reviews. Incorporating feedback from supervisors, FRB, CPC, and patrol officers into the Training Needs Assessment and the Training Plan will add to the comprehensive nature of the assessment and the Training Plan.

During this reporting period, the Monitoring Team received materials indicating work on the Field Training Program. As a result, paragraphs 282–283 and 285–287 have been upgraded to Partial Compliance. The comprehensive assessment will allow the Monitoring Team to thoroughly review these materials and determine whether further compliance upgrades are warranted.

Recruitment and Hiring: CDP continued conducting its intensive recruitment weekends this reporting period. These are designed to streamline the application and review process in a concentrated time frame. These weekend-long events have been successful in increasing the hiring of police officer candidates. Dealing with all aspects of the application and qualification process in a weekend provides more immediate feedback to candidates and considerably abbreviates the entire process, affording candidates with actionable information about their prospects for hiring immediately. The Parties and the Monitoring Team continue to have regular meetings to discuss recruitment and retention strategies. The methodology for a formal assessment of this area by the Monitoring Team was approved and the full assessment will commence in the next reporting period.

Performance Evaluations and Promotions: The City produced a revised draft policy on Promotions that has been reviewed by the Monitoring Team and the DOJ. Once finalized, the new process will be used for the 2026 promotional process. Having received the Monitoring Team's feedback on the draft policy at the close of this reporting period, the City is well-positioned for an upgrade to paragraph 318 in the next reporting period following feedback implementation.

## Challenges Ahead

Training: The City needs to ensure that CPC is expeditiously reviewing training curricula for the Division. CPC's extensive review process, where both a subcommittee and the full Commission have the opportunity for review and comment at different times, has at times bogged down the process. Streamlining this process would be beneficial to the Division. In the upcoming assessment, the Monitoring Team looks forward to the first comprehensive review of the Field Training Program and to see evidence that all CDP units are coordinating their training through the Training Section leadership, as required by paragraph 280.

Recruitment and Hiring: As evidenced by the monthly Divisional Notices, CDP continues to lose officers to voluntary termination. The City must develop new strategies to address its retention crisis and do more to incentivize longer retention among its newest employees. By addressing retention, there is less pressure exacted on the recruitment process during a time when recruitment of qualified candidates is a struggle across the nation.

Performance Evaluations and Promotions: At this writing, the City has not created or adopted a revised performance review process that meets the requirements of paragraphs 313–316. Although a draft revision to the Promotions policy has been reviewed, the revised process will not be in effect for upcoming promotional process testing. An RFP was issued to obtain a new vendor to conduct promotions testing, which will occur in a subsequent reporting period. The City states that Consent Decree provisions were included in the RFP to ensure that the chosen vendor provides a methodology and rubric for scoring related to the categories enumerated in paragraph 318. The Monitoring Team has not seen this document but would like to review the methodology provided and scoring rubric once a vendor is selected. The Monitoring Team urges the City to work with the Monitoring Team's SMEs on these items for technical assistance.

## 10.  Supervision

### Areas of Progress

The assessments, concurrent with this reporting period, provide insight into the on-scene supervision and behavior of supervisors. Relying on reviews of images from the WCS, the Monitoring Team continues to observe first line supervisors providing effective supervision when they are on scene with officers. The patrol sergeants are increasingly comfortable and thorough in their on-scene reviews. Most are adept at establishing

**Hogan Lovells**

rapport with witnesses and arrestees, as well as gathering information from and taking care of their officers.

While Monitoring Team members are limited to observing supervisors in the field by viewing WCS video of Use of Force Incidents, Crisis Intervention cases, and Investigatory Stops, first line supervisors consistently provide a policy driven and thoughtful approach to alternatives when posed with a problem by an officer. The Monitoring Team has found the commanders, following the leadership of Chief Todd, to be open to review of WCS images as learning tools for their sections and their first line supervisors. In Use of Force cases in particular, commanders have changed practice after the Monitoring Team raised concerns. Similarly, the Chief and the Training Section are also receptive to videos that demonstrate positive behavior of supervisors.

The 2025 Training Needs Assessment includes feedback from supervisors, as well as sections and units in the Division, CPC, and national trends to address in future supervisory training. The comprehensive nature of the Training Needs Assessment provides valuable input on the training and booster training required and desired by supervisors. The Training Section provides curricula for all supervisory training to the Monitoring Team after it has been approved by CPC.

The City continues to make great progress with their vendor, Benchmark Analytics, on the development of a computerized relational database that will be used to collect, maintain, integrate, and retrieve data department-wide and for each CDP officer. As a result, paragraph 328 has been upgraded. The current target date to fully implement the database, the OIP, is September 2025 and may be ahead of schedule.

## Challenges Ahead

While there has been improvement in first level supervisors identifying concerns in Blue Team reviews of uses of force, there are still examples where the reviews advance several steps higher in the chain of command than reasonable before issues on tactics or reinstruction opportunities are identified. This has been raised with the Chief who is working with commanders with more experience in this regard to coach younger and less experienced supervisors on their reviews.

The required annual trainings, as defined by paragraphs 323 and 324, are included in the Annual Training Plans and adjusted, as described above in the Needs Assessment based on feedback. The upcoming Training assessment will provide necessary data for the Monitoring Team to determine the actual attendance, timing of attendance, and frequency of training to ensure it is consistent with the requirements of the Consent Decree.

There remain gaps in documentation on the actions of first line supervisors. That record is required to adequately assess compliance with paragraph 325 in particular. Throughout the assessments for Use of Force, Search and Seizure and the stop forms, there is little detail provided regarding the oversight, correction, and underlying issues identified by reviewing supervisors. Written documentation of supervisors lacks in substance and specificity and fails to illustrate specific intervention or correction by supervisors. If

**Hogan Lovells**

intervention and coaching is happening in practice, supervisory documents should reflect the supervisor's actions. One example of the deficit is when a supervisor identifies a need to send back a stop form; the only documentation is a later date when the supervisor approves it, with no indication of why it was sent back and what was added or corrected. Similarly, in IAPro Blue Team, a chart shows all the supervisors who reviewed a report, though there is no indication or notations of a specific concern that is apparent to a reviewing Monitoring Team member. These gaps negate the consistently effective job that Monitoring Team reviewers note when observing supervisor interactions on WCS. Additionally, CDP has not provided any performance evaluation information of supervisors, nor internal audits demonstrating that the behavior described in paragraph 325 is happening. Otherwise, assessing compliance with the paragraph is challenging.

As Neighborhood Response Teams and CPOP Coordinators at the District level are increasing the expansion of CPOP, ultimately all CDP personnel must assume their roles as CPOP officers. It will be incumbent on the first line supervisors to lead that effort.

Once the relational database is completed for the OIP by the vendor, the City must stay focused on the development or revision of their policy and program, which reportedly will be completed in the fall of 2025. A robust OIP should be viewed as an integral part of achieving and maintaining a healthy workforce.

Regarding WCS revised policies, the City must ensure that CPC reviews these policies for full implementation as soon as possible. The Monitoring Team looks forward to learning about the new system for reviews that includes Inspection Unit coordination and retention in IAPro.

## 11. Outcome Measurements and Assessment Update

### Areas of Progress

During this reporting period, CDP completed its annual MHRAC report, started the annual summer safety plan, and continues to publish public data for crisis intervention and Use of Force.

As required by the Consent Decree, CDP conducts an annual analysis of crisis incidents. This analysis was completed in March. CDP used information from this report to recognize the need to increase the number of officers trained as designated SCIT officers so that there are enough trained officers available to respond to all crisis calls. The report also led to the identification of gaps in data reporting that prevented CDP from tracking all officers that responded to a crisis call. This tracking issue is being addressed by the CDP data team in conjunction with CDP's CIT officers.

Annually, CDP conducts a hot spot crime analysis to prepare a summer safety plan. The summer safety plan consists of CDP organizing a 'whole government' response to identified hotspots. The response consists of bringing together different local government agencies and elected officials to walk the hot spot areas, speak with residents, and determine appropriate possible solutions that might address crime in the area. In the past,

Hogan Lovells

this has led to identifying issues such as persistent public lighting problems and abandoned properties for agencies to appropriately address. CDP has conducted the analysis for the 2025 summer safety plan and is currently conducting the whole government walk throughs.

