IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 1:15-CV-01046 |
| | ) |
| Plaintiff, | ) |
| | ) JUDGE SOLOMON OLIVER, JR. |
| vs. | ) |
| | ) <u>NOTICE SUBMITTING THE MONITORING</u> |
| CITY OF CLEVELAND | ) <u>TEAM'S 2025 STAFFING ASSESSMENT</u> |
| | ) <u>REPORT</u> |
| Defendant. | |

The Monitoring Team hereby submits the Report of its 2025 Staffing Assessment.

Respectfully submitted,

<u>/s/ Christine M. Cole</u>

CHRISTINE M. COLE
Independent Monitor
464 Common Street  Unit #231
Belmont, MA 02478
ccole@clevelandpolicemonitor.com

CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I served the foregoing Notice Submitting the 2025 Staffing Assessment via the court's ECF system to all counsel of record.

/s/ Melody J. Stewart  
MELODY J. STEWART  
Deputy Monitor

Cleveland Division of Police Consent Decree Monitoring Team

# 2025 OFFICER ASSISTANCE AND SUPPORT – STAFFING ASSESSMENT

December 10, 2025

**TABLE OF CONTENTS**

I. EXECUTIVE SUMMARY .................................................................................................. 3

II. BACKGROUND ................................................................................................................. 3

III. SCOPE OF REVIEW, METHODOLOGY, AND STANDARD OF REVIEW .............. 5

    A. Scope of Review ...................................................................................................... 5

    B. Methodology ............................................................................................................ 5

    C. Standard of Review ................................................................................................. 5

        1. Determining Compliance Status ........................................................................ 6

IV. Staffing Assessment ........................................................................................................... 9

    A. Paragraph 319 ......................................................................................................... 9

    B. Paragraph 320 ....................................................................................................... 10

    C. Paragraph 321 ....................................................................................................... 11

V. COMPLIANCE ASSESSMENT CONCLUSIONS ........................................................ 13

I. **EXECUTIVE SUMMARY**

This Monitoring Team Assessment reports the compliance of the Cleveland Division of Police (CDP) with Section XI, sub-section (E) of the Consent Decree. Specifically, Paragraphs 319 through 321 of the Decree pertain to Staffing (sub-section E) in relation to the section of the Consent Decree that addresses Officer Assistance and Support (Section XI). The overarching goal of these paragraphs is for the City to establish and maintain staffing policies and procedures that fulfill its mission of promoting public safety and delivering community and problem-oriented policing, while also achieving compliance with the requirements of the Consent Decree. The paragraphs focus on the creation of the Staffing Plan and an examination of the City's efforts in implementing the Plan.

To carry out this assessment, the Monitoring Team reviewed the CDP Staffing Plan (the Plan), past semiannual reports that discussed the paragraphs, and had correspondence with the CDP Chief of Police. The objective of this Compliance Assessment is to evaluate the Division's actions to comply with the provisions of the paragraphs and to review the Division's progress under the Plan.

This is the Monitoring Team's first comprehensive assessment of the Staffing paragraphs (¶¶ 319-321). The Team concludes that the CDP has achieved Substantial and Effective Compliance across all three Staffing paragraphs of the Consent Decree.

II. **BACKGROUND**

The U.S. Department of Justice, Civil Rights Division (DOJ) and the City of Cleveland entered into an Agreement in 2015 after an investigation conducted by the DOJ determined that there was reasonable cause to believe that the City's Division of Police (CDP) had engaged in patterns and practices that violated the U.S. Constitution. The Agreement was adopted by the U.S. District Court for the Northern District of Ohio and entered as a Consent Decree with a Monitoring Team formed to oversee the City of Cleveland's compliance with the Agreement. The Consent Decree outlines a number of subject areas that the City needs to address to bring its policing into constitutional compliance. One of those subject areas is staffing as it relates to the City's providing officer assistance and support to the Division. Particular to this assessment, Section XI, subsection E, (¶¶ 319-321) of the Consent Decree requires the CDP to 1) complete a comprehensive Staffing Study that includes sworn and civilian personnel; 2) develop a comprehensive Staffing Plan that addresses personnel sufficiency and deployment; and 3) use best efforts to successfully implement the Staffing Plan.

