IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | <u>NOTICE SUBMITTING THE MONITORING</u> |
| CITY OF CLEVELAND | ) | <u>TEAM'S 2025 EQUIPMENT AND RESOURCES</u> |
| | ) | <u>ASSESSMENT REPORT</u> |
| Defendant. | | |

The Monitoring Team hereby submits the Report of its 2025 Equipment and Resources Assessment.

Respectfully submitted,

<u>/s/ Christine M. Cole</u>

CHRISTINE M. COLE
Independent Monitor
464 Common Street  Unit #231
Belmont, MA 02478
ccole@clevelandpolicemonitor.com

CERTIFICATE OF SERVICE


I hereby certify that on December 24, 2025, I served the foregoing Notice Submitting the Monitoring Team's 2025 Equipment and Resources Assessment via the court's ECF system to all counsel of record.



/s/ Melody J. Stewart
MELODY J. STEWART
Deputy Monitor

2

Cleveland Division of Police Consent Decree Monitoring Team

2025 OFFICER ASSISTANCE AND SUPPORT – EQUIPMENT AND RESOURCES ASSESSMENT

December 24, 2025

**TABLE OF CONTENTS**

I.    Executive Summary ...................................................................2

II.   Scope and Methodology ...........................................................2

    A.   Scope of Review .................................................................2

    B.   Methodology ......................................................................3

        Data and Information to be Evaluated ...............................3

    C.   Standard of Review ............................................................6

III.  Equipment and Resources Compliance Assessment ...............11

    A.   Paragraph 291 ....................................................................11

    B.   Paragraph 292 ....................................................................11

    C.   Paragraph 293 ....................................................................12

        1.   Paragraph 293 (a) ........................................................13

        2.   Paragraph 293 (b) ........................................................13

        3.   Paragraph 293 (c) ........................................................16

        4.   Paragraph 293 (d) ........................................................17

        5.   Paragraph 293 (e) ........................................................17

        6.   Paragraph 293 (f) ........................................................17

    D.   Paragraph 294 ....................................................................18

    E.   Paragraph 295 ....................................................................19

    F.   Paragraph 296 ....................................................................19

    G.   Paragraph 297 ....................................................................20

    H.   Paragraph 298 ....................................................................21

    I.   Paragraph 299 ....................................................................22

IV.   Assessment Summary and Conclusion ....................................25

V.    Compliance Rating Summary ..................................................26

    Appendix A: CDP Zone Car Assessment Checklist....................28

    Appendix B: Vehicle Assessment Results.................................30

    Appendix C: First-Aid Kit Contents .........................................31

## I.        EXECUTIVE SUMMARY

The Monitoring Team conducted a comprehensive assessment of the Cleveland Division of Police's (CDP) compliance with Section XI – Equipment and Resources, Paragraphs 291-299 of the Consent Decree. This section focuses on equipment, technology, and resources with the goal of ensuring CDP has the resources, equipment, and updated technology necessary to allow officers to perform their jobs safely, effectively, and efficiently. The assessment evaluated CDP's implementation of its Equipment and Resources plan, the number of computer workstations available to employees, and the functionality of vehicles and in-vehicle mobile data terminals (MDTs). In addition, the Monitoring Team assessed compliance with the Consent Decree paragraph pertaining to the Employee Assistance Unit through policies, documents, and an interview with team members.

CDP has achieved measurable progress and upgrades in compliance in six of nine provisions. The Division maintains adequate computer and vehicle inventories, reliable and up-to-date mobile data systems, and functioning records management and email systems that promote information sharing and transparency. The Employee Assistance Unit is staffed with dedicated and committed members with accessible services and resources, though modernization of policy and governance, as well as departmentwide supervisor training, are priorities for more effective implementation. Continued progress is needed in seeking input and feedback from CDP members and the Community Police Commission (CPC) on technology and resource issues, and in preventive maintenance for the fleet, which is moving toward suboptimal age for an urban patrol fleet. Attention to these issues and successful transition to a new records management system will position the Division to achieve full and substantial compliance in future assessments.

## II.        SCOPE AND METHODOLOGY

### A.  Scope of Review

The Consent Decree between the U.S. Department of Justice (DOJ) and the City of Cleveland requires the Cleveland Division of Police to implement Paragraphs 291-299 with the goal of ensuring that its members are provided with the resources, equipment, and updated technology necessary to implement the terms of the agreement and to allow officers to perform their jobs safely, effectively, and efficiently (¶ 291). This assessment, unlike performance assessments that evaluate and rate compliance over a defined period, largely captures a moment in time, focusing on the state, adequacy, and readiness of equipment, processes, systems, and employee assistance resources as they existed at the time of review in September and October 2025. This is the Monitoring Team's first comprehensive assessment of the Equipment and Resources subsection.

## B.  Methodology

Prior to finalizing the methodology, the Parties collaborated to determine the systems, types of documents, reports, and observations necessary to complete the assessment. The Monitoring Team then conducted a thorough review of the Division's comprehensive equipment and resource study, resulting resource plans, the deployment of resources and equipment, systems implemented, and the assignment of personnel necessary to comply with the requirements of Paragraphs 291-299. Pursuant to Paragraphs 388-395, the Division made available and provided access to the data, documents, areas, meetings, and personnel necessary to complete the assessment, including but not limited to the specific data and information listed in the table below:

**Data and Information to Be Evaluated**

| ¶ | Requirement | Data/Information to Be Evaluated for Compliance |
|---|---|---|
| 291 | With the goal of ensuring that CDP is provided with the resources, equipment, and updated technology necessary to implement the terms of this Agreement and to allow officers to perform their jobs safely, effectively, and efficiently, the City will implement the paragraphs below. | This paragraph contains no specific requirements and will not be assessed. |
| 292 | Within 365 days of the Effective Date, CDP will complete a comprehensive equipment and resource study to assess its current needs and priorities to perform the functions necessary for CDP to fulfill its mission and satisfy the requirements of this Agreement. Within six months of completion of this study, CDP will develop an effective, comprehensive Equipment and Resource Plan that is consistent with its mission and that will allow it to satisfy the requirements of this Agreement. | • Comprehensive equipment and resource study<br>• Comprehensive equipment and resource plan [See plan components below in 293 a-f] |
| 293 | Among other items, CDP's Equipment and Resource Plan will provide for necessary equipment including, at least the following:<br>  a. an adequate number of computers;<br>  b. an adequate number of operable and safe zone cars;<br>  c. zone cars with reliable, functioning computers that provide officers with up-to-date technology, including:<br>    i. a mobile computer-aided dispatch system that allows officers and supervisors to access real time | • Observation of computers in zone cars and review of documents demonstrating the number of vehicles and the corresponding number of computers in zone cars<br>• Observation of zone cars in use that are operable and safe as well as review of supporting documents from Motor Vehicle Maintenance (list of vehicles, both in use and on hand, with |

