UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 1:15 CV 1046 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is the Cleveland Community Police Commission's ("CPC" or the "Commission") Motion for Leave to File Amicus Memorandum of Law ("Motion") (ECF No. 698). For the following reasons, the court denies the Motion.

**I. BACKGROUND**

On June 12, 2015, the court granted the United States of America's ("United States" or the "Government") and the City of Cleveland's (the "City") Joint Motion for Entry of Consent Decree (ECF Nos. 3, 7). Shortly thereafter, on June 29, 2015, three local organizations, the Cleveland Branch of the NAACP, Collaborative for a Safe, Fair and Just Cleveland, and the Ohio Chapter of the National Lawyers Guild (collectively, "Interested Groups"), moved for leave to submit a brief of amici curiae regarding the recently entered Consent Decree. (*See* ECF No. 11.)

On October 6, 2015, after careful consideration of the Interested Groups' motion, and the Government's and City's responses to it, the court denied the motion. (Order, ECF No. 26.) In making its ruling, the court reiterated its finding that the Settlement Agreement was fair, reasonable

and adequate and that it had clearly articulated goals, measurements, and time frames. (*Id.* at PageID 557.) The court also explained that the Interested Groups have methods to communicate their views regarding the Consent Decree that are more appropriate than a grant of amicus status. (*Id.*) Furthermore, the court encouraged the Interested Groups to continue to work with and through the United States and City to provide input on issues different than those provided by the Consent Decree. (*Id.* at PageID 578.)

Following the court's denial of the Interested Groups' motion, the parties' work toward substantial and effective compliance with the Consent Decree continued in earnest. As issues arose concerning implementation of the Decree, the parties, either separately or jointly, moved the court for assistance in resolving the disputes.

For example, in early 2024, the parties and Monitor shared with the court a dispute between the City and United States pertaining to document requests by the CPC. (Order, ECF No. 505.) The City argued it could not lawfully provide many of the requested un-redacted documents to the CPC, and therefore requested relief from its obligation to produce the records. (ECF No. 507.) The United States opposed the motion, arguing that under paragraph 19 of the Consent Decree, the Commission had a right to the requested information, and the City's objections to non-legally-restricted information were without merit. (ECF No. 510.) With the court's help, and regular status reports, the parties were able to resolve the dispute and get documents moving to the CPC.

By the end of 2025, the Monitor had completed six compliance assessments (*see* ECF Nos. 661, 672, 673, 674, 678, and 680), and was prepared to submit even more in early 2026.

However, a surprise came February 19, 2026, when the City and United States jointly filed a Motion to Terminate the Settlement Agreement ("Joint Motion") (ECF No. 688). At the court's

monthly status conference the following day, the court took the motion under advisement and made clear that work with the monitoring team should continue as it would have had the joint motion not been filed. (Order, ECF No. 690.) Less than a month later, and one day before the 18th Semiannual Status Conference, another filing surprised the court: the Motion for Leave to File Amicus Memorandum of Law by the Cleveland Community Police Commission considered herein.

## II. LAW AND ANALYSIS

The Cleveland Community Police Commission moves the court for leave to file an amicus memorandum of law in response to the parties' Joint Motion because the CPC's Motion is timely and helpful for the disposition of the Joint Motion. (Mot. at PageID 15241–42.) The CPC also requests that it be allowed to participate in all further proceedings related to the Joint Motion, including briefing, oral argument, and any evidentiary hearings. (*Id.* at PageID 15245.)

Historically, the purpose of amicus curiae "was to provide *impartial* information on matters of law about which there was doubt, especially in matters of public interest." *United States v. State of Mich.*, 940 F.2d 143, 164 (6th Cir. 1991) (emphasis in the original). Indeed, the classical view characterizes amicus curiae as "an *impartial* friend of the court—*not an adversary party in interest in the litigation.*" *Id.* at 165 (emphasis in the original). Some courts have departed from this orthodox interpretation and "recognized a *very limited* adversary support of given issues through brief and/or oral argument." *Id.* (emphasis in the original). That said, amicus "has never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest, and amicus has been consistently precluded from initiating legal proceedings, filing pleadings, or otherwise participating and assuming control of the controversy in a totally adversarial fashion." *Id.* (collecting cases) (cleaned up). Ultimately, whether to allow amicus to brief and argue as a friend

-3-

of the court is a decision within the sound discretion of the court, s*ee Northern Sec. Co. v. United States*, 191 U.S. 555, 556 (1903), and "depends upon finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice. *State of Mich.*, 940 F.2d at 165 (citing *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982)).

It is not unprecedented for a court to allow outside organizations interested in a consent decree to provide additional perspectives *before* a settlement agreement is entered. *See United States v. City of New Orleans*, No. CV 12–1924, 2012 WL 12990388, at *12 (E.D. La. Aug. 31, 2012) (allowing organizations seeking to intervene regarding the terms of the proposed consent decree to submit written comments and offer testimony and documentary evidence during the court's fairness hearing). And, as the CPC points out in its Motion, the court overseeing the New Orleans consent decree allowed an outside organization to file an amicus curiae memorandum in opposition to the city's motion to vacate the decree less than a year after it was entered. *United States v. City of New Orleans*, 947 F. Supp. 2d 601, 605 n. 3 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013). Nevertheless, the CPC's position is readily distinguishable from those groups allowed to participate in *City of New Orleans*.

The CPC is a creation of the Consent Decree, and operates within the City. (*See* Agreement at ¶ 15) ("To leverage the experience and expertise of the people of Cleveland, and to ensure that CDP recognizes and operates in a manner consistent with cooperative community understanding and engagement, there will be within the City a Community Police Commission.") (*See also* Mot. at PageID 15243) ("The Commission was formed as part of the terms of that Consent Decree.") Therefore, its position is distinguishable from those outside groups in *City of New Orleans*, and from

-4-

the Interested Groups who originally moved for leave to file amicus curiae when the Consent Decree was first entered.

Additionally, allowing the CPC to enter this litigation as amicus curiae could widen existing disagreements between the City and the Commission, and place the court in the highly unusual position of managing adversarial briefings between the City and one of its own entities. Finally, granting the CPC's Motion would set a precedent for other civilian oversight entities within the City, *i.e.* the Civilian Police Review Board, to seek leave from the court to file their own amicus brief.

The court recognizes that the Commission's perspective as the community's voice on the state of police reform in Cleveland is distinct from the Mayor's, the Division of Police's, and the Police Accountability Team's. Even so, the process through which it should voice its concerns is through the City directly, and through its interactions with the Department of Justice and the Monitor. The Monitor, as part of her responsibility, is tasked with receiving broad input about and from the various oversight entities, including the Community Police Commission. That information has been, and is being shared, with the parties and the court. The Monitor will continue to be available to receive that input and to share it to the extent it bears on compliance issues. In reaching this conclusion about the process on which we must rely, the court does not mean in any way to diminish the importance of any issues the Commission seeks to raise.

### III. CONCLUSION

For the foregoing reasons, the court denies the Cleveland Community Police Commission's Motion for Leave to File Amicus Memorandum of Law (ECF No. 698), and strikes from the record the proposed memorandum law (ECF No. 698-1). The court also denies the CPC's request to

participate in all further proceedings related to the Joint Motion, including briefing, oral argument, and any evidentiary hearings.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

March 20, 2026