IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CV-01046 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | NOTICE SUBMITTING THE MONITORING |
| CITY OF CLEVELAND | ) | TEAM'S 2026 PUBLIC SAFETY INSPECTOR |
| | ) | GENERAL ASSESSMENT REPORT |
| Defendant. | | |

The Monitoring Team hereby submits the Report of its 2026 Public Safety Inspector General Assessment.

Respectfully submitted,

/s/ Christine M. Cole

CHRISTINE M. COLE
Independent Monitor
464 Common Street Unit #231
Belmont, MA 02478
ccole@clevelandpolicemonitor.com

CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I served the foregoing Notice Submitting the Monitoring Team's 2026 Public Safety Inspector General Assessment Report via the court's ECF system to all counsel of record.

/s/ Melody J. Stewart
MELODY J. STEWART
Deputy Monitor

Cleveland Division of Police Consent Decree Monitoring Team

# 2026 PUBLIC SAFETY INSPECTOR GENERAL ASSESSMENT

September 4, 2026

# Table of Contents

I. EXECUTIVE SUMMARY ........ 3
II. SCOPE OF REVIEW, METHODOLOGY, AND STANDARD OF REVIEW ........ 4
A. Scope of Review ........ 4
B. Methodology ........ 5
C. Standard of Review ........ 5
1. Determining Compliance Status ........ 6
III. PUBLIC SAFETY INSPECTOR GENERAL ASSESSMENT FINDINGS ........ 10
A. Paragraph 250 ........ 10
B. Paragraph 251 ........ 10
C. Paragraph 252 ........ 11
D. Paragraph 253 ........ 11
E. Paragraph 254 ........ 13
F. Paragraph 255 ........ 13
G. Paragraph 256 ........ 14
IV. COMPLIANCE ASSESSMENT CONCLUSIONS ........ 15

## I. EXECUTIVE SUMMARY

Pursuant to the 2026 Monitoring Plan, the Monitoring Team completed a compliance assessment of paragraphs 250-256 of the Consent Decree which pertain to the Public Safety Inspector General (PSIG). The Consent Decree requires the City of Cleveland to hire an Inspector General with specific qualifications, duties and authority that are memorialized in the paragraphs as a component of the overall civilian oversight structure. In 2024, the Consent Decree was amended to re-assign the position of Inspector General (IG) from the Cleveland Division of Police to the Department of Public Safety.

**Summary of Findings**

The Monitoring Team's comprehensive assessment finds that the City has achieved Substantial and Effective Compliance in four, Operational Compliance in two, and Partial Compliance in one of the Public Safety Inspector General related paragraphs of the Consent Decree (¶¶ 250-256). Through systematic review of responsive documents including job announcements, memoranda, and analysis of the PSIG budget, the Monitoring Team has concluded that the City has achieved Operational Compliance or better for all but one paragraph established in the Consent Decree.

It should be noted that this assessment commenced following numerous delays by the City.

- February 26, 2026 – the Monitoring Team sent the assessment methodology to the Parties. Per Paragraph 371, the Parties had 45 days to review and provide comments or concerns.
- April 14, 2026 – the due date for the City's comments. The City requested a working group meeting to discuss the methodology. No comments were provided at that time.
- April 15, 2026 - the Monitor agreed to meet with the City regarding concerns. A miscommunication by members of the Monitoring Team to the Police Accountability Team over that agreement was clarified on April 28, and a meeting was scheduled.
- May 7, 2026 – the meeting occurred, with agreement that the City would provide its comments within seven days.
- May 14, 2026 – the City's comments were due but not received.
- May 22, 2026 – the City's comments were received.
- May 28, 2026 – the revised methodology was sent to the Parties. The methodology included a document request. At that time, the Monitor was aware that some personnel changes were occurring in the PSIG office and offered the City the opportunity to request a delay by June 5 and propose a new timeline. The City did not request a delay.
- June 24, 2026 – the Monitoring Team had not yet been provided with any of the requested documents needed to complete the assessment and emailed the City with a request to provide them by July 8, 2026.