As noted in previous Semiannual Reports, CDP maintains various public datasets and dashboards. This includes dashboards and data related to Use of Force and crisis intervention. CDP continues to maintain these dashboards, including daily updates to the Use of Force data.

Finally, CDP has made significant strides to improve data quality and data collection. Improving data quality and data collection will enable more accurate data analysis of crime and, importantly, CDP officer performance. To this end, the CDP Data Team has created a set of data quality assurance dashboards for CDP leadership to be able to monitor data entry by officers and address issues as quickly as possible. Furthermore, CDP created and began internal data auditing of traffic and investigatory stops. Replicating best practices from other departments, CDP now draws random samples of stop incidents for a monthly review by a CDP sergeant. These regular audits allow CDP to quickly identify issues in data entry, areas of need for training or changes to policy, and any problematic policing practices. CDP is also collaborating both with Cleveland's OIT and the City's Urban AI group to improve data infrastructure and in the transition to a new RMS that replaces both the prior RMS and a separate vendor for specific incident data collection. This transition to a new technology will greatly reduce duplicate data entry by officers and create a more manageable database for analysis. The Monitoring Team has repeatedly met with CDP, OIT, and Urban AI as part of this transition to monitor progress and ensure that all internal stakeholders are consulted.

CDP provided data for all the paragraph 367 required metrics for Use of Force as part of the assessment Data request. The Monitoring Team is in the review stages of that data as part of its assessment.

## Challenges Ahead

As of this writing, CDP is on track to deploy the new RMS in November. Such large technological transitions are challenging and there are likely unforeseen hurdles that will affect CDP's ability to maintain up to date analytics. Such hurdles are understandable and CDP should continue to lean on support from Urban AI and OIT in navigating these challenges. Of particular note, the transition involves replacing forms that collected information on CPOP, CIT, and Stops. The new data collection methods need to not only replace the prior data collection, but should improve the data collection as previous issues with CPOP and CIT data collection meant that certain data points were not always collected. It is critically important that CDP RMS users be part of the development and there is continued focus on policy and training in the implementation and roll out.

Hogan Lovells

While CDP has made major strides by instituting a monthly stop audit and is actively developing data quality assurance dashboards, there is still work to do for leadership to fully leverage these assets to improve CDP performance. CDP does not have a defined process for addressing data quality issues at this time and should consider how to make data quality a greater priority for officers and more relevant for their work. For example, the CDP data team identified discrepancies across different databases for the number of Use of Force incidents and notified leadership of the issue; at this point, CDP leadership will need to establish processes for addressing these issues.

CDP clearly demonstrates a willingness to use analytics to address some issue areas such as Crisis Intervention. As data improves and CDP analytics expands, CDP will need to develop reporting to identify issues in other areas such as CPOP and bias-free policing. Beyond this though, CDP will need sworn officers to be as involved in reviewing and using analysis to address policy and performance. This includes CDP leadership demonstrating continued use of the outcome measures report that the CDP data team prepares annually.

For a number of years, the CDP data team has prepared an outcome measures report that includes statistics for each subsection outlined in paragraph 367 of the Consent Decree. These statistics are helpful for identifying trends, such as a recent year-over-year increase in the number of Use of Force incidents. Based on this information and other indicators, CDP leadership identified a need to provide additional Use of Force training to CDP leadership. Use of data and analysis to identify department needs is a continued area of growth and will need to adapt to new data from the change in RMS.

<u>Assessment Update</u>
The Monitoring Team began formal assessments for two (2) Consent Decree topic areas in the last six (6) months, Stops and Seizures and Crisis Intervention. These assessments are based on previously agreed upon methodologies to review a random sample of incidents related to the topic area. Review of those samples was completed during this period and analysis is underway. In addition, the Monitoring Team carries out continual assessments of Use of Force incidents and meets monthly with CDP to review incidents. The full assessment of Use of Force paragraphs (paragraphs 45-130) is currently underway.

The Monitoring Team also began working with CDP and the DOJ with respect to the methodologies for evaluating three (3) other Consent Decree subtopic areas: Training, Recruitment and Hiring, and Equipment and Resources. After the framework for the review is completed, the Monitoring Team will request additional data and begin its review for these assessments as well. As part of each of these assessments, the Monitoring Team will conduct the quantitative review of CDP-provided data, as required by paragraph 367 of the Consent Decree.

Hogan Lovells

# V.  Appendix

## 1.  Community Engagement and Building Trust

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 14 | CDP creation of "formal and informal mechanisms that facilitate ongoing communication between CDP and the many Cleveland communities it serves." | PARTIAL COMPLIANCE |
| 15 | Creation of CPC to make recommendations, work with Cleveland communities to develop recommendations, and "report to the City and community as a whole and to provide transparency" on reforms. | GENERAL COMPLIANCE |
| 16 | CPC members "will be appointed and vacancies will be filled in accordance with the City's Charter"; and periodic meetings with Chief of Police to "provide recommendations." | PARTIAL COMPLIANCE |
| 17(a) | "[H]old public meetings across the City, complete an assessment of CDP's bias-free policing policies, practices, and training, and make recommendations." | NON-COMPLIANCE |
| 17(b) | "[A]ssist as appropriate in . . . development of training related to bias-free policing and cultural competency." | PARTIAL COMPLIANCE |
| 17(c) | "[O]n an ongoing basis, assess CDP's community activities" and "make recommendations" related to "community engagement" and "community confidence." | NON-COMPLIANCE |
| 17(d) | "[O]n an ongoing basis, review CDP's civilian oversight structure to determine if there are changes it recommends for improving CDP's accountability and transparency." | PARTIAL COMPLIANCE |
| 18(a) | "[R]eview and comment on CDP's policies and practices related to use of force, search and seizure, and data collection and retention." | PARTIAL COMPLIANCE |
| 18(b) | [R]eview and comment on CDP's implementation of initiative, programs, and activities that are intended to support reform." | NON-COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 18(c) | "[H]old public meetings to discuss the Monitor's reports and to receive community feedback concerning CDP's compliance with this Agreement." | **OPERATIONAL COMPLIANCE** |
| 19 | "The City will provide access to all information requested by the Commission related to its mandate, authority, and duties unless it is legally restricted." | **PARTIAL COMPLIANCE** |
| 20 | CPC "will issue [at least annual] reports," which the "City will post . . . to the City's website." | **PARTIAL COMPLIANCE** |
| 21 | "The City will consider and timely respond in writing to the Commission's recommendations for improvements," which "will be posted to the City's website." | **NON-COMPLIANCE** |
| 22 | CPC budget listed as "separate line item" to ensure "sufficient independence and resources." | **GENERAL COMPLIANCE** |
| 23 | Facilitation of "regular communication and cooperation between CDP and community leaders at the local level," with District Policing Committees meeting "at minimum, every quarter." | **PARTIAL COMPLIANCE** |
| 24 | CPC, CDP, and Community Relations Board ("CRB") will "develop a mechanism to recruit and expand" Committee membership." CDP "will work with [Community Police] Commission to select officers for each District Policing Committee." | **NON-COMPLIANCE** |
| 25 | CDP "will work closely with District Policing Committees to identify strategies to address crime and safety issues in their District," considering and addressing identified priorities. | **PARTIAL COMPLIANCE** |
| 26 | "At least annually, each District Policing Committee will present its identified strategies, concerns, and recommendations" to the CPC, with CDP officer who is Committee member presenting to CPC "CDP's assessment of ways to address" the recommendations." | **OPERATIONAL COMPLIANCE** |

**Hogan Lovells**

## 2.  Community and Problem-Oriented Policing

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 27 | Implementation of "comprehensive and integrated community and problem-oriented policing model" by the City. | PARTIAL COMPLIANCE |
| 28 | Ensuring that "mission statement reflects [the Division's] commitment to community-oriented policing" / "integrat[ing] community and problem-oriented policing principles into its management, policies and procedures, recruitment, training, personnel evaluations, resource deployment, tactics, and accountability systems." | PARTIAL COMPLIANCE |
| 29 | Ensuring "that officers are familiar with the geographic areas they serve," "engage in problem identification," and "work proactively . . . to address quality of life issues." | PARTIAL COMPLIANCE |
| 30 | Initial and annual in-service community and problem-oriented policing training "adequate in quality, quantity, type, and scope" that addresses specifically identified areas. | PARTIAL COMPLIANCE |
| 31 | Maintenance of "collaborative partnerships with a broad spectrum of community groups," including CDP meetings with community organizations and District Policing Committees. | PARTIAL COMPLIANCE |
| 32 | CDP "meet[ing] with members of the community in each District on a monthly basis and "solic[itation of] participation from a broad cross-section of community members in each District" to "identify problems and other areas of concern . . . and discuss responses and solutions." | PARTIAL COMPLIANCE |