In 2016, the Cleveland Division of Police (CDP) submitted to the DOJ and the City (Parties) and the Monitoring Team a Resource Study and Deployment Proposal that provided estimates for staffing levels necessary to comply with paragraphs 319 through 321 of the Consent Decree. The

Monitoring Team deemed the study a "useful guide" but stated that the submission was insufficient to qualify as "a true staffing plan as contemplated by the Consent Decree". The Parties then agreed to postpone active work on the Staffing provisions of the Consent Decree to prepare for the Republican National Convention being held in Cleveland that year, and also to focus attention on other aspects of the Consent Decree that could possibly impact staffing.

At the end of 2017, the CDP created a Staffing Plan as one of three interrelated plans – with the Community and Problem-Oriented Policing Plan and the Recruitment and Hiring Plan – that the City released in May, 2018 for public comment and feedback. CDP continued to refine and revise the Plan in response to public input and subsequently submitted the finalized Plan to the Parties and the Monitoring Team. The Monitoring Team anticipated that the City's implementation of the Staffing Plan would be aided by the projected addition of new officers from several Academy classes planned for that year. In 2019 on recommendation of the Monitor, the Court approved the Staffing Plan.

Because compliance with the Staffing Plan is linked to some aspects of the City's efforts on Recruitment and Community and Problem-Oriented Policing (CPOP), the Monitoring Team decided not to actively assess the Staffing Plan for several years while work was being completed in these other two areas. In the 2022 Eleventh Semiannual Report (SAR), the Monitoring Team noted that it had not received any information or updates from the CDP on implementing the Staffing Plan. The Monitoring Team stated that it planned to report more on the Staffing Plan process in its next SAR and also acknowledged the potential influence that the change in the City's Mayoral administration and Chief of Police might have on implementation and compliance with the Consent Decree.[1]

The October 2023 Thirteenth Semiannual Report (SAR) is the last Report that speaks to the progress of the CDP regarding the three Section XI (E) Staffing paragraphs of the Consent Decree. In the Thirteenth SAR, the Monitoring Team reported that significant work had been completed in the area of Officer Assistance and Support overall. However, when it comes to staffing, the Report notes that the City was still short (by approximately 400 officers) of past staffing levels. The Monitoring Team encouraged the City to work diligently to implement its Staffing Plan and to provide the Monitoring Team with evidence of its work. The Monitoring Team also suggested that the City revisit its Staffing Plan to ensure that it is up to date.[2]

---

[1] *See* Eleventh Semiannual Report (September 2022), p. 65 at https://static1.squarespace.com/static/5651f9b5e4b08f0af890bd13/t/632d056496aef21decebddb2/1663894885941/Eleventh+Semiannual+Report_FINAL+FULL-compressed.pdf

[2] *See* Thirteenth Semiannual Report (October 2023), p. 32 at https://static1.squarespace.com/static/5651f9b5e4b08f0af890bd13/t/652db44d02c47410896d189b/1758051694073/13th+Semiannual+Report+%28FINAL%29.pdf

4

In July 2025, the Monitoring Team sent to the Parties a Memorandum outlining a proposed methodology for conducting a Compliance Review of Staffing under Consent Decree Paragraphs 319 through 321.  The scope of the Assessment/Compliance Review is to formally review the Staffing Plan that the CDP submitted and how the Plan has been implemented.

### III.  SCOPE OF REVIEW, METHODOLOGY, AND STANDARD OF REVIEW

#### A.  Scope of Review

The Monitoring Team conducted its review in October and November 2025 of the City's compliance with Staffing Paragraphs 319 to 321 of the Consent Decree using all information provided such as other applicable assessments and correspondence with the CDP Chief of Police or the Chief's designee(s).  This review represents the Monitoring Team's first formal and comprehensive assessment for compliance with these Staffing paragraphs.

#### B.  Methodology

1. Pursuant to the methodology plan submitted by the Monitoring Team and approved by the Parties, assessing the City's compliance with the Staffing paragraphs of the Consent Decree was limited to again examining the CDP's Staffing Plan and correspondences with the Chief of Police or the Chief's designee on CDP's efforts to implement the Staffing Plan.