| ¶ | Requirement | Data/Information to Be Evaluated for Compliance |
|---|---|---|
| |       information received from call-takers and dispatchers;<br>    ii.  the ability to access CDP's records management system; and<br>   iii.  access to law enforcement databases that allow officers to learn basic information about the civilians with whom they interact and the call history associated with the locations to which they are responding, as well as warrant and driver's license checks, and information concerning restraining orders; and<br>  d.  zone cars equipped with first-aid kits that would allow police officers to perform life-saving measures, and equipment necessary to decontaminate persons exposed to OC spray.<br>This plan will also ensure that CDP:<br>  e.  properly maintains and seeks to continuously improve upon existing equipment and technology; and<br>  f.  is appropriately identifying equipment needs and seeking to utilize, as appropriate, emerging technologies. | year, make, model, VIN, odometer reading, and assessed condition)<br>• Documentation that describes the systems and the version required in each zone car computer<br>• Evidence that each zone car system is maintained and updated<br>• Review documents illustrating the assignment of computers and systems to zone cars<br>• Assess, observe, and review the systems in zone car computers for functioning computers with current versions of technology, including:<br>  – Mobile CAD<br>  – Records management systems, including the Field Based Reporting application<br>  – All law enforcement databases containing person, location, driver's license, and call history information, as well as information about restraining orders<br>• Observations of zone car first-aid kits<br>• Documentation of processes including adequate budgeting, planning for replacement, and maintenance of equipment<br>• Plans to upgrade and improve upon existing equipment and technology<br>• Regular review process of equipment needs and efforts to procure and utilize emerging technologies |
| 294 | CDP will actively seek input and feedback from the Commission, patrol officers, and supervisors regarding resource allocation, equipment needs, and technological improvements. | • Review of processes, meeting minutes, or other systems that IT and the Division use to seek input and feedback from patrol officers, supervisors, and the |

| ¶ | Requirement | Data/Information to Be Evaluated for Compliance |
|---|---|---|
| | | Commission regarding resource allocation, equipment needs, and technological improvements |
| 295 | Upon the Chief's approval of the Equipment and Resource Plan, CDP will submit it to the Monitor and DOJ. The Monitor will assess the Equipment and Resource Plan and report to the Parties whether it is appropriate, effective, and consistent with the requirements of this Agreement. DOJ may independently review and assess whether the Equipment and Resource Plan is appropriate, effective, and consistent with the requirements of this Agreement. The City and CDP will employ best efforts to implement the Equipment and Resource Plan over the period of time set forth in the approved plan. The Monitor will report to the Parties whether the City and CDP are using best efforts to implement the Equipment and Resource Plan as required. | • Completed equipment and resource plan approved by the Chief of Police<br>• Approval of the Monitor for the submitted Equipment and Resources Plan<br>• Documentation demonstrating implementation of the Equipment and Resource Plan<br>• Documentation of ongoing efforts to adhere to the Plan |
| 296 | Within 365 days of the Effective Date, CDP will develop or revise, as appropriate, and implement an effective, centralized records management system that will enhance crime analysis, improve responsiveness and transparency, allow for effective and efficient data collection, promote information sharing within CDP and throughout the law enforcement community, aid in developing crime-fighting solutions, and assist CDP in effectively deploying its personnel. | • Review of RMS and its capacity, functions, and currency<br>• Review the connectivity to crime analysis, data sharing, and personnel deployment |
| 297 | Within 180 days of the Effective Date, CDP will utilize a department-wide e-mail system to improve communication and information sharing among all department personnel, including command staff, supervisors, and patrol officers. Patrol officers will not have access to information regarding allegations of misconduct. | • Evidence of a departmentwide email system in use by reviewing email addresses in the system against a list of all current personnel<br>• Policies addressing restricted access to information regarding allegations of misconduct, and levels and assignment of permissions in key systems housing misconduct information, such as IAPro |
| 298 | CDP will employ information technology professionals who are trained to conduct crime and intelligence analysis, who are capable of | • Review and assess job postings and credentials of staff in crime and intelligence analysis |

| ¶ | Requirement | Data/Information to Be Evaluated for Compliance |
|---|---|---|
| | troubleshooting and maintaining information technology systems and who can identify and suggest appropriate technological advancements. | • Confirm that these staff have access to key decision makers to suggest changes<br>• Review organizational structure and placement of crime and intelligence analysts |
| 299 | CDP will implement an effective employee assistance program that provides officers ready access to the mental health and support resources necessary to facilitate effective and constitutional policing. | • Review of policies, manuals, professional contracts and services available through the EAP<br>• Review of the processes by which officers can contact EAP to access resources<br>• De-identified data from the program allowing an assessment of its effectiveness – unduplicated users, range of services provided, and other qualifiers of effective implementation |

## C.  Standard of Review

The Monitoring Team conducted comprehensive assessments to evaluate the extent to which the City of Cleveland ("City") and the Division were in compliance with the requirements of the Consent Decree, pursuant to Paragraphs 360 and 367. Although this was the first comprehensive assessment of the Equipment and Resources subsection, according to the 17th Semiannual Report most of the provisions were at a level of compliance: general compliance – Paragraph 292; operational compliance – Paragraphs 293, 295, 296, 297, and 298; and partial compliance – Paragraphs 291, 294, and 299. Compliance levels in the Monitor's semiannual reports are determined in response to completion of specific deliverables or measurable achievements. This comprehensive assessment reviewed all paragraphs of the Consent Decree in the Equipment and Resources section.

While this assessment largely captures a moment in time, focusing on the state, adequacy, and readiness of equipment, processes, systems, and employee assistance resources at the time of review, to the extent possible, the Monitoring Team evaluated systemic implementation over time to ensure substantial compliance with the Consent Decree. Where there was inadequate compliance or compliance could not be determined, for example, in the case of missing or incomplete documentation or a lack of Monitoring Team access to the relevant people or systems, the severity of the inadequacy was weighed against the intent of the Consent Decree

and the effect on organizational performance. In any assessment, minor technical issues, occasional mistakes, or incomplete efforts initiated in good faith will be considered differently than misconduct, significant and substantive instances of noncompliance, or systems and behavior not in alignment with Constitutional policing.

The Monitoring Team's compliance assessments consider a range of quantitative and qualitative factors. Where quantitative measures are appropriate, the Team will consider a compliance rate of 85% or above as adequate when assessing a requirement of the Consent Decree. Where there is a small number of cases or where analysis is qualitative, the Team will consider the intent of the relevant requirements, the context of implementation, and the degree to which policies, practices, and observed behaviors demonstrate alignment with the objectives of the Consent Decree. Substantial and effective compliance is fundamentally about performance, requiring not only effective policy and protocols, but also consistent and systemic compliance over time.

After a comprehensive and detailed review of data, information, and interviews, compliance with requirements of the Consent Decree was rated on a scale from 0-6.

| Level | Standard |
|-------|----------|
| 0 | **Non-Compliant or Not Started:** The City/CDP has not yet complied with the relevant provision of the Consent Decree. This includes instances in which the City/CDP's work or efforts have begun but cannot yet be certified by the Monitoring Team as compliant with a material component of the requirement. |
| 1 | **Partial Compliance – Not Assessed:** The City/CDP has initiated the implementation phase for the requirement, but the Monitoring Team has not yet assessed the City/CDP's progress in implementation. |
| 2 | **Partial Compliance – Planning/Policy Stage:** Implementation has begun by drafting or developing policies, processes, training, or other systems, but key components of the provision(s) have not yet been implemented or are not operational. |
| 3 | **Partial Compliance – Implementation Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key components of the provision of the Consent Decree pertaining to initiating training and implementing systems intended to affect day-to-day practice, but that the Monitoring Team has not yet observed in practice. It may capture a wide range of compliance states or performance, from the City or CDP having taken only very limited steps toward operational compliance to being nearly in operational compliance. |

| Level | Standard |
|---|---|
| 4 | **Operational Compliance:** The City and/or CDP has made notable progress to technically comply with the requirement and/or policy, process, procedure, protocol, training, system, or other mechanism of the Consent Decree such that it is in existence or practice operationally—but has not yet demonstrated, or has not yet been able to demonstrate, meaningful adherence to or effective implementation, including across time, cases, and/or incidents. This includes instances where a given reform is functioning but has not yet been shown, or an insufficient span of time or volume of incidents have transpired, to be effectively implemented in a systemic manner. Operational compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 5 | **General Compliance:** General Compliance: The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented such that the Monitoring Team will begin tolling according to Consent Decree ¶ 401. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically. General compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 6 | **Substantial and Effective Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented across time, cases, and/or incidents in accordance with Consent Decree ¶ 370 or ¶ 401. This includes instances where it can be shown that the City/CDP has effectively complied with a requirement fully and systemically. Substantial and effective compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |

As additional considerations, more appropriate for work that is ongoing and advances or ebbs over time, the Monitoring Team offers the following details used in making final assessments.