- June 24, 2026 – the City's Law Director emailed the Monitor inquiring whether the Monitor planned to retain a person who "is a Certified Inspector General from the Association of Inspectors General or has similar training and experience through the Council of the Inspectors General on Integrity and Efficiency" to lead the assessment.
- June 25, 2026 – the Monitor responded to the City inquiry that there was no plan to retain such a person as a specific expert was not necessary to understand the requirements of the paragraphs. The Monitor further asked the Law Director to specify which paragraphs he believed required such an expert to assess and pointed out that no such request was included in the City's comments from May 22.
- June 29, 2026 – the Law Director responded stating that the City would cooperate with the assessment but opined that the assessment required someone who has "experience in the field, appropriate credentials in the field, and/or has provided an Inspector General assessment at least once in the past." The email did not indicate which parts of Paragraphs 250-256 would require a specific IG Subject Matter Expert (SME) to evaluate compliance.
- July 8, 2026 – the requested documents were sent to the Monitoring Team by the Police Accountability Team.
- July 14, 2026 – the Monitor sent an email to the Parties that she had identified an SME who has been nationally recognized by the National Association for Civilian Oversight of Law Enforcement (NACOLE) for his related research, writing, and testimony regarding civilian oversight and who currently works as the Assistant Inspector General in the Los Angeles Police Department. Pursuant to Paragraph 358 of the Consent Decree, the Monitor advised the Parties of the intent to bring this expert onto the Monitoring Team to assist with the assessment due to the City's insistence. The Monitor later noted in response to a subsequent inquiry by the Law Director that the expert would be compensated at the same rate as all the SMEs on the Monitoring Team.
- July 23, 2026 – the Law Director sent an email to the Monitor objecting to the request to hire the proposed expert, noting multiple reasons.

## II. SCOPE OF REVIEW, METHODOLOGY, AND STANDARD OF REVIEW

### A. Scope of Review

The Consent Decree between the US Department of Justice and the City of Cleveland requires the City to create the position of PSIG with specific criteria for the hiring, independence and authority of the PSIG. Furthermore, the agreement sets forth that the "City will seek the [Community Police] Commission's input in developing the minimum qualifications and experience for an Inspector General."[1]

[1] Consent Decree paragraph 250

This assessment reviewed CDP's compliance with all PSIG related paragraphs in the Consent Decree (250-256). This assessment is the first formal assessment for compliance with these paragraphs.

**B. Methodology**

The Monitoring Team conducted a qualitative and quantitative review of the requirements of paragraphs 250-256. The assessment included review of the requirements of individuals who may be appointed to the position of PSIG, the input of the Community Police Commission in determining qualifications for the position, and the manner in which the City establishes and adheres to the defined duties and authority of the PSIG. Additionally, the budget of the PSIG was reviewed to determine if it affords sufficient independence, resources, and compliance with the criteria listed in each paragraph.

**C. Standard of Review**

Pursuant to Consent Decree paragraphs 360 and 367, the Monitoring Team conducts qualitative and quantitative compliance assessments to determine the extent to which the City of Cleveland ("City") and Cleveland Division of Police ("CDP") have complied with the requirements of the Consent Decree resulting in constitutional policing.[2]

The PSIG compliance assessment is a review of each related provision of paragraphs 250-256 of the Consent Decree. Every provision is given a compliance grade from 0 to 6, with 0 indicating that the City/CDP has not yet begun working on the provision and 6 indicating that the City/CDP has achieved Substantial and Effective Compliance with that provision. Compliance assessments draw upon information and evidence gathered during semiannual reports and review of documents and data submitted for this assessment. A compliance assessment will include an overall grade for the Consent Decree section based upon the compliance grading system (detailed below) with the goal of the City/CDP achieving Substantial and Effective Compliance for each provision.

In order to incorporate and build upon prior semiannual compliance reviews and reports, the Monitoring Team reviews the four most recent semiannual reports in advance of the compliance assessment. Any related provision that has been graded "General Compliance" for more than two

---

[2] In addition to assessments, the Monitoring Team evaluates compliance with sections of the Consent Decree throughout the year and communicates its observations, assessments, and findings twice each year through its semiannual reports (¶¶ 360, 375). These compliance reviews consider the totality of evidence presented and observed with respect to each provision of the Consent Decree, including review of policies and annual reports, interviews and meetings with the City and CDP as well as Cleveland community groups, and observation of trainings and internal meetings.

years (i.e., four consecutive reports) will be presumptively considered in Substantial and Effective Compliance. For any such provision presumptively considered in Substantial and Effective Compliance, the Monitoring Team will review the provision as part of its formal compliance assessment in order to validate its compliance grade. If the compliance assessment validates that provision as substantially and effectively compliant, the Monitoring Team will not re-assess that provision in future compliance assessments. The Monitoring Team will, however, continue to review and report on that provision in its semiannual reports; if those reviews or reports suggest a downgraded change in status at any point, the provision will once again be incorporated into future compliance assessments. None of the PSIG paragraphs, 250-256, were previously deemed in Substantial and Effective Compliance.