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 33 | Development and implementation of "systems to monitor officer outreach to the community" that CDP "will use . . . to analyze . . . whether officers are partnering with a broad cross-section of community members to develop and implement cooperative strategies that build mutual respect and identify and solve problems." | PARTIAL COMPLIANCE |
| 34 | "At least annually, CDP will present the results" of Paragraph 33 analysis "broken out by District in a publicly-available community policing report" that describes problems, solutions, and obstacles. Report provided to Commission and posted on CDP website. | NON-COMPLIANCE |

## 3.  Bias-Free Policing

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 35 | Delivery of "police services with the goal of ensuring that they are equitable, respectful, and free of unlawful bias," among other things. | PARTIAL COMPLIANCE |
| 36 | "CDP will integrate bias-free policing principles into its management, policies and procedures, job descriptions, recruitment, training, personnel evaluations, resource deployment, tactics, and accountability systems." | PARTIAL COMPLIANCE |
| 37 | CDP will ensure that it "administer[s] all activities without discrimination" on basis of various protected classes | PARTIAL COMPLIANCE |
| 38 | "CDP will develop a bias-free policing policy" incorporating CPC recommendations "that provides clear guidance to officers" | OPERATIONAL COMPLIANCE |
| 39-40 | Develop bias-free policing and procedural justice training "adequate in quality, quantity, scope, and type" covering specific areas within 18 months of the Effective Date. | OPERATIONAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 41 | Supervisor training on bias-free policing and procedural justice issues covering specific areas | **PARTIAL COMPLIANCE** |
| 42 | Annual in-service training on bias-free policing "adequate in quality, quantity, type, and scope" | **PARTIAL COMPLIANCE** |
| 43 | Analysis of Paragraph 265 data ("including use of force, arrests, motor vehicle and investigatory stops, and misconduct complaints alleging discrimination") | **NON-COMPLIANCE** |
| 44 | Consideration of "bias-free policing and equal protection" principles in hiring, unit assignment, promotion, and performance assessments. | **PARTIAL COMPLIANCE** |

## 4. Use of Force

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 45 | "CDP will revise, develop, and implement force policies, training, supervision, and accountability systems with the goal of ensuring that force" complies with the Constitution, federal law, and the Consent Decree "and that any use of unreasonable force is promptly identified and responded to appropriately." | **OPERATIONAL COMPLIANCE** |
| 46 | "The City will implement the terms of this Agreement with the goal of ensuring that use of force by CDP officers . . . will comply" with at least twelve major, listed principles. | **PARTIAL COMPLIANCE** |
| 47 | Division "will ensure that the [use of force] incident is accurately and properly reported, documented, and investigated." | **PARTIAL COMPLIANCE** |
| 48 | "CDP will track and analyze officers' uses of force to hold officers accountable for unreasonable uses of force; to guide training and policy; and to identify poor tactics and emerging trends." | **OPERATIONAL COMPLIANCE** |

36

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 49 | Development of use of force policies "that comply with applicable law[,] . . . are adequate to achieve the goals described in Paragraph 45," and "specify that unreasonable use of force will subject officers to the disciplinary process, possible criminal prosecution, and/or possible civil liability." | OPERATIONAL COMPLIANCE |
| 50 | "CDP's policies will address the use and deployment of its authorized force techniques, technologies, and weapons." | OPERATIONAL COMPLIANCE |
| 51 | Weapon-specific policies "will include training and certification requirements that each officer must meet before being permitted to carry and use the authorized weapon." | OPERATIONAL COMPLIANCE |
| 52 | "No officer will carry any weapon that is not authorized or approved by CDP." | OPERATIONAL COMPLIANCE |
| 53 | "Prior to the use of any approved weapon, the officer, when possible and appropriate, will communicate to the subject and other officers that the use of weapon is imminent, and allow the subject an opportunity to comply." | OPERATIONAL COMPLIANCE |
| 54-83 | "The City will implement policies" for firearms, ECWs (Tasers), and OC (pepper) spray that comply with a host of specific, expressly listed provisions. | OPERATIONAL COMPLIANCE |
| 84 | CDP "will provide all current officers use of force training that is adequate in quality, quantity, scope, and type and that includes" a number of specific, expressly listed elements. | OPERATIONAL COMPLIANCE |
| 85 | CDP "will provide the use of force training described in Paragraph 84 to all new officers." | OPERATIONAL COMPLIANCE |
| 86 | "CDP will provide all officers with annual use of force in-service training that is adequate in quality, quantity, type, and scope." | OPERATIONAL COMPLIANCE |
| 87 | "CDP will develop and implement a single, uniform reporting system | GENERAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| | pursuant to a use of force reporting policy" that complies with the force Level categorization set forth in the Paragraph. | |
| 88 | Requiring "[a]ll officers using or observing force" to complete a Use of Force Report including a number of specific features and avoiding "conclusory statements, 'boilerplate', or 'canned' language." | **OPERATIONAL COMPLIANCE** |
| 89 | "Officers will be subject to the disciplinary process for material omissions or misrepresentations in their Use of Force Reports." | **OPERATIONAL COMPLIANCE** |
| 90 | "Officers who use or observe force and fail to report it will be subject to the disciplinary process, up to and including termination, regardless of whether the force was reasonable." | **OPERATIONAL COMPLIANCE** |
| 91 | Requirement to "notify . . . supervisors . . . as soon as practical following any use of force" and if becoming aware of "an allegation of unreasonable or unreported force by another officer." | **OPERATIONAL COMPLIANCE** |
| 92 | "Use of Force Reports will be maintained centrally." | **OPERATIONAL COMPLIANCE** |
| 93 | "A supervisor who was involved in a use of force, including by participating in or ordering the force under investigation, will not investigate the incident or review the Use of Force Reports for approval or disapproval." | **OPERATIONAL COMPLIANCE** |
| 94 | Setting specific requirements relating to the investigation of low-level, Level 1 force. | **OPERATIONAL COMPLIANCE** |
| 95-109 | Setting specific requirements relating to the investigation by supervisors and/or CDP chain of command for investigation and review of Level 2 force. | **OPERATIONAL COMPLIANCE** |
| 110 | "CDP may refer criminal investigations of uses of force to an independent and highly competent agency outside CDP." | **OPERATIONAL COMPLIANCE** |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 111 | Creation and design of dedicated Force Investigation Team (FIT) that "will conduct administrative investigations . . . and criminal investigations" of serious force, "force involving potential criminal conduct," in-custody deaths, and cases assigned to it by the Chief. | PARTIAL COMPLIANCE |
| 112 | Composition of FIT Team. | OPERATIONAL COMPLIANCE |
| 113 | "FIT members will receive FIT-specific training that is adequate in quality, quantity, scope, and type" on a host of specific, expressly-listed topics both initially and annually thereafter. | OPERATIONAL COMPLIANCE |
| 114 | "CDP will identify, assign, and train personnel for the FIT to fulfill the requirements of this Agreement." | OPERATIONAL COMPLIANCE |
| 115 | Response of FIT to use of force scenes. FIT notification of prosecutor's office. Notification of designated outside agency to conduct criminal investigation if City elects to use external agency for such investigations. | OPERATIONAL COMPLIANCE |
| 116 | "CDP will develop and implement polices to ensure that, where an outside agency conducts the criminal investigation, FIT conducts a concurrent and thorough administrative investigation." | OPERATIONAL COMPLIANCE |
| 117 | Memorandum of understanding required between CDP and outside agency containing specific, expressly-listed provisions. | OPERATIONAL COMPLIANCE |
| 118 | Setting forth various, specific, and expressly-listed responsibilities of FIT during its investigations. | PARTIAL COMPLIANCE |
| 119 | N/A | N/A |
| 120 | Providing for delay of compelled interview if "case has the potential to proceed criminally" but otherwise requiring that "[n]o other part of the investigation . . . be held in abeyance" unless "specifically authorized by the | PARTIAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| | Chief" in consultation with investigating agency and prosecutor's office. | |
| 121 | Requiring completion of preliminary report presented to Chief or Chief's designee "as soon as possible, but absent exigent circumstances, no later than 24 hours after learning of the use of force." | OPERATIONAL COMPLIANCE |
| 122 | Completion of investigation within 60 days. Preparation of FIT investigation report. Review of FIT investigative report by head of Internal Affairs who "will approve or disapprove FIT's recommendations, or request . . . additional investigation." | PARTIAL COMPLIANCE |
| 123 | Revision of FIT Manual to ensure "consisten[cy] with the force principles" and several specific, expressly-listed provisions. | OPERATIONAL COMPLIANCE |
| 124 | "The City will develop and implement a Force Review Board "to serve as a quality control mechanism for uses of force and force investigations, and to appraise use of force incidents from a tactics, training, policy, and agency improvement perspective." | OPERATIONAL COMPLIANCE |
| 125 | Requiring "training on legal updates, updates on CDP's policies, and CDP training curriculum related to the use of force" for each member. | PARTIAL COMPLIANCE |
| 126 | Mandating "comprehensive and reliable reviews of investigations within 90 days of submission to the FRB," and encompassing officer's decision-making at the moment force was used as well asl "the circumstances leading up to the use of force, tactical decisions, information sharing and communication, adequacy of supervision, equipment, training, CDP's medical response, when applicable, and any commendable actions" and actions and inactions of all involved members. | PARTIAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 127 | Description of reviews, which will: ensure objective and complete investigations and findings supported by preponderance of the evidence; be presented by the investigator or District representative (for supervisors); review written records and discuss the case with the presenter; order additional investigation when needed; determine whether the case raises concerns about policing, training, equipment, supervision, medical response, communication, or tactics and referral to appropriate unit; recommending non-disciplinary action; and documenting FRB findings and recommendations within 15 days of each presentation. | OPERATIONAL COMPLIANCE |
| 128 | "The FRB will assess the quality of the investigations," including whether they are "objective and comprehensive and recommendations are supported by a preponderance of evidence. The FRB will identify and document any deficiencies that indicate a need for corrective action" | OPERATIONAL COMPLIANCE |
| 129 | "Annually, the FRB will examine the data related to use of force" provided by the DACC per ¶261 (and in conjunction with ¶266) "to detect any patterns, trends, and training deficiencies and make recommendations for correction as appropriate" and will provide the analysis to the Monitor. | PARTIAL COMPLIANCE |
| 130 | The FRB will work with the DACC to "develop a tracking system to ensure that each of its recommendations has been forwarded to the appropriate personnel. The Chief or his or her designee will ensure that the FRB's recommendations, including non-disciplinary corrective action, are implemented as appropriate." | OPERATIONAL COMPLIANCE |