2. The Monitoring Team also reviewed other Assessment Reports that are related to the Staffing Plan.

#### C.  Standard of Review

Pursuant to Consent Decree ¶¶ 360 and 367, the Monitoring Team will conduct audits to determine whether the City of Cleveland ("City") and Cleveland Division of Police ("CDP") have complied with the requirements of the Consent Decree as well as, when applicable, conduct qualitative and quantitative assessments to measure whether implementation has resulted in constitutional policing.

The Monitoring Team evaluates compliance with sections of the Consent Decree throughout the year and communicates its observations, assessments, and findings twice each year through its semiannual reports (¶¶ 360, 375). These compliance reviews consider the totality of evidence presented and observed with respect to each provision of the Consent Decree, including review of policies and annual reports, interviews and meetings with the City and CDP as well as Cleveland community groups, and observation of trainings and internal meetings.

As the City and CDP progress through the implementation phase of the Consent Decree, the Monitoring Team will conduct Compliance Assessments that build upon reviews conducted in advance of each semiannual report. These Compliance Assessments will apply a Compliance Rating system (detailed below) in evaluating each provision of the Consent Decree, with the goal of the City/CDP achieving substantial and effective compliance for each provision.

In order to incorporate and build upon prior semiannual compliance reviews and reports, the Monitoring Team will review the four most recent semiannual reports in advance of the Compliance Assessment. Any related provision that has been graded "general compliance" for more than two years (i.e., four consecutive reports) will be presumptively considered in substantial and effective compliance. For any such provision presumptively considered in substantial and effective compliance, the Monitoring Team will review the provision as part of its formal Compliance Assessment in order to validate its compliance grade. If the Compliance Assessment validates that provision as substantially and effectively compliant, the Monitoring Team will not re-assess that provision in future Compliance Assessments. The Monitoring Team will, however, continue to review and report on that provision in its semiannual reports; if those reviews or reports suggest a downgraded change in status at any point, the provision will once again be incorporated into future Compliance Assessments.

## 1. Determining Compliance Status

As part of the Compliance Assessment, Subject Matter Experts ("SMEs") on the Monitoring Team will review data, records, and documents pertaining to each Staffing-related Consent Decree provision (¶¶ 319 -321). Following this review and analysis, the SMEs will compare findings and collectively award Compliance Ratings using the following framework:

| Rating | Definition |
|---|---|
| 0 | **Non-compliant, Not Started**: The City/CDP has not yet complied with the relevant provision of the Consent Decree.  This includes instances in which the City/CDP's work or efforts have begun, but cannot yet be certified by the Monitoring Team as compliant with a material component of the requirement. |
| 1 | **Partial Compliance, Not Assessed:** The City/CDP has initiated the implementation phase for the requirement, but the Monitoring Team has not yet assessed the City/CDP's progress in implementation.[3] |
| 2 | **Partial Compliance, Planning/Policy Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance |

---

[3] If the Monitoring Team believes a provision cannot be assessed for a particular reason (e.g., lack of access to data/information required for evaluation, etc.), it will inform the City in advance of any planned Compliance Assessment.

| | | |
|---|---|---|
| | | with key components of the provision of the Consent Decree pertaining to drafting or creating policies, processes, protocols, trainings, systems, or the like that exist on paper but do not exist or function in day-to-day practice. |
| 3 | **Partial Compliance, Implementation Phase:** | The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key components of the provision of the Consent Decree pertaining to initiating training and implementing systems intended to affect day-to-day practice, but that the Monitoring Team has not yet observed in practice.  It may capture a wide range of compliance states or performance, from the City or CDP having taken only very limited steps toward operational compliance to being nearly in operational compliance. |
| 4 | **Operational Compliance:** | The City and/or CDP has made notable progress to technically comply with the requirement and/or policy, process, procedure, protocol, training, system, or other mechanism of the Consent Decree such that it is in existence or practice operationally—but has not yet demonstrated, or has not yet been able to demonstrate, meaningful adherence to or effective implementation, including across time, cases, and/or incidents.  This includes instances where a given reform is functioning but has not yet been shown, or an insufficient span of time or volume of incidents have transpired, to be effectively implemented in a systemic manner.<br>Operational compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 5 | **General Compliance:** | The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented such that the Monitoring Team will begin tolling according to ¶ 401. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.<br>General compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 6 | **Substantial and Effective Compliance:** | The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented across time, cases, and/or incidents in accordance with ¶ 401 or ¶ 370. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.<br>Substantial and effective compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |

Additionally, the Monitoring Team recognizes that much of the City and CDP's work includes systemic changes implemented over a long-term trajectory.  As such, the Monitoring Team has incorporated the following considerations more appropriate for work that is ongoing, which will advance or ebb over time, into its Compliance Assessment:

1. **The quality of CDP's performance across a material span of time, number of incidents/events, and number of officers.**  Successfully carrying out a requirement in practice requires more than meeting expectations on one day, in one case or event, or for one officer.  Instead, it requires that CDP adhere to Decree requirements across a material span of time, number and/or portion of incidents, and number of officers.  In this way, isolated compliance does not establish "Initial Compliance" in practice.  At the same time, however, isolated non-compliance does not, by itself, eliminate the possibility of systemic compliance.  The issue is whether, across time, events, and people, CDP is, in aggregate, sufficiently doing what the Decree requires.  For some requirements that are applicable only to a relatively small absolute number of incidents or circumstances, performance in a single instance may weigh more significantly than it would in connection with a more commonly implicated requirement.

2. **The severity or significance of deviations from Consent Decree requirements, CDP policy, and/or law.**  The Monitoring Team considers not simply whether CDP's performance has deviated in some instances from the Decree's requirements but also the severity or significance of that deviation.  Several minor or more technical deviations from administrative requirements may be different in quality than a single significant or gross deviation from core requirements for officer performance in the field.  Likewise, deficient performance in connection with less foundational requirements or issues may be different in quality than deficient performance in connection with significant requirements or issues.

3. **The extent to which CDP is identifying and appropriately addressing problematic performance.**  In its focus on accountability, supervision, and mechanisms for fostering critical self-analysis within CDP, the Consent Decree expressly contemplates that a CDP in compliance with the Decree will have mechanisms in place to engage with departmental and officer performance that is deficient in some way.  Therefore, the Monitoring Team's compliance reviews consider whether, when CDP personnel have deviated from policy, law, or Decree requirements, the Department has identified the deviation and, if so, if it has appropriately addressed the issue.  With respect to Consent Decree implementation and meaningful organizational change, the Department is in a different condition if a policy deviation is identified and appropriately addressed than if the deviation goes unnoticed and unaddressed.

4. **CDP's progress over time.** Where possible, the Monitoring Team aims to situate its evaluation of CDP's performance in terms of progress over time. Steady improvement may suggest positive, meaningful adoption of Consent Decree requirements in a way that erratic swings in performance over time may not.[4]

IV. **Staffing Assessment**

This section summarizes the Monitoring Team's evaluation, using the methodology outlined in Section III (B), assessing compliance with paragraphs 319 to 321 of the Consent Decree.

A. **Paragraph 319**

*Within 365 days of the Effective Date, CDP will complete a comprehensive staffing study to assess the appropriate number of sworn and civilian personnel to perform the functions necessary for CDP to fulfill its mission, and satisfy the requirements of this Agreement. Within 180 days of completion of this study, CDP will develop an effective, comprehensive Staffing Plan that is consistent with its mission, including community and problem-oriented policing, and that will allow CDP to meet the requirements of this Agreement.*

This Paragraph requires the City to complete a comprehensive staffing study to assess its personnel needs and subsequently to develop a comprehensive Staffing Plan that will enable the City to fulfill the requirements of the Consent Decree. As noted earlier in this report, the City completed a study in 2016 that developed into a Staffing Plan the CDP submitted to the Monitoring Team and the Parties in 2017 - 2018. That Plan was approved by the Court in February of 2019. As a result, the City was given the rating of 4 – Operational Compliance for this paragraph. Because the City has complied fully with the requirements of this paragraph, the Monitoring Team upgrades the rating to 6, finding the City to be in **Substantial and Effective Compliance with ¶ 319**.

---

[4] Barge, M., Friedman, B., McGough, M. Monitoring Law Enforcement Consent Decrees: An Introduction and Starter Toolkit. 2024. Pages 91-9.