1. **The quality of CDP's performance across a material span of time.** Successfully carrying out a requirement in practice requires more than meeting expectations on one day, in one case or event, or for one officer. Instead, it requires that CDP adhere to Decree requirements across a material span of time, number and/or portion of incidents, and number of officers. In this way, isolated compliance does not establish "Initial

Compliance" in practice.  At the same time, however, isolated non-compliance does not, by itself, eliminate the possibility of systemic compliance.  The issue is whether, across time, events, and people, CDP is, in aggregate, sufficiently doing what the Decree requires.  For some requirements that are applicable only to a relatively small absolute number of incidents or circumstances, performance in a single instance may weigh more significantly than it would in connection with a more commonly implicated requirement.

2.  **The severity or significance of deviations from Consent Decree requirements, CDP policy, and/or law.**  The Monitoring Team considers not simply whether CDP's performance has deviated in some instances from the Decree's requirements but also the severity or significance of that deviation.  Several minor or more technical deviations from administrative requirements may be different in quality than a single significant or gross deviation from core requirements for officer performance in the field.  Likewise, deficient performance in connection with less foundational requirements or issues may be different in quality than deficient performance in connection with significant requirements or issues.

3.  **The extent to which CDP is identifying and appropriately addressing problematic performance.**  In its focus on accountability, supervision, and mechanisms for fostering critical self-analysis within CDP, the Consent Decree expressly contemplates that a CDP in compliance with the Decree will have mechanisms in place to engage with departmental and officer performance that is deficient in some way.  Therefore, the Monitoring Team's compliance reviews consider whether, when CDP personnel have deviated from policy, law, or Decree requirements, the Department has identified the deviation and, if so, if it has appropriately addressed the issue.  With respect to Consent Decree implementation and meaningful organizational change, the Department is in a different condition if a policy deviation is identified and appropriately addressed than if the deviation goes unnoticed and unaddressed.

4.  **CDP's progress over time.**  Where possible, the Monitoring Team aims to situate its evaluation of CDP's performance in terms of progress over time.  Steady improvement may suggest positive, meaningful adoption of Consent Decree requirements in a way that erratic swings in performance over time may not.[1]

---

[1] Barge, M., Friedman, B., McGough, M.  Monitoring Law Enforcement Consent Decrees:  An Introduction and Starter Toolkit.  2024.  Pages 91-9.
https://static1.squarespace.com/static/58a33e881b631bc60d4f8b31/t/671bf35ce2cf8a70d2a5c3cb/1729885020813/Monitoring+Law+Enforcement+Consent+Decrees.pdf

Courts regularly apply multi-factor approaches where the application of determinative, bright-line rules are impossible, do not adequately incorporate the array of relevant circumstances at issue, or implicate competing considerations.[2]  Such multi-factor tests are "objective" as they require clear explanations as to "how they derived their conclusions from the verifiable facts."[3]

In applying this multi-factor test for compliance, the first factor – the quality of CDP's performance across a material span of time – is the initial, threshold inquiry.  In assessing this factor, the Monitoring Team will consider a range of both quantitative and qualitative measures for each provision and determine both CDP's baseline and current level of performance.  If CDP and/or its officers' performance is not at a certain level with regards to the relevant metric, then things like progress over time or CDP's identification of the issues are unlikely to cure the basic deficiencies with performance, regardless of improvement over time.

The Monitoring Team will develop a number of quantitative metrics in assessing performance.  For such metrics that are rates, the Monitoring Team will consider a compliance rate of 85% or above as "passing".  For some non-rate metrics, where there is a relatively small number of incidents for review, or where the rate requires different considerations, the Monitoring Team may set different expectations to be considered passing.  The result is such that each provision is graded upon a range of measures and that strong performance on any given quantitative measure must be balanced against the severity of any deviations, the department's response to such violations, and the department's progress over time.

The multi-factor test for compliance works to ensure that all relevant objective factors are reasonably weighed and the Monitoring Team's written findings provides guidance to the Department and to the community about the benchmarks that it expects and CDP's current performance level.

Finally, the Monitoring Team may assign a score for an individual provision that is lower than the score given in a prior report based upon the weighing of factors and current CDP performance.

Compliance Assessments are not only about policy; they are also about *performance*—about CDP demonstrating *adherence* to policy.  Accordingly, to establish initial compliance with these provisions and ultimately to sustain "full and effective" compliance pursuant to Paragraph 397,

---

[2] *See, e.g., Murr v. Wisconsin*, 582 U.S. __ (2017) (adopting a multi-factor test for determining whether governmental regulations effectuated a decline in the value of private property so as to be considered a government taking under the Fifth Amendment); *EBay v. MercExchange*, 547 U.S. 388 (2006) (applying four-factor test to determinations about permanent injunctive relief in disputes arising under the Patent Act); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (articulating three factors for courts to consider when determining whether additional governmental and/or judicial procedures are necessary to satisfy the Due Process Clause).

[3] James G. Wilson, "Surveying the 'Forms of Doctrine' on the Bright Line Balancing Test Continuum," 27 *Ariz. St. L.J.* 773, 802 (1995).

CDP not only must show that it has adopted the pertinent policies, but also that its personnel, including officers, consistently comply with those policies. The multi-factor test for compliance set forth above works to ensure that all relevant objective factors are reasonably weighed and the Monitoring Team's ratings are clearly conveyed.

## III.    EQUIPMENT AND RESOURCES COMPLIANCE ASSESSMENT

This section contains the evaluation and findings of the Equipment and Resources Assessment, Paragraphs 291-299 of the Consent Decree.

### A.  Paragraph 291

*With the goal of ensuring that CDP is provided with the resources, equipment, and updated technology necessary to implement the terms of this Agreement and to allow officers to perform their jobs safely, effectively, and efficiently, the City will implement the paragraphs below.*

Paragraph 291, which was in partial compliance as of the 17th Semiannual Report, is an introductory statement requiring implementation of Paragraphs 292-299 and was not assessed as an individual component.

Although not assessed individually, the results of CDP's implementation efforts as detailed in the following sections support an upgrade for this section from Partial Compliance to **Operational Compliance (Rating 4).**

### B.  Paragraph 292

*Within 365 days of the Effective Date, CDP will complete a comprehensive equipment and resource study to assess its current needs and priorities to perform the functions necessary for CDP to fulfill its mission and satisfy the requirements of this Agreement. Within six months of completion of this study, CDP will develop an effective, comprehensive Equipment and Resource Plan that is consistent with its mission and that will allow it to satisfy the requirements of this Agreement.*

In April 2016, the Division completed an initial Equipment and Resources Study. Based on the study, the City submitted an Equipment and Resources Plan on November 25, 2016. The Monitoring Team did not approve the plan because it lacked sufficient detail, including timelines and several specific technology requirements listed in the Consent Decree. In January 2017, the Court instructed the City to develop a more comprehensive plan, which was submitted on April 17, 2017. The Monitoring Team approved portions of the 2017 plan addressing upgrades to the

Division's Computer-Aided Dispatch system and to the patrol fleet, but required additional information regarding a strategic framework to allow the City and the Division to proactively identify and implement emerging technologies. The City worked with the Department of Justice (DOJ) and the Monitoring Team to develop an updated Equipment and Resources Plan to address fully the requirements of the Consent Decree.