### *1. Determining Compliance Status*

As part of the compliance assessment, SMEs on the Monitoring Team reviewed data, records, and documents pertaining to each PSIG related Consent Decree provision (¶¶ 250-256). Following this review and analysis, the SMEs compared findings and collectively award compliance grades using the following framework:

| Grade | Definition |
|---|---|
| **0** | **Non-compliant, Not Started**: The City/CDP has not yet complied with the relevant provision of the Consent Decree. This includes instances in which the City/CDP's work or efforts have begun but cannot yet be certified by the Monitoring Team as compliant with a material component of the requirement. |
| **1** | **Partial Compliance, Not Assessed:** The City/CDP has initiated the implementation phase for the requirement, but the Monitoring Team has not yet assessed the City/CDP's progress in implementation.[3] |
| **2** | **Partial Compliance, Planning/Policy Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key components of the provision of the Consent Decree pertaining to drafting or creating policies, processes, protocols, trainings, systems, or the like that exist on paper but do not exist or function in day-to-day practice. |
| **3** | **Partial Compliance, Implementation Phase:** The City and/or CDP has made sufficient initial strides or sufficient partial progress toward compliance with key components of the provision of the Consent Decree pertaining to initiating training and implementing systems intended to affect day-to-day practice, but that the Monitoring Team has not yet observed in practice. It may capture a wide range of compliance states or performance, from the City or CDP having taken only very limited steps toward operational compliance |

[3] If the Monitoring Team believes a provision cannot be assessed for a particular reason (e.g., lack of access to data/information required for evaluation, etc.), it will inform the City in advance of any planned compliance assessment.

| | |
|---|---|
| | to being nearly in operational compliance. |
| 4 | **Operational Compliance:** The City and/or CDP has made notable progress to technically comply with the requirement and/or policy, process, procedure, protocol, training, system, or other mechanism of the Consent Decree such that it is in existence or practice operationally—but has not yet demonstrated, or has not yet been able to demonstrate, meaningful adherence to or effective implementation, including across time, cases, and/or incidents. This includes instances where a given reform is functioning but has not yet been shown, or an insufficient span of time or volume of incidents have transpired, to be effectively implemented in a systemic manner.<br>Operational compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 5 | **General Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented such that the Monitoring Team will begin tolling according to ¶ 401. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.<br>General compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |
| 6 | **Substantial and Effective Compliance:** The City and/or CDP has complied fully with the requirement and the requirement has been demonstrated to be meaningfully adhered to and/or effectively implemented across time, cases, and/or incidents in accordance with ¶ 401 or ¶ 370. This includes instances where it can be shown that the City or CDP has effectively complied with a requirement fully and systemically.<br>Substantial and effective compliance for a provision does not require that the City/CDP "pass" every metric for that provision, rather the Monitoring Team considers the City/CDP's performance across all metrics, weighting them according to their importance to transforming CDP's policing. |

As additional considerations, more appropriate for work that is ongoing and advances or ebbs over time, the Monitoring Team offers the following details used in making final assessments.

1. **The quality of CDP's performance across a material span of time.** Successfully carrying out a requirement in practice requires more than meeting expectations on one day, in one case or event, or for one officer. Instead, it requires that CDP adhere to Decree requirements across a material span of time, number and/or portion of incidents,

and number of officers. In this way, isolated compliance does not establish "Initial Compliance" in practice. At the same time, however, isolated non-compliance does not, by itself, eliminate the possibility of systemic compliance. The issue is whether, across time, events, and people, CDP is, in aggregate, sufficiently doing what the Decree requires. For some requirements that are applicable only to a relatively small absolute number of incidents or circumstances, performance in a single instance may weigh more significantly than it would in connection with a more commonly implicated requirement.