41

**Hogan Lovells**

## 5.  Crisis Intervention

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 131 | "CDP will build upon and improve its Crisis Intervention Program" in furtherance of four specific, expressly-listed goals, which "will provide a forum for effective problem solving regarding the interaction between the criminal justice and mental health system and create a context for sustainable change." | **OPERATIONAL COMPLIANCE** |
| 132 | Establishment of Mental Health Response Advisory Committee (the "Advisory Committee") "to foster relationships and build support between the police, community, and mental health providers and to help identify problems and develop solutions designed to improve outcomes for individuals in crisis." | **GENERAL COMPLIANCE** |
| 133 | Composition of Advisory Committee. | **GENERAL COMPLIANCE** |
| 134 | "The Advisory Committee will meet regularly and provide guidance to assist CDP in improving, expanding, and sustaining its Crisis Intervention Program." | **GENERAL COMPLIANCE** |
| 135 | Advisory Committee will conduct an annual "analysis of crisis intervention incidents to determine whether CDP has enough specialized CIT officers, whether it is deploying those officers effectively, and whether specialized CIT officers" and communications "are appropriately responding to people in crisis," and will also "recommend appropriate changes." | **OPERATIONAL COMPLIANCE** |
| 136 | "The Advisory Committee's reports and recommendations will be provided" to CPC, "be publicly available, and will be posted on the City's website." | **GENERAL COMPLIANCE** |
| 137 | CDP will designate a Crisis Intervention Coordinator for specific, expressly-identified purposes. | **GENERAL COMPLIANCE** |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 138 | "Coordinator will develop and maintain partnerships with program stakeholders and serve as point of contact" and "resource" for other stakeholders. | GENERAL COMPLIANCE |
| 139 | "Coordinator will participate in the Advisory Committee and on a regular basis solicit feedback from the mental health community and specialized CIT officers, call-takers, and dispatchers regarding the efficacy of CDP's Crisis Intervention Program." | GENERAL COMPLIANCE |
| 140 | "Coordinator will be responsible for coordinating implementation of the changes and recommendations made by the Advisory Committee, as appropriate." | OPERATIONAL COMPLIANCE |
| 141 | "Coordinator will be responsible for ensuring the selection of appropriate candidates for designation as specialized CIT officers" and "to ensure that officers, call-takers, and dispatchers are appropriately responding to CIT-related calls." | PARTIAL COMPLIANCE |
| 142 | "Coordinator will create ways to recognize and honor specialized CIT officers, call-takers, and dispatchers." | OPERATIONAL COMPLIANCE |
| 143 | Initial and annual crisis intervention training to all officers and recruits that is "adequate in quality, quantity, type, and scope." | GENERAL COMPLIANCE |
| 144 | Initial and annual crisis intervention training for dispatchers and call-takers. | GENERAL COMPLIANCE |
| 145 | "The City will provide enhanced specialized training in responding to individuals in crisis to certain officers ('specialized CIT officers')," who will be "called upon to respond to incidents or calls involving individuals in crisis." | OPERATIONAL COMPLIANCE |
| 146 | Outlining various requirements for the "enhanced training" for | GENERAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
|  | specialized CIT officers of "at least 40 hours." | |
| 147 | Outlining various requirements for the "enhanced training" for specialized CIT officers of "at least 40 hours." | **OPERATIONAL COMPLIANCE** |
| 148 | Designation of specialized CIT officers, per specific, expressly-listed requirements. | **OPERATIONAL COMPLIANCE** |
| 149 | "Supervisors will identify and encourage qualified officers across all shifts and all Districts to serve as specialized officers." | **OPERATIONAL COMPLIANCE** |
| 150 | "All Field Training Officers" ("FTO"s) "will receive the enhanced specialized crisis intervention training described in Paragraph 146," though FTOs will "not be designated as a specialized CIT officer" unless they volunteer and have been selected to do so. | **OPERATIONAL COMPLIANCE** |
| 151 | "Specialized CIT officers who are dispatched to an incident involving an individual in crisis will have primary responsibility for the scene," with supervisors "seek[ing] the input of a specialized CIT officer . . . where it is reasonable for them to do so." | **PARTIAL COMPLIANCE** |
| 152 | "[T]he Coordinator will develop an effective specialized crisis intervention plan . . . to ensure that a specialized CIT officer is available to respond to all calls and incidents that appear to involve an individual in crisis" that includes various, specific, expressly-identified requirements. The City "will use its best efforts to ensure that a specialized CIT officer responds to all calls and incidents that appear to involve an individual in crisis." | **OPERATIONAL COMPLIANCE** |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 153 | City "will consider" crisis intervention program assessment by Ohio Criminal Justice Coordinating Center of Excellence. | GENERAL COMPLIANCE |
| 154 | CDP "will revise its policies to make clear that a crisis intervention response may be necessary even in situations where there has been an apparent law violation." | GENERAL COMPLIANCE |
| 155 | CDP "will revise its current crisis intervention policy to ensure that specialized CIT officers have appropriate discretion to direct individuals . . . to the health care system, rather than the judicial system . . . where it is appropriate to do so." | GENERAL COMPLIANCE |
| 156 | CDP policies and procedures will ensure that "specialized CIT officers . . . must be dispatched to all calls or incidents that appear to involve an individual in crisis." CDP must "track incidents in which a specialized officer was not dispatched to such calls" and "identify any barriers" to ensuring dispatch of specialized CIT officer to such calls. | PARTIAL COMPLIANCE |
| 157 | "CDP will track calls and incidents involving individuals in crisis by gathering, at a minimum," specific, expressly-identified data. | OPERATIONAL COMPLIANCE |
| 158 | Public reporting of Paragraph 157 data and provision to Advisory Committee. | OPERATIONAL COMPLIANCE |
| 159 | "The City will utilize" Paragraph 157 data "to identify training needs and develop case studies and teaching scenarios" for training and other expressly-identified systemic purposes. | OPERATIONAL COMPLIANCE |