B. Paragraph 320

*Among other items, CDP's Staffing Plan will address and provide for each of the following:*
*a. personnel deployed to ensure effective community and problem-oriented policing;*
*b. a sufficient number of well-trained staff and resources to conduct timely misconduct investigations;*
*c. to the extent feasible, unity of command; and*
*d. a sufficient number of supervisors.*

This Paragraph of the Consent Decree requires that the City's Staffing Plan contain specific provisions to address, among other things, personnel deployment and certain operations. At the time of compliance assessment for this paragraph of the Consent Decree, the City was deemed to be in Partial Compliance - 3. A review of the CDP Staffing Plan shows that it does address and provide for the items listed above. However, because of the time that has lapsed since the Plan was created and the Monitoring Team's past urging that the City update its plan, the Monitoring Team slightly upgrades the compliance rating of this paragraph.

Beginning on page 4 of the Cleveland Division of Police Staffing Report, the CDP discusses the model it uses as a basis for its community policing philosophy and goes on to discuss the City's current level of staffing and the City's goals for staffing to ensure effective community and problem-oriented policing.[5] With regard to the remaining items, the Monitoring Team noted on page 5 of its 2019 Motion to the Court to approve the CDP Staffing Plan that, "Although the Staffing Plan primarily focuses on the staffing of the Division's Patrol Section, the Plan also includes recommended staffing levels for CDP's investigative units…."[6] The Staffing Plan also includes, beginning on page 9, a chart showing how CDP allocates its officers by rank and a line item demonstrating supervisory investigation of police misconduct (page 12) along with demonstrating supervisory responsibilities in other areas, noting the current and budgeted levels at the time.[7]

---

[5] *See* Cleveland Division of Police Staffing Report at
https://static1.squarespace.com/static/5651f9b5e4b08f0af890bd13/t/5c79638c15fcc0aaf4a2279e/1551459215390/Staffing+Ex+A.pdf

[6] *See* Motion to Approve Cleveland Division of Police Staffing Plan at
https://static1.squarespace.com/static/5651f9b5e4b08f0af890bd13/t/5c79622d8165f5b00a1728c2/1551458865384/combined.pdf

[7] *See* Cleveland Staffing Report,
https://static1.squarespace.com/static/5651f9b5e4b08f0af890bd13/t/5c79638c15fcc0aaf4a2279e/1551459215390/Staffing+Ex+A.pdf

As noted earlier, the City's Staffing Plan is dated and despite urgings to update it, the City has not done so. However, the Monitoring Team acknowledges that some of the City's efforts undertaken to comply with other areas of the Consent Decree can be seen as demonstrating the City's commitment to improve its staffing levels to comply with the dictates of the Consent Decree as evidenced in the Monitoring Team's 2025 Recruitment and Hiring Assessment and the current assessment review being conducted on Community and Problem-Oriented Policing (CPOP). Furthermore, communications with the CDP Chief of Police demonstrate that what did not take place on paper has taken place in practice. We therefore upgrade the **City's compliance rating to Substantial and Effective – 6.**

C. **Paragraph 321**

*Upon the Chief's approval of the Staffing Plan, CDP will submit it to the Monitor and DOJ. The Monitor will assess the Staffing Plan and report to the Parties whether it is appropriate, effective, and consistent with the requirements of the Agreement. DOJ independently will review and assess whether the Staffing Plan is appropriate, effective, and consistent with the requirements of this Agreement. The City and CDP will employ best efforts to implement the Staffing Plan over the period of time set forth in the approved plan. The Monitor will report to the Parties whether the City and CDP are using best efforts to implement the Staffing Plan as required.*

As previously noted, the CDP submitted its finalized Staffing Plan to the Monitor and the DOJ in 2018. Both assessed the Plan and the Monitor reported to the Parties that the Plan satisfied the requirements of the Consent Decree. In early 2019, the Monitor recommended that the Court approve the CDP Staffing Plan. The Court approved the Plan. Therefore, the first part of Paragraph 321 has been completed and is in full compliance.