On November 2, 2018, the Monitoring Team filed a motion with the Court to approve the Cleveland Division of Police 2018 Equipment and Resource Plan, concluding that the 2018 Plan, when taken together with the 2017 Plan, constitutes a complete and satisfactory Equipment and Resources Plan that meets the terms of the Consent Decree. The Monitoring Team determined that the Plan included an IT governance strategy, modernized the Division's technology infrastructure, and contained plans for specific interventions to improve performance.

The Monitoring Team has previously approved the Equipment and Resources Plan required by Paragraph 292. The past and ongoing efforts of CDP and the Department of Public Safety to implement the Equipment and Resources Plan support an upgraded finding of **Substantial and Effective Compliance (6)** for Paragraph 292.

## C.  Paragraph 293

*Among other items, CDP's Equipment and Resource Plan will provide for necessary equipment including, at least the following:*
   a. *an adequate number of computers;*
   b. *an adequate number of operable and safe zone cars;*
   c. *zone cars with reliable, functioning computers that provide officers with up to-date technology, including:*
        i. *a mobile computer-aided dispatch system that allows officers and supervisors to access real time information received from call-takers and dispatchers;*
        ii. *the ability to access CDP's records management system; and*
        iii. *access to law enforcement databases that allow officers to learn basic information about the civilians with whom they interact and the call history associated with the locations to which they are responding, as well as warrant and driver's license checks, and information concerning restraining orders; and*
   d. *zone cars equipped with first-aid kits that would allow police officers to perform life-saving measures, and equipment necessary to decontaminate persons exposed to OC spray.*

*This plan also will ensure that CDP:*
   e. *properly maintains and seeks to continuously improve upon existing equipment and technology; and*

    *f.*  *is appropriately identifying equipment needs and seeking to utilize, as appropriate, emerging technologies.*

### ¶ 293 (a) – An adequate number of computers.

The Monitoring Team reviewed inventory data provided by CDP as of September 16, 2025, which reported 1,012 functioning desktop and laptop computers. Upon checking the "Description" column, which lists the work location to which the computers are assigned, 45 units were assigned to "Safety Admin," which refers to the Department of Public Safety, leaving 967 units assigned to the Division of Police. Assessing this section did not include observations of functionality or systems testing, as in the following paragraphs. "An adequate number of computers" is the only requirement of Paragraph 293 (a).

CDP's reported inventory of 967 computers is available for a workforce of 1,235 sworn and 380 nonsworn personnel, a total of 1,615 members[4], which equals a simple ratio of 0.6 computers per employee as of the drafting of this document. Given the 24-hour operations of police agencies a 1:1 ratio is not necessary or cost effective, as equipment is shared among the work shifts. Upon interviews with CDP personnel, the Monitoring Team learned that most administrative and investigative personnel have individual workstations. Patrol officers share terminals in designated report writing areas and have the ability to complete reports and access other department systems using their vehicles' mobile computers.

The number of computers appears sufficient to ensure that CDP members with reporting, supervisory, and administrative responsibilities have reliable access.

### ¶ 293 (b) – An adequate number of safe and operable zone cars.

Zone cars are assigned to the districts for neighborhood patrol and investigations, and to other patrol units and functions, such as traffic enforcement. The Monitoring Team reviewed an inventory of zone cars that reported 293 vehicles with 21 (7%) out of service for body work or motor/transmission issues, indicating an acceptable maintenance rate indicative of responsible fleet management. Urban police patrol vehicles experience high utilization, extended idle time, and collision risks, and the 93% in-service rate suggests no concerns with systemic neglect or maintenance backlog in a moderately aging fleet.

According to the inventory:

---

[4] The Division's authorized budgeted strength is 1,943 members: 1,350 sworn and 593 nonsworn.

- 272 of 293 vehicles were in service and available for use (93%)
- 95% were equipped with mobile data terminals
- 79% were equipped with dash cameras
- 7 vehicles were model year 2024 – the newest vehicles in the fleet
- 2 vehicles were model year 2006 – the oldest vehicles in the fleet
- 58 vehicles were model year 2023

In addition to reviewing the vehicle inventory, the Monitoring Team conducted an on-site inspection of 20 vehicles using a purposive stratified sample rather than a random or convenience sample. The objective was to obtain a representative cross section of vehicle types, ages, and usage conditions. This combination of strata captures both ends of the condition spectrum as well as the middle range, allowing the Monitoring Team to identify potential systemic issues rather than isolated anomalies. The Team requested and was provided for inspection:

- Four oldest/high mileage vehicles from two districts
- Four newest/low mileage vehicles from two districts
- Eight mid-life vehicles, evenly distributed across districts
- Two traffic or other specialized units
- Two "sidelined" or problem vehicles identified by CDP or Motor Vehicle Maintenance personnel

The sample consisted of nine Ford Interceptor Utility (SUV) on the Explorer platform, nine Ford Interceptor sedans on the Taurus platform, and two Dodge Charger Pursuit vehicles. Overall, the sample suggested no critical maintenance issues in the 18 vehicles that were in-service. Inspecting the two out-of-service vehicles provided a comparison with active vehicles, context on fleet administration practices, and an opportunity to observe the storage facility, which did not appear to have an excessive number of inactive vehicles. This offered strategic insight into the fleet's life-cycle management beyond counting active vehicles, as what sits idle can reveal what is working and what is not working in a complex system.

Of the 18 vehicles in active service, the Ford sedans presented the bulk of moderate issues, which should be expected, as production of this vehicle ended in 2019 and they will be significantly represented in the aging and high-mileage segment of the fleet. As the sedans continue to age, they will be increasingly inefficient to maintain and naturally phased out from the fleet. The Ford Utility vehicles were in good condition generally, with only minor indicator lights noted on the checklists (Appendix A). No issues were noted with the two Chargers. Among the active service vehicles, most of the concerns were dash indicator lights, such as the "Check Engine" and "Tire Pressure" symbols,

which, in an aging fleet can mean items need attention or sensor issues. Dash indicator lights were illuminated in eight of the 18 vehicles in active service, suggesting the need for a comprehensive fleet inspection and diagnoses to determine whether or not the indicator lights are signaling real maintenance issues. The results of the vehicle inspection checklists can be found in Appendix B.

A serious concern was observed in three vehicles. The locking shotgun in one zone car was missing one of three bolts securing it to the safety barrier, causing the mount and gun to move freely when touched. In two vehicles, the lower shoulder stock holder (the "cup") in which the stock rests were completely unsecured and loose in the vehicles, leaving the shotguns hanging from the hinged locking mechanism by the sliding forestock ("slide"). While there is little danger of an unintentional discharge, the Remington 870 shotgun mounted in CDP patrol vehicles is not completely "drop safe," meaning that a severe impact could cause it to fire. In addition, the torquing received as the weapon swings from a single attachment point could cause damage with unknown consequences should a compromised weapon be fired. Monitoring Team members brought this issue to the attention of the supervisor assisting with the assessment and suggested that CDP conduct a full inspection of the shotgun and weapon mount in every equipped vehicle in the fleet.

In discussions with officers, some expressed concern about the age and condition of the zone car fleet, which includes vehicles ranging from model years 2006 to 2024. By model year, approximately 27% of vehicles are 2015 or older and 32% are 2021 or newer, with a median age of seven years and a mean age of 6.8 years. This indicates a moderately to suboptimally aged patrol fleet, supporting officers' perceptions that the vehicles are aging. With an average age of seven years, the patrol fleet service life appears currently to be within a manageable range but will rapidly trend toward the upper limit of suboptimal service life without an adequate replacement cycle. A more acceptable average age would be four to five years for vehicles in active service to reduce downtime and maintenance costs.

The Monitoring Team concludes that CDP has an adequate inventory of safe and operable zone cars with maintenance issues consistent with the age and condition of its fleet. The weapon lock mounting problem and dash indicator lights, while notable, do not necessarily signal a critical systemic maintenance problem as much as an issue with routine inspections and preventive monitoring in the field to bring items to the attention of maintenance personnel. The age of the fleet is a concern, and a consistent replacement cycle is critical to ensure reliability, alleviate future safety concerns, and avoid escalating maintenance costs.