2. **The severity or significance of deviations from Consent Decree requirements, CDP policy, and/or law.** The Monitoring Team considers not simply whether CDP's performance has deviated in some instances from the Decree's requirements but also the severity or significance of that deviation. Several minor or more technical deviations from administrative requirements may be different in quality than a single significant or gross deviation from core requirements for officer performance in the field. Likewise, deficient performance in connection with less foundational requirements or issues may be different in quality than deficient performance in connection with significant requirements or issues.

3. **The extent to which CDP is identifying and appropriately addressing problematic performance.** In its focus on accountability, supervision, and mechanisms for fostering critical self-analysis within CDP, the Consent Decree expressly contemplates that a CDP in compliance with the Decree will have mechanisms in place to engage with departmental and officer performance that is deficient in some way. Therefore, the Monitoring Team's compliance reviews consider whether, when CDP personnel have deviated from policy, law, or Decree requirements, the Department has identified the deviation and, if so, if it has appropriately addressed the issue. With respect to Consent Decree implementation and meaningful organizational change, the Department is in a different condition if a policy deviation is identified and appropriately addressed than if the deviation goes unnoticed and unaddressed.

4. **CDP's progress over time.** Where possible, the Monitoring Team aims to situate its evaluation of CDP's performance in terms of progress over time. Steady improvement may suggest positive, meaningful adoption of Consent Decree requirements in a way that erratic swings in performance over time may not.[4]

---

[4] Barge, M., Friedman, B., McGough, M. Monitoring Law Enforcement Consent Decrees: An Introduction and Starter Toolkit. 2024. Pages 91-9. https://bja.ojp.gov/library/publications/monitoring-law-enforcement-consent-decrees-introduction-starter-toolkit

Courts regularly apply multi-factor approaches where the application of determinative, bright-line rules are impossible, do not adequately incorporate the array of relevant circumstances at issue, or implicate competing considerations.[5] Such multi-factor tests are "objective" as they require clear explanations as to "how they derived their conclusions from the verifiable facts."[6]

In applying this multi-factor test for compliance, the first factor – the quality of CDP's performance across a material span of time– is the initial, threshold inquiry. In assessing this factor, the Monitoring Team will consider a range of both quantitative and qualitative measures for each provision and determine both CDP's baseline and current level of performance. If CDP and/or its officers' performance is not at a certain level with regards to the relevant metric, then things like progress over time or CDP's identification of the issues are unlikely to cure the basic deficiencies with performance, regardless of improvement over time.

The Monitoring Team will develop a number of quantitative metrics in assessing performance. For such metrics that are rates, the Monitoring Team will consider a compliance rate of 85% or above as "passing". For some non-rate metrics, where there is a relatively small number of incidents for review, or where the rate requires different considerations, the Monitoring Team may set different expectations to be considered passing. The result is such that each provision is graded upon a range of measures and that strong performance on any given quantitative measure must be balanced against the severity of any deviations, the department's response to such violations, and the department's progress over time.

The multi-factor test for compliance works to ensure that all relevant objective factors are reasonably weighed and the Monitoring Team's written findings provides guidance to the Department and to the community about the benchmarks that it expects and CDP's current performance level.

Finally, the Monitoring Team may assign a score for an individual provision that is lower than the score given in a prior report based upon the weighing of factors and current performance.

Compliance assessments are not only about policy; they are also about *performance* and demonstrating *adherence* to policy. Accordingly, to achieve and maintain Substantial and Effective Compliance pursuant to Paragraph 397, the City not only must show that it has adopted

[5] *See, e.g.*, *Murr v. Wisconsin*, 582 U.S. __ (2017) (adopting a multi-factor test for determining whether governmental regulations effectuated a decline in the value of private property so as to be considered a government taking under the Fifth Amendment); *EBay v. MercExchange*, 547 U.S. 388 (2006) (applying four-factor test to determinations about permanent injunctive relief in disputes arising under the Patent Act); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (articulating three factors for courts to consider when determining whether additional governmental and/or judicial procedures are necessary to satisfy the Due Process Clause).

[6] James G. Wilson, "Surveying the 'Forms of Doctrine' on the Bright Line Balancing Test Continuum," 27 *Ariz. St. L.J.* 773, 802 (1995).

the pertinent policies, but also that its personnel, including officers, consistently comply with those policies. The multi-factor test for compliance set forth above works to ensure that all relevant objective factors are reasonably weighed and the Monitoring Team's ratings are clearly conveyed.