**Hogan Lovells**

## 6.  Search and Seizure

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 160 | "CDP will revise, develop, and implement search and seizure policies that comply with applicable law, . . . include the requirements below," and conform to expressly-identified principles. | **PARTIAL COMPLIANCE** |
| 161-165 | Policy requirements for officers for stops, searches, and detentions | **PARTIAL COMPLIANCE** |
| 166 | "Officers will immediately notify a supervisor when effectuating a custodial arrest for obstructing official business, resisting arrest, or assault on an officer and no other substantive violation is alleged," and "the supervisor will respond to the scene." | **PARTIAL COMPLIANCE** |
| 167 | "Officers will not use 'canned' or conclusory language without supporting detail in documents or reports documenting investigatory stops, searches, or arrests." | **PARTIAL COMPLIANCE** |
| 168 | "Officers will articulate the justification for an investigatory stop, search, or arrest in a specific and clear manner in their reports." CDP "will train officers" on documenting stops. "Supervisors will review all documentation of investigatory stops, searches, and arrests." | **PARTIAL COMPLIANCE** |
| 169 | Supervisor will review of "each arrest report by officers under their command," with supervisors reviewing reports for specific, expressly-identified deficiencies. | **PARTIAL COMPLIANCE** |
| 170-172 | Supervisory review of investigatory stops, searches, and arrests. | **PARTIAL COMPLIANCE** |
| 173 | Provision of "initial training that is adequate in quality, quantity, scope, and type on investigatory stops, searches, and arrests, including the requirements" of the Consent Decree that "will address the requirements of Fourth Amendment and related law, | **OPERATIONAL COMPLIANCE** |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| | CDP policies," and specific, expressly-identified topics. | |
| 174-175 | Provision of "annual search and seizure in-service training that is adequate in quality, quantity, type, and scope" incorporating specific, expressly-identified topics. | OPERATIONAL COMPLIANCE |

## 7. Accountability

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 176 | The City and CDP will ensure that all allegations of officer misconduct, whether internally discovered or alleged by a civilian, are fully, fairly, and efficiently investigated; that all investigative findings are supported by a preponderance of the evidence and documented in writing; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair, consistent, and provides due process." | PARTIAL COMPLIANCE |
| 177 | Internal Affairs will conduct objective, comprehensive, and timely investigations of all internal allegations," with "findings . . . based on the preponderance of the evidence standard" that must "be clearly delineated in policies, training, and procedures and accompanied by detailed examples to ensure proper application by investigators. | PARTIAL COMPLIANCE |
| 178 | Internal Affairs will be headed by a qualified civilian" who "will report directly to the Chief of Police. | OPERATIONAL COMPLIANCE |
| 179 | Qualifications for IA investigators. | OPERATIONAL COMPLIANCE |
| 180 | Initial training for IA investigators "that is adequate in quality, quantity, scope, and type on conducting misconduct investigations" that addresses specific, expressly- identified topics. | PARTIAL COMPLIANCE |

47

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 181 | [A]nnual training" for IA investigators "that is adequate in quality, quantity, type and scope" | PARTIAL COMPLIANCE |
| 182 | In each investigation, Internal Affairs will collect and consider" all evidence. "[N]o automatic preference for an officer's statement over a non-officer's statement." No disregard of a "witnesses' statement solely because of" connection to the complainant or criminal history. IA investigators must "make all reasonable efforts to resolve material inconsistencies between witness statements. | PARTIAL COMPLIANCE |
| 183 | IA "will evaluate all relevant police activity and any evidence of potential misconduct uncovered during the course of the investigation." | PARTIAL COMPLIANCE |
| 184 | IA will not consider guilty plea or verdict as "determinative of whether a CDP officer engaged in misconduct" or justification for "discontinuing the investigation." | PARTIAL COMPLIANCE |
| 185 | IA "will complete its administrative investigations within 30 days from the date it learns of the alleged misconduct." | PARTIAL COMPLIANCE |
| 186-187 | IA investigative report requirements. | PARTIAL COMPLIANCE |
| 188 | Forwarding of completed IA investigations "to the officers' supervisors, the Training Review Committee, the Force Review Board, the Officer Intervention Program, and the Data Collection and Analysis Coordinator." | PARTIAL COMPLIANCE |
| 189 | CDP will require any CDP employee who observes or becomes aware of any" potential misconduct to "report the incident to a supervisor or directly to" IA. | OPERATIONAL COMPLIANCE |
| 190 | CDP will develop a system that allows officers to confidentially and anonymously report potential misconduct by other officers. | OPERATIONAL COMPLIANCE |