The second part of Paragraph 321 requires the City and CDP to use best efforts to implement the Staffing Plan. The paragraph also calls for the Monitor to inform the Parties of whether the City and CDP are, indeed, using best efforts to implement the Staffing Plan. In evaluating this part of Paragraph 321, it is important to note that the CDP Plan reported the City's staffing levels in place at the time the Plan was created and at what levels the City projected staffing to be through the year 2020 only. In correspondence with the CDP Chief of Police, the Monitoring Team discovered that although the Staffing Plan has not been formally or officially updated, the CDP has implemented the Plan as originally created and additionally has made other notable changes to its operations and staff deployment that are in keeping with the times. For example, for years the City used the work-load based model to determine patrol officer assignments. The Chief noted also that pursuant to the Plan, the City committed to increasing its support units and did so. But over time, there came a need to rebalance the CDP workforce to address support needed for front-line officers.

11

Another aspect of the Plan that CDP implemented was making better use of the working relationship between its sworn and civilian staffs. These partnerships have become even more forward thinking as technology advances.

The Chief expressed that the CDP's staffing needs are constantly being evaluated – not only for compliance with the Consent Decree, but also to incorporate long-term best practices within the Division. For instance, the CDP hired a Data Collections & Analysis Coordinator. Although initially hired as a requirement of the Consent Decree, over time, the position evolved into a more expansive role that includes creating dashboards for the public in an effort to further CDP's mission of transparency and accountability, reviewing its human resources data, crime metrics and other data to inform its decision making on staffing and deployment.

In 2024 the CDP, working with the police unions, changed its deployment shifts from two 10-hour shifts and one eight-hour shift to 12-hour shifts. This change yielded positive results in deployment and operations such as not having to require as much mandated overtime work, making shifts easier to fill, and allowing officers to have larger blocks of time off from work. Recognizing that staffing needs change over time with advances in technology, the CDP has developed more partnerships between civilian staff and sworn staff. Investigative research specialist and digital forensic specialist are two types of civilian staff that do not require the training and skill set of sworn officers. These partnerships are being used in the Investigative and Administrative Units.

Finally, the Monitoring Team notes that, although the City is budgeted for 1350 sworn officers, the current complement is 1,153 sworn officers. The Monitoring Team also understands both the challenges with hiring and that the City Administration and the City Council have committed to providing additional resources if necessary to improve staffing levels. The Team also notes that there are almost 80 recruits in the Police Academy with another class starting soon. In light of this and the foregoing information, the Monitor Team concludes that CDP has fulfilled the requirements of this part of Paragraph 321. The Monitoring Team hereby reports an upgraded **rating of Substantial and Effective compliance – 6.**

## V. COMPLIANCE ASSESSMENT CONCLUSIONS

| CONSENT DECREE SECTION<br>XI. OFFICER ASSISTANCE AND SUPPORT | |
|---|---|
| E. STAFFING | |
| ¶ | Requirement | Compliance Rating |
| 319 | Within 365 days of the Effective Date, CDP will complete a comprehensive staffing study to assess the appropriate number of sworn and civilian personnel to perform the functions necessary for CDP to fulfill its mission, and satisfy the requirements of this Agreement. Within 180 days of completion of this study, CDP will develop an effective, comprehensive Staffing Plan that is consistent with its mission, including community and problem-oriented policing, and that will allow CDP to meet the requirements of this Agreement. | **Substantial and Effective Compliance 6** |
| 320 | Among other items, CDP's Staffing Plan will address and provide for each of the following:<br>a. personnel deployed to ensure effective community and problem-oriented policing;<br>b. a sufficient number of well-trained staff and resources to conduct timely misconduct investigations;<br>c. to the extent feasible, unity of command; and<br>d. a sufficient number of supervisors. | **Substantial and Effective Compliance 6** |
| 321 | Upon the Chief's approval of the Staffing Plan, CDP will submit it to the Monitor and DOJ. The Monitor will assess the Staffing Plan and report to the Parties whether it is appropriate, effective, and consistent with the requirements of the Agreement. DOJ independently will review and assess whether the Staffing Plan is appropriate, effective, and consistent with the requirements of this Agreement. The City and CDP will employ best efforts to implement the Staffing Plan over the period of time set forth in the approved plan. The Monitor will report to the Parties whether the City and CDP are using best efforts to implement the Staffing Plan as required. | **Substantial and Effective Compliance 6** |