***¶ 293 (c) (i-iii) – Zone cars with reliable, functioning computers that provide officers with up-to-date technology.***

Paragraph 293 (c) (i-iii) requires that zone cars be equipped with reliable, functioning computers with up-to-date technology, specific systems installed, and access to CDP and law enforcement databases. Upon request, the Division provided a document showing the standard technology set-up for emergency vehicles for the Divisions of Police, Fire, and Emergency Medical Services (EMS), updated July 10, 2025. An IT representative assisting with the on-site assessment stated that mobile data terminal (MDT) application updates are pushed out automatically. The Mobile Support Unit initiates the updates, which occur as needed on an irregular schedule determined by the application vendors rather than city IT professionals. The Monitoring Team knows this to be standard practice. CDP did not have a record of MDT updates, but the Mobile Support Unit maintains the images and changes to the MDTs.

During the on-site vehicle inspection, members of the Monitoring Team observed officers turn on their mobile data terminals, log in, and access the systems required by the Consent Decree. We noted no major connectivity or speed issues and each officer assisting with the inspection was knowledgeable in logging in and accessing the relevant applications.

In 17 of the 18 zone cars in active service, officers were able to log in, access, and demonstrate full functionality of the required applications and systems including all the requirements of ¶293(c) (i), (ii), and (iii).

In one zone car, an 11-year-old back-up vehicle with over 143,000 miles on the odometer, the officer was not able to log in and access the systems. A representative of Motor Vehicle Maintenance assisting with the assessment related that the vehicle did not have the most recent MDT or software applications installed because it was a spare car and not used very often. It is important to note that the Monitoring Team requested to inspect a sample of older, high-mileage vehicles, which were not expected to be in the same condition as newer, low-mileage units. In the case of back-up vehicles, however, if they are equipped with MDTs, they should be functioning, updated with the most recent application versions, and available for use in the field.

Based on the sample of 18 active service vehicles, it is reasonable to assume that CDP has complied with the aspect of the Equipment and Resources section requiring zone cars with reliable, functioning computers and up-to-date systems.

*¶ 293 (d) – Zone cars equipped with first-aid kits that would allow police officers to perform life-saving measures, and equipment necessary to decontaminate persons exposed to OC spray.*

CDP zone cars are equipped with sealed first-aid kits that are stocked with standard supplies and provided by the Emergency Medical Services (EMS) Division. When an officer uses a kit, the locking plastic seal is broken to access the needed supplies. Another sealed kit is then procured from the Division's inventory and the used kit is returned to EMS to be restocked. During the on-site vehicle inspection on September 30, 2025, the Monitoring Team noted the presence of first-aid kits in the vehicles assessed but did not break the seal to inventory the contents. The following day, five vehicles were checked at random for the presence of kits and one was opened to check the contents. All five vehicles were equipped and the opened kit was properly stocked with the required supplies (Appendix C), including eye wash to decontaminate persons exposed to chemical irritant spray.

*¶ 293 (e) – The Equipment and Resources Plan must also ensure that CDP properly maintains and seeks to continuously improve upon existing equipment and technology; and*

*¶ 293 (f) – is appropriately identifying equipment needs and seeking to utilize, as appropriate, emerging technologies.*

To assess compliance with these subsections, as the Equipment and Resources Plan has been submitted and agreed upon by the Parties, the Monitoring Team reviewed documentation of regular technology team meetings that demonstrate ongoing efforts to properly implement the Plan. The Department of Public Safety convenes a bi-weekly IT Board meeting to assess ongoing compliance with Paragraphs 291-298 of the Consent Decree. In attendance at these meetings are subject matter experts, IT leads, system administrators, and project managers within the Department of Public Safety, which includes CDP. The Monitoring Team reviewed detailed notes from Board meetings, which contained information on system procurement, timelines for implementation, system updates, ideas for system improvements, IT staff hires, expenditures, and ongoing technology projects.

CDP maintains an adequate number of computers, a functional and safe, though aging, fleet, and properly equipped zone cars, with a 93% in-service rate and no indication of major systemic neglect. The nearly universal functionality of MDTs and regular IT Board meetings demonstrate systematic implementation and legitimate efforts to remain in compliance with the Equipment

and Resources Plan and the Consent Decree. Issues identified during the vehicle inspections, such as the weapons mount issue and the prevalence of indicator lights, suggest the need for enhanced attention to preventive maintenance. This paragraph and its subparagraphs remain in **Operational Compliance (4).**

**D.  Paragraph 294**

*CDP will actively seek input and feedback from the [Community Police] Commission, patrol officers, and supervisors regarding resource allocation, equipment needs, and technological improvements.*

To assess this section, the Monitoring Team requested documentation of processes used or meetings held that would meet these requirements. The Division provided 10 documents, two of which were responsive to the request.

- **CPC Response to the Equipment and Resources Plan –** This document was submitted to CDP in 2016 when the Division was in the process of completing its initial Equipment and Resources Plan. This document was a CPC response to the Plan in which the Commission sought and received public input, which was provided to the Division.

- **CDP Leadership Training Group Project –** This document was a project submitted by CDP members at the conclusion of a leadership training course proposing the development of an internal information sharing platform. These projects are a regular component of the leadership course, during which teams collaborate to use lesson concepts and provide input, promote change, or request the implementation of new initiatives within the Division.

The other eight documents included two CPC reports on police surveillance technology that provided feedback but did not appear to have been actively sought by the Division. One document was a Cleveland State University report on the implementation of ShotSpotter, which, although informative, does not satisfy the requirement of input from CDP members or the CPC. The remining five documents were projects from the leadership course suggesting changes and new initiatives touching upon performance and operations with no input or feedback regarding resource allocation, equipment needs, or technological improvements.

Paragraph 294 requires the Cleveland Division of Police to actively seek feedback from the Community Police Commission and CDP members regarding resource allocation, equipment needs, and technological improvements. This provision ensures communication among the enumerated stakeholders in identifying priorities and investments in equipment and technology. The documents provided demonstrate isolated instances but no consistent or systemic process by which the Division seeks this input and feedback. Efforts have begun but key components of the

provision have not been implemented and are not operational, resulting in a sustained rating of **Partial Compliance (2).**

## E.  Paragraph 295

*Upon the Chief's approval of the Equipment and Resource Plan, CDP will submit it to the Monitor and DOJ. The Monitor will assess the Equipment and Resource Plan and report to the Parties whether it is appropriate, effective, and consistent with the requirements of this Agreement. DOJ may independently review and assess whether the Equipment and Resource Plan is appropriate, effective, and consistent with the requirements of this Agreement. The City and CDP will employ best efforts to implement the Equipment and Resource Plan over the period of time set forth in the approved plan. The Monitor will report to the Parties whether the City and CDP are using best efforts to implement the Equipment and Resource Plan as required. This paragraph was reported to be in operational in the 17th Semiannual Report.*

The Monitoring Team has previously approved the Equipment and Resources Plan required by Paragraph 292. The past and ongoing efforts of CDP and the Department of Public Safety to implement the Equipment and Resources Plan support an upgraded finding of **General Compliance (5)** for Paragraph 295.