## III. PUBLIC SAFETY INSPECTOR GENERAL ASSESSMENT FINDINGS

This section summarizes the Monitoring Team's evaluation, using the methodology outlined in Section II, assessing compliance with paragraphs 250-256 of the Consent Decree.

### A. Paragraph 250

*The City will hire an individual or individuals with significant experience in law enforcement practices and civil rights law to serve as a Public Safety Inspector General. The City will seek the Commission's input in developing the minimum qualifications and experience for an Inspector General. The Public Safety Inspector General will be appointed by the Mayor into the classified service of the City.*

To assess this paragraph, the Monitoring Team reviewed past and current job postings, the résumés of the current PSIG and Acting PSIG, and documentation that the Community Policing Commission (CPC) was consulted for input on qualifications.

The Monitoring Team reviewed job solicitation postings for the PSIG position from both 2024 and 2026. These postings list all of the required criteria of paragraph 250 regarding qualifications and experience of the PSIG. Also reviewed were email solicitations from the City to the CPC requesting their input on the minimum qualifications and experience. Specific responses from CPC were not provided nor reviewed, but the press release announcing appointment of the current PSIG specifically cites CPC's involvement in the hiring process. Finally, the résumés for both the current PSIG (who is on an extended leave of absence and resigning effective September 30, 2026) and the current Acting PSIG were reviewed and confirmed to meet all requirements of the paragraph.

Based on the 2024 and 2026 job postings listing the requirements of the PSIG pertaining to this paragraph, the résumés of the individuals hired and the involvement of CPC in the hiring process, the Monitoring Team rates this paragraph to be in **Substantial and Effective Compliance – 6.**

### B. Paragraph 251

*The Police Public Safety Inspector General will work in the Office of the Mayor of the City of Cleveland, but will report to the Chief Director of Public Safety.*

The Monitoring Team reviewed a Department of Public Safety organizational chart provided by the City pursuant to the document request. The chart clearly demonstrates that the PSIG reports directly to the Chief Director of Public Safety who is a member of the Mayor's cabinet. The

Monitoring Team was unable to locate a copy of a complete City organizational chart on the City's website. However, the PSIG is listed on the website and has a dedicated section under the Department of Public Safety.

The Monitoring Team finds this paragraph in **Substantial and Effective Compliance – 6.**

**C. Paragraph 252**

*The Police Public Safety Inspector General will not be a current or former employee of CDP.*

The Monitoring Team reviewed the résumés of both the current PSIG who was hired in 2024 and the current Acting PSIG who was previously the Deputy PSIG and appointed as Acting PSIG in June 2026 and confirmed that neither individual is a current or former employee of CDP. Further, the job postings for the position clearly state this requirement.

This paragraph is rated to be in **Substantial and Effective Compliance – 6.**

**D. Paragraph 253**

*The duties of the Public Safety Inspector General will include authority to do the following:*

*a. review CDP policies and practices to determine compliance with state and federal law, effectiveness, consistency with principles of bias-free and community policing and procedural justice; whether they promote public and officer safety, and whether they are achieving the goals of this Agreement;*
*b. audit compliance with policies and procedures;*
*c. conduct investigations;*
*d. analyze trends;*
*e. develop specific recommendations for reform concerning policies, procedures, practices, training, and equipment to improve police services and accountability;*
*f. analyze investigations conducted by OPS to determine whether they are timely, complete, thorough, and whether recommended dispositions are supported by the preponderance of the evidence;*
*g. collect and analyze all sustained findings and the discipline imposed, including the use of mitigating and aggravating factors, to assess disciplinary trends and to determine whether discipline is consistently applied, fair, and based on the nature of the allegation; and*
*h. make reports and recommendations for reform publicly available.*

To evaluate this paragraph, the Monitoring Team requested a copy of a City Charter Amendment, policy, or directive that establishes the authority and duties of the PSIG as required by this paragraph. Since the 17th Semiannual Report, the Monitoring Team has pointed out that where the

authority and duties of the other civilian oversight entities, the CPC and CPRB, are enumerated in the City Charter, no such charter amendment, ordinance, Mayoral Executive Order or other City policy memorializes the authority and responsibilities of the PSIG.