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 191 | CDP will expressly prohibit all forms of retaliation, discouragement, intimidation, coercion, or adverse action, against any person, civilian or officer, who reports misconduct, makes a misconduct complaint, or cooperates with an investigation of misconduct. | OPERATIONAL COMPLIANCE |
| 192 | "Officers who retaliate . . . will be subject to the disciplinary process." | PARTIAL COMPLIANCE |
| 193 | OPS investigates "all complaints of misconduct it receives" and will confer with IA "to develop policies and procedures for handling matters over which they both have investigative jurisdiction." | OPERATIONAL COMPLIANCE |
| 194 | The City will ensure that OPS is led by an administrator with the skills, expertise, and experience to effectively manage the intake, tracking, timely, and objective investigation of complaints"; implement PRB training; "assess OPS's equipment and staffing needs"; and "develop and implement performance standards for OPS. | PARTIAL COMPLIANCE |
| 195-196 | Initial training for OPS investigators "adequate in quality, quantity, scope, and type," including specific, expressly-listed topics. | OPERATIONAL COMPLIANCE |
| 197 | OPS Investigators will not be current members of the CDP, and no CDP personnel will have any active role in OPS's operations. | GENERAL COMPLIANCE |
| 198 | The City will ensure that the lawyer representing OPS does not have any actual or apparent conflicts of interest. | PARTIAL COMPLIANCE |
| 199 | OPS will have its own budget, separate from . . . the Department of Public Safety that affords sufficient independence and resources, including sufficient staff and training to meet the terms of this Agreement. | PARTIAL COMPLIANCE |
| 200 | Development and implementation of OPS operations manual "made available to the public" that covers specific, expressly-listed topics. | OPERATIONAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 201 | Development and implementation of "a program to promote awareness through the Cleveland community about the process for filing complaints with OPS." | PARTIAL COMPLIANCE |
| 202 | CDP and the City will work with the police unions. . . to allow civilian complaints to be submitted to OPS verbally or in writing; in person, by phone, or on line; by a complainant, someone acting on his or her behalf, or anonymously; and with or without a signature from the complainant," with all "complaints documented in writing." | GENERAL COMPLIANCE |
| 203 | CDP will post and maintain by the intake window at CDP headquarters and all District headquarters a permanent placard describing the civilian complaint process" and containing specific, expressly-listed information. | OPERATIONAL COMPLIANCE |
| 204 | CDP will provide training that is adequate in quality, quantity, scope, and type to all police personnel, including dispatchers, to properly handle complaint intake, including with respect to specific, expressly-listed topics. | PARTIAL COMPLIANCE |
| 205 | CDP officers "carry complaint forms in their CDP vehicles," which officers must provide "upon request." Supervisors will be dispatched to scene when an individual wants to make a complaint, with the supervisor providing a copy of completed complaint form "or a blank form to be completed later by the individual." | OPERATIONAL COMPLIANCE |
| 206 | The City and OPS will make complaint forms and other materials outlining the complaint process and OPS's contact information available at locations" including a number of specific, expressly-listed locations. | GENERAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 207 | OPS's complaint form will not contain any language that could reasonably be construed as discouraging the filing of a complaint, including warnings about the potential criminal consequences for filing false complaints. | GENERAL COMPLIANCE |
| 208 | Availability of complaint forms in English and Spanish. "OPS will make every effort to ensure that complainants who speak other languages . . . can file complaints in their preferred language." | OPERATIONAL COMPLIANCE |
| 209 | City will ensure that civilian complaints submitted through other existing systems, including the Mayor's Action Center and the Department Action Center, are immediately forwarded to OPS for investigation. | OPERATIONAL COMPLIANCE |
| 210 | OPS will establish a centralized electronic numbering and tracking system for all complaints," which "will maintain accurate and reliable data regarding the number, nature, and status of all complaints . . . including investigation timeliness and notification of the interim status and final disposition of the complaint." It "will be used to monitor and maintain appropriate caseloads for OPS investigators. | OPERATIONAL COMPLIANCE |
| 211 | Biased policing tracked as a separate category of complaint that "are captured and tracked appropriately, even if the complainant does not so label the allegation." | OPERATIONAL COMPLIANCE |
| 212 | [A]llegations of unlawful investigatory stops, searches, or arrests" tracked as a separate category of complaints. | OPERATIONAL COMPLIANCE |
| 213 | "[A]llegations of excessive use of force" tracked as separate category of complaints. | OPERATIONAL COMPLIANCE |
| 214 | OPS will conduct regular assessments of the types of complaints being received to identify and assess potential problematic patterns and trends. | OPERATIONAL COMPLIANCE |
| 215 | OPS will produce, at least annually, a public report summarizing complaint | PARTIAL COMPLAINCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| | trends, including" with respect several specific, expressly-identified areas. | |
| 216 | Assignment of complaints to Standard and Complex investigatory tracks. | OPERATIONAL COMPLIANCE |
| 217 | Dismissal and/or administrative dismissal of complaint investigations. | OPERATIONAL COMPLIANCE |
| 218 | The City will ensure that investigations of complaints are as thorough as necessary to reach reliable and complete findings that are supported by the preponderance of the evidence. | OPERATIONAL COMPLIANCE |
| 219 | "CDP will ensure that OPS has timely access to all reports related to the incident . . ," and authority of OPS "to conduct additional investigation" of any complaint of police misconduct when CDP investigation has already taken place relating to the incident. | OPERATIONAL COMPLIANCE |
| 220 | OPS investigators will attempt to interview each complainant in person" and record the interview. | OPERATIONAL COMPLIANCE |
| 221 | "The Chief will order officers who witnessed or participate in an incident that is the subject of an OPS complaint to cooperate with the OPS investigation," including by responding to written questions or sitting for an in-person interview. | GENERAL COMPLIANCE |
| 222 | OPS investigators will have access to any relevant disciplinary information in the record of an officer who is the subject of a current investigation." | OPERATIONAL COMPLIANCE |
| 223 | "OPS will consider all relevant evidence," with no preferences for particular witness's statements, including of officer over a non-officer, or because of connection to complainant or criminal history. "OPS will make all reasonable efforts to resolve material inconsistencies between witness statements." | PARTIAL COMPLIANCE |
| 224 | OPS findings categories. | OPERATIONAL COMPLIANCE |
| 225 | "OPS will document in writing the investigation of each complaint, | GENERAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| | including all investigatory steps taken, and OPS's findings and conclusions," which must "be supported by a preponderance of the evidence. | |
| 226 | In addition to determining whether an officer committed the conduct alleged in the complaint and whether it violated policy, OPS may consider whether: (a) the police action was in compliance with training and legal standards; (b) the incident indicates a need for additional training, counseling, or other corrective measures; and (c) the incident suggests that CDP should revise its policies, strategies, tactics, or training. OPS may include recommendations on these topics in its investigation. | PARTIAL COMPLIANCE |
| 227 | OPS will forward all investigations and its written conclusions to PRB in sufficient time for PRB to consider them no later than the second regularly scheduled PRB meeting following completion of the investigation. | PARTIAL COMPLIANCE |
| 228 | "OPS will send periodic written updates" to the complainant at specific, expressly- identified junctures. | OPERATIONAL COMPLIANCE |
| 229 | "[A] complainant may contact OPS at any time to determine the status of his/her complaint." | OPERATIONAL COMPLIANCE |
| 230 | "Mayor will work with the City Council to develop an ordinance to place a Charter Amendment on the ballot" addressing PRB composition and appointment process. | GENERAL COMPLIANCE |
| 231 | "PRB members will not be current or former members of the CDP." | GENERAL COMPLIANCE |
| 232 | "PRB will have its own budget," overseen by OPS Administrator and separate from Department of Public Safety, that "affords sufficient independence and resources." | PARTIAL COMPLIANCE |
| 233-234 | Initial training for PRB members "that is adequate in quality, quantity, scope, and type" and that covers specific, expressly-identified topics. | PARTIAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 235 | PRB meetings open to the public and posted in advance, with "case presentations and PRB votes" occurring during "open session." | GENERAL COMPLIANCE |
| 236 | "OPS investigators will attend PRB meetings at which their investigations are being considered and present their findings . . . ." PRB may "ask the investigator to conduct further investigation" as necessary. | GENERAL COMPLIANCE |
| 237 | "PRB recommended dispositions will be based on a preponderance of the evidence. For each case, PRB shall set forth its conclusion and an explanation of its reasons and supporting evidence in writing, including, when applicable, the justification for departing from OPS's recommended disposition." | OPERATIONAL COMPLIANCE |
| 238 | "In cases where PRB is recommending a sustained disposition, in whole or in part, PRB will include a recommendation as to disciplinary or non-disciplinary corrective action." | OPERATIONAL COMPLIANCE |
| 239 | Timely forwarding of PRB recommendations to Chief of Police and Director of Public Safety. | PARTIAL COMPLIANCE |
| 240 | "The Chief of CDP will issue a General Police Order that requires officers to (a) cooperate with the Internal Affairs and OPS investigators; and (b) submit all relevant evidence to the investigators such that it is available for consideration by Internal Affairs or PRB." | GENERAL COMPLIANCE |
| 241 | Disciplinary hearing requirement, with officer given "opportunity to testify" and suspension of hearing if "officer provides new or additional evidence at hearing," with matter "returned to IA or PRB for consideration." | PARTIAL COMPLIANCE |
| 242 | Disciplinary recommendations by PRB to proceed through the City's disciplinary process. Written justification by Chief or Director of their disagreement with PRB's recommendations. | OPERATIONAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 243 | "CDP will track the number of instances in which the Chief or the Director of Public Safety rejects, in whole or in part, PRB's recommended disposition." | OPERATIONAL COMPLIANCE |
| 245 | "The City will ensure that discipline for sustained allegations of misconduct comports with due process, and is consistently applied, fair, and based on the nature of the allegation, and that mitigating and aggravating factors are identified and consistently applied and documented." | PARTIAL COMPLIANCE |
| 246 | "[T]he City will review its current matrix and will seek to amend it" "to ensure consistency" and inclusion of a number of specific, expressly-identified features. | OPERATIONAL COMPLIANCE |
| 247 | "All disciplinary decisions will be documented in writing." | GENERAL COMPLIANCE |
| 248 | "[T]he City will provide its disciplinary matrix to the PRB, Commission, the Police Inspector General, and the police unions for comment." | OPERATIONAL COMPLIANCE |
| 249 | "CDP will work with the unions to allow for sustained disciplinary findings to stay in an officer's record for ten years." | PARTIAL COMPLIANCE |

## 8. Transparency and Oversight

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 250 | "The City will hire an individual or individuals with significant experience in law enforcement practices and civil rights law to serve as a Police Inspector General" ("IG"). City must seek CPC's "input in developing minimum qualifications and experience" for IG. | OPERATIONAL COMPLIANCE |
| 251 | IG work in Office of Mayor but report to Chief of Police. | OPERATIONAL COMPLIANCE |
| 252 | IG "will not be a current or former employee of CDP." | OPERATIONAL COMPLIANCE |
| 253 | Duties and authority of IG. | OPERATIONAL COMPLIANCE |