## F.  Paragraph 296

*Within 365 days of the effective date, CDP will develop or revise, as appropriate, and implement an effective, centralized records management system that will enhance crime analysis, improve responsiveness and transparency, allow for effective and efficient data collection, promote information sharing within CDP and throughout the law enforcement community, aid in developing crime-fighting solutions, and assist CDP in effectively deploying its personnel."*

As the Division has been using an effective records management system (RMS) for many years, the Monitoring Team previously assessed this provision to be in Operational Compliance. At the time of this assessment, the Division uses Tyler Technologies' New World System, Law Enforcement Records Management System (LERMS), implemented in 2007 with field-based reporting going live in 2018. Currently, the Division is in the process of transitioning to a new system, Motorola Premier One, which is expected to go live for all end users on November 11, 2025. Because the current version of LERMS and the Hexagon computer aided dispatch (CAD) are beyond useful life and no longer supported by the vendors, the City procured an integrated RMS/CAD solution with Motorola.

The legacy LERMS system allowed CDP to produce effective crime and intelligence analysis products as well as numerous informational dashboards and Teams channels departmentwide. The Monitoring Team reviewed analysis products including comprehensive weekly analysis reports from each patrol district, indicating that data is being shared and the information is used to aid in resource deployments. The reports contained data on Part 1 crime trends, crime maps, incident patterns, case summaries, and analyst insights by zone. The Division also shares crime data through its participation in numerous local, state, and federal task forces, providing information to the Northeast Ohio Regional Fusion Center, the Cuyahoga County Prosecutor's Office Crime Strategies Analysts, and the Northern Ohio Violent Crime Consortium.

In addition to CDP internal information sharing, the Department of Public Safety hosts an online Open Data Portal offering members of the public user-configurable views of incidents, crime maps, calls for service, Crisis Intervention Team data, and uses of force. The Monitoring Team found the portal to be comprehensive and user friendly, with a variety of data and information to promote transparency and awareness of several aspects of CDP operations and outcomes.

The Cleveland Division of Police has implemented a records management system that supports information sharing, transparency, analysis, and data driven deployments. The Division remains in **Operational Compliance (4)** with Paragraph 296. Advancement to the next tier of compliance is likely if implementation of the new system demonstrates equivalent or improved functionality.

## G.  Paragraph 297

*Within 180 days of the Effective Date, CDP will utilize a department-wide e-mail system to improve communication and information sharing among all department personnel, including command staff, supervisors, and patrol officers. Patrol officers will not have access to information regarding allegations of misconduct.*

To demonstrate compliance with this paragraph, the Division provided a roster of CDP employees and their assigned email address. City Information and Technology Services completed implementation of email for every member of the Division of Police in February 2015. Members of the Monitoring Team and the Department of Justice have experiential knowledge that the email system is in place and operational, regularly exchanging email communication with CDP members at nearly all ranks and at a variety of work locations within the Division.

The Division also provided its IAPro Administrator's Manual, which establishes application configuration, security settings, user profiles, and levels of access. IAPro is the system into which allegations of misconduct are entered, along with investigative reports and other information pertaining to the cases. Paper documents, which are eventually scanned into IAPro, are stored in areas to which patrol officers would not have regular unescorted access, such as the Internal Affairs

Unit. The IAPro user configurations do not allow patrol officers access to allegations of misconduct against other members. Through Blue Team, which is a companion application integrated with IAPro, patrol officers have input-only access and the ability to view data associated with themselves.

The Cleveland Division of Police has implemented a functional departmentwide email system that facilitates communication and information sharing. IAPro user configurations and Blue Team access controls appropriately restrict patrol officers from viewing allegations of misconduct against other members, ensuring confidentiality and data integrity. The Monitoring Team finds that the Division is in **Substantial and Effective Compliance (6)** with Paragraph 297, which is an upgrade from the previous rating of Operational Compliance.

## H.  Paragraph 298

*CDP will employ information technology professionals who are trained to conduct crime and intelligence analysis, who are capable of troubleshooting and maintaining information technology systems and who can identify and suggest appropriate technological advancements.*

To demonstrate compliance with these requirements, the Division provided Crime Analyst I job postings from 2017 and a Crime Analyst II posting from 2024. The posting for Crime Analyst I requires a bachelor's degree or an appropriate combination of education and relevant experience, one year of professional experience working in research or analysis, and the completion of specific training and certifications within a specified period of time after hire. The posting for Crime Analyst II requires a bachelor's degree and six years' experience as a crime analyst or four years as a CDP analyst. The preferred qualifications include advanced crime analyst certifications and proficiency with a number of specific applications, including mapping, reporting, data collection, and intelligence gathering systems.

CDP also provided resumes, certifications, and training records for 11 analysts. The training records and certifications are extensive, suggesting a high level of proficiency among the crime analysts. The Division employs 19 investigative, crime, data, and intelligence analysts, in addition to a systems analyst capable of troubleshooting and maintaining systems, analyzing needs, and researching technological advancements.

The Division employs qualified information technology professionals and analysts with demonstrated education, experience, and certifications that appear to be above baseline minimal requirements, which allows a modern, data driven capacity to drive operational decision making. This paragraph, therefore, is upgraded to **General Compliance (5)**.

## I.   Paragraph 299

*CDP will implement an effective employee assistance program (EAP) that provides officers ready access to the mental health and support resources necessary to facilitate effective and constitutional policing.*

Although this provision encompasses only one sentence, it is a significant undertaking that requires effective policies, systems, processes, resources for referral, legitimacy among the members who manage the program, and the trust of rank-and-file members. Pursuant to the methodology agreed upon by the Parties, the Monitoring Team assessed the implementation of CDP's program and its adherence to the following best practices in police early intervention programs.

### *Policies containing a clear statement of purpose, guiding confidentiality, and establishing governance of the program.*

General Police Order 1.1.41 (Rev. 12/24/10) governs the Employee Assistance Unit (EAU) and places it under the direct authority of the Chief of Police. The policy recognizes the stress inherent in policing and the need for officer support. The unit consists of six sworn members whose duty is to provide assistance or direct members to resources. The Monitoring Team interviewed EAU members and reviewed their training records, which collectively contained courses addressing health and wellness in public safety, trauma, crisis, and mental health response.

The policy states that EAU services are also available to persons in CDP members' households. While the policy contains a clear statement of purpose and establishes that interactions with EAU shall be confidential, it is dated and brief in scope, lacking the governance structure, oversight mechanisms, clearly defined team member roles, and accountability safeguards characteristic of modern wellness and employee assistance policies. For instance, under "Procedures," in section I (A), the policy states in part, "The Employee Assistance Unit shall be composed of sworn members whose duty is to provide direct assistance..." and also, "EAU shall carry out their duty primarily through counseling and referral to a wide range of resources." This reflects an older and limited model of support that relied heavily on peer counseling, which can be beyond the scope of peer support and the professional abilities of police officers.

In discussions with the Monitoring Team, EAU team members expressed a clear and appropriate understanding of their roles in supporting their colleagues and making referrals to qualified professionals rather than engaging in counseling. CDP policy should be updated to reflect current practices.

**Messaging about EAP throughout the division, e.g., divisional notices, posted information, "intranet" sites, etc.**

During an in-depth discussion with EAU members, they mentioned that they post Divisional Notices about program components and services through the Office of the Chief that are read at roll calls. EAU also has the ability to send mass emails using a distribution list to all members of the Division. The Monitoring Team reviewed a sample of EAU messaging, which included Divisional Notices, flyers for posting at the work location, and two editions of the EAU newsletter, one from December 2024 and one from March 2025. During discussions, EAU members stated that they regularly visit the work locations and attend roll calls to talk to members about the unit and available services, and to work on reducing the stigma associated with seeking assistance and support.

**Access for employees 24 hours a day, seven days a week**

EAU members are available to members seeking assistance via Division cell phones 24 hours a day. In addition, members have 24/7 access to the All One Health – Ease at Work application, which can be accessed on their personally owned devices and offers a diverse array of information and services, including therapy, wellness coaching, legal assistance, and medical advocacy at no charge to the employee. The Department of Public Safety has also established an Employee Care Line for employees to report members, anonymously if they wish, who might be exhibiting signs of need or distress.