A one-page memo from the Chief Public Safety Director was issued on July 31, 2025 that generally listed the duties and authority of the PSIG office and directed staff to comply with requests. On July 1, 2026, a revision of that memo made by the Chief Public Safety Director was issued. That memo expanded some of the language relating to the duties and authority. The subject of that memo is now titled "Directive – Authority of the Public Safety Inspector General." The memo references the authority of the Department of Public Safety under Charter Amendment 115 that the police and fire departments "shall be placed in a department in accordance with the provisions of Section 77 of this Charter, the director of this department shall be their executive head under the direction of the Mayor." It also references City ordinance 135.01 which establishes the duties of the Department of Public Safety Director and states that, "the Director shall be the executive head of the police and fire forces of the City under the direction of the Mayor and shall be the appointing authority. The Director may appoint and employ officers and employees as may be necessary for the operation of this office and the several divisions and activities comprising the Department."

The July 1, 2026, memo lists the duties and authority of the PSIG that are aligned with the specific requirements of Paragraph 253 of the Consent Decree, but with several omissions. First, there is no mention of the requirement in Paragraph 253, subsection (a) regarding consistency with the principles of bias-free and community policing, nor the promotion of public and officer safety. As to subsection (f), there is a reference to "integrity offices," but nothing authorizing the PSIG to analyze investigations conducted specifically by OPS to determine whether they are timely, complete, thorough, and whether recommended dispositions are supported by the preponderance of the evidence. Finally, subsection (g) requires the PSIG to make reports and recommendations for reform publicly available. The July 1, 2026, memo limits that by stating that the PSIG will "communicate findings and, when appropriate, make certain reports publicly available."

The revised memo is an improvement over the previous version and does generally refer to the requirements of this paragraph with some omissions. However, the July 1, 2026 memo that was shared by the City as evidence of compliance is deemed insufficient by the Monitor to demonstrate the requirements and durability of the paragraphs. A memo from a mayoral appointee can be easily modified or rescinded in the future. Effective oversight depends on institutional independence and permanence. If the PSIG issues a report that is critical of the CDP or Department of Public Safety leadership, the office should not be vulnerable to having its authority reduced—or even eliminated—through a simple administrative action. Embedding the PSIG's authority in the City's governing framework would better protect the office from shifting political priorities and help ensure that independent oversight continues after the Consent Decree has ended.

Because the goal of the Consent Decree is to create an independent and durable oversight function, the Monitoring Team concludes that the PSIG's authority should be established through a more permanent legal mechanism, such as a Charter amendment, ordinance, Executive Order, or other citywide policy. As such, the Monitoring Team rates this paragraph to be in **Operational Compliance - 4.**

### E. Paragraph 254

*The Public Safety Inspector General also will have authority to conduct investigations, analyze trends, and make reports and recommendations, as appropriate, at the request of the Chief of CDP or the Mayor. The Commission may recommend to the Chief of CDP, the Director of Public Safety, or the Mayor additional areas of inquiry for the Inspector General.*

The July 1, 2026 memo does not address the specific language of this paragraph. In 2020, an Office of the Inspector General Manual of Duties and Authorities was created when the Inspector General position was part of the CDP, prior to the 2024 amended Consent Decree. In this manual, the language, "the Inspector General also will have authority to conduct investigations, analyze trends, and make reports and recommendations, as appropriate, at the request of the Chief of CDP or the Mayor," is listed verbatim in Section I, B2. The additional sentence, pertaining to recommendations from the CPC is listed in Section I, B3. Although the exact language of the paragraph is repeated in the manual, there does not appear to be any specific process by which these requests come to the attention of the PSIG. It is also unknown if the CPC is aware that its recommendations must be routed through the above-named entities. The Monitoring Team is aware that the CPC has made inquiries and requests for investigations to the PSIG. Although inconsistent with the requirements of this paragraph, the PSIG accepted the request pursuant to Paragraph 253, which does not limit how requests are received nor who can make them.

As of this writing, the Acting PSIG is working to update the 2020 Manual into a Standard Operating Procedure document to govern the work and processes of the office. The Monitoring Team will review this document upon its completion and include it in future compliance assessments.

Based on the language from the Consent Decree listed in the OIG Manual, the current updating of that manual and the acceptance of requests from CPC, the Monitoring Team rates this paragraph to be in **Operational Compliance - 4.**

### F. Paragraph 255

*The budget for the Inspector General will be visible as a separate line item in the budget proposal that is submitted annually pursuant to the Charter to the Cleveland City Council with the appropriation ordinance. The Monitor will analyze the Inspector General's budget and*

> *advise the Parties whether it affords sufficient independence and resources to meet the terms of this Agreement. The Monitor will include this assessment in its reports.*

The Monitoring Team has verified that the requirement for the PSIG to have a visible, separate line item in the budget has been met for the past three budget years. In 2026, the City Council approved the full budget request of the PSIG. The Acting PSIG has reported that the budget is sufficient for independence and provides a pathway for embedding future growth and resources required by the paragraph.