**Hogan Lovells**

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 254 | Duties and authority of IG to "conduct investigations, analyze trends, and make reports and recommendations, as appropriate, at the request of the Chief of CDP or the Mayor." | **OPERATIONAL COMPLIANCE** |
| 255 | Budget of IG must be "a separate line item" in City budget and "afford[] sufficient independence and resources" to comply with Consent Decree. | **PARTIAL COMPLIANCE** |
| 256 | IG "will have access to all documents and data necessary to perform the above functions, including any raw data." | **PARTIAL COMPLIANCE** |
| 257 | "CDP will collect and maintain all data and records necessary to accurately evaluate its use of force practices and search and seizure practices and facilitate transparency and, as permitted by law, broad access to information related to CDP's decision making and activities. To achieve this outcome, CDP will designate an individual or individuals as the 'Data Collection and Analysis Coordinator.'" | **OPERATIONAL COMPLIANCE** |
| 258 | Coordinator "will ensure the collection and tracking of all documents related to uses of force and allegations of misconduct and related materials," including specific, expressly-listed materials and information. | **OPERATIONAL COMPLIANCE** |
| 259 | Coordinator "will ensure the creation and maintenance of a reliable and accurate electronic system to track all data derived from force-related documents," including specific, expressly-identified data. | **GENERAL COMPLIANCE** |
| 260 | Coordinator "will ensure the creation and maintenance of a reliable and accurate electronic system to track data on all vehicle stops, investigatory stops, and searches, whether or not they result in an arrest or issuance of a summons or citation." The system must conform to a number of specific, expressly-identified requirements. | **OPERATIONAL COMPLIANCE** |

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| 261 | Coordinator must "routine[ly] report[] . . . relevant data to the Chief of Police, FRB, Training Review Committee, OPS, the [Community Police] Commission, and the Police Inspector General." | PARTIAL COMPLIANCE |
| 262 | Coordinator "responsible for the annual assessment of forms and data collection systems to improve the accuracy and reliability of data collection." | OPERATIONAL COMPLIANCE |
| 263 | Coordinator "will develop a protocol to accurately analyze the data collected and allow for" various outcome measurements, "subject to the review and approval of the Monitor and DOJ." | OPERATIONAL COMPLIANCE |
| 264 | Annually, "CDP will conduct an assessment and issue a report summarizing its investigatory stop, search, and arrest data" that addresses various specific, expressly-identified topics. | PARTIAL COMPLIANCE |
| 265 | Annually, "CDP will conduct an assessment and issue a report of all activities, including use of force, arrests, motor vehicles and investigatory stops, and misconduct complaints alleging discrimination, to determine whether CDP's activities are applied or administered in a way that discriminates against individuals on the basis of race" or other listed prohibited classes or characteristics, and that addresses various specific, expressly-identified topics. | NON-COMPLIANCE |
| 266 | Annual analysis of "prior year's force" data with FRB. | PARTIAL COMPLIANCE |
| 267 | [A]ll CDP audits, reports, and outcome analyses related to the implementation" of the Consent Decree will be public. | PARTIAL COMPLIANCE |
| 268 | "CDP will post its policies and procedures, training plans, community policing initiatives, community meeting schedules, budgets, and internal audit reports on its website." | PARTIAL COMPLIANCE |

■ **Hogan Lovells**

## 9.  Officer Assistance and Support

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 269 | "The City will ensure that officers receive adequate training to understand: (a) how to police effectively and safely in accordance with CDP policy; [and] (b) the requirements of this Agreement, Ohio law, and the Constitution and laws of the United States," including in the areas of "procedural justice, bias-free policing, and community policing." | PARTIAL COMPLIANCE |
| 270 | "CDP will expand the scope and membership of the Training Review Committee." | OPERATIONAL COMPLIANCE |
| 271 | "[T]he Training Review Committee will develop a written training plan for CDP's recruit academy, probationary field training, and in-service training" that addresses a host of specific, expressly-identified issues. | OPERATIONAL COMPLIANCE |
| 272 | "The Training Plan need not apply to personnel in the Communication Control Section." | OPERATIONAL COMPLIANCE |
| 273 | "The Training Plan and schedule will be implemented once any objections have been resolved" on a yearly basis. | OPERATIONAL COMPLIANCE |
| 274 | "The City, including the Training Review Committee, will annually review and update CDP's training plan" by "conduct[ing] a needs assessment" that addresses a number of specific, expressly-identified data and information on real-world trends, needs, policy, and law. | OPERATIONAL COMPLIANCE |
| 275 | "CDP's Commander responsible for training" will be in charge of "all CDP training." | PARTIAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 276 | "CDP will designate a single training coordinator in each District. The Commander responsible for training will establish and maintain communications with each District training coordinator to ensure that all officers complete training as required and that documentation of training is provided to the" training Commander. | PARTIAL COMPLIANCE |
| 277 | "CDP will develop recruit academy and in-service curricula that comport with" the Training Plan and Consent Decree requirements. | PARTIAL COMPLIANCE |
| 278 | N/A | N/A |
| 279 | "For all other substantive updates or revisions to policy or procedure, the City will ensure and document that all relevant CDP personnel have received and read the policy or procedure. Notification of each revision or update will include the rationale for policy changes and the difference between the old and updated policy." | PARTIAL COMPLIANCE |
| 280 | Training Commander reviews all training materials; ensures that they use "a variety of adult learning techniques, scenario-based training, and problem-solving practices"; and "ensure that all curricula, lesson plans, instructor's qualifications, and testing materials are reviewed by the Training Review Committee." | PARTIAL COMPLIANCE |
| 281 | "CDP will ensure that instructors are qualified and use only curricula and lesson plans that have been approved by the" Training Commander. | PARTIAL COMPLIANCE |
| 282 | "CDP will revise, as necessary, its field training program for graduates of the police academy to comport with" the Training Plan and Consent Decree. | PARTIAL COMPLIANCE |
| 283 | "The field training program will incorporate community and problem-oriented policing principles, and problem-based learning methods." | PARTIAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 284 | Review and revision of Field Training Officer ("FTO") "participation policy to establish and implement a program that effectively attracts the best FTO candidates" and "revise eligibility criteria" for FTOs. | PARTIAL COMPLIANCE |
| 285 | New FTOs and Field Training Sergeants must "receive initial and in-service training that is adequate in quality, quantity, scope, and type, and that addresses" a number of specific, expressly-listed topics and conforms to a number of additional features or requirements. | PARTIAL COMPLIANCE |
| 286 | "CDP will create a mechanism for recruits to provide confidential feedback regarding the quality of their field training," and the Division "will document its response, including the rationale behind any responsive action taken or decision to take no action." | PARTIAL COMPLIANCE |
| 287 | "The City and the Training Review Committee will, on an annual basis, analyze all aspects of CDP's FTO program," "consider emerging national policing practices in this area," and "recommend, and CDP will institute, appropriate changes to policies, procedures, and training related to its FTO program." | PARTIAL COMPLIANCE |
| 288 | "CDP will document all training provided to or received by CDP officers," with officers "sign[ing] an acknowledgement of attendance or digitally acknowledge[ing] completion of each training course," which "will be maintained in a format that allows for analysis by training type, training date, training source, and by individual officer name." | PARTIAL COMPLIANCE |