**Law enforcement-competent services and providers**

Division members have access to a full-time police psychologist whose office is in police headquarters, as well as a variety of services, offerings, and referrals to law enforcement-competent providers through the EAU. The Division provided an extensive list of partners and service providers. Those with programs designed exclusively for first responders included:

- After Action: Two-week or 30-day treatment programs addressing issues faced by first responders.
- Harbor of Grace National Law Enforcement & First Responder Wellness Center: A continuum of care center for first responders suffering from mental health and substance use issues.
- First Responders' Bridge: A free service that supports first responders and their loved ones who have experienced traumatic events.
- eTMS Ohio: A free service offering transcranial magnetic stimulation (TMS), which is a noninvasive and drug-free option for veterans and first responders to treat a range of conditions, including PTSD, anxiety, depression, and sleep disorders.

- Ohio Assist: A free 3.5-day program that provides counseling, peer support, and education to safety services personnel.

### Integration with other City and Division Wellness Initiatives

The CDP Employee Assistance Unit is integrated with other CDP wellness and support programs, including the Early Intervention Program (EIP) (GPO 1.1.20), the Wellness Program (GPO 1.1.32), and the Post-Traumatic Incident Protocol (GPO 1.05.08).

The EIP policy states that members may be referred to the EAU as an option once flagged by system indicators. The Wellness Program, per policy, is an extension of the Employee Assistance Unit and has been established as a confidential peer support program to assist members with work stress, remain in contact with them while on leave, and make referrals when professional assistance is needed. The Post-Traumatic Incident Protocol outlines significant requirements and responsibilities for EAU team members, including monitoring critical incidents to determine the correct response, scheduling meetings with the Division's psychologist and stress consultant, remaining in contact with involved members' commanding officers, and remaining in contact with involved members until and after they are restored to full duty.

CDP's EAU efforts are integrated with other City wellness and outreach initiatives, such as biometric screening opportunities, blood drives, breast cancer screenings, yoga and meditation sessions, and the previously mentioned All One Health – Ease at Work application.

### Training for supervisors on program components and proper employee interventions

Supervisors have received information on EAU program components but have not been trained in conducting wellness interventions when they observe changes in employees' behavior, signs of distress, or when the Early Intervention Program issues an alert. Supervisors are essential to effective employee assistance and wellness programs, occupying the space in between policies and daily operational realities, where patterns of stress, declining performance, and risk factors first emerge. Without training, even well-intentioned supervisors can miss or misinterpret behavioral warning signs and subtle indicators of distress. Proper training can establish consistent standards and expectations for CDP supervisors, while allowing them to distinguish between performance issues and wellness concerns, and also understanding the objectives, ethical considerations, and boundaries of employee interventions. Supervisors are an important contributor to wellness and morale, and training can reinforce that this aspect of leadership is integral to performance management.

Based on the Monitoring Team's review of policies, documents, and interviews with Employee Assistance Unit personnel, the Cleveland Division of Police has implemented a functioning and accessible employee assistance program that meets essential requirements of Paragraph 299. Employees have 24-hour access to a dedicated unit and can be referred to a diverse variety of law enforcement-competent clinical and support services. To improve record keeping, the Division is pursuing a dedicated software application, which will allow the EAU to reliably collect, analyze, and report EAU data, recognize trends, and more effectively serve the needs of CDP members. In order to reach General Compliance, the Monitoring Team strongly recommends revising and modernizing GPO 1.1.41 – Employee Assistance and Support to reflect current practices and also implementing training for supervisors in wellness plan components and interventions with their members. The system as implemented appears to be operationally effective, resulting in an upgraded rating of **Operational Compliance (4)** for paragraph 299.

## IV.    Assessment Summary and Conclusion

The Cleveland Division of Police has made notable efforts in complying with Paragraphs 291-299, the Equipment and Resources section of the Consent Decree, and received upgrades in six of the nine paragraphs. The Monitoring Team has found that the Division has established the core equipment, technology, and resources required and has progressed beyond baseline or preliminary implementation. There remains work to be done in formalizing input and feedback processes from the CPC and CDP members on resource needs and technology improvements, preventive vehicle maintenance inspections and follow-through, and fleet replacement. The Employee Assistance Unit is accessible and integrated with other wellness initiatives, however, the Monitoring Team recommends policy updates and supervisor training. With progress on these issues and the successful implementation of a new records management system, CDP is well positioned to sustain current gains and achieve higher levels of compliance in a future assessment.

## V.     Compliance Rating Summary

| ¶ | Requirements | Rating |
|---|---|---|
| 291 | With the goal of ensuring that CDP is provided with the resources, equipment, and updated technology necessary to implement the terms of this Agreement and to allow officers to perform their jobs safely, effectively, and efficiently, the City will implement the paragraphs below. | Operational Compliance 4 |
| 292 | Within 365 days of the Effective Date, CDP will complete a comprehensive equipment and resource study to assess its current needs and priorities to perform the functions necessary for CDP to fulfill its mission and satisfy the requirements of this Agreement. Within six months of completion of this study, CDP will develop an effective, comprehensive Equipment and Resource Plan that is consistent with its mission and that will allow it to satisfy the requirements of this Agreement. | Substantial and Effective Compliance 6 |
| 293 | Among other items, CDP's Equipment and Resource Plan will provide for necessary equipment including, at least the following: a. an adequate number of computers; b. an adequate number of operable and safe zone cars; c. zone cars with reliable, functioning computers that provide officers with up-to-date technology, including: i. a mobile computer-aided dispatch system that allows officers and supervisors to access real time information received from call-takers and dispatchers; ii. the ability to access CDP's records management system; and iii. access to law enforcement databases that allow officers to learn basic information about the civilians with whom they interact and the call history associated with the locations to which they are responding, as well as warrant and driver's license checks, and information concerning restraining orders; and d. zone cars equipped with first-aid kits that would allow police officers to perform life-saving measures, and equipment necessary to decontaminate persons exposed to OC spray. This plan will also ensure that CDP: e. properly maintains and seeks to continuously improve upon existing equipment and technology; and f. is appropriately identifying equipment needs and seeking to utilize, as appropriate, emerging technologies. | Operational Compliance 4 |

| 294 | CDP will actively seek input and feedback from the Commission, patrol officers, and supervisors regarding resource allocation, equipment needs, and technological improvements. | Partial Compliance: Planning Phase 2 |
|---|---|---|
| 295 | Upon the Chief's approval of the Equipment and Resource Plan, CDP will submit it to the Monitor and DOJ. The Monitor will assess the Equipment and Resource Plan and report to the Parties whether it is appropriate, effective, and consistent with the requirements of this Agreement. DOJ may independently review and assess whether the Equipment and Resource Plan is appropriate, effective, and consistent with the requirements of this Agreement. The City and CDP will employ best efforts to implement the Equipment and Resource Plan over the period of time set forth in the approved plan. The Monitor will report to the Parties whether the City and CDP are using best efforts to implement the Equipment and Resource Plan as required. | General Compliance 5 |
| 296 | Within 365 days of the Effective Date, CDP will develop or revise, as appropriate, and implement an effective, centralized records management system that will enhance crime analysis, improve responsiveness and transparency, allow for effective and efficient data collection, promote information sharing within CDP and throughout the law enforcement community, aid in developing crime-fighting solutions, and assist CDP in effectively deploying its personnel. | Operational Compliance 4 |
| 297 | Within 180 days of the Effective Date, CDP will utilize a department-wide e-mail system to improve communication and information sharing among all department personnel, including command staff, supervisors, and patrol officers. Patrol officers will not have access to information regarding allegations of misconduct. | Substantial and Effective Compliance 6 |
| 298 | CDP will employ information technology professionals who are trained to conduct crime and intelligence analysis, who are capable of troubleshooting and maintaining information technology systems and who can identify and suggest appropriate technological advancements. | General Compliance 5 |
| 299 | CDP will implement an effective employee assistance program that provides officers ready access to the mental health and support resources necessary to facilitate effective and constitutional policing. | Operational Compliance 4 |