This paragraph is rated in **Substantial and Effective Compliance - 6.**

### G. Paragraph 256

> *The Public Safety Inspector General will have access to all documents and data necessary to perform the above functions, including any raw data collected by the Data Collection and Analysis coordinator.*

To assess this paragraph, the Monitoring Team requested documentation that the PSIG has been provided with access, either directly or through request, to all documents and data needed to perform the functions of the office. No specific documents to that effect were provided. The July 1, 2026, memo directs staff to comply with all requests for information and documents. The current PSIG, who is now on a leave of absence pending resignation, reported that in the Monitor's 18th Semiannual reporting period (July-December 2025), the PSIG was "able to access directly or through a request all necessary documents and data for audit work started. However, not enough time has passed, or work product started that necessitates data and document collection to assess whether operational compliance can be reached." The current Acting PSIG reports that the office has not received any material or work product from the Data Collection and Analysis Unit other than what is publicly available. The Acting PSIG recently met with the Data Collection and Analysis Unit to discuss the requirements of this paragraph.

The Monitoring Team rates this paragraph to be in **Partial Compliance – 3**.

## IV. COMPLIANCE ASSESSMENT CONCLUSIONS

| Consent Decree Paragraph | | Compliance Score |
|---|---|---|
| **II. Section of Consent Decree by Name** | | |
| **¶** | **Requirement** | **Rating** |
| 250 | The City will hire an individual or individuals with significant experience in law enforcement practices and civil rights law to serve as a Public Safety Inspector General. The City will seek the Commission's input in developing the minimum qualifications and experience for an Inspector General. The Public Safety Inspector General will be appointed by the Mayor into the classified service of the City. | **Substantial and Effective Compliance 6** |
| 251 | The Public Safety Inspector General will work in the Office of the Mayor of the City of Cleveland, but will report to the Chief Director of Public Safety. | **Substantial and Effective Compliance 6** |
| 252 | The Public Safety Inspector General will not be a current or former employee of CDP. | **Substantial and Effective Compliance 6** |
| 253 | The duties of the Public Safety Inspector General will include authority to do the following:<br>a. review CDP policies and practices to determine compliance with state and federal law, effectiveness, consistency with principles of bias-free and community policing and procedural justice; whether they promote public and officer safety, and whether they are achieving the goals of this Agreement;<br>b. audit compliance with policies and procedures;<br>c. conduct investigations;<br>d. analyze trends;<br>e. develop specific recommendations for reform concerning policies, procedures, practices, training, and equipment to improve police services and accountability;<br>f. analyze investigations conducted by OPS to determine whether they are timely, complete, thorough, and whether recommended dispositions are supported by the preponderance of the evidence;<br>g. collect and analyze all sustained findings and the discipline imposed, including the use of mitigating and aggravating factors, to assess disciplinary trends and to determine whether discipline is consistently applied, fair, and based on the nature of the allegation; and<br>h. make reports and recommendations for reform publicly available. | **Operational Compliance 4** |

| | | |
|---|---|---|
| 254 | The Public Safety Inspector General also will have authority to conduct investigations, analyze trends, and make reports and recommendations, as appropriate, at the request of the Chief of CDP or the Mayor. The Commission may recommend to the Chief of CDP, the Director of Public Safety, or the Mayor additional areas of inquiry for the Inspector General. | **Operational Compliance 4** |
| 255 | The budget for the Inspector General will be visible as a separate line item in the budget proposal that is submitted annually pursuant to the Charter to the Cleveland City Council with the appropriation ordinance. The Monitor will analyze the Inspector General's budget and advise the Parties whether it affords sufficient independence and resources to meet the terms of this Agreement. The Monitor will include this assessment in its reports. | **Substantial and Effective Compliance 6** |
| 256 | The Public Safety Inspector General will have access to all documents and data necessary to perform the above functions, including any raw data collected by the Data Collection and Analysis coordinator. | **Partial Compliance 3** |