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 289 | "CDP will develop and implement a system that will allow the Training Section to electronically track, maintain, and produce complete and accurate records of current curricula, lesson plans, training delivered, and other training materials in a centralized electronic file system." | **OPERATIONAL COMPLIANCE** |
| 290 | "The City will develop and implement accountability measures . . . to ensure that all officers successfully complete all required training programs in a timely manner." | **PARTIAL COMPLIANCE** |
| 291 | "The City will implement" Paragraphs regarding equipment and resources in order to allow implementation of the Consent Decree "and to allow officers to perform their jobs safely, effectively, and efficiently." | **PARTIAL COMPLIANCE** |
| 292 | "CDP will complete a comprehensive equipment and resource study to assess its current needs and priorities," and it "will develop an effective, comprehensive Equipment and Resource Plan that is consistent with its mission and that will allow it to satisfy the requirements of this Agreement." | **GENERAL COMPLIANCE** |
| 293 | "CDP's Equipment and Resource Plan will provide for necessary equipment including, at least" "an adequate number of computers"; "an adequate number of operable and safe zone cars"; "zone cards with reliable, functioning computers that provide officers with up-to-date technology" including computer-aided dispatch, the records management system, and various core law enforcement systems; and "zone cars equipped with first-aid kits." "This plan also will ensure that CDP properly maintains and seeks to continuously improve upon existing equipment and technology; and is appropriately identifying equipment | **OPERATIONAL COMPLIANCE** |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|---------------------|
| | needs and seeking to utilize, as appropriate, emerging technologies." | |
| 294 | "CDP will actively seek input and feedback from the Commission, patrol officers, and supervisors regarding resource allocation, equipment needs, and technological improvements." | PARTIAL COMPLIANCE |
| 295 | "City and CDP" must "us[e] best efforts to implement the Equipment and Resource Plan as required." | OPERATIONAL COMPLIANCE |
| 296 | "CDP will . . . implement an effective, centralized records management system." | OPERATIONAL COMPLIANCE |
| 297 | "CDP will utilize a department-wide e-mail system to improve communication and information sharing." | OPERATIONAL COMPLIANCE |
| 298 | "CDP will employ information technology professionals who are trained to conduct crime and intelligence analysis, who are capable of troubleshooting and maintaining information technology systems and who can identify and suggest appropriate technological advancements." | OPERATIONAL COMPLIANCE |
| 299 | "CDP will implement an effective employee assistance program that provides officers ready access to the mental health and support resources necessary to facilitate effective and constitutional policing." | PARTIAL COMPLIANCE |
| 300 | "The City will review and revise . . . its recruitment and hiring program to ensure that CDP successfully attracts and hires a diverse group of qualified individuals." | OPERATIONAL COMPLIANCE |
| 301 | "The Mayor will work with the City Council to develop an ordinance to place a Charter Amendment on the ballot that would give the appointing authority greater flexibility in the selection of candidates from the certified eligibility list for the CDP." | GENERAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 302 | "CDP will develop a recruitment policy and a strategic recruitment plan that includes clear goals, objectives, and action steps for attracting qualified applicants from a broad cross-section of the community" and meets certain specific, expressly-listed requirements. | OPERATIONAL COMPLIANCE |
| 303 | "The City will implement the recruitment plan within 60 days of it being approved by the Monitor." | OPERATIONAL COMPLIANCE |
| 304 | "CDP's recruitment plan will include specific strategies for attracting a diverse group of applicants," including officers with various, specific, expressly-listed skills and backgrounds. | PARTIAL COMPLIANCE |
| 305 | "In developing and implementing its recruitment plan, CDP will consult with the [Community Police] Commission and other community stakeholders on strategies to attract a diverse pool of applicants." | PARTIAL COMPLIANCE |
| 306 | "[O]bjective system for hiring and selecting recruits" that "employs reliable and valid selection criteria." | PARTIAL COMPLIANCE |
| 307 | "CDP will report annually to the public its recruiting activities and outcomes," which will include information on various, expressly-listed areas. | OPERATIONAL COMPLIANCE |
| 308 | "[A]ll candidates for sworn personnel positions" will have "psychological and medical examination" and be subject to "drug testing." Existing officers receive "random drug testing." | GENERAL COMPLIANCE |
| 309 | "CDP will conduct thorough, objective, and timely background investigations of candidates for sworn positions" that cover various, expressly-listed topics. | PARTIAL COMPLIANCE |
| 310 | "CDP will request to review personnel files from candidates' previous employment and, where possible, will speak with the candidate's supervisor(s)" and maintain any "salient information . . . in candidate's file." | OPERATIONAL COMPLIANCE |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 311 | "If a candidate has previous law enforcement experience, CDP will complete a thorough, objective, and timely pre-employment investigation" addressing various expressly-identified things. | **PARTIAL COMPLIANCE** |
| 312 | "CDP will ensure that officers who police professionally and effectively are recognized through the performance evaluation process" and "are identified and receive appropriate consideration for performance." Likewise, "poor performance" must be "reflected in officer evaluations." | **NON-COMPLIANCE** |
| 313 | "The City will develop and implement fair and consistent practices to accurately evaluate officer performance in areas related to integrity, community policing, and critical police functions, on both an ongoing and annual basis." | **NON-COMPLIANCE** |
| 314–315 | CDP will use "a formalized system documenting the annual performance evaluations of each officer by the officer's direct supervisor," including an assessment of several expressly-listed areas. "Supervisors will meet with the employee whose performance is being evaluated to discuss the evaluation." | **NON-COMPLIANCE** |
| 316 | "CDP will hold supervisors of all ranks accountable for conducting timely, accurate, and complete performance evaluations of their subordinates." | **NON-COMPLIANCE** |
| 317 | "The City will develop and implement fair and consistent promotion practices that comport with the requirements of this Agreement and result in the promotion of officers who are effective and professional." | **NON-COMPLIANCE** |
| 318 | In considering promotion, "appointing authority will consider" specific, expressly- listed "factors." | **NON-COMPLIANCE** |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 319 | "CDP will complete a comprehensive staffing study to assess the appropriate number of sworn and civilian personnel to perform the functions necessary for CDP to fulfill its mission and satisfy the requirements of the" Consent Decree. / "CDP will develop an effective, comprehensive Staffing Plan that is consistent with its mission, including community and problem-oriented policing, and that will allow CDP to meet the requirements of" the Consent Decree. | OPERATIONAL COMPLIANCE |
| 320 | Requirements of CDP Staffing Plan. | PARTIAL COMPLIANCE |
| 321 | "The City and CDP will employ best efforts to implement the Staffing Plan over the period of time set forth in the approved plan." | PARTIAL COMPLIANCE |

## 10.  Supervision

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 322 | "CDP will ensure that first line supervisors provide close and effective supervision of officers" in a number of express, specifically-identified ways. | PARTIAL COMPLIANCE |
| 323 | "CDP will develop and implement supervisory training for all new and current supervisors" that is "adequate in quality, quantity, type, and scope, and will include" a number of specific, expressly-listed topics. | PARTIAL COMPLIANCE |
| 324 | "Thereafter all sworn supervisors will receive adequate in-service management training." | PARTIAL COMPLIANCE |
| 325 | "CDP will hold supervisors directly accountable for the quality and effectiveness of their supervision, including whether supervisors identify and effectively respond to misconduct and ensure that officers effectively engage with the community." | PARTIAL COMPLIANCE |

■ Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|-----------|-------------|----------------------|
| **326** | CDP "will create a plan to modify its Officer Intervention Program ('OIP') to enhance its effectiveness as a management tool to promote supervisory awareness and proactive identification of potentially problematic behavior among officers. | **PARTIAL COMPLIANCE** |
| **327** | "CDP supervisors will regularly use OIP data to evaluate the performance of CDP officers across all ranks, units, and shifts." | **NON-COMPLIANCE** |
| **328** | "The OIP will include a computerized relational database that will be used to collect, maintain, integrate, and retrieve data department-wide" in a number of specific, expressly-identified areas. | **PARTIAL COMPLIANCE** |
| **329** | "CDP will set threshold levels for each OIP indicator that will trigger a formal review, and the thresholds will allow for peer-group comparisons between officers with similar assignments and duties." | **NON-COMPLIANCE** |
| **330-336** | Additional express requirements of OIP. | **NON-COMPLIANCE** |
| **337** | "If CDP chooses to use body worn cameras, CDP will provide clear guidance and training on their use, and will implement protocols for testing equipment and preservation of recordings to foster transparency, increase accountability, and build trust, while protecting the privacy rights of individuals." | **OPERATIONAL COMPLIANCE** |

Hogan Lovells

| PARAGRAPH | DESCRIPTION | STATUS OF COMPLIANCE |
|---|---|---|
| 338 | "Supervisors will review recordings related to any incident involving at least a Level 2 or 3 use of force; injuries to officers; and in conjunction with any other supervisory investigation." | OPERATIONAL COMPLIANCE |
| 339 | "Supervisors will conduct adequate random and directed audits of body worn camera recordings" and "incorporate the knowledge gained from this review into their ongoing evaluation and supervision of officers." | OPERATIONAL COMPLIANCE |
| 340 | "Officers will be subject to the disciplinary process for intentional or otherwise unjustified failure to activate body worn cameras in violation of CDP policy." | OPERATIONAL COMPLIANCE |

www.hoganlovells.com

"Hogan Lovells" or the "firm" is an international legal practice that includes Hogan Lovells International LLP,
Hogan Lovells US LLP and their affiliated businesses.

The word "partner" is used to describe a partner or member of Hogan Lovells International LLP, Hogan Lovells
US LLP or any of their affiliated entities or any employee or consultant with equivalent standing.  Certain
individuals, who are designated as partners, but who are not members of Hogan Lovells International LLP, do not
hold qualifications equivalent to members.

For more information about Hogan Lovells, the partners and their qualifications, see www.hoganlovells.com.

Where case studies are included, results achieved do not guarantee similar outcomes for other clients. Attorney
advertising. Images of people may feature current or former lawyers and employees at Hogan Lovells or models
not connected with the firm.

© Hogan Lovells  2024. All rights reserved.