**Appendix A**
**CDP Zone Car Assessment Checklist – Page 1 of 2**

## CDP ZONE CAR ASSESSMENT – 2025

**Vehicle #**          **Year:**          **Make/Model:**          **Mileage:**

**VIN:**

| Category | Item | OK | Concern | Fail | Notes |
|---|---|---|---|---|---|
| **Exterior** | Body | ☐ | ☐ | ☐ | |
| | Tires | ☐ | ☐ | ☐ | |
| | Windows | ☐ | ☐ | ☐ | |
| | Lights | ☐ | ☐ | ☐ | |
| | Emergency Lights | ☐ | ☐ | ☐ | |
| **Interior** | Seatbelts | ☐ | ☐ | ☐ | |
| | Dash Indicators | ☐ | ☐ | ☐ | |
| | Airbag Indicator | ☐ | ☐ | ☐ | |
| | Terminal Mounts | ☐ | ☐ | ☐ | |
| | Safety Barrier | ☐ | ☐ | ☐ | |
| | Weapon Mount | ☐ | ☐ | ☐ | |
| **Function** | Ignition | ☐ | ☐ | ☐ | |
| | Steering | ☐ | ☐ | ☐ | |
| | Brakes | ☐ | ☐ | ☐ | |
| | Audible Emergency Equipment | ☐ | ☐ | ☐ | |
| | In-Car Cameras | ☐ | ☐ | ☐ | |
| **Technology** | MDT | ☐ | ☐ | ☐ | |
| | Mobile CAD | ☐ | ☐ | ☐ | |
| | Field-Based RMS | ☐ | ☐ | ☐ | |
| | L.E. Databases | ☐ | ☐ | ☐ | |

☐ Safe/Operable     ☐ Operable/Needs Repair     ☐ Unsafe     ☐ Out of Service

☐ Technology Issues:

Recurring problems noted:

Additional Notes:

Assessed by:                    Date:

**CDP Zone Car Assessment Checklist – Page 2 of 2**

**Zone Car Assessment Basic Criteria**

**Body**: no severe damage that would affect operation or officer safety.
**Tires**: tread visible, no major cracks/bulges.
**Windshield/windows**: no major cracks impairing view.
**Lights**: visibly intact and operational.
**Emergency lights**: visibly intact and operational.

**Seatbelts**: click and retract.
**Dashboard**: gauges, warning lights.
**Airbag**: indicator light.
**Terminal mounts**: secure, not obstructing controls or vehicle operation.
**Safety barrier/cage**: secure, functional.
**Weapon mount**: secure, functional.

**Ignition**: starts without delay.
**Steering**: no excessive play when turned.
**Brakes**: pedal pressure feels normal.
**Audible emergency equipment**: siren, PA system.
**In-car cameras**: functional, mounted securely.

**MDT**: zone cars with reliable, functioning computers that provide officers with up-to-date technology.
**Mobile CAD**: access real time information received from call-takers and dispatchers.
**Field-based RMS**: ability to access CDP's records management system.
**L.E. Databases**: access to law enforcement databases that allow officers to learn basic information about the civilians with whom they interact, and the call history associated with the locations to which they are responding, as well as warrant and driver's license checks, and information concerning restraining orders.

**Safe and operable**: no obvious hazards, appears road-ready for patrol, no immediate risks to officers or the public, basic systems operable.

## Appendix B
## Vehicle Inspection Results

| Vehicle Number | 102 | 190 | 195 | 224 | 235 | 240 | 247 | 315 | 320 | 331 |
|---|---|---|---|---|---|---|---|---|---|---|
| Year | 2023 | 2020 | 2020 | 2014 | 2018 | 2023 | 2017 | 2017 | 2015 | 2017 |
| Make/Model | Ford Expl | Ford Expl | Ford Expl | Ford Taur | Ford Taur | Ford Expl | Ford Taur | Ford Taur | Ford Taur | Ford Taur |
| Body | | | | | | | x | | | |
| Tires | | | | | | | | | | |
| Windows | | | | | | | | | | |
| Lights | | | | x | x | | | | | x |
| Emer. Lights | | | | x | | | | | | |
| Seatbelts | | | | | | | | | | |
| Dash Indicators | x | x | x | | x | x | x | x | | x |
| Airbag Indicator | | | | | | | | | | |
| MDC Mount | | | | | | | | | | |
| Safety Barrier | | | | | | | | | | |
| Weapon Mount | | | | | | | | | | |
| Ignition | | | | | | | | | | |
| Steering | | | | | | | | | | |
| Brakes | | | | | | | | | | |
| Audible Equip | | | | | | | | | | |
| Dash Cam | | | | | | | | | | |
| MDC | | | | x | | | x | | | |
| MCAD | | | | x | | | | | | |
| RMS/FBR | | | | x | | | | | | |
| L.E. Databases | | | | x | | | | | | |

| Vehicle Number | 393 | 411 | 414 | 437 | 510 | 537 | 565 | 7226 | 7234 | 9625 |
|---|---|---|---|---|---|---|---|---|---|---|
| Year | 2013 | 2023 | 2020 | 2021 | 2018 | 2020 | 2016 | 2019 | 2023 | 2016 |
| Make/Model | Ford Expl | Ford Expl | Ford Expl | Dodge Char | Ford Taur | Ford Expl | Ford Taur | Dodge Char | Ford Expl | Ford Taur |
| Body | | | | | | | | | | |
| Tires | | | | | | | | | | x |
| Windows | | | | | | | | | | |
| Lights | x | | | | | | x | | | |
| Emer. Lights | | | | | | | | | | |
| Seatbelts | | | | | | | | | | |
| Dash Indicators | | | x | | x | | | | | |
| Airbag Indicator | | | | | | | | | | |
| MDC Mount | | | | | | | | | | |
| Safety Barrier | | | | | | | | | | |
| Weapon Mount | | x | x | | | | x | | | |
| Ignition | | | | | | | | | | |
| Steering | | | | | | | | | | |
| Brakes | | | | | | | | | | |
| Audible Equip | | | | | | | | | | |
| Dash Cam | | | | | | | | | | |
| MDC | | | | | | | | | | |
| MCAD | | | | | | | | | | |
| RMS/FBR | | | | | | | | | | |
| L.E. Databases | | | | | | | | | | |

The gray highlighted vehicles were out-of-service.

**Appendix C**
**First-Aid Kit Contents**

| Part Description | PAR |
|---|---|
| *CPD - Utility Pouch Black* | **1** |
| *CPD - Glove Tacktical Defender - XL* | **4** |
| *CPD - Pocketmask with Oxygen Inlet* | **1** |
| *CPD - Eye Wash Bottle 1 oz.* | **1** |
| *CPD - Cleveland PD Kit Tag* | **1** |
| *CPD - Safety Control Seals Spring Lock* | **1** |
| *CPD - Abdominal Pads Sterile 5"x9"* | **1** |
| *CPD - Gauze Pads Sterile 12-Ply 4"x4"* | **1** |
| *Tape - 1" Transpore* | **1** |
| *Trauma Shears* | **1** |
| *Hypothermia Blanket* | **1** |
| *Arterial Tourniquet* | **1** |
| *Bandage - Stretch 3"* | **1** |
| *HALO (Chest Seal)* | **1** |
| *Quik Clot/Combat Gauze* | **1** |
| *CPD - Sani-Hands ALC Alcohol Gel Hand Wipe* | **3** |